Trey A. Monsour
State Bar No. 14277200
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

Jeremy R. Johnson (*Pro Hac Vice* Pending)
Polsinelli PC
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

PROPOSED COUNSEL TO THE DEBTORS
AND DEBTORS IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| Senior Care Centers, LLC, *et al.*,[1] | § | Case No. 18-33967 (BJH) |
|  | § |  |
| Debtors. | § | (Joint Administration Requested) |
|  | § |  |

**MOTION OF DEBTORS FOR ORDER (I) AUTHORIZING CONTINUATION OF, AND PAYMENT OF PREPETITION OBLIGATIONS INCURRED IN THE ORDINARY COURSE OF BUSINESS IN CONNECTION WITH, VARIOUS INSURANCE POLICIES, (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO, (III) PREVENTING INSURANCE COMPANIES FROM GIVING ANY NOTICE OF TERMINATION OR OTHERWISE MODIFYING ANY INSURANCE POLICY WITHOUT OBTAINING RELIEF FROM THE AUTOMATIC STAY, (IV) AUTHORIZING THE DEBTORS TO CONTINUE TO HONOR PREMIUM FINANCING OBLIGATIONS, AND (V) <u>AUTHORIZING THE DEBTORS TO CONTINUE SURETY BOND PROGRAM</u>**

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby move (the

"**Motion**") for entry of an order, substantially in the form attached hereto as <u>Exhibit B</u> (the

"**Proposed Order**"), pursuant to sections 105(a), 362, 363(b), and 363(c)(1) of title 11 of the

United States Code (the "**Bankruptcy Code**"), and Rule 6003(b) of the Federal Rules of

---

[1]  A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as <u>Exhibit A</u>. The Debtors' mailing address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) authorizing, but not directing, the Debtors to continue and, to the extent necessary, renew prepetition insurance policies in the ordinary course of business and pay prepetition obligations in respect thereof, (ii) authorizing banks and other financial institutions at which the Debtors hold accounts (collectively, the "**Banks**") to honor and process check and electronic transfer requests related to the foregoing, (iii) preventing insurance companies from giving any notice of termination or otherwise modifying or cancelling any insurance policies without first obtaining relief form the automatic stay imposed by Bankruptcy Code section 362, (iv) authorizing, but not directing, the Debtors to continue to honor premium financing and brokerage obligations, and (v) authorizing, but not directing, the Debtors to continue their surety bond program. In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Kevin O'Halloran, Chief Restructuring Officer of Senior Care Centers, LLC, in Support of Chapter 11 Petitions and First Day Pleadings*, filed concurrently herewith (the "**First Day Declaration**"). In further support of this Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The Debtors consent to entry of a final order under Article III of the United States Constitution.

2.      Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363(b), and 363(c)(1), and Bankruptcy Rule 6003(b).

65407093.4

## BACKGROUND

### A. General Background

4.      On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court commencing a case for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").

5.      The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration and fully incorporated herein by reference.

6.      The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

7.      No trustee or examiner, or official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

### B. The Debtors' Insurance Policies and Related Payment Obligations

8.      In the ordinary course of their business, the Debtors maintain approximately 64 insurance policies with various insurance providers (collectively, the "**Insurers**") that provide coverage for, among other things, the Debtors' general liability, director and officer liability, fiduciary liability, employment practices liability, workers compensation liability, automobile liability, professional liability, cyber liability, and property liability (each, an "**Insurance Policy**" and collectively, the "**Insurance Policies**"), as summarized in Exhibit C annexed hereto.[2] In addition to the Insurance Policies, the Debtors maintain several workers'

---

[2]  The descriptions of the Insurance Policies set forth in this Motion constitute a summary only. The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the descriptions in this Motion. It is possible that certain of the Debtors' Insurance Policies may have been inadvertently omitted from the list of Insurance Policies attached hereto as Exhibit C. Accordingly, Exhibit C represents a non-exhaustive list of Insurance Policies and the Debtors reserve the right, pursuant to the terms and conditions of this Motion and without

65407093.4

compensation policies that are reflected in Exhibit C, for which relief is not sought in this Motion.[3]

9. The Debtors incur a total of approximately $7 million in premiums on an annual basis under the terms of their existing Insurance Policies as well as other obligations, including the Broker Fees (as defined below) and other related fees and costs (collectively, the "**Insurance Obligations**"). In addition, the Debtors may make retroactive adjustments in the ordinary course of business with respect to one or more of the Insurance Policies, as applicable.

10. The Debtors seek authority to pay premiums under the Insurance Policies based on a fixed amount established and billed by each Insurance Provider. Depending on the particular Insurance Policy, premiums are primarily (a) prepaid in full at a policy's inception or renewal; (b) financed through a premium financing company; or (c) paid in installments to a broker over the term of the policy.

### (i) Debtors' Prepaid Policies

11. Generally, these Insurance Policies require annual premium payments to be made at the beginning of the applicable policy period. In the ordinary course of business, the Debtors renew annual coverages under many of their policies, including those related to general professional liability, flood coverage, and key man life coverage, and the Debtors pay the full

---

further order from the Court, to amend Exhibit C to add any Insurance Policies that were omitted therefrom. The Debtors request that the relief requested herein apply equally to all such Insurance Policies (the "**Additional Insurance Policies**"). If the Debtors add any Additional Insurance Policies to Exhibit C, the Debtors will serve this Motion, any order approving same, and a revised version of Exhibit C upon the issuer(s) of any such Additional Insurance Policies, the Office of the U.S. Trustee, the Debtors' DIP Lender, and any official committee(s) appointed in the Debtors' Chapter 11 Cases.

[3] The Debtors' workers' compensation policies are described and corresponding relief is requested with respect to such policies in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Payment of Certain Prepetition Workforce Claims, Including Wages, Salaries, and Other Compensation, (II) Authorizing Payment of Certain Employee Benefits and Confirming Right to Continue Employee Benefits on Postpetition Basis, (III) Authorizing Payment of Reimbursement to Employees for Expenses Incurred Prepetition, (IV) Authorizing Payment of Withholding and Payroll-Related Taxes, (V) Authorizing Payment of Workers' Compensation Obligations, and (VI) Authorizing Payment of Prepetition Claims Owing to Administrators and Third-Party Providers*, filed concurrently herewith.

amount of the premiums owed for such policies due at renewal. Accordingly, as of the Petition Date, the Debtors do not owe unpaid premium amounts on account of policies that require payment in full at the inception of the applicable policy period.

### (ii) Premium Financing Agreement

12. Generally, the Insurance Policies require annual premium payments to be made at the beginning of the applicable policy period. However, it is not always economically advantageous for the Debtors to pay the premiums on all of the Insurance Policies on a lump-sum basis. Accordingly, in the ordinary course of business, the Debtors finance the premiums on certain policies pursuant to two premium financing agreements (each, a "**PFA**" and collectively, the "**PFAs**") with Imperial PFS Corporation ("**Imperial**"). The Debtors entered into the PFAs with Imperial in order to finance insurance premiums for certain policies as detailed in Exhibit C, including property liability, general and professional liability, executive risk liability, directors and officers, employment practices liability, commercial auto, and fiduciary liability. The Debtors have fully paid all installments on one of the PFAs, which expired on November 19, 2018. The other PFA expires on May 1, 2019 and has four remaining installments in the amount of $409,348.19, the last of which is due on March 15, 2019. The Debtors have paid any down payments prior to the Petition Date, and have continued to pay the monthly installments as they become due.

13. If the Debtors are unable to continue making payments on the remaining PFA, Imperial may be permitted to terminate the PFA. The Debtors would then be required to obtain replacement insurance on an expedited basis and at significant cost to the estates. If the Debtors are required to obtain replacement insurance and to pay a lump-sum premium for such Insurance Policy in advance, this payment would likely be greater than what the Debtors currently pay.

5

Even if Imperial were not permitted to terminate the PFA, any interruption of payment would have a severe, adverse effect on the Debtors' ability to finance premiums for future policies.

14.     In light of the importance of maintaining insurance coverage with respect to their business activities and preserving liquidity by financing their insurance premiums, the Debtors believe it is in the best interest of their estates to receive Court approval to honor their obligations under the PFA and, as necessary, renew or enter into new such agreements.

### (iii)     The Debtors' Insurance Broker Services

15.     The Debtors use Alliance Insurance Group (the "**Broker**") to assist them with the procurement and negotiation of certain Insurance Policies. The Broker assists the Debtors in obtaining comprehensive insurance coverage for their operations, analyzing the market for available coverage and negotiating policy terms, provisions, and premiums. The Broker also provides ongoing support through the policy periods. The Debtors pay the Broker any fees and commissions that are owed under the PFAs (the "**Broker Fees**"). As of the Petition Date, the Debtors do not believe that they owe any amounts to the Broker on account of fees, commissions, or any other prepetition obligations beyond the commission amounts already contained in the next PFA installment that will come due in the ordinary course of the Debtors' business. Out of an abundance of caution, however, the Debtors seek authority to honor any amounts owed to the Broker to ensure uninterrupted coverage under their Insurance Policies.

### (iv)     The Debtors' Surety Bond Program

16.     In the ordinary course of business, the Debtors are required to provide surety bonds to certain third parties to secure the Debtors' payment or performance of certain obligations, often to governmental units or other public agencies (the "**Surety Bond Program**"). Often, statutes or ordinances require the Debtors to post surety bonds to secure such obligations.

65407093.4

As such, the failure to provide, maintain, or timely replace their surety bonds may prevent the Debtors from undertaking essential functions related to their operations.

17. The premiums for the surety bonds are generally determined on an annual basis and paid by the Debtors when the bonds are issued and annually upon each renewal. The Debtors have approximately ninety-seven (97) outstanding surety bonds issued by CNA Surety Group Western Surety Company (collectively, the "**Sureties**"). Annual premiums for the Debtors' surety bonds total approximately $100,000.00, which were paid in full prior to the effective date of the bonds. As such, the Debtors estimate that no prepetition amounts remain outstanding on account of the Surety Bond Program.

18. To continue their business operations during the reorganization or sale process, the Debtors must be able to provide financial assurances to state governments, regulatory agencies, and other third parties. Indeed, without the relief requested, the Debtors' ability to conduct operations in many locations could come to a halt, thereby destroying value for all stakeholders. To maintain the existing Surety Bond Program, the Debtors request the authority, but not direction, to pay all obligations under the Surety Bond Program as they come due, including the bond premiums, and any bond commissions as needed. In addition, the Debtors seek authority to renew or potentially acquire additional bonding capacity as needed in the ordinary course of their business, and execute other agreements in connection with the Surety Bond Program.

**RELIEF REQUESTED**

19. By this Motion, the Debtors request entry of an order, substantially in the form of Exhibit B attached hereto, authorizing the Debtors to (a) continue and renew their Insurance Policies, or obtain new insurance policies, as needed in the ordinary course of business, and (b) honor all of their prepetition and postpetition obligations, including payment of all outstanding

7

prepetition Insurance Obligations, under and in connection with the Insurance Policies on an uninterrupted basis and in accordance with the same practices and procedures as were in effect before the Petition Date, including premiums arising under the Insurance Policies and the Broker Fees.[4]

20.      The Debtors also seek entry of an order authorizing the Banks to receive, process, honor, and pay checks or electronic transfers used by the Debtors to pay the foregoing and to rely on the representations of the Debtors as to which checks are issued and authorized to be paid in accordance with this Motion.

21.      Lastly, by this Motion, the Debtors respectfully request an order preventing the Insurers from giving any notice of termination or otherwise modifying or cancelling any Insurance Policies without obtaining relief form the automatic stay.

## BASIS FOR RELIEF

### A.      Honoring the Insurance Policy Obligations is Warranted Under Bankruptcy Code Section 363(b)

22.      Bankruptcy Code section 363 provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2003 WL 22316543, at *30 (Bankr. S.D.N.Y. Mar. 4, 2003); *Comm. of Equity Sec. Holders v. Lionel Corp.*

---

[4]   Nothing in this Motion should be construed as an assumption of any executory contract or unexpired lease between the Debtors and any other party, nor should it be construed as a rejection of any executory contract or unexpired lease with any creditor. The Debtors reserve the right to contest the amount claimed to be due by any person or entity.

(*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp.* (*In re Johns- Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also Stanziale v. Nachtomi* (*In re Tower Air, Inc.*), 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

23. The Debtors have satisfied the business judgment standard. First, the coverage provided under the Insurance Policies is essential for preserving the value of the Debtors' assets and, such coverage is required by various regulations, laws, and contracts that govern the Debtors' business operations. Indeed, Bankruptcy Code section 1112(b)(4)(C) provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public," is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). Moreover, maintenance of insurance policies is required by the operating guidelines established by the Office of the United States Trustee (the "**U.S. Trustee**"). *See* 3 *United States Trustee Manual*, § 3-3.2.3 (Oct. 1998) ("A debtor must obtain appropriate insurance coverage, and documentation regarding the existence of the coverage must be provided to the Office of the United States Trustee as early in the case as possible."). Second, if the Debtors fail to perform their obligations under the Insurance Policies, their coverage thereunder could be voided. Such a disruption of the Debtors' insurance coverage could expose the Debtors to serious risks, including but not limited to: (a) direct liability for the payment of claims that otherwise would have been payable by the Insurers; (b) material costs and other losses that otherwise would have been reimbursed by the Insurers under the Insurance Policies; (c) the loss of good standing

certification in jurisdictions that require the Debtors to maintain certain levels of insurance coverage; (iv) the inability to obtain similar types of insurance coverage; and (d) higher costs for re-establishing lapsed policies or obtaining new insurance coverage. Any or all of these consequences could cause serious harm to the Debtors' business. Granting the relief requested herein will enhance the likelihood of the Debtors' successful rehabilitation, thereby furthering the goals of chapter 11: "facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

24.     The Debtors may also need to renew or replace certain of the Insurance Policies during the course of these Chapter 11 Cases or enter into new policies. If the Debtors do not pay prepetition amounts owing, including upward and/or downward adjustments, in respect of the Insurance Policies, there is a risk that the Insurers will refuse to renew the Insurance Policies.

25.     Although the Debtors believe that the renewal, modification, or new execution of the Insurance Policies would constitute ordinary course transactions not requiring Court approval, the Debtors nevertheless seek authority to continue to renew and modify the Insurance Policies in order to assure the Debtors' Insurers that the Debtors have full authority with respect to new or modified arrangements without the need to obtain further approval from the Court.

**B.      Honoring the Insurance Policy Obligations is Warranted Under Bankruptcy Code Section 363(c)(1)**

26.     Bankruptcy Code section 363(c)(1) expressly grants the Debtors the authority to "enter into transactions . . . in the ordinary course of business" and "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Therefore, the Debtors believe they are permitted to pay all postpetition amounts due pursuant to the Insurance Policies and to renew or obtain new insurance policies as such actions are in the ordinary course of the Debtors' businesses. However, out of an abundance of caution, the

Debtors seek entry of an order granting the relief requested herein to avoid any disruptions to their business operations.

**C.     Honoring the Insurance Policy Obligations is Warranted Under the Doctrine of Necessity**

27.     The Court may authorize payment of prepetition claims under Bankruptcy Code section 105(a). Section 105(a), which codifies the equitable powers of the bankruptcy court, empowers courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under Bankruptcy Code section 105(a), courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor's business, even though such payment is not explicitly authorized under the Bankruptcy Code. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825-25 (D. Del. 1999). Specifically, the Court may use its power under Bankruptcy Code section 105(a) to authorize payment of prepetition obligations pursuant to the "doctrine of necessity" (also referred to as the "necessity of payment" rule). *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175-76; *In re CoServ, L.L.C.*, 273 B.R. 487 (Bankr. N.D. Tex. 2002) (holding the doctrine of necessity applicable when payment fulfills the debtor in possession's fiduciary role to protect and preserve the estate, including an operating business's going-concern value).

28.     The United States Bankruptcy Court for the Northern District of Texas has held that a debtor must demonstrate the following three elements to establish "necessity": (1) it must be critical that the debtor deal with the claimant; (2) unless the debtor deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim; (3) there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim. *In re CoServ*, 237 B.R. at 487.

11

29.     Honoring the Debtors' obligations with regards to the Insurance Policies is warranted under the doctrine of necessity. As described above, continuation of the Insurance Policies is essential to preserve the value of the Debtors' assets and minimize exposure to risk. Furthermore, insurance coverage is required by the Office of the United States Trustee, as well as various jurisdictions in which the Debtors operate.

30.     Moreover, many bankruptcy courts in this district have granted relief similar to that requested herein in other chapter 11 cases. *See, e.g.*, *In re TPP Acquisitions, Inc. d/b/a The Picture People*, Case No. 16-33437 (HDH) (Bankr. N.D. Tex. Sept. 8, 2016) [Doc. No. 81]; *In re CHC Group Ltd, et al,* Case No. 16-31854 (BJH) (Bankr. N.D. Tex. June 8, 2016) [Doc. No. 268]; *In re TransCoastal Corporation,* Case No. 15-34956 (HDH) (Bankr. N.D. Tex. Dec. 11, 2015) [Doc. No. 37]; *In re Energy & Exploration Partners, Inc.*, Case No. 15-44931 (RFN) (Bankr. N.D. Tex. Dec. 23, 2015) [Doc. No. 148]; *In re Renaissance Hosp. Grand Prairie, Inc.*, Case No. 08-43775 (RFN) (Bankr. N.D. Tex. Sept. 4, 2008) [Doc. No. 113]; *In re Bombay Co.*, Case No. 07-44084 (RFN) (Bankr. N.D. Tex. Sept. 20, 2007) [Doc. No. 66].

**C.     The Court Should Authorize Applicable Banks to Honor Checks and Electronic Fund Transfers in Accordance with the Motion**

31.     In connection with the foregoing, the Debtors respectfully request that the Court (a) authorize all applicable Banks to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date, (b) provide that all Banks may rely on the representations of the Debtors with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to this Motion (such banks and other financial institutions having no liability to any party for relying on such representations by the Debtors provided for herein), and (c) authorize the Debtors to issue replacement checks or

transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks.

**D.      The Automatic Stay**

32.      The Debtors also request that the Court prevent the Insurers from giving any notice of termination or otherwise modifying or canceling any Insurance Policies without obtaining relief from the automatic stay imposed by Bankruptcy Code section 362. The purpose of this relief is to aid in the administration of the Debtors' bankruptcy cases and to preserve the value of their business operations. The Debtors' Insurers may be unfamiliar with the protections afforded chapter 11 debtors under Bankruptcy Code section 362, and thus, an order of this Court affirming these protections would help avoid costly and unnecessary litigation.

33.      As a result of the commencement of the Debtors' Chapter 11 Cases, and by operation of law pursuant to Bankruptcy Code section 362, the automatic stay prevents all persons from, inter alia, (a) commencing or continuing any judicial, administrative, or other proceeding against the Debtors, (b) taking any action to exercise control over property of the estates, or (c) taking any action to collect, assess or recover a claim against the Debtors that arose before the commencement of such cases. *See* 11 U.S.C. § 362(a).

34.      The appropriate procedure for obtaining Court approval of termination under an insurance policy is to seek relief from the automatic stay under the provisions of Bankruptcy Code section 362(d)(1), which require the Court to grant relief for "cause." *In re Adana Mortg. Bankers, Inc.*, 12 B.R. 983, 988 (Bankr. N.D. Ga. 1980).

35.      The injunctions contained in Bankruptcy Code section 362 are self-executing and constitute fundamental debtor protections, which, in combination with other provisions of the Bankruptcy Code, provides the Debtors with a "breathing spell" that is essential to the Debtors'

ability to reorganize. *See, e.g., Mar. Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991).

## E. Immediate Relief is Justified

36. Pursuant to Bankruptcy Rule 6003, the Court may grant relief within 21 days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm. Fed. R. Bankr. P. 6003(b). Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

37. Moreover, Bankruptcy Rule 6003 authorizes the Court to grant the relief requested herein to avoid harm to the Debtors' customers and other third parties. Unlike Bankruptcy Rule 4001, Bankruptcy Rule 6003 does not condition relief on imminent or threatened harm to the estate alone. Rather, Bankruptcy Rule 6003 speaks of "immediate and irreparable harm" generally. *Cf.* Fed. R. Bankr. P. 4001(b)(2), (c)(2) (referring to "irreparable harm to the estate"). Indeed, the "irreparable harm" standard is analogous to the traditional standards governing the issuance of preliminary junctions. *See 9 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy* ¶ 4001.07[b][3] (16th ed.) (discussing source of "irreparable harm" standard under Rule 4001(c)(2)). Courts will routinely consider third-party interests when granting such relief. *See, e.g., Capital Ventures Int'l v. Argentina*, 443 F.3d 214, 223 n.7 (2d Cir. 2006); *see also Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001).

14

38.     As described herein, the Debtors will suffer immediate and irreparable harm without Court authorization for the relief requested herein. Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## WAIVER OF BANKRUPTCY RULES

39.     To the extent that any aspect of the relief sought herein is subject to Bankruptcy Rule 6003, the Debtors submit that the Court may grant such relief within twenty-one (21) days after the Petition Date because it is necessary to avoid immediate and irreparable harm. *See* Fed. R. Bankr. P. 6003.

40.     In addition, to the extent that any aspect of the relief sought herein constitutes a use of property under Bankruptcy Code section 363(b), the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14)-day stay under Bankruptcy Rule 6004(h), to the extent applicable. *See* Fed. R. Bankr. P. 6004(a), (h). As described above, the relief that the Debtors seek in this Motion is immediately necessary in order for the Debtors to be able to continue to operate their business and preserve the value of their estates. The Debtors respectfully request that the Court waive the notice requirements imposed by Bankruptcy Rule 6004(a) and the fourteen (14)-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

41.     Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval, assumption, or rejection of any agreement, contract, or lease under Bankruptcy Code section 365. The Debtors expressly reserve their rights to contest any invoice or claim on account of any Insurance Policy under applicable law and to assume or reject any agreements with Insurance Policy providers in accordance with the applicable provisions of the

15

Bankruptcy Code. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## CONSENT TO JURISDICTION

42. The Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## NOTICE

43. Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the Northern District of Texas; (b) the Office of the Attorney General of the states in which the Debtors operate; (c) the Debtors' forty largest unsecured creditors on a consolidated basis; (d) counsel to CIBC Bank USA; (e) Sabra Texas Holdings, L.P.; (f) the Internal Revenue Service; (g) the Department of Medicaid, Department of Health, and Division of Health Services Regulation in each state in which the Debtors operate Facilities; (h) the Insurers; and (j) the Banks.

44. The Debtors respectfully submit that such notice is sufficient and that no further notice of this Motion is required.

## NO PRIOR REQUEST

45. No previous request for the relief sought herein has been made to this Court or any other court.

65407093.4

**WHEREFORE,** the Debtors respectfully request that the Court enter an order, substantially in the form of the proposed order attached hereto as <u>Exhibit B</u>, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: December 5, 2018
      Dallas, Texas

**POLSINELLI PC**

<u>/s/     Trey A. Monsour     </u>
Trey A. Monsour
State Bar No. 14277200
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

-and-

Jeremy R. Johnson (*Pro Hac Vice* Pending)
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## Exhibit A

(Sorted Alphabetically)

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 1. | Alief SCC LLC | 18-33987 | 0523 |
| 2. | Bandera SCC LLC | 18-33989 | 0617 |
| 3. | Baytown SCC LLC | 18-33992 | 0778 |
| 4. | Beltline SCC LLC | 18-33996 | 7264 |
| 5. | Booker SCC LLC | 18-33999 | 0967 |
| 6. | Bossier SCC LLC | 18-34003 | 2017 |
| 7. | Bradford SCC LLC | 18-34004 | 9535 |
| 8. | Brinker SCC LLC | 18-34005 | 7304 |
| 9. | Brownwood SCC LLC | 18-33968 | 0677 |
| 10. | Capitol SCC LLC | 18-34006 | 1750 |
| 11. | CapWest-Texas LLC | 18-34008 | 4897 |
| 12. | Cedar Bayou SCC LLC | 18-34010 | 8889 |
| 13. | Clear Brook SCC LLC | 18-34012 | 1877 |
| 14. | Colonial SCC LLC | 18-34014 | 4385 |
| 15. | Community SCC LLC | 18-33969 | 7951 |
| 16. | Corpus Christi SCC LLC | 18-34016 | 9807 |
| 17. | Crestwood SCC LLC | 18-34017 | 7349 |
| 18. | Crowley SCC LLC | 18-33970 | 6697 |
| 19. | CTLTC Real Estate, LLC | 18-34018 | 0202 |
| 20. | Fairpark SCC LLC | 18-34020 | 7381 |
| 21. | Gamble Hospice Care Central LLC | 18-34022 | 6688 |
| 22. | Gamble Hospice Care Northeast LLC | 18-34025 | 6661 |
| 23. | Gamble Hospice Care Northwest LLC | 18-34027 | 2044 |
| 24. | Gamble Hospice Care of Cenla LLC | 18-34029 | 4510 |
| 25. | Green Oaks SCC LLC | 18-33971 | 7218 |
| 26. | Harbor Lakes SCC LLC | 18-33972 | 7299 |
| 27. | Harden HUD Holdco LLC | 18-34032 | 1502 |
| 28. | Harden Non-HUD Holdco LLC | 18-34035 | 3391 |
| 29. | Harden Pharmacy LLC | 18-34036 | 1995 |
| 30. | Hearthstone SCC LLC | 18-34037 | 9154 |
| 31. | Hewitt SCC LLC | 18-33973 | 7237 |
| 32. | HG SCC LLC | 18-34040 | 7415 |
| 33. | Hill Country SCC LLC | 18-34043 | 4199 |
| 34. | Holland SCC LLC | 18-33974 | 1427 |
| 35. | Hunters Pond SCC LLC | 18-34045 | 2886 |
| 36. | Jacksonville SCC LLC | 18-34046 | 4216 |
| 37. | La Hacienda SCC LLC | 18-34049 | 1074 |
| 38. | Lakepointe SCC LLC | 18-34050 | 7457 |
| 39. | Major Timbers LLC | 18-34052 | 7477 |
| 40. | Marlandwood East SCC LLC | 18-34054 | 1871 |

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 41. | Marlandwood West SCC LLC | 18-34058 | 2192 |
| 42. | Meadow Creek SCC LLC | 18-34064 | 9278 |
| 43. | Midland SCC LLC | 18-34065 | 4231 |
| 44. | Mill Forest Road SCC LLC | 18-34066 | 5137 |
| 45. | Mission SCC LLC | 18-33975 | 8086 |
| 46. | Mullican SCC LLC | 18-34067 | 7499 |
| 47. | Mystic Park SCC LLC | 18-34068 | 1898 |
| 48. | Normandie SCC LLC | 18-34069 | 1542 |
| 49. | Onion Creek SCC LLC | 18-34070 | 7425 |
| 50. | Park Bend SCC LLC | 18-34071 | 9410 |
| 51. | Pasadena SCC LLC | 18-34072 | 1694 |
| 52. | Pecan Tree SCC LLC | 18-34073 | 4241 |
| 53. | Pecan Valley SCC LLC | 18-34074 | 9585 |
| 54. | Pleasantmanor SCC LLC | 18-34075 | 7536 |
| 55. | PM Management - Allen NC LLC | 18-34076 | 4961 |
| 56. | PM Management - Babcock NC LLC | 18-34077 | 7829 |
| 57. | PM Management - Cedar Park NC LLC | 18-34078 | 1050 |
| 58. | PM Management - Corpus Christi NC II LLC | 18-34079 | 5231 |
| 59. | PM Management - Corpus Christi NC III LLC | 18-34080 | 5129 |
| 60. | PM Management - Corsicana NC II LLC | 18-34081 | 9281 |
| 61. | PM Management - Corsicana NC III LLC | 18-34082 | 9353 |
| 62. | PM Management - Corsicana NC LLC | 18-34083 | 1333 |
| 63. | PM Management - Denison NC LLC | 18-34084 | 5022 |
| 64. | PM Management - El Paso I NC LLC | 18-34085 | 2965 |
| 65. | PM Management - Fredericksburg NC LLC | 18-34086 | 0599 |
| 66. | PM Management - Frisco NC LLC | 18-34087 | 5082 |
| 67. | PM Management - Garland NC LLC | 18-33979 | 5137 |
| 68. | PM Management - Golden Triangle NC I LLC | 18-33980 | 9478 |
| 69. | PM Management - Golden Triangle NC II LLC | 18-33981 | 9536 |
| 70. | PM Management - Golden Triangle NC III LLC | 18-33982 | 9597 |
| 71. | PM Management - Golden Triangle NC IV LLC | 18-33983 | 9654 |
| 72. | PM Management - Killeen I NC LLC | 18-33984 | 3105 |
| 73. | PM Management - Killeen II NC LLC | 18-33985 | 3179 |
| 74. | PM Management - Killeen III NC LLC | 18-33986 | 3245 |
| 75. | PM Management - Lewisville NC LLC | 18-33988 | 5296 |
| 76. | PM Management - New Braunfels NC LLC | 18-33990 | 6293 |
| 77. | PM Management - Park Valley NC LLC | 18-33991 | 7186 |
| 78. | PM Management - Pflugerville AL LLC | 18-33993 | 4007 |
| 79. | PM Management - Portland AL LLC | 18-33994 | 5018 |
| 80. | PM Management - Portland NC LLC | 18-33995 | 4928 |
| 81. | PM Management - Round Rock AL LLC | 18-33997 | 5304 |
| 82. | PM Management - San Antonio NC LLC | 18-33998 | 1216 |
| 83. | Presidential SCC LLC | 18-34000 | 1913 |
| 84. | Redoak SCC LLC | 18-33976 | 7569 |

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 85. | Riverside SCC LLC | 18-34001 | 1889 |
| 86. | Round Rock SCC LLC | 18-34002 | 8936 |
| 87. | Rowlett SCC LLC | 18-34007 | 7606 |
| 88. | Ruston SCC LLC | 18-34009 | 0242 |
| 89. | RW SCC LLC | 18-34011 | 7631 |
| 90. | Sagebrook SCC LLC | 18-34013 | 9571 |
| 91. | San Angelo SCC LLC | 18-34015 | 4254 |
| 92. | SCC Edinburg LLC | 18-34019 | 1195 |
| 93. | SCC Hospice Holdco LLC | 18-34021 | 3166 |
| 94. | SCC Senior Care Investments LLC | 18-34023 | 4123 |
| 95. | SCC Socorro LLC | 18-34024 | 5459 |
| 96. | Senior Care Center Management II LLC | 18-34026 | 1280 |
| 97. | Senior Care Center Management LLC | 18-34028 | 7811 |
| 98. | Senior Care Centers Home Health, LLC | 18-34030 | 1931 |
| 99. | Senior Care Centers LLC | 18-33967 | 8550 |
| 100. | Senior Rehab Solutions LLC | 18-34031 | 4829 |
| 101. | Senior Rehab Solutions North Louisiana LLC | 18-34033 | 1690 |
| 102. | Shreveport SCC LLC | 18-34034 | 1659 |
| 103. | Solutions 2 Wellness LLC | 18-34038 | 4065 |
| 104. | South Oaks SCC LLC | 18-34039 | 8002 |
| 105. | Springlake ALF SCC LLC | 18-34041 | 2436 |
| 106. | Springlake SCC LLC | 18-34042 | 9102 |
| 107. | Stallings Court SCC LLC | 18-33977 | 7393 |
| 108. | Stonebridge SCC LLC | 18-34044 | 9234 |
| 109. | Stonegate SCC LLC | 18-33978 | 3005 |
| 110. | Summer Regency SCC LLC | 18-34047 | 7782 |
| 111. | TRISUN Healthcare LLC | 18-34048 | 2497 |
| 112. | Valley Grande SCC LLC | 18-34051 | 1341 |
| 113. | Vintage  SCC LLC | 18-34053 | 7710 |
| 114. | West Oaks SCC LLC | 18-34055 | 9535 |
| 115. | Western Hills SCC LLC | 18-34056 | 1922 |
| 116. | Weston Inn SCC LLC | 18-34057 | 7871 |
| 117. | Westover Hills SCC LLC | 18-34059 | 3303 |
| 118. | Whitesboro SCC LLC | 18-34060 | 7745 |
| 119. | Windcrest SCC LLC | 18-34061 | 9541 |
| 120. | Windmill SCC LLC | 18-34062 | 8067 |
| 121. | Wurzbach SCC LLC | 18-34063 | 9920 |

65407093.4

## **Exhibit B**

Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| Senior Care Centers, LLC, *et al.*,[1] | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | |

**ORDER (I) AUTHORIZING CONTINUATION OF, AND PAYMENT OF
PREPETITION OBLIGATIONS INCURRED IN THE ORDINARY COURSE OF
BUSINESS IN CONNECTION WITH, VARIOUS INSURANCE POLICIES, (II)
AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC
TRANSFER REQUESTS RELATED THERETO, (III) PREVENTING INSURANCE
COMPANIES FROM GIVING ANY NOTICE OF TERMINATION OR OTHERWISE
MODIFYING ANY INSURANCE POLICY WITHOUT OBTAINING RELIEF FORM
THE AUTOMATIC STAY, (IV) AUTHORIZING THE DEBTORS TO CONTINUE TO
HONOR PREMIUM FINANCING OBLIGATIONS, AND (V) AUTHORIZING THE
DEBTORS TO CONTINUE THE SURETY BOND PROGRAM**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an (this "**Order**") (i)

authorizing continuation of, and payment of prepetition obligations incurred in the ordinary

course of business in connection with, various Insurance Policies, (ii) authorizing Banks to honor

and process checks and electronic transfer requests related thereto, (iii) preventing Insurers from

giving any notice of termination or otherwise modifying or cancelling any Insurance Policies

---

[1] A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is attached to the Motion as Exhibit A.
[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

without first obtaining relief from the automatic stay, (iv) authorizing, but not directing, the Debtors to continue to honor premium financing obligations, and (v) authorizing, but not directing, the Debtors to continue their surety bond program; the Court having reviewed the Motion and the First Day Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. 157 and §§ 1334(b); and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Debtors consent to entry of a final order under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED as set forth herein.

2. All objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3. The Debtors are authorized, but not directed, without interruption and in accordance with the same practices and procedures as were in effect before the Petition Date, to maintain and honor all of their prepetition Insurance Obligations under or in connection with the Insurance Policies in an amount not to exceed $2.3 million.

4. The Debtors are authorized to renew or to obtain new insurance policies or to execute other agreements in connection with the Insurance Policies.

2

5.      Each of the Banks are authorized to honor checks presented for payment and all fund transfer requests made by the Debtors, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this order and any other order of this Court.

6.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in connection with any Insurance Obligations that are dishonored or rejected.

7.      The Insurers are hereby prevented from giving any notice of termination or otherwise modifying or cancelling any Insurance Policies without first obtaining relief from the automatic stay imposed by Bankruptcy Code section 362.

8.      The Debtors are authorized to continue honoring all obligations incurred pursuant to the PFAs with Imperial.

9.      The Debtors are authorized to continue honoring all obligations incurred pursuant to the Surety Bond Program.

10.     The Debtors are authorized to continue honoring all obligations in connection with the Broker, including the payment of the Broker Fees.

11.     Nothing in the Motion or this Order, or the Debtors' payment of any claims pursuant to this Order, shall be deemed or construed as: (a) an admission as to the validity of any claim or lien against the Debtors or their estates, (b) a waiver of the Debtors' right to dispute any claim or lien, (c) an admission of the priority status of any claim, whether under Bankruptcy Code section 503(b)(9) or otherwise, (d) to the extent that an Insurance Policy is deemed an executory contract within the meaning of Bankruptcy Code section 365, an assumption or adoption of the policy or agreement as an executory contract, or (e) a modification of the

65407093.4

Debtors' rights to seek relief under any section of the Bankruptcy Code on account of any amounts owed or paid on account of any Insurance Policies.

12.     The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this order.

13.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

14.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

15.     Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Bankruptcy Rule that might otherwise delay the effectiveness of this order, the terms and conditions of this order shall be immediately effective and enforceable upon its entry.

16.     This Court shall retain jurisdiction over any and all matters arising from the interpretation, implementation, or enforcement of this Order.

### End of Order ###

65407093.4

## **Exhibit C**

Insurance Policies

| Type of Coverage | Insurance Carrier(s) | Address | Policy Number | Policy Term | Premium |
|---|---|---|---|---|---|
| Property | American Guarantee and Liability Insurance Company/Zurich | PO Box 968057 Schaumburg, IL 60196-8057 | ZMD0193986-02 | 5/1/2018– 5/1/2019 | $1,620,014.74 |
| General/Professional & Nose Coverage Liability (SCC & Trisun Locations) | Underwriter's at Lloyds London/Sapphie Blue | Sue.Walsh@sedgwick.com 501-954-2497 | SB-LTCA-01679-18 | 5/1/2018– 5/1/2019 | $1,661,100.00 |
| Excess GL, AL, EL (SCC & Trisun Locations) | Underwriter's at Lloyds London/Sapphie Blue | PO Box 14478 Lexington, KY 40572 | SB-LTCAX-01490-18 | 5/1/2018– 5/1/2019 | $259,087.51 |
| General/Professional Liability (Hollywood, Vegas  & Louisiana Locations) | Underwriter's at Lloyds London/Sapphie Blue | PO Box 14478 Lexington, KY 40572 | SB-LTCA-01680-18 | 5/1/2018– 5/1/2019 | $447,825.00 |
| Excess General/Professional Liability (Hollywood & Vegas Locations) | Underwriter's at Lloyds London/Sapphie Blue | PO Box 14478 Lexington, KY 40572 | SB-LTCAX-01492-18 | 5/1/2018– 5/1/2019 | $44,887.76 |
| Excess General Liability & Employers Liability (Louisiana Locations Only) | Underwriter's at Lloyds London/Sapphie Blue | PO Box 14478 Lexington, KY 40572 | SB-LTCAX-01491-18 | 5/1/2018– 5/1/2019 | $56,109.69 |
| Executive Risk (Directors & Officers, Employment Practices Liability, 3rd Party, Fiduciary & Crime) | Federal Insurance Company | 82 Hopmeadow Street Simsbury, Connecticut 06070-7683 | 8211-8486 | 5/1/2018– 5/1/2019 | $150,158.00 |
| Excess Directors & Officers | Ironshore Specialty Insurance Company | One State Street Plaza 8th Floor New York, NY 10004 | 003565600 | 5/1/2018– 5/1/2019 | $37,012.51 |
| Excess Directors & Officers | Allied World Surplus Lines Insurance Company | 1690 New Britain Ave. Suite 101 Farmington, CT 06032 | 355435 | 5/1/2018– 5/1/2019 | $18,112.51 |
| Commercial Auto (Texas Vehicles) | Philadelphia Indemnity Insurance Company | claimsreport@phlyins.com (800) 765-9749 | PHPK1811673 | 5/1/2018– 5/1/2019 | $250,188.00 |
| Commercial Auto (Louisiana Vehicles) | American Guarantee and Liability Insurance Company/Zurich | PO Box 968057 Schaumburg, IL 60196-8057 | BAP 0297391-01 | 5/1/2018– 5/1/2019 | $66,655.00 |
| Flood (Special Flood Hazard Area) | Landmark American Insurance Company | 945 East Paces Ferry Rd. Suite 1800 Atlanta, GA 30326-1160 | LHD423523 | 5/1/2018– 5/1/2019 | $64,575.00 |
| Flood (Moderate Flood Hazard Area) | Landmark American Insurance Company | 945 East Paces Ferry Rd. Suite 1800 Atlanta, GA 30326-1160 | LHD423524 | 5/1/2018– 5/1/2019 | $26,906.25 |
| Storage Tank Pollution Liability (Vintage SCC, LLC, 205 N Bonnie Brae, Denton, TX 76201) | Crum & Forster Specialty Insurance | 305 Madison Avenue Morristown, New Jersey 07960 | STP-113777 | 8/20/2018– 8/20/2019 | $3,441.90 |
| National Flood Insurance Gamble Hospice Care Cenla LLC 3805 Halsey St Ste C, Alexandria, LA | Hartford Insurance Company | Claims@floodpro.net (800) 759-8656 | 8706077080201 | 6/10/2018– 6/10/2019 | $3,323.00 |
| National Flood Insurance Community SCC LLC 2601 Northwest Loop, Stephenville, TX | Hartford Insurance Company | Claims@floodpro.net (800) 759-8656 | 8706077079201 | 6/10/2018– 6/10/2019 | $3,323.00 |
| National Flood Insurance Alief SCC LLC 8702 S Course Dr, Houston, TX | Hartford Insurance Company | Claims@floodpro.net (800) 759-8656 | 8706077077201 | 6/10/2018– 6/10/2019 | $3,323.00 |

| National Flood Insurance<br>La Hacienda SCC LLC<br>3730 W Orem Dr, Houston, TX | Hartford Insurance Company | Claims@floodpro.net<br>(800) 759-8656 | 87060770742018 | 6/10/2018-<br>6/10/2019 | $3,323.00 |
|---|---|---|---|---|---|
| National Flood Insurance<br>Clear Brook SCC LLC<br>10800 Flora Mae Meadows Rd<br>Houston, TX 77089 | Hartford Insurance Company | Claims@floodpro.net<br>(800) 759-8656 | 87060770732018 | 6/10/2018-<br>6/10/2019 | $3,323.00 |
| National Flood Insurance<br>Gamble Hospice Northeast LLC dba:<br>AIME<br>510 Trenton St, West Monroe, LA | Hartford Insurance Company | Claims@floodpro.net<br>(800) 759-8656 | 87060770822018 | 6/10/2018-<br>6/10/2019 | $660.00 |
| National Flood Insurance<br>Springlake ALF SCC LLC<br>8622 Line Ave, Shreveport, LA | Hartford Insurance Company | Claims@floodpro.net<br>(800) 759-8656 | 87060770992018 | 6/10/2018-<br>6/10/2019 | $725.00 |
| National Flood Insurance<br>Springlake SCC LLC (SNF)<br>8622 Line Ave., Shreveport, LA 71106 | Hartford Insurance Company | Claims@floodpro.net<br>(800) 759-8656 | 87060770912018 | 6/12/2018-<br>6/12/2019 | $3,323.00 |
| National Flood Insurance<br>SCC Corporate Office<br>8520 Business Park Dr., Shreveport,<br>LA | Hartford Insurance Company | Claims@floodpro.net<br>(800) 759-8656 | 87057604732018 | 5/1/2018-<br>5/1/2019 | $2,254.00 |
| National Flood Insurance<br>Senior Care of Meadow Creek<br>4343 Oak Grove Blvd., San Angelo,<br>TX | Hartford Insurance Company | Claims@floodpro.net<br>(800) 759-8656 | 87060340112018 | 1/8/2018-<br>1/1/2019 | $1,462.00 |
| National Flood Insurance<br>Mission SCC LLC<br>1013 S Bryan Rd, Mission, TX | Hartford Insurance Company | Claims@floodpro.net<br>(800) 759-8656 | 87047271072017 | 12/1/2017-<br>12/1/2018 | $751.00 |
| National Flood Insurance<br>205 N Bonnie Brae, Denton, TX | Hartford Insurance Company | Claims@floodpro.net<br>(800) 759-8656 | 87047952952017 | 5/29/2017-<br>5/29/2018 | $728.00 |
| National Flood Insurance<br>PM Management Lewisville NC LLC<br>700 E Vista Ridge Mall Dr,<br>Lewisville, TX | American Bankers Insurance Company | Claims@floodpro.net<br>(800) 759-8656 | 87052445562017 | 5/26/2017-<br>5/26/2018 | $3,323.00 |
| National Flood Insurance<br>7200 9th Ave., Port Arthur, TX 77642 | Hartford Insurance Company | Claims@floodpro.net<br>(800) 759-8656 | 87060839702018 | 6/24/2018-<br>6/24/2019 | $1,174.00 |
| National Flood Insurance<br>PM Management Goldent Triangle NC<br>IV<br>4225 Lake Arthur Dr, Port Arthur, TX | Hartford Insurance Company | Claims@floodpro.net<br>(800) 759-8656 | 87060873102018 | 7/4/2018-<br>7/4/2019 | $1,241.00 |
| National Flood Insurance<br>806 Brook Hollow Drive, Shreveport,<br>LA | Hartford Insurance Company | Claims@floodpro.net<br>(800) 759-8656 | 87060873162018 | 7/4/2018-<br>7/4/2019 | $1,066.00 |
| National Flood Insurance<br>788 Brook Hollow Dr, Shreveport, LA | Hartford Insurance Company | Claims@floodpro.net<br>(800) 759-8656 | 87060873192018 | 7/4/2018-<br>7/4/2019 | $773.00 |
| Named Storm Deductible Buy Down | Underwriters at Lloyds/B&R | To be supplemented | EW0055218 | 5/1/2018-<br>5/1/2019 | $328,814.85 |
| General/Professional Extended<br>Reporting Period for<br>Winters Park Assisted Living (3450<br>Wagon Wheel Road, Garland, TX) | Underwriter's at Lloyds London/Sapphie Blue | To be supplemented | SB-LTCA-01498-16 | 6/23/2016-<br>9/23/2018 | $6,520.51 |
| General/Professional Extended<br>Reporting Period for Trisun Care<br>Center - Sinton (936 W 4th Street,<br>Sinton, TX) | Underwriter's at Lloyds London/Sapphie Blue | PO Box 14478<br>Lexington, KY 40572 | SB-LTCA-01539-16 | 10/1/2016-<br>12/1/2018 | $26,460.00 |
| Cyber Liability | Underwriter's at Lloyds London | 1270 Avenue of the Americas<br>12th Floor<br>New York, NY 10020 | W1A231170301 | 11/19/2017-<br>11/19/2018 | $34,695.15 |

2

65407093.4

| | | | | | |
|---|---|---|---|---|---|
| Louisiana Patient Fund-<br>Senior Care Center Management, LLC | LA Patient's Compensation Fund | To be supplemented | | 5/1/2018-<br>5/1/2019 | $334,138.57 |
| Louisiana Patient Fund –<br>Bradford SCC, LLC dba: The<br>Bradford Rehabilitation Center | LA Patient's Compensation Fund | To be supplemented | Enrollee<br>R.S.40:1231:1 | 5/1/2018-<br>5/1/2019 | Included |
| Louisiana Patient Fund -<br>Shreveport SCC, LLC dba: SCC of<br>Shreveport Manor Rehabilitation<br>Center | LA Patient's Compensation Fund | To be supplemented | Enrollee<br>R.S.40:1231:1 | 5/1/2018-<br>5/1/2019 | Included |
| Louisiana Patient Fund –<br>Booker SCC, LLC dba: SCC Booker<br>T. Washington Rehabilitation Center | LA Patient's Compensation Fund | To be supplemented | Enrollee<br>R.S.40:1231:1 | 5/1/2018-<br>5/1/2019 | Included |
| Louisiana Patient Fund -<br>Springlake ALF SCC, LLC dba: The<br>Gables at Spring Lake Assisted Living | LA Patient's Compensation Fund | To be supplemented | Enrollee<br>R.S.40:1231:1 | 5/1/2018-<br>5/1/2019 | Included |
| Louisiana Patient Fund -<br>Springlake SCC, LLC dba: SCC of<br>Springlake Rehabilitation Center | LA Patient's Compensation Fund | To be supplemented | Enrollee<br>R.S.40:1231:1 | 5/1/2018-<br>5/1/2019 | Included |
| Louisiana Patient Fund -<br>Colonial SCC, LLC dba: SCC of<br>Colonial Oaks Rehabilitation Center | LA Patient's Compensation Fund | To be supplemented | Enrollee<br>R.S.40:1231:1 | 5/1/2018-<br>5/1/2019 | Included |
| Louisiana Patient Fund -<br>Bossier SCC, LLC dba: SCC of<br>Pilgrim Manor Rehabilitation Center | LA Patient's Compensation Fund | To be supplemented | Enrollee<br>R.S.40:1231:1 | 5/1/2018-<br>5/1/2019 | Included |
| Louisiana Patient Fund -<br>Ruston SCC, LLC dba: SCC of Alpine<br>Rehabilitation Center | LA Patient's Compensation Fund | To be supplemented | Enrollee<br>R.S.40:1231:1 | 5/1/2018-<br>5/1/2019 | Included |
| Louisiana Patient Fund -<br>Gamble Hospice Care Northwest, LLC<br>dba: AIME Hospice Care | LA Patient's Compensation Fund | To be supplemented | Enrollee<br>R.S.40:1231:1 | 5/1/2018-<br>5/1/2019 | Included |
| Louisiana Patient Fund -<br>Gamble Hospice Care of Cenla, LLC<br>dba: AIME Hospice Care | LA Patient's Compensation Fund | To be supplemented | Enrollee<br>R.S.40:1231:1 | 5/1/2018-<br>5/1/2019 | Included |
| Louisiana Patient Fund -<br>Gamble Hospice Care Central, LLC<br>dba: AIME Hospice Care | LA Patient's Compensation Fund | To be supplemented | Enrollee<br>R.S.40:1231:1 | 5/1/2018-<br>5/1/2019 | Included |
| Louisiana Patient Fund -<br>Gamble Hospice Care Northeast, LLC<br>dba: AIME Hospice Care | LA Patient's Compensation Fund | To be supplemented | Enrollee<br>R.S.40:1231:1 | 5/1/2018-<br>5/1/2019 | Included |
| Louisiana Patient Fund -<br>Normandie SCC LLC dba: The Guest<br>House Rehabilitation Center | LA Patient's Compensation Fund | To be supplemented | License 2203782544 | 5/1/2018-<br>5/1/2019 | Included |
| Louisiana Patient Fund -<br>Senior Rehab Solutions North<br>Louisiana, LLC | LA Patient's Compensation Fund | To be supplemented | Enrollee<br>R.S.40:1231:1 | 5/1/2018-<br>5/1/2019 | Included |
| Key Man Life Insurance - Kerr | To be supplemented | To be supplemented | AD20486127 | 10-year term | $4,698 (Annual) |
| Key Man Life Insurance - Brandley | To be supplemented | To be supplemented | AD20581612 | 10-year term | $1,392 (Annual) |
| Workers Compensation (Senior Rehab<br>Solutions, LLC) (AZ) (KS) (NM)<br>(NY-being added 11/1/2017 | Wesco Insurance Company (AmTrust) | P O Box 6939<br>Cleveland Ohio 44101-1939 | WWC3342174 | 3/21/2018-<br>3/21/2019 | $114,095.00 |
| Workers Compensation (Senior Rehab<br>Solutions, LLC) (CO) | Milwaukee Casualty Insurance Co (AmTrust) | P O Box 6939<br>Cleveland Ohio 44101-1939 | MWC1021905 | 3/1/2018-<br>3/1/2019 | $20,154.00 |
| Workers Compensation (Senior Rehab<br>Solutions LLC) California | Technology Insurance Co (AmTrust) | P O Box 6939<br>Cleveland Ohio 44101-1939 | TWC3704207 | 5/1/2018-<br>5/1/2019 | $13,180.00 |
| Workers Compensation (Rehab<br>Services PT OT SLP LLC) (NY) | New York State Insurance Fund | P O Box 5239<br>New York NY 10008-5239 | K23999295 | 10/1/2017-<br>10/1/2018 | $83,304.00 |
| Disability Coverage (Rehab Services<br>PT OT SLP LLC) (NY) | New York State Insurance Fund | P O Box 5239<br>New York NY 10008-5239 | DBL6794896 | 10/1/2017-<br>10/1/2018 | $248.00 |

65407093.4

| TX Non-Subscript (Senior Care Centers LLC) | North American Specialty Insurance Company | P O Box 819045<br>Dallas TX 753841-9045 | EPG1000053-07 | 5/1/2018-<br>5/1/2019 | $347,414.00 |
|---|---|---|---|---|---|
| TPA (Senior Care Centers LLC) | Anchor Insurance | P O Box 819045<br>Dallas TX 75382 | None | 5/1/2018 –<br>5/1/2019 | $202.00 per Record Only $605.00 per Medical Only Indemnity Blended Fee |
| Workers Compensation (Senior Care Centers LLC) (LA) | Great American | P O Box 89400<br>Cleveland OH 44101-6400 | WC217817000 | 9/1/2018-<br>9/1/2019 | $327,669.00 |
| Workers Compensation Loss Fund Security (Senior Care Centers) (LA) | Great American | 301 East Fourth Street<br>Cincinnati OH 45202-4201 | WC217817000 | 9/1/2018-<br>9/1/2019 | $525,000.00 |
| Workers Compensation Claim Admin Fee (Senior Care Centers) (LA) | Great American | P O Box 89400<br>Cleveland OH 44101-6400 | WC217817000 | 9/1/2018-<br>9/1/2019 | $37,291.00 |
| Accident Coverage (Senior Care Centers LLC) - Volunteers | AIG | P O Box 35540<br>Newark NJ 07193-5540 | SRG0009149607 | 7/8/2018-<br>7/8/2019 | $500 |

4