

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____

**Signed December 7, 2018**                                           **United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| Senior Care Centers, LLC, *et al.*,[1] | § § § | Case No. 18-33967 (BJH) |
| Debtors. | § | (Jointly Administered) |

**INTERIM ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) SETTING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an interim order (this "**Interim Order**") and findings of fact and conclusions of law (the "**Findings of Fact and Conclusions of Law**") (i) authorizing the Debtors to use the Cash Collateral of CIBC Bank USA, as Administrative Agent for itself and for CIT Finance LLC, MB Financial Bank, N.A., Bankers Trust Company, Wells Fargo Bank, N.A., and Compass Bank (collectively, the "**Lenders**"), (ii) granting the Administrative Agent, for the benefit of the Lenders, adequate

---

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as <u>Exhibit 1</u>.
[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

66364803.10

protection upon the terms set forth in this Interim Order and in any final orders, (iii) modifying the automatic stay, (iv) scheduling a final hearing on the Motion and approving the form and manner of notice thereof, and (v) granting such other and further relief as the Court deems just and appropriate; the Court having reviewed the Motion and the First Day Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b); and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Debtors consented to entry of a final order under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given, under the circumstances, and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor:

**IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is granted on an interim basis in accordance with the terms and conditions of this Interim Order.

2. <u>Use of Cash Collateral</u>. Subject to the terms and conditions set forth in this Interim Order, the Debtors are, through and including the earlier of (a) forty-five (45) days from the date of entry of this Interim Order, (b) the conclusion of the final hearing on the Debtors' use of Cash Collateral, or (c) termination of this Interim Order following issuance of a Termination Notice as set forth in <u>Paragraph 11</u> below, authorized pursuant to Bankruptcy Code sections 105, 361, 362, and 363, and Bankruptcy Rules 2002, 4001, 6003, and 9014 to use Cash Collateral on

an interim basis. The Cash Collateral may only be used to fund the types and corresponding amounts of itemized expenditures contained in the budget attached hereto as Exhibit 2 (the "**Budget**"); provided, however, that the Debtors may use Cash Collateral in excess of the amount designated for a particular line-item so long as the percentage of deviation of each line item during any rolling 4-week period does not exceed ten percent (10%) (the "**Variance**"); and provided further that the Debtors many not amend or modify the terms and conditions of their use of the Cash Collateral, or amend, modify, roll-forward or replace the Budget itself, without the prior written consent of the Administrative Agent, which may be granted or withheld in the Administrative Agent's reasonable discretion.

       3.       Reporting. As additional protection for the Debtors' use of Cash Collateral, the Debtors shall allow the Administrative Agent and its respective professionals and designees reasonable access, during normal business hours, to the premises of the Debtors in order to conduct appraisals, analyses, and/or audits of the Prepetition Collateral, and shall otherwise reasonably cooperate in providing any other financial information requested by the Administrative Agent for this purpose. From and after the entry of this Interim Order, the Debtors shall provide to the Administrative Agent on Wednesday of each week (commencing with the second week after the Petition Date), a weekly report (the "**Weekly Budget Report**") certified by the Debtors' chief financial officer and in the same form as the Budget indicating all receipts received and disbursements made by the Debtors in the week ending the prior Friday compared to the Budget and detailing any variances of more than 10% from the disbursements and receipts in the Budget. The Debtors, and their professionals and consultants, shall be available weekly (subject to reasonable scheduling conflicts) for a telephonic conference call with the Administrative Agent and/or its professionals to discuss the status of the Bankruptcy

3

Cases, the results of operations and other matters pertaining to the Debtors' facilities, including any sale or restructuring efforts. The Administrative Agent shall have independent access to the Debtors' financial advisors to discuss matters relating to the Debtors, including any contemplated sale or restructuring of the Debtors. The Debtors shall provide to the Administrative Agent such other reports and information as the Administrative Agent may reasonably request from time to time.

4. <u>Adequate Protection; Replacement Liens</u>. The Administrative Agent and the Lenders are entitled, pursuant to Bankruptcy Code sections 361 and 363(e), to adequate protection of their interests in the Prepetition Collateral, including, but not limited to, the Cash Collateral, for any diminution in value of their interests in the Prepetition Collateral, including, without limitation, any such diminution resulting from the Debtors' use of Cash Collateral and any other Prepetition Collateral and the imposition of the automatic stay pursuant to Bankruptcy Code section 362. As security for and solely to the extent of any diminution in the value of Prepetition Collateral from and after the Petition Date, calculated in accordance with Bankruptcy Code section 506(a) (a "**Diminution in Value**"), the Administrative Agent and the Lenders are hereby granted senior priority replacement liens upon all assets and property of the Debtors and their estates of any kind or nature whatsoever, now existing or hereafter acquired, including, without limitation, the Prepetition Collateral (the "**Replacement Liens**"), but excluding all claims and causes of action, and the products and proceeds thereof, arising under or permitted by Bankruptcy Code sections 502(d), 506(c), 544, 545, 547, 548, 549, and 550 and any other avoidance claims and causes of action arising under state or federal law; <u>provided</u>, <u>however</u>, that the Replacement Liens shall be subject and subordinate to (a) the Carve-Out (as defined below), and (b) the Prior Senior Liens. The Replacement Liens so granted are in addition to all security

4

interests, liens, and rights of setoff existing in favor of the Administrative Agent or the Lenders on the Petition Date, and are and shall be valid, perfected, enforceable, and effective as of the Petition Date without any further action of the Debtors or the Administrative Agent and without the necessity of the execution, filing or recording of any financing statements, security agreements, deeds of trust, or other documents, or of obtaining control agreements over bank accounts. Notwithstanding the foregoing, the Administrative Agent is hereby authorized, but not required, to file or record any financing statements, security agreements, deeds of trust, or other documents in any jurisdiction or take any other action in order to validate and perfect the Replacement Liens granted hereunder.

5.     Adequate Protection; 507(b) Priority Claim. The Administrative Agent and the Lenders are hereby granted an administrative claim with a priority equivalent to a claim under Bankruptcy Code sections 364(c)(1), 503(b), and 507(b), on a dollar-for-dollar basis for and solely to the extent of any Diminution in Value, which administrative claim shall, among other things, have priority over all other costs and expenses of the kind specified in, or ordered pursuant to, Bankruptcy Code sections 105, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 1113, and 1114 (the "**Superpriority Administrative Claim**"), except for expenditures constituting the Carve-Out.

6.     Bankruptcy Code Section 506(c) Waiver. Except as set forth in Paragraph 9 below, the entry of this Interim Order by the Court shall be a conclusive and binding determination on all parties (a) as to the scope, extent, perfection, validity and enforceability, in all respects, of the Administrative Agent's and the Lenders' security interests and liens in the Prepetition Collateral, including, without limitation, the Cash Collateral, and (b) that such liens and security interests shall not be subject to any claim under Bankruptcy Code section 552(b).

66364803.10

The entry of an order by the Court approving the Cash Collateral Motion on a final basis (the "**Final Order**") shall be a conclusive and binding determination on all parties that the Administrative Agent's and the Lenders' security interests in the Prepetition Collateral, including, without limitation, the Cash Collateral, are and shall not be subject to any claim under Bankruptcy Code section 506(c), which claims shall be deemed to be waived at that time.

7. <u>Adequate Protection; Fees and Expenses</u>. The Debtors are hereby authorized and directed to pay the reasonable and documented fees and expenses of the Administrative Agent's outside legal and financial advisors in accordance with the Budget on a regular monthly basis during these Chapter 11 Cases. The Administrative Agent shall provide copies of invoices to the Debtors, the U.S. Trustee and any Committee appointed in the cases, each of whom shall have ten (10) days to object to the fees and expenses sought under this paragraph. Notwithstanding the foregoing, the Administrative Agent and the Lenders reserve their right to assert claims for the payment of additional amounts provided for in the Credit Financing Documents, and to seek additional or further adequate protection from the Court.

8. <u>Carve-Out</u>. The Replacement Liens and Superpriority Administrative Claim granted hereunder shall be junior and subordinate to the following fees and expenses (the "**Carve-Out**"): (a) all budgeted accrued but unpaid fees and expenses (the "**Professional Fees and Expenses**") of the attorneys, accountants, or other professionals retained by the Debtors, health care ombudsman and any statutory committee of unsecured creditors appointed in these Chapter 11 Cases under Bankruptcy Code sections 327 or 1103(a) (the "**Committee**", and collectively, the "**Professionals**") incurred until the earlier of (1) forty-five (45) days from the date of entry of this Interim Order; (2) the entry of the Final Order, or (3) the delivery of a Termination Notice; (b) Professional Fees and Expenses in the maximum amount of $150,000

incurred after delivery of a Termination Notice; and (c) the payment of fees pursuant to 28 U.S.C. § 1930, provided that all such fees and expenses (other than the fees referenced in (c) herein), shall be subject to approval by a final order of the Court pursuant to Bankruptcy Code sections 326, 328, 330, 331, or 363. Notwithstanding anything to the contrary set forth herein, no Cash Collateral nor any portion of the Carve-Out may be used to prosecute actions, claims, demands or causes of action against the Administrative Agent or the Lenders, or to object to or contest in any manner, or to raise any defense in any pleading to the validity, perfection, priority, or enforceability of the Administrative Agent's or the Lenders' liens and security interests against the Prepetition Collateral or the Replacement Liens; provided, however, that the Cash Collateral may be used by the Committee and its professionals, to the extent provided in the Budget, to perform due diligence with respect to the validity, perfection priority or enforceability of the Administrative Agent's liens and security interests against the Prepetition Collateral or the Replacement Liens. The Debtors and the Lender intend to seek a Final Order which shall contain a conclusive and binding determination on all parties that except for the Carve-Out, no costs or expenses of administration shall be imposed against the Administrative Agent or the Lenders or the Prepetition Collateral, including, without limitation, the Cash Collateral, under Bankruptcy Code sections 105 or 506(c), or otherwise.

9. <u>Parties in Interest Bound</u>.

   a. The admissions and stipulations contained in <u>Paragraphs C</u> and <u>D</u> of the Findings of Fact and Conclusion of Law shall be binding on the Debtors under all circumstances and shall be binding upon all other parties-in-interest, including, without limitation, any Committee and any Chapter 7 or Chapter 11 trustee that may be appointed or elected on behalf of the Debtors' estates, except to the extent that (i) a party-in-interest has filed an adversary proceeding or contested matter challenging the validity, enforceability or priority of the Prepetition Obligations or the liens on the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action against the Administrative Agent or the Lenders on

behalf of the Debtors' estates, no later than the date that is sixty (60) days from the date of the appointment of a Committee (the "**Challenge Deadline**"), and (ii) the Court rules in favor of the plaintiff in any such timely filed adversary proceeding or contested matter. If any such adversary proceeding or contested matter is timely commenced as of the Challenge Deadline, the admissions contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in this paragraph) except to the extent that such acknowledgments and agreements are expressly challenged in such adversary proceeding or contested matter.

b. If no such adversary proceeding or contested matter is commenced as of the Challenge Deadline, then (i) the Prepetition Obligations shall constitute allowed secured claims, not subject to subordination (other than as set forth herein with respect to the Carve-Out and the Prior Senior Liens), or avoidance, for all purposes in these Chapter 11 cases and any subsequent Chapter 7 case, (ii) the liens securing the Prepetition Obligations on the Prepetition Collateral shall be deemed legal, valid, binding, duly authorized, perfected, not subject to defense, counterclaim, recharacterization, offset of any kind, or subordination, other than as set forth herein, and otherwise unavoidable, (iii) the Prepetition Obligations, the liens on the Prepetition Collateral, and the Replacement Liens shall not be subject to any other or further challenge by any party-in-interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto, and (iv) the Administrative Agent and the Lenders shall be deemed released from any and all rights, claims, causes of action and liabilities arising from or in connection with the Prepetition Obligations, the Prepetition Collateral, the Credit Facility Documents and/or the extension of credit or other financial accommodations thereunder or with respect thereto.

10. <u>Events of Default</u>. Each of the following shall constitute an event of default ("**Event of Default**") with respect to the Debtors' authorization to use Cash Collateral hereunder, unless otherwise waived in writing by the Administrative Agent:

a. entry of an order converting any of these Chapter 11 cases to a case under Chapter 7 of the Bankruptcy Code;

b. entry of an order dismissing any of these Chapter 11 cases;

c. entry of an order appointing or directing the election of a trustee or an examiner with expanded powers for any of the Debtors under Bankruptcy Code sections 1104 or 1106(b);

d. without the prior written consent of the Administrative Agent, the entry of any order (or other judicial action which has the effect of) amending,

8

        reversing, supplementing, staying the effectiveness of, vacating, or otherwise modifying this Interim Order;

   e.    any of the Debtors uses Cash Collateral for any purpose or in a manner other than as permitted in this Interim Order and in the Budget or otherwise fails to comply with any term of this Interim Order;

   f.    entry of an order by the Bankruptcy Court authorizing relief from stay by any person (other than the Administrative Agent or the Lenders) on or with respect to all or any portion of the Prepetition Collateral with a value in excess of $50,000;

   g.    the filing by any of the Debtors of any pleading objecting to or seeking to challenge the Administrative Agent's or the Lenders' claims with respect to the Prepetition Obligations or the Administrative Agent's lien upon Cash Collateral or the Prepetition Collateral or otherwise asserting rights, claims or causes of action against the Administrative Agent or the Lenders with respect to the Prepetition Obligations;

   h.    the filing by any of the Debtors of any debtor-in-possession financing pleadings or any documents pertaining to a debtor-in-possession financing not acceptable to and supported by the Administrative Agent;

   i.    the filing by any of the Debtors of any bid procedure and/or sale documents relating to the sale of the Prepetition Collateral, postpetition collateral subject to the Replacement Lien, and/or Cash Collateral not acceptable to and supported by the Administrative Agent; or

   j.    any of the Debtors voluntarily or involuntarily dissolves or is dissolved, liquidates or is liquidated or ceases the operation of any material portion of its business.

11.    <u>Termination Notice</u>. Immediately upon the occurrence or existence of an Event of Default, the Administrative Agent shall be authorized to issue a notice (a "**Termination Notice**") thereof which will be filed with the Court with copies to the Debtors, their counsel, counsel to any Committee and the U.S. Trustee, which Termination Notice may be delivered by electronic mail. The court will consider such Termination Notice on an expedited basis.

12.    <u>Failure of Adequate Protection</u>. Nothing herein shall constitute a waiver, release or modification of the rights of the Administrative Agent or the Lenders to assert a claim under Bankruptcy Code sections 364(c) and 507(b).

13. <u>Automatic Stay</u>. The automatic stay under Bankruptcy Code section 362(a) shall be, and it hereby is, vacated and modified to the extent necessary to permit (i) the Administrative Agent and the Lenders to receive and apply payments made pursuant to this Interim Order in accordance with the terms and provisions of this Interim Order and the Budget, and (ii) to permit the Administrative Agent to send the Termination Notice (as defined herein) and to exercise any rights and remedies or other action authorized or contemplated by this Interim Order, subject to the terms and conditions contained herein.

14. <u>Deemed Request for Stay Relief</u>. This Interim Order shall be deemed to constitute a request by the Administrative Agent and the Lenders for relief from the automatic stay with respect to the Prepetition Collateral (but solely to the extent provided by this Interim Order), for adequate protection for the use of Cash Collateral as of the Petition Date, and shall suffice for all purposes of Bankruptcy Code section 507(b).

15. <u>CMS Reservation of Rights</u>. Nothing in this Order shall restrain, limit or impact any action by the U.S. Department of Health & Human Services, the Centers for Medicare and Medicaid Services or Medicare Administrative Contractors to implement the Medicare program. Nothing contained herein shall affect, modify or impair any governmental unit's recoupment or setoff rights, claims, or defenses. Nothing contained in this Order should be construed to affect the exclusive jurisdiction of the U.S. Department of Health & Human Services to adjudicate and pay Medicare claims in the ordinary course.

16. <u>No Duty to Monitor Compliance</u>. The Administrative Agent may assume that the Debtors will comply with all terms and conditions of this Interim Order and the Budget and shall not (a) be obligated to ensure or monitor the Debtors' compliance with any financial covenants, formulae or other terms and conditions of this Interim Order or the Credit Facility Documents,

66364803.10

(b) be obligated to pay (directly or indirectly from Cash Collateral or otherwise) any expenses incurred or authorized to be incurred pursuant to this Interim Order or in connection with the operation of the Debtors' businesses, or (c) be obligated to ensure or monitor that Cash Collateral exists to pay such expenses.

17. <u>No Waiver</u>. The failure of the Administrative Agent or the Lenders to seek relief or otherwise exercise their rights and remedies under this Interim Order or the Credit Facility Documents, as applicable, shall not constitute a waiver of any of Administrative Agent's or Lenders' rights hereunder, thereunder or otherwise.

18. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holders or any direct, indirect or incidental beneficiary.

19. <u>Section 552(b)</u>. In light of their agreement to subordinate their liens and superpriority claims to the Carve-Out, the Debtors and the Lender intend that the Final Order shall provide that the Administrative Agent and the Lenders shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Administrative Agent or the Lenders with respect to products and proceeds of any of the Prepetition Collateral.

20. <u>Effect of Order</u>. This Interim Order shall be effective upon its entry and not subject to any stay (notwithstanding anything to the contrary contained in the Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3)). The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered (a) confirming any plan of reorganization; (b) dismissing any one of these Chapter 11 cases; (c) converting any one of these Chapter 11 cases to any other chapter under the Bankruptcy Code; (d) withdrawing

66364803.10

of the reference of any one of these Chapter 11 cases from the Court; and (e) providing for abstention from handling or retaining of jurisdiction of any one of these Chapter 11 cases in the Court.

21. <u>Amendments and Waivers</u>. Any amendment, modification, supplement or waiver of any provision in this Interim Order shall be in writing, signed by the Debtors and the Administrative Agent, and approved by the Court on appropriate notice by the Debtors.

22. <u>The Administrative Agent Not in Control of Debtors' Operations</u>. With respect to the Debtors' use of Cash Collateral pursuant to this Interim Order and any subsequent interim or final order, or any actions reasonably related to this Interim Order, the Motion or the Credit Facility Documents, neither the Administrative Agent, nor its respective agents, employees, attorneys or representatives, shall have any liability to any third party (including creditors of the Debtors) and shall not be deemed to be in control of the Debtors' operations or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

23. <u>Order Governs</u>. In the event of any inconsistency between the provisions of this Interim Order and the Motion, the provisions of this Interim Order shall govern.

24. <u>CCP Adequate Protection.</u> For purposes of this Interim Order only, subject to that certain Second Amended and Restated Intercreditor Agreement dated April 28, 2017, and subject to the rights and defenses of the Debtors and the Lender, as adequate protection for Debtors' use of CCP Landlords'[3] cash collateral (as such term is defined in 11 USC § 363(a)), (i) Debtors hereby grant to CCP Landlords replacement liens and security interests in those certain assets of

---

[3] "CCP Landlords" means, collectively, Sabra Health Care REIT, Inc., Sabra Texas Holdings, L.P., Sabra Texas Holdings II, L.P., CCP Pilgrim Manor 7610 LLC, CCP Spring Lake 7611 LLC, CCP Bradford 7612 LLC, CCP Guest House 7613 LLC, CCP Alpine 7614 LLC, CCP Colonial Oaks 7615 LLC, CCP Shreveport Manor 7616 LLC, CCP Booker T. Washington 7617 LLC, and CCP Finance I LLC.

66364803.10

Debtors described as CCP Landlords' collateral in the pre-petition loan documents and leases existing among CCP Landlords and Debtors to the extent valid, effective and perfected as of the Petition Date; and (ii) Debtors hereby grant to CCP Landlords replacement security interests and liens in any assets of Debtors' estate acquired on or after the Petition Date (including postpetition accounts receivables) in which CCP Landlords would have had a valid, effective and perfected lien or security interest (collectively, the "Adequate Protection Liens").

25.    Second Interim Hearing. The Second Interim Hearing on the Motion will be scheduled for December 27, 2018, at 1:00 p.m. CST (the "**Final Hearing**"). The Debtors will provide notice of the Final Hearing by first class mail to (a) counsel for the Administrative Agent, (b) counsel for the Committee, (c) the Office of the United States Trustee, (d) all parties who have filed requests for notice under Bankruptcy Rule 2002, (e) the holders of the forty (40) largest unsecured claims against the Debtors on a consolidated basis, and (g) such other parties as this Court may order. Any party wishing to object to the relief granted herein being granted on a permanent basis shall file such objection with the Court, together with proof of service thereof, and served upon: (a) counsel for the Debtors; (b) counsel for the Administrative Agent; (c) counsel for any Committee; and (d) the Office of the United States Trustee, so as to be received no later than December 19, 2018 at 4:00 p.m. CST (the "**Objection Deadline**"). If no objections are filed and served on or before the Objection Deadline, at the Final Hearing, the Court may enter a final order permitting the use of Cash Collateral by the Debtor.

###End of Order###

Ordered submitted by:

**POLSINELLI PC**

*/s/      Trey A. Monsour*
Trey A. Monsour
State Bar No. 14277200
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

-and-

Jeremy R. Johnson (*Pro Hac Vice* Pending)
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## **Exhibit 1**

(Sorted Alphabetically)

| #   | Debtor Name                          | Case No.  | EIN  |
|-----|--------------------------------------|-----------|------|
| 1.  | Alief SCC LLC                        | 18-33987  | 0523 |
| 2.  | Bandera SCC LLC                      | 18-33989  | 0617 |
| 3.  | Baytown SCC LLC                      | 18-33992  | 0778 |
| 4.  | Beltline SCC LLC                     | 18-33996  | 7264 |
| 5.  | Booker SCC LLC                       | 18-33999  | 0967 |
| 6.  | Bossier SCC LLC                      | 18-34003  | 2017 |
| 7.  | Bradford SCC LLC                     | 18-34004  | 9535 |
| 8.  | Brinker SCC LLC                      | 18-34005  | 7304 |
| 9.  | Brownwood SCC LLC                    | 18-33968  | 0677 |
| 10. | Capitol SCC LLC                      | 18-34006  | 1750 |
| 11. | CapWest-Texas LLC                    | 18-34008  | 4897 |
| 12. | Cedar Bayou SCC LLC                  | 18-34010  | 8889 |
| 13. | Clear Brook SCC LLC                  | 18-34012  | 1877 |
| 14. | Colonial SCC LLC                     | 18-34014  | 4385 |
| 15. | Community SCC LLC                    | 18-33969  | 7951 |
| 16. | Corpus Christi SCC LLC               | 18-34016  | 9807 |
| 17. | Crestwood SCC LLC                    | 18-34017  | 7349 |
| 18. | Crowley SCC LLC                      | 18-33970  | 6697 |
| 19. | CTLTC Real Estate, LLC               | 18-34018  | 0202 |
| 20. | Fairpark SCC LLC                     | 18-34020  | 7381 |
| 21. | Gamble Hospice Care Central LLC      | 18-34022  | 6688 |
| 22. | Gamble Hospice Care Northeast LLC    | 18-34025  | 6661 |
| 23. | Gamble Hospice Care Northwest LLC    | 18-34027  | 2044 |
| 24. | Gamble Hospice Care of Cenla LLC     | 18-34029  | 4510 |
| 25. | Green Oaks SCC LLC                   | 18-33971  | 7218 |
| 26. | Harbor Lakes SCC LLC                 | 18-33972  | 7299 |
| 27. | Harden HUD Holdco LLC                | 18-34032  | 1502 |
| 28. | Harden Non-HUD Holdco LLC            | 18-34035  | 3391 |
| 29. | Harden Pharmacy LLC                  | 18-34036  | 1995 |
| 30. | Hearthstone SCC LLC                  | 18-34037  | 9154 |
| 31. | Hewitt SCC LLC                       | 18-33973  | 7237 |
| 32. | HG SCC LLC                           | 18-34040  | 7415 |
| 33. | Hill Country SCC LLC                 | 18-34043  | 4199 |
| 34. | Holland SCC LLC                      | 18-33974  | 1427 |
| 35. | Hunters Pond SCC LLC                 | 18-34045  | 2886 |
| 36. | Jacksonville SCC LLC                 | 18-34046  | 4216 |
| 37. | La Hacienda SCC LLC                  | 18-34049  | 1074 |
| 38. | Lakepointe SCC LLC                   | 18-34050  | 7457 |
| 39. | Major Timbers LLC                    | 18-34052  | 7477 |
| 40. | Marlandwood East SCC LLC             | 18-34054  | 1871 |

| #   | Debtor Name                                 | Case No.  | EIN  |
|-----|---------------------------------------------|-----------|------|
| 41. | Marlandwood West SCC LLC                    | 18-34058  | 2192 |
| 42. | Meadow Creek SCC LLC                        | 18-34064  | 9278 |
| 43. | Midland SCC LLC                             | 18-34065  | 4231 |
| 44. | Mill Forest Road SCC LLC                    | 18-34066  | 5137 |
| 45. | Mission SCC LLC                             | 18-33975  | 8086 |
| 46. | Mullican SCC LLC                            | 18-34067  | 7499 |
| 47. | Mystic Park SCC LLC                         | 18-34068  | 1898 |
| 48. | Normandie SCC LLC                           | 18-34069  | 1542 |
| 49. | Onion Creek SCC LLC                         | 18-34070  | 7425 |
| 50. | Park Bend SCC LLC                           | 18-34071  | 9410 |
| 51. | Pasadena SCC LLC                            | 18-34072  | 1694 |
| 52. | Pecan Tree SCC LLC                          | 18-34073  | 4241 |
| 53. | Pecan Valley SCC LLC                        | 18-34074  | 9585 |
| 54. | Pleasantmanor SCC LLC                       | 18-34075  | 7536 |
| 55. | PM Management - Allen NC LLC                | 18-34076  | 4961 |
| 56. | PM Management - Babcock NC LLC              | 18-34077  | 7829 |
| 57. | PM Management - Cedar Park NC LLC           | 18-34078  | 1050 |
| 58. | PM Management - Corpus Christi NC II LLC    | 18-34079  | 5231 |
| 59. | PM Management - Corpus Christi NC III LLC   | 18-34080  | 5129 |
| 60. | PM Management - Corsicana NC II LLC         | 18-34081  | 9281 |
| 61. | PM Management - Corsicana NC III LLC        | 18-34082  | 9353 |
| 62. | PM Management - Corsicana NC LLC            | 18-34083  | 1333 |
| 63. | PM Management - Denison NC LLC              | 18-34084  | 5022 |
| 64. | PM Management - El Paso I NC LLC            | 18-34085  | 2965 |
| 65. | PM Management - Fredericksburg NC LLC       | 18-34086  | 0599 |
| 66. | PM Management - Frisco NC LLC               | 18-34087  | 5082 |
| 67. | PM Management - Garland NC LLC              | 18-33979  | 5137 |
| 68. | PM Management - Golden Triangle NC I LLC    | 18-33980  | 9478 |
| 69. | PM Management - Golden Triangle NC II LLC   | 18-33981  | 9536 |
| 70. | PM Management - Golden Triangle NC III LLC  | 18-33982  | 9597 |
| 71. | PM Management - Golden Triangle NC IV LLC   | 18-33983  | 9654 |
| 72. | PM Management - Killeen I NC LLC            | 18-33984  | 3105 |
| 73. | PM Management - Killeen II NC LLC           | 18-33985  | 3179 |
| 74. | PM Management - Killeen III NC LLC          | 18-33986  | 3245 |
| 75. | PM Management - Lewisville NC LLC           | 18-33988  | 5296 |
| 76. | PM Management - New Braunfels NC LLC        | 18-33990  | 6293 |
| 77. | PM Management - Park Valley NC LLC          | 18-33991  | 7186 |
| 78. | PM Management - Pflugerville AL LLC         | 18-33993  | 4007 |
| 79. | PM Management - Portland AL LLC             | 18-33994  | 5018 |
| 80. | PM Management - Portland NC LLC             | 18-33995  | 4928 |
| 81. | PM Management - Round Rock AL LLC           | 18-33997  | 5304 |
| 82. | PM Management - San Antonio NC LLC          | 18-33998  | 1216 |
| 83. | Presidential SCC LLC                        | 18-34000  | 1913 |
| 84. | Redoak SCC LLC                              | 18-33976  | 7569 |

66364803.10

| #    | Debtor Name                              | Case No. | EIN  |
|------|------------------------------------------|----------|------|
| 85.  | Riverside SCC LLC                        | 18-34001 | 1889 |
| 86.  | Round Rock SCC LLC                       | 18-34002 | 8936 |
| 87.  | Rowlett SCC LLC                          | 18-34007 | 7606 |
| 88.  | Ruston SCC LLC                           | 18-34009 | 0242 |
| 89.  | RW SCC LLC                               | 18-34011 | 7631 |
| 90.  | Sagebrook SCC LLC                        | 18-34013 | 9571 |
| 91.  | San Angelo SCC LLC                       | 18-34015 | 4254 |
| 92.  | SCC Edinburg LLC                         | 18-34019 | 1195 |
| 93.  | SCC Hospice Holdco LLC                   | 18-34021 | 3166 |
| 94.  | SCC Senior Care Investments LLC          | 18-34023 | 4123 |
| 95.  | SCC Socorro LLC                          | 18-34024 | 5459 |
| 96.  | Senior Care Center Management II LLC     | 18-34026 | 1280 |
| 97.  | Senior Care Center Management LLC        | 18-34028 | 7811 |
| 98.  | Senior Care Centers Home Health, LLC     | 18-34030 | 1931 |
| 99.  | Senior Care Centers LLC                  | 18-33967 | 8550 |
| 100. | Senior Rehab Solutions LLC               | 18-34031 | 4829 |
| 101. | Senior Rehab Solutions North Louisiana LLC | 18-34033 | 1690 |
| 102. | Shreveport SCC LLC                       | 18-34034 | 1659 |
| 103. | Solutions 2 Wellness LLC                 | 18-34038 | 4065 |
| 104. | South Oaks SCC LLC                       | 18-34039 | 8002 |
| 105. | Springlake ALF SCC LLC                   | 18-34041 | 2436 |
| 106. | Springlake SCC LLC                       | 18-34042 | 9102 |
| 107. | Stallings Court SCC LLC                  | 18-33977 | 7393 |
| 108. | Stonebridge SCC LLC                      | 18-34044 | 9234 |
| 109. | Stonegate SCC LLC                        | 18-33978 | 3005 |
| 110. | Summer Regency SCC LLC                   | 18-34047 | 7782 |
| 111. | TRISUN Healthcare LLC                    | 18-34048 | 2497 |
| 112. | Valley Grande SCC LLC                    | 18-34051 | 1341 |
| 113. | Vintage SCC LLC                          | 18-34053 | 7710 |
| 114. | West Oaks SCC LLC                        | 18-34055 | 9535 |
| 115. | Western Hills SCC LLC                    | 18-34056 | 1922 |
| 116. | Weston Inn SCC LLC                       | 18-34057 | 7871 |
| 117. | Westover Hills SCC LLC                   | 18-34059 | 3303 |
| 118. | Whitesboro SCC LLC                       | 18-34060 | 7745 |
| 119. | Windcrest SCC LLC                        | 18-34061 | 9541 |
| 120. | Windmill SCC LLC                         | 18-34062 | 8067 |
| 121. | Wurzbach SCC LLC                         | 18-34063 | 9920 |

66364803.10

# **Exhibit 2**

Budget

66364803.10

**Senior Care Centers**
*Rolling 13 week cash flow (DRAFT)*

| | As of: | 12/5/2018 | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week | Actual | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | | 13-Week Total |
| Week Ending Friday | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | | |
| Week Ending Friday 12/3 | 30-Nov | 7-Dec | 14-Dec | 21-Dec | 28-Dec | 4-Jan | 11-Jan | 18-Jan | 25-Jan | 1-Feb | 8-Feb | 15-Feb | 22-Feb | 1-Mar | | |
| HUD Account - Beginning Ledger Balance 12/3 | | 8,865,154 | | | | | | | | | | | | | | |
| Non-HUD Account - Beginning Ledger Balance 12/3 | | 5,892,973 | | | | | | | | | | | | | | |
| Beginning Bank Balance | | 14,758,127 | | | | | | | | | | | | | | |
| Bank to Book Balance Adjustment | | 9,355,171 | | | | | | | | | | | | | | |
| **x Beginning Bank Balance** | 4,853,274 | 14,758,127 | 5,411,630 | 11,500,412 | 15,436,666 | 10,829,197 | 14,981,013 | 7,375,065 | 12,995,701 | 10,068,568 | 14,808,065 | 5,737,502 | 10,061,744 | 4,218,471 | | 14,758,127 |
| **x Operating Cash Receipts** | | | | | | | | | | | | | | | | |
| Medicare | 1,749,089 | 539,974 | 473,923 | 3,018,400 | 11,017,160 | 534,464 | 469,088 | 680,175 | 13,254,274 | 534,464 | 464,252 | 673,163 | 13,117,632 | 1,355,603 | | 46,132,570 |
| Medicaid | 5,533,744 | 4,900,000 | 7,722,400 | 5,056,800 | 5,056,800 | 4,850,000 | 7,643,600 | 5,005,200 | 5,005,200 | 4,850,000 | 4,800,000 | 7,564,800 | 4,953,600 | 4,953,600 | | 72,362,000 |
| Private & Insurance | 4,161,450 | 7,158,708 | 7,542,522 | 4,419,344 | 3,691,571 | 7,002,434 | 5,394,364 | 5,266,712 | 3,584,829 | 7,475,115 | 6,683,185 | 4,087,330 | 3,986,889 | 4,718,685 | | 71,011,690 |
| Ancillary - SRS | 714,429 | 490,000 | 294,000 | 588,000 | 490,000 | 485,000 | 485,000 | 485,000 | 485,000 | 485,000 | 480,000 | 480,000 | 480,000 | 288,000 | | 6,015,000 |
| Ancillary - MBS | | | | | | | | | | | | | | | | |
| Other Receipts | 190,827 | | | | | | | | | | | | | | | |
| **Total Operating Cash Receipts** | 12,352,439 | 13,088,682 | 16,032,846 | 13,082,544 | 20,255,531 | 12,871,898 | 13,992,052 | 11,437,087 | 22,329,303 | 13,344,579 | 12,427,437 | 12,805,292 | 22,538,121 | 11,315,888 | | 195,521,260 |
| **x Operating Cash Disbursements** | | | | | | | | | | | | | | | | |
| Facility Rent | | | | | | 3,084,099 | | | | 3,084,099 | | | | 3,084,099 | | 9,252,296 |
| Payroll & Taxes | 17,221 | 17,000,000 | 30,000 | 30,000 | 17,000,000 | 30,000 | 17,000,000 | 30,000 | 17,000,000 | 30,000 | 17,000,000 | 30,000 | 17,000,000 | 30,000 | | 102,210,000 |
| HBT Insurance Trust Funding | 700,000 | 500,000 | 500,000 | 700,000 | 500,000 | 500,000 | 500,000 | 500,000 | 700,000 | 500,000 | 500,000 | 500,000 | 700,000 | 500,000 | | 7,100,000 |
| 401K Funding | 121,653 | | 125,000 | | 125,000 | | 125,000 | | 125,000 | | 125,000 | | 125,000 | | | 750,000 |
| Pharmacy (Omnicare) | 2,100,000 | | | | 2,600,000 | | | | 2,600,000 | | | | 2,500,000 | | | 7,700,000 |
| HSG | 3,947,875 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | 1,600,000 | | 20,800,000 |
| Accounts Payable | 2,550,638 | 1,478,000 | 2,872,451 | 2,963,000 | 2,953,000 | 2,838,000 | 2,373,000 | 3,686,451 | 2,213,000 | 2,723,000 | 2,273,000 | 4,910,451 | 3,713,000 | 3,723,000 | | 38,719,353 |
| Corporate Office Lease | | | | | | 209,983 | | | | 209,983 | | | | 209,983 | | 629,950 |
| Post Petition COD AP Payments | | 963,323 | 4,816,613 | 3,853,290 | | | | | | | | | | | | 9,633,225 |
| **Total Disbursements** | 9,437,388 | 21,541,323 | 9,944,064 | 9,146,290 | 24,778,000 | 8,262,082 | 21,598,000 | 5,816,451 | 24,238,000 | 8,147,082 | 21,498,000 | 7,040,451 | 25,638,000 | 9,147,082 | | 196,794,824 |
| **x Net Operating Cash Flow** | 2,915,051 | (8,452,640) | 6,088,782 | 3,936,254 | (4,522,469) | 4,609,816 | (7,605,948) | 5,620,636 | (1,908,697) | 5,197,497 | (9,070,563) | 5,764,842 | (3,099,879) | 2,168,806 | | (1,273,565) |
| **x Non-Operating Cash (Receipts) Disbursements** | | | | | | | | | | | | | | | | |
| Changes in Borrowing Base | 2,350,000 | | | | | | | | | | | | | | | |
| DIP Facility | | | | | | | | | | | | | | | | |
| Bank Fees | 15,370 | | | | | | | | | | | | | | | |
| Interest Payments | | | | | | 275,000 | | | | 275,000 | | | | 275,000 | | 825,000 |
| Capital Infusions | | | | | | | | | | | | | | | | |
| Other Non-Operating Disbursements | | | | | | | | | | | | | | | | |
| **Total Non-Operating Cash Disbursements** | 2,365,370 | | | | | 275,000 | | | | 275,000 | | | | 275,000 | | 825,000 |
| **x Bankruptcy Disbursements** | | | | | | | | | | | | | | | | |
| US Trustee/Filing Fees | | | | | | | | | | | | | | | | |
| Ordinary Course Professionals | | 791,950 | | | | | | | | | | | | | | 791,950 |
| Utility Deposit | | 101,906 | | | | | | | | | | | | | | 101,906 |
| Insurance | | | | | | | | | | | | | 2,658,393 | | | 3,591,829 |
| Taxes | | | | | | | | | 933,435 | | | | | | | |
| **Total Bankruptcy Disbursements** | | 893,856 | | | | | | | 933,435 | | | | 2,658,393 | | | 4,485,685 |
| **x Professional Fees** | | | | | | | | | | | | | | | | |
| Total Professional Fees | | | | | 85,000 | 183,000 | | | 85,000 | 183,000 | | 1,440,600 | 85,000 | 183,000 | | 2,244,600 |
| **x Net Cash Flow** | 549,681 | (9,346,497) | 6,088,782 | 3,936,254 | (4,607,469) | 4,151,816 | (7,605,948) | 5,620,636 | (2,927,133) | 4,739,497 | (9,070,563) | 4,324,242 | (5,843,273) | 1,710,806 | | (8,828,850) |
| **x Ending Bank Balance** | 5,402,956 | 5,411,630 | 11,500,412 | 15,436,666 | 10,829,197 | 14,981,013 | 7,375,065 | 12,995,701 | 10,068,568 | 14,808,065 | 5,737,502 | 10,061,744 | 4,218,471 | 5,929,277 | | 5,929,277 |

Privileged Confidential
DRAFT