Deirdre B. Ruckman (TX State Bar No. 21196500)
Joanne Early (TX State Bar No. 06346500)
Thomas C. Scannell (TX State Bar No. 24070559)
**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX  75201
Telephone: 214.999.3000
Facsimile: 214.999.4667

**COUNSEL FOR PLAINTIFFS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | Chapter 11 |
| | § | |
| **Senior Care Centers, LLC**, *et al.*, | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors. | § | (Jointly Administered) |

| | | |
|---|---|---|
| **Sabra Texas Holdings, L.P,** | § | |
| **Sabra Texas Holdings II, L.P.,** | § | Adv. No. _____ |
| **CCP Guest House 7613 LLC, CCP Bradford** | § | |
| **7612 LLC, CCP Shreveport Manor 7616 LLC,** | § | |
| **CCP Booker T. Washington 7617 LLC,** | § | |
| **CCP Spring Lake 7611 LLC, CCP Spring Lake** | § | |
| **VL 7611 LLC, CCP Colonial Oaks 7615 LLC,** | § | |
| **CCP Pilgrim Manor 7610 LLC, and** | § | |
| **CCP Alpine 7614 LLC,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| vs. | § | |
| | § | |
| **Senior Care Centers, LLC,** | § | |
| **PM Management – El Paso I NC, LLC** | § | |
| **PM Management – Portfolio V NC, LLC,** | § | |
| **PM Management – Portfolio VII NC, LLC,** | § | |
| **PM Management – San Antonio, AL, LLC,** | § | |
| **and PM Management – San Antonio NC, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

1

## PLAINTIFFS' ORIGINAL COMPLAINT FOR
## DECLARATORY JUDGMENT

Plaintiffs[1] (hereinafter, "Sabra Landlord") file this Original Complaint for Declaratory Judgment, seeking declaratory relief against certain Debtors[2] (collectively, "SCC Tenants"). Sabra Landlord seeks a declaration that the SCC Tenant Leases (defined in paragraph 6) were terminated pre-petition, such that: (1) each of the SCC Tenants is a holdover tenant at sufferance; (2) no SCC Tenant has a right to accept or reject the SCC Tenant Leases under 11 U.S.C. § 365; and (3) no SCC Tenant has a right to cure defaults to reinstate the SCC Tenant Leases.

### Jurisdiction and Venue

1. This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), and 157(b)(2)(B).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

3. This adversary proceeding is brought pursuant to Rules 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure.

### Parties

4. Plaintiff Sabra Texas Holdings, L.P., a Texas limited partnership, Plaintiff Sabra Texas Holdings II, L.P., a Texas limited partnership, and Plaintiffs CCP Guest House 7613 LLC, CCP Bradford 7612 LLC, CCP Shreveport Manor 7616 LLC, CCP Booker T. Washington 7617 LLC, CCP Spring Lake 7611 LLC, CCP Spring Lake VL 7611 LLC, CCP Colonial Oaks 7615 LLC, CCP Pilgrim Manor 7610 LLC, and CCP Alpine 7614 LLC, each a Delaware limited liability

---

[1] Plaintiffs are Sabra Texas Holdings, L.P, Sabra Texas Holdings II, L.P., CCP Pilgrim Manor 7610 LLC, CCP Spring Lake 7611 LLC, CCP Spring Lake VL 7611, CCP Bradford 7612 LLC, CCP Guest House 7613 LLC, CCP Alpine 7614 LLC, CCP Colonial Oaks 7615 LLC, CCP Shreveport Manor 7616 LLC, and CCP Booker T. Washington 7617 LLC. All CCP entities are wholly owned by Sabra Health Care REIT, Inc.

[2] Senior Care Centers, LLC, PM Management – El Paso I NC, LLC, PM Management – Portfolio V NC, LLC, PM Management – Portfolio VII NC, LLC, PM Management – San Antonio, AL, LLC, and PM Management – San Antonio NC, LLC.

2

company authorized to do business in Texas and Louisiana, are wholly owned by Sabra Health Care REIT, Inc., and are landlords of the SCC Tenant Leases described in Paragraph 6 and listed in Exhibits No. 1 and 2.

5. Defendant Senior Care Centers, LLC, a Delaware limited liability company, and Defendants PM Management – San Antonio NC, LLC, PM Management – San Antonio AL, LLC, PM Management – Portfolio VII NC, LLC, PM Management – El Paso I NC, LLC, and PM Management – Portfolio V NC, LLC, each a Texas limited liability company, are tenant parties[3] under the SCC Tenant Leases described in Paragraph 6 and listed in Exhibits No. 1 and 2. Pursuant to Rule 7004(b)(1) of the Federal Rules of Bankruptcy Procedure, service of summons in this adversary proceeding may be made upon Defendants by mailing a copy of the summons and complaint via first class mail postage prepaid to Senior Care Centers, LLC, at 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

**Relevant Factual and Procedural Background**

6. Between 2010 and 2015, Sabra Landlord and SCC Tenants entered into seven leases ("SCC Tenant Leases"). These agreements allowed for SCC Tenants' lawful occupation and operation of 38 Leased Premises—eight located in Louisiana and 30 located in Texas—in accordance with the provisions of the SCC Tenant Leases. A schedule of the Leased Premises is attached as Exhibit No. 1 and a schedule of the SCC Tenant Leases is attached as Exhibit No. 2. True and correct copies of the seven SCC Tenant Leases are attached as Exhibit No. 3.

7. The Leased Premises are primarily skilled nursing facilities, licensed healthcare residences where 24-hour medical attention is provided to individuals who require a higher level of medical care than what is provided in an assisted living facility. There are two of the Leased

---

[3] Each currently a holdover tenant at sufferance.

3

Premises that are assisted living facilities, or "ALFs." An ALF is a system of housing and limited care for senior citizens who need some assistance with daily activities, but do not need the higher level of care provided in a skilled nursing facility. For purposes of this Complaint, Sabra Landlord will refer to both as a "SNF."

8. Under each SCC Tenant Lease, a SCC Tenant (or its subtenant(s))[4] operates the SNF located at that Leased Premises. *See* Exhibit No. 1.

9. The SCC Tenants state that throughout the industry and in recent years, SNF operators have experienced significant financial pressure triggered by a number of factors, including reimbursement rates, non-payment of accounts receivables, declining occupancy rates, and increasing costs.[5]

10. In 2018, the SCC Tenants' liquidity crisis became insurmountable.[6] By June 2018, they stopped paying rent to Sabra Landlord. They have not paid rent since then.

11. On August 9, 2018, Sabra Landlord delivered Notices of Default to SCC Tenants. Each of the notices state that SCC Tenants failed to pay rent in June 2018, July 2018, and August 2018—a failure that constituted an event of default according to the provisions of the SCC Tenant

---

[4] Many of the SCC Tenants sublet their Leased Premises to affiliated entities who are also Debtors in this Bankruptcy Case.

[5] *See* Declaration of Kevin O'Halloran, Chief Restructuring Officer of Senior Care Centers, LLC, in Support of Chapter 11 Petitions and First Day Pleadings ("Declaration of Kevin O'Halloran"), Doc. 25 (Dec. 5, 2018), ¶ 11.

[6] *Id.* at ¶ 13.

4

4812-0018-4964.3

Leases.[7] Sabra Landlord demanded from SCC Tenants their delinquent rent payments.[8] True and correct copies of the Notices of Default are attached as Exhibit No. 4.

12. SCC Tenants did not answer Sabra Landlord's Notices of Default or cure their default.

13. On August 23, 2018, Sabra Landlord delivered Notices of Termination to SCC Tenants. The Notices of Termination advised that Sabra Landlord accelerated all rent due under the SCC Tenant Leases and that each SCC Tenant Lease was terminated.[9] True and correct copies of the Notices of Termination are attached as Exhibit No. 5.

14. SCC Tenants have admitted the SCC Tenant Leases were terminated.[10] But now they incorrectly claim these terminations were "subsequently withdrawn." *Id.*

15. Sabra Landlord has never withdrawn the Notices of Termination, nor made any promise or representation inconsistent with the Notices of Termination to the SCC Tenants.

---

[7] *See* Onion Creek Lease, sec. 16.1.1 (Tenant failing to "pay any installment of Rent within two (2) Business Days of its Payment Date" is an "'Event of Default' and there shall be no cure period therefor except as otherwise expressly provided. . . ."); *see* Trisun II Lease, sec. 13.1(a) ("Failure by Tenant to pay or cause to be paid, within ten (10) business days of the due date, the rent specified to be paid . . . and such failure is not cured within five (5) days after written notice" shall "constitute an 'Event of Default' of Tenant . . . ."); *see* Trisun I Lease, sec. 13.1(a) ("Failure by Tenant to pay or cause to be paid, within ten (10) business days of the due date, the rent specified to be paid . . . and such failure is not cured within five (5) days after written notice" shall "constitute an 'Event of Default' of Tenant . . . ."); *see* Legacy Lease, sec. 12(a) ("Tenant's failure to pay when due any Rent" will "constitute an 'Event of Default' on the part of Tenant, and there shall be no cure period except as otherwise expressly provided . . . ."); *see* Trisun Master Lease, sec. 8.1.1 ("Tenant's failure to pay when due any Rent" shall "constitute an 'Event of Default' on the part of Tenant, and there shall be no cure period except as otherwise expressly provided . . . ."); *see* Hollywood Lease, sec. 12(a) ("Tenant's failure to pay when due any Rent" will "constitute an 'Event of Default' on the part of Tenant, and there shall be no cure period therefor except as otherwise expressly provided . . . ."); *see* Vegas Lease, sec. 12(a) ("Tenant's failure to pay when due any Rent" will "constitute an 'Event of Default' on the part of the Tenant, and there shall be no cure period therefor except as otherwise expressly provided . . . .").

[8] *See* Exhibit No. 4. Each of the Notices of Default declares: "DEMAND IS HEREBY MADE on Tenant" to "IMMEDIATELY" remit to Landlord the delinquent amounts of rent.

[9] *See* Exhibit No. 5. Each of the Notices of Termination declares: "Due to the occurrence of one or more Events of Default, including the failure to timely pay Rent since June 1, 2018, LANDLORD HEREBY ACCELERATES THE DUE DATE OF ALL RENT FOR THE ENTIRE REMAINING UNEXPIRED BALANCE OF THE TERM AND TERMINATES THE LEASE EFFECTIVE IMMEDIATELY."

[10] Declaration of Kevin O'Halloran, Doc. 25 (Dec. 5, 2018), ¶49.

4812-0018-4964.3

16. Prior to its filing of bankruptcy, the SCC Tenants never objected to the propriety of the Notices of Termination, and have never taken any position whatsoever that the SCC Tenant Leases were not legally and effectively terminated.

17. The parties engaged in negotiations regarding Sabra Landlord's forbearance of the immediate exercise of its remedies against the SCC Tenants under the SCC Leases and other related documents for a limited period of time so long as the SCC Tenants cooperated in the transition to new operators. Such negotiations, however, were based upon and consistent with the Notices of Default. Since August 23, 2018 the SCC Tenant Leases have been terminated.

18. In a meeting on October 18, 2018, and memorialized in a subsequent email of October 22, 2018, Brent Chappell of Sabra Landlord wrote to David Friend (CEO of SCC Tenant) and copied Patrick Pilch (BDO, acknowledged by CRO of SCC Tenant as "interim management" of SCC Tenant)[11] and Jason Dufour (prospective new lender to SCC Tenant):

> As Rick [Matros, CEO of Sabra Landlord] and I shared with you during our meeting last Thursday, **the leases have all been terminated**, the loan has been accelerated, and we are proceeding with a disposition of the portfolio independent of the Senior Care's involvement or cooperation.
>
> Please consider the conditions proposed in association with Sabra's consideration of any forbearance to be immediately withdrawn and of no further force or effect. (emphasis added)

19. SCC Tenant and its counsel have acknowledged in writing that the SCC Leases have been terminated, during renewed forbearance negotiations.

20. On November 20, 2018 a representative of SCC Tenant and its counsel (same law firm that represents Debtor in this Bankruptcy), marked up and sent a redline back to Sabra Landlord of a proposed forbearance agreement. Interestingly, SCC Tenant "redlined" many

---

[11] Declaration of Kevin O'Halloran, Doc. 25 (Dec. 5, 2018), ¶¶ 3, 12.

provisions of the proposed forbearance agreement, but agreed to one specific recital that is fatal to its position in this matter:

> WHEREAS, by notice dated August 23, 2018, Sabra Landlord accelerated all rent due under the SCC Leases pursuant to Events of Default thereunder, and Sabra Landlord terminated the SCC Leases. SCC Tenants remain in possession of the properties subject to the SCC Leases with no fixed term and no leasehold interest and can be put out at any time by Sabra Landlord, but nevertheless, must comply with the terms of the SCC Leases as holdover tenants at sufferance.

21. To protect the SNF patients and ensure their receipt of uninterrupted care at each Leased Premises, each SCC Tenant Lease sets forth the specific duties and obligations of the SCC Tenant upon termination of each SCC Tenant Lease. When the stated term of an SCC Tenant Lease expires or when a SCC Tenant Lease is terminated, SCC Tenant has agreed to transfer the Leased Premises to Sabra Landlord or its designee in an orderly and timely manner.[12] These provisions regarding the transfer of possession of leased properties are common in leases involving SNF facilities, because it ensures that SNF patients are provided adequate medical care and attention despite any changes to the tenant-operator and protects the landlord's assets.

---

[12] *See* Onion Creek Lease, sec. 17.2.2 ("Tenant shall cooperate fully to accomplish the transfer of the management and operation of the Premises to Landlord or Landlord's designee without interrupting the operations thereof."); *see* Trisun II Lease, sec. 13.2(a) ("Upon termination of this Lease, Tenant shall immediately surrender the Leased Premises to Landlord . . . ."); *see* Trisun I Lease, sec. 13.2(a) ("Upon termination of this Lease, Tenant shall immediately surrender the Leased Premises to Landlord . . . ."); *see* Legacy Lease, sec. 14.1 ("On the expiration of the term or earlier termination or cancellation of this Master Lease (the 'Termination Date'), Tenant shall deliver to Landlord or its designee possession" of "each Facility and associated Landlord Personal Property," a "fully operational, licensed and certified Business at each Facility," and "all patient charts and resident records . . . necessary for the operation of the Business and the Premises"); *see* Trisun Master Lease, sec. 9.1.1 ("On the expiration of the Term, or earlier termination of this Lease, as it relates to the Premises or a portion thereof . . . Tenant shall deliver to Landlord or its designee possession of . . . the Terminated/Dispossessed Premises and associated Landlord Personal Property," a "fully operational, licensed and certified Business," and "all patient charts and resident records . . . ."); *see* Hollywood Lease, sec. 14.1 ("On the expiration of the Term or earlier termination or cancellation of this Master Lease . . . Tenant shall deliver to Landlord or its designee possession of . . . each Facility and associated Landlord Personal Property," a "fully operational, licensed and certified Business at each Facility" and "all patient charts and resident records . . . necessary for the operation of the Business and the Premises"); *see* Vegas Lease, sec. 14.1 ("On the expiration of the Term or earlier termination or cancellation of this Master Lease . . . Tenant shall deliver to Landlord or its designee possession of . . . each Facility and associated Landlord Personal Property," a "fully operational, licensed and certified Business at each Facility," and "all patient charts and resident records . . . necessary for the operation of the Business and the Premises").

4812-0018-4964.3

22. Without basis in fact or in law, SCC Tenants wrongly contend that Sabra Landlord subsequently withdrew its termination.

23. On December 4, 2018, Senior Care Centers, LLC filed a Chapter 11 voluntary petition with the U.S. Bankruptcy Court, Northern District of Texas in Dallas (the "Petition Date"). As of the Petition Date, the unpaid obligations of the SCC Tenants under the SCC Tenant Leases totals approximately, $34,897,000.00, plus costs, fees and other damages. No payments have been made by the SCC Tenants post-petition.

24. On December 5, 2018, Sabra Landlord entered into a contract with a prospective buyer to purchase each of the Leased Premises for an aggregate purchase price of $385 million ("Contract to Sell Leased Premises"). To ensure the health and safety of the residents of the SNF facilities, the prospective buyer and designated SNF operators will assume and continue the operations of the facilities upon the closing of the sale and delivery of possession of the SNF facilities. The buyer will only close the sale of the facilities, and continue the operations, subject to the condition and assurance that the properties are free and clear of all lease interests.

25. The position the SCC Tenants have asserted in this bankruptcy proceeding is interfering with Sabra Landlord's ability to close the proposed sale transaction and ensure the orderly transition of the operations of the Leased Premises to the new operators.

**Cause of Action:**
**Declaratory Judgment**

26. Sabra Landlord petitions the Court, pursuant to 28 U.S.C. § 2201 et seq., for a declaration of the parties' rights, duties, and legal relations under the terminated SCC Tenant Leases.

8

27. An actual controversy exists between the parties because the SCC Tenants continue to assert rights with respect to the Leased Premises. The requested declaratory relief will also ensure an orderly transfer and continued operations of the SNF facilities to ensure the health, well-being, and safety of the patients at each SNF facility.

28. Here, Sabra Landlord terminated the SCC Leases pre-petition when SCC Tenants failed to pay rent. The SCC Tenants must surrender possession of the Leased Premises to facilitate the orderly and timely transfer of the Leased Premises to Sabra Landlord or its designee, and must fully comply with all post-termination transition obligations.

29. The legal relations of the parties and the circumstances of this dispute demonstrate a valid case and controversy before this Court. Unless this controversy is herein determined, Sabra Landlord will be deprived of its rights under the Contract to Sell Leased Premises and its rights to the timely and orderly transition of the operations at the Leased Premises to the new operators as required under the SCC Tenant Leases. A determination of the parties' rights and obligations is necessary for Sabra Landlord to protect its interests under applicable state law.

30. Accordingly, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Sabra Landlord seeks a declaration that the SCC Tenant Leases were terminated pre-petition, such that:

    a. Each of the SCC Tenants is a holdover tenant at sufferance;

    b. No SCC Tenant has a right to accept or reject the SCC Tenant Leases under 11 U.S.C. § 365; and

    c. No SCC Tenant has a right to cure defaults to reinstate the SCC Tenant Leases.

**Requested Relief**

Sabra Landlord respectfully requests that, upon final determination of this action, Sabra Landlord be granted the following relief: that the Court declare the rights, duties and legal relations of the parties with respect to this dispute, and, specifically, that the SCC Tenant Leases were terminated pre-petition, such that: (1) each of the SCC Tenants is a holdover tenant at sufferance; (2) no SCC Tenant has a right to accept or reject the SCC Tenant Leases under 11 U.S.C. § 365; and (3) no SCC Tenant has a right to cure defaults to reinstate the SCC Tenant Leases.

DATED: December 20, 2018    Respectfully submitted by:

*/s/ Deirdre B. Ruckman*
Deirdre B. Ruckman (TX 21196500)
Joanne Early (TX 06346500)
Thomas C. Scannell (TX 24070559)
**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile:  (214) 999-4667
druckman@foley.com
jearly@foley.com
tscannell@foley.com

**COUNSEL FOR LANDLORD**

4812-0018-4964.3