| | |
|---|---|
| Shari L. Heyen | Karl G. Dial |
| Texas Bar No. 09564750 | Texas Bar No. 05800400 |
| **GREENBERG TRAURIG, LLP** | **GREENBERG TRAURIG, LLP** |
| 1000 Louisiana St., Suite 1700 | 2200 Ross Ave., Suite 5200 |
| Houston, Texas 77002 | Dallas, Texas 75201 |
| Telephone: (713) 374-3564 | Telephone: (216) 665-3611 |
| *HeyenS@gtlaw.com* | *DialK@gtlaw.com* |

*Proposed Counsel for the Official
Committee of Unsecured Creditors
of Senior Care Centers, LLC, et al.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SENIOR CARE CENTERS, LLC, *et al.*,[1] | ) | Case No. 18-33967 (BJH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
THE MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING
ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SETTING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**
**[Relates to Docket Nos. 24, 74, 75]**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the above-captioned chapter 11 cases of the above-referenced debtors and debtors-in-possession (collectively, the "**Debtors**") files this Objection (the "**Objection**") to the Motion of Debtors for Entry of Interim and Final Orders (i) Authorizing the Use of Cash Collateral, (ii) Granting Adequate Protection, (iii) Modifying the Automatic Stay, (iv) Setting a Final Hearing, and (v) Granting Related Relief [Doc. 24] (the "**Motion**"), and respectfully states as follows:

---

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as **Exhibit A**.

**BACKGROUND**

1.   On December 14, 2018, the U.S. Trustee appointed the Committee and, on that same day, the Committee retained legal counsel and financial advisors. Immediately upon appointment, the Committee reached out to the Debtors, CIBC Bank USA, as administrative agent (the "**Administrative Agent**") and other key parties to begin to gather the necessary information to take informed positions in these cases. Over the past seven (7) days since the Committee's appointment, while the Committee has begun to receive information, the Committee is still waiting for access to critical information, including the details behind the Debtors' 13-week cash budget (the "**Budget**"), which is attached as Exhibit 2 to the Interim Order (I) Authorizing the use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief [Docket No. 75] (the "**Interim Order**"). For example, the Committee has requested, but not yet received, the assumptions underlying the Budget or the details behind each of the line items in the Budget. Accordingly, the Committee files this Objection, which is preliminary, and reserves its rights to amend, modify or supplement this Objection prior to the January 14, 2019 hearing on entry of a final order approving the Motion.

2.   From the Committee's perspective, given the early stage of the cases, the Committee respectfully requests that this Court maintain the status quo by continuing to allow use of cash collateral under the Interim Order through and including January 14, 2019, the date of the final hearing on the Motion, with all objections continued to that date. Given the holidays, the Committee's recent involvement and the number objections and issues raised, the Committee believes all parties would benefit by having roughly two weeks to attempt to work through the objections. Moreover, it is critical to continue to stabilize the Debtors' operations as they work

through this restructuring process given that approximately 9,000 patients and 11,000 employees are impacted by this process.

3. Under the First Interim Order, objections to the Motion were to be filed by 4:00 p.m. CST on December 19, 2018. The Debtors and the Administrative Agent agreed to extend the objection deadline for the Committee to and including December 21, 2018 to allow the Committee some time to get up to speed on these cases.

## OBJECTIONS

4. The Committee objects to the Motion as follows and reserves the right to amend, modify or supplement these objections prior to the final hearing on the Motion after obtaining additional information:

   a. **The Budget May or May Not Be Adequate**. The Committee has requested, but has not yet received, the necessary details to fully vet the Budget and ensure that the Debtors have captured all administrative expenses in the Budget. Accordingly, the Committee is currently unable to determine the adequacy of the Budget. On its face, the Budget appears to be inadequate because it does not include certain expenses, such as all necessary postpetition rent payments, proposed critical vendors, or payments for Section 503(b)(9) claims. Moreover, the Committee has not had an opportunity to test whether the proposed budget variance in Paragraph 2 of the Interim Order provides sufficient flexibility to allow the Debtors to operate their facilities.

   b. **Committee Should Have Rights to Approve Budget and Other Key Items**. Paragraph 2 of the First Interim Order provides that the Debtors may not amend or modify the Budget without the Administrative Agent's consent. The Committee should also have the right to approve the Budget and other key items in these cases to ensure all creditor constituencies have a seat at the table and an opportunity to negotiate important matters that will dictate the outcome of these cases.

   c. **Committee Should Be Provided the Same Access and Reporting as Granted to the Administrative Agent**. Paragraph 3 of the Interim Order provides that the Debtors shall (i) allow the Administrative Agent access to all of the Debtors' books and records, (ii) provide a weekly budget report, (iii) hold weekly conference calls, and (iv) allow independent access for the Administrative Agent to the Debtors' financial advisors. To ensure a level playing field in these cases, the Committee should be (i) granted the same

access to the Debtors' books and records and to the Debtors' financial advisors, (ii) provided the same reporting, and (iii) entitled to weekly calls with the Debtors.

d. **Replacement Liens Should Be of The Same Extent, Validity, and Priority as Such Liens Existed Prior to the Bankruptcy Cases**. Under Paragraph 4 of the Interim Order, the Administrative Agent and the other lenders (CIT Finance LLC, MB Financial Bank, N.A., Bankers Trust Company, Wells Fargo Bank, N.A., and Compass Bank, collectively, the "**Lenders**") are granted replacement liens on all of the Debtors' assets for any diminution in the value of the Prepetition Collateral from and after the Petition Date.  The Committee generally does not have an objection to the granting of replacement liens to the Administrative Agent and Lenders; however, the scope of the replacement liens should be limited to the same extent, validity and priority as such liens existed prior to the commencement of these bankruptcy cases.  As drafted, the Administrative Agent and Lenders may be substantially increasing their collateral package through a grant of liens on unencumbered assets and/or assets owned by Debtors who are not borrowers under the credit facility securing amounts due and owing to the Administrative Agent and Lenders.  The Committee raises this issue since it has not yet had an opportunity to analyze the liens asserted by the Administrative Agent and Lenders to verify scope of the liens and the specific collateral package securing amounts due and owing to the Administrative Agent and other Lenders.

e. **Any Superpriority Claim Should Not Be Paid from Avoidance Actions and Certain Other Unencumbered Assets.** The Superpriority Administrative Expense Claim granted under Paragraph 5 of the Interim Order should not be paid from the proceeds of avoidance actions or other unencumbered assets.

f. **A 506(c) Waiver Is Not Appropriate Under the Circumstances**. Given that the Committee has not had an adequate opportunity to vet the Budget, the Section 506(c) waiver proposed in Paragraph 6 of the Interim Order is not appropriate.  To the extent that these cases benefit the Lenders by preserving and liquidating their collateral and, in particular, if the Budget is not sufficient, the Administrative Agent and the Lenders—and not unsecured creditors—should be the ones to "pay the freight" for those benefits.

g. **The Carve-Out and Investigation Budgets Need to Be Clarified**. Paragraph 8 of the Interim Order includes a Carve-Out for the payment of professional fees incurred in these cases.  It is currently unclear whether the proposed Carve-Out is sufficient given that the Committee has not yet seen the breakdown of the line item in the Budget for professional fees and how these monies are allocated among professionals.  In addition, Paragraph 8 of the Interim Order needs to be modified to (i) include, in the Carve-Out, the expenses of the Committee members, (ii) increase the $150,000 post-termination

Carve-Out, which is insufficient, (iii) provide for the Patient Care Ombudsman, and (iv) eliminate the language at the end of Paragraph 8 whereby the Administrative Agent and Lenders appear to be capping the professionals' fees.

h. **All of the Administrative Agent's and Lenders' Claims and Liens Should Be Subordinate to the Carve-Out**. The First Interim Order provides that the Replacement Liens and the Superpriority Administrative Claim shall be subordinated to the Carve-Out. The Carve-Out should have priority over *all* of the Agent's and Lenders' claims and liens. The Replacement Liens and the Superpriority Administrative Claim will only exist if there is a diminution in value in the Prepetition Collateral.

i. **Challenge Period Is Too Brief**. Paragraph 9(a) of the Interim Order provides that the Committee will have sixty (60) days from its appointment to (i) investigate the Administrative Agent's and Lenders' claims, liens, and potential claims against them, (ii) gain standing to file an action against the Administrative Agent and Lenders, if necessary, and (iii) prepare and file an appropriate action. Given the other case issues, this time period will not be sufficient and should be extended to ninety (90) days. In addition, the Committee should be granted standing in advance to bring a challenge against the Administrative Agent and Lenders or the filing of a motion seeking such standing within the challenge period should be sufficient to make a timely challenge.

j. **The Section 552(b) Equities of the Case Exception Should Be Preserved**. Granting the section 552(b) waiver, as proposed in Paragraph 19 of the Interim Order, could prejudice unsecured creditors and strip the Court of important equitable powers specifically provided by the Bankruptcy Code. In addition, Paragraph G of the findings of fact and conclusions of law [Doc. 74] (the "**Findings and Conclusions**") should not be binding on an interim basis, given that the waiver of the equity of the case exception was to be considered at the final hearing on the Motion.

k. **CCP Adequate Protection Must Be Subordinate to the Carve-Out**. The CCP Landlords are provided adequate protection in Paragraph 24 of the Order. Any such adequate protection claims must be subordinate to the Carve-Out.

l. **364(e) Protections Should Not Apply**. The Findings and Conclusions state that the protections granted to the Administrative Agent "will not be affected by any subsequent reversal, modification, vacatur or amendment of the Interim Order or any other order, as provided in Bankruptcy Code section 364(e)." However, section 364 of the Bankruptcy Code is not applicable here, because neither the Administrative Agent nor the Lenders have extended any post-petition credit to the Debtors.

## RESERVATIONS OF RIGHTS

5.The Committee reserves the right to amend, modify or supplement this Objection and to assert any and all additional objections to the Motion at any appropriate time, including at any hearing related thereto.

*[Remainder of Page Intentionally Left Blank]*

**CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court (i) allow the Debtors to continue use of cash collateral under the First Interim Order to and including January 14, 2019, the date of the final hearing on the motion; (ii) continue the Committee's objections to the final hearing on the Motion; and (iii) grant such other and further relief as may be just and appropriate.

Dated: December 21, 2018.

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: /s/ Shari L. Heyen
Shari L. Heyen
Texas State Bar No. 09564750
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: 713-374-3500
Facsimile: 713-374-3505
heyens@gtlaw.com

– and –

Nancy A. Peterman
(admitted *pro hac vice*)
Illinois Bar No. 6208120
77 West Wacker Dr., Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-8410
Facsimile: (312) 456-8435
petermann@gtlaw.com

– and –

Karl G. Dial
Texas Bar No. 05800400
2200 Ross Ave., Suite 5200
Dallas, Texas 75201
Telephone: (216) 665-3611
Facsimile: (216) 665-3601
dialk@gtlaw.com

***Proposed Counsel for the Official Committee of Unsecured Creditors***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 21, 2018, I caused a copy of the foregoing to be served on all parties eligible to receive service through the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas by electronic mail.

Dated: December 21, 2018.                                         */s/ Shari L. Heyen*
                                                                                        Shari L. Heyen