

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____

**Signed February 22, 2019**                **United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Senior Care Centers, LLC, *et al.*,[1] | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors. | § | (Jointly Administered) |

### AGREED FINAL ORDER (I) AUTHORIZING THE USE OF
### CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION,
### (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED
### RELIEF RELATING TO USE OF KEYBANK, N.A.'S CASH COLLATERAL

Upon the motion (the "Motion") [Doc. No. 476] of the KeyBank Debtors[2], and subject to the findings of fact and conclusions of law (the "Findings of Fact and Conclusions of Law") entered contemporaneously herewith,

**IT IS AGREED, ORDERED, ADJUDGED, AND DECREED THAT:**

---

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, is attached as Exhibit A hereto. The KeyBank Debtors are designated by larger bolded font.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Findings of Fact and Conclusions of Law.

1.      Use of Cash Collateral. Subject to the terms and conditions set forth in this Final Order, the KeyBank Debtors are, through and including the termination of this Final Order following issuance of a Termination Notice as set forth in Paragraph 9 below, authorized pursuant to Bankruptcy Code sections 105, 361, 362, and 363, and Bankruptcy Rules 2002, 4001, 6003, and 9014 to use Lender's Cash Collateral on a final basis. Interim use of Cash Collateral prior to the entry of this Final Order proceeded with the general consent of KeyBank, N.A. ("Lender"), which consent was in part premised upon the representations of the KeyBank Debtors as to their general observance of most of the requirements set forth in this Final Order.

2.      Reporting. As protection for the KeyBank Debtors' continuing use of the Cash Collateral of KeyBank, the KeyBank Debtors shall allow the Lender, HUD, the Committee and their respective professionals and designees reasonable access, during normal business hours, to the premises of the KeyBank Debtors in order to conduct appraisals, analyses, and/or audits of the Prepetition Collateral, and shall otherwise reasonably cooperate in providing any other financial information requested by the Lender, HUD and/or the Committee for these purposes and to permit Lender, HUD, and the Committee to obtain information concerning operation of the KeyBank Debtors and their facilities and businesses.  Any manual distributions allowed per paragraph 6.b. shall be reported to Lender's counsel, CIBC's counsel and Committee counsel within twenty-one (21) days of the end of each calendar month beginning in February 2019, with the first report due on March 21, 2019.  Such reporting shall, at a minimum, identify the date, amount, and purpose(s) (*i.e.*, expenses funded and/or paid) of each manual distribution.

3.      Adequate Protection; Treatment of Leases and Lease Payments.  In accordance with Bankruptcy Code Section 365(d)(3), and as adequate protection of Lender's interests in the Prepetition Collateral and the Lender's Cash Collateral, the KeyBank Debtors shall continue to

**Agreed Final Order (i) Authorizing Use of Cash Collateral, (ii) Granting
Adequate Protection, (iii) Modifying the Automatic Stay, and (iv) Granting
Related Relief Relating to Use of KeyBank, N.A.'s Cash Collateral**                                      **Page 2**

comply with the Lease and Security Documents, including but not limited to making all payments, deposits, and/or escrows due or required under the existing Sublease Agreements and Master Lease Agreement in accordance with, and in the time frames established by, the Lease and Security Documents beginning on the first day of the month after commencement of their respective bankruptcy cases and until entry of either: a) an order rejecting any such Sublease Agreements and/or Master Lease Agreement; or b) the closing of any transaction pursuant to an entered order resulting in the assumption and assignment of any such Sublease Agreements and/or Master Lease Agreement to a non-Debtor.

4.   <u>Adequate Protection; Replacement Liens</u>.  As security for and solely to the extent of any diminution in the value of Prepetition Collateral from and after the Petition Date, calculated in accordance with Bankruptcy Code section 506(a) (a "Diminution in Value"), the Lender is hereby granted replacement liens of the same extent, validity and priority as Lender's prepetition liens upon all assets and property of the KeyBank Debtors and their estates of any kind or nature whatsoever, existing as of January 23, 2019 or thereafter acquired, including, without limitation, the Prepetition Collateral (the "Replacement Liens"), but excluding  all claims and causes of action, and the products and proceeds thereof, arising under or permitted by Bankruptcy Code sections 502(d), 506(c), 544, 545, 547, 548, 549, and 550 and any other avoidance claims and causes of action arising under state or federal law (the "Excluded Assets").  The Replacement Liens so granted are in addition to all security interests, liens, and rights of setoff existing in favor of the Lender on the Petition Date (and as may be continuing post-petition in accordance with Bankruptcy Code section 552(b)), and are and shall be valid, perfected, enforceable, and effective as of January 23, 2019 without any further action of the KeyBank Debtors or the Lender and without the necessity of the execution, filing or recording of any financing statements, security

**Agreed Final Order (i) Authorizing Use of Cash Collateral, (ii) Granting  
Adequate Protection, (iii) Modifying the Automatic Stay, and (iv) Granting  
Related Relief Relating to Use of KeyBank, N.A.'s Cash Collateral**                                              **Page 3**

agreements, deeds of trust, or other documents, or of obtaining control agreements over the KeyBank Debtors' bank accounts. Notwithstanding the foregoing, the Lender is hereby authorized, but not required, to file or record any financing statements, security agreements, deeds of trust, or other documents in any jurisdiction or take any other action in order to validate and perfect the Replacement Liens granted hereunder. For the avoidance of doubt, the Replacement Liens so granted do not extend to any bank account held by or in the name of any of the Debtors other than the KeyBank Debtors, nor to any cash now or heretofore held therein.

5. <u>Adequate Protection; 507(b) Priority Claim</u>. The Lender, as to the KeyBank Debtors, is hereby granted an administrative claim status against the KeyBank Debtors with a priority equivalent to a claim under Bankruptcy Code sections 364(c)(1), 503(b), and 507(b), on a dollar-for-dollar basis for and solely to the extent of any shown Diminution in Value, which administrative claim shall, among other things, have priority over all other costs and expenses of the kind specified in, or ordered pursuant to Bankruptcy Code sections 105, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 1113, and 1114 (the "Superpriority Administrative Claim").

6. <u>Adequate Protection; Cash Management Modification</u>. The entry of this Final Order modifies, and shall control over, the Final Order (I) Authorizing Continued Use of Existing Cash Management System, Including Maintenance of Existing Bank Accounts, Checks, and Business Forms, and (II) Authorizing Continuation of Existing Deposit Practices [DKT #72], as well as any Final Order entered regarding same, with regard to the listed accounts of each of the KeyBank Debtors, four (4) per KeyBank Debtor, (as set forth at DKT #9 pp. 40-41 – collectively per each KeyBank Debtor the "Killeen Entity Accounts") such that any automatic sweep from any such Killeen Entity Accounts to any other account of any non-KeyBank Debtor that would operate in the normal course of the Debtors' operations as detailed therein, is "turned off" and: (a) any

**Agreed Final Order (i) Authorizing Use of Cash Collateral, (ii) Granting
Adequate Protection, (iii) Modifying the Automatic Stay, and (iv) Granting
Related Relief Relating to Use of KeyBank, N.A.'s Cash Collateral**                              **Page 4**

lease payments or other related obligations required to be paid by a KeyBank Debtor under any of the Lease and Security Documents, as well as any ordinary course post-petition operating obligations of a KeyBank Debtor, shall only be made from any Killeen Entity Account; and (b) any transfers to any non-KeyBank Debtor account shall be made manually, at least twice a month, to pay for any KeyBank Debtor's proportionate share of obligations that are otherwise administered through other accounts in the Debtors' cash management system or are otherwise centralized systemwide costs for Debtor's operations and are not paid at the KeyBank Debtor level. KeyBank Debtors shall promptly electronically notify CIBC if they do not make any manual transfers required to be made under 6(b). All parties' arguments with respect to whether costs and expenses are properly allocated to the KeyBank Debtors are preserved. For the avoidance of all doubt, from and after January 23, 2019 and subject to any challenge in accordance with Paragraph 7 of this Final Order, Lender shall have a valid, first-priority lien in all cash resident at a Killeen Entity Accounts on or after January 23, 2019, without the need for the KeyBank Debtors to execute a control agreement or any other action by or on behalf of the Lenders to obtain control of any such accounts.

7. <u>Parties in Interest Bound</u>.

   a. The admissions and stipulations contained in the Findings of Fact and Conclusion of Law shall be binding on the KeyBank Debtors under all circumstances and shall be binding upon all other parties-in-interest, including, without limitation, any Committee and any Chapter 7 or Chapter 11 trustee that may be appointed or elected on behalf of the KeyBank Debtors' estates, except to the extent that (i) a party-in-interest has filed a motion for standing, an adversary proceeding or contested matter challenging the validity, enforceability or priority of the Prepetition Obligations or the liens on the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action against the Lender on behalf of the KeyBank Debtors' estates, no later than April 30, 2019 (the "Challenge Deadline"), which deadline may be extended by the agreement of the Committee and the Lender in a notice to be filed with the Court, and

    (ii) the Court rules in favor of the plaintiff in any such timely filed motion, adversary proceeding or contested matter. If any such motion, adversary proceeding or contested matter is timely commenced as of the Challenge Deadline, the admissions contained in this Final Order shall nonetheless remain binding and preclusive (as provided in this paragraph) except to the extent that such acknowledgments and agreements are expressly challenged in such motion, adversary proceeding or contested matter.

  b. If no such motion, adversary proceeding or contested matter is commenced as of the Challenge Deadline, then (i) the Prepetition Obligations shall constitute allowed secured claims, not subject to subordination, or avoidance, for all purposes in these Chapter 11 cases and any subsequent Chapter 7 case, (ii) the liens securing the Prepetition Obligations on the Prepetition Collateral shall be deemed legal, valid, binding, duly authorized, perfected, not subject to defense, counterclaim, recharacterization, offset of any kind, or subordination, other than as set forth herein, and otherwise unavoidable, (iii) the Prepetition Obligations, the liens on the Prepetition Collateral, and the Replacement Liens shall not be subject to any other or further challenge by any party-in-interest seeking to exercise the rights of the KeyBank Debtors' estates, including, without limitation, any successor thereto, and (iv) the Lender shall be deemed released from any and all rights, claims, causes of action and liabilities arising from or in connection with the Prepetition Obligations, the Prepetition Collateral, the Lease and Security Documents and/or the extension of credit or other financial accommodations thereunder or with respect thereto.

8. <u>Events of Default</u>. Each of the following shall constitute a post Final Order entry event of default ("Event of Default") with respect to the KeyBank Debtors' authorization to use Lender's Cash Collateral, unless otherwise waived in writing by the Lender:

  a. subject to Paragraph 3 of this Final Order, any KeyBank Debtor hereinafter fails to make any post-petition lease payments under the Sublease Agreements or Master Lease Agreement in accordance with the existing Lease and Security Documents, this Final Order and any further order of this Court;

  b. entry of an order converting any of the KeyBank Debtor's Chapter 11 cases to a case under Chapter 7 of the Bankruptcy Code;

  c. entry of an order dismissing any of the KeyBank Debtor's Chapter 11 cases;

  d. entry of an order appointing or directing the election of a trustee or an examiner with expanded powers for any of the KeyBank Debtors under Bankruptcy Code sections 1104 or 1106(b);

  e. without the prior written consent of the Lender, the entry of any order (or other judicial action which has the effect of) amending, reversing, supplementing, staying the effectiveness of, vacating, or otherwise modifying this Final Order;

  f. any of the KeyBank Debtors uses Cash Collateral for any purpose or in a manner other than as permitted in this Final Order;

  g. entry of an order by the Bankruptcy Court authorizing relief from stay by any person (other than the Lender) on or with respect to all or any portion of the Prepetition Collateral with a value in excess of $50,000;

  h. the filing by any of the KeyBank Debtors of any pleading objecting to or seeking to challenge the Lender's claims with respect to the Prepetition Obligations or the Lender's lien upon Cash Collateral or the Prepetition Collateral or otherwise asserting rights, claims or causes of action against the Lender with respect to the Prepetition Obligations;

  i. the entry of an order rejecting any of the Sublease Agreements or the Master Lease Agreement;

  j. the filing by any of the KeyBank Debtors of any debtor-in-possession financing pleadings or any documents pertaining to a debtor-in-possession financing not acceptable to and supported by the Lender;

  k. the filing by any of the KeyBank Debtors of any bid procedure and/or sale documents relating to the sale of the Prepetition Collateral, post-petition collateral subject to the Replacement Lien, and/or Cash Collateral not acceptable to and supported by the Lender; or

  l. any of the KeyBank Debtors ceases the operation of any material portion of its business.

9. <u>Termination Notice</u>. Immediately upon the occurrence or existence of an Event of Default, the Lender shall be authorized to issue a notice (a "Termination Notice") thereof which will be filed with the Court with copies to the KeyBank Debtors, their counsel, counsel to the Committee, and the U.S. Trustee, which Termination Notice may be delivered by electronic mail. The Court will consider such Termination Notice on an expedited basis; provided that the KeyBank Debtors will continue to be authorized to use Cash Collateral in accordance with this Final Order until the Court's consideration of such Termination Notice.

10. <u>Failure of Adequate Protection</u>. Nothing herein shall constitute a waiver, release or modification of the rights of the Lender or HUD to assert a claim under Bankruptcy Code section 507(b), subject to the terms of this Final Order.

11. <u>Automatic Stay</u>. The automatic stay under Bankruptcy Code section 362(a) shall be, and it hereby is, vacated and modified to the extent necessary to permit (x) the Lender to send the Termination Notice (as defined herein), or (y) HUD to send any required notices pursuant to HUD programs, statutes, regulations, policies, procedures, rules or any Regulatory Agreements, subject to the terms and conditions contained herein. For the avoidance of doubt, the automatic stay would not apply to any governmental unit's use or implementation of regulatory or police powers.

12. <u>Deemed Request for Stay Relief</u>. The Motion shall be deemed to constitute a request by the Lender and HUD for relief from the automatic stay with respect to the Prepetition Collateral (but solely to the extent provided by this Final Order), for adequate protection for the use of Lender's Cash Collateral as of the Petition Date and shall suffice for all purposes of Bankruptcy Code section 507(b).

13. <u>CMS Reservation of Rights</u>. Notwithstanding anything in this Final Order or the Findings of Fact and Conclusions of Law, nothing shall (1) restrain, limit or impact any action by the U.S. Department of Health & Human Services, the Centers for Medicare and Medicaid Services or Medicare Administrative Contractors to implement the Medicare program; (2) affect, modify or impair any governmental unit's recoupment or setoff rights, claims, or defenses; and (3) be construed to affect the exclusive jurisdiction of the U.S. Department of Health & Human Services to adjudicate and pay Medicare claims in the ordinary course.

14. <u>HUD Reservation of Rights</u>.  Notwithstanding anything in this Final Order or the Findings of Fact and Conclusions of Law, nothing shall (1) restrain, limit or impact any action by HUD to implement HUD programs; (2) affect, modify or impair HUD's rights, claims or defenses with respect to any of the following: (a) any Regulatory Agreement executed between HUD and the KeyBank Debtors, and (b) any regulatory agreement executed between HUD and any non-debtor, including, without limitation, the owners of the real property from which the KeyBank Debtors operate their facilities and businesses; and (3) be construed to affect the exclusive jurisdiction of HUD with respect to enforcement actions.  Without limiting the foregoing, for the avoidance of doubt, HUD's rights, claims and defenses are preserved with respect to filing any claim or administrative expense, and bringing any action or proceeding pursuant to applicable nonbankruptcy law.

15. <u>Assignment to HUD</u>.  Upon any default by the KeyBank Debtors under any Regulatory Agreement, any applicable security instruments or agreements, or applicable law, which results in an assignment of any HUD-insured note to HUD, HUD shall be subrogated to all claims, rights, remedies and defenses of the Lender, pursuant to the terms of this Final Order and all applicable security instruments and agreements and applicable statutes and regulations.

16. <u>No Duty to Monitor Compliance</u>. The Lender and HUD may assume that the KeyBank Debtors will comply with all terms and conditions of this Final Order and neither the Lender nor HUD shall (a) be obligated to ensure or monitor the KeyBank Debtors' compliance with this Final Order, (b) be obligated to pay directly any expenses incurred or authorized to be incurred pursuant to this Final Order or in connection with the operation of the KeyBank Debtors' businesses, or (c) be obligated to ensure or monitor that Lender's Cash Collateral exists to pay such expenses.

17. <u>No Waiver</u>. The failure of the Lender or HUD to seek relief or otherwise exercise their rights and remedies under this Final Order or the Lease and Security Documents, as applicable, shall not constitute a waiver of any of Lender's rights hereunder, thereunder or otherwise.

18. <u>No Third-Party Rights</u>. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holders or any direct, indirect or incidental beneficiary.

19. <u>Effect of Order</u>. This Final Order shall be immediately effective and not subject to any stay (notwithstanding anything to the contrary contained in the Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3)). The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered (a) confirming any plan of reorganization; (b) dismissing any one of these Chapter 11 cases; (c) converting any one of these Chapter 11 cases to any other chapter under the Bankruptcy Code; (d) withdrawing of the reference of any one of these Chapter 11 cases from the Court; and (e) providing for abstention from handling or retaining of jurisdiction of any one of these Chapter 11 cases in the Court.

20. <u>Amendments and Waivers</u>. Any amendment, modification, supplement or waiver of any provision in this Final Order shall be in writing, signed by the KeyBank Debtors and the Lender, and approved by the Court on appropriate notice by the KeyBank Debtors to all parties in interest.

21. <u>The Lender Not in Control of KeyBank Debtors' Operations</u>. With respect to the KeyBank Debtors' use of Cash Collateral pursuant to this Final Order, or any actions reasonably related to this Final Order, neither the Lender, nor its respective agents, employees, attorneys or representatives, shall have any liability to any third party (including creditors of the KeyBank

Debtors) and shall not be deemed to be in control of the KeyBank Debtors' operations or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the KeyBank Debtors.

22. <u>Atlas Reservation of Rights</u>. The KeyBank Debtors shall segregate all post-petition funds, from and after January 23, 2019, attributable to the services provided by Atlas Dental Management, LLC ("Atlas").

23. <u>Order Governs</u>. In the event of any inconsistency between the provisions of this Final Order and the Lease and Security Documents, the provisions of this Final Order shall govern.

###End of Order###

Ordered submitted by:

*/s/ E. P. Keiffer*
E. P. Keiffer
State Bar No. 11181700
Kevin D. McCullough
State Bar No. 00788005
Rochelle McCullough, LLP
325 North Saint Paul St., Suite 4500
Dallas, Texas 75201
Telephone: (214) 953-0182
Facsimile: (214) 953-0185
pkeiffer@romclaw.com
Kdm@romclaw.com

*Conflicts Counsel to the Debtors and Debtors in Possession*


*/s/ John S. Sparacino*
John J. Sparacino
Texas State Bar No. 18873700
VORYS, SATER, SEYMOUR AND PEASE LLP
700 Louisiana Street, Suite 4100
Houston, Texas 77002
(713) 588-7038
(713) 588-7080 (facsimile)
jjsparacino@vorys.com

*Attorney for KeyBank National Association*

# Exhibit A

(Sorted Alphabetically)

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 1. | Alief SCC LLC | 18-33987 | 0523 |
| 2. | Bandera SCC LLC | 18-33989 | 0617 |
| 3. | Baytown SCC LLC | 18-33992 | 0778 |
| 4. | Beltline SCC LLC | 18-33996 | 7264 |
| 5. | Booker SCC LLC | 18-33999 | 0967 |
| 6. | Bossier SCC LLC | 18-34003 | 2017 |
| 7. | Bradford SCC LLC | 18-34004 | 9535 |
| 8. | Brinker SCC LLC | 18-34005 | 7304 |
| 9. | Brownwood SCC LLC | 18-33968 | 0677 |
| 10. | Capitol SCC LLC | 18-34006 | 1750 |
| 11. | CapWest-Texas LLC | 18-34008 | 4897 |
| 12. | Cedar Bayou SCC LLC | 18-34010 | 8889 |
| 13. | Clear Brook SCC LLC | 18-34012 | 1877 |
| 14. | Colonial SCC LLC | 18-34014 | 4385 |
| 15. | Community SCC LLC | 18-33969 | 7951 |
| 16. | Corpus Christi SCC LLC | 18-34016 | 9807 |
| 17. | Crestwood SCC LLC | 18-34017 | 7349 |
| 18. | Crowley SCC LLC | 18-33970 | 6697 |
| 19. | CTLTC Real Estate, LLC | 18-34018 | 0202 |
| 20. | Fairpark SCC LLC | 18-34020 | 7381 |
| 21. | Gamble Hospice Care Central LLC | 18-34022 | 6688 |
| 22. | Gamble Hospice Care Northeast LLC | 18-34025 | 6661 |
| 23. | Gamble Hospice Care Northwest LLC | 18-34027 | 2044 |
| 24. | Gamble Hospice Care of Cenla LLC | 18-34029 | 4510 |
| 25. | Green Oaks SCC LLC | 18-33971 | 7218 |
| 26. | Harbor Lakes SCC LLC | 18-33972 | 7299 |
| 27. | Harden HUD Holdco LLC | 18-34032 | 1502 |
| 28. | Harden Non-HUD Holdco LLC | 18-34035 | 3391 |
| 29. | Harden Pharmacy LLC | 18-34036 | 1995 |
| 30. | Hearthstone SCC LLC | 18-34037 | 9154 |
| 31. | Hewitt SCC LLC | 18-33973 | 7237 |
| 32. | HG SCC LLC | 18-34040 | 7415 |
| 33. | Hill Country SCC LLC | 18-34043 | 4199 |
| 34. | Holland SCC LLC | 18-33974 | 1427 |
| 35. | Hunters Pond SCC LLC | 18-34045 | 2886 |
| 36. | Jacksonville SCC LLC | 18-34046 | 4216 |
| 37. | La Hacienda SCC LLC | 18-34049 | 1074 |
| 38. | Lakepointe SCC LLC | 18-34050 | 7457 |

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 39. | Major Timbers LLC | 18-34052 | 7477 |
| 40. | Marlandwood East SCC LLC | 18-34054 | 1871 |
| 41. | Marlandwood West SCC LLC | 18-34058 | 2192 |
| 42. | Meadow Creek SCC LLC | 18-34064 | 9278 |
| 43. | Midland SCC LLC | 18-34065 | 4231 |
| 44. | Mill Forest Road SCC LLC | 18-34066 | 5137 |
| 45. | Mission SCC LLC | 18-33975 | 8086 |
| 46. | Mullican SCC LLC | 18-34067 | 7499 |
| 47. | Mystic Park SCC LLC | 18-34068 | 1898 |
| 48. | Normandie SCC LLC | 18-34069 | 1542 |
| 49. | Onion Creek SCC LLC | 18-34070 | 7425 |
| 50. | Park Bend SCC LLC | 18-34071 | 9410 |
| 51. | Pasadena SCC LLC | 18-34072 | 1694 |
| 52. | Pecan Tree SCC LLC | 18-34073 | 4241 |
| 53. | Pecan Valley SCC LLC | 18-34074 | 9585 |
| 54. | Pleasantmanor SCC LLC | 18-34075 | 7536 |
| 55. | PM Management - Allen NC LLC | 18-34076 | 4961 |
| 56. | PM Management - Babcock NC LLC | 18-34077 | 7829 |
| 57. | PM Management - Cedar Park NC LLC | 18-34078 | 1050 |
| 58. | PM Management - Corpus Christi NC II LLC | 18-34079 | 5231 |
| 59. | PM Management - Corpus Christi NC III LLC | 18-34080 | 5129 |
| 60. | PM Management - Corsicana NC II LLC | 18-34081 | 9281 |
| 61. | PM Management - Corsicana NC III LLC | 18-34082 | 9353 |
| 62. | PM Management - Corsicana NC LLC | 18-34083 | 1333 |
| 63. | PM Management - Denison NC LLC | 18-34084 | 5022 |
| 64. | PM Management - El Paso I NC LLC | 18-34085 | 2965 |
| 65. | PM Management - Fredericksburg NC LLC | 18-34086 | 0599 |
| 66. | PM Management - Frisco NC LLC | 18-34087 | 5082 |
| 67. | PM Management - Garland NC LLC | 18-33979 | 5137 |
| 68. | PM Management - Golden Triangle NC I LLC | 18-33980 | 9478 |
| 69. | PM Management - Golden Triangle NC II LLC | 18-33981 | 9536 |
| 70. | PM Management - Golden Triangle NC III LLC | 18-33982 | 9597 |
| 71. | PM Management - Golden Triangle NC IV LLC | 18-33983 | 9654 |
| 72. | **PM Management - Killeen I NC LLC** | **18-33984** | **3105** |
| 73. | **PM Management - Killeen II NC LLC** | **18-33985** | **3179** |
| 74. | **PM Management - Killeen III NC LLC** | **18-33986** | **3245** |
| 75. | PM Management - Lewisville NC LLC | 18-33988 | 5296 |
| 76. | PM Management - New Braunfels NC LLC | 18-33990 | 6293 |
| 77. | PM Management - Park Valley NC LLC | 18-33991 | 7186 |

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 78. | PM Management - Pflugerville AL LLC | 18-33993 | 4007 |
| 79. | PM Management – Portfolio IX NC, LLC | 19-30253 | 1841 |
| 80. | PM Management – Portfolio V NC, LLC | 19-30249 | 2086 |
| 81. | PM Management – Portfolio VI NC, LLC | 19-30250 | 5354 |
| 82. | PM Management – Portfolio VII NC, LLC | 19-30251 | 9728 |
| 83. | **PM Management – Portfolio VIII NC, LLC** | **19-30252** | **3048** |
| 84. | PM Management - Portland AL LLC | 18-33994 | 5018 |
| 85. | PM Management - Portland NC LLC | 18-33995 | 4928 |
| 86. | PM Management - Round Rock AL LLC | 18-33997 | 5304 |
| 87. | PM Management – San Antonio AL, LLC | 19-30254 | 4069 |
| 88. | PM Management - San Antonio NC LLC | 18-33998 | 1216 |
| 89. | Presidential SCC LLC | 18-34000 | 1913 |
| 90. | Redoak SCC LLC | 18-33976 | 7569 |
| 91. | Riverside SCC LLC | 18-34001 | 1889 |
| 92. | Round Rock SCC LLC | 18-34002 | 8936 |
| 93. | Rowlett SCC LLC | 18-34007 | 7606 |
| 94. | Ruston SCC LLC | 18-34009 | 0242 |
| 95. | RW SCC LLC | 18-34011 | 7631 |
| 96. | Sagebrook SCC LLC | 18-34013 | 9571 |
| 97. | San Angelo SCC LLC | 18-34015 | 4254 |
| 98. | San Antonio SCC, LLC | 19-30261 | 4923 |
| 99. | SCC Edinburg LLC | 18-34019 | 1195 |
| 100. | SCC Hospice Holdco LLC | 18-34021 | 3166 |
| 101. | SCC Senior Care Investments LLC | 18-34023 | 4123 |
| 102. | SCC Socorro LLC | 18-34024 | 5459 |
| 103. | Senior Care Center Management II LLC | 18-34026 | 1280 |
| 104. | Senior Care Center Management LLC | 18-34028 | 7811 |
| 105. | Senior Care Centers Home Health, LLC | 18-34030 | 1931 |
| 106. | Senior Care Centers LLC | 18-33967 | 8550 |
| 107. | Senior Rehab Solutions LLC | 18-34031 | 4829 |
| 108. | Senior Rehab Solutions North Louisiana LLC | 18-34033 | 1690 |
| 109. | Shreveport SCC LLC | 18-34034 | 1659 |
| 110. | Solutions 2 Wellness LLC | 18-34038 | 4065 |
| 111. | South Oaks SCC LLC | 18-34039 | 8002 |
| 112. | Springlake ALF SCC LLC | 18-34041 | 2436 |
| 113. | Springlake SCC LLC | 18-34042 | 9102 |
| 114. | Stallings Court SCC LLC | 18-33977 | 7393 |
| 115. | Stonebridge SCC LLC | 18-34044 | 9234 |
| 116. | Stonegate SCC LLC | 18-33978 | 3005 |
| 117. | Summer Regency SCC LLC | 18-34047 | 7782 |
| 118. | TRISUN Healthcare LLC | 18-34048 | 2497 |
| 119. | Valley Grande SCC LLC | 18-34051 | 1341 |

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 120. | Vintage SCC LLC | 18-34053 | 7710 |
| 121. | West Oaks SCC LLC | 18-34055 | 9535 |
| 122. | Western Hills SCC LLC | 18-34056 | 1922 |
| 123. | Weston Inn SCC LLC | 18-34057 | 7871 |
| 124. | Westover Hills SCC LLC | 18-34059 | 3303 |
| 125. | Whitesboro SCC LLC | 18-34060 | 7745 |
| 126. | Windcrest SCC LLC | 18-34061 | 9541 |
| 127. | Windmill SCC LLC | 18-34062 | 8067 |
| 128. | Wurzbach SCC LLC | 18-34063 | 9920 |

Case 18-33967-bjh11 Doc 561 Filed 02/22/19    Entered 02/22/19 16:34:09    Page 16 of 16