


CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 26, 2019**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| Senior Care Centers, LLC, *et al.*,[1] | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors. | § | (Jointly Administered) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING THE FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) SETTING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF RELATING TO USE OF KEYBANK, N.A.'S CASH COLLATERAL**

Upon the motion (the "Motion") [Doc. No. 476] of the KeyBank Debtors (defined herein) and by agreement with KeyBank, N.A. ("Lender"), memorialized in the Agreed Final Order (i) Authorizing the Use of Cash Collateral, (ii) Granting Adequate Protection, (iii) Modifying the Automatic Stay, and (iv) Granting Related Relief Relating to the Use of KeyBank, N.A.'s Cash Collateral (the "Final Order") [Doc. No. 561]; the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b); and the Court having found that this matter is a core

---

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as Exhibit 1.

proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court having found that venue of this proceeding and the Final Order in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief set forth in the Final Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Final Order has been given, under the circumstances, and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND THAT:**[2]

A. On December 4, 2018 (the "Petition Date"), the Debtors filed petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code").

B. Since the Petition Date, the Debtors have continued in the management and operation of their businesses and property as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

C. Debtors PM Management – Killeen I NC, LLC, PM Management – Killeen II NC, LLC, PM Management – Killeen III NC, LLC (collectively, the "Subtenants") are operators of senior care facilities known as The Rosewood Retirement Community, Indian Oaks Living Center, and Hill Country Rehab and Nursing Center (collectively, the "Facilities"). The Subtenants sublease the Facilities from Debtor PM Management – Portfolio VIII NC, LLC (the "Master Tenant" and together with the Subtenants, the "KeyBank Debtors"), who in turn has leased the

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Facilities from their owners, HC-RW Associates, Ltd., H-C Associates, Ltd., and HC Hill Country Associates, Ltd. (collectively, the "Borrowers").

D. The KeyBank Debtors stipulate and agree that the Subtenants are operators of skilled nursing facilities located on real property owned by the Borrowers, which were financed by the Lender in conjunction with programs run by the U.S. Department of Housing and Urban Development ("HUD") and insured by HUD. The KeyBank Debtors stipulate and agree that the KeyBank Debtors and the Borrowers are each parties to regulatory agreements with HUD (collectively the "Regulatory Agreements," each a "Regulatory Agreement"). The KeyBank Debtors stipulate and agree that the Subtenants are parties to operator Regulatory Agreements, the Master Tenant is a party to a master tenant Regulatory Agreement, and the Borrowers are parties to Borrower Regulatory Agreements. The KeyBank Debtors stipulate and agree that they are obligated under the Regulatory Agreements and are subject to applicable HUD statutes, regulations, rules, policies and procedures.

E. The KeyBank Debtors stipulate and agree that certain loans made by Lender to the Borrowers are secured by assignments of the rents, leases, and revenue from the KeyBank Debtors, as well as security interests in and liens against the Subtenants' (i) fixtures, furniture, equipment, and other goods and tangible personal property, (ii) licenses, permits, government receivables accounts, government payments and other healthcare assets, (iii) funds, monies, securities whether in escrow, lock boxes, depository, blocked accounts, or otherwise, (iv) accounts, accounts receivable, general intangibles, chattel paper, instruments, rights to payment, inventory, goods, cash, cash proceeds, bank accounts, deposit accounts, (v) all security or other deposits; and (vi) all products and proceeds of the foregoing (as further defined and described in the Lease and Security Documents).

F. The KeyBank Debtors stipulate and agree that they are obligated under the master lease agreement, sublease agreements, security agreements, instruments, operator and regulatory documents listed on Exhibit 2 hereto (collectively, the "Lease and Security Documents") to the extent that they are a party to such Lease and Security Documents. Any and all monetary and nonmonetary obligations of the KeyBank Debtors under the Lease and Security Documents as of the Petition Date are referred to herein as the "Prepetition Obligations." The acknowledgments and stipulations in Paragraphs D, E, F and G of these Findings of Fact and Conclusions of Law shall be binding on the KeyBank Debtors but not on any other party-in-interest in these cases, except to the extent provided in Paragraph 7 of the Final Order.

G. The KeyBank Debtors further stipulate and agree as follows:

(1) As of the Petition Date, the Lease and Security Documents are each valid and enforceable against each of the KeyBank Debtors that is a party thereto, and none of the KeyBank Debtors possesses, and each agrees not to assert, any claim (as such term is defined in Bankruptcy Code section 101(5)), counterclaim, setoff, or defense of any kind, nature or description which would in any way affect the validity or enforceability of the Lease and Security Documents;

(2) As of the Petition Date, the Prepetition Obligations constitute legal, valid, and binding obligations of the KeyBank Debtors, as applicable, enforceable in accordance with the terms of the Lease and Security Documents; no offsets, defenses or counterclaims to any of the Prepetition Obligations exist; no portion of the Prepetition Obligations is subject to recharacterization, disallowance, reduction or subordination pursuant to the Bankruptcy Code or non-bankruptcy law; the Prepetition Obligations constitute allowable secured claims; and the KeyBank Debtors have irrevocably waived, discharged, and released any rights they may have to challenge or object to the Prepetition Obligations, and/or to challenge or object to the security for the Prepetition Obligations;

(3) As of the Petition Date, the Lender's liens and security interests with respect to the KeyBank Debtors' collateral described in the Lease and Security Documents, including but not limited to rents, accounts, cash (but only as to cash of the Key Bank Debtors that was held in the Killeen Entity Accounts on or after January 23, 2019), receivables, and/or contract rights, including the proceeds (perfected as to deposit accounts only as proceeds) of the foregoing that were deposited to the Killen Entity Accounts on or

after January 23, 2019 (collectively, the "Prepetition Collateral") are valid, enforceable and perfected (by the filing financing statements and the recording of assignments of rents and leases with the applicable county agencies,), and are not subject to recharacterization, disallowance, reduction or subordination pursuant to the Bankruptcy Code or non-bankruptcy law. All of such financing statements and relevant instruments were validly authorized by the KeyBank Debtors and validly executed by authorized representatives of the KeyBank Debtors. Pursuant to the Lease and Security Documents, the Lender has first priority security interests in and liens on all of the Prepetition Collateral, including the Cash Collateral (defined herein) and all proceeds of the Prepetition Collateral, to secure payment of the Prepetition Obligations;

(4) The Lender's security interests and liens have attached to all funds (resident at a Killeen Entity Account on or after January 23, 2019) and property of the KeyBank Debtors consisting of the Prepetition Collateral and the products and proceeds thereof, and the Lender's security interests and liens will, notwithstanding the commencement of these Chapter 11 Cases, as of the Petition Date and thereafter, attach to the products and other proceeds of the Prepetition Collateral resident at a Killen Entity Account on or after January 23, 2019. Without limiting the foregoing, the Lender's security interests and liens attach to all cash resident at a Killen Entity Account on or after January 23, 2019, all other deposit accounts of the Key Bank Debtors, or other cash equivalents now or hereafter in the possession, custody or control of the KeyBank Debtors that constitutes the proceeds or products of the Prepetition Collateral, but specifically excluding any cash held in the Killeen Entity Accounts on or before January 22, 2019 or any other bank account held by or in the name of any of the Debtors other than the Key Bank Debtors, (the "Cash Collateral").

H. The KeyBank Debtors have requested that the Lender consent to the KeyBank Debtors' use of Cash Collateral and the Lender is willing to consent to the KeyBank Debtors' use of Cash Collateral on the terms and conditions provided herein and in the Final Order. The Lender is relying on the terms, conditions, and protections provided herein and in the Final Order in so consenting.

I. The agreements and arrangements described and authorized in the Final Order have been negotiated at arm's-length with all parties represented by counsel, are fair and reasonable under the circumstances, and are enforceable in accordance with their terms. The KeyBank Debtors and the Lender are acting in good faith with respect to the use of Cash Collateral as

provided in the Final Order. The superpriority claims, security interests and liens and other protections granted to the Lender pursuant to the Final Order (1) are fair and reasonable and satisfy the requirements of the Bankruptcy Code, and (2) will not be affected by any subsequent reversal, modification, vacatur or amendment of the Final Order or any other order, as provided in Bankruptcy Code section 363(m).

J. The liens and security interests granted to the Lender in the Final Order shall not prime or impair any validly perfected lien or security interest senior to the liens and security interests of the Lender with respect to the KeyBank Debtors' assets and properties in existence as of the Petition Date, if any (the "Prior Senior Liens"). The granting of the replacement liens, superpriority administrative claims and other agreements of the KeyBank Debtors in the Final Order constitute adequate protection to the Lender for the KeyBank Debtors' use of Cash Collateral for purposes of the Final Order.

K. Good cause has been shown for entry of the Final Order. Without use of Cash Collateral, the KeyBank Debtors will not be able to fund their day-to-day operations, including payroll for their employees and ongoing services to their residents. Unless the Court authorizes the use of Cash Collateral, the KeyBank Debtors will be unable to pay for the goods and services necessary to preserve and maximize the value of the KeyBank Debtors' assets. Accordingly, the Final Order is required to avoid immediate and irreparable harm to the KeyBank Debtors' estates. Entry of the Final Order is in the best interests of the KeyBank Debtors, their creditors, and the estates.

**###End of Order###**

Ordered submitted by:

*/s/ E. P. Keiffer*
E.P. Keiffer
State Bar No. 11181700
Kevin D. McCullough
State Bar No. 00788005
Rochelle McCullough, LLP
325 North Saint Paul St., Suite 4500
Dallas, Texas 75201
Telephone: (214) 953-0182
Facsimile: (214) 953-0185
pkeiffer@romclaw.com
Kdm@romclaw.com

*Conflicts Counsel to the Debtors and Debtors in Possession*

**Exhibit 1**

(Sorted Alphabetically)

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 1. | Alief SCC LLC | 18-33987 | 0523 |
| 2. | Bandera SCC LLC | 18-33989 | 0617 |
| 3. | Baytown SCC LLC | 18-33992 | 0778 |
| 4. | Beltline SCC LLC | 18-33996 | 7264 |
| 5. | Booker SCC LLC | 18-33999 | 0967 |
| 6. | Bossier SCC LLC | 18-34003 | 2017 |
| 7. | Bradford SCC LLC | 18-34004 | 9535 |
| 8. | Brinker SCC LLC | 18-34005 | 7304 |
| 9. | Brownwood SCC LLC | 18-33968 | 0677 |
| 10. | Capitol SCC LLC | 18-34006 | 1750 |
| 11. | CapWest-Texas LLC | 18-34008 | 4897 |
| 12. | Cedar Bayou SCC LLC | 18-34010 | 8889 |
| 13. | Clear Brook SCC LLC | 18-34012 | 1877 |
| 14. | Colonial SCC LLC | 18-34014 | 4385 |
| 15. | Community SCC LLC | 18-33969 | 7951 |
| 16. | Corpus Christi SCC LLC | 18-34016 | 9807 |
| 17. | Crestwood SCC LLC | 18-34017 | 7349 |
| 18. | Crowley SCC LLC | 18-33970 | 6697 |
| 19. | CTLTC Real Estate, LLC | 18-34018 | 0202 |
| 20. | Fairpark SCC LLC | 18-34020 | 7381 |
| 21. | Gamble Hospice Care Central LLC | 18-34022 | 6688 |
| 22. | Gamble Hospice Care Northeast LLC | 18-34025 | 6661 |
| 23. | Gamble Hospice Care Northwest LLC | 18-34027 | 2044 |
| 24. | Gamble Hospice Care of Cenla LLC | 18-34029 | 4510 |
| 25. | Green Oaks SCC LLC | 18-33971 | 7218 |
| 26. | Harbor Lakes SCC LLC | 18-33972 | 7299 |
| 27. | Harden HUD Holdco LLC | 18-34032 | 1502 |
| 28. | Harden Non-HUD Holdco LLC | 18-34035 | 3391 |
| 29. | Harden Pharmacy LLC | 18-34036 | 1995 |
| 30. | Hearthstone SCC LLC | 18-34037 | 9154 |
| 31. | Hewitt SCC LLC | 18-33973 | 7237 |
| 32. | HG SCC LLC | 18-34040 | 7415 |
| 33. | Hill Country SCC LLC | 18-34043 | 4199 |
| 34. | Holland SCC LLC | 18-33974 | 1427 |
| 35. | Hunters Pond SCC LLC | 18-34045 | 2886 |
| 36. | Jacksonville SCC LLC | 18-34046 | 4216 |
| 37. | La Hacienda SCC LLC | 18-34049 | 1074 |
| 38. | Lakepointe SCC LLC | 18-34050 | 7457 |
| 39. | Major Timbers LLC | 18-34052 | 7477 |
| 40. | Marlandwood East SCC LLC | 18-34054 | 1871 |

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 41. | Marlandwood West SCC LLC | 18-34058 | 2192 |
| 42. | Meadow Creek SCC LLC | 18-34064 | 9278 |
| 43. | Midland SCC LLC | 18-34065 | 4231 |
| 44. | Mill Forest Road SCC LLC | 18-34066 | 5137 |
| 45. | Mission SCC LLC | 18-33975 | 8086 |
| 46. | Mullican SCC LLC | 18-34067 | 7499 |
| 47. | Mystic Park SCC LLC | 18-34068 | 1898 |
| 48. | Normandie SCC LLC | 18-34069 | 1542 |
| 49. | Onion Creek SCC LLC | 18-34070 | 7425 |
| 50. | Park Bend SCC LLC | 18-34071 | 9410 |
| 51. | Pasadena SCC LLC | 18-34072 | 1694 |
| 52. | Pecan Tree SCC LLC | 18-34073 | 4241 |
| 53. | Pecan Valley SCC LLC | 18-34074 | 9585 |
| 54. | Pleasantmanor SCC LLC | 18-34075 | 7536 |
| 55. | PM Management - Allen NC LLC | 18-34076 | 4961 |
| 56. | PM Management - Babcock NC LLC | 18-34077 | 7829 |
| 57. | PM Management - Cedar Park NC LLC | 18-34078 | 1050 |
| 58. | PM Management - Corpus Christi NC II LLC | 18-34079 | 5231 |
| 59. | PM Management - Corpus Christi NC III LLC | 18-34080 | 5129 |
| 60. | PM Management - Corsicana NC II LLC | 18-34081 | 9281 |
| 61. | PM Management - Corsicana NC III LLC | 18-34082 | 9353 |
| 62. | PM Management - Corsicana NC LLC | 18-34083 | 1333 |
| 63. | PM Management - Denison NC LLC | 18-34084 | 5022 |
| 64. | PM Management - El Paso I NC LLC | 18-34085 | 2965 |
| 65. | PM Management - Fredericksburg NC LLC | 18-34086 | 0599 |
| 66. | PM Management - Frisco NC LLC | 18-34087 | 5082 |
| 67. | PM Management - Garland NC LLC | 18-33979 | 5137 |
| 68. | PM Management - Golden Triangle NC I LLC | 18-33980 | 9478 |
| 69. | PM Management - Golden Triangle NC II LLC | 18-33981 | 9536 |
| 70. | PM Management - Golden Triangle NC III LLC | 18-33982 | 9597 |
| 71. | PM Management - Golden Triangle NC IV LLC | 18-33983 | 9654 |
| 72. | **PM Management - Killeen I NC LLC** | **18-33984** | **3105** |
| 73. | **PM Management - Killeen II NC LLC** | **18-33985** | **3179** |
| 74. | **PM Management - Killeen III NC LLC** | **18-33986** | **3245** |
| 75. | PM Management - Lewisville NC LLC | 18-33988 | 5296 |
| 76. | PM Management - New Braunfels NC LLC | 18-33990 | 6293 |
| 77. | PM Management - Park Valley NC LLC | 18-33991 | 7186 |
| 78. | PM Management - Pflugerville AL LLC | 18-33993 | 4007 |
| 79. | PM Management – Portfolio IX NC, LLC | 19-30253 | 1841 |

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 80. | PM Management – Portfolio V NC, LLC | 19-30249 | 2086 |
| 81. | PM Management – Portfolio VI NC, LLC | 19-30250 | 5354 |
| 82. | PM Management – Portfolio VII NC, LLC | 19-30251 | 9728 |
| 83. | **PM Management – Portfolio VIII NC, LLC** | **19-30252** | **3048** |
| 84. | PM Management - Portland AL LLC | 18-33994 | 5018 |
| 85. | PM Management - Portland NC LLC | 18-33995 | 4928 |
| 86. | PM Management - Round Rock AL LLC | 18-33997 | 5304 |
| 87. | PM Management – San Antonio AL, LLC | 19-30254 | 4069 |
| 88. | PM Management - San Antonio NC LLC | 18-33998 | 1216 |
| 89. | Presidential SCC LLC | 18-34000 | 1913 |
| 90. | Redoak SCC LLC | 18-33976 | 7569 |
| 91. | Riverside SCC LLC | 18-34001 | 1889 |
| 92. | Round Rock SCC LLC | 18-34002 | 8936 |
| 93. | Rowlett SCC LLC | 18-34007 | 7606 |
| 94. | Ruston SCC LLC | 18-34009 | 0242 |
| 95. | RW SCC LLC | 18-34011 | 7631 |
| 96. | Sagebrook SCC LLC | 18-34013 | 9571 |
| 97. | San Angelo SCC LLC | 18-34015 | 4254 |
| 98. | San Antonio SCC, LLC | 19-30261 | 4923 |
| 99. | SCC Edinburg LLC | 18-34019 | 1195 |
| 100. | SCC Hospice Holdco LLC | 18-34021 | 3166 |
| 101. | SCC Senior Care Investments LLC | 18-34023 | 4123 |
| 102. | SCC Socorro LLC | 18-34024 | 5459 |
| 103. | Senior Care Center Management II LLC | 18-34026 | 1280 |
| 104. | Senior Care Center Management LLC | 18-34028 | 7811 |
| 105. | Senior Care Centers Home Health, LLC | 18-34030 | 1931 |
| 106. | Senior Care Centers LLC | 18-33967 | 8550 |
| 107. | Senior Rehab Solutions LLC | 18-34031 | 4829 |
| 108. | Senior Rehab Solutions North Louisiana LLC | 18-34033 | 1690 |
| 109. | Shreveport SCC LLC | 18-34034 | 1659 |
| 110. | Solutions 2 Wellness LLC | 18-34038 | 4065 |
| 111. | South Oaks SCC LLC | 18-34039 | 8002 |
| 112. | Springlake ALF SCC LLC | 18-34041 | 2436 |
| 113. | Springlake SCC LLC | 18-34042 | 9102 |
| 114. | Stallings Court SCC LLC | 18-33977 | 7393 |
| 115. | Stonebridge SCC LLC | 18-34044 | 9234 |
| 116. | Stonegate SCC LLC | 18-33978 | 3005 |
| 117. | Summer Regency SCC LLC | 18-34047 | 7782 |
| 118. | TRISUN Healthcare LLC | 18-34048 | 2497 |
| 119. | Valley Grande SCC LLC | 18-34051 | 1341 |
| 120. | Vintage SCC LLC | 18-34053 | 7710 |
| 121. | West Oaks SCC LLC | 18-34055 | 9535 |

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 122. | Western Hills SCC LLC | 18-34056 | 1922 |
| 123. | Weston Inn SCC LLC | 18-34057 | 7871 |
| 124. | Westover Hills SCC LLC | 18-34059 | 3303 |
| 125. | Whitesboro SCC LLC | 18-34060 | 7745 |
| 126. | Windcrest SCC LLC | 18-34061 | 9541 |
| 127. | Windmill SCC LLC | 18-34062 | 8067 |
| 128. | Wurzbach SCC LLC | 18-34063 | 9920 |

**Exhibit 2**

Lease and Security Documents

1. Master Lease dated as of February 1, 2011, as amended by First Amendment to Master Lease Agreement dated February 1, 2015, as further amended by Master Lease Addendum dated February 1, 2015, by and between HC Hill Country Associates, Ltd., H-C Associates, Ltd., HC-RW Associates, Ltd., and PM Management – Portfolio VIII NC, LLC (the "Master Lease Agreement").

2. Sublease Agreement dated March 1, 2011, as amended by Addendum to Operating Lease dated as of February 1, 2015, by and between PM Management – Portfolio VIII NC, LLC and PM Management – Killeen I NC, LLC (the "Killeen I Sublease").

3. Healthcare Deed of Trust, Assignment of Leases, Rents and Revenue and Security Agreement dated as of February 1, 2015, from HC-RW Associates, Ltd. to Ariel A. Mullin, Trustee, for the benefit of KeyBank National Association.

4. Healthcare Regulatory Agreement – Operator dated as of February 1, 2015 between PM Management – Killeen I NC, LLC and the U.S. Department of Housing and Urban Development (the "Killeen I Regulatory Agreement").

5. Operator Security Agreement dated as of February 1, 2015, by and between PM Management – Killeen I NC, LLC and KeyBank National Association.

6. Assignment of Leases and Rents dated as of February 1, 2015 between PM Management – Killeen I NC, LLC and KeyBank National Association.

7. Master Lease Subordination, Non-Disturbance and Attornment Agreement dated as of February 1, 2015 by and among HC-RW Associates, Ltd., PM Management – Portfolio VIII NC, LLC, PM Management – Killeen I NC, LLC, PM Management – Killeen II NC, LLC, PM Management – Killeen III NC, LLC, KeyBank National Association, H-C Associates, Ltd., HC Hill Country Associates, Ltd.

8. Healthcare Facility Note (Multistate) dated as of February 1, 2015, HC-RW Associates, Ltd. jointly and severally promises to pay KeyBank National Association.

9. Second Lien Blocked Account Control Agreement ("Shifting Control") dated as of February 12, 2015, by and among PM Management – Killeen I NC, LLC, KeyBank National Association, and JPMorgan Chase Bank, NA.

10. Sublease Agreement dated March 1, 2011, as amended by Addendum to Operating Lease dated as of February 1, 2015, by and between PM Management – Portfolio VIII NC, LLC and PM Management – Killeen III NC, LLC (the "Killeen III Sublease").

11. Healthcare Deed of Trust, Assignment of Leases, Rents and Revenue and Security Agreement dated as of February 1, 2015, from HC Hill Country Associates, Ltd. to Ariel A. Mullin, Trustee, for the benefit of KeyBank National Association.

12. Healthcare Regulatory Agreement – Operator dated as of February 1, 2015, between PM Management – Killeen III NC, LLC and the U.S. Department of Housing and Urban Development (the "Killeen III Regulatory Agreement").

13. Operator Security Agreement dated as of February 1, 2015, by and between PM Management – Killeen III NC, LLC and Keybank National Association.

14. Assignment of Leases and Rents dated as of February 1, 2015 between PM Management – Killeen III NC, LLC and Keybank National Association.

15. Master Lease Subordination, Non-Disturbance and Attornment Agreement dated as of February 1, 2015, by and among HC Hill Country Associates, Ltd., PM Management – Portfolio VIII NC, LLC, PM Management – Killeen I NC, LLC, PM Management – Killeen II NC, LLC, PM Management – Killeen III NC, LLC, Key Bank National Association, HC-RW Associates, Ltd., and H-C Associates, Ltd.

16. Healthcare Facility Note (Multistate) dated as of February 1, 2015, HC Hill Country Associates, Ltd., jointly and severally promises to pay KeyBank National Association.

17. Operator Security Agreement dated as of February 1, 2015, by and between PM Management – Killeen III NC, LLC and Key Bank National Association.

18. Assignment of Leases and Rents dated as of February 1, 2015, by and between PM Management – Killeen III NC, LLC and Key Bank National Association.

19. Guaranty dated as of January 31, 2011, made by Harden Healthcare, LLC, in favor of HC Hill Country Associates, Ltd., H-C Associates, Ltd., HC-RW Associates, Ltd. and Los Hermanos & Associates, Ltd.

20. Sublease Agreement dated as of March 1, 2011, by and between PM Management – Portfolio VIII NC, LLC and PM Management – Killeen XXX NC, LLC.

21. Second Lien Blocked Account Control Agreement ("Shifting Control") dated as of February 12, 2015, by and among PM Management – Killeen III NC, LLC, KeyBank National Association, and JPMorgan Chase Bank, NA.

22. Blocked Account Control Agreement ("Government Receivables") dated as of February 12, 2015, by and among PM Management – Killeen III NC, LLC, CIT Finance, LLC, KeyBank National Association, and JP Morgan Chase Bank NA.

23. Sublease Agreement dated March 1, 2011, as amended by Addendum to Operating Lease dated as of February 1, 2015, by and between PM Management – Portfolio VIII NC, LLC and PM Management – Killeen II NC, LLC (the "Killeen II Sublease" and together with the Killeen I Sublease and the Killeen III Sublease, the "Sublease Agreements").

24. Healthcare Deed of Trust, Assignment of Leases, Rents and Revenue and Security Agreement dated as of February 1, 2015 from H-C Associates, Ltd. to Ariel A. Mullin, Trustee, for the benefit of KeyBank National Association.

25. Healthcare Regulatory Agreement – Operator dated as of February 1, 2015 between PM Management – Killeen II NC, LLC and U.S. Department of Housing and Urban Development (the "Killeen II Regulatory Agreement" and together with the Killeen I Regulatory Agreement and the Killeen III Regulatory Agreement, the "Regulatory Agreements").

26. Operator Security Agreement dated as of February 1, 2015, by and between PM Management – Killeen II NC, LLC and KeyBank National Association.

27. Assignment of Leases and Rents dated as of February 1, 2015, by and between PM Management – Killeen II NC, LLC and KeyBank National Association.

28. Master Lease Subordination, Non-Disturbance and Attornment Agreement dated as of February 1, 2015, by and among H-C Associates, Ltd., PM Management – Portfolio VIII NC, LLC, PM Management – Killeen I NC, LLC, PM Management – Killeen II NC, LLC, PM Management – Killeen III NC, LLC, HC-RW Associates, Ltd., HC Hill Country Associates, Ltd., and Key Bank National Association.

29. Healthcare Facility Note (Multistate) dated as of February 1, 2015, H-C Associates, Ltd., jointly and severally promises to pay KeyBank National Association.

30. Second Lien Blocked Account Control Agreement ("Shifting Control") dated as of February 12, 2015, by and among PM Management – Killeen II NC, LLC, KeyBank National Association, and JPMorgan Chase Bank, NA.

31. Blocked Account Control Agreement ("Government Receivables") dated as of February 12, 2015, by and among PM Management – Killeen II NC, LLC, CIT Finance, LLC, KeyBank National Association, and JP Morgan Chase Bank NA.