**Rizzo B.E., PLLC**

Blake E. Rizzo
Texas Bar No. 24034073
blake@blakerizzolaw.com
7941 Katy Fwy #802
Houston, Texas 77024
(832) 259-9054

*Proposed Conflicts Counsel for the*
*Official Committee of Unsecured*
*Creditors of Senior Care Centers, LLC, et al.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Senior Care Centers, LLC, *et al.,* | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors, | § | (Jointly Administered) |
| | § | |
| | § | |
| Official Committee of Unsecured Creditors | § | Adversary No. _____ |
| Of Senior Care Centers, LLC, *et al*. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| CIBC Bank USA, as Administrative Agent | § | |
| for itself and for CIT Finance LLC, | § | |
| MB Financial Bank, N.A., Bankers Trust | § | |
| Company, Wells Fargo Bank, N.A., | § | |
| and Compass Bank. | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Official Committee of Unsecured Creditors (the "**Committee**") Of Senior Care Centers, LLC, *et al*., (collectively the "**Debtors**"[1]), by and through undersigned counsel, on behalf of and as the representative of the Debtor's estate, based upon knowledge, information and belief, and the results of its investigation to date, allege as follows:

## NATURE OF THE ACTION

1.      This adversary proceeding seeks: (i) a declaratory judgment that the Administrative Agent (defined below), on behalf and for the benefit of the Lenders (defined below), does not have perfected liens on or security interests in certain Excluded Property (defined below) of the Debtors; (ii) a declaratory judgment that the Administrative Agent's liens on or security interests asserted in the Nicoya Equity (defined below) are unperfected; (iii) an order avoiding the Administrative Agent's unperfected liens on or security interests in certain property pursuant to sections 544, 550 and 551 of the Bankruptcy Code (defined below); and (iv) a declaratory judgment that, based on the equities of the case, the Administrative Agent does not hold any liens on or security interests in postpetition proceeds of any of the Administrative Agent's collateral.

## JURISDICTION AND VENUE

2.      This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and (e), and 157(b)(2)(A), (K), (M) and (O) and the Order of Reference for the United States District Court for the Northern District of Texas.

3.      This Court has personal jurisdiction over the Defendants pursuant to Bankruptcy Rule 7004.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

---

[1] A list of the Debtors in these jointly administered chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, is attached hereto as Exhibit 1.

5.      This adversary proceeding is brought pursuant to Rules 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure.

6.      Contemporaneously with the filing of this adversary proceeding, the Committee has filed its Motion for Leave, Standing and Authority to Prosecute Claims on Behalf of the Debtors' Estates and for Related Relief [Doc. No. 658].

## PARTIES

7.      The Committee is an official committee of unsecured creditors appointed in the Debtors' chapter 11 case by the United States Trustee for the Northern District of Texas on December 14, 2018 under section 1102 of the Bankruptcy Code. The Committee consists of the following members: Shiftkey, LLC, Trident USA Health, Performance Food Group, Inc. Acadian Ambulance Service, Direct Supply, Inc., Healthcare Services Group, Inc., Joerns Healthcare, LLC and Medline Industries, Inc.

8.      Defendant CIBC Bank USA, individually and as administrative agent ("**CIBC**") is an Illinois chartered financial organization having its principal place of business at 120 LaSalle Street, Chicago, Illinois 60603. CIBC may be served with process by delivering a copy of the Complaint and summons via first class mail, postage prepaid, to its Registered Agent Corporation Service Company, at 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

9.      Defendant CIT Finance LLC ("**CIT**") is a Delaware limited liability company having its principal place of business at One Cit Drive, Livingston, NJ 07039-5703. CIT may be served with process by delivering a copy of the Complaint and summons via first class mail postage prepaid, to its Registered Agent CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas TX 75201.

10. Defendant Wells Fargo Bank, N.A., ("**Wells Fargo**") is a California chartered financial institution having its principal place of business at 420 Montgomery Street, San Francisco, California 94104. Wells Fargo may be served with process by delivering a copy of the Complaint and summons via first class mail, postage prepaid, to its Registered Agent Corporation Service Company, at 211 East 7th Street, Suite 620, Austin TX 78701-3218.

11. Defendant MB Financial Bank, N.A., ("**MB Financial**") is a financial institution having its principal place of business at 800 West Madison Street, Chicago, Illinois 60607. MB Financial may be served with process by delivering a copy of the Complaint and summons via first class mail, postage prepaid, to its President and Chief Executive Officer, Mark A. Hoppe, at 800 West Madison Street, Chicago, Illinois 60607 and 6611 N. River Rd., Rosemont, Illinois 60018.

12. Defendant Bankers Trust Company ("**Bankers Trust**") is a financial institution having its principal place of business at 453 7th Street, Des Moines, Iowa 50309. Bankers Trust may be served with process by delivering a copy of the Complaint and summons via first class mail, postage prepaid, to its Registered Agent J. Michael Deege, 7th and Locust, Box 897, Des Moines, IA 50304.

13. Defendant Compass Bank ("**Compass**") is an Alabama chartered financial institution having its principal place of business at 15 South 20th Street, Birmingham, Alabama 35233. Compass may be served with process by delivering a copy of the Complaint and summons via first class mail, postage prepaid, to its Registered Agent CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas TX 75201.

## PROCEDURAL BACKGROUND

14. On December 4, 2018 (the "**Petition Date**"), the Debtors filed petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy**

Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "**Bankruptcy Court**"), which cases are jointly administered under Case No. 18-33967 (BJH).

**Cash Collateral**

15.     On December 5, 2018, the Debtor filed its *Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protecting, (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Doc. No. 24] (the "**Cash Collateral Motion**").

16.     On December 7, 2018, the Court entered *Findings of Fact and Conclusions of Law Regarding the Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Doc. 74] (the "**Findings and Conclusions**") and an *Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Doc. 75] (the "**First Interim Order**").

17.     On December 14, 2018, the Office of the United States Trustee appointed the Committee.

18.     On January 24, 2019, the Court entered a *Second Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Doc. 431] (the "**Second Interim Order,**" and collectively with the First Interim Order, the "**Cash Collateral Orders**").

19.     Pursuant to Paragraph 10 of the Second Interim Order, the Committee has sixty days from the date of its appointment (the "**Challenge Deadline**") to file an adversary proceeding or contested matter challenging the validity, enforceability, or priority of the Prepetition

Obligations or the liens on the Prepetition Collateral in respect thereof, or otherwise to assert any claims or causes of action against the Administrative Agent or the Lenders on behalf of the Debtors' estates (any such action, a "**Challenge Action**").

20.     By agreement between the Administrative Agent and the Committee, the Challenge Deadline has been extended through and including March 12, 2019 [Doc No. 590].

## The Purported Stipulations

21.     The Cash Collateral Orders provide that, if no Challenge Action is filed by the Challenge Deadline, the "admissions and stipulations contained in Paragraphs C and D of the Findings of Fact and Conclusions of Law shall be binding . . . upon all other parties-in-interest, including, without limitation, the Committee and any Chapter 7 or Chapter 11 trustee that may be appointed or elected." (Second Interim Order ¶ 10).

22.     Paragraphs C and D of the Findings and Conclusions provide as follows (collectively, the "**Purported Stipulations**"):

C.     The Debtors stipulate and agree that they are obligated under the notes, agreements, instruments, and undertakings listed on Exhibit 2 hereto (collectively, the "Credit Facility Documents"). Any and all monetary and nonmonetary obligations of the Debtors under the Credit Facility Documents as of the Petition Date are referred to herein as the "Prepetition Obligations." The foregoing acknowledgments and stipulations shall be binding on the Debtors but not on any other party-in-interest in these cases, except as provided in Paragraph 9 of the Interim Order.

D.     The Debtors further stipulate and agree as follows:

(1)     As of the Petition Date, the Credit Facility Documents are each valid and enforceable against each of the Debtors that is a party thereto, and none of the Debtors possesses, and agrees not to assert, any claim (as such term is defined in Bankruptcy Code section 101(5), counterclaim, setoff, or defense of any kind, nature or description which would in any way affect the validity or enforceability of the Credit Facility Documents;

(2) As of the Petition Date, the Prepetition Obligations constitute legal, valid, and binding obligations of the Debtors, as applicable, enforceable in accordance with the terms of the Credit Facility Documents; no offsets, defenses or counterclaims to any of the Prepetition Obligations exist; no portion of the Prepetition Obligations is subject to recharacterization, disallowance, reduction or subordination pursuant to the Bankruptcy Code or non-bankruptcy law; the Prepetition Obligations constitute allowable secured claims; and the Debtors have irrevocably waived, discharged, and released any rights they may have to challenge or object to the Prepetition Obligations, and/or to challenge or object to the security for the Prepetition Obligations;

(3) The Administrative Agent's liens and security interests with respect to the Debtors' "Goods, Accounts (including Health–Care Insurance Receivables), Equipment, Inventory, contract rights or rights to payment of money (including any escrowed funds, escrow payments or indemnification payments owing to any of the Debtors pursuant to any escrow agreement, purchase agreement or acquisition agreement), leases, license agreements, franchise agreements, General Intangibles, Intellectual Property, commercial tort claims, documents, Instruments (including any promissory notes), Chattel Paper (whether tangible or electronic), cash, Deposit Accounts, Securities Accounts, Letter-of-Credit Rights (whether or not the letter of credit is evidenced by a writing), Securities, and all other Investment Property, Supporting Obligations, and Financial Assets; all of each Debtor's books and records relating to any of the foregoing; and all and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions, and improvements to and replacements, products, Proceeds and insurance proceeds of any or all of the foregoing (each as defined in the Credit Facility Documents), and every other item of collateral described in the Credit Facility Documents (collectively, all of the above types and descriptions of collateral are referred to herein as the "Prepetition Collateral") are valid, enforceable and perfected (by filing financing statements, and, where necessary, by possession of relevant accounts, cash, instruments, certificates or other property), and are not subject to recharacterization, disallowance, reduction or subordination pursuant to the Bankruptcy Code or non-bankruptcy law. All of such financing statements and relevant instruments were validly authorized by the Debtors and validly executed by authorized representatives of the Debtors. Pursuant to the Credit Facility Documents, the Administrative Agent has first priority security interests in and liens on all of the Prepetition Collateral, including the Cash Collateral (defined herein) and all proceeds of the Prepetition Collateral, to secure payment of the Prepetition Obligations;

(4) The Administrative Agent's security interests and liens have attached to all funds and property of the Debtors consisting of the Prepetition Collateral and the products and proceeds thereof, and the Administrative Agent's security interests and liens will, notwithstanding the commencement of these Chapter 11 Cases, as of the Petition Date and thereafter, attach to the products and other proceeds of the Prepetition Collateral. Without limiting the foregoing, the Administrative Agent's security interests and liens attach to all cash (whether as original collateral or cash proceeds of the Prepetition Collateral), negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents now or hereafter in the possession, custody or control of the Debtors (the "Cash Collateral").

(5)    As of the Petition Date, the principal and interest portion of the Prepetition Obligations is not less than $45,564,254.58, which includes two letters of credit that had been issued for the account of Senior Care Centers, LLC in the total amount of $2,783,201.23.

The foregoing acknowledgments and stipulations shall be binding on the Debtors but not on any other party-in-interest in this case, except as provided in Paragraph 9 of the Interim Order.

(Findings and Conclusions ¶¶ C&D).

**The Committee's Investigation**

23.    Following the entry of the Cash Collateral Orders, the Committee and its professionals commenced and investigation into, among other things, the validity, enforceability, priority and extent of the liens on and security interests in the Debtors' assets and potential claims and causes of actions against the Administrative Agent and the Lenders.

24.    Notwithstanding the Purported Stipulations, there are substantial, valuable assets of the Debtors that are either not included in the Administrative Agent's Prepetition Collateral or are subject to unperfected liens that may be avoided.

## FACTUAL ALLEGATIONS

25.    CIBC Bank USA is the Administrative Agent (the "**Administrative Agent**") for itself and for the lender parties (collectively, the "**Lenders**") to the Loan Agreements (defined

below), with respect to (i) that certain Amended and Restated Credit and Security Agreement dated as of January 12, 2017, as amended (the "**Non-HUD Loan Agreement**"), (ii) that certain Credit and Security Agreement dated as of June 21, 2017, as amended (the "**HUD Loan Agreement**," and collectively with the Non-HUD Loan Agreement, the "**Loan Agreements**"), (iii) all documents executed in connection with the Loan Agreements, and all properly executed amendments and modifications thereto, and (iv) two letters of credit issued by the Administrative Agent, identified as letters of credit numbers 13229-103424 and 13229-135711 (collectively, the "**Letters of Credit**").

26. Certain of the Debtors and certain of their non-debtor affiliates are borrowers or guarantors under the Loan Agreements (collectively, the "**Credit Parties**"). A true and correct list of the Credit Parties is attached hereto as **Exhibit 2,** which reflects which Credit Parties are Debtors in this jointly-administered case (collectively, the "**Credit Party Debtors**"), and which of the Credit Parties are non-debtors (collectively, the **Non-Debtor Credit Parties**") in this case.

27. The Administrative Agent and the Lenders extended loans to the Credit Party Debtors pursuant to the Loan Agreements and the Letters of Credit, creating certain indebtedness (the "**Prepetition Obligations**"). In partial consideration therefor, the Credit Parties granted a security interest to the Administrative Agent in certain assets (the "**Prepetition Collateral**").

28. Pursuant to the Non-HUD Loan Agreement, the Credit Parties thereto granted a security interest to the Administrative Agent as follows:

> As security for the payment and performance of the Obligations in full when due or declared due in accordance with the terms of this Agreement and without limiting any other grant of a Lien and security interest in any Security Document, each Credit Party hereby assigns and grants to Agent, for the benefit of itself and Lenders and, solely to the extent securing any Bank Product Obligations to a Lender's Affiliate, such Affiliate, a continuing Lien on and security interest in, upon, and to all of each Credit Party's assets, including without limitation, all of each Credit

Party's right, title and interest in and to the following, whether now owned or hereafter created, acquired or arising, and wherever located: all Goods, Accounts (including Health-Care Insurance Receivables), Equipment, Inventory, contract rights or rights to payment of money (including any escrowed funds, escrow payments or indemnification payments owing to any Credit Party pursuant to any escrow agreement, purchase agreement or acquisition agreement), leases, license agreements, franchise agreements, General Intangibles, Intellectual Property, commercial tort claims, documents, Instruments (including any promissory notes), Chattel Paper (whether tangible or electronic), cash, Deposit Accounts, Securities Accounts, Fixtures, Letter-of-Credit Rights (whether or not the letter of credit is evidenced by a writing), Securities, and all other Investment Property, Supporting Obligations, and Financial Assets; all of each Credit Party's books and records relating to any of the foregoing; and any and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, Proceeds and insurance proceeds of any or all of the foregoing. Notwithstanding anything to the contrary contained herein, the security interests granted under this Agreement shall not extend to (a) any property that is the subject of a Lien securing purchase money Debt or Capital Lease Obligations permitted hereunder pursuant to documents that prohibit such Credit Party from granting any other Liens in such property, (b) any lease or license of a Credit Party if the grant of a security interest in such lease or license in the manner contemplated by this Agreement is prohibited by the terms of such lease or license or by applicable Law, or requires the consent of any Person other than a Credit Party that has not been obtained, and would result in the termination of such lease or license or give the other parties thereto the right to terminate, accelerate or otherwise adversely alter such Credit Party's rights, title and interest thereunder (including upon the giving of notice or the lapse of time or both), (c) any "intent to use" trademark applications for which a statement of use has not been filed (but only until such statement is filed); and (d) any Deposit Account that is subject to the "anti- assignment rule" described in Section 10.6(b); provided that (i) any such limitation described in the foregoing clauses (a) and (b) on the security interests granted hereunder shall only apply to the extent that any such prohibition could not be rendered ineffective pursuant to the UCC or any other applicable Law (including the Bankruptcy Code and Sections 9-406, 9-407 and 9-408 of the UCC) or principles of equity, (ii) in the event of the termination or elimination of any such prohibition or the requirement for any consent contained in such contract, lease or license or in any applicable Law, to the extent sufficient to permit any such item to become Collateral hereunder, or upon the granting of any such consent, or waiving or terminating any requirement for such consent, a security interest in such contract, lease or license shall be automatically and simultaneously granted hereunder and shall be included as Collateral hereunder, and (iii) all rights to payment of money due or to become due pursuant to, and all rights to the Proceeds from the sale of, any such excluded property shall be and at all times remain subject to the security interests created by this Agreement.

Notwithstanding anything to the contrary contained in this Agreement or any other Financing Document, the Collateral shall not include any Excluded Collateral.

(Non-HUD Loan Agreement § 9.1).[2]

### Errors in the Purported Stipulations

29. Following a diligent investigation based on documents produced by the Administrative Agent, the Committee has concluded that the Purported Stipulations are erroneous for a variety of reasons, including without limitation the following:

    a. They state that all of the Debtors are obligated to the Administrative Agent and the Lenders, and that the Administrative Agent holds a security interest in the assets of all of the Debtors, when in fact only some of the Debtors were parties to the Loan Agreements, and only some of the Debtors granted a security interest to the Administrative Agent;

    b. They state that all of the Debtors are obligated under all of the "Credit Facility Documents," when in fact only some of the Debtors were parties to the Credit Facility Documents and some of the Debtors are parties to some agreements but not others;

    c. The language in paragraph D(3) is far too broad, overstating the scope of the Administrative Agent's collateral package and failing to acknowledge numerous exceptions thereto;

    d. The Administrative Agent's security interests in many types of collateral were not perfected by virtue of the Administrative Agent having filed a UCC-1 financing statement;

    e. With respect to particular assets of certain Debtors, the Administrative Agent failed to file a UCC-1 financing statement in the proper jurisdiction;

    f. They fail to acknowledge that the Court may determine that the Administrative Agent's security interests do not attach to post-petition proceeds pursuant to section 552(b) of the Bankruptcy Code; and

    g. The amount of the Prepetition Obligations indicated in paragraph D(5) is incorrect.

---

[2] The granting language in the HUD Loan Agreement is nearly identical, except that (1) the term "Credit Party" is replaced with the term "Borrower" and (2) fixtures are not included.

30.    Certain of the Debtors are not parties to the Loan Agreements and did not grant any security interest to the Administrative Agent (collectively, the "**Excluded Debtors**"). Accordingly, the Administrative Agent and the Lenders have no security interests in any of the assets of the Excluded Debtors, and the Excluded Debtors have no obligations to the Administrative Agent or the Lenders.  The Excluded Debtors include, without limitation, the following:

1.  Gamble Hospice Care Central LLC;
2.  Gamble Hospice Care Northeast LLC;
3.  Gamble Hospice Care Northwest LLC;
4.  Gamble Hospice Care of Cenla LLC;
5.  Harden HUD Holdco LLC;
6.  Harden Pharmacy LLC;
7.  PM Management –  Killeen I NC LLC;
8.  PM Management –  Killeen II NC LLC;
9.  PM Management –  Killeen III NC LLC;
10. PM Management –  New Braunfels NC LLC;
11. PM Management –  Park Valley NC LLC;
12. PM Management –  Portfolio IX NC, LLC;
13. PM Management –  Portfolio VIII NC, LLC;
14. San Antonio SCC LLC;
15. SCC Hospice Holdco LLC;
16. Senior Care Center Management II LLC; and
17. Senior Rehab Solutions North Louisiana LLC.

31.    The Administrative Agent filed a number of UCC-1 financing statements and had control over certain Deposit Accounts, thereby perfecting its security interests with respect to certain of the Prepetition Collateral.  All such relevant UCC-1 financing statements contained an identical description of the Administrative Agent's purported collateral: "All of the Debtor's assets

and other personal property, whether now owned or existing or hereafter acquired or arising, together with all proceeds and products thereof, substitutions and replacements therefor, and additions and accessions thereto."

32.     As of the Petition Date, the Administrative Agent and the Lenders do not hold any perfected security interest in any of the following property of any of the Debtors, because either (i) the Administrative Agent's security interests did not attach to such assets, or (2) filing of a UCC-1 financing statement did not operate to perfect such security interests:[3]

    a.  Any real property interests, including all leasehold rights;

    b.  Any fixtures;

    c.  Any vehicles;

    d.  Any cash;

    e.  Any copyrights;

    f.  Any commercial tort claims;

    g.  Any key person life insurance policies;

    h.  Any Securities Accounts;

    i.  Any Letter of Credit Rights;

    j.  Any insurance proceeds that do not constitute proceeds of the Prepetition Collateral, unless the Administrative Agent is named as a loss payee on the applicable insurance policy;

    k.  Any certificates of deposit, to the extent that such assets constitute Deposit Accounts (as defined in Article 9 of the Uniform Commercial Code) maintained at any financial institution other than the Administrative Agent;

    l.  Any prepayment, deposit, restricted cash advance, or escrow account, to the extent that such assets constitute Deposit Accounts (as defined in Article 9 of the Uniform Commercial Code) maintained with an institution other than the Administrative Agent or to the extent that any escrow or other agreement or applicable law prevents the Administrative Agent's lien from attaching to such assets, including without limitation the $7.6 million indemnification escrow account held at Wells Fargo;

    m.  Any unused net operating losses;

    n.  All items excluded pursuant to the Loan Agreements, including without limitation the Excluded Collateral (as defined in the Loan Agreements) and those items that

---

[3] All capitalized terms not defined herein shall have the meanings ascribed to them in the Loan Agreements.

are specifically identified in Section 9.1 of the Loan Agreements as not subject to the security interests granted to the Administrative Agent, including without limitation the following:

1. Any property that is the subject of a Lien securing purchase money Debt or Capital Lease Obligations permitted under the Loan Agreements pursuant to documents that prohibit such Borrower from granting any other Liens in such property;

2. Any lease or license of a Borrower if the grant of a security interest in such lease or license in the manner contemplated by the Loan Agreements is prohibited by the terms of such lease or license or by applicable Law, or requires the consent of any Person other than a Borrower that has not been obtained, and would result in the termination of such lease or license or give the other parties thereto the right to terminate, accelerate or otherwise adversely alter such Borrower's rights, title and interest thereunder (including upon the giving of notice or the lapse of time or both);

3. Any "intent to use" trademark applications for which a statement of use has not been filed (but only until such statement is filed);

4. Any Deposit Account that is subject to the "anti-assignment rule" described in Section 10.6(b) of the Loan Agreements;

5. Any Excluded Collateral (as defined in the Loan Agreements), including without limitation the following:

   a. Any equity interest in any of the following entities:

      1. Alief SCC LLC
      2. Bandera SCC LLC
      3. Baytown SCC LLC
      4. Booker SCC LLC
      5. Bossier SCC LLC
      6. Bradford SCC LLC
      7. Capitol SCC LLC
      8. Cedar Bayou SCC LLC
      9. Colonial SCC LLC
      10. CTLTC Real Estate, LLC,
      11. Harden Non-HUD Holdco, LLC
      12. HILL COUNTRY SCC LLC
      13. JACKSONVILLE SCC LLC
      14. La Hacienda SCC LLC

-14-

15. MIDLAND SCC LLC

16. Mill Forest Road SCC LLC

17. Mystic Park SCC LLC

18. Normandie SCC LLC

19. Pasadena SCC LLC

20. PECAN TREE SCC LLC

21. PM Management – Corsicana NC III, LLC,

22. PM Management – El Paso I NC, LLC,

23. PM Management – Golden Triangle NC I, LLC,

24. PM Management – Golden Triangle NC II, LLC,

25. PM Management – Golden Triangle NC IV, LLC,

26. PM Management – Portfolio V NC, LLC,

27. PM Management – Portfolio VII NC, LLC,

28. PM Management – San Antonio AL, LLC

29. PM Management –Corsicana NC II, LLC,

30. PM Management –Golden Triangle NC III, LLC,

31. PM Management –San Antonio NC, LLC,

32. PM Management–Corpus Christi NC II, LLC,

33. PM Management–Corpus Christi NC III, LLC,

34. PM Management–Portland NC, LLC,

35. Presidential SCC LLC

36. Riverside SCC LLC

37. Ruston SCC LLC

38. SAN ANGELO SCC LLC

39. Senior Care Centers, LLC,

40. Shreveport SCC LLC

41. South Oaks SCC LLC

42. Springlake ALF SCC LLC

43. Springlake SCC LLC

44. West Oaks SCC LLC

45. Windmill SCC LLC

or any other person or entity that directly or indirectly, controls any of the foregoing; and

    b. Any licenses, permits and other governmental authorizations now owned or hereafter acquired by any Restricted Subsidiary with respect to any Project operated by a Restricted Subsidiary that are necessary (or are, in the ordinary course of business, customarily obtained by a Restricted Subsidiary) for the operation of any Project operated by a Restricted Subsidiary, including, without limitation, any certificates of need (or similar certificate) and/or bed rights, and any and all third party provider agreements (including Medicare and Medicaid) for any Project operated by a Restricted Subsidiary;

o. Any avoidance actions under chapter 5 of the Bankruptcy Code that may be pursued by the Debtors as debtors-in-possession or any trustee of their bankruptcy estates; and

p. any of the Credit Party Debtors' assets or properties:

    a. in which the Administrative Agent's security interest therein may be perfected only by the Administrative Agent's obtaining "control" (as defined in Sections 9-104, 9-105, 9-106, and 9-107 of the UCC), unless the Administrative Agent had such control as of the Petition Date;

    b. which are subject to a statute, regulation, or treaty of the United States whose requirements for a security interest's obtaining priority over the rights of a lien creditor with respect such assets and properties preempt Section 9-310(a) of the UCC, unless the Administrative Agent was in compliance with such requirements as contemplated in Section 9-311(b) of the UCC as of the Petition Date;

    c. in which a security interest may be perfected only under a certificate-of-title or similar statute, unless the Administrative Agent had undertaken such actions are necessary under such statute to have obtained a perfected security interests in such assets or properties as of the Petition Date;

    d. which are the subject of any exclusion described in Section 9-109(c) of the UCC or as to which any lien or security interest is the subject of any exclusion set forth in such section, unless the Administrative Agent had undertaken such actions as are necessary under applicable law for the Administrative Agent to have obtained a perfected or superior interest in such assets or properties as of the Petition Date; or

    e. which constitute proceeds of any Prepetition Collateral, unless the Administrative Agent's security interest in such proceeds was perfected as of the Petition Date (as provided in Section 9-315 of the UCC).

The property and/or assets identified in subsections a-p are collectively referred to as the "**Excluded Property**."

33.     The Administrative Agent and the Lenders did not file certain UCC-1 financing statements in the proper jurisdictions and therefore do not hold any perfected lien or security interest in any equity interests in Nicoya Health & Lifestyle Management, LLC or rights related thereto (the "**Nicoya Equity**").

34.     As of the Petition Date, the total amount of the Prepetition Obligations was $45,384,661.50, which includes two letters of credit that had been issued for the account of Senior Care Centers, LLC in the total amount of $2,783,201.12.

## CLAIMS FOR RELIEF

### COUNT I
### DECLARATORY JUDGMENT CONCERNING
### ASSETS OF THE EXCLUDED DEBTORS

35.     The Committee repeats and realleges each of the preceding paragraphs as if fully set forth herein.

36.     The Excluded Debtors are not parties to the Loan Agreements and did not grant any security interest to the Administrative Agent.

37.     The Administrative Agent and the Lenders have no security interests in any of the assets of the Excluded Debtors, and the Excluded Debtors have no obligations to the Administrative Agent or the Lenders.

38.     The Committee disputes the Purported Stipulations as they relate to the assets of the Excluded Debtors.

39.     Accordingly, an actual, substantial and justiciable controversy exists between the Committee, the Administrative Agent and the Lenders concerning whether the Purported Stipulations are correct and supportable and whether the Administrative Agent and the Lenders have valid or perfected liens on or security interests in the assets of the Excluded Debtors.

40.     Such a controversy is sufficient to warrant the issuance of a declaratory judgment that, notwithstanding the Debtors' Purported Stipulations to the contrary, the Administrative Agent and the Lenders do not have a lien on or a security interest in the assets of the Excluded Debtors.

**<u>COUNT II</u>**
**DECLARATORY JUDGMENT**
**CONCERNING THE EXCLUDED PROPERTY**

41.     The Committee repeats and realleges each of the preceding paragraphs as if fully set forth herein.

42.     As set forth above in paragraph 32 above, certain of the liens, security interests and claims purportedly granted to the Administrative Agent and the Lenders are not attached, valid, binding, enforceable, non-avoidable, or properly perfected.

43.     Contrary to the over-inclusive Purported Stipulations, the Administrative Agent's security interests did not attach to certain Excluded Property.

44.     The Administrative Agent failed to properly perfect its purported liens on and security interests in certain Excluded Property because it did not take the appropriate actions to perfect against such property.

45.     The Purported Stipulations are inaccurate as to the validity, binding effect, enforceability, non-avoidability, and proper perfection of the liens and security interests in the Excluded Property.

46.     Accordingly, an actual, substantial and justiciable controversy exists between the Committee, the Administrative Agent and the Lenders concerning whether the Purported Stipulations are correct and supportable and whether the Administrative Agent and the Lenders have valid or perfected liens on or security interests in the Excluded Property.

47.     Such a controversy is sufficient to warrant the issuance of a declaratory judgment that, notwithstanding the Purported Stipulations to the contrary, the Administrative Agent and the Lenders do not have a perfected lien on or a security interest in the Excluded Property.

## COUNT III
## DECLARATORY JUDGMENT CONCERNING
## NICOYA HEALTH & LIFESTYLE MANAGEMENT, LLC

48.     The Committee repeats and realleges each of the preceding paragraphs as if fully set forth herein.

49.     As set forth above in paragraph 33 above, certain of the liens, security interests and claims purportedly granted to the Administrative Agent and the Lenders are not valid, binding, enforceable, non-avoidable, or properly perfected.

50.     The Administrative Agent and the Lenders did not file certain UCC-1 financing statements in the proper jurisdictions and therefore do not hold any perfected lien or security interest in any equity interests in the Nicoya Equity.

51.     The Purported Stipulations are inaccurate as to the validity, binding effect, enforceability, non-avoidability, and proper perfection of the liens and security interests in the Nicoya Equity.

52.     Accordingly, an actual, substantial and justiciable controversy exists between the Committee, the Administrative Agent and the Lenders concerning whether the Purported

Stipulations are correct and supportable and whether the Administrative Agent and the Lenders have valid or perfected liens on or security interests in the Nicoya Equity.

53.     Such a controversy is sufficient to warrant the issuance of a declaratory judgment that, notwithstanding the Debtors' Purported Stipulations to the contrary, the Administrative Agent and the Lenders do not have a lien on or a security interest in the Nicoya Equity.

## COUNT IV
## DECLARATORY JUDGMENT CONCERNING THE ATTACHMENT OF THE LIEN TO PROCEEDS, PRODUCTS, AND OFFSPRING OR PROFITS PURSUANT TO 11 U.S.C. § 552(B)(1)

54.     The Committee repeats and realleges each of the preceding paragraphs as if fully set forth herein.

55.     The Debtors' use of unencumbered funds to produce post-petition proceeds has resulted in a windfall to the Administrative Agent and the Lenders in the form or either an increase in, or preservation of, the value of the collateral.

56.     Pursuant to section 552(b) of the Bankruptcy Code and based on the equities of the case, the Administrative Agent and the Lenders are not entitled to a security interest in any proceeds, products, offspring, or profits of the collateral subsequent to the Petition Date.

57.     Accordingly, the Committee is entitled to a judgment declaring that the Administrative Agents and the Lenders' liens and security interests do not extend to post-petition proceeds, products, offspring, or profits of the collateral.

## COUNT V
## AVOIDANCE OF UNPERFECTED LIENS WITH RESPECT TO PROPERTY (11 U.S.C § 544, 550 AND 551)

58.     The Committee repeats and realleges each of the preceding paragraphs as if fully set forth herein.

59.     To extent that the Administrative Agents and the Lenders purported liens on and security interests in the property identified in paragraphs 32-33 above attached to the Debtors' property, such liens and security interests should be avoided because they were unperfected.

60.     The Administrative Agent and the Lenders failed to properly perfect their purported liens on and security interests in certain of the Excluded Property because they did not file a UCC-1 financing statement that sufficiently describes their claims, they did not file any UCC-1 financing statements in the appropriate offices or other take actions to perfect against such Debtors' property that may be perfected by other means.

61.     Pursuant to sections 544(a)(1) and (2) of the Bankruptcy Code, the Debtors, the bankruptcy estate and the Committee (acting on behalf of the estates) have the rights and powers (as of the commencement of these chapter 11 cases and without regard to any knowledge of the Debtors, any trustee, or any other creditors), or may avoid any transfer of property of the Debtors or any obligation incurred by the Debtors that is voidable by:

> a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; or
>
> a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists . . .

11 U.S.C. § 544(a).

62.     Any security interests or liens of the Administrative Agent and the Lenders in the property or assets identified in paragraphs 32-33, as of the Petition Date are unperfected for the reasons explained above and are avoidable pursuant to sections 544(a)(1) and (2) of the Bankruptcy Code.

63.     Because the Administrative Agent and the Lenders do not have properly perfected liens on or security interests in the property or assets identified in paragraphs 32-33, any and all liens on and security interests in such property asserted by the Administrative Agent and the Lenders should be avoided pursuant to section 544(a) of the Bankruptcy Code, and such property of the value of such property, if previously transferred, should be recovered by the Debtors' estate pursuant to section 550(a) of the Bankruptcy Code and/or automatically preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code.

## COUNT VI
## DECLARATORY JUDGMENT CONCERNING
## THE TOTAL AMOUNT OF THE PREPETITION OBLIGATIONS

64.     The Committee repeats and realleges each of the preceding paragraphs as if fully set forth herein.

65.     According to the Purported Stipulations, as of the Petition Date, the principal and interest portion of the Prepetition Obligations is not less than $45,564,254.58, which includes two letters of credit that had been issued for the account of Senior Care Centers, LLC in the total amount of $2,783,201.23.

66.     According to records reviewed by the Committee, the total amount of the Prepetition Obligations was $45,384,661.50, which includes two letters of credit that had been issued for the account of Senior Care Centers, LLC in the total amount of $2,783,201.12.

67.     The Committee disputes the Purported Stipulations as they relate to the Prepetition Obligations.

68.     Accordingly, an actual, substantial and justiciable controversy exists between the Committee and the Administrative Agent concerning whether the Purported Stipulations are correct and supportable as to the Prepetition Obligation.

-22-

69.     Such a controversy is sufficient to warrant the issuance of a declaratory judgment that, notwithstanding the Debtors' Purported Stipulations to the contrary, that the total amount of the Prepetition Obligations was $45,384,661.50, which includes two letters of credit that had been issued for the account of Senior Care Centers, LLC in the total amount of $2,783,201.12.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, the Committee requests that the Court enter a final judgment:

(1)     declaring that the Administrative Agent and the Lenders do not have a lien on or a security interest in the assets of the Excluded Debtors;

(2)     declaring that the Administrative Agent and the Lenders do not have a perfected lien on or a security interest in the Excluded Property;

(3)     declaring that the Administrative Agent and the Lenders do not have a perfected lien on or a security interest in Nicoya Health & Lifestyle Management, LLC or rights related thereto;

(4)     declaring that the Administrative Agents and the Lenders' liens and security interests do not extend to post-petition proceeds, products, offspring, or profits of the collateral.

(5)     avoiding the Administrative Agents unperfected liens on or security interests in the Property pursuant to 11 U.S.C. § 544, and transferring to the Debtors' estates pursuant to 11 U.S.C. § 550(a) and/or automatically preserving the avoided liens thereon or the security interests therein or the value of such transfers for the benefit of the Debtors' estates pursuant to 11 U.S.C. § 551;

(6)     declaring that the total amount of the Prepetition Obligations was $45,384,661.50, which includes two letters of credit that had been issued for the account of Senior Care Centers, LLC in the total amount of $2,783,201.12.

(7)     granting the Committee such other and further relief as the Court deems just, proper and equitable, including the costs and expenses of this action.

DATED: March 12, 2019.

Respectfully submitted,

**RIZZO B.E., PLLC**

By: _____

    Blake E. Rizzo
    SBOT: 24034073
    blake@blakerizzolaw.com
    7941 Katy Fwy #802
    Houston, Texas 77024
    832-259-9054

**PROPOSED CONFLICTS COUNSEL FOR
THE COMMITTEE**

**Exhibit 1**

**Debtors**

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 1. | Alief SCC LLC | 18-33987 | 0523 |
| 2. | Bandera SCC LLC | 18-33989 | 0617 |
| 3. | Baytown SCC LLC | 18-33992 | 0778 |
| 4. | Beltline SCC LLC | 18-33996 | 7264 |
| 5. | Booker SCC LLC | 18-33999 | 0967 |
| 6. | Bossier SCC LLC | 18-34003 | 2017 |
| 7. | Bradford SCC LLC | 18-34004 | 9535 |
| 8. | Brinker SCC LLC | 18-34005 | 7304 |
| 9. | Brownwood SCC LLC | 18-33968 | 0677 |
| 10. | Capitol SCC LLC | 18-34006 | 1750 |
| 11. | CapWest-Texas LLC | 18-34008 | 4897 |
| 12. | Cedar Bayou SCC LLC | 18-34010 | 8889 |
| 13. | Clear Brook SCC LLC | 18-34012 | 1877 |
| 14. | Colonial SCC LLC | 18-34014 | 4385 |
| 15. | Community SCC LLC | 18-33969 | 7951 |
| 16. | Corpus Christi SCC LLC | 18-34016 | 9807 |
| 17. | Crestwood SCC LLC | 18-34017 | 7349 |
| 18. | Crowley SCC LLC | 18-33970 | 6697 |
| 19. | CTLTC Real Estate, LLC | 18-34018 | 0202 |
| 20. | Fairpark SCC LLC | 18-34020 | 7381 |
| 21. | Gamble Hospice Care Central LLC | 18-34022 | 6688 |
| 22. | Gamble Hospice Care Northeast LLC | 18-34025 | 6661 |
| 23. | Gamble Hospice Care Northwest LLC | 18-34027 | 2044 |
| 24. | Gamble Hospice Care of Cenla LLC | 18-34029 | 4510 |
| 25. | Green Oaks SCC LLC | 18-33971 | 7218 |
| 26. | Harbor Lakes SCC LLC | 18-33972 | 7299 |
| 27. | Harden HUD Holdco LLC | 18-34032 | 1502 |
| 28. | Harden Non-HUD Holdco LLC | 18-34035 | 3391 |
| 29. | Harden Pharmacy LLC | 18-34036 | 1995 |
| 30. | Hearthstone SCC LLC | 18-34037 | 9154 |
| 31. | Hewitt SCC LLC | 18-33973 | 7237 |
| 32. | HG SCC LLC | 18-34040 | 7415 |
| 33. | Hill Country SCC LLC | 18-34043 | 4199 |
| 34. | Holland SCC LLC | 18-33974 | 1427 |
| 35. | Hunters Pond SCC LLC | 18-34045 | 2886 |
| 36. | Jacksonville SCC LLC | 18-34046 | 4216 |
| 37. | La Hacienda SCC LLC | 18-34049 | 1074 |
| 38. | Lakepointe SCC LLC | 18-34050 | 7457 |
| 39. | Major Timbers LLC | 18-34052 | 7477 |
| 40. | Marlandwood East SCC LLC | 18-34054 | 1871 |

| #   | Debtor Name | Case No. | EIN |
|-----|-------------|----------|-----|
| 41. | Marlandwood West SCC LLC | 18-34058 | 2192 |
| 42. | Meadow Creek SCC LLC | 18-34064 | 9278 |
| 43. | Midland SCC LLC | 18-34065 | 4231 |
| 44. | Mill Forest Road SCC LLC | 18-34066 | 5137 |
| 45. | Mission SCC LLC | 18-33975 | 8086 |
| 46. | Mullican SCC LLC | 18-34067 | 7499 |
| 47. | Mystic Park SCC LLC | 18-34068 | 1898 |
| 48. | Normandie SCC LLC | 18-34069 | 1542 |
| 49. | Onion Creek SCC LLC | 18-34070 | 7425 |
| 50. | Park Bend SCC LLC | 18-34071 | 9410 |
| 51. | Pasadena SCC LLC | 18-34072 | 1694 |
| 52. | Pecan Tree SCC LLC | 18-34073 | 4241 |
| 53. | Pecan Valley SCC LLC | 18-34074 | 9585 |
| 54. | Pleasantmanor SCC LLC | 18-34075 | 7536 |
| 55. | PM Management - Allen NC LLC | 18-34076 | 4961 |
| 56. | PM Management - Babcock NC LLC | 18-34077 | 7829 |
| 57. | PM Management - Cedar Park NC LLC | 18-34078 | 1050 |
| 58. | PM Management - Corpus Christi NC II LLC | 18-34079 | 5231 |
| 59. | PM Management - Corpus Christi NC III LLC | 18-34080 | 5129 |
| 60. | PM Management - Corsicana NC II LLC | 18-34081 | 9281 |
| 61. | PM Management - Corsicana NC III LLC | 18-34082 | 9353 |
| 62. | PM Management - Corsicana NC LLC | 18-34083 | 1333 |
| 63. | PM Management - Denison NC LLC | 18-34084 | 5022 |
| 64. | PM Management - El Paso I NC LLC | 18-34085 | 2965 |
| 65. | PM Management - Fredericksburg NC LLC | 18-34086 | 0599 |
| 66. | PM Management - Frisco NC LLC | 18-34087 | 5082 |
| 67. | PM Management - Garland NC LLC | 18-33979 | 5137 |
| 68. | PM Management - Golden Triangle NC I LLC | 18-33980 | 9478 |
| 69. | PM Management - Golden Triangle NC II LLC | 18-33981 | 9536 |
| 70. | PM Management - Golden Triangle NC III LLC | 18-33982 | 9597 |
| 71. | PM Management - Golden Triangle NC IV LLC | 18-33983 | 9654 |
| 72. | PM Management - Killeen I NC LLC | 18-33984 | 3105 |
| 73. | PM Management - Killeen II NC LLC | 18-33985 | 3179 |
| 74. | PM Management - Killeen III NC LLC | 18-33986 | 3245 |
| 75. | PM Management - Lewisville NC LLC | 18-33988 | 5296 |
| 76. | PM Management - New Braunfels NC LLC | 18-33990 | 6293 |
| 77. | PM Management - Park Valley NC LLC | 18-33991 | 7186 |
| 78. | PM Management - Pflugerville AL LLC | 18-33993 | 4007 |
| 79. | PM Management - Portland AL LLC | 18-33994 | 5018 |
| 80. | PM Management - Portland NC LLC | 18-33995 | 4928 |
| 81. | PM Management - Round Rock AL LLC | 18-33997 | 5304 |
| 82. | PM Management - San Antonio NC LLC | 18-33998 | 1216 |

| 83. | Presidential SCC LLC | 18-34000 | 1913 |
| 84. | Redoak SCC LLC | 18-33976 | 7569 |

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 85. | Riverside SCC LLC | 18-34001 | 1889 |
| 86. | Round Rock SCC LLC | 18-34002 | 8936 |
| 87. | Rowlett SCC LLC | 18-34007 | 7606 |
| 88. | Ruston SCC LLC | 18-34009 | 0242 |
| 89. | RW SCC LLC | 18-34011 | 7631 |
| 90. | Sagebrook SCC LLC | 18-34013 | 9571 |
| 91. | San Angelo SCC LLC | 18-34015 | 4254 |
| 92. | SCC Edinburg LLC | 18-34019 | 1195 |
| 93. | SCC Hospice Holdco LLC | 18-34021 | 3166 |
| 94. | SCC Senior Care Investments LLC | 18-34023 | 4123 |
| 95. | SCC Socorro LLC | 18-34024 | 5459 |
| 96. | Senior Care Center Management II LLC | 18-34026 | 1280 |
| 97. | Senior Care Center Management LLC | 18-34028 | 7811 |
| 98. | Senior Care Centers Home Health, LLC | 18-34030 | 1931 |
| 99. | Senior Care Centers LLC | 18-33967 | 8550 |
| 100. | Senior Rehab Solutions LLC | 18-34031 | 4829 |
| 101. | Senior Rehab Solutions North Louisiana LLC | 18-34033 | 1690 |
| 102. | Shreveport SCC LLC | 18-34034 | 1659 |
| 103. | Solutions 2 Wellness LLC | 18-34038 | 4065 |
| 104. | South Oaks SCC LLC | 18-34039 | 8002 |
| 105. | Springlake ALF SCC LLC | 18-34041 | 2436 |
| 106. | Springlake SCC LLC | 18-34042 | 9102 |
| 107. | Stallings Court SCC LLC | 18-33977 | 7393 |
| 108. | Stonebridge SCC LLC | 18-34044 | 9234 |
| 109. | Stonegate SCC LLC | 18-33978 | 3005 |
| 110. | Summer Regency SCC LLC | 18-34047 | 7782 |
| 111. | TRISUN Healthcare LLC | 18-34048 | 2497 |
| 112. | Valley Grande SCC LLC | 18-34051 | 1341 |
| 113. | Vintage SCC LLC | 18-34053 | 7710 |
| 114. | West Oaks SCC LLC | 18-34055 | 9535 |
| 115. | Western Hills SCC LLC | 18-34056 | 1922 |
| 116. | Weston Inn SCC LLC | 18-34057 | 7871 |
| 117. | Westover Hills SCC LLC | 18-34059 | 3303 |
| 118. | Whitesboro SCC LLC | 18-34060 | 7745 |
| 119. | Windcrest SCC LLC | 18-34061 | 9541 |
| 120. | Windmill SCC LLC | 18-34062 | 8067 |
| 121. | Wurzbach SCC LLC | 18-34063 | 9920 |
| 122. | PM Management-Portfolio V NC, LLC | 19-30249 | 0086 |
| 123. | PM Management-Portfolio VI NC, LLC | 19-30250 | 5354 |
| 124. | PM Management-Portfolio VII NC, LLC | 19-30251 | 9728 |
| 125. | PM Management-Portfolio VIII NC, LLC | 19-30252 | 3048 |

| 126. | PM Management-Portfolio IX NC, LLC | 19-30253 | 1841 |
| 127. | PM Management - San Antonio AL LLC | 19-30254 | 4609 |
| 128. | San Antonio SCC, LLC | 19-30261 | 4923 |

**Exhibit 2**

**Credit Parties**

|  | Entity Name | Credit Party Status | Debtor/ Non-Debtor |
|---|---|---|---|
| 1 | Alief SCC LLC | Non-HUD Borrower | Debtor |
| 2 | Bandera SCC LLC | Non-HUD Borrower | Debtor |
| 3 | Baytown SCC LLC | Non-HUD Borrower | Debtor |
| 4 | Beltline SCC LLC | HUD Borrower | Debtor |
| 5 | Booker SCC LLC | Non-HUD Borrower | Debtor |
| 6 | Bossier SCC LLC | Non-HUD Borrower | Debtor |
| 7 | Bradford SCC LLC | Non-HUD Borrower | Debtor |
| 8 | Brinker SCC LLC | HUD Borrower | Debtor |
| 9 | Brownwood SCC LLC | Non-HUD Borrower | Debtor |
| 10 | Canopy Medical Staffing LLC | Non-HUD Borrower | Non-Debtor |
| 11 | Capitol SCC LLC | Non-HUD Borrower | Debtor |
| 12 | CapWest-Texas LLC | Non-HUD Borrower | Debtor |
| 13 | Cedar Bayou SCC LLC | Non-HUD Borrower | Debtor |
| 14 | Clear Brook SCC LLC | Non-HUD Borrower | Debtor |
| 15 | Colonial SCC LLC | Non-HUD Borrower | Debtor |
| 16 | Community SCC LLC | Non-HUD Borrower | Debtor |
| 17 | Corpus Christi SCC LLC | HUD Borrower | Debtor |
| 18 | Crestwood SCC LLC | HUD Borrower | Debtor |
| 19 | Crowley SCC LLC | Non-HUD Borrower | Debtor |
| 20 | CTLTC Real Estate, LLC (formerly CTLTC Merger I, LLC) | Non-HUD Borrower | Debtor |
| 21 | Fairpark SCC LLC | HUD Borrower | Debtor |
| 22 | Green Oaks SCC LLC | Non-HUD Borrower | Debtor |
| 23 | Harbor Lakes SCC LLC | Non-HUD Borrower | Debtor |
| 24 | Harden Non-HUD Holdco LLC | Non-HUD Borrower, HUD Pledgors | Debtor |
| 25 | Hearthstone SCC LLC | HUD Borrower | Debtor |
| 26 | Hewitt SCC LLC | Non-HUD Borrower | Debtor |
| 27 | HG SCC LLC | HUD Borrower | Debtor |
| 28 | HHC Portland AL, LP | Non-HUD Borrower | Non-Debtor |
| 29 | Hill Country SCC LLC | Non-HUD Borrower | Debtor |
| 30 | Holland Lake SCC LLC | Non-HUD Borrower | Debtor |
| 31 | Hunters Pond SCC LLC | Non-HUD Borrower | Debtor |
| 32 | Jacksonville SCC LLC | Non-HUD Borrower | Debtor |
| 33 | La Hacienda SCC LLC | Non-HUD Borrower | Debtor |

| | Entity Name | Credit Party Status | Debtor/ Non-Debtor |
|---|---|---|---|
| 34 | Lakepointe SCC LLC | HUD Borrower | Debtor |
| 35 | Major Timbers LLC | Non-HUD Borrower | Debtor |
| 36 | Marlandwood East SCC LLC | Non-HUD Borrower | Debtor |
| 37 | Marlandwood West SCC LLC | HUD Borrower | Debtor |
| 38 | Meadow Creek SCC LLC | Non-HUD Borrower | Debtor |
| 39 | Midland SCC LLC | Non-HUD Borrower | Debtor |
| 40 | Mill Forest Road SCC LLC | Non-HUD Borrower | Debtor |
| 41 | Mission SCC LLC | Non-HUD Borrower | Debtor |
| 42 | Mullican SCC LLC | HUD Borrower | Debtor |
| 43 | Mystic Park SCC LLC | Non-HUD Borrower | Debtor |
| 44 | Normandie SCC LLC | Non-HUD Borrower | Debtor |
| 45 | Onion Creek SCC LLC | Non-HUD Borrower | Debtor |
| 46 | Park Bend SCC LLC | HUD Borrower | Debtor |
| 47 | Pasadena SCC LLC | Non-HUD Borrower | Debtor |
| 48 | Pecan Tree SCC LLC | Non-HUD Borrower | Debtor |
| 49 | Pecan Valley SCC LLC | Non-HUD Borrower | Debtor |
| 50 | Pleasantmanor SCC LLC | HUD Borrower | Debtor |
| 51 | PM Management – Allen NC LLC | HUD Borrower | Debtor |
| 52 | PM Management – Babcock NC LLC | Non-HUD Borrower | Debtor |
| 53 | PM Management – Cedar Park NC LLC | Non-HUD Borrower | Debtor |
| 54 | PM Management – Corpus Christi NC II LLC | Non-HUD Borrower | Debtor |
| 55 | PM Management – Corpus Christi NC III LLC | Non-HUD Borrower | Debtor |
| 56 | PM Management – Corsicana NC II LLC | Non-HUD Borrower | Debtor |
| 57 | PM Management – Corsicana NC III LLC | Non-HUD Borrower | Debtor |
| 58 | PM Management – Corsicana NC LLC | Non-HUD Borrower | Debtor |
| 59 | PM Management – Denison NC LLC | HUD Borrower | Debtor |
| 60 | PM Management – El Paso I NC LLC | Non-HUD Borrower | Debtor |
| 61 | PM Management – Fredericksburg NC LLC | HUD Borrower | Debtor |
| 62 | PM Management – Frisco NC LLC | HUD Borrower | Debtor |
| 63 | PM Management – Garland AL, LLC | Non-HUD Borrower | Non-Debtor |
| 64 | PM Management – Garland NC LLC | HUD Borrower | Debtor |
| 65 | PM Management – Georgetown AL, LLC | Non-HUD Borrower | Non-Debtor |

| | Entity Name | Credit Party Status | Debtor/ Non-Debtor |
|---|---|---|---|
| 66 | PM Management – Georgetown NC, LLC | Non-HUD Borrower | Non-Debtor |
| 67 | PM Management – Golden Triangle NC I LLC | Non-HUD Borrower | Debtor |
| 68 | PM Management – Golden Triangle NC II LLC | Non-HUD Borrower | Debtor |
| 69 | PM Management – Golden Triangle NC III LLC | Non-HUD Borrower | Debtor |
| 70 | PM Management – Golden Triangle NC IV LLC | Non-HUD Borrower | Debtor |
| 71 | PM Management – Lewisville NC LLC | HUD Borrower | Debtor |
| 72 | PM Management – Pflugerville AL LLC | Non-HUD Borrower | Debtor |
| 73 | PM Management – Portfolio V NC, LLC | Non-HUD Borrower | Debtor |
| 74 | PM Management – Portfolio VI NC, LLC | HUD Borrower | Debtor |
| 75 | PM Management – Portfolio VII NC, LLC | Non-HUD Borrower | Debtor |
| 76 | PM Management – Portland AL LLC | Non-HUD Borrower | Debtor |
| 77 | PM Management – Portland NC LLC | Non-HUD Borrower | Debtor |
| 78 | PM Management – Round Rock AL LLC | Non-HUD Borrower | Debtor |
| 79 | PM Management – San Antonio AL, LLC | Non-HUD Borrower | Debtor |
| 80 | PM Management – San Antonio NC LLC | Non-HUD Borrower | Debtor |
| 81 | PM Management – Sinton NC, LLC | Non-HUD Borrower | Non-Debtor |
| 82 | Presidential SCC LLC | Non-HUD Borrower | Debtor |
| 83 | Redoak SCC LLC | Non-HUD Borrower | Debtor |
| 84 | Riverside SCC LLC | Non-HUD Borrower | Debtor |
| 85 | Round Rock SCC LLC | HUD Borrower | Debtor |
| 86 | Rowlett SCC LLC | Non-HUD Borrower | Debtor |
| 87 | Ruston SCC LLC | Non-HUD Borrower | Debtor |
| 88 | RW SCC LLC | HUD Borrower | Debtor |
| 89 | Sagebrook SCC LLC | HUD Borrower | Debtor |
| 90 | San Angelo SCC LLC | Non-HUD Borrower | Debtor |
| 91 | SCC Edinburg LLC | Non-HUD Borrower | Debtor |
| 92 | SCC Senior Care Investments LLC | Non-HUD Borrower | Debtor |

| | Entity Name | Credit Party Status | Debtor/ Non-Debtor |
|---|---|---|---|
| 93 | SCC Socorro LLC | Non-HUD Borrower | Debtor |
| 94 | Senior Care Center Management LLC | Non-HUD Borrower | Debtor |
| 95 | Senior Care Centers Home Health, LLC | Non-HUD Borrower | Debtor |
| 96 | Senior Care Centers LLC | Non-HUD Guarantor; Non-HUD Pledgor; HUD Guarantor; HUD Pledgors | Debtor |
| 97 | Senior Rehab Solutions LLC | Non-HUD Borrower | Debtor |
| 98 | Shreveport SCC LLC | Non-HUD Borrower | Debtor |
| 99 | Solutions 2 Wellness LLC | Non-HUD Borrower | Debtor |
| 100 | South Oaks SCC LLC | Non-HUD Borrower | Debtor |
| 101 | Springlake ALF SCC LLC | Non-HUD Borrower | Debtor |
| 102 | Springlake SCC LLC | Non-HUD Borrower | Debtor |
| 103 | Stallings Court SCC LLC | Non-HUD Borrower | Debtor |
| 104 | Stonebridge SCC LLC | HUD Borrower | Debtor |
| 105 | Stonegate SCC LLC | Non-HUD Borrower | Debtor |
| 106 | Summer Regency SCC LLC | HUD Borrower | Debtor |
| 107 | TRISUN Healthcare LLC | Non-HUD Borrower | Debtor |
| 108 | Valley Grande SCC LLC | Non-HUD Borrower | Debtor |
| 109 | Vintage SCC LLC | HUD Borrower | Debtor |
| 110 | West Oaks SCC LLC | Non-HUD Borrower | Debtor |
| 111 | Western Hills SCC LLC | Non-HUD Borrower | Debtor |
| 112 | Weston Inn SCC LLC | Non-HUD Borrower | Debtor |
| 113 | Westover Hills SCC LLC | Non-HUD Borrower | Debtor |
| 114 | Whitesboro SCC LLC | HUD Borrower | Debtor |
| 115 | Windcrest SCC LLC | HUD Borrower | Debtor |
| 116 | Windmill SCC LLC | Non-HUD Borrower | Debtor |
| 117 | Wurzbach SCC LLC | HUD Borrower | Debtor |