CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**Signed March 29, 2019**            **United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Senior Care Centers, LLC, *et al.*,[1] | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**ORDER (I) APPROVING FORM OF OPERATIONS TRANSFER AGREEMENT, (II) AUTHORIZING TRANSFER OF THE OPERATIONS AND RELATED ASSETS OF THE TRANSFER PORTFOLIO FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the debtors and debtors in possession (the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") for entry of an order (this "**Order**") (i) approving the form of the Operations Transfer Agreement, (ii) authorizing the transfer of the Assets of the thirty-eight (38) facilities referred to as the Transfer

---

[1] The Debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 569] and may also be found on the Debtors' claims agent's website at https://omnimgt.com/SeniorCareCenters. The location of the Debtors' service address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

67912781.3

Portfolio from certain of the Debtors to the new operators listed on Exhibit 1 attached hereto (the "**New Operators**"), and (iii) granting related relief, all as more fully set forth in the Motion; and upon the record of the hearing on the Motion, if any; the Court having reviewed the Motion and the *Declaration of Kevin O'Halloran, Chief Restructuring Officer of Senior Care Centers, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 25] (the "**First Day Declaration**"); and the Court having jurisdiction over this matter pursuant to 28 U.S.C. 157 and §§ 1334(b); and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Debtors consent to entry of a final order under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given, under the circumstances, and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore,

      **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is granted as set forth herein.

2. All objections not resolved by the terms of this Order are hereby overruled.

3. The Operations Transfer Agreements (each an "**OTA**," and collectively, the "**OTAs**"), any other ancillary documentation (the "**Transaction Documents**"), and the transactions contemplated by the foregoing, are approved.

4. The transfer of its Assets by a Debtor Transferor to its New Operator pursuant to the Transaction Documents and the transactions contemplated by the foregoing are approved.

5. The Debtors are prohibited from paying any obligations to their employees pursuant to the Transaction Documents, including but not limited to, any severance, retention bonus, or other change in control payment, unless this Court enters an order authorizing such payment. Any severance, retention bonus, or other change in control payment contemplated by the OTAs that is payable because of any sale is limited to the extent required by applicable Bankruptcy law.

6. The transferred Assets exclude (i) any and all causes of action, claims, or rights of avoidance or recovery of any transfers or liens under chapter 5 of the Bankruptcy Code or applicable state law; and (ii) all D&O policies of the Debtor Transferors or any of their affiliates and all rights of every nature and description under or arising out of such insurance policies, including the right to make claims thereunder, to the proceeds thereof.

7. The Debtors and the New Operators are authorized and empowered to enter into, and to perform all of their obligations under the Transaction Documents and take any acts, and to execute and perform such documents, including but not limited to any ancillary agreements, and take such other actions as are necessary, desirable, or reasonably required to effectuate the terms thereof.

8. Subject to paragraphs 9-15 of this Order, and Louisiana Revised Statutes §§ 46:437.10 and 46:437.12, the Assets are transferred free and clear of all liens, claims, interests, or encumbrances, including but not limited to successor liability claims (the "**Encumbrances**"), provided, however, that for any party holding a secured interest in the Assets senior to any interest held by Sabra (the "**Landlord**") (or an ownership interest, if any third party owns any goods or equipment located at any of the facilities comprising the Transfer Portfolio), the New Operators will receive such Assets subject to such interest unless such interest is satisfied in a

67912781.3

manner agreed to by the holder thereof or as otherwise determined by this Court. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to transfer the Assets to the New Operators in accordance with the terms of the OTAs and this Order; provided, however, the Committee and any subsequently appointed liquidating trustee shall have reasonable access to records and information transferred by the transferor.

9. Certain of the Debtors are parties to Medicare provider agreements (the "**Medicare Provider Agreements**") with the Secretary of the United States Department of Health and Human Services ("**HHS**"), acting through its designated component, the Centers for Medicare & Medicaid Services ("**CMS**"), to receive payment for services provided to Medicare beneficiaries pursuant to the provisions of, and regulations promulgated under, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll. Further, certain of the Debtors are parties to Medicaid provider agreements (the "**LA Medicaid Provider Agreements**") with the Louisiana Department of Health ("**LDH**"), acting through its designated office, the Louisiana Medicaid Program, to receive payment for services provided to Medicaid recipients pursuant to the provisions of, and the regulations promulgated under, Title XIX of the Social Security Act, 42 U.S.C. §§1396-1396w-5, and La. R.S. 46:437.1 et seq. Notwithstanding anything in this Order, the Motion, the OTAs, or the Transaction Documents,

(a) the Medicare Provider Agreements shall be governed exclusively and solely by the Medicare statutes, regulations, rules, policies, and procedures, including, but not limited to, the adjustment of any payments to the New Operators;

(b) the Medicare Provider Agreements shall be automatically assigned to the New Operators upon a change in ownership pursuant to 42 C.F.R. § 489.18(c), and upon assignment, the Medicare Provider Agreements shall be subject to all applicable Medicare statutes, regulations, rules, policies, and procedures, and shall be subject to the terms and conditions under which the Medicare Provider Agreements were originally issued, including, but not limited to, the repayment of all pre-assignment

       Medicare overpayments and all other monetary liabilities, regardless of whether yet determined by CMS;

(c) the New Operators and the Medicare Provider Agreements shall be subject to compliance with applicable health and safety standards pursuant to all Medicare statutes, regulations, rules, policies, and procedures;

(d) nothing shall affect or impair the United States' defenses, claims, rights, or ability to recoup, setoff, or otherwise recover Medicare overpayments and any other monetary liabilities from the Debtors and/or any New Operator under the Medicare Provider Agreements in accordance with the Medicare statutes, regulations, rules, policies, and procedures;

(e) nothing shall relieve or be construed to relieve the Debtors or any New Operator from complying with all Medicare statutes, regulations, rules, policies, and procedures, including, but not limited to, the requirement that the Debtors and any New Operator apply for and obtain CMS approval of a change of ownership by the filing of Form CMS-855A;

(f) the Debtors and/or New Operators shall retain their respective right to appeal CMS' overpayment determination in accordance with the applicable statutes and regulations;

(g) the LA Medicaid Provider Agreements shall be governed exclusively and solely by the Medicaid statutes (federal and state), regulations, rules, policies, and procedures, including, but not limited to, the adjustment of any payments to the New Operators operating in the State of Louisiana (the "**Louisiana New Operato**rs");

(h) The LA Medicaid Provider Agreements shall be assigned to the Louisiana New Operators upon a change in ownership pursuant to 42 CFR Part 455, Subpart E, and La. R.S. 46:437.11 et seq., and upon assignment, the LA Medicaid Provider Agreements shall be subject to all applicable Medicaid statutes, regulations, rules, policies, and procedures, and shall be subject to the terms and conditions under which the LA Medicaid Provider Agreements were originally issued, including, but not limited to, the repayment of all pre-assignment Medicaid overpayments, debts, sanctions, and all other monetary liabilities, regardless of whether yet determined by LDH;

(i) the Louisiana New Operators and the LA Medicaid Provider Agreements shall be subject to compliance with applicable health and safety standards pursuant to all Medicaid statutes, regulations, rules, policies, and procedures;

(j) nothing shall affect or impair LDH's defenses, claims, rights, or ability to recoup, setoff, or otherwise recover Medicaid overpayments, debts, sanctions, and all other monetary liabilities from the Debtors and/or any Louisiana New Operator under the LA Medicaid Provider Agreements in accordance with the Medicaid statutes, regulations, rules, policies, and procedures;

(k) nothing shall relieve or be construed to relieve the Debtors or any Louisiana New Operator from complying with all Medicaid statutes, regulations, rules, policies, and procedures, including, but not limited to, the requirement that the Louisiana New Operators apply for and obtain LDH approval of a change of ownership by the filing of the required forms; and

(l) the Debtors and/or Louisiana New Operators shall retain their respective right to appeal LDH's overpayment determination in accordance with the applicable Medicaid statutes and regulations.

10.  Notwithstanding any other provisions of this Order, the OTAs, the Settlement Agreement, the Transaction Documents, and any other request in or document attached to the Motions, [D.I. 574, 580], LDH's approval of the transfer of those facilities from the Transfer Portfolio located in the State of Louisiana (the "**Louisiana Facilities**"), is conditioned upon the following:

(a) In connection with such transfer, payment by the Debtors to LDH in the amount of $1,050,397.35 as the full amount of the Provider Bed Fees currently due (per Table on Page 4 of LDH's Objection [D.I. 688]) at or before the Closing (defined below);

(b) In connection with such transfer, payment by the Debtors to LDH of One Million Dollars ($1,000,000) at or before the Closing (defined below) which shall be applied towards the aggregate amount of the Providers Bed Fees due for the first quarter of 2019, with any remainder to be paid within thirty (30) days of delivery of written notice by LDH.

(c) In connection with such transfer, payment by the Debtors to LDH of $2,700 in Sanctions (per Table on Page 4 of LDH's Objection [D.I. 688]) at or before the Closing (defined below);  and

(d) In connection with such transfer, payment to LDH of $1,460,355.00 (i.e, one-half of the $2,920,710.00 in Direct Care/Floor Audits per Table on Page 4 of LDH's Objection [D.I. 688]) at or before the Closing (defined below) with the remaining balance thereof due at the completion of the audit or administrative appeal process, which amounts shall be caused to be paid by Landlord pursuant to separate indemnity agreements between Landlord and certain other parties.

In addition to all other rights of LDH in connection with any transfer of licenses and the provider agreements and all rights and limitations under state law (e.g., LSA-RS §§

67912781.3

40:2116, 46:437.10, and 46:437.12) and Bankruptcy Code section 365 (all of which rights and limitations are reserved and preserved), LDH may refuse in its sole discretion to consent to any transfer of any license and/or provider agreement unless and until the foregoing amounts set forth in Sections 10(a) through (d) above are paid in full to LDH at or before the Closing (defined below).  In anticipation of such payments, LDH agrees to process any and all license transfer (i.e. change of ownership or CHOW) applications submitted with respect to the Louisiana Facilities pursuant to LDH's current rules and regulations (including, but not limited to, the timeframes for submission and approval provided for therein).  For the avoidance of doubt, all of the rights of LDH including without limitation LDH's rights asserted in its Objection [D.I. 688] and Section 365 of the Bankruptcy Code are reserved and preserved – and not waived or adjudicated by this Order – including the right to pursue all amounts owed as cure payments and the right to object to and/or otherwise litigate assumption and assignment of any contracts, leases, or agreements.

11. Subject to paragraph 10 but otherwise notwithstanding any other provision to the contrary, the transfer of the Assets pursuant to this Order shall not be free and clear of claims related to executory contracts or unexpired leases that may be assumed and assigned to the New Operators, unless (a) the Debtors provide notice of an intention to assume and assign such executory contract to a New Operator, (b) the New Operator cures any defaults, to the extent that any exist, relating to such contract, and (c) the New Operator provides adequate assurance of the future performance of such contract. For the avoidance of doubt, all parties' rights are reserved regarding (i) whether a contract is assumable and/or assumable and assignable, (ii) the

67912781.3

cure amount related to any executory contract, and (iii) the ability of the applicable New Operator to provide adequate assurance of future performance.

12.  Notwithstanding anything in this Order, the Motion, the OTAs, or the Transaction Documents, (1) the Debtors and New Operators shall abide by all Social Security Administration ("**SSA**") statutes, regulations, rules, policies, and procedures, including, but not limited to, (a) the transfer of any account holding Social Security benefits, or (b) any New Operator's actions as any beneficiary's representative payee; (2) nothing shall impair or affect SSA's authority, rights, claims or defenses under SSA statutes, regulations, rules, policies, and procedures; and (3) to the extent the Debtors may need to disclose information they possess solely by virtue of being organizational representative payees, the Debtors shall seek a protective order or request the information be sealed.

13.  Notwithstanding anything in this Order, the Motion, the OTAs, or the Transaction Documents, the Debtors, the Louisiana New Operators, and each Obligor[3] shall abide by all provisions of Louisiana law, including without limitation Louisiana Revised Statutes §§ 40:2116, 46:437.10, and 46:437.12.  To comply with Louisiana Revised Statutes §§ 46:437.10 and 46:437.12, the Debtors, the Louisiana New Operators, and the Obligors are deemed to assume the liabilities owed to LDH and must pay all outstanding debts and liabilities owed or which may be owed to LDH and/or the medical assistance programs, notwithstanding any other provisions of this Order, the OTAs, the Settlement Agreement, the Transaction Documents, and any other request in or document attached to the Motions [D.I. 574, 580].

---

[3] The "Obligors" are:  Senior Care Centers, LLC, Bossier SCC LLC, Springlake SCC LLC, Bradford SCC LLC, Normandie SCC LLC, Ruston SCC LLC, PMG OPCO-Pilgrim, L.L.C., PMG OPCO-Springlake, L.L.C., PMG OPCO-Bradford, L.L.C., PMG OPCO-Guest House, L.L.C., PMG OPCO-Alpine, L.L.C., and New Operators (the "**Obligors**").

14. Notwithstanding anything in this Order, the Motion, the OTAs, or the Transaction Documents, nothing releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit arising from or related to the enforcement of any applicable police or regulatory law or regulation (including but not limited to those of LDH and the Texas Health and Human Services Commission, "**HHSC**") to which any entity would be subject as the owner, operator or licensee of property from and after the date of the closing of the Sale. Nothing in this Order authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police and regulatory law. Further, nothing herein shall impair HHSC's rights to place a vendor hold on Medicaid receivables as part of any Change of Ownership process.

15. Certain of the Debtors are parties to Medicaid provider agreements (the "**TX Medicaid Agreements**") with the HHSC. Notwithstanding anything in this Order, the Motion, the OTAs, or the Transaction Documents:

- (a) The TX Medicaid Agreements shall be governed exclusively and solely by applicable Medicaid statutes, regulations, rules, policies, and procedures, including, but not limited to, the adjustment of any payments to the New Operators operating in the State of Texas (the "**Texas New Operators**" and individually, a "**Texas New Operator**");

- (b) The Texas New Operators and the TX Medicaid Agreements shall be subject to compliance with applicable health and safety standards pursuant to all Medicaid statutes, regulates, rules, policies, and procedures;

- (c) Nothing shall affect or impair HHSC's defenses, claims, rights, or ability to recoup, setoff, or otherwise recover Medicaid overpayments and any other monetary liabilities from the Debtors and/or any Texas New Operator under the TX Medicaid Agreements in accordance with all applicable Medicaid statutes;

- (d) Nothing shall relieve or be construed to relieve the Debtors or any Texas New Operator from complying with all applicable Medicaid statutes, regulations, rules, policies, and procedures; and

67912781.3

(e) The Debtors and/or Texas New Operators shall retain their respective right to an administrative appeal of any overpayment determination in accordance with the applicable statutes and regulations.

16. This Order shall be binding upon and govern the acts of all persons and entities that received notice of the Motion, including but not limited to all creditors and stakeholders, any parties in interest, the Debtors and the New Operators, and their respective successors and assigns, and may be relied upon by all filing agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law to accept, file, register, or otherwise record or release any documents or instruments.

17. Upon the closing of the transactions contemplated by the OTAs and associated Transaction Documents (the "**Closing**"), such transactions shall constitute a legal, valid, and effective transfer of the Assets and shall vest the New Operators with all right, title, and interest of the Debtors in and to the Assets, free and clear of all Encumbrances except as expressly set forth herein, subject to paragraphs 9-15 of this Order, and Louisiana Revised Statutes §§ 46:437.10 and 46:437.12.

18. No release or indemnification shall be granted in contravention of *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.), 584 F.3d 229 (5th Cir. 2009)* or Bankruptcy Code section 524(e).

19. Notwithstanding any other provision in this Order, the Motion, the OTAs, and the Transaction Documents, year 2017 and 2018 ad valorem property taxes owed on the affected locations shall be paid on or before April 1, 2019 with interest that has accrued at the state statutory rate of 1% per month pursuant to 11 U.S.C. Sections 506(b) and 511. The liens that secure all amounts ultimately owed for tax year 2019 shall remain attached to the assets and become the responsibility of the New Operators. The holders of liens that secure year 2019 ad

67912781.3

valorem property taxes shall retain all state law collection and lien enforcement rights and are not enjoined from pursuing collection of all amounts owed for tax year 2019 against the New Operators in the event the 2019 ad valorem property taxes are not paid prior to the state law delinquency date.

20. Certain equipment and/or vehicles ("**Wells Fargo Equipment**") that are subject to leases between certain of the Debtors and Wells Fargo Equipment Finance, Inc., Wells Fargo Bank dba Wells Fargo Equipment Finance, and/or Wells Fargo Financial Leasing, Inc. (collectively, "**Wells Fargo**") are, or may be, located at the facilities being transferred to the New Operators. Notwithstanding any other term or provision of this Order, subsequent to the transfer of the Assets to the New Operators, Wells Fargo shall retain its liens and interests in the Wells Fargo Equipment, which shall be transferred to the New Operators subject to such liens and interests, and any rights or interests of the Debtors therein shall be deemed to be terminated following the effective date of the transfer to the New Operators. Wells Fargo and the New Operator may enter into such new equipment lease, lease assumption, or other transaction regarding the Wells Fargo Equipment to which such parties may mutually agree and, in the absence of such agreement, Wells Fargo shall be permitted to exercise its legal or contractual in rem rights and remedies with respect to the Wells Fargo Equipment, as to which the automatic stay shall be terminated upon Closing. With Wells Fargo's consent, the Debtors shall file a motion to formally assume or reject any contracts or leases pertaining to the Wells Fargo Equipment, in consultation with the New Operator, within ninety (90) days of the Closing.

21. The transfers pursuant to the OTAs and any Purchased Assets assigned to each New Operator, and the sale process conducted by the Debtors and each New Operator was non-collusive, fair and reasonable. All facets of the transactions completed under each OTA,

including the purchase of the Purchased Assets, were proposed, conducted, adequately disclosed, negotiated, and agreed to at arm's length and in good faith within the meaning of, and pursuant to, Bankruptcy Code Section 363(m). Each New Operator and/or its assignee (if applicable), as transferee of the Purchased Assets, is a good faith purchaser under Bankruptcy Code Section 363(m) and, as such, is entitled to the full protection of Bankruptcy Code Section 363(m). The Sale of the Purchased Assets to each New Operator was not controlled by an agreement among potential bidders and no cause of action against any New Operator (or their officers, directors, employees, agents, independent contractors and/or retained professionals) with respect to the Purchased Assets transferred to each New Operator under Bankruptcy Code Section 363(n), and any such claims under Bankruptcy Code Section 363(n) are hereby released, waived and discharged. In the absence of a stay pending appeal, each New Operator will be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in closing the transactions contemplated in this Sale Order.

22. Neither the New Operators, Landlord, nor their respective affiliates, successors, or assigns shall be deemed, as a result of any action taken in connection with the transaction to: (i) be a successor to the Debtors, except to the extent provided in paragraphs 9-15 of this Order, and Louisiana Revised Statutes §§ 46:437.10 and 46:437.12; (ii) have, *de facto* or otherwise, merged with or into the Debtors; (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors; (iv) be acquiring or assuming or liable for any liability, warranty, or other obligation of the Debtors, except to the extent expressly assumed in the OTAs, or as set forth in paragraphs 9-15 of this Order, and Louisiana Revised Statutes §§ 46:437.10 and 46:437.12. Except as expressly provided in the OTAs or as set forth in paragraphs 9-15 of this Order, and Louisiana Revised Statutes §§ 46:437.10 and 46:437.12, neither the New Operators

67912781.3

nor Landlord are assuming nor shall they in any way be liable or responsible, as successor or otherwise, for any claims, taxes, liabilities, debts, obligations, or Encumbrances of the Debtors or their estates of any kind or character in any way whatsoever relating to or arising from the Assets or the Debtors' operation or use of the Assets prior to the Closing, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent. Further, other than as set forth in paragraphs 9-15 of this Order, and Louisiana Revised Statutes §§ 46:437.10 and 46:437.12, all persons and entities are enjoined from (i) taking any action against the New Operators or Landlord to recover any claim which such person or entity had solely against any of the Debtors or any of the Debtors' subsidiaries, affiliates, directors, officers, agents, representatives, employees, investors, owners, shareholders, partners, or joint venturers, and (ii) pursuing Encumbrances against the Assets.

23. To the extent that the New Operators have not received the necessary licenses, evidence of licenses, and/or other regulatory approvals (including but not limited to, Medicare provider agreements to the extent required by applicable law or regulation) to operate the Facility effective as of the Closing, the Debtors and the New Operators, after consent of the Committee or any subsequently appointed liquidating trustee, are hereby authorized to enter into any management or other agreement necessary for continuity of resident care, and this shall not create or effectuate any liability for prior obligations of Debtors, whether successor liability or otherwise.

24. The terms of the OTAs and any ancillary Transaction Documents may be waived, modified, amended, or supplemented by the written and signed agreement of the Debtors and the New Operators without further action of the Court; *provided, however*, that, in the Debtors' business judgment any such waiver, modification, amendment, or supplement is not material or

67912781.3

is not adverse to the Debtors' estates, and the Committee or any subsequently appointed liquidating trustee have consented, and provided further that any such waiver, modification, amendment, or supplement must be shared with the affected Objecting Parties prior to its entry or effectiveness, and the Debtors, the New Operators, and Landlord are directed to engage in good faith with such affected Objecting Parties to address any concerns they may have. To the extent the Debtors, the New Operators, Landlord, and the affected Objecting Parties are unable to resolve any issues or differences as to the terms of any waiver, modification, amendment, or supplement to the OTAs and any ancillary Transaction Documents, the Debtors shall seek appropriate supplemental relief or adjudication by this Court, and/or the approval of any such revised terms.

25. This Court retains jurisdiction to enforce the provisions of this Order and the Transaction Documents, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, to resolve any dispute concerning this Order, the Transaction Documents, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Transaction Documents, and any related agreements and this Order.

26. Notwithstanding any applicable Bankruptcy Rule or Local Bankruptcy Rule to the contrary, this Order is effective and enforceable immediately upon entry, no stay applies, and the Debtors may complete the transactions contemplated hereby immediately. This Order is intended to be, and in respects shall be, a final order regarding the relief granted herein, and shall not be an interim order.

27. To the extent any provisions of this Order conflict with the terms and conditions set forth in the Motion or the Transaction Documents, this Order shall govern and control.

28. Except as otherwise expressly provided for herein, the provisions of this Order shall not be affected by, and shall continue to be binding in, any subsequent chapter 7 proceeding, dismissal, appointment of a trustee or examiner, or chapter 11 plan, and the Debtors or their successors and assigns shall continue to carry out any further assurances and obligations under the Transaction Documents. Further, any chapter 7 trustee or other fiduciary (including but not limited to any party appointed pursuant to any chapter 11 plan) shall not interfere with, and shall cooperate with the New Operators, in effectuating the terms of the OTAs and related Transaction Documents.

### ### END OF ORDER ###

Order submitted by:

**POLSINELLI PC**

*/s/      Trey A. Monsour*
Trey A. Monsour
State Bar No. 14277200
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

-and-

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

*Counsel to the Debtors and Debtors in Possession*

67912781.3

## **Exhibit 1**

Debtors' Facilities to be transferred to a new operator.

| FACILITY/ADDRESS | DEBTOR TRANSFEROR | NEW OPERATOR |
|---|---|---|
| Lakeside Assisted Living<br>8627 Lakeside Parkway<br>San Antonio, TX 78245 | PM Management - San Antonio AL LLC | Regency IHS of Lakeside AL LLC |
| Trisun Care Center – Lakeside<br>8707 Lakeside Parkway<br>San Antonio, TX 78245 | PM Management - San Antonio NC LLC | Regency IHS of Lakeside  LLC |
| Hill Country Care<br>1505 W. Highway 290<br>Dripping Springs, TX 78620 | Hill Country SCC LLC | Regency IHS of Hill Country LLC |
| Pecan Tree Rehab & Healthcare Center<br>1900 E. California Street<br>Gainesville, TX 76240 | Pecan Valley SCC LLC | Southwest LTC - Gainesville, LLC |
| Senior Care of Jacksonville<br>810 Bellaire Street<br>Jacksonville, TX 75766 | Jacksonville SCC LLC | Southwest LTC – Bonner, LLC |
| Senior Care of San Angelo<br>5455 Knickerbocker Road<br>San Angelo, TX 76904 | San Angelo SCC LLC | Regency IHS of San Angelo, LLC |
| Senior Care of Midland<br>3000 Mockingbird Lane<br>Midland, TX 79705 | Midland SCC LLC | Regency IHS of Midland LLC |
| Brodie Ranch Nursing & Rehab Center<br>2101 Frate Barker Road<br>Austin, TX 78748 | South Oaks SCC LLC | Regency IHS of Brodie Ranch LLC |
| Riverside Nursing & Rehab Center<br>6801 E. Riverside Drive<br>Austin, TX 78741 | Riverside SCC LLC | Regency IHS of Riverside LLC |
| Senior Care of West Oaks<br>3200 W. Slaughter Lane<br>Austin, TX 78748 | Capitol SCC LLC | Regency IHS of West Oaks LLC |
| Bandera Nursing & Rehab Center<br>222 FM 1077<br>Bandera, TX 78003 | Bandera SCC LLC | Regency IHS of Bandera LLC |

| FACILITY/ADDRESS | DEBTOR TRANSFEROR | NEW OPERATOR |
|---|---|---|
| Mystic Park Nursing & Rehab Center<br>8503 Mystic Park<br>San Antonio, TX 78254 | Mystic Park SCC LLC | Regency IHS of Mystic Park LLC |
| Paramount Senior Care Centers at San Antonio<br>5437 Eisenhauer Road<br>San Antonio, TX 78218 | Presidential SCC LLC | Regency IHS of San Antonio LLC |
| West Oaks Nursing & Rehab Center<br>3625 Green Crest Drive<br>Houston, TX 77082 | West Oaks SCC LLC | Regency IHS of Westpark LLC |
| Trisun Care Center – Coastal Palms<br>221 Cedar Drive<br>Portland, TX 78374 | PM Management - Portland NC LLC | Regency IHS of Coastal Palms LLC |
| Trisun Care Center – River Ridge<br>3922 W. River Drive<br>Corpus Christi, TX 78410 | PM Management - Corpus Christi NC II LLC | Regency IHS of River Ridge LLC |
| Heritage Oaks Retirement Village<br>3002 W. 2nd Avenue<br>Corsicana, TX 75110 | PM Management - Corsicana NC II LLC | Southwest LTC – Corsicana, LLC |
| Heritage Oaks West Retirement Village<br>3300 West 2nd Avenue<br>Corsicana, TX 75110 | PM Management - Corsicana NC III LLC | Southwest LTC – Corsicana West, LLC |
| Trisun Care Center – Northeast El Paso<br>11169 Sean Haggerty Drive<br>El Paso, TX 79934 | PM Management - El Paso I NC LLC | Regency IHS of El Paso LLC |
| SCC of Pilgrim Manor Rehabilitation Center<br>1524 Doctors Drive<br>Bossier City, LA 71111 | Bossier SCC LLC | PMG OPCO-Pilgrim, L.L.C. |
| Spring Lake Rehabilitation Center<br>8622 Line Avenue<br>Shreveport, LA 71106 | Springlake SCC LLC | PMG OPCO-Springlake, L.L.C. |
| The Bradford Rehabilitation Center<br>3050 Baird Road<br>Shreveport, LA 71118 | Bradford SCC LLC | PMG OPCO-Bradford, L.L.C. |
| The Guest House Rehabilitation Center<br>9225 Normandie Drive<br>Shreveport, LA 71118 | Normandie SCC LLC | PMG OPCO-Guest House, L.L.C. |
| SCC of Alpine Rehabilitation Center<br>2401 N. Service Road East<br>Ruston, LA 71270 | Ruston SCC LLC | PMG OPCO-Alpine, L.L.C. |

67912781.3

| FACILITY/ADDRESS | DEBTOR TRANSFEROR | NEW OPERATOR |
|---|---|---|
| SCC of Colonial Oaks Rehabilitation Center<br>4921 Medical Drive<br>Bossier City, LA 71112 | Colonial SCC LLC | PMG OPCO-Colonial, L.L.C. |
| SCC of Shreveport Manor Rehabilitation Center<br>3302 Mansfield Road<br>Shreveport, LA 71103 | Shreveport SCC LLC | PMG OPCO-Shreveport, L.L.C. |
| SCC of Booker T. Washington Rehabilitation Center<br>7605 Line Avenue<br>Shreveport, LA 71106 | Booker SCC LLC | PMG OPCO-Washington, L.L.C. |
| Senior Care of Onion Creek<br>1700 Onion Creek Parkway<br>Austin, TX 78748 | Onion Creek SCC LLC | Regency IHS of Onion Creek LLC |
| Paramount Senior Care Centers at Pasadena<br>3434 Watters Road<br>Pasadena, TX 77504 | Pasadena SCC LLC | To Be Supplemented |
| Cedar Bayou Nursing Rehab Center<br>2000 W. Baker Road<br>Baytown, TX 77521 | Cedar Bayou SCC LLC | To Be Supplemented |
| Trisun Care Center – Westwood<br>801 Cantwell Lane<br>Corpus Christi, TX 78408 | PM Management - Corpus Christi NC III LLC | To Be Supplemented |
| Baytown Nursing & Rehab Center<br>3921 N. Main Street<br>Baytown, TX 77521 | Baytown SCC LLC | To Be Supplemented |
| Summer Place Nursing & Rehabilitation<br>2485 S. Major Drive<br>Beaumont, TX 77707 | PM Management - Golden Triangle NC I LLC | To Be Supplemented |
| Senior Care of Westwood<br>8702 S. Course Drive<br>Houston TX 77099 | Alief SCC LLC | To Be Supplemented |
| Lake Arthur Place<br>4225 Lake Arthur Drive<br>Port Arthur, TX 77642 | PM Management - Golden Triangle NC IV LLC | To Be Supplemented |
| Cypress Glen<br>7200 9th Avenue<br>Port Arthur, TX 77642 | PM Management - Golden Triangle NC III LLC | To Be Supplemented |
| The Meadows of Orange<br>4201 FM 105<br>Orange, TX 77630 | PM Management - Golden Triangle NC II LLC | To Be Supplemented |
| The Pointe Nursing & Rehab Center<br>17231 Mill Forest<br>Webster, TX 77598 | Mill Forest Road SCC LLC | To Be Supplemented |

67912781.3