

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 17, 2019**

_____
**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Senior Care Centers, LLC, *et al.*,[1] | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors. | § | (Jointly Administered) |

**FOURTH INTERIM ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) SETTING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors[3] for entry of a Fourth Interim Order

(this "**Fourth Interim Order**") (i) authorizing the Debtors to use the Cash Collateral of CIBC

Bank USA, as Administrative Agent for itself and for CIT Finance LLC, MB Financial Bank,

N.A., Bankers Trust Company, Wells Fargo Bank, N.A., and Compass Bank (collectively, the

---

[1]  The Debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 569] and may also be found on the Debtors' claims agent's website at https://omnimgt.com/SeniorCareCenters. The location of the Debtors' service address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion, the First Interim Order (as defined herein), Second Interim Order (as defined herein) and the Findings of Fact and Conclusions of Law (as defined herein).

[3]  "Debtors" shall mean those listed on Exhibit 1.

"**Lenders**"), (ii) granting the Administrative Agent, for the benefit of the Lenders, adequate protection upon the terms set forth in this Fourth Interim Order and in any final orders, (iii) modifying the automatic stay, (iv) scheduling a final hearing on the Motion and approving the form and manner of notice thereof, and (v) granting such other and further relief as the Court deems just and appropriate; the Court having reviewed the Motion and the First Day Declaration; and this Court having held an initial hearing on the Motion on December 6, 2018 (the "**First Interim Hearing**") and a second hearing on the Motion on January 14, 2019 (the "**Second Interim Hearing**"); and the Court having entered the *Findings of Fact and Conclusions of Law Regarding the Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Docket No. 74] (the "**Findings of Fact and Conclusions of Law**"), the *Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Docket No. 75] (the "**First Interim Order**"), the *Second Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Docket No. 431] (the "**Second Interim Order**"); and the *Third Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Docket No. 673] (the "**Third Interim Order**"); and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b); and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Debtors consented to entry of a final order under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given, under the circumstances, and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor:

**IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is granted on an interim basis in accordance with the terms and conditions of this Fourth Interim Order.

2.      <u>Use of Cash Collateral</u>. Subject to the terms and conditions set forth in this Fourth Interim Order, the Debtors are, through and including the earlier of (a) May 31, 2019, (b) the conclusion of the final hearing on the Debtors' use of Cash Collateral, or (c) termination of this Fourth Interim Order following issuance of a Termination Notice as set forth in <u>Paragraph 11</u> below, authorized pursuant to Bankruptcy Code sections 105, 361, 362, and 363, and Bankruptcy Rules 2002, 4001, 6003, and 9014 to use Cash Collateral on an interim basis. The Cash Collateral may only be used to fund the types and corresponding amounts of itemized expenditures contained in the budget attached hereto as <u>Exhibit 2</u> (the "**Budget**"); <u>provided, however</u>, that the Debtors may use Cash Collateral in excess of the amount designated for a particular line-item so long as the percentage of deviation of each line item during any rolling 4-week period does not exceed ten percent (10%) (the "**Variance**"); and <u>provided further</u> that the Debtors may not amend or modify the terms and conditions of their use of the Cash Collateral, or amend, modify, roll-forward or replace the Budget itself, without the prior written consent of the Administrative Agent, which may be granted or withheld in the Administrative Agent's

3

reasonable discretion, with notice to the official committee of unsecured creditors (the "**Committee**"). All parties' arguments with respect to whether costs and expenses are properly allocated to any Debtor are preserved.

3. <u>Reporting</u>. As additional protection for the Debtors' use of Cash Collateral, the Debtors shall allow the Administrative Agent, the Committee, and their respective professionals and designees reasonable access, during normal business hours, to the premises of the Debtors in order to conduct appraisals, analyses, and/or audits of the Prepetition Collateral, and shall otherwise reasonably cooperate in providing any other financial information requested by the Administrative Agent and Committee for this purpose. From and after the entry of this Fourth Interim Order, the Debtors shall provide to the Administrative Agent and the Committee on Wednesday of each week (commencing with the second week after the Petition Date), a weekly report (the "**Weekly Budget Report**") certified by the Debtors' chief financial officer and in the same form as the Budget indicating all receipts received and disbursements made by the Debtors in the week ending the prior Friday compared to the Budget and detailing any variances of more than 10% from the disbursements and receipts in the Budget. The Debtors, and their professionals and consultants, shall be available weekly (subject to reasonable scheduling conflicts) for a telephonic conference call with the Administrative Agent, the Committee, and/or their professionals to discuss the status of the Bankruptcy Cases, the results of operations and other matters pertaining to the Debtors' facilities, including any sale or restructuring efforts. The Administrative Agent and the Committee shall have independent access to the Debtors' financial advisors to discuss matters relating to the Debtors, including any contemplated sale or restructuring of the Debtors. The Debtors shall provide to the Administrative Agent and

Committee such other reports and information as the Administrative Agent may reasonably request from time to time.

4.     HUD Reporting. In addition to the reporting described above, the HUD Borrowers listed on Exhibit 2 (collectively, the "**HUD Debtors**") shall provide the U.S. Department of Housing and Urban Development ("**HUD**") and the HUD Insured Lenders[4] with (a) monthly financial statements during the pendency of these Chapter 11 Cases, and (b) such additional information as HUD or any of the HUD Insured Lenders shall reasonably request from the Debtors. HUD and the HUD Insured Lenders shall have reasonable access to each HUD Debtor's business premises upon appointment and during normal business hours in order to review and evaluate the physical condition of any of their adequate protection collateral and/or to inspect the financial records and other records of the HUD Debtors concerning the operation of the HUD Debtors' businesses.

5.     White Oak Reporting. In addition to the reporting described above, the Debtors who lease facilities from the Granite Landlords (collectively, the "**Granite Debtors**") shall provide White Oak Healthcare Finance, LLC ("**White Oak**") with (a) monthly financial statements during the pendency of these Chapter 11 Cases, and (b) such additional information as White Oak shall reasonably request from the Debtors.

6.     Adequate Protection; Replacement Liens. The Administrative Agent and the Lenders are entitled, pursuant to Bankruptcy Code sections 361 and 363(e), to adequate protection of their interests in the Prepetition Collateral, including, but not limited to, the Cash Collateral, for any diminution in value of their interests in the Prepetition Collateral, including, without limitation, any such diminution resulting from the Debtors' use of Cash Collateral and

---

[4]  For the purposes of this Fourth Interim Order, the "**HUD Insured Lenders**" are Lancaster Pollard Mortgage Company; Berkadia Commercial Mortgage, LLC; and Red Capital Mortgage.

any other Prepetition Collateral and the imposition of the automatic stay pursuant to Bankruptcy Code section 362. As security for and solely to the extent of any diminution in the value of Prepetition Collateral from and after the Petition Date, calculated in accordance with Bankruptcy Code section 506(a) (a "**Diminution in Value**"), the Administrative Agent and the Lenders are hereby granted senior priority replacement liens upon all assets and property of the Debtors and their estates of any kind or nature whatsoever, now existing or hereafter acquired, including, without limitation, the Prepetition Collateral (the "**Replacement Liens**"), but excluding all claims and causes of action, and the products and proceeds thereof, arising under or permitted by Bankruptcy Code sections 502(d), 506(c), 544, 545, 547, 548, 549, and 550 and any other avoidance claims and causes of action arising under state or federal law; provided, however, that the Replacement Liens shall be subject and subordinate to (a) the Carve-Out (as defined below), and (b) the Prior Senior Liens. The Replacement Liens so granted are in addition to all security interests, liens, and rights of setoff existing in favor of the Administrative Agent or the Lenders on the Petition Date, and are and shall be valid, perfected, enforceable, and effective as of the Petition Date without any further action of the Debtors or the Administrative Agent and without the necessity of the execution, filing or recording of any financing statements, security agreements, deeds of trust, or other documents, or of obtaining control agreements over bank accounts. Notwithstanding the foregoing, the Administrative Agent is hereby authorized, but not required, to file or record any financing statements, security agreements, deeds of trust, or other documents in any jurisdiction or take any other action in order to validate and perfect the Replacement Liens granted hereunder.

7. <u>Adequate Protection; 507(b) Priority Claim</u>. The Administrative Agent and the Lenders are hereby granted an administrative claim with a priority equivalent to a claim under

Bankruptcy Code sections 364(c)(1), 503(b), and 507(b), on a dollar-for-dollar basis for and solely to the extent of any Diminution in Value, which administrative claim shall, among other things, have priority over all other costs and expenses of the kind specified in, or ordered pursuant to, Bankruptcy Code sections 105, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 1113, and 1114 (the "**Superpriority Administrative Claim**"), except for expenditures constituting the Carve-Out.

8.      <u>Bankruptcy Code Section 506(c) Waiver</u>. Except as set forth in <u>Paragraph 9</u> below, the entry of this Fourth Interim Order by the Court shall be a conclusive and binding determination on all parties (a) as to the scope, extent, perfection, validity and enforceability, in all respects, of the Administrative Agent's and the Lenders' security interests and liens in the Prepetition Collateral, including, without limitation, the Cash Collateral, and (b) that such liens and security interests shall not be subject to any claim under Bankruptcy Code section 552(b). The entry of an order by the Court approving the Cash Collateral Motion on a final basis (the "**Final Order**") shall be a conclusive and binding determination on all parties that the Administrative Agent's and the Lenders' security interests in the Prepetition Collateral, including, without limitation, the Cash Collateral, are and shall not be subject to any claim under Bankruptcy Code section 506(c), which claims shall be deemed to be waived at that time.

9.      <u>Adequate Protection; Fees and Expenses</u>. The Debtors are hereby authorized and directed to pay the reasonable and documented fees and expenses of the Administrative Agent's outside legal and financial advisors in accordance with the Budget on a regular monthly basis during these Chapter 11 Cases. The Administrative Agent shall provide copies of invoices to the Debtors, the U.S. Trustee and the Committee appointed in the cases, each of whom shall have ten (10) days to object to the fees and expenses sought under this paragraph. Notwithstanding the

7

foregoing, the Administrative Agent and the Lenders reserve their right to assert claims for the payment of additional amounts provided for in the Credit Financing Documents, and to seek additional or further adequate protection from the Court.

10. <u>Carve-Out</u>. The Replacement Liens and Superpriority Administrative Claim granted hereunder shall be junior and subordinate to the following fees and expenses (the "**Carve-Out**"): (a) all budgeted accrued but unpaid fees and expenses (the "**Professional Fees and Expenses**") of the health care ombudsman and the attorneys, accountants, or other professionals retained by the Debtors, health care ombudsman, and the Committee appointed in these Chapter 11 Cases under Bankruptcy Code sections 327 or 1103(a) (collectively, the "**Professionals**") incurred until the earlier of (1) May 31, 2019; (2) the entry of the Final Order, or (3) the delivery of a Termination Notice; (b) Professional Fees and Expenses in the maximum amount of $150,000 incurred after delivery of a Termination Notice; (c) reasonable out-of-pocket expenses of the individual members of the Committee; and (d) the payment of fees pursuant to 28 U.S.C. § 1930, provided that all such fees and expenses (other than the fees referenced in (d) herein), shall be subject to approval by a final order of the Court pursuant to Bankruptcy Code sections 326, 328, 330, 331, or 363. Notwithstanding anything to the contrary set forth herein, no Cash Collateral nor any portion of the Carve-Out may be used to prosecute actions, claims, demands or causes of action against the Administrative Agent or the Lenders, or to object to or contest in any manner, or to raise any defense in any pleading to the validity, perfection, priority, or enforceability of the Administrative Agent's or the Lenders' liens and security interests against the Prepetition Collateral or the Replacement Liens; <u>provided</u>, <u>however</u>, that the Cash Collateral may be used by the Committee and its professionals, to the extent provided in the Budget, to perform due diligence with respect to the validity, perfection priority

or enforceability of the Administrative Agent's liens and security interests against the Prepetition Collateral or the Replacement Liens. The Debtors and the Lender intend to seek a Final Order which shall contain a conclusive and binding determination on all parties that except for the Carve-Out, no costs or expenses of administration shall be imposed against the Administrative Agent or the Lenders or the Prepetition Collateral, including, without limitation, the Cash Collateral, under Bankruptcy Code sections 105 or 506(c), or otherwise.

11.    <u>Modifications to Findings of Fact and Conclusions of Law</u>. The admissions and stipulations contained in the Findings of Fact and Conclusions of Law are amended as follows:

    a.    <u>Paragraph H</u>. Paragraph H of the Findings of Fact and Conclusion of Law is hereby amended to the following:

> The liens and security interests granted to the Administrative Agent hereunder shall not prime or impair any validly perfected lien or security interest, senior to the liens and security interests of the Administrative Agent or the Lenders with respect to the Debtors' assets and properties in existence as of the Petition Date, if any, or validly perfected prepetition and postpetition liens related to Texas ad valorem property taxes, irrespective of when such liens arose (the "**Prior Senior Liens**"). The granting of the replacement liens, superpriority administrative claims and other agreements of the Debtors hereunder constitute adequate protection to the Administrative Agent and the Lenders for the Debtors' use of Cash Collateral for purposes of the Interim Order.

12.    <u>Parties in Interest Bound</u>.

    a.    The admissions and stipulations contained in <u>Paragraphs C</u> and <u>D</u> of the Findings of Fact and Conclusions of Law shall be binding on the Debtors under all circumstances and shall be binding upon all other parties-in-interest, including, without limitation, the Committee and any Chapter 7 or Chapter 11 trustee that may be appointed or elected on behalf of the Debtors' estates, except to the extent that (i) a party-in-interest has filed an adversary proceeding or contested matter challenging the validity, enforceability or priority of the Prepetition Obligations or the liens on the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action against the Administrative Agent or the Lenders on behalf of the Debtors' estates, no later than the date that is sixty (60) days from the date of the appointment of a Committee (the "**Challenge Deadline**"), <u>provided</u>, <u>however</u>, that the Challenge Deadline with respect

to the Committee, and only the Committee, shall be March 12, 2019, and (ii) the Court rules in favor of the plaintiff in any such timely filed adversary proceeding or contested matter. If any such adversary proceeding or contested matter is timely commenced as of the Challenge Deadline, the admissions contained in this Fourth Interim Order shall nonetheless remain binding and preclusive (as provided in this paragraph) except to the extent that such acknowledgments and agreements are expressly challenged in such adversary proceeding or contested matter.

b.  If no such adversary proceeding or contested matter is commenced as of the Challenge Deadline, then (i) the Prepetition Obligations shall constitute allowed secured claims, not subject to subordination (other than as set forth herein with respect to the Carve-Out and the Prior Senior Liens), or avoidance, for all purposes in these Chapter 11 cases and any subsequent Chapter 7 case, (ii) the liens securing the Prepetition Obligations on the Prepetition Collateral shall be deemed legal, valid, binding, duly authorized, perfected, not subject to defense, counterclaim, recharacterization, offset of any kind, or subordination, other than as set forth herein, and otherwise unavoidable, (iii) the Prepetition Obligations, the liens on the Prepetition Collateral, and the Replacement Liens shall not be subject to any other or further challenge by any party-in-interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto, and (iv) the Administrative Agent and the Lenders shall be deemed released from any and all rights, claims, causes of action and liabilities arising from or in connection with the Prepetition Obligations, the Prepetition Collateral, the Credit Facility Documents and/or the extension of credit or other financial accommodations thereunder or with respect thereto.

13.  <u>Events of Default</u>. Each of the following shall constitute an event of default ("**Event of Default**") with respect to the Debtors' authorization to use Cash Collateral hereunder, unless otherwise waived in writing by the Administrative Agent:

a.  entry of an order converting any of these Chapter 11 cases to a case under Chapter 7 of the Bankruptcy Code;

b.  entry of an order dismissing any of these Chapter 11 cases;

c.  entry of an order appointing or directing the election of a trustee or an examiner with expanded powers for any of the Debtors under Bankruptcy Code sections 1104 or 1106(b);

    d.        without the prior written consent of the Administrative Agent, the entry of any order (or other judicial action which has the effect of) amending, reversing, supplementing, staying the effectiveness of, vacating, or otherwise modifying this Fourth Interim Order;

    e.        any of the Debtors uses Cash Collateral for any purpose or in a manner other than as permitted in this Fourth Interim Order and in the Budget or otherwise fails to comply with any term of this Fourth Interim Order;

    f.        entry of an order by the Bankruptcy Court authorizing relief from stay by any person (other than the Administrative Agent or the Lenders) on or with respect to all or any portion of the Prepetition Collateral with a value in excess of $50,000;

    g.        the filing by any of the Debtors of any pleading objecting to or seeking to challenge the Administrative Agent's or the Lenders' claims with respect to the Prepetition Obligations or the Administrative Agent's lien upon Cash Collateral or the Prepetition Collateral or otherwise asserting rights, claims or causes of action against the Administrative Agent or the Lenders with respect to the Prepetition Obligations;

    h.        the filing by any of the Debtors of any debtor-in-possession financing pleadings or any documents pertaining to a debtor-in-possession financing not acceptable to and supported by the Administrative Agent;

    i.        the filing by any of the Debtors of any bid procedure and/or sale documents relating to the sale of the Prepetition Collateral, postpetition collateral subject to the Replacement Lien, and/or Cash Collateral not acceptable to and supported by the Administrative Agent; or

    j.        any of the Debtors voluntarily or involuntarily dissolves or is dissolved, liquidates or is liquidated or ceases the operation of any material portion of its business.

14.    <u>Termination Notice</u>. Immediately upon the occurrence or existence of an Event of Default, the Administrative Agent shall be authorized to issue a notice (a "**Termination Notice**") thereof which will be filed with the Court with copies to the Debtors, their counsel, counsel to the Committee and the U.S. Trustee, which Termination Notice may be delivered by electronic mail. The court will consider such Termination Notice on an expedited basis.

15. <u>Failure of Adequate Protection</u>. Nothing herein shall constitute a waiver, release or modification of the rights of the Administrative Agent or the Lenders to assert a claim under Bankruptcy Code sections 364(c) and 507(b).

16. <u>Automatic Stay</u>. The automatic stay under Bankruptcy Code section 362(a) shall be, and it hereby is, vacated and modified to the extent necessary to permit (i) the Administrative Agent and the Lenders to receive and apply payments made pursuant to this Fourth Interim Order in accordance with the terms and provisions of this Fourth Interim Order and the Budget, (ii) to permit the Administrative Agent to send the Termination Notice (as defined herein) and to exercise any rights and remedies or other action authorized or contemplated by this Fourth Interim Order, subject to the terms and conditions contained herein, and (iii) for HUD to send any required notices pursuant to HUD programs, statutes, regulations, policies, procedures, rules or any Regulatory Agreements, subject to the terms and conditions contained herein. For the avoidance of doubt, the automatic stay would not apply to any governmental unit's use or implementation of regulatory or police powers.

17. <u>Deemed Request for Stay Relief</u>. This Fourth Interim Order shall be deemed to constitute a request by the Administrative Agent and the Lenders for relief from the automatic stay with respect to the Prepetition Collateral (but solely to the extent provided by this Fourth Interim Order), for adequate protection for the use of Cash Collateral as of the Petition Date, and shall suffice for all purposes of Bankruptcy Code section 507(b).

18. <u>CMS Reservation of Rights</u>. Notwithstanding anything in this Fourth Interim Order or the Findings of Fact and Conclusions of Law, nothing shall (a) restrain, limit or impact any action by the U.S. Department of Health & Human Services, the Centers for Medicare and Medicaid Services or Medicare Administrative Contractors to implement the Medicare program;

(b) shall affect, modify or impair any governmental unit's recoupment or setoff rights, claims, or defenses; (c) be construed to affect the exclusive jurisdiction of the U.S. Department of Health & Human Services to adjudicate and pay Medicare claims in the ordinary course.

19. <u>HHSC Reservation of Rights</u>. For the avoidance of doubt, nothing in this Order shall restrain, limit or impact any action by the Texas Health and Human Services Commission ("**HHSC**") to implement the Medicaid program in the State of Texas. Nothing contained herein shall affect, modify or impair any recoupment or setoff rights, claims, or defenses of any governmental unit, including but not limited to the Texas Health and Human Services Commission.

20. <u>Garnishment Funds</u>. The Administrative Agent and Debtors agree to leave in place the monetary hold on one of the Debtors' accounts in the amount of approximately $314,738.98 (the "**Garnishment Funds**") until the Final Hearing. All rights of PharMerica and the Debtors are preserved until the Final Hearing.

21. <u>Atlas Reservation of Rights</u>. The Debtors shall segregate all postpetition funds attributable to the services provided by Atlas Dental Management, LLC ("**Atlas**"). Atlas and the Debtors reserve all rights related to lien priority, segregation, accounting, ownership, and distribution of monies received for dental services provided until the Final Hearing.

22. <u>Texas Nursing Reservation of Rights</u>. The Debtors shall segregate all postpetition funds attributable to the services provided by Texas Nursing Home Management Solutions, LLC, dba Nursing Home Dental Care ("**Texas Nursing**"). Texas Nursing and the Debtors reserve all rights related to lien priority, segregation, accounting, ownership, and distribution of monies received for dental services provided until the Final Hearing.

13

23. <u>OnSite Reservation of Rights</u>. The Debtors shall segregate all postpetition funds attributable to the services provided by OnSite Dentists of Texas ("**OnSite**"). OnSite and the Debtors reserve all rights related to lien priority, segregation, accounting, ownership, and distribution of monies received for dental services provided until the Final Hearing.

24. <u>HUD Reservation of Rights</u>. Notwithstanding anything in this Fourth Interim Order or the Findings of Fact and Conclusions of Law, nothing shall (1) restrain, limit or impact any action by HUD to implement HUD programs; (2) affect, modify or impair HUD's rights, claims or defenses with respect to any of the following: (a) any Regulatory Agreement executed between HUD and the Debtors, and (b) any Regulatory Agreement executed between HUD and any non-Debtor, including, but not limited to, the owners of the real property from which the Debtors operate their facilities and businesses; and (3) be construed to affect the exclusive jurisdiction of HUD with respect to enforcement actions. Without limiting the foregoing, for the avoidance of doubt, HUD's rights, claims and defenses are preserved with respect to filing any claim or administrative expense, and bringing any action or proceeding pursuant to applicable nonbankruptcy law.

25. <u>SSA reservation of Rights</u>. Notwithstanding anything in this Fourth Interim Order or the Findings of Fact and Conclusions of Law, nothing shall (1) restrain, limit, or impact any action by the Social Security Administration ("**SSA**") to implement SSA programs, including, but not limited to, implementing representative payee statutes, rules, policies and procedures; (2) in the postpetition period, create a lien or encumbrance of any type on Social Security benefits held by the Debtors on behalf of beneficiaries; and (3) be construed to affect the exclusive jurisdiction of SSA with respect to enforcement actions.

67881628.5

26.   <u>No Duty to Monitor Compliance</u>. The Administrative Agent and HUD may assume that the Debtors will comply with all terms and conditions of this Fourth Interim Order and the Budget and shall not (a) be obligated to ensure or monitor the Debtors' compliance with any financial covenants, formulae or other terms and conditions of this Fourth Interim Order or the Credit Facility Documents, (b) be obligated to pay (directly or indirectly from Cash Collateral or otherwise) any expenses incurred or authorized to be incurred pursuant to this Fourth Interim Order or in connection with the operation of the Debtors' businesses, or (c) be obligated to ensure or monitor that Cash Collateral exists to pay such expenses.

27.   <u>No Waiver</u>. The failure of the Administrative Agent or the Lenders to seek relief or otherwise exercise their rights and remedies under this Fourth Interim Order or the Credit Facility Documents, as applicable, shall not constitute a waiver of any of Administrative Agent's or Lenders' rights hereunder, thereunder or otherwise.

28.   <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Fourth Interim Order does not create any rights for the benefit of any third party, creditor, equity holders or any direct, indirect or incidental beneficiary.

29.   <u>Section 552(b)</u>. In light of their agreement to subordinate their liens and superpriority claims to the Carve-Out, the Debtors and the Lender intend that the Final Order shall provide that the Administrative Agent and the Lenders shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Administrative Agent or the Lenders with respect to products and proceeds of any of the Prepetition Collateral.

30.   <u>Effect of Order</u>. This Fourth Interim Order shall be effective upon its entry and not subject to any stay (notwithstanding anything to the contrary contained in the Bankruptcy

Rules, including Bankruptcy Rule 4001(a)(3)). The provisions of this Fourth Interim Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered (a) confirming any plan of reorganization; (b) dismissing any one of these Chapter 11 cases; (c) converting any one of these Chapter 11 cases to any other chapter under the Bankruptcy Code; (d) withdrawing of the reference of any one of these Chapter 11 cases from the Court; and (e) providing for abstention from handling or retaining of jurisdiction of any one of these Chapter 11 cases in the Court.

31.     <u>Amendments and Waivers</u>. Any amendment, modification, supplement or waiver of any provision in this Fourth Interim Order shall be in writing, signed by the Debtors and the Administrative Agent, and approved by the Court on appropriate notice by the Debtors to all parties in interest.

32.     <u>The Administrative Agent Not in Control of Debtors' Operations</u>. With respect to the Debtors' use of Cash Collateral pursuant to this Fourth Interim Order and any subsequent interim or final order, or any actions reasonably related to this Fourth Interim Order, the Motion or the Credit Facility Documents, neither the Administrative Agent, nor its respective agents, employees, attorneys or representatives, shall have any liability to any third party (including creditors of the Debtors) and shall not be deemed to be in control of the Debtors' operations or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

33.     <u>Order Governs</u>. In the event of any inconsistency between the provisions of this Fourth Interim Order and the Motion, the provisions of this Fourth Interim Order shall govern.

67881628.5

34. <u>Adequate Protection for CCP</u>. The CCP Landlords[5] have asserted liens in certain (but not all) of the Debtors' accounts receivable and deposit accounts that are subordinate in all respects to the interests of the Administrative Agent and the Lenders (the "**CCP Subordinated Liens**") pursuant to that certain Second Amended and Restated Intercreditor Agreement dated April 28, 2017 by and among Private Bank, CCP Finance I, LLC and certain of the Debtors (as may be amended from time to time, the "**CCP Intercreditor Agreement**"). As security for and solely to the extent of any diminution in the value of the CCP Subordinated Liens from and after the Petition Date, calculated in accordance with Bankruptcy Code section 506(a) (a "**Diminution in Value**"), CCP is hereby granted junior priority replacement liens upon the assets and property of the Debtors and their estates to the same extent and priority as existed as of the Petition Date and in all respects subject to the CCP Intercreditor Agreement and the rights of the Administrative Agent and the Lenders as set forth herein (the "**CCP Subordinated Replacement Liens**"). For the avoidance of doubt, the CCP Subordinated Replacement liens expressly exclude all claims and causes of action, and the products and proceeds thereof, arising under or permitted by Bankruptcy Code sections 502(d), 506(c), 544, 545, 547, 548, 549, and 550 and any other avoidance claims and causes of action arising under state or federal law, and, in addition to the subordination to the liens and rights of the Administrative Agent and the Lenders, are subject and subordinate to (a) the Carve-Out, and (b) the Prior Senior Liens.

35. <u>Adequate Protection for Berkadia</u>. Berkadia Commercial Mortgage LLC has asserted liens in certain (but not all) of the Debtors' accounts receivable and deposit accounts that are subordinate in all respects to the interests of the Administrative Agent and the Lenders

---

[5] "**CCP Landlords**" means, collectively, Sabra Health Care REIT, Inc., Sabra Texas Holdings, L.P., Sabra Texas Holdings II, L.P., CCP Pilgrim Manor 7610 LLC, CCP Spring Lake 7611 LLC, CCP Spring Lake VL 7611 LLC, CCP Bradford 7612 LLC, CCP Guest House 7613 LLC, CCP Alpine 7614 LLC, CCP Colonial Oaks 7615 LLC, CCP Shreveport Manor 7616 LLC, CCP Booker T. Washington 7617 LLC, and CCP Finance I LLC.

(the "**Berkadia Subordinated Liens**") pursuant to that certain Intercreditor Agreement dated as of December 15, 2017 by and among the Administrative Agent, Berkadia, and certain of the Debtors (as may be amended from time to time, the "**Berkadia Intercreditor Agreement**"). As security for and solely to the extent of any Diminution in Value of the Berkadia Subordinated Liens from and after the Petition Date, Berkadia is hereby granted junior priority replacement liens upon the assets and property of the Debtors and their estates to the same extent and priority as existed as of the Petition Date and in all respects subject to the Berkadia Intercreditor Agreement and the rights of the Administrative Agent and the Lenders as set forth herein (the "**Berkadia Subordinated Replacement Liens**"). For the avoidance of doubt, the Berkadia Subordinated Replacement liens expressly exclude all claims and causes of action, and the products and proceeds thereof, arising under or permitted by Bankruptcy Code sections 502(d), 506(c), 544, 545, 547, 548, 549, and 550 and any other avoidance claims and causes of action arising under state or federal law, and, in addition to the subordination to the liens and rights of the Administrative Agent and the Lenders, are subject and subordinate to (a) the Carve-Out, and (b) the Prior Senior Liens.

36.    <u>Adequate Protection for Lancaster Pollard</u>. Lancaster Pollard Mortgage Company LLC ("**Lancaster Pollard**") has asserted liens in certain (but not all) of the Debtors' accounts receivable and deposit accounts that are subordinate in all respects to the interests of the Administrative Agent and the Lenders (the "**Lancaster Pollard Subordinated Liens**") pursuant to that certain Intercreditor Agreement dated as of June 21, 2017 by and among the Administrative Agent, Lancaster Pollard, and certain of the Debtors (as may be amended from time to time, the "**Lancaster Pollard Intercreditor Agreement**"). As security for and solely to the extent of any Diminution in Value of the Lancaster Pollard Subordinated Liens from and

18

after the Petition Date, Lancaster Pollard is hereby granted junior priority replacement liens upon the assets and property of the Debtors and their estates to the same extent and priority as existed as of the Petition Date and in all respects subject to the Lancaster Pollard Intercreditor Agreement and the rights of the Administrative Agent and the Lenders as set forth herein (the "**Lancaster Pollard Subordinated Replacement Liens**"). For the avoidance of doubt, the Lancaster Pollard Subordinated Replacement liens expressly exclude all claims and causes of action, and the products and proceeds thereof, arising under or permitted by Bankruptcy Code sections 502(d), 506(c), 544, 545, 547, 548, 549, and 550 and any other avoidance claims and causes of action arising under state or federal law, and, in addition to the subordination to the liens and rights of the Administrative Agent and the Lenders, are subject and subordinate to (a) the Carve-Out, and (b) the Prior Senior Liens.

37.     Pursuant to agreement between the Debtors and the Administrative Agent, on behalf of the Lenders, the Revolving Loan Commitment under the Credit and Security Agreement, dated as of June 21, 2017 (the "**HUD Credit Agreement**") is hereby reduced to $9,000,000.00, and the Revolving Loan Commitment under the Amended and Restated Credit and Security Agreement, dated as of January 12, 2017 (the "**non-HUD Credit Agreement**") is hereby reduced to $26,000,000.00.

38.     <u>Final Hearing</u>. The final hearing on the Motion will be scheduled for May 23, 2019, at 9:30 a.m. CST (the "**Final Hearing**"). The Debtors will provide notice of the Final Hearing by first class mail to (a) counsel for the Administrative Agent, (b) counsel for the Committee, (c) the Office of the United States Trustee, (d) all parties who have filed requests for notice under Bankruptcy Rule 2002, (e) the holders of the forty (40) largest unsecured claims against the Debtors on a consolidated basis, and (g) such other parties as this Court may order.

**###End of Order###**

Ordered submitted by:


**POLSINELLI PC**

*/s/      Trey A. Monsour*
Trey A. Monsour
State Bar No. 14277200
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

-and-

Jeremy R. Johnson (*Pro Hac Vice* Pending)
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

*Counsel to the Debtors and Debtors in*
*Possession*

## Exhibit 1

Debtors[1]

## NON-HUD BORROWERS

Alief SCC LLC
Bandera SCC LLC
Baytown SCC LLC
Booker SCC LLC
Bossier SCC LLC
Bradford SCC LLC
Brownwood SCC LLC
Canopy Medical Staffing LLC
Capitol SCC LLC
CapWest - Texas, LLC
Cedar Bayou SCC LLC
Clear Brook SCC LLC
Colonial SCC LLC
Community SCC LLC
Crowley SCC LLC
CTLTC Real Estate, LLC (formerly CTLTC Merger I, LLC)
Green Oaks SCC LLC
Harbor Lakes SCC LLC
Harden Non-HUD Holdco, LLC
Hewitt SCC LLC
HHC Portland AL, LP, a Texas limited partnership
HILL COUNTRY SCC LLC
Holland Lake SCC LLC
Hunters Pond SCC LLC
JACKSONVILLE SCC LLC
La Hacienda SCC LLC
MAJOR TIMBERS, LLC
Marlandwood East SCC LLC
Meadow Creek SCC LLC
MIDLAND SCC LLC
Mill Forest Road SCC LLC
Mission SCC LLC
Mystic Park SCC LLC
Normandie SCC LLC
Onion Creek SCC LLC
Pasadena SCC LLC
PECAN TREE SCC LLC
Pecan Valley SCC LLC
PM Management – Babcock NC, LLC

---

[1] Each a Texas limited liability company, unless otherwise noted.

PM Management – Cedar Park NC, LLC
PM Management – Corsicana NC II, LLC
PM Management – Corsicana NC III, LLC
PM Management – Corsicana NC, LLC
PM Management – El Paso I NC, LLC
PM Management – Garland AL, LLC
PM Management – Georgetown AL, LLC
PM Management – Georgetown NC, LLC
PM Management – Golden Triangle NC I, LLC
PM Management – Golden Triangle NC II, LLC
PM Management – Golden Triangle NC III, LLC
PM Management – Golden Triangle NC IV, LLC
PM Management – Pflugerville AL, LLC
PM Management – Portfolio V NC, LLC
PM Management – Portfolio VII NC, LLC
PM Management – Round Rock AL, LLC
PM Management – San Antonio AL, LLC
PM Management – San Antonio NC, LLC
PM Management-Corpus Christi NC II, LLC
PM Management-Corpus Christi NC III, LLC
PM Management-Portland AL, LLC
PM Management-Portland NC, LLC
PM Management-Sinton NC, LLC
Presidential SCC LLC
Redoak SCC LLC
Riverside SCC LLC
Rowlett SCC LLC
Ruston SCC LLC
SAN ANGELO SCC LLC
SCC Edinburg LLC
SCC Senior Care Investments LLC
SCC Socorro LLC
Senior Care Center Management LLC
Senior Care Centers Home Health LLC
Senior Rehab Solutions LLC, a Delaware limited liability company
Shreveport SCC LLC
Solutions 2 Wellness LLC
South Oaks SCC LLC
Springlake ALF SCC LLC
Springlake SCC LLC
Stallings Court SCC LLC
Stonegate SCC LLC
TRISUN Healthcare, LLC
Valley Grande SCC LLC
West Oaks SCC LLC
Western Hills SCC LLC

2

Weston Inn SCC LLC
Westover Hills SCC LLC
Windmill SCC LLC

**NON-HUD GUARANTOR**

Senior Care Centers, LLC, a Delaware limited liability company

**NON-HUD PLEDGOR**

Senior Care Centers, LLC, a Delaware limited liability company

**HUD BORROWERS**

Hearthstone SCC LLC
Crestwood SCC LLC
Park Bend SCC LLC
Sagebrook SCC LLC
Stonebridge SCC LLC
Corpus Christi SCC LLC
Round Rock SCC LLC
Brinker SCC LLC
Beltline SCC LLC
Fairpark SCC LLC
HG SCC LLC
Lakepointe SCC LLC
Mullican SCC LLC
Pleasantmanor SCC LLC
RW SCC LLC
Vintage SCC LLC
Whitesboro SCC LLC
PM Management – Fredericksburg NC, LLC
Marlandwood West SCC LLC
Summer Regency SCC LLC
Windcrest SCC LLC
Wurzbach SCC LLC
PM Management – Allen NC, LLC
PM Management – Denison NC, LLC
PM Management – Frisco NC, LLC
PM Management – Garland NC, LLC
PM Management – Lewisville NC, LLC
PM Management – Portfolio VI NC, LLC

**HUD GUARANTOR**

Senior Care Centers, LLC, a Delaware limited liability company

67881628.5

**<u>HUD PLEDGORS</u>**

Senior Care Centers, LLC, a Delaware limited liability company
Harden Non-HUD Holdco, LLC

67881628.5

## **Exhibit 2**

Budget

CONSOLIDATED Cash Flow (13-Week) Budget vs. Actual

Pre Petition Outstanding Checks/Payments

| | Actual | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending Friday | 5-Apr | 12-Apr | 19-Apr | 26-Apr | 3-May | 10-May | 17-May | 24-May | 31-May | 7-Jun | 14-Jun | 21-Jun | 28-Jun | 5-Jul |
| **Beginning Bank Balance** | 31,780,441 | 26,535,107 | 12,923,729 | 17,335,914 | 15,122,637 | 11,599,557 | 3,067,082 | 7,904,038 | 7,881,021 | 9,730,824 | 2,940,489 | 5,007,242 | 9,983,400 | 7,842,601 |
| **Operating Cash Receipts** | | | | | | | | | | | | | | |
| Medicare | 415,019 | 315,936 | 458,106 | 9,296,000 | 417,638 | 520,230 | 402,929 | 7,538,581 | 1,887,381 | 418,355 | 411,679 | 1,044,042 | 6,578,750 | 226,250 |
| Medicaid | 4,269,321 | 1,728,000 | 4,398,999 | 2,939,733 | 1,662,409 | 2,729,744 | 4,356,724 | 4,481,517 | 2,963,959 | 2,493,000 | 3,884,224 | 3,897,500 | 2,593,517 | 2,199,254 |
| Private & Insurance | 4,510,134 | 4,916,363 | 2,768,753 | 2,123,647 | 2,560,230 | 5,104,992 | 2,866,556 | 2,364,592 | 2,541,384 | 3,266,709 | 3,572,130 | 2,042,658 | 1,753,549 | 3,375,946 |
| Ancillary - SRS | 247,139 | 337,500 | 337,500 | 337,500 | 187,500 | 187,500 | 337,500 | 337,500 | 337,500 | 285,000 | 285,000 | 380,000 | 427,500 | 277,500 |
| Ancillary - MBS | - | | | | | | | | | | | | | |
| Asset Disposition | - | | | | | | | | | | | | | |
| Other Receipts | (1,089,264) | | | | | | | | | | | | | |
| **Total Operating Cash Receipts** | 8,352,348 | 7,297,799 | 7,963,358 | 14,696,879 | 4,827,776 | 8,542,465 | 7,963,709 | 14,722,190 | 7,730,223 | 6,463,063 | 8,153,034 | 7,364,200 | 11,353,316 | 6,078,950 |
| **Operating Cash Disbursements** | | | | | | | | | | | | | | |
| Facility Rent | 2,166,391 | | | | 4,031,792 | | | | 2,731,792 | | | | | 2,463,335 |
| Payroll & Taxes | 5,808 | 15,105,404 | 23,500 | 11,114,213 | 17,250 | 10,914,213 | 17,250 | 10,914,213 | 20,700 | 10,244,213 | 20,700 | 20,700 | 10,244,213 | 1,900,700 |
| HBT Insurance Trust Funding | | 503,465 | | 503,465 | | 503,465 | | 426,215 | | | 348,965 | | 348,965 | |
| HBT Insurance Trust Funding (Employee Funding) | | 423,459 | | 423,459 | | 423,459 | | 358,209 | | | 292,959 | | 292,959 | |
| 401K Funding (Employee Funded) | 1,695 | 115,100 | | 115,100 | | 115,100 | | 115,100 | | | 115,100 | | 115,100 | |
| Colonial Insurance (Employee Funded) | | 59,775 | | 59,775 | | 53,675 | | 53,675 | | | 53,675 | | 53,675 | |
| MEC Insurance Funding | | 83,483 | | 83,483 | | 74,783 | | 74,783 | | | 74,783 | | 77,050 | |
| ADP Insurance Remittance (Employee Funded) | | 89,535 | | 89,535 | | 80,235 | | 80,235 | | | 80,235 | | 82,550 | |
| Travel Related Expenses | 60,924 | 157,796 | 67,279 | 64,975 | 67,279 | 64,975 | 164,290 | 64,975 | 64,371 | 65,008 | 142,279 | 65,008 | 65,008 | 65,008 |
| Pharmacy (Omnicare) | | 493,950 | 430,950 | 430,950 | 437,500 | 390,250 | 390,250 | 347,725 | 309,453 | 309,453 | 275,007 | 275,007 | 275,007 | 275,007 |
| HSG | 1,402,402 | 842,957 | 842,957 | 842,957 | 845,000 | 795,000 | 795,000 | 795,000 | 795,000 | 745,000 | 745,000 | 745,000 | 745,000 | 695,000 |
| Patient Refunds (incl. Dental/PASRR) | 123,260 | 148,513 | 148,513 | 388,513 | 388,513 | 388,513 | 388,513 | 388,513 | 388,513 | 388,513 | 388,513 | 388,513 | 388,513 | 148,513 |
| A/P - COD or COA Payments | 226,808 | 354,335 | 385,594 | 353,258 | 369,271 | 318,235 | 351,994 | 317,158 | 357,862 | 295,981 | 312,334 | 274,084 | 326,344 | 239,700 |
| Accounts Payable | 1,282,121 | 1,121,905 | 845,879 | 813,624 | 453,750 | 979,392 | 741,956 | 671,905 | 637,730 | 547,730 | 847,230 | 512,230 | 417,230 | 342,230 |
| Taxes | | | | | 450,000 | | | | | | 1,000,000 | | | |
| Corporate Office Lease | 2,127,081 | | | | 88,000 | | | | 88,000 | | | | | 88,000 |
| Repairs and Maintenance | | | | 100,000 | | | | 100,000 | | | | | | |
| Payable Variance Adjustment | - | | | | | | | | | | | | | |
| Other Post Petition COD AP Payments | | | | | | | | | | | | | | |
| **Total Disbursements** | 7,396,492 | 19,499,677 | 2,744,673 | 15,383,307 | 7,548,356 | 15,101,296 | 2,849,254 | 14,707,707 | 5,393,421 | 12,595,898 | 4,696,781 | 2,280,543 | 13,431,615 | 6,217,493 |
| **Net Operating Cash Flow** | 955,857 | (12,201,878) | 5,218,685 | (686,428) | (2,720,580) | (6,558,831) | 5,114,455 | 14,483 | 2,336,803 | (6,132,834) | 3,456,253 | 5,083,657 | (2,078,299) | (138,543) |
| **Non-Operating Cash (Receipts) Disbursements** | | | | | | | | | | | | | | |
| Changes in Borrowing Base | - | | | | | | | | | | | | | |
| DIP/Lender Facility Adjust | 1,000,000 | | | | | | | | | | | | | |
| Bank Fees | 49,931 | | 50,000 | | | 50,000 | | | | | | 50,000 | | |
| Board Fees | | | | | 100,000 | | | | | 100,000 | | | | 100,000 |
| Interest Payments | 151,260 | | | | 175,000 | | | | | 150,000 | | | | 150,000 |
| Insurance Deductibles | | | | | 100,000 | | | | | 100,000 | | | | 100,000 |
| Sale Escrow/Remittance | 5,000,000 | | | | | | | | | | | | | |
| Other Non-Operating Disbursements | | 5,000 | 175,000 | 5,000 | | (10,000) | 175,000 | 5,000 | 5,000 | (5,000) | | | 5,000 | 5,000 |
| **Total Non-Operating Cash Disbursements** | 6,201,190 | 5,000 | 225,000 | 5,000 | 380,000 | (10,000) | 225,000 | 5,000 | 5,000 | 345,000 | 5,000 | 55,000 | 5,000 | 355,000 |
| **Bankruptcy Disbursements** | | | | | | | | | | | | | | |
| US Trustee/Filing Fees | - | | | 895,000 | | | | | | | | | | 750,000 |
| Ordinary Course Professionals | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Board Counsel | | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 |
| Other | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Investment Banker | | | | | 25,000 | | | | | 25,000 | | | 25,000 | |
| Utility Deposit | | | | | | | | | | 200,000 | | | | |
| Insurance | | | | | | 433,957 | | | | | | | | |
| **Total Bankruptcy Disbursements** | - | 32,500 | 32,500 | 927,500 | 57,500 | 466,457 | 32,500 | 32,500 | 57,500 | 232,500 | 32,500 | 32,500 | 57,500 | 782,500 |
| **Professional Fees** | | | | | | | | | | | | | | |
| Debtor | | 438,000 | 324,000 | 144,349 | | 603,187 | | | 249,500 | | 438,000 | | | |
| CRO | | | | | 80,000 | | | | | 80,000 | | | | |
| Lender | | 507,000 | | | 507,000 | | | | | | 507,000 | | | |
| UCC | | 407,000 | 225,000 | | 110,000 | 407,000 | | | | | 407,000 | | | |
| PR Firm | | 20,000 | | | | | 20,000 | | | | | 20,000 | | |
| Ombudsmen | | | | | 30,000 | | | | 30,000 | | | | | |
| Claims Agent | | | | 450,000 | | 145,000 | | | | 145,000 | | | | |
| **Total Professional Fees** | - | 1,372,000 | 549,000 | 594,349 | 365,000 | 1,517,187 | 20,000 | - | 424,500 | 80,000 | 1,352,000 | 20,000 | - | - |
| **Net Cash Flow** | (5,245,334) | (13,611,378) | 4,412,185 | (2,213,277) | (3,523,080) | (8,532,475) | 4,836,955 | (23,017) | 1,849,803 | (6,790,334) | 2,066,753 | 4,976,157 | (2,140,799) | (1,276,043) |
| **Ending Book Balance** | 26,535,107 | 12,923,729 | 17,335,914 | 15,122,637 | 11,599,557 | 3,067,082 | 7,904,038 | 7,881,021 | 9,730,824 | 2,940,489 | 5,007,242 | 9,983,400 | 7,842,601 | 6,566,558 |

NOTE: This does NOT reflect any repayments from Love and Key Bank facilities for payments made on behalf of those facilities (approx $515k as of 3/15)

Privileged Confidential