Trey A. Monsour
State Bar No. 14277200
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
Polsinelli PC
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Senior Care Centers, LLC, *et al.*,[1] | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## DEBTORS EMERGENCY MOTION FOR AN ORDER TO SHOW CAUSE

Senior Care Centers, LLC and its affiliated debtors and debtors in possession (the

"**Debtors**") hereby move (this "**Motion**") for entry of an emergency order to show cause,

substantially in the form of <u>Exhibit A</u> attached hereto (the "**Show Cause Order**"), requiring the

MCOs (as defined below) and HHSC (as defined below) to appear before the Court and

demonstrated cause why they should not be sanctioned and held in civil contempt for their

ongoing willful violations of the automatic stay in failing to release Medicaid funds due to the

Debtors. In support of this Motion, the Debtors rely upon the *Declaration of Kevin O'Halloran,*

*Chief Restructuring Officer of Senior Care Centers, LLC, in Support of Chapter 11 Petitions and*

---

[1] The Debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 569] and may also be found on the Debtors' claims agent's website at https://omnimgt.com/SeniorCareCenters. The location of the Debtors' service address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

*First Day Pleadings* [Docket No. 25] (the "**First Day Declaration**"). In further support of this Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The Debtors consent to entry of a final order under Article III of the United States Constitution.

2. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

A.     **General Background**

3. On December 4, 2018 (the "**Petition Date**"), the Debtors filed voluntary petitions commencing cases for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").[2]

4. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration and fully incorporated herein by reference.

5. The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has been requested in the Chapter 11 Cases.

6. On December 14, 2018, the Office of the United States Trustee for the Northern District of Texas appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "**Committee**").

---

[2] Certain additional Debtors filed voluntary petitions for relief on January 21, 2019 and May 20, 2019.

7.      As set forth in the First Day Declaration, the Debtors operate skilled nursing facilities ("**SNFs**"), assisted living facilities ("**ALFs**") and hospice facilities (together with the SNFs and ALFs, the "**Facilities**") throughout Louisiana and Texas. Throughout these Chapter 11 Cases, the Debtors have rejected a number of unexpired leases and executed operations transfer agreements ("**OTAs**") to transition Facilities to new operators. As part of the transition of Facilities, a change of ownership ("**CHOW**") occurs.

8.      Pursuant to the various OTAs, approximately forty-five (45) Facilities were transitioned to new operators since April 1, 2019 (the "**CHOW Facilities**").

**B.      Chapter 11 Cases Developments**

9.       On the Petition Date, the Debtors filed the Cash Collateral Motion. The Court held a hearing on the Cash Collateral Motion on December 6, 2018. Thereafter, the Court entered the *Findings of Fact and Conclusions of Law Regarding the Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Docket No. 74] (the "**Interim Cash Collateral Findings of Fact and Conclusions of Law**") and *Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Docket No. 75] (the "**First Interim Cash Collateral Order**").

10.      Subsequently, the Court held a number of hearings to consider the Cash Collateral Motion on an interim basis. *See Second Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Docket No. 431] (the "**Second Interim Cash Collateral Order**"); *Third Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing,*

*and (V) Granting Related Relief* [Docket No. 673] (the "**Third Interim Cash Collateral Order**"); and *Fourth Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Docket No. 962] (the "**Fourth Interim Cash Collateral Order**", and together with the First Interim Order, Second Interim Order, and Third Interim Order, the "**Interim Cash Collateral Orders**").

11.     Following entry of the First Interim Cash Collateral Order, the Debtors received a number objections from dental providers including Atlas Dental Management, LLC ("**Atlas**"), OnSite Dentists of Texas ("**OnSite**"), and Texas Nursing Home Management ("**Texas Nursing**", and together with Atlas and OnSite, the "**Dental Providers**"). *See Limited Objection of Atlas Dental Management, LLC to Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II), Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Docket No. 152]; *Limited Objection of Onsite Dentists of Texas to Debtors' Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Setting a Final Hearing; and (V) Granting Related Relief* [Docket No. 293]; *Limited Objection of Texas Nursing Home Management Solutions, LLC to Debtors' Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Setting a Final Hearing; and (V) Granting Related Relief* [Docket No. 344] (collectively, the "**Dental Providers Objections**"). Among other things, the Dental Provider Objections alleged that Medicaid Incurred Medical Expense funds ("**IME Funds**") due to the Dental Providers, including prepetition IME Funds, were not property of the Debtors' estates, the Debtors had no interest in such IME Funds, and that CIBC

Bank USA, as Administrative Agent for itself and for CIT Finance LLC; Fifth Third Bank, successor in interest to MB Financial Bank, N.A.; Bankers Trust Company; Wells Fargo Bank, N.A.; and Compass Bank ("**CIBC**" or the "**Administrative Agent**", and collectively with the other lenders, the "**Lenders**") had no lien on such IME Funds.

12. The Debtors and CIBC worked with the Dental Providers to reach consensual language in the Second Interim Cash Collateral Order, and all subsequent Interim Cash Collateral Orders. The Debtors, CIBC, and the Dental Providers agreed to segregate all postpetition IME Funds attributable to the services provided by the Dental Providers. *See,* Second Interim Cash Collateral Order, ¶¶ 19-21. Additional reservation of rights language was included for other parties, including governmental units. *See, e.g.*, Second Interim Cash Collateral Order, ¶¶ 16, 17, and 22.

13. Between December and February 2019, the Debtors and the Dental Providers attempted to reach resolution related to the prepetition IME Funds the Dental Providers claimed the Debtors and CIBC had no interest in. Unfortunately, a consensual resolution was not reached and on February 17, 2019, the Dental Providers filed adversary complaints against the Debtors and CIBC (together, the "**Dental Providers Adversary Complaints**"). *See* Docket Nos. 514 and 515.

14. Simultaneously, the Debtors and the Texas Health and Human Services Commission ("**HHSC**") were in communication regarding the allegations in the Dental Providers Objections and the Dental Providers Adversary Complaints. Among other things, the Debtors agreed to provide HHSC with reports regarding the pre- and postpetition IME Funds and other refunds, including those due to patients under Preadmission Screening and Resident Review ("**PASRR**"). An initial report was provided to HHSC on February 28, 2019.

68843121.5

15.     Throughout March 2019, talks between the Dental Providers, CIBC, and the Debtors with respect to settlement of the Dental Providers Adversary Complaints resumed. The Debtors and Dental Providers also reached consensual language on orders approving the OTAs.

16.     On April 5, 2019, the Debtors, the Committee, the Dental Providers, and CIBC participated in a conference call. During the call, the Debtors and Dental Providers agreed to an in-person meeting between business representatives to discuss postpetition reconciliation.

C.     **Texas Medicaid Scheme and MCOs**

17.     The Debtors receive revenue from third party payors and/or patients. The sources of funds for these third party payors include Medicaid and Medicare reimbursements. HHSC administers the Texas Medicaid program. *See* TEX. GOV'T CODE § 531.021(a). Generally, managed care organizations, as defined in 42 U.S.C. § 1396b(m)(1)(A), are parties to contracts with States which allow them to act as intermediaries between the States and healthcare providers. States disburse funds to the managed care organizations who then reimburses healthcare providers in its network for services rendered to enrollees.

18.     The managed care organizations used by the Debtors are: Amerigroup Texas; UnitedHealthcare; HealthSpring; Superior Health Plan; Molina Healthcare of Texas; and Texas Medicaid & Healthcare Partnership (collectively, the "**MCOs**").[3]

19.     HHSC's Office of the Inspector General ("**OIG**") investigates allegations of fraud or willful misrepresentation and is given the power to impose a Medicaid "payment hold"[4] upon the receipt of reliable evidence. *See* TEX. GOV'T CODE § 531.102(g). HHSC also places a ninety (90) day payment hold (a "**CHOW Hold**") on facilities which are transferred to new operators to allow it to reconcile potential overpayments and underpayments.

---

[3] The Debtors did not select these MCOs. Instead, the State of Texas assigns MCOs.
[4] The various parties in interest refer to this as a "**Vendor Hold**".

20.     Providers submit claims to managed care organizations through online portals. These online portals also interface with the Service Authorization System ("**SAS**"). HHSC transmits SAS files to managed care organizations. The SAS files are used to verify whether the managed care organizations should disburse funds to providers.

21.     Typically, the Debtors submit claims to MCOs for the previous week on Mondays. Thereafter, the MCOs process the claims and disburse funds to the Debtors on the following Friday.

22.     Texas Medicaid funds represent approximately 30% of the Debtors revenue. The Debtors receive approximately $25 million per month in Texas Medicaid funds. A small amount of these funds are then paid to third parties, such as amounts due for IME Funds or under PASRR. With respect to the CHOW Facilities, various parties have an interest in the receivables generated, including Medicaid funds from HHSC. Thus, the total amount of Texas Medicaid funds the Debtors anticipate collecting per month is approximately $20 million.

23.     Between January 18, 2019 and the date HHSC implemented the Vendor Hold, the Debtors paid out approximately $615,715.31 in IME Funds and PASRR payments. Additionally, the Debtors issued approximately $247,682.93 in patient refunds.

**D.     Vendor Hold and Settlement Negotiations**

24.     On April 4, 2019, HHSC sent a letter, attached hereto as Exhibit B (the "**HHSC Letter**") to the Debtors, CIBC, and Dental Providers. In relevant part, the letter provided:

> [A] vendor hold has been placed on all Senior Care facilities that owe Resident funds pursuant to the Debtors' participation in the Incurred Medical Expense (IME) program. . . . As we have previously advised, and as has been the subject of other pleadings and actions filed by other parties in this case, certain of the Debtors have failed to refund resident credits intended under the IME Program to pay for dental services and certain durable medical equipment.

7

25.     The Debtors responded to HHSC on April 5, 2019, attached hereto as <u>Exhibit C</u> (the "**Debtors Letter**"). During the following days, a mediation was negotiated and tentatively scheduled for April 24 and 25 before the Honorable Leif M. Clark. Pursuant to Judge Clark's mediation procedures, the parties began to share information.

26.     On April 12, 2019, HHSC sent a letter to Judge Clark, attached hereto as <u>Exhibit D</u>, (the "**HHSC Mediation Letter**") which stated that the Vendor Hold was in the amount of approximately $2.6 million. This amount represents the total prepetition amount owed to *all* dental providers, not just the complaining Dental Providers.

27.     On April 15, 2019, counsel to CIBC sent an email to the various parties in interest, attached hereto as <u>Exhibit E</u>, (the "**CIBC Email**") stating: "I also want to again make CIBC's position clear that it does not foresee a scenario where it is paying any funds to the dentists on account of the adversary complaints."

28.     During the following days, the Dental Providers, Debtors, and HHSC agreed to broad terms on a potential settlement, where the Vendor Hold would be released and the Dental Providers would be paid directly from the funds subject to the Vendor Hold. Additionally, HHSC would waive any potential penalties against the Debtors related to the Dental Providers. The parties believed this resolution would eliminate CIBC's objections to a potential settlement.

29.     Given the CIBC Email and potential settlement, the mediation was postponed and eventually cancelled. During May 2019, the precise terms of a settlement continued to be negotiated. As of May 30, 2019, a settlement has been reached in principal, subject to final agreement by the parties.

30.     Additionally, the CHOW Facilities have been subject to CHOW Holds since April 1, 2019.

68843121.5

E.    **Vendor Hold Issues**

31.    In early May 2019, the Debtors recognized that the amount of the Vendor Hold was incorrect. Instead of a Vendor Hold in the amount of $2.6 million, *see* Exhibit D, the Vendor Hold applied to all Texas Medicaid funds.

32.    Upon this discovery, the Debtors immediately opened communications with HHSC and the MCOs. On May 22, 2019, HHSC and the MCOs held a call to address the Vendor Hold. During conversations with the MCOs, they confirmed to the Debtors that HHSC had directed the MCOs to release the Vendor Hold. At the previously scheduled omnibus hearing on May 23, 2019, HHSC represented that they had instructed the MCOs to release the Vendor Hold and HHSC was "working as hard as we can to make sure that the problem is and has been addressed." *See* May 23, 2019 Hearing Transcript, pg. 62.

33.    During conversations with the MCOs, the Debtors learned that SAS showed a Vendor Hold for all Medicaid funds through December 31, 2078 and all previously submitted claims were denied due to the Vendor Hold. The Debtors also learned that typically when a vendor hold is initiated, claims are denied, the vendor hold is lifted, and HHSC typically submits an updated SAS file. Resubmission of a SAS file means that claims do not have to be manually reprocessed.

34.    The Debtors acknowledge that HHSC and the MCOs are diligently working to rectify the situation, but the liquidity issues caused by this delay are stark and causing undue hardship. Further, the Vendor Hold has ensured that the Debtors are unable to generate a sufficient budget to obtain a final cash collateral order.

35.    At least $40.18 million (the "**Total Hold**") is subject to the Vendor Hold and CHOW Holds. Of this amount, the CHOW Holds are approximately $8.59 million. As detailed

9

above the amount held for the Dental Providers is approximately $2.6 million (the "**Dental Holds**").

36. The amount due and outstanding to the Debtors for invoices through May 15, 2019 is approximately $24.15 million (the "**Net Claims**"). The Net Claims represent amounts billed for Facilities not subject to CHOW Holds subject to adjustments for amounts patients are responsible for.

37. Additionally, though the effective date of certain OTAs was April 1, 2019, CHOW Holds were implemented for the previous week (the "**Early CHOW Holds**"). The Early CHOW Holds are in the amount of approximately $1.64 million. Because these Facilities were not yet transitioned, the Early CHOW Holds are improper.

38. Therefore, the total amount due to the Debtors and improperly subject to the Vendor Hold is approximately $25.79 million (the "**Total Amount Due**"). The following chart simplifies the various amounts outstanding:[5]

| Total Hold | $40,182,943.80 |
|---|---|
| CHOW Holds | $8,591,513.98 |
| Dental Holds | $2,600,000.00 |
| Early CHOW Holds | $1,640,626.79 |
| Net Claims | $24,153,819.20 |
| Total Amount Due | $25,794,445.99 |

## **RELIEF REQUESTED**

39. By and through this Motion, the Debtors request that the Court enter the Show Cause Order, directing the MCOs and HHSC to show cause why they should not be sanctioned and held in contempt for failing to release the Vendor Hold and turnover the Total Amount Due.

40. The Debtors request that the MCOs and HHSC be required to show cause on or before June 5, 2019 (the "**Show Cause Hearing**").

---

[5] These amounts reflect the Debtors good faith and best efforts to be as accurate as possible.

41.     The Debtors further request that the MCOs and HHSC be sanctioned $100,000 per day for each day after the Show Cause Hearing that the Total Amount Due is not released.

## BASIS FOR RELIEF

### A.     The MCOs and/or HHSC are Violating the Automatic Stay

42.     The automatic stay provided by Bankruptcy Code section 362 is "one of the fundamental debtor protections provided by the bankruptcy laws." *United Savings Ass'n of Texas v. Timbers of Inwood Forrest Assocs., Ltd.*, 484 U.S. 365, 369 (1988). *See In re Adkins*, 513 B.R. 888, 891-91 (Bankr. N.D. Tex. 2014) ("The automatic stay is the protection afforded to an individual or entity that seeks protection under our nation's bankruptcy laws. The coverage of the automatic stay, by the provisions of the Bankruptcy Code, is both broad and specific.").

43.     The Debtors do not dispute that HHSC is entitled to take certain actions under the police power exception to the automatic stay. *See* 11 U.S.C. § 362(b)(4). However, this power is limited to when the governmental actor's undertaking is to protect public health and welfare. *See, e.g.*, *In re Braeview Manor Inc.*, Adv. Pro. No. 94-1017, 1994 WL 25735 (Bankr. N.D. Ohio Jan. 17, 1994) (quoting *In re Nat'l Hosp. and Inst. Builders Co.*, 658 F.2d 39 (2d Cir. 1981)). When examining the police power exception, courts have applied two "related, and somewhat overlapping" tests: the pecuniary purpose test and the public policy test. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1108 (9th Cir. 2005). "The pecuniary purpose test asks whether the government primarily seeks to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health." *In re Nortel Networks, Inc.*, 669 F.3d 128, 139–40 (3d Cir. 2011). "The public policy test asks whether the government is effectuating public policy rather than adjudicating private rights." *Id.* "If the purpose of the law is to promote public safety and welfare or to effectuate public policy, then the exception to the automatic stay applies." *Id.* However, if "the purpose of the law is to protect the government's pecuniary

interest in the debtor's property or primarily to adjudicate private rights, then the exception is inapplicable." *Id.* The complementary tests "are designed to sort out cases in which the government is bringing suit in furtherance of either its own or certain private parties' interest in obtaining a pecuniary advantage over other creditors." *Id.* Here, there are no credible allegations of fraud against the Debtors. Even assuming *arguendo* that *prepetition*, the Debtors did not properly handle IME Funds due to the Dental Providers, there have been no postpetition allegations with respect to other operations.

44.     Further, arguably, the Vendor Hold violates the automatic stay. *See, e.g.*, *In re Medicar Ambulance Co., Inc.*, 166 B.R. 918 (Bankr. N.D. Cal. 1994) (determining that the automatic stay barred the suspension of Medicare payments to debtor provider); *In re Allied Home Health Nursing Servs. Inc.*, Case No. 96-51232 (Bankr. W.D. Tex. Apr. 2, 1996). *See also In re Healthmaster Home Health Care, Inc. v. Shalala (In re Healthmaster Home Health Care, Inc.)*, Case No. 95-01021A, 1995 WL 928920, at *1 (Bankr. S.D. Ga. Apr. 13, 1995) (entering order temporarily restraining intermediary from withholding Medicare funds); *In re Fas Mart Convenience Stores, Inc.*, 296 B.R. 414, 422 (Bankr. E.D. Va. 2002) (finding that "even if [defendant] has a valid right to recoup, the court believes that the potential injury to debtors far outweighs the potential harm to [defendant] because the potential to [defendant] is less imminent, entirely pecuniary, and more easily corrected at a later date."). *But see In re Orthotics*, 193 B.R. 832 (N.D. Ohio 1996).

45.     The Debtors have attempted to work with HHSC and the MCOs to release the Total Amount Due in the most efficient and consensual way possible. The relief the Debtor seeks is limited: release of approximately $25.79 million in Medicaid funds. No party disputes the propriety of the release or even disputes the Total Amount Due. The Debtors have waited as long

as possible, but can wait no longer. These funds are desperately needed or the Debtors may be in jeopardy of not providing adequate patient care, paying employees, and maintaining operations.

**B.**     **The Debtors are Entitled to Turnover**

46.     The Debtors are legally entitled to turnover of all funds subject to the Vendor Hold and, at the very least, the Total Amount Due.[6] By failing to release the funds subject to the Vendor Hold, *i.e.*, the Total Amount Due of $25.79 million the MCOs and/or HHSC are violating the automatic stay by exercising control over property of the estate. 11 U.S.C. § 362(a)(3). A debtor's estate comprises, subject to certain exceptions, "all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1). "The scope of property rights and interests included in a bankruptcy estate is very broad: The conditional, future, speculative, or equitable nature of an interest does not prevent it from being property of the bankruptcy estate." *Matter of Kemp*, 52 F.3d 546, 550 (5th Cir. 1995). The debtor's estate includes any debt that is matured, payable on demand, or payable on order as of the petition date. 11 U.S.C. §§ 541(a)(1), 542(b). Any entity that owes such a debt must pay this debt to the order of the bankruptcy trustee or debtor-in-possession. 11 U.S.C. § 542(b). This obligation is mandatory, and "[t]here is no requirement that the trustee make demand, obtain a court order, or take any further action to obtain a turnover of the estate's property." *In re Lucas*, 100 B.R. 969, 973 (Bankr. M.D. Tenn. 1989), *rev'd on other grounds*, 924 F.2d 597 (6th Cir. 1991); *see also Fitzgerald v. Internal Revenue Service (Matter of Larimer),* 27 B.R. 514, 516 (Bankr. D. Idaho 1983) ("There is no requirement in the Code that the trustee make demand, obtain a court order, or take any further action in order to obtain a turnover of the estate's property. Failure of an

---

[6] The Debtors and Dental Providers have agreed to a settlement which will be presented to the Court pursuant to Bankruptcy Rule 9019 related to the prepetition IME Funds representing a portion of the Dental Holds.

entity to do so, after notice of the estate's interest in property held by it, is probably contemptuous.").

47. The Debtors are entitled to Medicaid reimbursements for providing services to patients at their Facilities. At most, the Vendor Hold should apply to the CHOW Holds and Dental Holds, representing approximately only $11.91 million of the approximately $40.18 million Total Hold. The Vendor Hold was incorrectly applied to all Medicaid funds, to the detriment of the Debtors. Therefore, the MCOs and/or HHSC should be required to immediately turnover the Total Amount Due of approximately $25.79 million.[7]

## C. **Equity Demands the Court to Order the MCOs and HHSC to Show Cause**

48. Even if the Court were to determine that the automatic stay is not implicated, under Bankruptcy Code section 105(a), the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a); *see also In re Millennium Seacarriers, Inc.*, 419 F.3d 83, 97 (2d Cir. 2005).

49. There has been undue delay in the release of tens of millions of dollars to the Debtors. Such delay is causing harm to the Debtors, their estates, and the various parties in interest in this case including patients, employees, creditors, and landlords. Therefore, the Court should require the MCOs and/or HHSC to immediately show cause as to why the Total Amount Due of $25.79 million has not been released.

## NOTICE

50. Notice of this Motion shall be provided to: (a) the U.S. Trustee the Office of the United States Trustee for the Northern District of Texas; (b) the Office of the Attorney General of the states in which the Debtors operate; (c) counsel to CIBC Bank USA; (d) counsel to the

---

[7] Pursuant to federal and state Medicaid law, HHSC can make advances to the Debtors on account of future reimbursements. In the alternative, the Debtors request that HHSC immediate advance the Debtors some portion of the $25.79 million.

Official Committee of Unsecured Creditors; (e) the Internal Revenue Service; (f) HHSC; (g) the MCOs; and those parties who have requested notice pursuant to Bankruptcy Rule 2002.

51. The Debtors respectfully submit that such notice is sufficient and that no further notice of this Motion is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form of the proposed order attached hereto as Exhibit A, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: May 30, 2019
       Dallas, Texas

Respectfully submitted,

**POLSINELLI PC**

/s/      *Trey A. Monsour*
Trey A. Monsour
State Bar No. 14277200
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

-and-

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

*Counsel to the Debtors and Debtors in Possession*

## **Certificate of Conference**

I, Jeremy R. Johnson hereby certify that on May 30, 2019, I contacted Hal F. Morris, counsel to the Texas Health and Human Services Commission. As of the filing of this Motion, I had not heard from Mr. Morris.

Dated:   May 30, 2019                     /s/      *Jeremy R. Johnson*
           Dallas, Texas                           Jeremy R. Johnson

**Exhibit A**

Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|                                        |   |                          |
|----------------------------------------|---|--------------------------|
|                                        | § |                          |
| In re:                                 | § | Chapter 11               |
|                                        | § |                          |
| Senior Care Centers, LLC, *et al.*,[1] | § | Case No. 18-33967 (BJH)  |
|                                        | § |                          |
|                        Debtors.        | § | (Jointly Administered)   |
|                                        | § |                          |

## <u>ORDER TO SHOW CAUSE</u>

Upon the motion (the "**Motion**") of the Debtors for entry of an emergency order to show

cause; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. 157 and §§

1334(b); and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. §

157(b)(2), and that the Debtors consent to entry of a final order under Article III of the United

States Constitution; and the Court having found that venue of this proceeding and the Motion in

this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined

---

[1] The Debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 569] and may also be found on the Debtors' claims agent's website at https://omnimgt.com/SeniorCareCenters. The location of the Debtors' service address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given, under the circumstances, and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      A show cause hearing will be held on June __, 2019 at __:__ (CST), at which the following parties are required to demonstrate cause as to why they should not be sanctioned and held in contempt for violation of the automatic stay:

    a.      Amerigroup Texas;

    b.      UnitedHealthcare;

    c.      HealthSpring;

    d.      Superior Health Plan;

    e.      Molina Healthcare of Texas;

    f.      Texas Medicaid & Healthcare Partnership; and

    g.      Texas Health and Human Services Commission.

3.      Notwithstanding any Bankruptcy Rule or Local Rule to the contrary, this Order shall be immediately effective and enforceable upon its entry

4.      This Court shall retain jurisdiction over any and all matters arising from the interpretation, implementation, or enforcement of this Order.

**# # # End of Order # # #**

68843121.5

Order submitted by:

**POLSINELLI PC**

/s/      *Trey A. Monsour*
Trey A. Monsour
State Bar No. 14277200
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

-and-

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

*Counsel to the Debtors and Debtors in
Possession*

68843121.5

**Exhibit B**



**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

April 4, 2019
*sent via electronic mail and U.S. First-Class mail*

Mark W. Stout, Esq.
Padfield & Stout, L.L.P.
910 The Carnegie
421 W. Third Street
Fort Worth, Texas 76102
mstout@padfieldstout.com

James S. Brouner, Esq.
The Law Office of Mark A. Weisbart
12770 Coit Road, Ste. 541
Dallas, Texas 75251
jbrouner@weisbartlaw.net

John E. Johnson, Esq.
Padfield & Stout, L.L.P.
705 Ross Avenue
Dallas TX 75202
jjohnson@padfieldstout.com

Trey Andrew Monsour
Polsinelli PC
1000 Louisiana Street
Suite 6400
Houston, TX 77002
TMonsour@Polsinelli.com

Jeremy R. Johnson
Polsinelli PC
600 Third Avenue, 42nd Floor
New York, NY 10016
jeremy.johnson@polsinelli.com

John Robert Weiss
Duane Morris LLP
190 S. LaSalle Street
Suite 3700
Chicago, IL 60603
jrweiss@duanemorris.com

Re:    *In re Senior Care Centers, LLC, et al.*, Chapter 11 Case No. 18-33967, United
       States Bankruptcy Court for the Northern District of Texas, Dallas Division

Dear Sirs,

On behalf of our client, the Texas Health and Human Services Commission (HHSC), we are writing to advise you that a vendor hold has been placed on all Senior Care facilities that owe Resident funds pursuant to the Debtors' participation in the Incurred Medical Expense (IME) program. As you know, the IME Program makes resident funds available to pay for dental services, specialty medical equipment and health insurance premiums which are not otherwise a benefit of the Texas Medicaid program. Under the IME Program, certain Medicaid-eligible residents of nursing facilities may request to have their applied income adjusted to pay for those services. As we have previously advised, and as has been the subject of other pleadings and actions filed by other parties in this case, certain of the Debtors have failed to refund resident credits intended under the IME Program to pay for dental services and certain durable medical equipment.

HHSC has instituted these vendor holds based on the credible allegations of fraud contained in Adversary Proceedings Nos. 19-03016 and 19-03017; together with complaints received by HHSC. HHSC has received a total of 169 complaints since January 1, 2018 (88 pre-petition and 81 post-petition). HHSC further believes approximately 2,100 residents have been impacted by the Debtors' actions. Pursuant to *Pers. Care Prod., Inc. v. Hawkins*, 635 F.3d 155 (5th Cir. 2011), Medicaid Providers do not have a due-process protected interest in their present Medicaid reimbursement claims while past claims are under investigation for fraud. The *Personal Care Products* decision further makes clear that Texas regulations permit current reimbursements to be withheld pending investigation on prior payments. *Id.* At 159. HHSC believes that the Debtors are in violation of, *inter alia*, 40 Tex. Admin. Code §§ 19.410 and 19.2316 (failure to make timely refunds and collecting in excess of the daily rate).

We would suggest for your consideration that the parties (Debtors, lenders, plaintiffs in the two adversary proceedings) voluntarily agree to attend a mediation to attempt to resolve these issues in order that the vendor holds could potentially be released. We would suggest such a mediation take place in the near future in Austin, so that representatives of HHSC (the agency which investigates financial complaints filed against nursing homes) can attend and participate. Please let us know your position on such mediation no later than 12:00 noon next Tuesday, April 9th. We look forward to hearing from you. In the event we do not timely hear from you, or the parties are unwilling to agree to mediation, HHSC anticipates requesting the Bankruptcy Court to compel mediation to resolve these important pending issues. Thank you for your continuing courtesies. With kindest regards, I remain

Very truly yours,

Hal F. Morris by EHM

Hal F. Morris
Assistant Attorney General
Managing Attorney Bankruptcy Regulatory Section
Bankruptcy and Collection Division
Office of the Texas Attorney General
(512) 475-4550
hal.morris@oag.texas.gov

cc: via electronic mail
Lisa Lambert, Lisa.L.Lambert@usdoj.gov
Meredyth Kippes, Meredyth.A.Kippes@usdoj.gov
Leslea Pickle, Leslea.Pickle@hhsc.state.tx.us
Corey Kintzer, Corey.Kintzer@hhsc.state.tx.us
Nancy Peterma, PetermanN@gtlaw.com
Frank Terzo, frank.terzo@nelsonmullins.com
Marty Kalish, martinkalish@hotmail.com

(internal)
Casey Roy, casey.roy@oag.texas.gov
Ashley Bartram, ashley.bartram@oag.texas.gov

**Exhibit C**



222 Delaware Avenue, Suite 1101, Wilmington, DE 19801 • (302) 252-0920

April 5, 2019

Jeremy R. Johnson
(212) 684-0199
jeremy.johnson@polsinelli.com

**Via Email**

Mr. Hal F. Morris
Assistant Attorney General
Managing Attorney Bankruptcy Regulatory Section
Bankruptcy and Collection Division
Office of the Texas State Attorney General
(512) 475-4450
hal.morris@oag.texas.gov

   **Re:**   *In re Senior Care Centers, LLC*, Case No. 18-33967 (BJH)

Dear Mr. Morris:

   As you know, this firm represents Senior Care Centers, LLC and its affiliated entities (collectively, the "Debtors") in the above-referenced chapter 11 cases (the "Chapter 11 Cases") before the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"). We are in receipt of the April 4, 2019 letter (the "April 4 Letter") sent on behalf of the Texas Health and Human Services Commission ("HHSC").

   The April 4 Letter advises "that a vendor hold has been placed on all Senior Care facilities that owe resident funds pursuant to the Debtors' participation in the Incurred Medical Expense (IME) program." Although the April 4 Letter alleges that "certain of the Debtors have failed to refund resident credits intended under the IME Program to pay for dental services and certain durable medical equipment" based on pleadings filed in the Chapter 11 Cases, the Debtors dispute such allegations and the Court has not yet made any determinations with respect to those allegations. The proposed vendor hold, the extent of which is not clear based on a review of the April 4 Letter, is based on unsubstantiated allegations and is premature and draconian.

   The April 4 Letter was a surprise to the Debtors, who were cooperating in good faith with HHSC and the dental providers in an attempt to resolve the open issues. The Debtors, at the request of HHSC, met with the HHSC in Austin in January 2019 to discuss these and other issues and have provided regular reports to HHSC and the dental providers regarding their investigations related to patient refunds and the IME program. The Debtors continue to proactively address these issues with the dental providers and HHSC. Furthermore, the Debtors had several conversations with the HHSC regarding the proposed transition of the 33 facilities and were able to resolve HHSC's issues without unnecessary litigation. The Debtors intend to do

Atlanta Boston Chicago Dallas Denver Houston Kansas City Los Angeles Nashville New York Phoenix
St. Louis San Francisco Seattle Washington, D.C. Wilmington
Polsinelli PC, Polsinelli LLP in California



April 5, 2019
Page 2

the same with respect to patient refunds and the IME program, but HHSC's proposed vendor hold may force the parties to unnecessary litigation. There are alternative and more efficient methods to resolve this dispute.

The Debtors are willing to engage in mediation to resolve the allegations in the adversary proceedings and the April 4 Letter, but request that HHSC refrain from instituting a vendor hold. The allegations made within the adversary proceedings are disputed by the Debtors. Further, the adversary proceedings relate to prepetition reimbursements. Since December 4, 2019 (the "Petition Date") the Debtors have continued to work with dental providers to ensure that timely payments are made and are willing to provide reconciliations regarding the postpetition activities of the Debtors to address these issues. The Debtors are in continuing negotiations with the dental providers regarding these issues.

Even assuming *arguendo* that the allegations in the adversary proceedings are accurate, which the Debtors dispute, the vendor hold proposed in the April 4 Letter is vastly disproportionate to any alleged prepetition wrongdoing. The dental providers allege they are owed approximately $700,000, but the proposed vendor hold may impact millions of dollars that are critical to funding the Debtors' ongoing operations. If the vendor hold is instituted, patients may face imminent and irreparable harm to patient care at the Debtors' facilities.

As you are aware, the Debtors transitioned approximately 33 facilities (the "Transfer Portfolio") at 12:01am on April 1, 2019. HHSC advised the Debtors that it was instituting a vendor hold with respect to the receivables generated by the Transfer Portfolio. This course of action understandably places significant pressure on the Debtors' continued operations of approximately 44 facilities involving approximately 6,000 patients. The additional proposed vendor hold could potentially cripple the Debtors' ability to properly care for the remaining patients.

The dental providers have asserted claims against the Debtors and the Debtors' prepetition lender regarding the handling of the prepetition receipts. The dental providers have been actively involved in the chapter 11 cases. The Bankruptcy Court provides an appropriate venue to resolve the outstanding issues between the Debtors and the dental providers.



April 5, 2019
Page 3


      We request that HHSC (a) postpone any implementation of a vendor hold as to not jeopardize patient care; and (b) schedule a time to speak with the Debtors on April 8, 2019 or such other time as is convenient. The Debtors are willing to engage in alternative dispute resolution procedures, if necessary, to resolve the claims, but cannot risk patient care as these important, but relatively minor disputes are addressed.

      Please contact me to discuss at your earliest convenience.

                    Sincerely,

                    /s/ Jeremy R. Johnson

                    Jeremy R. Johnson

cc:    Mark. W. Stout (via email)
       James S. Brouner (via email)
       John E. Johnson (via email)
       John R. Weiss (via email)
       Nancy Peterman (via email)
       Shari Heyen (via email)
       Kevin O'Halloran (via email)

**Exhibit D**



## KEN PAXTON
ATTORNEY GENERAL OF TEXAS

April 12, 2019

Hon. Leif M. Clark
Mediator
Leif M. Clark Consulting PLLC
P.O. Box 2676
San Antonio, TX 78299
lmclark@leifmclark.com

Re: *In re Senior Care Centers, LLC et al.*, Case no. 18-33967, United States Bankruptcy Court for the Northern District of Texas, Dallas Division; *Onsite Dentists of Texas, PLLC and Texas Nursing Home Management Solutions, LLC v. Senior Care Centers, LLC et al.*, Adv. Pro. No. 19-03016; and *Atlas Dental Care Management, LLC v. Senior Care Centers LLC et al.*, Adv. Pro. No. 19-03017.

Dear Judge Clark,

I write to advise you that the parties (copied on this letter) have advised our office that they are all available for voluntary mediation in Austin on April 24 and 25 in the above-referenced cases. As we briefly discussed, and as the other parties are aware, the Texas Health and Human Services Commission ("HHSC") has placed a vendor hold on Medicaid funds in the *present* approximate amount of $2.6 million, which would make HHSC's role in this mediation tantamount to a party commencing an interpleader. Accordingly, given HHSC's somewhat peripheral role in the pending disputes, we will defer to the other parties to determine the location in Austin for the mediation and the division of your fees.

Please let the parties know what information or materials you would like to see in advance of the mediation. I have provided contact information for all of the parties below. We look forward to working with you and all of the parties. With kindest regards, I remain

Very truly yours,

*Hal F. Morris by eam*

Hal F. Morris
Assistant Attorney General
Managing Attorney Bankruptcy Regulatory Section
Bankruptcy and Collection Division
Office of the Texas Attorney General
(512) 475-4550
hal.morris@oag.texas.gov

Letter to Judge Clark
April 12, 2019
p. 2

cc:

Mark W. Stout, Esq.
Padfield & Stout, L.L.P.
910 The Carnegie
421 W. Third Street
Fort Worth, TX 76102
(817) 338-1616
mstout@padfieldstout.com

James S. Brouner, Esq.
The Law Office of Mark A. Weisbart
12770 Coit Road, Ste. 541
Dallas, TX 75251
(972) 628-4902
jbrouner@weisbartlaw.net

Jeremy R. Johnson
Polsinelli PC
600 Third Avenue, 42nd Floor
New York, NY 10016
(646) 289-6507
jeremy.johnson@polsinelli.com

John Robert Weiss
Duane Morris LLP
190 S. LaSalle Street
Suite 3700
Chicago, IL 60603
(312) 499-0178
jrweiss@duanemorris.com

Stephen Astringer
Polsinelli PC
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0962
sastringer@polsinelli.com

(internal)

Ashley Bartram, ashley.bartram@oag.texas.gov
J. Casey Roy, casey.roy@oag.texas.gov

**Exhibit E**

## Stephen Astringer

**Subject:** RE: Senior Care Ctrs LLC

**From:** Darke, Richard P. [mailto:RPDarke@duanemorris.com]
**Sent:** Monday, April 15, 2019 5:44 PM
**To:** Jeremy Johnson
**Cc:** Morris, Hal; sastringer@polsiinelli.com; Weiss, John R.; jbrounder@weisbartlaw.net; mstout@padfieldstout.com; Bartram, Ashley; casey.roy@oag.texas.gov; Ciambrone, Rosanne
**Subject:** RE: Senior Care Ctrs LLC

Jeremy,

I suggest that the Debtors and the dentists split the cost of the mediation.  I also want to again make CIBC's position clear that it does not foresee a scenario where it is paying any funds to the dentists on account of the adversary complaints.  I do not want to hear any assertion from any party to this mediation that CIBC is acting, or has acted, in bad faith at the mediation when /because it does not offer any money on the dentists claims.  We will appear through counsel and petition Judge Clark to allow a CIBC representative to be available by phone.  If any of this is a problem for anyone, please tell me now.

Thanks,

Rick



Richard P. Darke

Duane Morris LLP
190 South LaSalle Street, Suite 3700
Chicago, IL 60603-3433

**P:** +1 312 499 6743
**F:** +1 312 277 2355

E-MAIL | BIO | VCARD

1