## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| Senior Care Centers, LLC, *et al.*,[1] | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## DISCLOSURE STATEMENT FOR THE DEBTORS'
## PLAN OF REORGANIZATION UNDER CHAPTER 11
## OF THE BANKRUPTCY CODE

## POLSINELLI PC

Trey A. Monsour
State Bar No. 14277200
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

Stephen J. Astringer (Admitted *Pro Hac Vice*)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
sastringer@polsinelli.com

*Counsel to the Debtors and Debtors in Possession*

Dated: June 24, 2019

---

[1] The Debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 569] and may also be found on the Debtors' claims agent's website at https://omnimgt.com/SeniorCareCenters. The location of the Debtors' service address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

**THIS IS NOT A SOLICITATION OF VOTES ON THE PLAN. VOTES MAY NOT BE SOLICITED UNTIL THE BANKRUPTCY COURT HAS APPROVED A DISCLOSURE STATEMENT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

**THE VOTING DEADLINE IS 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 23, 2019.**

**TO BE COUNTED AS A VOTE TO ACCEPT OR REJECT THE PLAN, THE VOTING AND CLAIMS AGENT MUST *ACTUALLY RECEIVE* YOUR BALLOT ON OR BEFORE THE VOTING DEADLINE AS SET FORTH IN THE DISCLOSURE STATEMENT ORDER.**

## TABLE OF CONTENTS

Introduction ............................................................................................................... 1

I.  Background Information ...................................................................................... 2

   A.  Debtors' Business and History ....................................................................... 2

   B.  Organizational Structure and Management of the Debtors ........................... 3

   C.  Prepetition Capital Structure ......................................................................... 5

   D.  Other Debt ..................................................................................................... 8

   E.  Events Leading to the Chapter 11 Cases ....................................................... 8

II.  The Chapter 11 Cases ........................................................................................ 10

   A.  Commencement of the Chapter 11 Cases and First Day Pleadings ........................ 10

   B.  Use of Cash Collateral ................................................................................. 10

   C.  Retention of Professionals ........................................................................... 11

   D.  Patient Care Ombudsman ............................................................................. 11

   E.  Appointment of the Committee .................................................................... 11

   F.  Lease Rejections and OTAs ......................................................................... 12

   G.  Other Postpetition Matters .......................................................................... 15

   H.  Schedules and Bar Dates ............................................................................. 16

   I.  Plan Exclusivity ........................................................................................... 17

   J.  Sale and Reorganization Process ................................................................. 17

III.  Summary of the Plan ......................................................................................... 17

   A.  Treatment of Unclassified Claims ............................................................... 18

   B.  Classification and Treatment of Claims and Interests ................................. 19

   C.  Special Provision Governing Unimpaired Claims ....................................... 23

   D.  Elimination of Vacant Classes .................................................................... 23

   E.  Acceptance or Rejection of the Plan ............................................................ 23

   F.  Treatment of Executory Contracts and Unexpired Leases .......................... 24

   G.  Means for Implementation ........................................................................... 26

   H.  Provisions Governing Distributions ............................................................ 33

   I.  Effect of Plan Confirmation ........................................................................ 37

   J.  Conditions Precedent to Confirmation and Effective Date ......................... 40

   K.  Retention of Jurisdiction ............................................................................. 42

   L.  Miscellaneous Provisions ............................................................................ 44

IV.   Confirmation of the Plan ................................................................................. 47

   A.   Confirmation Hearing ........................................................................... 47

   B.   Confirmation Standards ........................................................................ 48

   C.   Acceptance by Impaired Classes ......................................................... 51

V.   Certain Risk Factors to be Considered Before Voting ................................... 52

   A.   Bankruptcy Law Considerations ......................................................... 52

   B.   Risks Related to Recoveries Under the Plan ....................................... 55

   C.   Risks Related to the Reorganized Debtors' Businesses ...................... 56

   D.   Risks Associated With Forward Looking Statements ......................... 56

   E.   Disclosure Statement Disclaimer ........................................................ 57

VI.   Alternatives to the Plan ................................................................................. 59

   A.   Chapter 7 Liquidation ......................................................................... 59

   B.   Alternative Plan .................................................................................. 59

VII.   Certain Securities Law Matters ..................................................................... 60

   A.   Issuance of New Common Stock ........................................................ 60

   B.   Cancellation of Existing Equity Interests ........................................... 60

VIII.   Certain U.S. Federal Income Tax Consequences to the Plan ....................... 60

   A.   Consequences to Debtors .................................................................... 60

   B.   Consequences to Holders of Allowed Claims .................................... 61

IX.   Recommendation of the Debtors ................................................................... 62

## EXHIBITS

Exhibit A    List of Debtors and Borrowers
Exhibit B    Plan of Reorganization
Exhibit C    Disclosure Statement Order
Exhibit D    Financial Projections
Exhibit E    Liquidation Analysis
Exhibit F    Historical Financial Statements
Exhibit G    Valuation Analysis
Exhibit H    Sources and Uses

**THE DEBTOR HEREBY ADOPTS AND INCORPORATES EACH EXHIBIT ATTACHED TO THIS DISCLOSURE STATEMENT BY REFERENCE AS THOUGH FULLY SET FORTH HEREIN**

**Introduction**

Senior Care Centers, LLC and its wholly-owned affiliates and subsidiaries, which are listed on Exhibit A hereto, as debtors and debtors in possession (each a "**Debtor**" and collectively, the "**Debtors**" or the "**Company**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") submit this disclosure statement (together with all exhibits, schedules, and attachments thereto, as may be amended, supplemented, or otherwise modified from time to time, this "**Disclosure Statement**") pursuant to Bankruptcy Code section 1125 to Holders of Claims against and Interests in the Debtors in connection with the Solicitation of acceptances with respect to the *Debtors' Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (together with all exhibits, schedules, and attachments thereto, as may be amended supplemented, or otherwise modified from time to time, the "**Plan**"),[1] dated June 24, 2019. A copy of the Plan is attached hereto as Exhibit B.

The Disclosure Statement is intended to be a summary of information regarding the Debtors. Information contained herein has been derived from the Debtors' books and records; however, the Disclosure Statement has not been audited. Additional background information about the Debtors and these Chapter 11 Cases, including the Schedules and Statements of Financial Affairs (which contain relevant information about the Debtors' pre-bankruptcy financial condition), may be found at http://omnimgt.com/seniorcarecenters.

The Disclosure Statement includes, without limitation, the following information:

- the Debtors' prepetition operating and financial history;
- the events leading to the commencement of these Chapter 11 Cases;
- significant events which have occurred in these Chapter 11 Cases;
- the classification and treatment of Claims and Interests under the Plan, including who is entitled to vote and how to vote on the Plan;
- certain effects of Confirmation of the Plan;
- other terms and provisions of the Plan, including risk factors relating to the Debtors and Reorganized Debtors and provisions related to releases, injunctions, and exculpation;
- certain securities law matters with respect to the Plan; and
- certain U.S. federal income tax consequences under the Plan.

The Debtors are reorganizing pursuant to chapter 11 of the Bankruptcy Code, which is the principal business reorganization chapter of the Bankruptcy Code. As a result, the confirmation of the Plan means that the Reorganized Debtors will continue to operate their businesses going forward. The Debtors are not liquidating or going out of business.

The Plan provides for the reorganization of the Debtors by retiring, cancelling, extinguishing, and/or discharging the Debtor's existing Equity Interests and issuing new equity to the Unsecured Creditor Trust, subject to dilution by the Management Incentive Plan. Holders

---

[1]  All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan. To the extent that a definition of a term in the text of this Disclosure Statement and the definition of such term in the Plan are inconsistent, the definition included in the Plan shall control and govern.

of all Claims and Interests except for General Unsecured Claims, Subordinated Debt Claims, and Equity Interests are unimpaired under the Plan.

To fund the Debtors' reorganization, the Debtors will use the Debtors' Cash on hand as of the Effective Date and proceeds of the Harden Escrow and the Exit Facility. The Cash and related proceeds will be used to: pay Cures owed pursuant to the Schedule of Assumed Contracts and Unexpired Leases necessary to the proposed reorganization; satisfy Unclassified Claims; and retire the ABL Facility Claims. A Creditor Trust will be formed and funded for the benefit of Holders of General Unsecured Claims, who will receive their pro rata share of the Unsecured Creditor Recovery.

For the reasons set forth herein, the Debtors believe that the Plan is fair and equitable, will maximize the value of the Estates, is in the best interest of the Estates and the Debtors' stakeholders, and will enable the Debtors to successfully reorganize and accomplish the objectives of chapter 11 of the Bankruptcy Code. Therefore, the Debtors urge Holders of Claims who are entitled to vote to timely return their ballots and to vote to accept the Plan.

## I. Background Information

### A. Debtors' Business and History

The Company was formed on November 20, 2008 by Silver Star Investments, LLC ("**Silver Star**"). Silver Star raised $12.5 million in equity capital on behalf of the Company. The Company formally commenced operations on May 1, 2009 as a licensed operator of fourteen (14) skilled nursing facilities ("**SNFs**"). In 2016, Silver Star sponsored an additional equity offering of almost $20 million to provide additional working capital and to assist the Company in its continued growth. As of the Petition Date, Silver Star owns approximately 68.3% of the equity of the Company. Granite Investment Group, LLC (together with its affiliates, "**Granite**") owns approximately 73.5% of Silver Star.

Between 2009 and 2018, the Company expanded operations and became one of the largest providers of skilled nursing services in the country and the largest operator of SNFs in Texas. As of the Petition Date, the Company operated approximately ninety-seven (97) SNFs, nine (9) assisted living facilities ("**ALFs**"), and six (6) hospice facilities (collectively, the "**Facilities**"). As of the Petition Date, the Facilities were located throughout Texas and Louisiana and employ approximately 11,300 individuals. The Debtors also provide rehabilitation, therapy, and other services. As of the Petition Date, the Company provided care on a daily basis to approximately 9,000 patients and had a capacity of approximately 13,000 beds.

To become a patient, the prospective patient must enter into an admission agreement with the Company ("**Admission Agreement**"). The Admission Agreement establishes the terms and conditions under which a resident will reside in a Facility and receive services. The services provided by the Company to patients include, among other things: transportation, meals, housekeeping, 24-hour monitoring, laundry, daily living assistance, and 24-hour nursing care. In exchange for the services, the Company is reimbursed by a third-party payor and/or the patient. The third-party payors are primarily: (1) Medicare, (2) Medicaid, and (3) other third-party and private payors.

2

Operators of SNFs are heavily regulated by various state and federal agencies. In particular, nearly every aspect of the operation of the Facilities, including patient services and financial operations are subject to rules and regulations promulgated by: (a) the United States Depart of Health and Human Services' Centers for Medicare & Medicaid Services ("**CMS**"); (b) the Department of Aging, Office of Health Assurance and Licensing, Bureau of Long Term Care, Bureau of Regulatory Enforcement; and (c) the applicable departments of health in Texas and Louisiana.

The Debtors, through Debtor Harden Pharmacy, LLC ("**Harden**"), previously operated a pharmacy business. In February 2018, Harden sold substantially all of its assets to NeighborCare Pharmacy Services, Inc. (the "**Pharmacy Buyer**") for approximately $76 million (the "**Pharmacy Sale**"). The Pharmacy Sale allowed the Debtors to address liquidity needs in early 2018. Specifically, the uses of the proceeds of the Pharmacy Sale were as follows:

| | |
|---|---|
| Harden Vendor Payoff | $1,024,633 |
| ABL Credit Facility Paydown | $2,000,000 |
| Granite I Lease Buy Down[2] | $10,000,000 |
| Gamble Loan (as defined below) Pay Down | $5,000,000 |
| Ranger Loan (as defined below) Pay Off | $7,234,970 |
| Notes Payable – Outside Investors Pay Off[3] | $12,676,513 |
| Operating Working Capital | $29,934,822 |

Additionally, as part of the Pharmacy Sale, an indemnification escrow account was established in the amount of $7.6 million (the "**Harden Escrow**") to cover potential claims from the Pharmacy Buyer related to the Pharmacy Sale. The Pharmacy Buyer did not assert any claims related to the Pharmacy Sale against the Harden Escrow by the required deadline. Postpetition, multiple parties have asserted claims against the Harden Escrow. The Debtors determined that the Pharmacy Sale was necessary because a working capital infusion of cash was needed as the Debtors began to default under certain covenants under various loan documents.

## B. Organizational Structure and Management of the Debtors

The Company is comprised of more than 120 wholly owned subsidiaries. These subsidiaries may be classified as (1) holding companies that directly or indirectly hold a portfolio of certain assets (the "**HoldCo Debtors**"); (2) entities that are tenants to master leases with certain landlords (the "**Tenant Debtors**"); and (3) entities which operate Facilities (the "**OpCo Debtors**"). The Company also owns a 38% non-controlling interest in Partners Pharmacy, LLC (the "**Non-Debtor Affiliate**").

---

[2] In connection with the Pharmacy Sale, Granite and the Company entered into that certain Second Amendment to Master Lease and Security Agreement and Joinder Agreement (the "**Granite Buyout**"). The Granite Buyout supposedly provided, among other things, that Granite would be paid $10 million in exchange for extending the term of its leases to fifteen (15) years and reducing the cost of base rent.

[3] Throughout October 2017 and January 2018, the Company entered into a series of ten (10) short-term high-interest bridge financing loans with certain outside investors (the "**Outside Investors Notes**") introduced through Granite. The total borrowed under the Outside Investors Notes was approximately $15.1 million. All Outside Investor Notes were repaid between January 17, 2018 and February 8, 2018.

3

Approximately thirty-two (32) Debtors (the "**HUD Debtors**") are parties to operator regulatory agreements ("**Regulatory Agreements**") with the U.S. Department of Housing and Urban Development ("**HUD**"). Typically, the HUD Debtors are parties to leases with property owners who receive financing from certain HUD lenders (the "**HUD Lenders**").

The Debtors are parties to numerous management agreements (the "**Management Agreement**" and, individually, a "**Management Agreement**"). Generally, there was one Management Agreement in place at each Facility as of the Petition Date. Under the Management Agreements, Debtor Senior Care Center Management, LLC ("**SCC Management**") provides certain other Debtors with the following services: (a) provision of care to residents; (b) the general maintenance, repair, and supply, of the Facilities; (c) day-to-day direct supervision of service providers at the Facilities; (d) preparation of annual budgets; (e) preparation and implementation of marketing programs; (f) establishment and maintenance of books and records; (g) preparation of financial reports; (h) preparation of Medicaid, Medicare, and other reimbursement programs; (i) preparation and filing of tax return; (j) purchasing, utilities, and service contract management, (k) maintaining licensing; (l) insurance procurement; and miscellaneous other services. Generally, the Management Agreements provide that the Company's various business segments remit a management fee for such services equal to five percent (5%) of gross revenue.

Pursuant to the Senior Care Centers, LLC Operating Agreement (the "**Operating Agreement**"), the Company is managed by existing management and a board of directors (the "**Board**") at the holding company, Senior Care Centers, LLC ("**SCC Parent**"). Under the Operating Agreement, and at the direction of the Company's management, unit holders of Senior Care Centers, LLC ("**Unit Holders**") are eligible to receive quarterly pro rata distributions of the Company's net profits from operations to assist in paying income tax liabilities along with dividends from time to time. The last tax distribution was made in 2015. The last dividend distribution was made in March 2018.

The Board historically consisted of four Board members (the "**Board Members**"). Prepetition, three of the Board Members were affiliated with Granite and the remaining Board Member was an officer of the Company. In November 2017, an independent Board Member was added to replace the officer member. In response to the Debtors' financial difficulties, the Company formed a special committee of the sole independent Board Member (the "**Independent Committee**") to help review and evaluate their strategic alternatives including a potential sale of some or all of the equity of the Company. On or about November 10, 2018, two additional independent observers were added to the Board and, as of the Petition Date, the three members appointed by Granite resigned from the Board and the independent observers were appointed as additional independent board members. In addition, one additional independent member was added as of the Petition Date. As of the Petition Date, the Board consisted of five (5) independent members.

4

### C.    Prepetition Capital Structure

### (1)    ABL Credit Facility

Certain Debtors[4] (the "**Non-HUD Borrowers**") are parties to the certain Amended and Restated Credit and Security Agreement dated January 12, 2017 (as amended, restated, modified, or supplemented from time to time, the "**Non-HUD Credit Agreement**") with CIBC Bank USA as Lead Arranger, Administrative Agent, and Lender (the "**Administrative Agent**"),[5] and CIT Finance LLC, Wells Fargo Bank, N.A., MB Financial Bank, N.A., Bankers Trust Company, and Compass Bank as lenders (together with Administrative Agent, the "**ABL Lenders**"). The Non-HUD Credit Agreement provided the Non-HUD Borrowers with access to a term loan up to an aggregate principal amount of $7,395,448.99 (the "**Non-HUD Term Loan**") and a revolving credit loan in the aggregate principal amount of $67,500,000 (the "**Non-HUD Revolver**", and together with the Non-HUD Term Loan, the "**Non-HUD ABL Credit Facility**").

Certain Debtors (the "**HUD Borrowers**") are parties to that certain Amended and Restated Credit and Security Agreement dated June 21, 2017 (as amended, restated, modified, or supplemented from time to time, the "**HUD Credit Agreement**", with the Non-HUD Credit Agreement, the "**ABL Credit Facility Documents**") with the Administrative Agent and Lenders. The HUD Credit Agreement provided the HUD Borrowers with a revolving credit loan in the aggregate principal amount of $12,500,000 (the "**HUD Revolver**" or the "**HUD ABL Credit Facility**", together with the Non-HUD Credit Facility, the "**ABL Credit Facility**"). As is common in these types of financings, borrowings under the Credit Facility are limited by a borrowing base calculation (the "**Borrowing Base**"). The Non-HUD Term Loan was paid off in early 2017.

Additionally, the Debtors and the Administrative Agent are parties to two unsecured letters of Credit in the aggregate principal amount in excess of $2 million (the "**LCs**").

As of the Petition Date, approximately $33.06 million was due and outstanding under the Non-HUD Revolver, and approximately $9.53 million was due and outstanding under the HUD Revolver. As of the Petition Date, the Debtors were obligated to the ABL Lenders in the aggregate principal amount of $45.56 million.

To secure the obligations under the ABL Credit Facility, the Debtors granted the Administrative Agent a first priority perfected security interest in, subject to certain exceptions discussed below: "Goods, Accounts (including Health-Care Insurance Receivables), Equipment, Inventory, contract rights or rights to payment of money (including any escrowed funds, escrow payments or indemnification payments owing to any of the Debtors pursuant to any escrow agreement, purchase agreement or acquisition agreement), leases, license agreements, franchise agreements, General Intangibles, Intellectual Property, commercial tort claims, documents, Instruments (including any promissory notes), Chattel Paper (whether tangible or electronic), cash, Deposit Accounts, Securities Accounts, Letter-of-Credit Rights (whether or not the letter of

---

[4]  Attached hereto as <u>Exhibit A</u> is a chart which details all Debtors and their status, if any, under the applicable ABL Credit Facility Documents.

[5]   The ABL Credit Facility Documents were originally executed by The PrivateBank and Trust Company, predecessor in interest to CIBC Bank USA.

credit is evidenced by a writing), Securities, and all other Investment Property, Supporting Obligations, and Financial Assets; all of each Debtor's books and records relating to any of the foregoing; and all and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions, and improvements to and replacements, products, Proceeds and insurance proceeds of any or all of the foregoing (each as defined in the ABL Credit Facility Documents), and every other item of collateral described in the Credit Facility Documents (collectively, all of the above types and descriptions of collateral are referred to herein as the "**Prepetition ABL Collateral**").

### (2) Sabra Loans

In connection with the acquisition of certain Facilities, certain Debtors[6] entered into that certain Loan Agreement dated September 1, 2015 (as amended, restated, modified, or supplemented from time to time, the "**Gamble Loan Agreement**") and Promissory Note (the "**Gamble Note**") with CCP Finance I, LLP (together, with its affiliates, "**Sabra**").[7] SCC Parent executed that Guaranty of Payment on September 1, 2015 (the "**Gamble Guaranty**", and together with the Gamble Note and Gamble Loan Agreement, the "**Gamble Loan Documents**"). The Gamble Loan Agreement provided the Debtors Gamble Affiliates with access of up to $20 million (the "**Gamble Loan**").

To provide the Debtors with additional liquidity and to pay off the Non-HUD Term Loan, on April 28, 2017, Sabra and the Debtors entered into that certain Term Loan Agreement and Security Agreement (the "**Ranger Loan Agreement**"). The Ranger Loan Agreement provided the Debtors with a term loan in the amount of $7 million (the "**Ranger Loan**", and together with the Gamble Loan, the "**Sabra Loans**").

To obtain Sabra's consent to the Pharmacy Sale in February 2018,[8] the Debtors paid Sabra approximately $12 million, bringing the outstanding balance of the Gamble Loan down to $5 million, and satisfying the Ranger Loan's balance of approximately $7.23 million. The Debtors also granted Sabra an interest in the Harden Escrow that is disputed by several parties, including the ABL Lenders and the Committee.

As of the Petition Date, approximately $4.33 million was due and outstanding to Sabra on account of the Gamble Loan.

As discussed below, Sabra through the Sabra Intercreditor Agreement (as defined below) had a second priority lien on that portion of the Prepetition ABL Collateral related to receivables generated by the Sabra-owned Facilities.

---

[6]  Senior Rehab Solutions North Louisiana LLC, SCC Hospice Holdco LLC, Gamble Hospice Care Northwest, LLC, Gamble Hospice Care Cenla, LLC, Gamble Hospice Care Central, LLC and Gamble Hospice Care Northeast, LLC (together, the "**Gamble Affiliates**").

[7]  In August 2017, CCP Finance I, LLC and its affiliated entities including Care Capital Partners Inc. (collectively, "**CCP**") merged with Sabra Healthcare REIT, Inc. (together with its affiliates, "**Sabra**"). CCP is now a subsidiary of Sabra.

[8]  *See* the chart in Section I.A.

### (3) Excluded Debtors

Certain Debtors are not parties to the ABL Credit Facility (collectively, the "**Excluded Debtors**"). The Excluded Debtors are:

- Harden;
- PM Management - Killeen I NC, LLC, PM Management - Killeen II NC, LLC, PM Management - Killeen III NC, LLC, and PM Management – Portfolio VIII NC, LLC (the "**KeyBank Debtors**");
- PM Management - Park Valley NC, LLC, PM Management–New Braunfels NC, LLC, and PM Management – Portfolio IX NC, LLC (the "**Love Debtors**");
- PM Management – Pflugerville NC, LLC;
- San Antonio SCC LLC;
- SCC Hospice Holdco, LLC;
- Senior Care Center Management II, LLC; and
- The Gamble Affiliates

Of the Excluded Debtors, certain are also HUD Debtors. The HUD Lenders assert first priority liens on the assets these Debtors.[9]

### (4) Leasehold Obligations

The Company does not own any real estate, but instead operates the Facilities through a number of leases, subleases, and master leases (collectively, the "**Leases**") among numerous landlords (together, the "**Landlords**"). As of the Petition Date, the Company was party to approximately 113 Leases.

As of the Petition Date, the Company's three largest Landlords were Granite, Sabra, and TXMS Real Estate Investments, Inc. ("**TXMS**" or "**LTC**").

As of the Petition Date, the Company and Granite were parties to a number of Leases (the "**Granite Leases**") covering approximately thirty-four (34) Facilities (the "**Granite Facilities**"). Pursuant to the Granite Leases, Granite was owed approximately $46.6 million per year and held a security deposit in the amount of approximately $1.26 million. As of the Petition Date, Granite was owed approximately $4.49 million in unpaid rent.

As of the Petition Date, the Company and Sabra were parties to a number of Leases (the "**Sabra Leases**") covering approximately thirty-eight (38) Facilities (the "**Sabra Facilities**"). Pursuant to the Sabra Leases, Sabra was owed approximately $58.5 million per year for rent and held a security deposit of approximately $5.76 million and a capital reserve of approximately $3.02 million. As of the Petition Date, Sabra was owed approximately $31.78 million in unpaid rent, common area maintenance charges, and taxes.

---

[9] Love Funding Corporation has a first priority lien on the assets of the Love Debtors. KeyBank, N.A. has a first priority lien on the KeyBank Debtors.

68344562.11

As of the Petition Date, the Company and TXMS were parties to a number of Leases (the "**TXMS Leases**") covering approximately eleven (11) Facilities (the "**TXMS Facilities**"). Pursuant to the TXMS Leases, TXMS is owed approximately $14 million per year for rent and holds a security deposit in the way of letters of credit of more than $2 million and CAPEX deposits of $2.4 million, and property tax/insurance deposit of $2.2 million. No amounts were due and outstanding to TXMS as of the Petition Date except for the "stub rent" related to December 2018.

As of the Petition Date, the Company was also a party to Leases with approximately fifteen additional Landlords (the "**Additional Landlords**") representing approximately twenty-six Facilities (the "**Additional Leases**").

### (5) Intercreditor Agreements

Given the complexity of the Company's operations and capital structure, a number of intercreditor agreements are in place governing the relationships among various parties including the Administrative Agent, Sabra, Landlords, and HUD Lenders. Generally and as detailed further in the various pleadings in the Chapter 11 Cases and the respective intercreditor agreements and UCC statements, the Administrative Agent has a first priority lien on substantially all of the Debtors' Prepetition Collateral, except for the Excluded Debtors.

As of the Petition Date, pursuant to that certain Second Amended and Restated Intercreditor Agreement dated April 28, 2017 (the "**Sabra Intercreditor Agreement**") Sabra had a second priority lien on substantially all of the Debtors' Prepetition Collateral.

Generally, Sabra and certain other Landlords have valid first priority liens in certain landlord collateral (the "**Landlord Liens**").

### D. Other Debt

As of the Petition Date, the Company owed an aggregate of approximately $36.7 million in unsecured trade debt.

### E. Events Leading to the Chapter 11 Cases

Like much of the healthcare sector, SNF operators have experienced significant challenges and financial distress in recent years. The Company faced similar challenges to those suffered by the skilled nursing industry. In 2017 and 2018, the Company faced additional financial pressure in the form of, among other things, declining reimbursement rates, accounts receivable collection difficulties, declining census and occupancy rates, increasing Lease obligations and "above-market" Leases with various Landlords, tightening trade creditor terms, declining performance with the current portfolio for a variety of industry wide developments, and a significantly reduced working capital facility. Specifically, the Administrative Agent instituted a series of reductions to the ABL Credit Facility's borrowing base, significantly accelerated certain loan obligations, and required paydowns of amounts outstanding under the ABL Credit Facility. In 2017, the Company reported a loss of approximately $92.25 million despite generating approximately $910.42 million in revenue.

Even after the Pharmacy Sale, the Company continued to face liquidity constraints due to a number of factors and began to fall behind on lease payments. In early 2018, the Company hired Alvarez and Marsal Healthcare Industry Group, LLC ("**A&M**") in an attempt to undertake an out-of-court restructuring. A&M recommended refinancing the ABL Credit Facility, renegotiating underperforming leases, and negotiating with vendors on better pricing and terms. In June 2018, the Company engaged BDO USA, LLP ("**BDO**") to provide interim management and advisory services. The Company also formed a special Committee of the Board and engaged Kaufman Hall as financial advisor and S-4 Consulting as a consultant to evaluate strategic alternatives. Between July and November 2018, the Company explored numerous strategic alternatives including: negotiations with Landlords to restructure, reduce, or defer ongoing rent obligations; a sale or spin-off of some or all of the Company's assets; and a refinancing of the ABL Credit Facility to provide additional liquidity. In connection with this process, BDO and the Company held negotiations with lenders, landlords, potential investors, and potential acquirers in an effort to sell, recapitalize or restructure the Company and resolve the increasing financial challenges. Unfortunately, no global resolution to the Company's financial challenges outside of court was successful.

Throughout 2018, the Company was unable to stay current with its obligations under the Leases and certain Landlords declared defaults. These included prepetition notices of default from Sabra and Granite. Between May and October 2018, the Company attempted to negotiate with Sabra and Granite a "tripartite agreement," to, among other things, assist Sabra in the transition of the Sabra Facilities to a new owner, and reduce the rental obligations due under the Sabra Leases and the Granite Leases. These efforts were unsuccessful and Sabra and Granite both sent notices of termination, though the Company continues to dispute the validity and propriety of such terminations.

Despite the Pharmacy Sale and the Company's efforts to resolve its liquidity issues, the Company's finances continued to decline. This problem was further exacerbated by a series of borrowing base reductions. In April 2018, the Administrative Agent sent the Company notices of default under the ABL Facility Documents. Pursuant to those notices, the Borrowing Base was further reduced and significant paydowns were required. Additional notices of default were sent in October 2018, continuing to hamper the Company's restructuring efforts.

In mid-November 2018, Newbridge Management, LLC ("**Newbridge**") was retained to provide Kevin O'Halloran ("**Mr. O'Halloran**") as Chief Restructuring Officer ("**CRO**") to the Company. Earlier that month, on a public earnings call, one Landlord publicly announced that it had purportedly terminated its Leases with the Company. After that earnings call, the market began to react, leading to additional financial pressure from other Landlords and trade creditors. Certain vendors demanded modifications to payment terms, restricting or eliminating trade credit. Further, relationships with current and prospective employees and patients were affected by uncertainty.

The Company was unable to stabilize operations and sought relief under the Bankruptcy Code by filing these Chapter 11 Cases in an effort to preserve the value of its remaining assets for the benefit of all creditors.

9

## II. The Chapter 11 Cases

### A. Commencement of the Chapter 11 Cases and First Day Pleadings

The Debtors commenced these Chapter 11 Cases on December 4, 2018 (the "**Petition Date**")[10] by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are debtors in possession pursuant to Bankruptcy Code section 1107(a) and 1108. The Debtors remain in possession of their assets and continue to operate their business without interruption.

When the Debtors filed these Chapter 11 Cases, several goals were critical: (1) to ensure that patients in Facilities continued to receive high-quality care; (2) to use the automatic stay provided by the Bankruptcy Code to obtain a "breathing spell" to permit an orderly restructuring; (3) to transition underperforming Facilities to new operators or restructure the applicable Leases; and (4) to maximize the value of the Debtors' assets through a sale or reorganization.

To that end, contemporaneously with the filing of the petitions, the Debtors filed a number of "first day pleadings" and the Bankruptcy Court entered orders: (1) permitting the joint administration of the Chapter 11 Cases; (2) authorizing the Debtors' to file a consolidated mailing matrix and consolidated list of unsecured creditors; (3) deeming the Chapter 11 Cases as "complex cases" under the Local Rules; (4) approving the Debtors' continued use of their cash management system and business forms; (5) authorizing, but not directing, the Debtors to make certain payroll payments to employees and continue certain employee benefit plans and other practices; (6) approving the maintenance of insurance policies and the payment obligations thereunder; (7) extending their time for filing the Schedules and Statements of Financial Affairs; (8) determining that the Debtors' utility providers have been provided with adequate assurance of payment within the meaning of Bankruptcy Code section 366 and prohibiting such utility providers from altering, refusing, or discontinuing services on account of prepetition amounts outstanding and on account of any perceived inadequacy of the Debtors' proposed adequate assurance pending entry of a final order; (9) authorizing certain steps to protect confidential patient information in connection with filings in the Chapter 11 Cases; (10) authorizing, but not directing, the Debtors' to pay outstanding prepetition taxes; and (11) permitting the Debtors to maintain their patient refund programs. These first day orders allowed the Debtors to stabilize operations and effectuate procedural efficiencies in the administration of the Chapter 11 Cases.

### B. Use of Cash Collateral

One critical goal of the Debtors was to ensure sufficient liquidity to operate their businesses during the pendency of the Chapter 11 Cases and ensure there was no impact to, among other things, patient care. On the Petition Date, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II), Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Docket No. 24] (the "**Cash Collateral Motion**"). In light of the Debtors' changing business structure, the Debtors have sought several interim orders , which the Court has approved through a number of orders through June 28, 2019 [Docket Nos. 74, 75, 431,

---

[10]  Certain additional Debtors filed petitions on the January Petition Date and subsequent dates.

673, 962, 1228, 1278, and 1370] (collectively, the "**Cash Collateral Orders**"). The Cash Collateral Orders provided certain parties with adequate protection including: the Administrative Agent and the Lenders, Sabra, and certain HUD Lenders. Without the consensual use of cash collateral, the Debtors would not have been able to continue business operations in an orderly manner, support working capital needs, and adequately maintain patient care.

### C. Retention of Professionals

During the Chapter 11 Cases, the Bankruptcy Court has approved the Debtors' retention and employment of the following Professionals to assist in the administration of the Debtors' Chapter 11 Cases: (1) Polsinelli PC, as counsel to the Debtors; (2) Rochelle McCullough, LLP, as co-counsel to the Debtors; (3) Gray Robinson, P.A., as special counsel to the independent Board; (4) Omni Management Group, as the Voting and Claims Agent; (5) H2C Analytics LLC, as investment banker; (6) Newbridge, to provide a CRO; (7) BDO, to provide various officers and financial advisory support; (8) Sitrick and Company, as consultant for corporate communications and public relations; and (9) Stephen Duck, CPA, as accountant to the Debtors.

### D. Patient Care Ombudsman

On December 31, 2018, the Bankruptcy Court entered an order directing the appointment of a patient care ombudsman (the "**Patient Care Ombudsman**") pursuant to Bankruptcy Code section 333 (the "**PCO Appointment Order**") [Docket No. 233]. The U.S. Trustee appointed Martin I. Kalish, M.D. to serve as Patient Care Ombudsman [Docket No. 261]. The Bankruptcy Court approved the Patient Care Ombudsman's applications to retain Nelson Mullins Riley and Scarborough LLP and Waller Lansden Dortch & Davis, LLP as attorneys by orders dated February 21, 2019 [Docket No. 551] and February 25, 2019 [Docket No. 567].

On April 25, 2019, the Patient Care Ombudsman filed an application to retain Quality of Care Solutions LLC [Docket No 1006]. Both the Administrative Agent and the Committee objected for several reasons, including the failure of Quality of Care Solutions LLC to seek approval on a timely basis to obtain *nunc pro tunc* relief. On June 5, 2019, the Court entered an order denying the application to retain Quality of Care Solutions LLC [Docket No. 1262]. On June 18, 2019, the Patient Care Ombudsman filed a motion to reconsider the retention of Quality of Care Solutions, LLC [Docket No. 1376], which is scheduled to be heard on July 15, 2019.

### E. Appointment of the Committee

On December 14, 2018, the U.S. Trustee selected the members of the official committee of unsecured creditors (the "**Committee**") pursuant to Bankruptcy Code section 1102. On March 11, 2019, the U.S. Trustee filed an amended notice of appointment [Docket No. 659]. Presently, the Committee is composed of: (1) Shiftkey, LLC; (2) TXMS;[11] (3) Trident USA Health; (4) Performance Food Group, Inc.; (5) Acadian Ambulance Service; (6) Direct Supply, Inc.; (7) Healthcare Services Group, Inc.; (8) Joerns Healthcare LLC; (9) Medline Industries Inc.; and (10) Omnicare, Inc.

---

[11] TXMS resigned from the Committee in June 2019.

68344562.11

The Committee has retained: (1) Greenberg Traurig, LLP, as counsel; (2) FTI Consulting, Inc., as financial advisor; and (3) Blake E. Rizzo, as conflicts counsel.

### F. Lease Rejections and OTAs

Currently, the Debtors have filed four motions to reject various executory contracts and unexpired leases pursuant to Bankruptcy Code section 365. The Debtors have rejected or rejection is pending on Leases covering approximately sixty-four (64) Facilities (collectively, the "**Rejected Facilities**"). Given the nature of the Debtors' business (including the risk to the residents and necessary regulatory approvals), after rejection, the Debtors are unable to simply turn over the properties to the Landlord. Instead, the Debtors are expected to continue to operate the Rejected Facilities for the benefit of the patients and the applicable Landlord. The continued operation of the Rejected Facilities preserves the value of the underlying operations, and therefore, the value of the real estate, and more importantly, protects the patients from the risk of "transfer trauma" involved with moving the patients to alternate Facilities.

After the Landlords have identified new operators ("**New Operators**") for the Rejected Facilities and have reached agreements with the New Operators to operate the Rejected Facilities, the Debtors must: (a) agree to the terms of a settlement agreement ("**Settlement Agreement**") with the Landlord regarding the various claims associated with the applicable Lease and the Rejected Facility; and (b) agree to the terms of an operations transfer agreement ("**OTA**") with the New Operator.

The Settlement Agreements typically resolve various claims between the Landlords and the Debtors, including claims associated with prepetition rent, "stub rent", postpetition rent, fair use and occupancy, rejection damages and certain post-transition agreements. The OTAs typically include provisions regarding the transfer of operations to the New Operator pending final regulatory approvals, exchange of information and the mechanics of transition, post-closing indemnification and reconciliation regarding treatment of pre- and post-closing accounts receivable. It is typical in situations involving liquidating debtors who are transitioning operations for the benefit of the underlying landlords without any compensation (as is the case with the Rejected Facilities) for the landlords to provide the new operators with certain financial support. Each OTA and Settlement Agreement is unique given the facts and circumstances of the particular transfer.

As of June 23, 2019, the Debtors have transitioned operations of forty-five (45) Facilities, including (a) thirty-eight (38) Sabra Facilities (the "**Sabra Facilities**"); and (b) seven (7) independent Facilities (the "**Independent Facilities**"). In addition, there are twenty-nine (29) Rejected Facilities (the "**Remaining Rejected Facilities**") that have been rejected (in some cases, as of February 1, 2019) but the Landlords have not yet identified New Operators and the Debtors continue to operate such Rejected Facilities for the benefit of the applicable Landlords. Of the twenty-nine (29) Rejected Facilities, twenty-one (21) are Granite Facilities (the "**Granite Rejected Facilities**") and eight are independent Facilities (the "**Independent Rejected Facilities**").

12

### (1) Sabra Facilities

Prepetition, Sabra asserted that the leases for the Sabra Facilities had been terminated. On December 27, 2018, the Debtors filed the *Second Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Reject Certain Unexpired Leases* Nunc Pro Tunc *to the Petition Date, and (II) Granting Certain Related Relief* [Docket No. 209] (the "**Second Rejection Motion**"). Among other things, the Second Rejection Motion sought rejection of thirty (30) of the thirty-eight (38) Sabra Facilities. On January 31, 2019, the Court entered an order approving the Second Rejection Motion [Docket No. 465].

On February 26, 2019, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Approving Settlement Agreement, and (II) Granting Related Relief* [Docket No. 574] (the "**Sabra Settlement Motion**") and the [Docket No. 580] (the "**Sabra OTA Motion**"). Together, the Sabra Settlement Motion and Sabra OTA Motion sought the approval of the terms of a settlement agreement (the "**Sabra Settlement Agreement**") and OTAs (the "**Sabra OTAs**") which transferred twenty-eight (28) Sabra Facilities to New Operators on April 1, 2019 (the "**Sabra Initial Transfer Portfolio**"). The Sabra Initial Transfer Portfolio was comprised of twenty (20) Facilities in Texas and eight (8) Facilities in Louisiana.

The Sabra Settlement Agreement contemplated the payment of a $9.5 million from the Debtors to Sabra. In exchange, the Debtors received a waiver of prepetition claims of $30 million in unpaid rent and the $4.33 million of the Gamble Loan. The Debtors and Sabra also agreed to postpetition use and occupancy and stub rent payment schedule. In total, the Debtors believe that Sabra was owed at least $43.7 million, which was settled for approximately $9.5 million. Finally, the Sabra Settlement Agreement provided that the remaining ten (10) Facilities (the "**Sabra Supplemental Transfer Portfolio**") would be transferred as soon as possible and no use and occupancy payment would be due. The Court approved the Sabra Settlement Motion on March 29, 2019 [Docket No. 783] (the "**Sabra Settlement Order**").

The Sabra OTAs provided that the New Operators would assume liability for their respective Facilities as of February 15, 2019 (*i.e.*, the execution date of the Sabra OTAs) on a go-forward basis. This assumed liability included Medicaid and Medicare liability. The Court approved the Sabra OTA Motion on March 29, 2019 [Docket No. 778] (the "**Sabra OTA Order**").

On May 20, 2019, a notice was filed supplementing the Sabra OTA Order [Docket No. 1157] (the "**Sabra Supplemental Notice**"). The Sabra Supplemental Notice provided notice that eight (8) of the remaining ten (10) Facilities comprising the Sabra Supplemental Transfer Portfolio had been transferred to New Operators effective May 20, 2019. The remaining two (2) Facilities were surrendered to Sabra.

### (2) Independent Facilities

In connection with the Second Rejection Motion, several Landlords raised objections regarding the immediate payment of stub rent, payment of rent for January 2019, and post-rejection fair use and occupancy payments. The Court ruled that the Debtors were not obligated to pay stub rent immediately, but were required to pay contractual rent until such Unexpired

68344562.11

Leases were rejected. The Debtors were also obligated to pay fair use and occupancy for the post-rejection period.

Thus far, the Debtors have transitioned the following non-Sabra Facilities:

| Transitioned Facilities | Transition Date |
|---|---|
| La Hacienda SCC LLC | April 1, 2019 |
| Windmill SCC LLC | April 1, 2019 |
| PM Management – Cedar Park NC LLC | April 1, 2019 |
| PM Management – Corsicana NC, LLC | April 1, 2019 |
| SCC Socorro LLC | April 1, 2019 |
| PM Management – Babcock NC, LLC | May 1, 2019 |
| PM Management – Pflugerville AL LLC | May 1, 2019 |

While the transition of each Facility was unique, generally, the OTA and Settlement Agreement for each Facility provided that: the Landlords would retain all deposits, escrows, and impounds; the Landlord and the Debtors granted mutual releases; the Landlord waived claims for December stub rent and fair use and occupancy for February, March, and April; the New Operators were required to assume certain liabilities, including Medicare successor liability; the New Operator retained ninety percent (90%) of the Facility's employees; and pre-closing accounts receivable would remain with the Debtors. The OTAs and Settlement Agreements did not provide for the indemnification of New Operators by the Debtors.

### (3)    Remaining Rejected Facilities

There are approximately twenty-nine (29) Remaining Rejected Facilities. The following chart summarizes the Remaining Rejecting Facilities:

| Rejected Facilities | Number | Date of Rejection |
|---|---|---|
| Hospice Facilities | 4 | February 28, 2019 |
| OLP Facility | 1 | February 28, 2019 |
| Saddleback Facilities | 2 | February 28, 2019 |
| Granite Rejected Facilities | 21 | Pending |
| Willacy Facility | 1 | Pending |

### (4)    Conclusion

In connection with the Reorganized Debtors' projected post-Confirmation operations, the Debtors will continue to reject Leases and negotiate to transfer operations such that thirty-one (31)[12] Facilities with approximately six (6) Landlords will remain (the "**Reorganized Facilities**"). Additionally, the Debtors will continue to manage the Rejected Facilities post-Confirmation until applicable OTAs and Settlement Agreements are executed.

---

[12]  One Facility is both an ALF and SNF, but is the same entity.

### G. Other Postpetition Matters

#### (1) Litigation

During the Chapter 11 Cases, four adversary complaints (the "**Adversary Complaints**") were filed. Of these, two were filed by certain dental providers regarding prepetition Medicaid reimbursements (the "**Dentist Adversaries**"). One Adversary Complaint was filed by Sabra, who sought a determination that the Sabra Leases were terminated prepetition. As part of the Settlement Agreement and OTA with Sabra, this matter was dismissed.

The final Adversary Complaint was filed by the Committee relating to certain of the collateral pledged to the ABL Lenders. The Committee has also filed a motion for standing to pursue these claims, which has been continued and is pending.

In connection with the Rejected Facilities and the Court's rulings with respect to various rent issues, the Court ruled that the Debtors were not obligated to pay certain taxes asserted by Landlord, OLP Wyoming Springs, LLC ("**OLP**"). *See Order Partially Granting and Partially Denying Landlord's Request for Payment of Property Taxes Under 11 U.S.C. § 365(d)(3)* [Docket No. 1170] (the "**Property Taxes Order**"). OLP has appealed this order to the United States District Court for the Northern District of Texas. *See* Docket No. 1258.

The Debtors have also been involved in proceedings with a number of prepetition litigation parties who sought relief from the automatic stay imposed by Bankruptcy Code section 362 to continue litigation outside of the Bankruptcy Court.

#### (2) Other Rejections

In addition to the Rejected Facilities, the Debtors have also rejected other unexpired leases and executory contracts for, among other things: certain employees, equipment leases, and non-Facility leases.

#### (3) D&O Claims

As of the Petition Date, the Debtors had in place insurance policies with approximately $15 million in total limits that cover certain actions against the Debtors' directors and officers (the "**D&O Policies**"). On April 30, 2019, the Committee sent the Debtors a letter demanding $20 million in damages on account of alleged acts, omissions, breaches of fiduciary duties, self-dealing, and other wrongful conduct by the Debtors officers and directors (the "**D&O Claims**"). The Committee further demanded that the Debtors give notice to the issuers of the D&O Policies and take all actions necessary to preserve the D&O Claims and D&O Policies.

Pursuant to the Plan, the D&O Claims will be preserved and transferred to the Unsecured Creditors Trust, to be liquidated for the benefit of the Debtors' estates.

#### (4) Vendor Holds

Texas Medicaid funds represent approximately thirty percent (30%) of the Debtors' revenue and account for $25 million on a monthly basis. On May 30, 2019, the Debtors filed the

*Debtors Emergency Motion for an Order to Show Cause* [Docket No. 1213] (the "**Show Cause Motion**"). Based upon the facts underlying the Dentist Adversaries, on April 4, 2019, the Texas Health and Human Services Commission ("**HHSC**") instituted certain vendor holds (collectively, the "**Vendor Holds**") on funds due and owing to the Debtors.

Although this hold was purportedly intended to only apply to Dental Holds of $2.6 million, a full vendor hold was placed on all Texas Medicaid funds due and owing to the Debtors on account of the majority of their operations in Texas. The Vendor Hold placed on the Debtors meaning managed care organizations ("**MCOs**") could not process claims submitted by the Debtors.

The following chart summarizes the Vendor Holds:

| Category | Amount |
|---|---|
| Total Vendor Holds | $ 42,696,832 |
| Dental Holds | $ 2,600,000 |
| CHOW Holds | $ 8,591,513 |
| Early Independent CHOW Holds[13] | $ 3,001,500 |
| Early Sabra Supplemental CHOW Holds[14] | $ 4,350,000 |
| Net Claims[15] | $ 24,153,819 |
| **Total Expected to be Released[16]** | **$ 31,505,319** |

From the filing of the Show Cause Motion, the Debtors continued to work with HHSC and the MCOs to reconcile all amounts which were held back due to the vendor hold. This process, however, caused cash flow issues for the Debtors from April to June 2019. As of the date hereof, the Show Cause Motion is still pending.

### H. Schedules and Bar Dates

Each of the Debtors filed its respective schedules of assets and liabilities, schedules of executory contracts, and statements of financial affairs (collectively, the "**Schedules**") pursuant to Bankruptcy Code section 521 on January 10, 2019 and amended the Schedules on February 14, 2019. A copy of the Schedules may be obtained by (1) calling the Voting and Claims Agent at (844) 378-1143; (2) writing to Senior Care Centers, LLC et al., c/o Omni Management Group, 5955, DeSoto Avenue, Suite 100, Woodland Hills, CA 91367; (3) emailing the Voting and Claims Agent at: seniorcarecenters@omnimgt.com; and/or (4) visiting the Case Website at http://www.omnimgt.com/seniorcarecenters (documents may be downloaded for free). Parties may also obtain any documents filed in the Chapter 11 Cases for a fee via PACER at http://www.txnb.uscourts.gov.

---

[13] "Early Independent CHOW Holds" are change of ownership ("**CHOW**") Vendor Holds which the Debtors assert were implemented too early for the Independent Transferred Facilities.

[14] "Early Sabra Supplemental CHOW Holds" are CHOW Vendor Holds which were placed on the Sabra Supplemental Transfer Portfolio on April 1, 2019, though these Facilities were not transferred until May 20, 2019.

[15] "Net Claims" represents the total amount the Debtors would have expected to receive absent the Vendor Holds.

[16] "Total Expected to be Released" is the total of Early Independent CHOW Holds, Early Sabra Supplemental CHOW Holds, and Net Claims.

On March 27, 2019, the Bankruptcy Court entered an order approving, among other things: (1) May 15, 2019 at 4:00 p.m. (prevailing Central Time) as the deadline for all non-Governmental Units to File Claims in the Chapter 11 Cases; (2) July 20, 2019 at 4:00 p.m. (prevailing Central Time) as the deadline for all Governmental Units to File Claims in the Chapter 11 Cases; (3) procedures for filing proofs of Claim; and (4) the form and manner of notice of the applicable bar dates [Docket No. 766] (the "**Bar Date Order**").

Because the resolution process for Claims is ongoing, the Claims figures identified in the Disclosure Statement represent estimates only and, in particular, the estimated recoveries for Holders of General Unsecured Claims could be materially lower if the actual amounts of Allowed General Unsecured Claims are higher than current estimates.

### I.      Plan Exclusivity

Under the Bankruptcy Code, the Debtors had the exclusive right to file a chapter 11 plan through and including April 3, 2019 and the exclusive right to solicit acceptance through and including June 3, 2019 On March 28, 2019, the Bankruptcy Court entered an order [Docket No. 765] extending the time during which the Debtors have the exclusive right to File a chapter 11 plan to July 2, 2019 (the "**Exclusivity Deadline**"). The Debtors have sought an additional extension of their exclusive periods through October 30, 2019 and December 30, 2019.

### J.      Sale and Reorganization Process

Prepetition, the Debtors conducted a limited process to evaluate potential strategic alternatives with the various consultants described in Sections I.B and I.E, but did not receive any material offers. Postpetition, the Debtors retained H2C to further evaluate potential strategic alternatives, including exploring a potential 363 process and a plan sponsorship alternative. From January through March 2019, H2C ran a marketing process intended to identify potential 363 purchasers. This process did not yield any actionable offers.

H2C continues to explore a potential plan sponsorship alternative, including potential exit financing options in furtherance of a sponsored plan. The Debtors are currently evaluating several offers by parties seeking to serve as plan sponsors and lenders interested in provide exit financing. The Debtors continue to negotiate with the potential plan sponsors, in consultation with the Committee, and reserve the right to amend this Disclosure Statement and Plan to include a plan sponsor instead of the stand-alone restructuring contemplated by the Disclosure Statement and Plan.

### III.    Summary of the Plan

The following summaries certain key information contained in the Plan. This summary refers to, and is qualified in its entirety by, reference to the Plan, a copy of which is attached hereto as Exhibit B. The terms of the Plan will govern in the event any inconsistency arises between this summary and the Plan. The Bankruptcy Court has not yet confirmed the Plan described in this Disclosure Statement. In other words, the terms of the Plan do not yet bind any person or entity. If the Bankruptcy Court does confirm the Plan, it will bind all Holders of Claims or Interests.

17

### A. Treatment of Unclassified Claims

#### (1) Administrative Claims

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a less favorable treatment with the Debtors or Reorganized Debtors, as applicable, each Holder of an Allowed Administrative Claim will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Administrative Claim, an amount of Cash equal to the full unpaid amount of such Allowed Administrative Claim either (1) if the Administrative Expense is Allowed, on the Effective Date or as soon as practicable thereafter, or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; (2) if the Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order of the Bankruptcy Court Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; (3) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims; (4) at such other time that is agreed to by the Debtors and the Holders of such Allowed Administrative Claim; or (5) at such other time and on such other terms set forth by an order of the Bankruptcy Court.

Except for Administrative Claims which are Professional Fee Claims or Priority Tax Claims, requests for payment of Administrative Claims must be Filed and served on the Debtors or Reorganized Debtors, as applicable, pursuant to the procedures specified in the Confirmation Order and notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the Debtors or Reorganized Debtors, as applicable, and the requesting party no later than sixty (60) days after the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously Allowed.

#### (2) Professional Fee Claims

All requests for payment of Professional Fee Claims must be Filed no later than the Professional Fee Claims Bar Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Interim Compensation Order and the Bankruptcy Code. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court Allows following entry of an order by the Bankruptcy Court Allowing such Professional Fee Claims, including from the funds in the Professional Fee Escrow Account.

On the Effective Date, the Reorganized Debtors shall establish the Professional Fee Escrow Account in trust for the Professionals and fund it with Cash equal to the Professional Fee

18

Claims amount. Professionals shall estimate in good faith their unpaid Professional Fee Claims through the Effective Date and shall deliver such good faith estimates to the Debtors no later than five (5) Business Days prior to the anticipated Effective Date. For the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims Filed with the Bankruptcy Court. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. No funds in the Professional Fee Escrow Account shall be property of the Estates. Any funds remaining in the Professional Fee Escrow Account after all Allowed Professional Fee Claims have been paid will be turned over to the Reorganized Debtors.

From and after the Effective Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

### (3) Priority Tax Claims

Except to the extent that the Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment with the Debtors or Reorganized Debtors, as applicable, each Holder of an Allowed Priority Tax Claim will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Priority Tax Claim an amount of Cash equal to the full unpaid amount of such Allowed Tax Claim on (1) the Effective Date, (2) the first Business Day after the date that is thirty (30) calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is reasonably practicable, or (3) over a period ending not later than five (5) years after the applicable petition date.

### (4) Statutory Fees

All fees due and payable pursuant to section 1930 of title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Unsecured Creditor Trustee shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor shall remain obligated to pay the U.S. Trustee Fees until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

### B. Classification and Treatment of Claims and Interests

The Plan contemplates the following Classes:

| Class | Claim or Interest | Status | Voting Rights | Estimated Recovery |
|-------|-------------------|--------|---------------|--------------------|
| 1 | ABL Credit Facility Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept | 100% |
| 3 | Priority Unsecured Claims | Unimpaired | Deemed to Accept | 100% |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote | 40-100% |

19

| 5 | Convenience Class Claims | Impaired | Entitled to Vote | 40-100% |
|---|---|---|---|---|
| 6 | Subordinated Debt Claims | Impaired | Deemed to Reject | 0% |
| 7 | Intercompany Claims | Impaired | Deemed to Reject | 0% |
| 8 | Equity Interests | Impaired | Deemed to Reject | 0% |

### (1)    Class 1 – ABL Credit Facility Claims

*Classification*. Class 1 consists of all ABL Credit Facility Claims.

*Treatment*. Except to the extent that a Holder of an Allowed ABL Credit Facility Claim and the Debtors or the Reorganized Debtors, as applicable, agree in writing to less favorable treatment of its Allowed ABL Credit Facility Claim, each Holder of an Allowed ABL Credit Facility Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed ABL Credit Facility Claim:

(a)     payment in full in Cash of the unpaid portion of its Allowed ABL Credit Facility Claim on the Effective Date; or

(b)     payment at such time and upon other terms as the Debtors or Reorganized Debtors, as applicable, and the Holder of such Allowed ABL Credit Facility Claim may agree.

*Voting*. Class 1 is Unimpaired. Holders of Allowed ABL Credit Facility Claims in Class 1 are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f). Holders of Allowed ABL Credit Facility Claims are not entitled to vote to accept or reject the Plan.

### (2)    Class 2 – Other Secured Claims

*Classification*. Class 2 consists of all Other Secured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed Other Secured Claim and the Debtors or the Reorganized Debtors, as applicable, agree in writing to less favorable treatment of its Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Other Secured Claim:

(a)     payment in full, in Cash, of the unpaid portion of its Allowed Other Secured Claim on the following: (i) if such Allowed Other Secured Claim is Allowed as of the Effective Date, the Effective Date or as soon thereafter as reasonably practicable (or, if payment is not then due, the date such Allowed Other Secured Claim becomes due and payable, or as soon thereafter as is reasonably practicable); and (ii) if such Allowed Other Secured Claim is not Allowed as of the Effective Date, the date such Other Secured Claim is Allowed or as soon as reasonably thereafter practicable;

    (b)    a distribution of such Collateral securing the Other Secured Claim;

    (c)    a distribution of the proceeds of the sale or disposition of such Collateral securing the Other Secured Claim;

    (d)    reinstatement pursuant to Bankruptcy Code section 1124; or

    (e)    such other treatment as the Debtors or Reorganized Debtors, as applicable, and the Holder of such Allowed Other Secured Claim may agree.

*Voting.* Class 2 is Unimpaired. Holders of Allowed Other Secured Claims in Class 2 are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f). Holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

**(3)    Class 3 – Priority Unsecured Claims**

*Classification.* Class 3 consists of all Priority Unsecured Claims.

*Treatment.* Except to the extent that a Holder of an Allowed Priority Unsecured Claim and the Debtors or the Reorganized Debtors, as applicable, agree in writing to less favorable treatment of its Allowed Priority Unsecured Claim, each Holder of an Allowed Priority Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Priority Unsecured Claim:

    (a)    payment in full, in Cash, on the later of (1) the Effective Date; or (2) the date such Priority Unsecured Claim is Allowed;

    (b)    in the ordinary course of business between the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Priority Unsecured Claim; or

    (c)    payment at such time and upon other terms as the Debtors or Reorganized Debtors, as applicable, and the Holder of such Allowed Priority Unsecured Claim may agree.

*Voting.* Class 3 is Unimpaired. Holders of Allowed Priority Unsecured Claims in Class 3 are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f). Holders of Priority Unsecured Claims are not entitled to vote to accept or reject the Plan.

**(4)    Class 4 – General Unsecured Claims**

*Classification.* Class 4 consists of all General Unsecured Claims.

*Treatment.* Except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors or the Reorganized Debtors, as applicable, agree in writing to less favorable treatment of its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and

release of, and in exchange for, its Allowed General Unsecured Claim its Pro Rata share of the Unsecured Creditor Recovery.

*Voting.* Class 4 is Impaired. Holders of Allowed General Unsecured Claims in Class 4 are entitled to vote to accept or reject the Plan.

### (5) Class 5 – Convenience Class Claims

*Classification.* Class 5 consists of all Convenience Class Claims.

*Treatment.* Except to the extent that a Holder of an Allowed Convenience Class Claim and the Debtors or the Reorganized Debtors, as applicable, agree in writing to less favorable treatment of its Allowed Convenience Class Claim, each Holder of an Allowed Convenience Class Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Convenience Class Claim, its Pro Rata share of the Convenience Claim Distribution.

*Voting.* Class 5 is Impaired. Holders of Allowed General Unsecured Claims in Class 5 are entitled to vote to accept or reject the Plan.

### (6) Class 6 – Subordinated Debt Claims

*Classification.* Class 6 consists of all Subordinated Debt Claims.

*Treatment.* Holders of Subordinated Debt Claims will not receive any distribution on account of such Subordinated Debt Claims, and such Subordinated Debt Claims shall be discharged, cancelled, releases, and extinguished as of the Effective Date, and shall be of no further force or effect.

*Voting.* Class 6 is impaired. Holders of Claims in Class 6 are deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g) and are not entitled to vote to accept or reject the Plan.

### (7) Class 7 – Intercompany Claims

*Classification.* Class 7 consists of all Intercompany Claims.

*Treatment.* Holders of Intercompany Claims will not receive any distribution on account of such Intercompany Claims, and such Intercompany Claims shall be discharged, cancelled, releases, and extinguished as of the Effective Date, and shall be of no further force or effect.

*Voting.* Class 7 is impaired. Holders of Claims in Class 7 are deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g) and are not entitled to vote to accept or reject the Plan.

### (8) Class 8 – Equity Interests

*Classification.* Class 8 consists of all Equity Interests.

*Treatment*. Holders of Equity Interests will not receive any distribution on account of such Equity Interests, and Equity Interests shall be discharged, cancelled, releases, and extinguished as of the Effective Date, and shall be of no further force or effect.

*Voting*. Class 8 is Impaired. Holders of Equity Interests in Class 8 are deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g) and are not entitled to vote to accept or reject the Plan.

### C.      Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such unimpaired Claims.

### D.      Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for the purposes of determining acceptance or rejection of the plan by such Class pursuant to Bankruptcy Code section 1129(a)(8).

### E.      Acceptance or Rejection of the Plan

#### (1)      Deemed Acceptance of the Plan

ABL Credit Facility Claims (Class 1), Other Secured Claims (Class 2), and Priority Unsecured Claims (Class 3) are Unimpaired by the Plan. Pursuant to Bankruptcy Code section 1126(f), the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan and the votes of such Holders will not be solicited.

#### (2)      Deemed Rejection of the Plan

Subordinated Debt Claims (Class 6), Intercompany Claims (Class 7), and Equity Interests (Class 8) are Impaired by the Plan and shall receive no distribution under the Plan on account of such Interests. Pursuant to Bankruptcy Code section 1126(g), Holders of Subordinated Debt Claims, Intercompany Claims, Equity Interests are conclusively presumed to have rejected the Plan and the votes of such Holders will not be solicited.

#### (3)      Voting Classes

As a result of the provisions of **Error! Reference source not found.**, only the votes of Holders of Claims in Class 4 and Class 5 will be solicited with respect to the Plan.

#### (4)      Acceptance by Impaired Classes

In accordance with Bankruptcy Code section 1126(c), and except as otherwise provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall have accepted the Plan if

23

the Holders of at least two-third in dollar amount and more than one-half in number of Claims have timely and properly voted to accept the Plan.

**(5)  Confirmation Pursuant to Bankruptcy Code sections 1129(a)(10) and 1129(b)**

The Debtors seek Confirmation of the Plan pursuant to Bankruptcy Code section 1129(b) with respect to Classes 7, 8, and 9, as the Holders of Claims in Classes 7, 8, and 9 are presumed to have rejected the Plan. The Debtors also seek Confirmation of the Plan pursuant to any other Classes of Claims or Interests which vote to reject the Plan. The Debtors reserve the right to modify the Plan to the extent that Confirmation pursuant to Bankruptcy Code section 1129(b) requires modification.

**F.  Treatment of Executory Contracts and Unexpired Leases**

**(1)  Assumption of Executory Contracts and Unexpired Leases**

Except as otherwise provided herein, as of the Effective Date, all Executory Contracts and Unexpired Leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases will be deemed: (i) assumed by the applicable Debtor in accordance with, and subject to the provisions and requirements of Bankruptcy Code sections 365 and 1123; and (ii) if so indicated on the Schedule of Assumed Executory Contracts and Unexpired Leases, assigned to the other party identified as the assignee for each assumed Executory Contract and Unexpired Lease. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumption and assignment pursuant to Bankruptcy Code sections 365 and 1123. The Debtors reserve the right to reject any executory contrary or unexpired lease until the Confirmation Date.

**(2)  Cure of Defaults**

Any monetary amounts by which each executory contract and unexpired lease to be assumed is in default shall be satisfied, pursuant to Bankruptcy Code section 365(b)(1), by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to each such executory contract or unexpired lease may otherwise agree. In the event of a dispute regarding (a) the amount of any cure payments, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of Bankruptcy Code section 365) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by Bankruptcy Code section 365(b)(1) shall be made following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such motion, the executory contract or unexpired lease at issue shall be deemed assumed by the Debtors unless otherwise ordered by the Bankruptcy Court. The Debtors reserve the right to reject any executory contract or unexpired lease not later than thirty (30) days after the entry of a Final Order resolving any such dispute.

At least fourteen (14) days before the Confirmation Hearing, the Debtors will provide for notices of proposed assumption and proposed cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed

assumption or related cure amount must be Filed, served, and actually received by the Debtors at least seven (7) days before the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have consented to such assumption or proposed cure amount. If a counterparty to any executory contract or unexpired lease that the Debtors or Reorganized Debtors, as applicable intend to assume does not receive such a notice, the proposed Cure Amount for such executory contract or unexpired lease shall be deemed to be zero dollars ($0).

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Reorganized Debtors, as applicable, may add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

### (3) Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, or in any contract, instrument, release, indenture or other agreement, or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have rejected each Executory Contract and Unexpired Lease to which it is a party, unless such Executory Contract or Unexpired Lease: (1) was previously assumed or rejected; (2) was previously expired or terminated pursuant to its own terms; (3) is the subject of a motion or notice to assume filed on or before the Confirmation Date; or (4) is designated specifically or by category as an Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases. For the avoidance of doubt, any Executory Contract or Unexpired Lease which does not appear on the Schedule of Rejected Executory Contracts and Unexpired Leases and which is not subject to one of the four conditions for assumption of Executory Contracts and Unexpired Leases listed in this paragraph shall be deemed rejected.

The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b) approving the assumptions and assignments or rejections described above as of the Effective Date. Unless otherwise indicated, all assumptions and assignments or rejections of Executory Contracts and Unexpired Leases in the Plan will be effective as of the Effective Date. Each Executory Contract and Unexpired Lease assumed and assigned pursuant to the Plan or by Bankruptcy Court order, shall vest in and be fully enforceable by the applicable assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court. To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to

the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including, without limitation, any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

### (4)     Rejection Claims

Any counterparty to a contract or lease that is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases or is otherwise rejected by the Debtors must file and serve a proof of Claim on the applicable Debtor that is party to the contract or lease to be rejected no later than thirty (30) days after the later of (i) the Confirmation Date, or (ii) the effective date of rejection of such executory contract or unexpired lease.

### (5)     Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtors have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have ninety (90) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

### G.     Means for Implementation

### (1)     Substantive Consolidation

Except as otherwise expressly provided in the Plan, each Debtor shall continue to maintain its separate corporate existence for all purposes other than the treatment of Claims under the Plan and distributions from the Unsecured Creditor Trust. On the Effective Date, (1) all Unsecured Creditor Trust Assets (and all proceeds thereof) and all liabilities of each of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (2) all Intercompany Claims among the Debtors shall be eliminated and there shall be no distributions on account of such Intercompany Claims, (3) any obligation of a Debtor and any guarantee thereof by any other Debtor shall be deemed to be one obligation, and any such guarantee shall be eliminated, (4) each Claim filed or to be filed against more than one Debtor shall be deemed filed only against one consolidated Debtor and shall be deemed a single Claim against and a single obligation of the Debtors, and (5) any joint or several liability of the Debtors shall be deemed one obligation of the Debtors. On the Effective Date, and in accordance with the terms of the Plan, all Claims based upon guarantees of collection, payment or performance made by one Debtor as to the obligations of another Debtor shall be released and of no further force and effect. Such substantive consolidation shall not (other than for purposes relating to the Plan) affect the legal and corporate structures of the Reorganized Debtors.

If Bankruptcy Court does not approve the substantive consolidation of all of the Estates for the purposes set forth herein: (1) the Plan shall be treated as a separate plan of reorganization

68344562.11

for each Debtor not substantively consolidated, and (2) the Debtors shall not be required to resolicit votes with respect to the Plan.

The Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Chapter 11 Cases for the limited purposes set forth herein. If no objection to substantive consolidation is timely filed and served by any Holder of an Impaired Claim on or before the deadline to object to the confirmation of the Plan, or such other date as may be fixed by the Bankruptcy Court and the Debtors meet their burden of introducing evidence to establish that substantive consolidation is merited under the standards of applicable bankruptcy law, the Confirmation Order, which shall be deemed to substantively consolidate the Debtors for the limited purposes set forth herein, may be entered by the Bankruptcy Court. If any such objections are timely filed and served, a hearing with respect to the substantive consolidation of the Chapter 11 Cases and the objections thereto shall be scheduled by the Bankruptcy Court, which hearing shall coincide with the Confirmation Hearing.

### (2) Financing and Restructuring Transactions

On the Effective Date, or as soon thereafter as reasonably practicable, the Reorganized Debtors shall take all actions as may be necessary or appropriate to effectuate the Restructuring Transactions, including: (1) the execution, delivery, and filing, as applicable, of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation, each containing terms that are consistent in all material respects with the terms of the Plan, and that satisfy the requirements of applicable law; (2) the execution, delivery, and filing, as applicable, of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation, each on terms consistent in all material respects with the terms of the Plan; (3) the execution, delivery, and filing, as applicable, of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (4) such other transactions that are required to effectuate the Restructuring Transactions in the most tax efficient manner, as determined by the Debtors; and (5) the execution, delivery, and filing, if applicable, of the New Corporate Governance Documents, and any documentation related to the New Common Stock or the Restructuring Transactions.

### (a) Assumption of Executory Contracts and Unexpired Leases

On the Effective Date, the Debtors will assume the Executory Contracts and Unexpired Leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases pursuant to Bankruptcy Code section 1123(b)(2). Such Schedule of Assumed Executory Contracts and Unexpired Leases shall include, among other things, Unexpired Leases for Facilities.

### (b) Sources and Uses of Consideration for Plan Distributions

All Cash necessary for the Reorganized Debtors to make payments required pursuant to the Plan will be funded with Cash on hand, including Cash from operations and the proceeds of the Exit Facility and the Harden Escrow. Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors. The Reorganized Debtors will be entitled to transfer funds

between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.

### (c)     Exit Facility

The Confirmation Order shall include approval of the Exit Facility and authorization for the Reorganized Debtors to enter into and execute the Exit Facility Documents and such other documents as may be required to effectuate the treatment afforded to the lenders under the Exit Facility pursuant to the Exit Facility Documents. The Reorganized Debtors may use the Exit Facility for any purpose permitted thereunder, including the funding of obligations under the Plan and satisfaction of ongoing working capital needs.

On the Confirmation Date, (1) the Reorganized Debtors are authorized to execute and deliver the Exit Facility Documents and perform their obligations thereunder including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages, or indemnities, and (2) subject to the occurrence of the Effective Date the Exit Facility Documents shall constitute the legal, valid, and binding obligations of the Reorganized Debtors and be enforceable in accordance with their respective terms.

### (d)     Issuance of New Common Stock

On the Effective Date, the Reorganized Debtors shall be authorized to and shall issue the New Common Stock in accordance with the terms of the Plan without the need for any further corporate action. Each share of New Common Stock issued and distributed pursuant to the Plan shall be duly authorized, validly issued, and fully paid and non-assessable. Each distribution and issuance shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

On the Effective Date, the Reorganized Debtors and the Holders of New Common Stock shall enter into the New Shareholders Agreement, substantially in the form to be included in the Plan Supplement. The New Shareholders Agreement shall be binding on all parties receiving New Common Stock regardless of whether such parties execute the New Shareholders Agreement.

### (e)     Retained Claims

In accordance with Bankruptcy Code section 1123(b), the Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable,

expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, including, pursuant to Article VIII hereof, the Debtors or Reorganized Debtors, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, in no instance will any Cause of Action preserved include any claim or Cause of Action with respect to, or against, a Released Party.

In accordance with Bankruptcy Code section 1123 and except as otherwise provided herein, any Causes of Action which a Debtor may hold against any entity shall vest in the applicable Reorganized Debtor. The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.

### (f) Plan Sponsor Alternative Transaction

If the Debtors successfully identify a plan sponsor, the Debtors reserve the right to amend or withdraw the Plan and consummate an alternative plan transaction with a plan sponsor. Under any arrangement with a plan sponsor, the Unsecured Creditor Trust will be funded with proceeds from the transaction with a plan sponsor and pay Cure Claims.

### (g) Dissolution of Certain Entities

The Debtors shall identify, in the Plan Supplement, Debtors which entities will be Reorganized Debtors. All other Debtors that are not Reorganized Debtors shall be dissolved; *provided, however*, that the Debtors may supplement such list before the Effective Date consistent with the list of Rejected Facilities.

### (3) Corporate Action

On the Effective Date, or as soon thereafter as is reasonably practicable, all actions as may be necessary or appropriate to effect any transactions described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable: (1) the adoption, execution, delivery and/or filing of the New Corporate Governance Documents; (2) the selection of the directors, managers, and officers of the Reorganized Debtors; (3) the authorization, issuance, delivery, and distribution of the New Common Stock; (4) rejection, assumption, or assumption and assignment, as applicable, of the Executory Contracts and Unexpired Leases; (5) the entry into the Exit Facility Documents; (6) the adoption of the Management Incentive Plan; and (7) all other actions that may be required under applicable law.

On the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the officers or directors of the Debtors or Reorganized Debtors.

On or before the Effective Date (as applicable), the appropriate officers of the Debtors or Reorganized Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the plan (or necessary or desirable to effectuate the Restructuring Transactions) in the name and on behalf of the Reorganized Debtors.

### (4) Continued Corporate Existence

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Reorganized Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of Entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of Entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended or amended and restated by the Plan, the New Corporate Governance Documents, or otherwise, and to the extent such documents are amended or amended and restated, such documents are deemed to be amended or amended and restated pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

### (5) Vesting of Assets

Except as otherwise expressly provided in the Plan, the Confirmation Order, or any Plan Document, pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), 1141(b) and (c), and any other applicable provisions of the Bankruptcy Code, on and after the Effective Date, all property and assets of the Estates of the Debtors, including all claims, rights, and Causes of Action of the Debtors, and any other assets or property acquired by the Debtors or the Reorganized Debtors during the Chapter 11 Cases or under or in connection with the Plan, other the Unsecured Creditor Trust Assets, shall automatically, without the notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, rule or any requirement of further action, vote or other approval or authorization of the security holders, equity owners, members, managers, officers or directors of the Debtors, the Reorganized Debtors or the other applicable Entity or by any other person (except for those expressly required pursuant hereto or by the Plan Documents), vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, and other encumbrances, subject to the Restructuring Transactions and Liens, if any, which survive the occurrence of the Effective Date as described in this Plan. On and after the Effective Date, the Reorganized Debtors may operate their respective businesses and use, acquire, and dispose of their respective property, without notice to, supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the

Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

On the Effective Date, except as otherwise provided in the Plan and Confirmation Order, the Unsecured Creditor Trust Assets shall automatically vest in the Unsecured Creditor Trust and clear of all Claims, Liens, and other encumbrances.

### (6) Charter, Bylaws, and New Corporate Governance Documents

On the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors' respective certificates of incorporation and bylaws (and other formation and constituent documents relating to limited liability companies) shall be amended or amended and restated as may be required to be consistent with the provisions of the Plan, the New Corporate Governance Documents and the Exit Facility Documents. The New Corporate Governance Documents shall, among other things: (1) authorize the issuance of the New Common Stock; and (2) be modified or deemed to be modified to include a provision pursuant to and only to the extent required by Bankruptcy Code section 1123(a)(6), prohibiting the issuance of non-voting equity Securities. After the Effective Date, each Reorganized Debtor may amend and restate its certificate of incorporation and other formation and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of such documents.

### (7) Directors and Officers

On the Effective Date, all managers, directors, and other members of the existing boards or governance bodies of the Debtors, as applicable, shall cease to hold office or have any authority from and after such time to the extent not expressly included in the roster of the applicable New Board. Pursuant to Bankruptcy Code section 1129(a)(5), to the extent known, the identity of the members of the New Board will be disclosed in the Plan Supplement.

*New Board*. The New Board shall be determined in accordance with the New Shareholders Agreement.

*Management*. The existing officers of the Debtors shall remain in their current capacities as officers of the Reorganized Debtors, subject to the ordinary rights and powers of the applicable New Board to remove or replace them in accordance with the New Corporate Governance Documents.

### (8) Management Incentive Plan

The Management Incentive Plan shall be included in the Plan Supplement. On or as soon as practicable following the Effective Date, the New Board shall adopt the Management Incentive Plan.

### (9) Exemption from Registration Requirements

The offering, issuance, and distribution of all shares of New Common Stock under the Plan will be exempt from, among other things, the registration and prospectus delivery requirements under the Securities Act or any similar federal, state, or local laws in reliance upon

Bankruptcy Code section 1145 to the maximum extent permitted and applicable and, to the extent that reliance on such section is either not permitted or not applicable, the exemption set forth in section 4(a)(2) of the Securities Act.

### (10) Cancellation of Notes, Instruments, Certificates, and Other Documents

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, or in any Plan Document, on the Effective Date, all agreements, instruments, and other documents evidencing any prepetition Claim or Interest and any rights of any holder in respect thereof shall be deemed cancelled and of no force or effect. The holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan.

### (11) General Settlement of Claims and Interests

Unless otherwise set forth in the Plan, pursuant to Bankruptcy Code sections 363 and 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved by the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of Claims and Interests and is fair, equitable, and within the range of reasonableness.

### (12) Section 1146(a) Exemption

To the fullest extent permitted by Bankruptcy Code section 1146(a), any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, Security, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; (4) the grant of collateral as security for any or all of the Exit Facility; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or

any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of Bankruptcy Code section 1146(c), shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### (13) Unsecured Creditor Trust

The Unsecured Creditor Trust shall be governed and administered in accordance with the Unsecured Creditor Trust Agreement and the Plan, including, but not limited to (1) distributions to the Unsecured Creditor Trust Beneficiaries, (2) authority and appointment of the Unsecured Creditor Trustee; (3) compensation of the Unsecured Creditor Trustee; (4) vesting and management of the Unsecured Creditor Trust Assets; (5) payment of costs and expenses of the Unsecured Creditor Trust.

### H. Provisions Governing Distributions

### (1) Distributions for Claims and Interests Allowed as of the Effective Date

Except as otherwise provided herein or as ordered by the Bankruptcy Court, the Reorganized Debtors, Distribution Agent, or the Unsecured Creditor Trustee shall make distributions under the Plan on account of Allowed Claims and Allowed Interests on the Effective Date, *provided, however*, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims and Allowed Other Secured Claims shall be paid in accordance with **Error! Reference source not found.** and B(2) respectively.

### (2) Delivery of Distributions

### (a) Record Date

The Reorganized Debtors, Distribution Agent, and Unsecured Creditor Trustee will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those Holders of Allowed Claims that are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date. The Reorganized Debtors, Distribution Agent, and Unsecured Creditor Trustee shall instead be entitled to recognize and deal for all purposes under this Plan with only those record holders stated on the Claims Register as of the close of business on the Distribution Record Date.

### (b) Distribution Agent

All distributions made under the Plan that are to be made on the Effective Date shall be made by the Debtors or Unsecured Creditor Trustee as Distribution Agent or any other duly

appointed Distribution Agent, unless otherwise specified herein. A Distribution Agent shall be required to give any bond or surety or security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

### (c)    Distribution Process

Unless the Holder of an Allowed Claim against the Debtors and the Debtors or the Reorganized Debtors agrees to a different distribution date or except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed as of the Effective Date shall be made on the Effective Date or as soon as thereafter practicable. Notwithstanding the date on which any distribution of New Common Stock is actually made to a Holder of a Claim that is an Allowed Claim on the Effective Date, as of the date of the distribution such Holder shall be deemed to have the rights of a holder of such securities distributed as of the Effective Date. Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

### (d)    Fractional, Undeliverable, and Unclaimed Distributions

*Fractional Distributions*. Whenever any distribution of fractional shares of New Common Stock would otherwise be required pursuant to the Plan, the actual distribution shall reflect a rounding of such fraction to the nearest share (up or down), with half shares or less being rounded down. Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

*Undeliverable and Unclaimed Distributions*. If the distribution to any Holder of an Allowed Claim is returned to the Reorganized Debtors, Distribution Agent, or Unsecured Creditor Trustee as undeliverable or is otherwise unclaimed, no further distributions shall be made to such Holder unless and until the Reorganized Debtors, the Distribution Agent, or Unsecured Creditor Trustee is notified in writing of such Holder's then current address. Any Holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an undeliverable or unclaimed distribution within one (1) year after the Effective Date shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution against the Debtors or their Estates or the Reorganized Debtors or their property. In such cases, any Cash for distribution on account of such claims for undeliverable or unclaimed distributions shall become the property of the Estates and the Reorganized Debtors free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary. Any New Common Stock held for distribution on account of such Claim shall be cancelled and of no further force or effect. Nothing contained in this Plan shall require any Distribution Agent, including, but not limited to, the Reorganized Debtors, to attempt to locate any Holder of an Allowed Claim.

### (e)    Minimum Distributions

The Reorganized Debtors, Distribution Agent, or Unsecured Creditor Trustee shall not be required to make distributions valued at less than $50.00 (whether in Cash or New Common Stock).

### (3) Interest on Claims

Unless otherwise explicitly provided for in the Plan, the Confirmation Order, or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

### (4) Claims and Interests Paid or Payable by Third Parties

### (a) Claims and Interests Paid by Third Parties

A Claim or Interest shall be reduced in full, and such Claim or Interest shall be Disallowed without an objection to such Claim or Interest having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim or Interest receives payment in full on account of such Claim or Interest from a party that is not a Debtor or Reorganized Debtor. To the extent a holder of a Claim or Interest receives a distribution on account of such Claim or Interest and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim or Interest, such holder shall repay, return, or deliver any distribution held by or transferred to such holder to the applicable Reorganized Debtor to the extent such holder's total recovery on account of such Claim or Interest from the third party and under the Plan exceeds the amount of such Claim or Interest as of the date of any such distribution under the Plan.

### (b) Claims and Interests Payable by Insurance Carriers

No distributions under the Plan shall be made on account of an Allowed Claim or Allowed Interest that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim or Allowed Interest has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim or Interest, then immediately upon such insurers' agreement, such Claim or Interest may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Notice and Claims Agent without an objection to such Claim or Interest having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### (5) Setoffs

Except as otherwise expressly provided for herein, each Debtor or Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may, but shall not be required to, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature whatsoever that such Debtor or Reorganized Debtor, as applicable, may hold against the holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or

prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effectuate such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such holder. In no event shall any holder of Claims be entitled to setoff any such Claim against any Claim, right, or Cause of Action of any Debtor or Reorganized Debtor (as applicable) unless such holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code section 553 or otherwise.

### (6) Allocation Between Principal and Accrued Interest

Except as otherwise provided herein, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to interest, if any, on such Allowed Claim accrued and unpaid through the Effective Date.

### (7) Provisions for Resolving Disputed Claims

### (a) Disputed Claims Process

Only the Debtors, the Reorganized Debtors, Distribution Agent, or the Unsecured Creditor Trustee may object to the allowance of any Claim or Administrative Claim. Such objections shall be served and filed on or before the later of (a) one hundred eight (180) days after the Effective Date, or (b) such later date as may be fixed by the Bankruptcy Court, without any limitation of the Debtors, the Reorganized Debtors, or the Unsecured Creditor Trustee to seek additional extensions of time.

After the Effective Date, the Reorganized Debtors shall be accorded the power and authority to allow or to settle and compromise any Claim without notice to any other party, or approval of, or notice to the Bankruptcy Court.

### (b) Estimation of Claims

The Debtors, the Reorganized Debtors, or the Unsecured Creditor Trustee may at any time request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to Bankruptcy Code section 502(c), regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim. The aforementioned objection, estimation,

and resolution procedures are intended to be cumulative and rather than procedures that are exclusive of the others.

### (c)     Amendments to Claims

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court and the Reorganized Debtors or Unsecured Creditor Trustee, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

### (d)     Distributions for Disputed Claims

If an objection, motion to estimate or other challenge to a claim is filed, no payment or distribution provided under this Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as practicable after the date on which the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Unsecured Creditor Trustee shall provide the Holder of such Claim the distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required by the Bankruptcy Code.

## I.     Effect of Plan Confirmation

### (1)     Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims and Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts or Unexpired Leases with the Debtors.

### (2)     Injunction

Except as otherwise provided herein or in the Confirmation Order, all Entities that have held, hold, or may hold Claims or interests that have been released pursuant to the Plan shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties, or any of their respective properties or Estates: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering in any manner or by any means any judgment, award, decree, or order

on account of, in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind on account of, in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of, in connection with or with respect to any such Claims or Interests, unless such Entity has Filed, on or before the Confirmation Date, a motion with the Bankruptcy Court requesting the right to perform such setoff, notwithstanding any indication that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to the Plan or that is otherwise inconsistent with the provisions of the Plan.

### (3)     Exculpation

Notwithstanding anything to the contrary in the Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any cause of action, claim or other assertion of liability for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, administration, implementation or Filing of, as applicable, Plan, the Plan Supplement, the Disclosure Statement, the Exit Facility, the Exit Facility Documents, the New Corporate Governance Documents, or any other Plan Documents or contract, instrument, release or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of Confirmation, the pursuit of Consummation, the issuance of securities pursuant to the Plan, or the distribution of property under the Plan, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct. Notwithstanding anything to the contrary herein, the Exculpated Parties shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the Solicitation of, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the Solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. With respect to any Exculpated Party that is not also an Estate fiduciary, such exculpation shall be as provided for by Bankruptcy Code section 1125(e).

### (4)     Releases by the Debtors

Pursuant to Bankruptcy Code section 1123(b), and notwithstanding anything to the contrary in the Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, and to the fullest extent permitted by applicable law, in exchange for their cooperation, the Released Parties shall be deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever,

38

including any derivate claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, their Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Restructuring Transactions, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, preparation, implementation or administration of the Plan, the Plan Supplement, the Disclosure Statement, the Exit Facility, the Exit Facility Documents, the New Corporate Governance Documents, or any other Plan Documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any claim, cause of action or other assertion of liability released pursuant to the Debtor Release.

### (5) Releases by Third Parties

Notwithstanding anything to the contrary in the Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Restructuring Transactions, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, preparation, implementation or administration of the Plan, the Disclosure Statement, the Plan Supplement, the

Exit Facility, the Exit Facility Documents, the New Corporate Governance Documents, or any other Restructuring Documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good-faith settlement and compromise of the claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release.

## J. Conditions Precedent to Confirmation and Effective Date

### (1) Conditions Precedent to Confirmation

The following is the list of conditions precedent to Confirmation of the Plan:

(1) the Bankruptcy Court shall have entered an order approving the Disclosure Statement as containing adequate information and such order shall have become a Final Order that has not been stayed or modified or vacated on appeal;

(2) a form of Unsecured Creditor Trust Agreement shall be agreed upon by the Debtors and the Committee and the proposed Unsecured Creditor Trustee is identified and disclosed;

(3) the Plan Supplement is filed; and

(4) the Confirmation Order shall have been entered by the Bankruptcy Court confirming the Plan in form and substance acceptable to the Debtors, and such order shall have become a Final Order that has not been stayed or modified or vacated on appeal;

### (2) Conditions Precedent to Effective Date

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Section IX.D of this Plan:

(1) the Conditions precedent to Confirmation contained in Section IX.A are met;

(2) the Unsecured Creditor Trust Agreement shall be executed and the Unsecured Creditor Trustee shall have been appointed and accepted such appointment

40

(3)     the Exit Facility Documents shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the consummation of the Exit Facilities shall have been waived or satisfied in accordance with the terms thereof and the closing of the Exit Facilities shall occur concurrently with the occurrence of the Effective Date;

(4)     all conditions precedent to the issuance of the New Common Stock, other than any conditions related to the occurrence of the Effective Date shall have occurred;

(5)     the New Corporate Governance Documents shall have been duly filed with the applicable authorities in the relevant jurisdiction;

(6)     all governmental and material third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall be in full force and effect (which, in the case of an order of judgment of any Court, shall mean a Final Order), and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions; and

(7)     all documents and agreements necessary to implement the Plan shall have (a) been tendered for delivery, and (b) been effected or executed by all Entities party thereto, or will be deemed executed and delivered by virtue of the effectiveness of the Plan as expressly set forth herein, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

### (3)     Waiver of Conditions Precedent

The conditions to Confirmation and Effective Date set forth in this **Error! Reference source not found.** may be waived only by consent of the Debtors without any notice to other parties in interest or the Bankruptcy Court and without any formal action other than proceeding to confirm and/or consummate the Plan. The failure to satisfy any condition before the Confirmation Date or the Effective Date may be asserted by the Debtors as a reason not to seek Confirmation or declare an Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors, in their sole discretion). The failure of the Debtors, in their sole discretion, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed an ongoing right, which may be asserted at any time.

### (4)     Effect of Nonoccurrence of Conditions

If the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing

contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Person or Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## K.     Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of and related to the Chapter 11 Cases for, among other things, the following purposes:

(1)     to hear and determine all matters relating to the assumption or rejection of executory contracts or unexpired leases and the allowance of Cure amounts and Claims resulting therefrom;

(2)     to hear and determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(3)     to Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim against or Interest in a Debtor, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims and Interests

(4)     to ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

(5)     to hear and determine all requests for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Bankruptcy Code sections 330 or 503;

(6)     to hear and determine any application to modify the Plan in accordance with Bankruptcy Code section 1127, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(7)     to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing;

(8)     to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan, the

Confirmation Order or any other order of the Bankruptcy Court, except as otherwise provided herein;

(9) to issue orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan;

(10) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(11) to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(12) to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Disclosure Statement Order, the Confirmation Order, any of the Plan Documents or any other contract, instrument, release or other agreement or document related to the Plan, the Disclosure Statement or the Plan Supplement;

(13) to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

(14) to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

(15) to hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

(16) to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors or the Reorganized Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(17) to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases with respect to any Person;

(18) to take any action and issue such orders as may be necessary to construe, enforce, or implement the Exit Facility;

(19) to hear any other matter related to the Plan and not inconsistent with the Bankruptcy Code; and

(20) to enter a final decree closing the Chapter 11 Cases.

68344562.11

### L.    Miscellaneous Provisions

#### (1)    Amendment or Modification of the Plan

Alterations, amendments, or modifications of the Plan may be proposed in writing by the Debtors at any time before the Confirmation Date; provided that the Plan, as altered, amended, or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123 and the Debtors shall have complied with Bankruptcy Code section 1125. The Debtors may modify the Plan at any time after Confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and the circumstances warrant such modifications. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

#### (2)    Plan Supplement

Draft forms of certain Plan Documents and certain other documents, agreements, instruments, schedules and exhibits specified in the Plan shall, where expressly so provided for in the Plan, be contained in the Plan Supplement filed from time to time. Unless otherwise expressly provided in the Plan, the Debtors may file any Plan Supplement until five (5) days prior to the Voting Deadline and may alter, modify or amend any Plan Supplement in accordance the Plan. Holders of Claims or Interests may obtain a copy of the Plan Supplement on the Case Website or the Bankruptcy Court's Website.

#### (3)    Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

#### (4)    Governing Law

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan, an exhibit or a schedule hereto, a Plan Document or any settlement incorporated herein provide otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

#### (5)    Time

To the extent that any time for the occurrence or happening of an event as set forth in the Plan falls on a day that is not a Business Day, the time for the next occurrence or happening of said event shall be extended to the next Business Day.

68344562.11

### (6) Severability

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### (7) Revocation

The Debtors reserve the right to revoke and withdraw the Plan prior to the entry of the Confirmation Order. If the Debtors revoke or withdraw the Plan, the Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtors.

### (8) Dissolution of the Committee

On the Effective Date, the Committee shall be dissolved and its members deemed released of any continuing duties, responsibilities and obligations in connection with the Chapter 11 Cases or the Plan and its implementation, and the retention and employment of the Committee's Professionals shall terminate, except with respect to: (a) any matters concerning Distributions; (b) prosecuting applications for Professionals' compensation and reimbursement of expenses incurred as a member of the Committee; (c) asserting, disputing and participating in resolution of Professional Fee Claims; or (d) prosecuting or participating in any appeal of the Confirmation Order or any request for consideration thereof. Upon the resolution of (a) through (d), the Committee shall be immediately dissolved, released and discharged.

### (9) Reservation of Rights

The Plan shall have no force or effect unless and until entry by the Bankruptcy Court of the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

### (10) Claims Agent

Omni, in its capacity as Voting and Claims Agent, shall be relieved of such duties on the date of the entry of the Final Decree or upon written notice by the Reorganized Debtors or Unsecured Creditor Trustee.

### (11) Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### (12) Service of Documents

Any pleading, notice, or other document shall be in writing and, unless otherwise provided herein, shall be served on:

| | |
|---|---|
| **Debtors/Reorganized Debtors** | **Senior Care Centers, LLC**<br>600 North Pearl Street, Suite 1100<br>Dallas, Texas 75201<br>Attention: Kevin O'Halloran |
| **Counsel to Debtors** | **Polsinelli PC**<br>600 3rd Avenue, 42nd Floor<br>New York, New York 10016<br>Attention: Jeremy R. Johnson |
| | **Polsinelli PC**<br>2950 N. Harwood, Suite 2100<br>Dallas, Texas 75201<br>Attention: Trey A. Monsour |
| **Counsel to the Committee** | **Greenberg Traurig, LLP**<br>77 West Wacker Drive, Suite 3100<br>Chicago, Illinois 60601<br>Attention: Nancy A. Peterman |
| | **Greenberg Traurig, LLP**<br>1000 Louisiana Street, Suite 1700<br>Houston, Texas 77002<br>Attention: Shari L. Heyen |
| **United States Trustee** | **Office of the United States Trustee**<br>1100 Commerce Street, Room 976<br>Dallas, Texas 75242<br>Attention: Meredyth A. Kippes |

### (13) Entire Agreement

Except as otherwise indicated, on the Effective Date, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and

68344562.11

representations with respect to the subject matter of the Plan, all of which will have become merged and integrated into the Plan on the Effective Date.

### (14) Inconsistency

To the extent the Confirmation Order and/or the Plan is inconsistent with the Disclosure Statement or any other agreement entered into between the Debtors and any third party, the Plan shall control the Disclosure Statement and any previous agreements and the Confirmation Order shall control the Plan.

### (15) Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to Bankruptcy Code sections 1125 and 1126, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the solicitation. Accordingly, the Debtors, the Reorganized Debtors, and each of their respective Related Parties shall be entitled to, and upon the Confirmation Date are hereby granted, the protections of Bankruptcy Code section 1125(e).

## IV. Confirmation of the Plan

### A. Confirmation Hearing

Bankruptcy Code section 1128(a) requires the Bankruptcy Court, after appropriate notice, to conduct a hearing to consider confirmation of the Plan. On, or as promptly as practicable after the Plan of the Plan and Disclosure Statement, the Debtors will request that the Bankruptcy Court schedule the Confirmation Hearing for August 27 at 9:30 a.m. (prevailing Central Time). The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any subsequent adjourned confirmation Hearing.

Pursuant to the Bankruptcy Code, any objection to the Plan must: (1) be in writing; (2) conform to the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court for the Northern District of Texas, and any orders of the Bankruptcy Court; (3) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (4) be Filed with the Bankruptcy Court (contemporaneously with a proof of service) and served upon the following parties so as to be actually received on or before the Plan Objection Deadline. Unless an objection to the Plan is timely served and Filed, it may not be considered by the Bankruptcy Court.

| | |
|---|---|
| **Debtors** | **Senior Care Centers, LLC**<br>600 North Pearl Street, Suite 1100<br>Dallas, Texas 75201<br>Attention: Kevin O'Halloran |

68344562.11

| | |
|---|---|
| **Counsel to Debtors** | **Polsinelli PC**<br>600 3rd Avenue, 42nd Floor<br>New York, New York 10016<br>Attention: Jeremy R. Johnson |
| | **Polsinelli PC**<br>2950 N. Harwood, Suite 2100<br>Dallas, Texas 75201<br>Attention: Trey A. Monsour |
| **Counsel to the Committee** | **Greenberg Traurig, LLP**<br>77 West Wacker Drive, Suite 3100<br>Chicago, Illinois 60601<br>Attention: Nancy A. Peterman |
| | **Greenberg Traurig, LLP**<br>1000 Louisiana Street, Suite 1700<br>Houston, Texas 77002<br>Attention: Shari L. Heyen |
| **United States Trustee** | **Office of the United States Trustee**<br>1100 Commerce Street, Room 976<br>Dallas, Texas 75242<br>Attention: Meredyth A. Kippes |

## B.    Confirmation Standards

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of Bankruptcy Code section 1129. The Debtors believe that: (i) the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code; (ii) the Debtors have complied or will have complied with all of the requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith. Specifically, the Debtors believe that the Plan satisfies or will satisfy the applicable confirmation requirements of Bankruptcy Code section 1129 set forth below:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtors, as proponents of the Plan, have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or to be made under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been or will be disclosed to the Bankruptcy Court, and any such payment: (1) made before the Confirmation of

48

the Plan is reasonable; or (2) is subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation of the Plan.

- The Debtors will disclose, in the Plan Supplement, the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtors, an affiliate of the Debtors participating in the Plan with the Debtors, or a successor to the Debtors under the Plan. The appointment to, or continuance in, such office by such individual, will be consistent with the interests of creditors and equity security holders and with public policy and the Debtors will have disclosed the identity of any insider that the Reorganized Debtors will employ or retain, and the nature of any compensation for such insider.

- Either each Holder of an Impaired Claim will have accepted the Plan, or will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated on that date under chapter 7 of the Bankruptcy Code.

- Each Class of Claims that is entitled to vote on the Plan will either have accepted the Plan or will not be Impaired under the Plan, or the Plan can be confirmed without the approval of such Voting Class pursuant to Bankruptcy Code section 1129(b).

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Claims and Other Priority Claims will be paid in full in Cash on the Effective Date, or as soon thereafter as is reasonably practicable, and that Priority Tax Claims will be paid in accordance with Bankruptcy Code section 1129(a)(9)(C).

- At least one Class of Impaired Claims or Interests has accepted the Plan, determined without including any acceptance of the Plan by any "insider," as that term is defined by Bankruptcy Code section 101(31), holding a Claim or Interest in that Class.

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successors thereto under the Plan, unless the Plan contemplates such liquidation or reorganization.

- The Debtors have paid or the Plan provides for the payment of the required filing fees pursuant to 28 U.S.C. § 1930 to the clerk of the Bankruptcy Court.

### (1) Best Interests Test

Bankruptcy Code section 1129(a)(7) or the "best interests" test requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provide, with respect to each class, that each holder of a claim or an equity interest in such class either (1) has accepted the

plan. or (2) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor or debtors are liquidated under chapter 7 of the Bankruptcy Code. To make these findings, the Bankruptcy Court must: (1) estimate the cash liquidation proceeds that a chapter 7 trustee would generate if the chapter 11 cases were converted to a chapter 7 case and the assets of the particular debtors' estate were liquidated; (2) determine the liquidation distribution that each non-accepting holder of a claim or an equity interest would receive from such liquidation proceeds under the priority scheme dictated in chapter 7; and (3) compare such holder's liquidation distribution to the distribution under the chapter 11 plan that such holder would receive if the chapter 11 plan were confirmed.

As shown in the Debtors' Liquidation Analysis, Holders of General Unsecured Claims may not be entitled to any recovery if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. The Debtors believe that confirmation of the Plan will provide each Holder of an Allowed Claim or Equity Interest in each Class with a recovery greater than or equal to the value of any distributions if the Chapter 11 Cases were converted to a case under chapter 7 of the Bankruptcy Code because, among other reasons, proceeds received in a chapter 7 liquidation are likely to be significantly discounted due to the distressed nature of the sale of the Debtors' assets and the fees and expenses of a chapter 7 trustee would likely further reduce Cash available for distribution. In addition, distributions in a chapter 7 case may not occur for a longer period of time than distributions under the Plan, thereby reducing the present value of such distributions. In this regard, it is possible that distribution of the proceeds of a liquidation could be delayed for a significant period while the chapter 7 trustee and its advisors become knowledgeable about, among other things, the Chapter 11 Cases and the Claims against the Debtors.

The liquidation valuations in the Liquidation Analysis have been prepared solely for use in this Disclosure Statement and do not represent values that are appropriate for any other purpose. Nothing contained in the Liquidation Analysis is intended to be or constitutes a concession by or admission of the Plan proponents for any purpose.

### (2) Feasibility

Bankruptcy Code section 1129(a)(11) requires that a debtor demonstrate that a bankruptcy court's confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor or its successor under the plan, unless such liquidation or reorganization is proposed under the plan. For purposes of determining whether the Plan meets this requirement, the Debtors have analyzed their ability to meet their obligations under the Plan. As part of this analysis, the Debtors have prepared certain financial projections, which projections and the assumptions upon which they are based are attached to the Disclosure Statement (the "**Financial Projections**"). Based on these Financial Projections, the Debtors believe the feasibility standard has been met. Additionally, the Debtors believe that sufficient funds will exist to make all payments required by the Plan. The Debtors believe that confirmation and consummation is not likely to be followed by the liquidation or further reorganization of the Reorganized Debtors.

### C. Acceptance by Impaired Classes

Bankruptcy Code section 1129(b) allows a bankruptcy court to confirm a plan even if each class of claims or interests that is impaired under a plan does not vote to accept the plan so long as one impaired class of claims has voted to accept the plan. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired Class's rejection of the Plan, the Plan will be confirmed, at the Debtors' request, in a procedure commonly known as "cram down," so long as the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Class of Claims or Equity Interests that is impaired under, and has not accepted, the Plan.

#### (1) No Unfair Discrimination

The test for unfair discrimination applies to classes of claims or interests that are of equal priority and are receiving different treatment under the Plan. The test does not require that the treatment be the same or equivalent but that such treatment be "fair." In general, courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (*e.g.*, classes of the same legal character). The Debtors believe the Plan does not discriminate unfairly against any impaired class of Claims or Interests.

#### (2) Fair and Equitable

The fair and equitable requirement applies to classes of claims of different priority and status, such as secured versus unsecured. The Plan satisfies the fair and equitable requirement if no class of claims receives more than 100% of the allowed amount of the claims in such class. Further, if a class of claims is considered a dissenting class ("**Dissenting Class**"), *i.e.*, a Class of Claims that is deemed to reject the Plan because the required majorities in amount and number of votes is not received from the Class, the following requirements apply:

- Secured Claims. The condition that a plan be "fair and equitable" to a non-accepting class of secured claims includes the requirements that: (1) the holders of such secured claims retain the liens securing such claims to the extent of the allowed amount of the claims, whether the property subject to the liens is retained by the debtor or transferred to another entity under the plan; and (2) each holder of a secured claim in the class receives deferred Cash payments totaling at least the allowed amount of such claim with a present value, as of the effective date of the plan, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the liens.

- Unsecured Claims. The condition that a plan be "fair and equitable" to a non-accepting class of unsecured claims includes the requirement that either: (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) the holder of any claim or any interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or junior interest any property

- <u>Equity Interests</u>. The condition that a plan be "fair and equitable" to a non-accepting class of interests includes the requirements that either: (1) the plan provides that each holder of an interest in that class receives or retains under the plan on account of that interest property of a value, as of the effective date of the plan, equal to the greater of the allowed amount of any fixed liquidation preference to which such holder is entitled, and any fixed redemption price to which such holder is entitled; (b) the value of such interest; or (iii) if the class does not receive the amount as required under clause (i) above, no class of interests junior to the non-accepting class may receive a distribution under the plan.

The Debtors believe the Plan is fair and equitable and shall seek confirmation of the Plan under Bankruptcy Code section 1129(b) to the extent applicable.

## V.  Certain Risk Factors to be Considered Before Voting

### A.  Bankruptcy Law Considerations

#### (1)  Parties May Object to the Plan's Classification of Claims and Equity Interests

Bankruptcy Code section 1122 provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtors believe that the classification of the Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created Classes of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims or Equity Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

#### (2)  The Conditions Precedent to the Effective Date May Not Occur

As set forth more fully in Article IX of the Plan, the Effective Date is subject to a number of conditions precedent. If such conditions precedent are not met or waived, the Effective Date will not take place.

#### (3)  The Debtors May Not Obtain Sufficient Votes

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, confirmation of the Plan. In the event that sufficient votes are not received, the Debtors may seek to accomplish an alternative chapter 11 plan of reorganization. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims as those proposed in the Plan.

### (4)      The Debtors May Not be Able to Obtain Confirmation of the Plan

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting holder of an Allowed Claim or Allowed Interest might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determines that this Disclosure Statement, the balloting procedures, and voting results are appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for Confirmation are not met. If a chapter 11 plan of reorganization is not confirmed by the Bankruptcy Court, it is unclear whether the Debtors will be able to reorganize their business and what, if anything, holders of Allowed Claims against or Allowed Interests in them would ultimately receive on account of such Allowed Claims or Allowed Interests.

Confirmation of the Plan is also subject to certain conditions as described in Article IX of the Plan. If the Plan is not confirmed, it is unclear what distributions, if any, Holders of Allowed Claims and Equity Interests would receive with respect to their Allowed Claims or Equity Interests.

The Debtors, subject to the terms and conditions of the Plan, reserve the right to modify the terms and conditions of the Plan as necessary for confirmation. Any such modifications could result in less favorable treatment of any non-accepting Class, as well as any Classes junior to such non-accepting Class, than the treatment currently provided in the Plan. Such less favorable treatment could include a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution of property whatsoever under the Plan.

### (5)      Nonconsensual Confirmation May be Necessary

In the event that any impaired class of claims or interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm a plan at the proponents' request if at least one impaired class (as defined under Bankruptcy Code section 1124) has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired class(es). The Debtors believe that the Plan satisfies these requirements, and the Debtors may request such nonconsensual Confirmation in accordance with Bankruptcy Code section 1129(b). Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion. In addition, the pursuit of nonconsensual Confirmation or Consummation of the Plan may result in, among other things, increased expenses relating to professional compensation.

(6) **The Debtors May Object to the Amount or Classification of a Claim or Interest**

Except as otherwise provided in the Plan, the Debtors reserve the right to object to the amount or classification of any Claim or Interest under the Plan. The estimates set forth in this Disclosure Statement cannot be relied upon by any holder of a Claim or Interest where such Claim or Interest is subject to an objection. Any holder of a Claim or Interest that is subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

(7) **The Chapter 11 Cases May be Converted to Cases Under Chapter 7 of the Bankruptcy Code**

If no plan can be confirmed, or if the Bankruptcy Court otherwise finds that it would be in the best interest of the Debtors' creditors, any or all of the Chapter 11 Cases may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtors believe that liquidation under chapter 7 would result in no distributions being made to unsecured creditors and Debtors' equity security holders and smaller distributions being made to the Debtors' secured lenders than those provided for in the Plan because of (1) the likelihood that the assets would have to be sold or otherwise disposed of in a disorderly fashion over a short period of time, rather than the Debtors' businesses being reorganized as a going concern; (2) additional administrative expenses involved in the appointment of a trustee; and (3) additional expenses and Claims, some of which would be entitled to priority, which would be generated during the liquidation, and from the rejection of leases and other executory contracts in connection with a cessation of the Debtors' operations.

(8) **The Effective Date May Not Occur**

Although the Debtors believe that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing or as to whether the Effective Date will, in fact, occur.

(9) **Contingencies Could Affect Votes to Accept or Reject the Plan**

The distributions available to Holders of Allowed Claims and Equity Interests under the Plan can be affected by a variety of contingencies. The occurrence of any and all such contingencies, which could affect distributions available to Holders of Allowed Claims and Equity Interests under the Plan, will not affect the validity of the vote taken by the Voting Classes to accept or reject the Plan or require any sort of revote by the Impaired Classes.

(10) **Releases, Injunctions, and Exculpation Provisions May Not be Approved**

Article VIII of the Plan provides for certain releases, injunctions, and exculpations, including a release of liens and third-party releases that may otherwise be asserted against the Debtors, the Reorganized Debtors, the Exculpated Parties, or Released Parties, as applicable. The releases, injunctions, and exculpations (including, for the avoidance of doubt, the definitions of

Released Parties, Releasing Parties, and Exculpated Parties) provided in the Plan are subject to objection by parties in interest and may not be approved. If the releases are not approved, certain parties may not be considered Released Parties, Releasing Parties, or Exculpated Parties, and certain Released Parties or Exculpated Parties may withdraw their support for the Plan.

### B. Risks Related to Recoveries Under the Plan

#### (1) The Debtors May Not be Able to Achieve Their Project Financial Results

The Financial Projections represent the Debtors' management team's best estimate of the Debtors' future financial performance, which is necessarily based on certain assumptions regarding the anticipated future performance of the Debtors' operations. The Financial Projections also depend on the Debtors' ability to retain key personnel, including the implementation of the Management Incentive Plan. While the Debtors believe that the Financial Projections are reasonable, there can be no assurance that they will be realized and are subject to known and unknown risks and uncertainties, many of which are beyond their control. If the Debtors do not achieve these projected financial results, (1) the value of the Reorganized Debtors Equity may be negatively affected, (2) the Reorganized Debtors may lack sufficient liquidity to maintain operations after the Effective Date, and (3) the Reorganized Debtors may be unable to pay postpetition obligations, including repaying the Exit Facility. Moreover, the financial condition and results of operations of the Reorganized Debtors from and after the Effective Date may not be comparable to the financial condition or results of operations reflected in the Debtors' historical financial statements.

#### (2) The Reorganized Debtors Equity Will Not Be Publicly Traded

There can be no assurance that an active market for the Reorganized Debtors Equity will develop, nor can any assurance be given to the prices at which such securities may be traded. The Reorganized Debtors Equity to be issued under the Plan will not be listed or traded on any nationally recognized market or exchange. Further, the Reorganized Debtors Equity has not been registered under the Securities Act or the Exchange Act, or any state securities law, or the laws of any other jurisdiction. Absent such registration, the Reorganized Debtors Equity may be offered or sold only in transactions that are not subject to, or that are exempt from, the registration requirements of the Securities Act and other applicable securities laws. To the extent that the issuance and distribution of the Reorganized Debtors Equity are covered by Bankruptcy Code section 1145, such securities may be resold without registration under the Securities Act or other federal securities laws, unless the holder is an "underwriter" (as discussed below) with respect to such securities, as that term is defined in section 2(a)(11) of the Securities Act and in the Bankruptcy Code. Certain recipients of the Reorganized Debtors Equity will be able to resell such securities without registration pursuant to the exemption provided by Rule 144 of the Securities Act, subject to any restrictions set forth in the New Organizational Documents of the Reorganized Debtors.

### C. Risks Related to the Reorganized Debtors' Businesses

#### (1) Competition

The healthcare industry is competitive. The Reorganized Debtors will compete with other companies who provided skilled nursing, assisted living, rehabilitation, and similar services. There is no assurance that the Reorganized Debtors will be able to successfully compete and their reputation will develop and continue. Accordingly, the Debtors cannot predict what effect competitive pressures will have on the business going forward.

#### (2) Government Regulation

The healthcare industry is heavily regulated by state and federal authorities. Each state in which the Debtors has different regulations. The Debtors are required to satisfy the regulations of each state where its facilities are located. Additionally, the Debtors and the Reorganized Debtors are required to comply with certain regulatory requirements to implement the transactions contemplated by the Plan and such transactions may require certain regulatory approval. Regulation of the healthcare industry is constantly evolving. State regulations may in the future adopt new laws, regulations, and/or policies regarding a wide variety of matters related to the healthcare industry, which could directly or indirectly affect the operation, management, and/or ownership of the Facilities. The Debtors are unable to predict the content of any new regulations that may affect the business or what impact new regulations may have on the Business, including future financial performance.

### D. Risks Associated With Forward Looking Statements

The financial information contained in this Disclosure Statement has not been audited. In preparing this Disclosure Statement, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have used their reasonable business judgment to ensure the accuracy of the financial information provided in the Disclosure Statement, and while the Debtors believe that such financial information fairly reflects the financial condition of the Debtors, the Debtors are unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

The Disclosure Statement contains various projections concerning the financial results of the Reorganized Debtors' operations, including the Financial Projections, that are, by their nature, forward-looking, and which projections are necessarily based on certain assumptions and estimates. Should any or all of these assumptions or estimates ultimately prove to be incorrect, the actual future experiences of the Reorganized Debtors may turn out to be different from the Financial Projections.

Specifically, the projected financial results contained in this Disclosure Statement reflect numerous assumptions concerning the anticipated future performance of the Reorganized Debtors, some of which may not materialize, including, without limitation, assumptions concerning: (a) the timing of confirmation and consummation of the Plan in accordance with its terms; (b) the anticipated future performance of the Reorganized Debtors, including, without limitation, the Reorganized Debtors' ability to maintain or increase revenue and gross margins,

control future operating expenses or make necessary capital expenditures; (c) general business and economic conditions; (d) overall industry performance and trends; and (e) anticipated future commodity prices.

Due to the inherent uncertainties associated with projecting financial results generally, the projections contained in the Disclosure statement should not be considered assurances or guarantees of the amount of funds or the amount of claims that may be allowed in the various classes. While the Debtors believe that the Financial Projections contained in the Disclosure Statement are reasonable, there can be no assurance that they will be realized.

### E. Disclosure Statement Disclaimer

#### (1) The Information Contained in this Disclosure Statement is for Soliciting Votes

The information contained in this Disclosure Statement is for the purposes of soliciting acceptances of the Plan and may not be relied upon for any other purpose.

#### (2) The Disclosure Statement Was Not Approved by the SEC

This Disclosure Statement has not and will not be filed with the SEC or any state regulatory authority. Neither the SEC nor any state regulatory authority has approved or disapproved of the securities described in this Disclosure Statement or has passed upon the accuracy or adequacy of this Disclosure Statement, or the exhibits or the statements contained in this Disclosure Statement.

#### (3) Forward Looking Statements

This Disclosure Statement contains "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward-looking terminology such as "may," "expect," "anticipate," "estimate" or "continue" or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward- looking statements. The liquidation analysis, distribution projections and other information contained herein and attached hereto are estimates only, and the timing and amount of actual distributions to Holders of Allowed Claims may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates or recovery projections may or may not turn out to be accurate.

#### (4) No Legal or Tax Advice is Provided to you by the Disclosure Statement

**This Disclosure Statement is not legal advice to you.** The contents of this Disclosure Statement should not be construed as legal, business or tax advice. Each Holder of a Claim or an Equity Interest should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim or Equity Interest. This Disclosure

57

Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

### (5) No Admissions Made

The information and statements contained in this Disclosure Statement will neither (1) constitute an admission of any fact or liability by any Entity (including, without limitation, any Debtor) nor (2) be deemed evidence of the tax or other legal effects of the Plan on the Debtors, the Reorganized Debtors, Holders of Allowed Claims or Equity Interests or any other parties in interest.

### (6) No Waiver of Right to Object or Right to Recover Transfers and Assets

The vote by a holder of a Claim or Interest for or against the Plan does not constitute a waiver or release of any claims, causes of action, or rights of the Debtors (or any Entity, as the case may be) to object to that holder's Claim or Interest, or recover any preferential, fraudulent, or other voidable transfer of assets, regardless of whether any claims or causes of action of the Debtors or their respective Estates or the Reorganized Debtors are specifically or generally identified in this Disclosure Statement.

### (7) Information Was Provided by the Debtors and Relied Upon by the Debtors' Advisors

The Debtors' advisors have relied upon information provided by the Debtors in connection with the preparation of this Disclosure Statement. Although the Debtors' advisors have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently the information contained in this Disclosure Statement.

### (8) Potential for Inaccuracies and No Duty to Update

The statements contained in this Disclosure Statement are made by the Debtors as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date. While the Debtors have used their reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtors nonetheless cannot, and do not, confirm the current accuracy of all statements appearing in this Disclosure Statement. Further, although the Debtors may subsequently update the information in this Disclosure Statement, the Debtors have no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

### (9) No Representations Outside this Disclosure Statement Are Authorized

No representations concerning or relating to the Debtors, the Chapter 11 Cases or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure

Statement, should not be relied upon by you in arriving at your decision. You should promptly report unauthorized representations or inducements to counsel to the Debtors and the United States Trustee.

### (10) Failure to Identify Litigation Claims or Projected Objections

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim or Interest is, or is not, identified in this Disclosure Statement. The Debtors or Reorganized Debtors, as applicable, may seek to investigate, File, and prosecute Claims and Interests and may object to Claims or Interests after the Confirmation or Effective Date of the Plan irrespective of whether this Disclosure Statement identifies such Claims or Interests or objections to such Claims or Interests.

## VI. Alternatives to the Plan

### A. Chapter 7 Liquidation

If the Plan or an alternative chapter 11 plan of reorganization cannot be confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code in which case, a trustee would be elected or appointed to liquidate the Debtors' assets. A discussion of the effect a chapter 7 liquidation would have on the recovery of Holders of Claims is set forth in Section IV.B herein, titled "Confirmation Standards." The Debtors believe that liquidation under chapter 7 would result in (1) smaller or equal distributions being made to creditors entitled to a recovery than those provided for in the Plan based on the liquidation value of the Debtors' assets and because of the additional administrative expenses involved in the appointment of a trustee and attorneys and other professionals to assist such trustee, (2) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation and from the rejection of unexpired leases and executory contracts in connection with the cessation of the Debtors' operations, and (3) the failure to realize the greater, going-concern value of all of the Debtors' assets.

### B. Alternative Plan

If the Plan is not confirmed, the Debtors or any other party in interest could attempt to formulate a different chapter 11 plan of reorganization. Such a plan might involve either a reorganization and continuation of the Debtors' businesses or an orderly liquidation of the Debtors' assets.

The Debtors believe that the Plan enables the Debtors to emerge from chapter 11 successfully and expeditiously, preserving their businesses and allowing their creditors to realize the highest recoveries under the circumstances. In a liquidation under chapter 11 of the Bankruptcy Code, the assets of the Debtors would be sold in an orderly fashion over a more extended period of time than in a liquidation under chapter 7, and a trustee need not be appointed. Accordingly, creditors would receive greater recoveries than in a chapter 7 liquidation. Although a chapter 11 liquidation is preferable to a chapter 7 liquidation, the Debtors believe that a liquidation under chapter 11 is a much less attractive alternative to creditors than the Plan because the Plan provides for a greater return to creditors.

The prolonged continuation of the Chapter 11 Cases is likely to adversely affect the Debtors' businesses and operations. Among other things, the longer the Chapter 11 Cases continue, the more likely it is that the Debtors' vendors and service providers will lose confidence in the Debtors' ability to reorganize their businesses successfully and will seek to establish alternative commercial relationships. Furthermore, so long as the Chapter 11 Cases continue, the Debtors will be required to incur substantial costs for professional fees and other expenses associated with the proceedings. In addition, the Debtors may no longer be permitted to use cash collateral on a consensual basis. Under these circumstances, it is unlikely the Debtors could successfully reorganize without damage to their business operations and material decreases in recoveries for creditors.

## VII.    Certain Securities Law Matters

### A.    Issuance of New Common Stock

On the Effective Date, the Reorganized Debtors shall be authorized to and shall issue the New Common Stock in accordance with the terms of the Plan. The New Common Stock shall be distributed to the Unsecured Creditor Trustee for the benefit of the Unsecured Creditor Trust Beneficiaries.

In reliance upon Bankruptcy Code section 1145, the offer and/or issuance of the New Common Stock by the Reorganized Debtors is exempt from registration under the Securities Act of 1933 (as amended, the "**Securities Act**.") and any equivalent securities law provisions under state law.

### B.    Cancellation of Existing Equity Interests

Except for purposes of evidencing a right to distributions under the Plan, on the Effective Date, all agreements and other documents evidencing Claims or rights of any Holder of a Claim against the Debtors and any options or warrants to purchase Equity Interests, or obligating the Debtors to issue, transfer, or sell Equity Interests or any other capital stock of the Debtors, shall be cancelled and discharged. The Plan and Confirmation Order will extinguish all issued and outstanding shares of stock and other Equity Interests of the Debtors.

## VIII.    Certain U.S. Federal Income Tax Consequences to the Plan

### A.    Consequences to Debtors

Under the Tax Code, a U.S. taxpayer generally must include in gross income the amount of any cancellation of indebtedness ("**COD**") income recognized during the taxable year. COD income generally equals the excess of the adjusted issue price of the indebtedness discharged over the sum of (i) the amount of cash, (ii) the issue price of any new debt, and (iii) the fair market value of any other property (including stock) transferred by the debtor in satisfaction of such discharged indebtedness. COD income also includes any interest that has been previously accrued and deducted but remains unpaid at the time the indebtedness is discharged.

Section 108(a)(l)(A) of the Tax Code provides an exception to this rule, however, where a taxpayer is in bankruptcy and where the discharge is granted, or is effected pursuant to a plan

approved, by the bankruptcy court. In such a case, instead of recognizing income, the taxpayer is required, under Section 108(b) of the Tax Code, to reduce certain of its tax attributes by the amount of COD income. The attributes of the taxpayer are to be reduced in the following order: current year Net Operating Losses ("**NOLs**") and NOL carryovers, general business and minimum tax credit carryforwards, capital loss carryforwards, the basis of the taxpayer's assets, and finally, foreign tax credit carryforwards. The reduction in the foregoing tax attributes generally occurs after the calculation of a debtor's tax for the year in which the debt is discharged. Section 108(b)(5) of the Tax Code permits a taxpayer to elect to first apply the reduction to the basis of the taxpayer's depreciable assets, with any remaining balance applied to the taxpayer's other tax attributes in the order stated above. In addition to the foregoing, Section 108(e)(2) of the Tax Code provides a further exception to the realization of COD income upon the discharge of debt in that a taxpayer will not recognize COD income to the extent that the taxpayer's satisfaction of the debt would have given rise to a deduction for federal income tax purposes.

The Debtors may realize COD income as a result of the Plan. The ultimate amount of any COD income realized by the Debtors is uncertain because, among other things, it will depend on the fair market value of all debt and equity securities issued to holders of claims issued on the Effective Date.

In general, if a debtor conveys appreciated (or depreciated) property (i.e., property having an adjusted tax basis less (or greater) than its fair market value) to a creditor in cancellation of debt, the debtor must recognize taxable gain or loss (which may be ordinary income or loss, capital gain or loss, or a combination of each) equal to the excess or shortfall, respectively, of such fair market value over the debtor's adjusted tax basis in such property. However, the Debtors expect to not have any federal income tax liability arising from any transfers under the 9019 Settlement Order and as a result of consummation of the Plan since there should be sufficient NOLs and NOL carryovers to offset any gain recognized as a result of transfers of appreciated property to creditors in cancellation of debt. Further, to the extent that the amount of the debt to be satisfied or discharged exceeds the fair market value of any property transferred to creditors in cancellation of that debt, this will result in COD income, which will be excluded from income pursuant to chapter 11. The amount of the COD excluded from income will reduce the NOL carryovers in a like amount as of the first day of the next taxable year following consummation of the Plan.

## B.      Consequences to Holders of Allowed Claims

The tax consequences of the Plan are complex and specific to individual Holders of Claims and Equity Interests. All Holders of Claims and Equity Interests should consult with their own tax advisors as to the particular tax consequences to them of the transactions contemplated by the Plan, including the applicability of any state, local, or foreign tax laws and of any change in applicable tax laws.

61

## IX. Recommendation of the Debtors

The Debtors believe the Plan is in the best interests of all creditors, equity interest holders, and the Estates and urge the holders of Impaired Claims and Interests entitled to vote to accept the Plan and to evidence such acceptance by properly voting and timely returning their ballots

Dated: June 24, 2019
　　　　Dallas, Texas

/s/　　　Kevin O'Halloran
_____
Kevin O'Halloran
Chief Restructuring Officer
Senior Care Centers, LLC

## Exhibit A

List of Debtors and Borrowers

| Debtor Name | DBA name | Case No. | ABL Status |
|---|---|---|---|
| Alief SCC LLC | Senior Care of Westwood | 18-33987 | Non-HUD Borrower |
| Bandera SCC LLC | Bandera Nursing & Rehab Center | 18-33989 | Non-HUD Borrower |
| Baytown SCC LLC | Baytown Nursing & Rehab Center | 18-33992 | Non-HUD Borrower |
| Beltline SCC LLC | Senior Care Beltline | 18-33996 | HUD Borrower |
| Booker SCC LLC | SCC of Booker T. Washington Rehabilitation Center | 18-33999 | Non-HUD Borrower |
| Bossier SCC LLC | SCC of Pilgrim Manor Rehabilitation Center | 18-34003 | Non-HUD Borrower |
| Bradford SCC LLC | SCC of Bradford Rehabilitation Center | 18-34004 | Non-HUD Borrower |
| Brinker SCC LLC | Senior Care at Denton Post Acute Care | 18-34005 | HUD Borrower |
| Brownwood SCC LLC | Senior Care of Brownwood | 18-33968 | Non-HUD Borrower |
| Capitol SCC LLC | West Oaks Nursing & Rehab Center (Senior Care of West Oaks) | 18-34006 | Non-HUD Borrower |
| CapWest-Texas LLC | | 18-34008 | Non-HUD Borrower |
| Cedar Bayou SCC LLC | Cedar Bayou Nursing & Rehab Center | 18-34010 | Non-HUD Borrower |
| Clear Brook SCC LLC | SCC at Clear Brook Crossing Rehabilitation and Healthcare Center | 18-34012 | Non-HUD Borrower |
| Colonial SCC LLC | SCC of Colonial Oaks Rehabilitation Center | 18-34014 | Non-HUD Borrower |
| Community SCC LLC | Senior Care at Stephenville | 18-33969 | Non-HUD Borrower |
| Corpus Christi SCC LLC | Senior Care of Corpus Christi SNF | 18-34016 | HUD Borrower |
| Crestwood SCC LLC | Free State Crestwood | 18-34017 | HUD Borrower |
| Crowley SCC LLC | Senior Care of Crowley | 18-33970 | Non-HUD Borrower |
| CTLTC Real Estate, LLC | | 18-34018 | Non-HUD Borrower |
| Fairpark SCC LLC | Senior Care Health and Rehabilitation Center--Dallas | 18-34020 | Non-HUD Borrower |
| Gamble Hospice Care Central, LLC | AIME Hospice Care | 18-34022 | HUD Borrower |
| Gamble Hospice Care Northeast, LLC | AIME Hospice Care | 18-34025 | Excluded Debtor |
| Gamble Hospice Care Northwest, LLC | AIME Hospice Care | 18-34027 | Excluded Debtor |
| Gamble Hospice Care of Cenla, LLC | AIME Hospice Care | 18-34029 | Excluded Debtor |
| Green Oaks SCC LLC | Senior Care of Green Oaks | 18-33971 | Non-HUD Borrower |
| Harbor Lakes SCC LLC | Senior Care of Harbor Lakes | 18-33972 | Non-HUD Borrower |
| Harden HUD Holdco LLC | | 18-34032 | Non-HUD Borrower |
| Harden Non-HUD Holdco LLC | | 18-34035 | Non-HUD Borrower |
| Harden Pharmacy LLC | | 18-34036 | HUD Pledgor |

| Hearthstone SCC LLC | Hearthstone SN Health Center | 18-34037 | HUD Borrower |
| Hewitt SCC LLC | Senior Care of Hewitt | 18-33973 | Non-HUD Borrower |
| HG SCC LLC | Honey Grove Nursing Center | 18-34040 | HUD Borrower |
| HHC Portland AL, LP | | 19-31719 | Non-HUD Borrower |
| Hill Country SCC LLC | Hill Country Care | 18-34043 | Non-HUD Borrower |
| Holland SCC LLC | Senior Care at Holland Lake | 18-33974 | Non-HUD Borrower |
| Hunters Pond SCC LLC | SCC at Hunters Pond Rehabilitation and Healthcare Center | 18-34045 | Non-HUD Borrower |
| Jacksonville SCC LLC | Senior Care of Jacksonville | 18-34046 | Non-HUD Borrower |
| La Hacienda SCC LLC | La Hacienda Nursing & Rehab Center | 18-34049 | Non-HUD Borrower |
| Lakepointe SCC LLC | Senior Care at Lake Pointe | 18-34050 | HUD Borrower |
| Major Timbers LLC | | 18-34052 | Non-HUD Borrower |
| Marlandwood East SCC LLC | Senior Care of Marlandwood East | 18-34054 | Non-HUD Borrower |
| Marlandwood West SCC LLC | Senior Care of Marlandwood West | 18-34058 | HUD Borrower |
| Meadow Creek SCC LLC | Senior Care of Meadow Creek | 18-34064 | Non-HUD Borrower |
| Midland SCC LLC | Senior Care of Midland | 18-34065 | Non-HUD Borrower |
| Mill Forest Road SCC LLC | The Pointe Nursing & Rehab Center | 18-34066 | Non-HUD Borrower |
| Mission SCC LLC | Mission Nursing and Rehabilitation Center | 18-33975 | Non-HUD Borrower |
| Mullican SCC LLC | Mullican Care Center | 18-34067 | HUD Borrower |
| Mystic Park SCC LLC | Mystic Park Nursing & Rehab Center | 18-34068 | Non-HUD Borrower |
| Normandie SCC LLC | The Guest House Rehabilitation Center | 18-34069 | Non-HUD Borrower |
| Onion Creek SCC LLC | Senior Care of Onion Creek | 18-34070 | Non-HUD Borrower |
| Park Bend SCC LLC | Park Bend SN Health Center | 18-34071 | HUD Borrower |
| Pasadena SCC LLC | Paramount Senior Care Centers at Pasadena | 18-34072 | Non-HUD Borrower |
| Pecan Tree SCC LLC | Pecan Tree Rehab and Healthcare Center | 18-34073 | Non-HUD Borrower |
| Pecan Valley SCC LLC | SCC at Pecan Valley Rehabilitation and Healthcare Center | 18-34074 | Non-HUD Borrower |
| Pleasantmanor SCC LLC | Pleasant Manor Health and Rehabilitation Center | 18-34075 | HUD Borrower |
| PM Management - Allen NC LLC | Victoria Gardens of Allen | 18-34076 | HUD Borrower |
| PM Management - Babcock NC LLC | Mesa Vista Inn Health Center | 18-34077 | Non-HUD Borrower |
| PM Management - Cedar Park NC LLC | Cottonwood Creek Nursing and Rehabilitation Center | 18-34078 | Non-HUD Borrower |
| PM Management - Corpus Christi NC II LLC | Trisun Care Center - River Ridge | 18-34079 | Non-HUD Borrower |
| PM Management - Corpus Christi NC III LLC | Trisun Care Center - Westwood | 18-34080 | Non-HUD Borrower |
| PM Management - Corsicana NC II LLC | Heritage Oaks Retirement Village | 18-34081 | Non-HUD Borrower |

| PM Management - Corsicana NC III LLC | Heritage Oaks West Retirement Village | 18-34082 | Non-HUD Borrower |
|---|---|---|---|
| PM Management - Corsicana NC LLC | Trisun Care Center - Corsicana | 18-34083 | Non-HUD Borrower |
| PM Management - Denison NC LLC | The Homestead of Denison | 18-34084 | HUD Borrower |
| PM Management - El Paso I NC LLC | Trisun Care Center - Northeast El Paso | 18-34085 | Non-HUD Borrower |
| PM Management - Fredericksburg NC LLC | Windcrest Nursing and Rehabilitation Center | 18-34086 | HUD Borrower |
| PM Management - Frisco NC LLC | Victoria Gardens of Frisco | 18-34087 | HUD Borrower |
| PM Management - Garland NC LLC | Winters Park Nursing and Rehabilitation Center | 18-33979 | HUD Borrower |
| PM Management - Golden Triangle NC I LLC | Summer Place Nursing & Rehabilitation | 18-33980 | Non-HUD Borrower |
| PM Management - Golden Triangle NC II LLC | The Meadows of Orange | 18-33981 | Non-HUD Borrower |
| PM Management - Golden Triangle NC III LLC | Cypress Glen | 18-33982 | Non-HUD Borrower |
| PM Management - Golden Triangle NC IV LLC | Lake Arthur Place | 18-33983 | Non-HUD Borrower |
| PM Management - Killeen I NC LLC | The Rosewood Retirement Community | 18-33984 | Excluded Debtor |
| PM Management - Killeen II NC LLC | Indian Oaks Living Center | 18-33985 | Excluded Debtor |
| PM Management - Killeen III NC LLC | Hill Country Rehab and Nursing Center | 18-33986 | Excluded Debtor |
| PM Management - Lewisville NC LLC | Vista Ridge Nursing and Rehabilitation Center | 18-33988 | HUD Borrower |
| PM Management - New Braunfels NC LLC | Sundance Inn Health Center | 18-33990 | Excluded Debtor |
| PM Management - Park Valley NC LLC | Park Valley Inn Health Center | 18-33991 | Excluded Debtor |
| PM Management - Pflugerville AL LLC | Heatherwilde Assisted Living | 18-33993 | Non-HUD Borrower |
| PM Management - Portfolio IX NC LLC | | 19-30253 | Excluded Debtor |
| PM Management - Portfolio V NC, LLC | | 19-30249 | Non-HUD Borrower |
| PM Management - Portfolio VI NC LLC | | 19-30250 | HUD Borrower |
| PM Management - Portfolio VII NC LLC | | 19-30251 | Non-HUD Borrower |
| PM Management - Portfolio VIII NC LLC | | 19-30252 | Excluded Debtor |
| PM Management - Portland AL LLC | Trisun Assisted Living - Pavilion | 18-33994 | Non-HUD Borrower |
| PM Management - Portland NC LLC | Trisun Care Center - Coastal Palms | 18-33995 | Non-HUD Borrower |
| PM Management - Round Rock AL LLC | Wyoming Springs Assisted Living and Memory Center Care | 18-33997 | Non-HUD Borrower |
| PM Management - San Antonio AL LLC | Lakeside Assisted Living by Trisun Healthcare | 19-30254 | Non-HUD Borrower |

3

| PM Management - San Antonio NC LLC | Lakeside Assisted Living by Trisun Healthcare | 18-33998 | Non-HUD Borrower |
|---|---|---|---|
| Presidential SCC LLC | Paramount Senior Care Centers at San Antonio | 18-34000 | Non-HUD Borrower |
| Redoak SCC LLC | Red Oak Health and Rehabilitation Center | 18-33976 | Non-HUD Borrower |
| Riverside SCC LLC | Riverside Nursing & Rehab Center | 18-34001 | Non-HUD Borrower |
| Round Rock SCC LLC | Trinity Care Center | 18-34002 | HUD Borrower |
| Rowlett SCC LLC | Rowlett Health and Rehabilitation Center | 18-34007 | Non-HUD Borrower |
| Ruston SCC LLC | SCC of Alpine Rehabilitation Center | 18-34009 | Non-HUD Borrower |
| RW SCC LLC | Rockwall Nursing Care Center | 18-34011 | HUD Borrower |
| Sagebrook SCC LLC | Sagebrook SN Health Center | 18-34013 | HUD Borrower |
| San Angelo SCC LLC | Senior Care of San Angelo | 18-34015 | Non-HUD Borrower |
| San Antonio SCC, LLC | | 19-30261 | Excluded Debtor |
| SCC Edinburg LLC | Senior Care of Edinburg | 18-34019 | Non-HUD Borrower |
| SCC Hospice Holdco LLC | | 18-34021 | Excluded Debtor |
| SCC Senior Care Investments LLC | | 18-34023 | Non-HUD Borrower |
| SCC Socorro LLC | Las Ventanas de Socorro | 18-34024 | Non-HUD Borrower |
| Senior Care Center Management II LLC | | 18-34026 | Excluded Debtor |
| Senior Care Center Management LLC | | 18-34028 | Non-HUD Borrower |
| Senior Care Centers Home Health, LLC | | 18-34030 | Non-HUD Borrower |
| Senior Care Centers LLC | | 18-33967 | Non-HUD Guarantor / Non-HUD Pledgor / HUD Guarantor / HUD Pledgor |
| Senior Rehab Solutions LLC | | 18-34031 | Non-HUD Borrower |
| Senior Rehab Solutions North Louisiana LLC | | 18-34033 | Excluded Debtor |
| Shreveport SCC LLC | SCC of Shreveport Manor Rehabilitation Center | 18-34034 | Non-HUD Borrower |
| Solutions 2 Wellness LLC | | 18-34038 | Non-HUD Borrower |
| South Oaks SCC LLC | Brodie Ranch Nursing & Rehab Center | 18-34039 | Non-HUD Borrower |
| Springlake ALF SCC LLC | The Gables at Spring Lake | 18-34041 | Non-HUD Borrower |
| Springlake SCC LLC | SCC of Springlake Rehabilitation Center | 18-34042 | Non-HUD Borrower |
| Stallings Court SCC LLC | Senior Care of Stallings Court | 18-33977 | Non-HUD Borrower |
| Stonebridge SCC LLC | Stonebridge SN Health Center | 18-34044 | HUD Borrower |
| Stonegate SCC LLC | Senior Care of Stonegate | 18-33978 | Non-HUD Borrower |
| Summer Regency SCC LLC | Regency House | 18-34047 | HUD Borrower |
| TRISUN Healthcare LLC | | 18-34048 | Non-HUD Borrower |
| Valley Grande SCC LLC | SCC at Valley Grande | 18-34051 | Non-HUD Borrower |
| Vintage SCC LLC | Vintage Health Care Center | 18-34053 | HUD Borrower |
| West Oaks SCC LLC | West Oaks Nursing & Rehab Center | 18-34055 | Non-HUD Borrower |
| Western Hills SCC LLC | Senior Care of Western Hills | 18-34056 | Non-HUD Borrower |

4

| | | | |
|---|---|---|---|
| Weston Inn SCC LLC | Senior Care of Weston Inn | 18-34057 | Non-HUD Borrower |
| Westover Hills SCC LLC | SCC at Westover Hills Rehabilitation and Healthcare Center | 18-34059 | Non-HUD Borrower |
| Whitesboro SCC LLC | Whitesboro Health and Rehabilitation Center | 18-34060 | HUD Borrower |
| Windcrest SCC LLC | Senior Care of Windcrest | 18-34061 | HUD Borrower |
| Windmill SCC LLC | Windmill Nursing & Rehab Center | 18-34062 | Non-HUD Borrower |
| Wurzbach SCC LLC | Senior Care of Wurzbach | 18-34063 | HUD Borrower |

68344562.11

## Exhibit B

Plan of Reorganization

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| Senior Care Centers, LLC, *et al.*,[1] | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## DEBTORS' PLAN OF REORGANIZATION UNDER CHAPTER 11
## OF THE BANKRUPTCY CODE

**POLSINELLI PC**

Trey A. Monsour
State Bar No. 14277200
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

Stephen J. Astringer (Admitted *Pro Hac Vice*)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
sastringer@polsinelli.com

*Counsel to the Debtors and Debtors in
Possession*

Dated: June 24, 2019

---

[1] The Debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 569] and may also be found on the Debtors' claims agent's website at https://omnimgt.com/SeniorCareCenters. The location of the Debtors' service address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

## TABLE OF CONTENTS

**Article I. Definitions and Construction of Terms** ................................................................... **1**

   A. Definitions .................................................................................................................... 1

   B. Interpretation, Application of Definitions, and Rules of Construction ......................... 13

**Article II. Unclassified Claims** ................................................................................................ **14**

   A. Treatment of Administrative Claims ........................................................................... 14

   B. Treatment of Professional Fee Claims ........................................................................ 15

   C. Priority Tax Claims ..................................................................................................... 15

   D. Statutory Fees ............................................................................................................. 16

**Article III. Classification and Treatment of Claims and Interests** ....................................... **16**

   A. Classification and Treatment of Claims and Equity Interests ...................................... 16

      **(1)** Class 1 – ABL Credit Facility Claims ............................................................... 17

      **(2)** Class 2 – Other Secured Claims ...................................................................... 17

      **(3)** Class 3 – Priority Unsecured Claims ............................................................... 18

      **(4)** Class 4 – General Unsecured Claims ............................................................... 18

      **(5)** Class 5 – Convenience Class Claims ............................................................... 19

      **(6)** Class 6 – Subordinated Debt Claims ............................................................... 19

      **(7)** Class 7 – Intercompany Claims ....................................................................... 19

      **(8)** Class 8 – Equity Interests ............................................................................... 19

   B. Special Provision Governing Unimpaired Claims ...................................................... 20

   C. Elimination of Vacant Classes .................................................................................... 20

**Article IV. Acceptance or Rejection of the Plan** ..................................................................... **20**

   A. Deemed Acceptance of the Plan .................................................................................. 20

   B. Deemed Rejection of the Plan ..................................................................................... 20

   C. Voting Classes ............................................................................................................ 20

   D. Acceptance by Impaired Classes ................................................................................ 20

   E. Confirmation Pursuant to Bankruptcy Code sections 1129(a)(10) and 1129(b) ........... 21

**Article V. Treatment of Executory Contracts and Unexpired Leases** ................................... **21**

   A. Assumption of Executory Contracts and Unexpired Leases ......................................... 21

   B. Cure of Defaults ......................................................................................................... 21

   C. Rejection of Executory Contracts and Unexpired Leases ............................................ 22

   D. Rejection Claims ........................................................................................................ 23

E.     Reservation of Rights ................................................................................................. 23

**Article VI.    Means for Implementation ............................................................................. 23**

A.     Substantive Consolidation ...................................................................................... 23

B.     Financing and Restructuring Transactions .............................................................. 24

     (1)    Sources of Consideration for Plan Distributions ............................................. 24

     (2)    Exit Facility .................................................................................................... 25

     (3)    Issuance of New Common Stock .................................................................... 25

     (4)    Retained Claims ............................................................................................. 25

     (5)    Plan Sponsor Alternative Transaction ............................................................ 26

     (6)    Dissolution of Certain Entities ....................................................................... 26

C.     Corporate Action .................................................................................................... 26

D.     Continued Corporate Existence ............................................................................... 27

E.     Vesting of Assets .................................................................................................... 27

F.     Charter, Bylaws, and New Corporate Governance Documents ................................... 28

G.     Directors and Officers ............................................................................................. 28

H.     Management Incentive Plan ..................................................................................... 28

I.     Exemption from Registration Requirements ............................................................ 28

J.     Cancellation of Notes, Instruments, Certificates, and Other Documents ..................... 29

K.     General Settlement of Claims and Interests .............................................................. 29

L.     Section 1146(a) Exemption ..................................................................................... 29

M.     Unsecured Creditor Trust ....................................................................................... 30

**Article VII.    Provisions Governing Distributions ............................................................. 30**

A.     Distributions for Claims and Interests Allowed as of the Effective Date ..................... 30

B.     Delivery of Distributions ........................................................................................ 30

     (1)    Record Date .................................................................................................... 30

     (2)    Distribution Agent .......................................................................................... 30

     (3)    Distribution Process ........................................................................................ 31

     (4)    Fractional, Undeliverable, and Unclaimed Distributions .................................. 31

     (5)    Minimum Distributions ................................................................................... 32

C.     Interest on Claims .................................................................................................. 32

D.     Claims and Interests Paid or Payable by Third Parties ............................................. 32

     (1)    Claims and Interests Paid by Third Parties ..................................................... 32

     (2)    Claims and Interests Payable by Insurance Carriers ......................................... 32

68313706.7

E.    Setoffs ................................................................................................. 32

F.    Allocation Between Principal and Accrued Interest ..................................... 33

G.    Provisions for Resolving Disputed Claims ................................................. 33

    (1)    Disputed Claims Process ................................................................ 33

    (2)    Estimation of Claims .................................................................... 33

    (3)    Amendments to Claims ................................................................. 34

    (4)    Distributions for Disputed Claims ................................................... 34

**Article VIII.    Effect of Plan Confirmation ................................................ 34**

A.    Binding Effect ..................................................................................... 34

B.    Injunction ........................................................................................... 34

C.    Exculpation ......................................................................................... 35

D.    Releases by the Debtors ......................................................................... 35

E.    Releases by Third Parties ....................................................................... 36

**Article IX.    Conditions Precedent to Confirmation and Effective Date ................. 37**

A.    Conditions Precedent to Confirmation ...................................................... 37

B.    Conditions Precedent to Effective Date ..................................................... 37

C.    Waiver of Conditions Precedent .............................................................. 38

D.    Effect of Nonoccurrence of Conditions ..................................................... 38

**Article X.    Retention of Jurisdiction ................................................... 39**

**Article XI.    Miscellaneous Provisions .................................................. 41**

A.    Amendment or Modification of the Plan .................................................... 41

B.    Plan Supplement .................................................................................. 41

C.    Additional Documents ........................................................................... 41

D.    Governing Law .................................................................................... 41

E.    Time .................................................................................................. 41

F.    Severability ......................................................................................... 42

G.    Revocation .......................................................................................... 42

H.    Dissolution of the Committee .................................................................. 42

I.    Reservation of Rights ............................................................................ 42

J.    Claims Agent ...................................................................................... 42

K.    Successors and Assigns ......................................................................... 43

L.    Service of Documents ........................................................................... 43

M.    Entire Agreement ................................................................................. 43

N. Inconsistency ................................................................................... 44

O. Votes Solicited in Good Faith ......................................................... 44

68313706.7

# Article I.  Definitions and Construction of Terms

## A.  Definitions

The following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

"*ABL Credit Facility Claims*" means any Claim against any Debtor arising on account of, or in connection with the ABL Credit Facility.

"*ABL Credit Facility*" means the Non-HUD Credit Facility and the HUD Credit Facility.

"*ABL Lenders*" means the Administrative Agent, CIT Finance LLC, Wells Fargo Bank, N.A., MB Financial Bank, N.A., Bankers Trust Company, and Compass Bank.

"*Accounts Receivable*" means, as of the Effective Date, all "accounts" as that term is defined in section 9-102(a) of the Uniform Commercial Code associated with, owed to, or payable to any Facility.

"*Administrative Agent*" means CIBC Bank USA, as Lead Arranger, Administrative Agent, and Lender.

"*Administrative Claim*" means any Claim against any Debtor for costs and expenses of administration of the Chapter 11 Cases pursuant to Bankruptcy Code sections 503(b), 507(a)(2), 507(b), or 1114(e)(2), including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to Bankruptcy Code sections 503(b)(3), (4), and (5); and (d) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to Administrative Claims other than Professional Fee Claims, shall be the Business Day that is thirty (30) days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be the Business Day that is forty-five (45) days after the Effective Date.

"*Affiliate*" means an "affiliate", as defined in Bankruptcy Code section 101(2).

"*Allowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim Filed by the applicable Bar Date in accordance with the Bar Date Order or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or a Claim or Interest for which a Proof of Claim or request for payment of Administrative Claim expressly is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim or Interest that is listed in the Schedules as not contingent, not

unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim or Interest that is Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided, that with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to allowance or priority or a request for estimation thereof has been interposed within the applicable period of time fixed by the Plan (including the Claims Objection Deadline), the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been Allowed by a Final Order. Unless otherwise specified in the Plan or in an order of the Bankruptcy Court allowing such Claim or Interest, "Allowed" in reference to a Claim or Interest shall not include: (1) any interest on the amount of such Claim accruing from and after the Petition Date; (2) any punitive or exemplary damages; or (3) any fine, penalty or forfeiture. Any Claim or Interest that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to Bankruptcy Code section 502(d) shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable. For the avoidance of doubt, a Proof of Claim Filed after the applicable Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim or Interest.

"*Amended Schedules Bar Date*" has the meaning given to such term in the Bar Date Order.

"*Avoidance Actions*" means causes of action arising under Bankruptcy Code sections 502, 510, 541, 544, 545, 547, 548, 549, 550, 551 or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action.

"*Ballot*" means the voting form distributed to each Holder of an Impaired Claim entitled to vote on the Plan, on which the Holder is to indicate acceptance or rejection of the Plan in accordance with the voting instructions and make any other elections or representations required pursuant to the Plan.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

"*Bankruptcy Court Website*" means the Court's Case Management and Electronic Case Filing system.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, having jurisdiction over the Chapter 11 Cases or, if such Court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases in lieu of the United States Bankruptcy Court for the Northern District of Texas.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

"*Bar Date Order*" means that certain order entered on March 28, 2019 [Docket No. 766] by the Bankruptcy Court establishing the Bar Dates.

"*Bar Date*" means the Claims Bar Date, the Governmental Bar Date, the Amended Schedules Bar Date or the Rejection Damages Bar Date, as applicable; and "Bar Dates" means a collective reference to the Claims Bar Date, the Governmental Bar Date, the Amended Schedules Bar Date and the Rejection Damages Bar Date.

"*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

"*Case Website*" means the website maintained by the Voting and Claims Agent at https://omnimgt.com/SeniorCareCenters.

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Causes of Action*" means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever, in each case whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date now owned or hereafter acquired by the Debtors and/or their Estates.

"*Chapter 11 Case(s)*" means (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court, and (b) when used with reference to all Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court being jointly administered under Case No. 18-33967.

"*Claim*" has the meaning set forth in Bankruptcy Code section 101(5) against any Debtor.

"*Claims Bar Date*" has the meaning given to such term in the Bar Date Order.

"*Claims Objection Deadline*" means the deadline for objecting to a Claim or Interest asserted against or in a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date, and (b) such other date as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by an order of the Bankruptcy Court.

"*Claims Register*" means the official register of Claims maintained by the Voting and Claims Agent.

"*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to Bankruptcy Code section 1122(a).

"*Collateral*" means any property or interest in property of the Estates subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

"*Committee*" means the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to Bankruptcy Code section 1102(a).

"*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under Bankruptcy Code section 1128 at which the Debtors seek entry of the Confirmation Order, as such hearing(s) may be adjourned or continued from time to time.

"*Confirmation Order*" means a Final Order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

"*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"*Consummation*" means the occurrence of the Effective Date.

"*Contingent*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein, any contingent or unliquidated Claim asserted or which may be asserted against the Debtors.

"*Convenience Claim Distribution*" means Cash in the aggregate amount of $1,000,000, which shall be used to make distributions to Holders of Allowed General Unsecured Claims (x) each asserted in an amount less than or equal to $10,000, unless the Holder has properly made the New Common Stock Election on a properly cast Ballot, or (y) each asserted in an amount greater than $10,000, for which the Holder has properly made the Convenience Class Election on a properly cast Ballot.

"*Convenience Class Claim*" means any General Unsecured Claim less than $10,000.

"*Convenience Class Election*" means the election available to a Holder of an Allowed General Unsecured Claim asserted in an amount greater than $10,000 to opt to receive its Pro Rata share of the Convenience Class Distribution in full and complete satisfaction, satisfaction, discharge, and release of such Allowed General Unsecured Claim; provided, that in making such election, the holder of such Allowed General Unsecured Claim has agreed, to the extent such

holder's Allowed General Unsecured Claim is for an amount greater than $10,000, to reduce the amount of such Allowed General Unsecured Claim for purposes of voting and distributions under the Plan to $10,000.

"*Cure Notice*" means a notice sent to counterparties to an Executory Contract or Unexpired Lease in connection with the proposed assumption or assumption and assignment of such Executory Contract or Unexpired Lease under the Plan pursuant to Bankruptcy Code section 365, the form and substance of which notice shall be approved by the Disclosure Statement Order and shall include: (a) procedures for objecting to proposed assumptions or assumptions and assignments of Executory Contracts and Unexpired Leases, (b) the proposed amount to be paid on account of Cure Claims, and (c) procedures for resolution by the Bankruptcy Court of any related disputes; provided that the Schedule of Assumed Executory Contracts and Unexpired Leases and any amended Schedule of Assumed Executory Contracts and Unexpired Leases may each constitute a "Cure Notice" hereunder.

"*Cure*" or "*Cure Claim*" means any Claim (unless waived or modified by the applicable counterparty) against a Debtor based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under Bankruptcy Code section 365, other than a default that is not required to be cured pursuant to Bankruptcy Code section 365(b)(2).

"*D&O Claims*" means a Cause of Action under the D&O Liability Insurance Policies.

"*D&O Liability Insurance Policies*" means all unexpired directors', managers', and officers' insurance policies (including any "tail policy") of any of the Debtors with respect to directors, managers, officers, and employees of the Debtors.

"*Debtor Release*" means the release set forth in Article VIII.D of the Plan.

"*Debtors*" means, collectively, each of the Debtors in the above-captioned Chapter 11 Cases.

"*Disallowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein that (a) has been disallowed by a Final Order, or (b) (i) is Scheduled at zero, in an unknown amount or as contingent, disputed or unliquidated and (ii) as to which the Claims Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed under applicable law.

"*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement and the Solicitation.

"*Disclosure Statement*" means that certain *Disclosure Statement for the Debtors' Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated as of June 21, 2019.

"*Disputed*" means, with respect to any Claim or Interest, or any portion thereof, a Claim or Interest that is not yet Allowed, including (a) any Claim evidenced by a Proof of Claim that, on its face, is contingent or unliquidated; (b) any Claim that is subject to an objection filed by the Claims Objection Deadline or a request for estimation, in each case that has not been withdrawn, resolved, or ruled on by a Final Order of the Bankruptcy Court; (c) any Claim scheduled by the

Debtors as contingent, unliquidated or disputed, (d) any Claim evidenced by a Proof of Claim which amends a Claim scheduled by the Debtors as contingent, unliquidated or disputed, and (e) any Claim or Interest that is not an Allowed Claim or Allowed Interest or a Disallowed Claim or a Disallowed Interest.

"*Distribution Agent*" means the Debtors, Reorganized Debtors, Unsecured Creditor Trustee, as applicable, or the Entity or Entities selected by the Debtors, Reorganized Debtors, or Unsecured Creditor Trustee to make or facilitate distributions contemplated under the Plan.

"*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against the Debtors are eligible to receive distributions under the Plan, which date shall be in the Confirmation Order or designated in a Final Order of the Court.

"*Distribution*" means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under the Plan.

"*Effective Date*" means the date which is the first Business Day on which the conditions set forth in Article IX.B have been satisfied or waived.

"*Entity*" shall have the meaning set forth in Bankruptcy Code section 101(15).

"*Equity Interest*" means the interest of any holder of an equity security of any of the Debtors represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in any of the Debtors, whether or not transferrable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

"*Estate*" means the estate of any Debtor created under Bankruptcy Code sections 301 and 541 upon commencement of the applicable Debtor's Chapter 11 Cases.

"*Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*, as now in effect or hereafter amended, and any similar federal, state or local law.

"*Exculpated Parties*" means collectively, and in each case in their capacity as such: (a) the Debtors and Reorganized Debtors; (b) the Committee and the members thereof; and (c) with respect to each of the foregoing Entities, each of their respective Related Parties that served in such capacity.

"*Executory Contract*" means all contracts and leases to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

"*Exit Facility Credit Agreements*" means the credit agreements governing the Exit Facility, if any.

"*Exit Facility Documents*" means the Exit Facility Credit Agreements and related documents governing the Exit Facility.

68313706.7

"*Exit Facility*" means a revolving loan credit facility in an aggregate principal amount sufficient to (a) repay in full in Cash on the Effective Date, the ABL Credit Facility Claims; (b) pay all Cures; (c) pay all other costs associated with implementation of the Plan; and (d) provide additional liquidity. Such Exit Facility shall be secured by a first priority Lien on all existing and future Accounts Receivable of the Debtors and Reorganized Debtors, as applicable.

"*Facilities*" means the skilled nursing, assisted living, and hospice facilities operated by the Debtors as of the Petition Date.

"*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

"*Final Decree*" means the order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Chapter 11 Cases.

"*Final Order*" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has been entered on the docket in the Chapter 11 Cases (or the docket of such other court) that is not subject to a stay and has not been modified, amended, reversed or vacated and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing pursuant to Bankruptcy Rule 9023 has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was timely and properly appealed, or certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired.

"*General Unsecured Claims*" means any Claim which is not an Administrative Claim, ABL Credit Facility Claim, Other Secured Claim, Priority Unsecured Claim, Convenience Class Claim, Subordinated Debt Claim, or Intercompany Claim.

"*Governmental Bar Date*" has the meaning given to such term in the Bar Date Order.

"*Governmental Unit*" means a "governmental unit" as defined in Bankruptcy Code section 101(27).

"*Harden Escrow*" means the $7,500,000 escrow amount created pursuant to that certain Escrow Agreement, dated as of February 1, 2018 between Harden Pharmacy, LLC and Neighborcare Pharmacy Services, Inc.

"*Holder*" means the beneficial holder of any Claim or Interest.

"*HUD Credit Agreement*" that certain Amended and Restated Credit and Security Agreement dated June 21, 2017 (as amended, restated, modified, or supplemented from time to time) with certain Debtors and the ABL Lenders.

"*HUD Credit Facility*" means the revolving credit loan in the aggregate principal amount of $12,500,000 provided pursuant to the HUD Credit Agreement.

"*Impaired*" means, with respect to any Class, a Class that is impaired within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

"*Insider*" has the meaning set forth in Bankruptcy Code section 101(31).

"*Intercompany Claim*" means any Claim held by a Debtor or a Debtor's Affiliate against a Debtor or a Debtor's Affiliate.

"*Interest*" means any "equity security" in a Debtor as defined in Bankruptcy Code section 101(16), including, without limitation, all issued, unissued, authorized or outstanding ownership interests (including common and preferred) or other equity interests, together with any warrants, options, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire any such equity interests at any time and all rights arising with respect thereto.

"*Interim Compensation Order*" means the order of the Bankruptcy Court establishing procedures for interim compensation and reimbursement of expenses for professionals

"*Lien*" has the meaning set forth in Bankruptcy Code section 101(37).

"*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas, or any other court having jurisdiction over the Chapter 11 Cases.

"*Management Incentive Plan*" means a post-Effective Date management incentive plan, the material terms of which shall be consistent with Article VI(h).

"*New Board*" means the board of directors, board of managers or equivalent governing body of each of the Reorganized Debtors, as applicable, as initially comprised as set forth in the Plan and as comprised thereafter in accordance with the terms of the applicable New Corporate Governance Documents.

"*New Bylaws*" means the bylaws, limited liability company agreement, or functionally equivalent document, as applicable, of each of the Reorganized Debtors, as applicable, the forms of which shall be included in the Plan Supplement.

"*New Certificates of Incorporation*" means the certificate of incorporation, certificate of formation, or functionally equivalent document as applicable, of each of the Reorganized Debtors, as applicable, the forms of which shall be included in the Plan Supplement.

*New Common Stock Election*" means the election available to a Holder of an Allowed General Unsecured Claim asserted in an amount greater than $10,000 to opt to receive its Pro Rata share of the New Common Stock in full and complete satisfaction, satisfaction, discharge, and release of such Allowed General Unsecured Claim.

"*New Common Stock*" means the common stock, or the warrants redeemable for common stock of, the Reorganized Debtors issued on the Effective Date in accordance with the Plan.

"*New Corporate Governance Documents*" means, as applicable, (a) the New Certificates of Incorporation, (b) the New Bylaws, and (c) the New Shareholders Agreement.

"*New Shareholders Agreement*" means the shareholders agreement (or functionally equivalent document, as applicable) of the Reorganized Debtors with respect to the New Common Stock to be effective on the Effective Date, and binding on all Holders of New Common Stock, which shall be included in the Plan Supplement.

"*Non-HUD Credit Agreement*" means that certain Amended and Restated Credit and Security Agreement dated January 12, 2017 (as amended, restated, modified, or supplemented from time to time) between certain Debtors and the ABL Lenders.

"*Non-HUD Credit Facility*" means the term loan up to an aggregate principal amount of $7,395,448.99 and a revolving credit loan in the aggregate principal amount of $67,500,000 provided pursuant to the Non-HUD Credit Agreement.

"*Other Secured Claims*" means any Secured Claim which is not a ABL Credit Facility Claim.

"*Person*" means a "person" as defined in Bankruptcy Code section 101(41) and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

"*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases as applicable to each particularly Debtor.

"*Plan Documents*" means the Plan, the Plan Supplement, and all of the exhibits and schedules attached to each of the foregoing.

"*Plan Supplement*" means the supplemental documents, schedules, and exhibits to the Plan, to be filed by the Debtors containing substantially final forms of, among other things, the New Corporate Governance Documents, the identity of the members of the New Board, the Management Incentive Plan, the Unsecured Creditor Trust Agreement, the Schedule of Assumed Executory Contracts and Unexpired Leases, the Schedule of Rejected Executory Contracts and Unexpired Leases, and the Exit Facility Documents. The Debtors shall have the right to amend all of the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

"*Plan*" means this *Debtors' Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated as of June 21, 2019, including all exhibits, supplements, appendices, and schedules thereto, either in its present form or as the same may be amended, supplemented, or modified from time to time.

"*Priority Tax Claims*" means any Claim of a Governmental Unit of the kind specified in Bankruptcy Code section 507(a)(8).

"*Priority Unsecured Claims*" means any General Unsecured Claim which is entitled to priority under the Bankruptcy Code.

"*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

"*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been previously paid.

"*Professional Fee Escrow Account*" means an interest-bearing account in an amount equal to the total Professional Fee Reserve Amount funded by the Reorganized Debtors on the Effective Date.

"*Professional Fee Reserve Amount*" means the aggregate amount of Professional Fee Claims that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Effective Date.

"*Professional*" means an Entity employed pursuant to a Bankruptcy Court order in accordance with Bankruptcy Code sections 327 or 1103 and to be compensated for services rendered before or on the Confirmation Date, pursuant to Bankruptcy Code sections 327, 328, 329, 330, or 331.

"*Proof of Claim*" means a proof of Claim Filed against any Debtor in the Chapter 11 Cases.

"*Rejection Claims*" means any Claim arising from, or relating to, the rejection of an executory contract or unexpired lease pursuant to Bankruptcy Code section 365(a) by any of the Debtors, as limited, in the case of a rejected unexpired lease, by Bankruptcy Code section 502(b)(6).

"*Rejection Damages Bar Date*" has the meaning given to such term in the Bar Date Order.

"*Related Parties*" means, with respect to any Person, such Person's current and former Affiliates, partners, subsidiaries, officers, directors, principals, employees, agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, together with their respective successors and assigns, in each case in their capacity as such.

68313706.7

"*Released Parties*" means, collectively, the following in each case in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; and (c) in each case of (a) to (b), the respective Related Parties of each of the foregoing entities.

"*Releasing Parties*" means the parties in Section VIII.D and VIII.E.

"*Reorganized Debtors*" means the Debtors and any successor thereto after the Effective Date.

"*Restructuring Transactions*" means, collectively, the transactions necessary or desirable to effectuate the comprehensive restructuring of the existing debt and other obligations of, and the existing Interests in, the Debtors to be consummated pursuant to the Plan.

"*Retained Claims*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, which shall be included in the Plan Supplement. For the avoidance of doubt, Retained Claims shall not include any Causes of Action against any Released Parties.

"*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, Filed as part of the Plan Supplement, as may be amended, modified, or supplemented by the Debtors from time to time prior to the Confirmation Date.

"*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, Filed as part of the Plan Supplement, as may be amended, modified, or supplemented by the Debtors from time to time prior to the Confirmation Date.

"*Schedule of Retained Causes of Action*" means the schedule of Causes of Action to be retained by Debtors and identified in the Plan Supplement.

"*Scheduled*" means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

"*Schedules*" means the schedules of assets and liabilities, the list of Holders of Equity Interests, and the statements of financial affairs Filed by the Debtors under Bankruptcy Code section 521 and Bankruptcy Rule 1007, as such Schedules may be amended, modified, or supplemented from time to time.

"*Secured Claim*" means any Claim against any Debtor: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code section 553, to the extent of the value of the creditor's interest in an Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a) or (b) Allowed as such pursuant to the Plan.

"*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under Bankruptcy Code section 507(a)(8) (determined irrespective of time limitations), including any related Secured Claim for penalties.

"*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended, and any similar federal, state or local law.

"*Security*" has the meaning set forth in Bankruptcy Code section 101(49).

"*Solicitation Package*" means the packages to be distributed to creditors for solicitation of votes on the Plan.

"*Solicitation*" means the solicitation of votes in connection with the Plan pursuant to Bankruptcy Code sections 1125 and 1126 and the applicable procedures approved by the Bankruptcy Court and set forth in the Disclosure Statement Order.

"*Statutory Fees*" means all fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930, and any interest thereupon.

"*Subordinated Debt Claim*" means any Claim subject to (i) subordination under Bankruptcy Code section 510(b) or (ii) equitable subordination as determined by the Bankruptcy Court in a Final Order, including, without limitation, any Claim for or arising from the rescission of a purchase, sale, issuance, or offer of a Security of any Debtor; for damages arising from the purchase or sale of such a Security; or for reimbursement, indemnification, or contribution Allowed under Bankruptcy Code section 502 on account of such Claim.

"*Tax Code*" means the Internal Revenue Code, as amended.

"*Third Party Release*" means the release set forth in Article VIII.E of the Plan.

"*Treasury Regulations*" means the regulations, including temporary regulations or any successor regulations, promulgated under the United States Internal Revenue Code, as amended from time to time.

"*Trust Funding*" means the $500,000 Cash payment made to the Unsecured Creditor Trust on the Effective Date.

"*U.S. Trustee Fees*" means the quarterly fees payable pursuant to section 1930 of Title 28 of the U.S. Code.

"*U.S. Trustee*" means the Office of the United States Trustee for the Northern District of Texas.

"*Unexpired Lease*" means a lease to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

"*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Claim or an Equity Interest that is "unimpaired" within the meaning of Bankruptcy Code section 1124.

68313706.7

"*Unsecured Creditor Recovery*" means the proceeds from the Unsecured Creditor Trust.

"*Unsecured Creditor Trust Agreement*" means the trust or similar agreement that establishes the Unsecured Creditor Trust and governs the powers, duties, and responsibilities of the Unsecured Creditor Trustee.

"*Unsecured Creditor Trust Assets*" means the Unsecured Creditor Trust Distribution Assets.

"*Unsecured Creditor Trust Beneficiaries*" means Holders of Allowed General Unsecured Claims who do not participate in the Convenience Class Distribution.

"*Unsecured Creditor Trust Distribution Assets*" means the Trust Funding, D&O Claims, and 80% of the New Common Stock.

"*Unsecured Creditor Trust*" means a creditor recovery trust to be established on the Effective Date pursuant to the terms of the Unsecured Creditor Trust Agreement and the Plan.

"*Unsecured Creditor Trustee*" means the Entity appointed by the Debtors or Reorganized Debtors, as applicable, to serve as the administrator of the Unsecured Creditor Trust. The identity of the Unsecured Creditor Trustee shall be disclosed in the Plan Supplement.

"*Voting and Claims Agent*" means Omni Management Group, in its capacity as the solicitation, notice, claims, and balloting agent for the Debtors.

"*Voting Classes*" means Classes 4 and 5.

"*Voting Deadline*" means the date and time by which all Ballots must be received by the Voting and Claims Agent in accordance with the Disclosure Statement Order, which date is August 23, 2019 as set forth in the Disclosure Statement Order.

"*Voting Record Date*" means the date for determining which Holders of Claims in the Voting Classes are entitled to receive the Disclosure Statement and to vote to accept or reject this Plan.

## B. Interpretation, Application of Definitions, and Rules of Construction

The following rules of construction, interpretation, and application shall apply:

(1) Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter genders.

(2) Unless otherwise specified, each section, article, schedule, or exhibit reference in the Plan is to the respective section in, article of, schedule to, or exhibit to the Plan.

(3)    The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

(4)    The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of the Plan.

(5)    A term used herein that is not defined herein but that is used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.

(6)    The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

(7)    Unless otherwise provided, any reference in the Plan to an existing document, exhibit, or schedule means such document, exhibit, or schedule as may be amended, restated, revised, supplemented, or otherwise modified.

(8)    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## Article II.    Unclassified Claims

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes and Interests set forth in Article III of the Plan.

### A.    Treatment of Administrative Claims

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a less favorable treatment with the Debtors or Reorganized Debtors, as applicable, each Holder of an Allowed Administrative Claim will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Administrative Claim, an amount of Cash equal to the full unpaid amount of such Allowed Administrative Claim either (1) if the Administrative Expense is Allowed, on the Effective Date or as soon as practicable thereafter, or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; (2) if the Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order of the Bankruptcy Court Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; (3) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims; (4) at such other time that is agreed to by the Debtors and the Holders of such Allowed Administrative Claim; or (5) at such other time and on such other terms set forth by an order of the Bankruptcy Court.

68313706.7

Except for Administrative Claims which are Professional Fee Claims or Priority Tax Claims, requests for payment of Administrative Claims must be Filed and served on the Debtors or Reorganized Debtors, as applicable, pursuant to the procedures specified in the Confirmation Order and notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the Debtors or Reorganized Debtors, as applicable, and the requesting party no later than sixty (60) days after the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously Allowed.

### B.    Treatment of Professional Fee Claims

All requests for payment of Professional Fee Claims must be Filed no later than the Professional Fee Claims Bar Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Interim Compensation Order and the Bankruptcy Code. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court Allows following entry of an order by the Bankruptcy Court Allowing such Professional Fee Claims, including from the funds in the Professional Fee Escrow Account.

On the Effective Date, the Reorganized Debtors shall establish the Professional Fee Escrow Account in trust for the Professionals and fund it with Cash equal to the Professional Fee Claims amount. Professionals shall estimate in good faith their unpaid Professional Fee Claims through the Effective Date and shall deliver such good faith estimates to the Debtors no later than five (5) Business Days prior to the anticipated Effective Date. For the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims Filed with the Bankruptcy Court. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. No funds in the Professional Fee Escrow Account shall be property of the Estates. Any funds remaining in the Professional Fee Escrow Account after all Allowed Professional Fee Claims have been paid will be turned over to the Reorganized Debtors.

From and after the Effective Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

### C.    Priority Tax Claims

Except to the extent that the Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment with the Debtors or Reorganized Debtors, as applicable, each Holder of an Allowed Priority Tax Claim will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Priority Tax Claim an amount of Cash equal to the

15

full unpaid amount of such Allowed Tax Claim on (1) the Effective Date, (2) the first Business Day after the date that is thirty (30) calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is reasonably practicable, or (3) over a period ending not later than five (5) years after the applicable petition date.

### D.    Statutory Fees

All fees due and payable pursuant to section 1930 of title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Unsecured Creditor Trustee shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor shall remain obligated to pay the U.S. Trustee Fees until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

## Article III.    Classification and Treatment of Claims and Interests

Pursuant to Bankruptcy Code sections 1122 and 1123(a)(1), Claims and Interests are classified for all purposes, including, without express or implied limitation, voting, confirmation and distribution pursuant to the Plan, as set forth herein. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The Plan contemplates the following Classes:

| Class | Claim or Interest | Status | Voting Rights | Estimated Recovery |
|---|---|---|---|---|
| 1 | ABL Credit Facility Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept | 100% |
| 3 | Priority Unsecured Claims | Unimpaired | Deemed to Accept | 100% |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote | 40-100% |
| 5 | Convenience Class Claims | Impaired | Entitled to Vote | 40-100% |
| 6 | Subordinated Debt Claims | Impaired | Deemed to Reject | 0% |
| 7 | Intercompany Claims | Impaired | Deemed to Reject | 0% |
| 8 | Equity Interests | Impaired | Deemed to Reject | 0% |

### A.    Classification and Treatment of Claims and Equity Interests

Except to the extent that the Debtors or the Reorganized Debtors, as applicable, and a holder of an Allowed Claim or Allowed Interest, as applicable, agree in writing to less favorable treatment for such Allowed Claim or Allowed Interest, as applicable, such holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such holder's Allowed Claim or Allowed Interest. Unless

68313706.7

otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon thereafter as reasonably practicable.

### (1) Class 1 – ABL Credit Facility Claims

*Classification.* Class 1 consists of all ABL Credit Facility Claims.

*Treatment.* Except to the extent that a Holder of an Allowed ABL Credit Facility Claim and the Debtors or the Reorganized Debtors, as applicable, agree in writing to less favorable treatment of its Allowed ABL Credit Facility Claim, each Holder of an Allowed ABL Credit Facility Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed ABL Credit Facility Claim:

    (a)    payment in full in Cash of the unpaid portion of its Allowed ABL Credit Facility Claim on the Effective Date; or

    (b)    payment at such time and upon other terms as the Debtors or Reorganized Debtors, as applicable, and the Holder of such Allowed ABL Credit Facility Claim may agree.

*Voting.* Class 1 is Unimpaired. Holders of Allowed ABL Credit Facility Claims in Class 1 are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f). Holders of Allowed ABL Credit Facility Claims are not entitled to vote to accept or reject the Plan.

### (2) Class 2 – Other Secured Claims

*Classification.* Class 2 consists of all Other Secured Claims.

*Treatment.* Except to the extent that a Holder of an Allowed Other Secured Claim and the Debtors or the Reorganized Debtors, as applicable, agree in writing to less favorable treatment of its Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Other Secured Claim:

    (a)    payment in full, in Cash, of the unpaid portion of its Allowed Other Secured Claim on the following: (i) if such Allowed Other Secured Claim is Allowed as of the Effective Date, the Effective Date or as soon thereafter as reasonably practicable (or, if payment is not then due, the date such Allowed Other Secured Claim becomes due and payable, or as soon thereafter as is reasonably practicable); and (ii) if such Allowed Other Secured Claim is not Allowed as of the Effective Date, the date such Other Secured Claim is Allowed or as soon as reasonably thereafter practicable;

    (b)    a distribution of such Collateral securing the Other Secured Claim;

(c)     a distribution of the proceeds of the sale or disposition of such Collateral securing the Other Secured Claim;

(d)     reinstatement pursuant to Bankruptcy Code section 1124; or

(e)     such other treatment as the Debtors or Reorganized Debtors, as applicable, and the Holder of such Allowed Other Secured Claim may agree.

*Voting*. Class 2 is Unimpaired. Holders of Allowed Other Secured Claims in Class 2 are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f). Holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

(3)     **Class 3 – Priority Unsecured Claims**

*Classification*. Class 3 consists of all Priority Unsecured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed Priority Unsecured Claim and the Debtors or the Reorganized Debtors, as applicable, agree in writing to less favorable treatment of its Allowed Priority Unsecured Claim, each Holder of an Allowed Priority Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Priority Unsecured Claim:

(a)     payment in full, in Cash, on the later of (1) the Effective Date; or (2) the date such Priority Unsecured Claim is Allowed;

(b)     in the ordinary course of business between the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Priority Unsecured Claim; or

(c)     payment at such time and upon other terms as the Debtors or Reorganized Debtors, as applicable, and the Holder of such Allowed Priority Unsecured Claim may agree.

*Voting*. Class 3 is Unimpaired. Holders of Allowed Priority Unsecured Claims in Class 3 are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f). Holders of Priority Unsecured Claims are not entitled to vote to accept or reject the Plan.

(4)     **Class 4 – General Unsecured Claims**

*Classification*. Class 4 consists of all General Unsecured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors or the Reorganized Debtors, as applicable, agree in writing to less favorable treatment of its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed General Unsecured Claim its Pro Rata share of the Unsecured Creditor Recovery.

68313706.7

*Voting*. Class 4 is Impaired. Holders of Allowed General Unsecured Claims in Class 4 are entitled to vote to accept or reject the Plan.

### (5)     Class 5 – Convenience Class Claims

*Classification*. Class 5 consists of all Convenience Class Claims.

*Treatment*. Except to the extent that a Holder of an Allowed Convenience Class Claim and the Debtors or the Reorganized Debtors, as applicable, agree in writing to less favorable treatment of its Allowed Convenience Class Claim, each Holder of an Allowed Convenience Class Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Convenience Class Claim, its Pro Rata share of the Convenience Claim Distribution.

*Voting*. Class 5 is Impaired. Holders of Allowed General Unsecured Claims in Class 5 are entitled to vote to accept or reject the Plan.

### (6)     Class 6 – Subordinated Debt Claims

*Classification*. Class 6 consists of all Subordinated Debt Claims.

*Treatment*. Holders of Subordinated Debt Claims will not receive any distribution on account of such Subordinated Debt Claims, and such Subordinated Debt Claims shall be discharged, cancelled, releases, and extinguished as of the Effective Date, and shall be of no further force or effect.

*Voting*. Class 6 is impaired. Holders of Claims in Class 6 are deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g) and are not entitled to vote to accept or reject the Plan.

### (7)     Class 7 – Intercompany Claims

*Classification*. Class 7 consists of all Intercompany Claims.

*Treatment*. Holders of Intercompany Claims will not receive any distribution on account of such Intercompany Claims, and such Intercompany Claims shall be discharged, cancelled, releases, and extinguished as of the Effective Date, and shall be of no further force or effect.

*Voting*. Class 7 is impaired. Holders of Claims in Class 7 are deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g) and are not entitled to vote to accept or reject the Plan.

### (8)     Class 8 – Equity Interests

*Classification*. Class 8 consists of all Equity Interests.

*Treatment*. Holders of Equity Interests will not receive any distribution on account of such Equity Interests, and Equity Interests shall be discharged, cancelled, releases, and extinguished as of the Effective Date, and shall be of no further force or effect.

*Voting*. Class 8 is Impaired. Holders of Equity Interests in Class 8 are deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g) and are not entitled to vote to accept or reject the Plan.

### B.     Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such unimpaired Claims.

### C.     Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for the purposes of determining acceptance or rejection of the plan by such Class pursuant to Bankruptcy Code section 1129(a)(8).

## Article IV.     Acceptance or Rejection of the Plan

### A.     Deemed Acceptance of the Plan

ABL Credit Facility Claims (Class 1), Other Secured Claims (Class 2), and Priority Unsecured Claims (Class 3) are Unimpaired by the Plan. Pursuant to Bankruptcy Code section 1126(f), the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan and the votes of such Holders will not be solicited.

### B.     Deemed Rejection of the Plan

Subordinated Debt Claims (Class 6), Intercompany Claims (Class 7), and Equity Interests (Class 8) are Impaired by the Plan and shall receive no distribution under the Plan on account of such Interests. Pursuant to Bankruptcy Code section 1126(g), Holders of Subordinated Debt Claims, Intercompany Claims, Equity Interests are conclusively presumed to have rejected the Plan and the votes of such Holders will not be solicited.

### C.     Voting Classes

As a result of the provisions of Article III, only the votes of Holders of Claims in Class 4 and Class 5 will be solicited with respect to the Plan.

### D.     Acceptance by Impaired Classes

In accordance with Bankruptcy Code section 1126(c), and except as otherwise provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall have accepted the Plan if

68313706.7

the Holders of at least two-third in dollar amount and more than one-half in number of Claims have timely and properly voted to accept the Plan.

### E. Confirmation Pursuant to Bankruptcy Code sections 1129(a)(10) and 1129(b)

The Debtors seek Confirmation of the Plan pursuant to Bankruptcy Code section 1129(b) with respect to Classes 7, 8, and 9, as the Holders of Claims in Classes 7, 8, and 9 are presumed to have rejected the Plan. The Debtors also seek Confirmation of the Plan pursuant to any other Classes of Claims or Interests which vote to reject the Plan. The Debtors reserve the right to modify the Plan to the extent that Confirmation pursuant to Bankruptcy Code section 1129(b) requires modification.

## Article V. Treatment of Executory Contracts and Unexpired Leases

### A. Assumption of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, as of the Effective Date, all Executory Contracts and Unexpired Leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases will be deemed: (i) assumed by the applicable Debtor in accordance with, and subject to the provisions and requirements of Bankruptcy Code sections 365 and 1123; and (ii) if so indicated on the Schedule of Assumed Executory Contracts and Unexpired Leases, assigned to the other party identified as the assignee for each assumed Executory Contract and Unexpired Lease. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumption and assignment pursuant to Bankruptcy Code sections 365 and 1123. The Debtors reserve the right to reject any executory contrary or unexpired lease until the Confirmation Date.

### B. Cure of Defaults

Any monetary amounts by which each executory contract and unexpired lease to be assumed is in default shall be satisfied, pursuant to Bankruptcy Code section 365(b)(1), by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to each such executory contract or unexpired lease may otherwise agree. In the event of a dispute regarding (a) the amount of any cure payments, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of Bankruptcy Code section 365) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by Bankruptcy Code section 365(b)(1) shall be made following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such motion, the executory contract or unexpired lease at issue shall be deemed assumed by the Debtors unless otherwise ordered by the Bankruptcy Court. The Debtors reserve the right to reject any executory contract or unexpired lease not later than thirty (30) days after the entry of a Final Order resolving any such dispute.

At least fourteen (14) days before the Confirmation Hearing, the Debtors will provide for notices of proposed assumption and proposed cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the Debtors at

least seven (7) days before the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have consented to such assumption or proposed cure amount. If a counterparty to any executory contract or unexpired lease that the Debtors or Reorganized Debtors, as applicable, intend to assume does not receive such a notice, the proposed Cure Amount for such executory contract or unexpired lease shall be deemed to be zero dollars ($0).

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Reorganized Debtors, as applicable, may add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

## C. Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, or in any contract, instrument, release, indenture or other agreement, or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have rejected each Executory Contract and Unexpired Lease to which it is a party, unless such Executory Contract or Unexpired Lease: (1) was previously assumed or rejected; (2) was previously expired or terminated pursuant to its own terms; (3) is the subject of a motion or notice to assume filed on or before the Confirmation Date; or (4) is designated specifically or by category as an Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases. For the avoidance of doubt, any Executory Contract or Unexpired Lease which does not appear on the Schedule of Rejected Executory Contracts and Unexpired Leases and which is not subject to one of the four conditions for assumption of Executory Contracts and Unexpired Leases listed in this paragraph shall be deemed rejected.

The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b) approving the assumptions and assignments or rejections described above as of the Effective Date. Unless otherwise indicated, all assumptions and assignments or rejections of Executory Contracts and Unexpired Leases in the Plan will be effective as of the Effective Date. Each Executory Contract and Unexpired Lease assumed and assigned pursuant to the Plan or by Bankruptcy Court order, shall vest in and be fully enforceable by the applicable assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court. To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed

breached by, the assumption of such Executory Contract or Unexpired Lease (including, without limitation, any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

### D. Rejection Claims

Any counterparty to a contract or lease that is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases or is otherwise rejected by the Debtors must file and serve a proof of Claim on the applicable Debtor that is party to the contract or lease to be rejected no later than thirty (30) days after the later of (i) the Confirmation Date, or (ii) the effective date of rejection of such executory contract or unexpired lease.

### E. Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtors have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have ninety (90) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

## Article VI.  Means for Implementation

### A. Substantive Consolidation

Except as otherwise expressly provided in the Plan, each Debtor shall continue to maintain its separate corporate existence for all purposes other than the treatment of Claims under the Plan and distributions from the Unsecured Creditor Trust. On the Effective Date, (1) all Unsecured Creditor Trust Assets (and all proceeds thereof) and all liabilities of each of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (2) all Intercompany Claims among the Debtors shall be eliminated and there shall be no distributions on account of such Intercompany Claims, (3) any obligation of a Debtor and any guarantee thereof by any other Debtor shall be deemed to be one obligation, and any such guarantee shall be eliminated, (4) each Claim filed or to be filed against more than one Debtor shall be deemed filed only against one consolidated Debtor and shall be deemed a single Claim against and a single obligation of the Debtors, and (5) any joint or several liability of the Debtors shall be deemed one obligation of the Debtors. On the Effective Date, and in accordance with the terms of the Plan, all Claims based upon guarantees of collection, payment or performance made by one Debtor as to the obligations of another Debtor shall be released and of no further force and effect. Such substantive consolidation shall not (other than for purposes relating to the Plan) affect the legal and corporate structures of the Reorganized Debtors.

If Bankruptcy Court does not approve the substantive consolidation of all of the Estates for the purposes set forth herein: (1) the Plan shall be treated as a separate plan of reorganization

68313706.7

for each Debtor not substantively consolidated, and (2) the Debtors shall not be required to resolicit votes with respect to the Plan.

The Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Chapter 11 Cases for the limited purposes set forth herein. If no objection to substantive consolidation is timely filed and served by any Holder of an Impaired Claim on or before the deadline to object to the confirmation of the Plan, or such other date as may be fixed by the Bankruptcy Court and the Debtors meet their burden of introducing evidence to establish that substantive consolidation is merited under the standards of applicable bankruptcy law, the Confirmation Order, which shall be deemed to substantively consolidate the Debtors for the limited purposes set forth herein, may be entered by the Bankruptcy Court. If any such objections are timely filed and served, a hearing with respect to the substantive consolidation of the Chapter 11 Cases and the objections thereto shall be scheduled by the Bankruptcy Court, which hearing shall coincide with the Confirmation Hearing.

## B. Financing and Restructuring Transactions

On the Effective Date, or as soon thereafter as reasonably practicable, the Reorganized Debtors shall take all actions as may be necessary or appropriate to effectuate the Restructuring Transactions, including: (1) the execution, delivery, and filing, as applicable, of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation, each containing terms that are consistent in all material respects with the terms of the Plan, and that satisfy the requirements of applicable law; (2) the execution, delivery, and filing, as applicable, of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation, each on terms consistent in all material respects with the terms of the Plan; (3) the execution, delivery, and filing, as applicable, of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (4) such other transactions that are required to effectuate the Restructuring Transactions in the most tax efficient manner, as determined by the Debtors; and (5) the execution, delivery, and filing, if applicable, of the New Corporate Governance Documents, and any documentation related to the New Common Stock or the Restructuring Transactions.

### (1) Assumption of Executory Contracts and Unexpired Leases

On the Effective Date, the Debtors will assume the Executory Contracts and Unexpired Leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases pursuant to Bankruptcy Code section 1123(b)(2). Such Schedule of Assumed Executory Contracts and Unexpired Leases shall include, among other things, Unexpired Leases for Facilities.

### (2) Sources and Uses of Consideration for Plan Distributions

All Cash necessary for the Reorganized Debtors to make payments required pursuant to the Plan will be funded with Cash on hand, including Cash from operations and the proceeds of the Exit Facility and the Harden Escrow. Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors. The Reorganized Debtors will be entitled to transfer funds

24

between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.

### (3)     Exit Facility

The Confirmation Order shall include approval of the Exit Facility and authorization for the Reorganized Debtors to enter into and execute the Exit Facility Documents and such other documents as may be required to effectuate the treatment afforded to the lenders under the Exit Facility pursuant to the Exit Facility Documents. The Reorganized Debtors may use the Exit Facility for any purpose permitted thereunder, including the funding of obligations under the Plan and satisfaction of ongoing working capital needs.

On the Confirmation Date, (1) the Reorganized Debtors are authorized to execute and deliver the Exit Facility Documents and perform their obligations thereunder including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages, or indemnities, and (2) subject to the occurrence of the Effective Date the Exit Facility Documents shall constitute the legal, valid, and binding obligations of the Reorganized Debtors and be enforceable in accordance with their respective terms.

### (4)     Issuance of New Common Stock

On the Effective Date, the Reorganized Debtors shall be authorized to and shall issue the New Common Stock in accordance with the terms of the Plan without the need for any further corporate action. Each share of New Common Stock issued and distributed pursuant to the Plan shall be duly authorized, validly issued, and fully paid and non-assessable. Each distribution and issuance shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

On the Effective Date, the Reorganized Debtors and the Holders of New Common Stock shall enter into the New Shareholders Agreement, substantially in the form to be included in the Plan Supplement. The New Shareholders Agreement shall be binding on all parties receiving New Common Stock regardless of whether such parties execute the New Shareholders Agreement.

### (5)     Retained Claims

In accordance with Bankruptcy Code section 1123(b), the Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable,

68313706.7

expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, including, pursuant to Article VIII hereof, the Debtors or Reorganized Debtors, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, in no instance will any Cause of Action preserved include any claim or Cause of Action with respect to, or against, a Released Party.

In accordance with Bankruptcy Code section 1123 and except as otherwise provided herein, any Causes of Action which a Debtor may hold against any entity shall vest in the applicable Reorganized Debtor. The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.

### (6) Plan Sponsor Alternative Transaction

If the Debtors successfully identify a plan sponsor, the Debtors reserve the right to amend or withdraw the Plan and consummate an alternative plan transaction with a plan sponsor. Under any arrangement with a plan sponsor, the Unsecured Creditor Trust will be funded with proceeds from the transaction with a plan sponsor and pay Cure Claims.

### (7) Dissolution of Certain Entities

The Debtors shall identify, in the Plan Supplement, Debtors which entities will be Reorganized Debtors. All other Debtors that are not Reorganized Debtors shall be dissolved; *provided, however*, that the Debtors may supplement such list before the Effective Date consistent with the list of Rejected Facilities.

### C. Corporate Action

On the Effective Date, or as soon thereafter as is reasonably practicable, all actions as may be necessary or appropriate to effect any transactions described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable: (1) the adoption, execution, delivery and/or filing of the New Corporate Governance Documents; (2) the selection of the directors, managers, and officers of the Reorganized Debtors; (3) the authorization, issuance, delivery, and distribution of the New Common Stock; (4) rejection, assumption, or assumption and assignment, as applicable, of the Executory Contracts and Unexpired Leases; (5) the entry into the Exit Facility Documents; (6) the adoption of the Management Incentive Plan; and (7) all other actions that may be required under applicable law.

On the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the officers or directors of the Debtors or Reorganized Debtors.

On or before the Effective Date (as applicable), the appropriate officers of the Debtors or Reorganized Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the plan (or necessary or desirable to effectuate the Restructuring Transactions) in the name and on behalf of the Reorganized Debtors.

### D. Continued Corporate Existence

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Reorganized Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of Entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of Entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended or amended and restated by the Plan, the New Corporate Governance Documents, or otherwise, and to the extent such documents are amended or amended and restated, such documents are deemed to be amended or amended and restated pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

### E. Vesting of Assets

Except as otherwise expressly provided in the Plan, the Confirmation Order, or any Plan Document, pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), 1141(b) and (c), and any other applicable provisions of the Bankruptcy Code, on and after the Effective Date, all property and assets of the Estates of the Debtors, including all claims, rights, and Causes of Action of the Debtors, and any other assets or property acquired by the Debtors or the Reorganized Debtors during the Chapter 11 Cases or under or in connection with the Plan, other the Unsecured Creditor Trust Assets, shall automatically, without the notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, rule or any requirement of further action, vote or other approval or authorization of the security holders, equity owners, members, managers, officers or directors of the Debtors, the Reorganized Debtors or the other applicable Entity or by any other person (except for those expressly required pursuant hereto or by the Plan Documents), vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, and other encumbrances, subject to the Restructuring Transactions and Liens, if any, which survive the occurrence of the Effective Date as described in this Plan. On and after the Effective Date, the Reorganized Debtors may operate their respective businesses and use, acquire, and dispose of their respective property, without notice to, supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the

27

Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

On the Effective Date, except as otherwise provided in the Plan and Confirmation Order, the Unsecured Creditor Trust Assets shall automatically vest in the Unsecured Creditor Trust and clear of all Claims, Liens, and other encumbrances.

### F.     Charter, Bylaws, and New Corporate Governance Documents

On the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors' respective certificates of incorporation and bylaws (and other formation and constituent documents relating to limited liability companies) shall be amended or amended and restated as may be required to be consistent with the provisions of the Plan, the New Corporate Governance Documents and the Exit Facility Documents. The New Corporate Governance Documents shall, among other things: (1) authorize the issuance of the New Common Stock; and (2) be modified or deemed to be modified to include a provision pursuant to and only to the extent required by Bankruptcy Code section 1123(a)(6), prohibiting the issuance of non-voting equity Securities. After the Effective Date, each Reorganized Debtor may amend and restate its certificate of incorporation and other formation and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of such documents.

### G.     Directors and Officers

On the Effective Date, all managers, directors, and other members of the existing boards or governance bodies of the Debtors, as applicable, shall cease to hold office or have any authority from and after such time to the extent not expressly included in the roster of the applicable New Board. Pursuant to Bankruptcy Code section 1129(a)(5), to the extent known, the identity of the members of the New Board will be disclosed in the Plan Supplement.

*New Board*. The New Board shall be determined in accordance with the New Shareholders Agreement.

*Management*. The existing officers of the Debtors shall remain in their current capacities as officers of the Reorganized Debtors, subject to the ordinary rights and powers of the applicable New Board to remove or replace them in accordance with the New Corporate Governance Documents.

### H.     Management Incentive Plan

The Management Incentive Plan shall be included in the Plan Supplement. On or as soon as practicable following the Effective Date, the New Board shall adopt the Management Incentive Plan.

### I.     Exemption from Registration Requirements

The offering, issuance, and distribution of all shares of New Common Stock under the Plan will be exempt from, among other things, the registration and prospectus delivery requirements under the Securities Act or any similar federal, state, or local laws in reliance upon

28

Bankruptcy Code section 1145 to the maximum extent permitted and applicable and, to the extent that reliance on such section is either not permitted or not applicable, the exemption set forth in section 4(a)(2) of the Securities Act.

### J. Cancellation of Notes, Instruments, Certificates, and Other Documents

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, or in any Plan Document, on the Effective Date, all agreements, instruments, and other documents evidencing any prepetition Claim or Interest and any rights of any holder in respect thereof shall be deemed cancelled and of no force or effect. The holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan.

### K. General Settlement of Claims and Interests

Unless otherwise set forth in the Plan, pursuant to Bankruptcy Code sections 363 and 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved by the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of Claims and Interests and is fair, equitable, and within the range of reasonableness.

### L. Section 1146(a) Exemption

To the fullest extent permitted by Bankruptcy Code section 1146(a), any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, Security, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; (4) the grant of collateral as security for any or all of the Exit Facility; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever

68313706.7

appointed, shall comply with the requirements of Bankruptcy Code section 1146(c), shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## M.     Unsecured Creditor Trust

The Unsecured Creditor Trust shall be governed and administered in accordance with the Unsecured Creditor Trust Agreement and the Plan, including, but not limited to (1) distributions to the Unsecured Creditor Trust Beneficiaries, (2) authority and appointment of the Unsecured Creditor Trustee; (3) compensation of the Unsecured Creditor Trustee; (4) vesting and management of the Unsecured Creditor Trust Assets; (5) payment of costs and expenses of the Unsecured Creditor Trust.

## Article VII.     Provisions Governing Distributions

### A.     Distributions for Claims and Interests Allowed as of the Effective Date

Except as otherwise provided herein or as ordered by the Bankruptcy Court, the Reorganized Debtors, Distribution Agent, or the Unsecured Creditor Trustee shall make distributions under the Plan on account of Allowed Claims and Allowed Interests on the Effective Date, *provided, however,* that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims and Allowed Other Secured Claims shall be paid in accordance with Article II.C and Article III.A(2) respectively.

### B.     Delivery of Distributions

#### (1)     Record Date

The Reorganized Debtors, Distribution Agent, and Unsecured Creditor Trustee will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those Holders of Allowed Claims that are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date. The Reorganized Debtors, Distribution Agent, and Unsecured Creditor Trustee shall instead be entitled to recognize and deal for all purposes under this Plan with only those record holders stated on the Claims Register as of the close of business on the Distribution Record Date.

#### (2)     Distribution Agent

All distributions made under the Plan that are to be made on the Effective Date shall be made by the Debtors or Unsecured Creditor Trustee as Distribution Agent or any other duly appointed Distribution Agent, unless otherwise specified herein. A Distribution Agent shall be

68313706.7

required to give any bond or surety or security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

### (3)    Distribution Process

Unless the Holder of an Allowed Claim against the Debtors and the Debtors or the Reorganized Debtors agrees to a different distribution date or except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed as of the Effective Date shall be made on the Effective Date or as soon as thereafter practicable. Notwithstanding the date on which any distribution of New Common Stock is actually made to a Holder of a Claim that is an Allowed Claim on the Effective Date, as of the date of the distribution such Holder shall be deemed to have the rights of a holder of such securities distributed as of the Effective Date. Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

### (4)    Fractional, Undeliverable, and Unclaimed Distributions

*Fractional Distributions.* Whenever any distribution of fractional shares of New Common Stock would otherwise be required pursuant to the Plan, the actual distribution shall reflect a rounding of such fraction to the nearest share (up or down), with half shares or less being rounded down. Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

*Undeliverable and Unclaimed Distributions.* If the distribution to any Holder of an Allowed Claim is returned to the Reorganized Debtors, Distribution Agent, or Unsecured Creditor Trustee as undeliverable or is otherwise unclaimed, no further distributions shall be made to such Holder unless and until the Reorganized Debtors, the Distribution Agent, or Unsecured Creditor Trustee is notified in writing of such Holder's then current address. Any Holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an undeliverable or unclaimed distribution within one (1) year after the Effective Date shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution against the Debtors or their Estates or the Reorganized Debtors or their property. In such cases, any Cash for distribution on account of such claims for undeliverable or unclaimed distributions shall become the property of the Estates and the Reorganized Debtors free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary. Any New Common Stock held for distribution on account of such Claim shall be cancelled and of no further force or effect. Nothing contained in this Plan shall require any Distribution Agent, including, but not limited to, the Reorganized Debtors, to attempt to locate any Holder of an Allowed Claim.

### (5)    Minimum Distributions

The Reorganized Debtors, Distribution Agent, or Unsecured Creditor Trustee shall not be required to make distributions valued at less than $50.00 (whether in Cash or New Common Stock).

## C.    Interest on Claims

Unless otherwise explicitly provided for in the Plan, the Confirmation Order, or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

## D.    Claims and Interests Paid or Payable by Third Parties

### (1)    Claims and Interests Paid by Third Parties

A Claim or Interest shall be reduced in full, and such Claim or Interest shall be Disallowed without an objection to such Claim or Interest having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim or Interest receives payment in full on account of such Claim or Interest from a party that is not a Debtor or Reorganized Debtor. To the extent a holder of a Claim or Interest receives a distribution on account of such Claim or Interest and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim or Interest, such holder shall repay, return, or deliver any distribution held by or transferred to such holder to the applicable Reorganized Debtor to the extent such holder's total recovery on account of such Claim or Interest from the third party and under the Plan exceeds the amount of such Claim or Interest as of the date of any such distribution under the Plan.

### (2)    Claims and Interests Payable by Insurance Carriers

No distributions under the Plan shall be made on account of an Allowed Claim or Allowed Interest that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim or Allowed Interest has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim or Interest, then immediately upon such insurers' agreement, such Claim or Interest may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Notice and Claims Agent without an objection to such Claim or Interest having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## E.    Setoffs

Except as otherwise expressly provided for herein, each Debtor or Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may, but shall not be required to, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature whatsoever that such Debtor or Reorganized Debtor, as

applicable, may hold against the holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effectuate such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such holder. In no event shall any holder of Claims be entitled to setoff any such Claim against any Claim, right, or Cause of Action of any Debtor or Reorganized Debtor (as applicable) unless such holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code section 553 or otherwise.

## F.      Allocation Between Principal and Accrued Interest

Except as otherwise provided herein, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to interest, if any, on such Allowed Claim accrued and unpaid through the Effective Date.

## G.      Provisions for Resolving Disputed Claims

### (1)      Disputed Claims Process

Only the Debtors, the Reorganized Debtors, Distribution Agent, or the Unsecured Creditor Trustee may object to the allowance of any Claim or Administrative Claim. Such objections shall be served and filed on or before the later of (a) one hundred eight (180) days after the Effective Date, or (b) such later date as may be fixed by the Bankruptcy Court, without any limitation of the Debtors, the Reorganized Debtors, or the Unsecured Creditor Trustee to seek additional extensions of time.

After the Effective Date, the Reorganized Debtors shall be accorded the power and authority to allow or to settle and compromise any Claim without notice to any other party, or approval of, or notice to the Bankruptcy Court.

### (2)      Estimation of Claims

The Debtors, the Reorganized Debtors, or the Unsecured Creditor Trustee may at any time request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to Bankruptcy Code section 502(c), regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtors may pursue supplementary

68313706.7

proceedings to object to the allowance of such Claim. The aforementioned objection, estimation, and resolution procedures are intended to be cumulative and rather than procedures that are exclusive of the others.

### (3) Amendments to Claims

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court and the Reorganized Debtors or Unsecured Creditor Trustee, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

### (4) Distributions for Disputed Claims

If an objection, motion to estimate or other challenge to a claim is filed, no payment or distribution provided under this Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as practicable after the date on which the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Unsecured Creditor Trustee shall provide the Holder of such Claim the distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required by the Bankruptcy Code.

## Article VIII. Effect of Plan Confirmation

### A. Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims and Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts or Unexpired Leases with the Debtors.

### B. Injunction

Except as otherwise provided herein or in the Confirmation Order, all Entities that have held, hold, or may hold Claims or interests that have been released pursuant to the Plan shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties, or any of their respective properties or Estates: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching,

collecting, or recovering in any manner or by any means any judgment, award, decree, or order on account of, in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind on account of, in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of, in connection with or with respect to any such Claims or Interests, unless such Entity has Filed, on or before the Confirmation Date, a motion with the Bankruptcy Court requesting the right to perform such setoff, notwithstanding any indication that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to the Plan or that is otherwise inconsistent with the provisions of the Plan.

### C.    Exculpation

Notwithstanding anything to the contrary in the Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any cause of action, claim or other assertion of liability for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, administration, implementation or Filing of, as applicable, Plan, the Plan Supplement, the Disclosure Statement, the Exit Facility, the Exit Facility Documents, the New Corporate Governance Documents, or any other Plan Documents or contract, instrument, release or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of Confirmation, the pursuit of Consummation, the issuance of securities pursuant to the Plan, or the distribution of property under the Plan, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct. Notwithstanding anything to the contrary herein, the Exculpated Parties shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the Solicitation of, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the Solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. With respect to any Exculpated Party that is not also an Estate fiduciary, such exculpation shall be as provided for by Bankruptcy Code section 1125(e).

### D.    Releases by the Debtors

Pursuant to Bankruptcy Code section 1123(b), and notwithstanding anything to the contrary in the Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, and to the fullest extent permitted by applicable law, in exchange for their cooperation, the Released Parties shall be deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all claims, interests,

obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivate claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, their Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Restructuring Transactions, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, preparation, implementation or administration of the Plan, the Plan Supplement, the Disclosure Statement, the Exit Facility, the Exit Facility Documents, the New Corporate Governance Documents, or any other Plan Documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any claim, cause of action or other assertion of liability released pursuant to the Debtor Release.

### E.      Releases by Third Parties

Notwithstanding anything to the contrary in the Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Restructuring Transactions, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, preparation,

implementation or administration of the Plan, the Disclosure Statement, the Plan Supplement, the Exit Facility, the Exit Facility Documents, the New Corporate Governance Documents, or any other Plan Documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good-faith settlement and compromise of the claims released by the Third Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third Party Release.

## Article IX.     Conditions Precedent to Confirmation and Effective Date

### A.     Conditions Precedent to Confirmation

The following is the list of conditions precedent to Confirmation of the Plan:

(1)     the Bankruptcy Court shall have entered an order approving the Disclosure Statement as containing adequate information and such order shall have become a Final Order that has not been stayed or modified or vacated on appeal;

(2)     a form of Unsecured Creditor Trust Agreement shall be agreed upon by the Debtors and the Committee and the proposed Unsecured Creditor Trustee is identified and disclosed;

(3)     the Plan Supplement is filed; and

(4)     the Confirmation Order shall have been entered by the Bankruptcy Court confirming the Plan in form and substance acceptable to the Debtors, and such order shall have become a Final Order that has not been stayed or modified or vacated on appeal;

### B.     Conditions Precedent to Effective Date

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Section IX.D of this Plan:

(1)     the Conditions precedent to Confirmation contained in Section IX.A are met;

(2)     the Unsecured Creditor Trust Agreement shall be executed and the Unsecured Creditor Trustee shall have been appointed and accepted such appointment

(3)     the Exit Facility Documents shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the consummation of the Exit Facilities shall have been waived or satisfied in accordance with the terms thereof and the closing of the Exit Facilities shall occur concurrently with the occurrence of the Effective Date;

(4)     all conditions precedent to the issuance of the New Common Stock, other than any conditions related to the occurrence of the Effective Date shall have occurred;

(5)     the New Corporate Governance Documents shall have been duly filed with the applicable authorities in the relevant jurisdiction;

(6)     all governmental and material third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall be in full force and effect (which, in the case of an order of judgment of any Court, shall mean a Final Order), and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions; and

(7)     all documents and agreements necessary to implement the Plan shall have (a) been tendered for delivery, and (b) been effected or executed by all Entities party thereto, or will be deemed executed and delivered by virtue of the effectiveness of the Plan as expressly set forth herein, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

## C.     Waiver of Conditions Precedent

The conditions to Confirmation and Effective Date set forth in this Article IX may be waived only by consent of the Debtors without any notice to other parties in interest or the Bankruptcy Court and without any formal action other than proceeding to confirm and/or consummate the Plan. The failure to satisfy any condition before the Confirmation Date or the Effective Date may be asserted by the Debtors as a reason not to seek Confirmation or declare an Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors, in their sole discretion). The failure of the Debtors, in their sole discretion, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed an ongoing right, which may be asserted at any time.

## D.     Effect of Nonoccurrence of Conditions

If the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing

38

contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Person or Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## Article X.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of and related to the Chapter 11 Cases for, among other things, the following purposes:

(1)    to hear and determine all matters relating to the assumption or rejection of executory contracts or unexpired leases and the allowance of Cure amounts and Claims resulting therefrom;

(2)    to hear and determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(3)    to Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim against or Interest in a Debtor, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims and Interests

(4)    to ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

(5)    to hear and determine all requests for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Bankruptcy Code sections 330 or 503;

(6)    to hear and determine any application to modify the Plan in accordance with Bankruptcy Code section 1127, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(7)    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing;

(8)    to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan, the

68313706.7

Confirmation Order or any other order of the Bankruptcy Court, except as otherwise provided herein;

(9) to issue orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan;

(10) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(11) to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(12) to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Disclosure Statement Order, the Confirmation Order, any of the Plan Documents or any other contract, instrument, release or other agreement or document related to the Plan, the Disclosure Statement or the Plan Supplement;

(13) to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

(14) to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

(15) to hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

(16) to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors or the Reorganized Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(17) to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases with respect to any Person;

(18) to take any action and issue such orders as may be necessary to construe, enforce, or implement the Exit Facility;

(19) to hear any other matter related to the Plan and not inconsistent with the Bankruptcy Code; and

(20) to enter a final decree closing the Chapter 11 Cases.

40

**Article XI.    Miscellaneous Provisions**

### A.    Amendment or Modification of the Plan

Alterations, amendments, or modifications of the Plan may be proposed in writing by the Debtors at any time before the Confirmation Date; provided that the Plan, as altered, amended, or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123 and the Debtors shall have complied with Bankruptcy Code section 1125. The Debtors may modify the Plan at any time after Confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and the circumstances warrant such modifications. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

### B.    Plan Supplement

Draft forms of certain Plan Documents and certain other documents, agreements, instruments, schedules and exhibits specified in the Plan shall, where expressly so provided for in the Plan, be contained in the Plan Supplement filed from time to time. Unless otherwise expressly provided in the Plan, the Debtors may file any Plan Supplement until five (5) days prior to the Voting Deadline and may alter, modify or amend any Plan Supplement in accordance the Plan. Holders of Claims or Interests may obtain a copy of the Plan Supplement on the Case Website or the Bankruptcy Court's Website.

### C.    Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### D.    Governing Law

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan, an exhibit or a schedule hereto, a Plan Document or any settlement incorporated herein provide otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

### E.    Time

To the extent that any time for the occurrence or happening of an event as set forth in the Plan falls on a day that is not a Business Day, the time for the next occurrence or happening of said event shall be extended to the next Business Day.

41

## F.      Severability

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## G.      Revocation

The Debtors reserve the right to revoke and withdraw the Plan prior to the entry of the Confirmation Order. If the Debtors revoke or withdraw the Plan, the Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtors.

## H.      Dissolution of the Committee

On the Effective Date, the Committee shall be dissolved and its members deemed released of any continuing duties, responsibilities and obligations in connection with the Chapter 11 Cases or the Plan and its implementation, and the retention and employment of the Committee's Professionals shall terminate, except with respect to: (a) any matters concerning Distributions; (b) prosecuting applications for Professionals' compensation and reimbursement of expenses incurred as a member of the Committee; (c) asserting, disputing and participating in resolution of Professional Fee Claims; or (d) prosecuting or participating in any appeal of the Confirmation Order or any request for consideration thereof. Upon the resolution of (a) through (d), the Committee shall be immediately dissolved, released and discharged.

## I.      Reservation of Rights

The Plan shall have no force or effect unless and until entry by the Bankruptcy Court of the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

## J.      Claims Agent

Omni, in its capacity as Voting and Claims Agent, shall be relieved of such duties on the date of the entry of the Final Decree or upon written notice by the Reorganized Debtors or Unsecured Creditor Trustee.

68313706.7

### K. Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### L. Service of Documents

Any pleading, notice, or other document shall be in writing and, unless otherwise provided herein, shall be served on:

| | |
|---|---|
| **Debtors/Reorganized Debtors** | **Senior Care Centers, LLC**<br>600 North Pearl Street, Suite 1100<br>Dallas, Texas 75201<br>Attention: Kevin O'Halloran |
| **Counsel to Debtors** | **Polsinelli PC**<br>600 3rd Avenue, 42nd Floor<br>New York, New York 10016<br>Attention: Jeremy R. Johnson |
| | **Polsinelli PC**<br>2950 N. Harwood, Suite 2100<br>Dallas, Texas 75201<br>Attention: Trey A. Monsour |
| **Counsel to the Committee** | **Greenberg Traurig, LLP**<br>77 West Wacker Drive, Suite 3100<br>Chicago, Illinois 60601<br>Attention: Nancy A. Peterman |
| | **Greenberg Traurig, LLP**<br>1000 Louisiana Street, Suite 1700<br>Houston, Texas 77002<br>Attention: Shari L. Heyen |
| **United States Trustee** | **Office of the United States Trustee**<br>1100 Commerce Street, Room 976<br>Dallas, Texas 75242<br>Attention: Meredyth A. Kippes |

### M. Entire Agreement

Except as otherwise indicated, on the Effective Date, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and

68313706.7

representations with respect to the subject matter of the Plan, all of which will have become merged and integrated into the Plan on the Effective Date.

### N. Inconsistency

To the extent the Confirmation Order and/or the Plan is inconsistent with the Disclosure Statement or any other agreement entered into between the Debtors and any third party, the Plan shall control the Disclosure Statement and any previous agreements and the Confirmation Order shall control the Plan.

### O. Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to Bankruptcy Code sections 1125 and 1126, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the solicitation. Accordingly, the Debtors, the Reorganized Debtors, and each of their respective Related Parties shall be entitled to, and upon the Confirmation Date are hereby granted, the protections of Bankruptcy Code section 1125(e).


Dated:  June 24, 2019          /s/    Kevin O'Halloran
       Dallas, Texas          Kevin O'Halloran
                      Chief Restructuring Officer
                      Senior Care Centers, LLC

## **Exhibit C**

Disclosure Statement Order

[To be filed]

**Exhibit  D**

Financial  Projections

**Senior Care Centers, LLC**
*Consolidated Pro-Forma Financial Statements*

**Senior Care Centers, LLC**
**Consolidated**
**Five Year Pro-Forma Income Statement**

| | Actual | | Projected | | | | |
|---|---|---|---|---|---|---|---|
| | **2017** | **2018** | **2019** | **2020** | **2021** | **2022** | **2023** |
| **Occupancy %** | 75.1% | 73.9% | 74.1% | 76.2% | 76.7% | 77.2% | 77.7% |
| Licensed Beds | 4,018 | 4,018 | 4,018 | 4,018 | 4,018 | 4,018 | 4,018 |
| Operating Beds | 4,018 | 4,018 | 4,018 | 4,018 | 4,018 | 4,018 | 4,018 |
| **Average Daily Census** | **3,017** | **2,971** | **2,976** | **3,060** | **3,081** | **3,102** | **3,121** |
| **Total Patient Days** | **1,104,411** | **1,085,702** | **1,087,105** | **1,118,018** | **1,125,630** | **1,133,310** | **1,140,133** |
| **Q-Mix** | **19.7%** | **18.9%** | **18.3%** | **19.0%** | **19.1%** | **19.2%** | **19.3%** |
| Total Patient Revenue | 300,904,469 | 293,030,660 | 273,166,633 | 286,733,861 | 293,450,577 | 300,760,176 | 307,814,434 |
| Total Other Revenue | 341,155 | 310,258 | 2,526,233 | 2,344,832 | 2,386,035 | 2,428,491 | 2,441,818 |
| Provision for Bad Debt | (6,993,942) | (7,439,330) | (7,676,799) | (8,427,089) | (8,674,314) | (8,932,383) | (9,179,803) |
| **Total Revenue** | **294,251,682** | **285,901,587** | **268,016,067** | **280,651,604** | **287,162,298** | **294,256,284** | **301,076,449** |
| Total Nursing | 91,003,768 | 83,995,529 | 88,282,428 | 93,592,201 | 96,003,987 | 98,447,655 | 100,842,157 |
| Total Consultants | 1,720,998 | 1,334,099 | 1,413,317 | 1,506,492 | 1,539,242 | 1,572,198 | 1,604,941 |
| Total Training & Activities | 4,119,940 | 4,448,573 | 4,712,353 | 4,918,391 | 5,047,884 | 5,178,617 | 5,306,936 |
| Total Ancillaries | 61,723,467 | 56,705,024 | 43,885,497 | 45,808,258 | 46,980,968 | 48,148,821 | 49,273,683 |
| Total Laundry & Housekeeping | 8,468,529 | 8,192,768 | 9,015,545 | 9,381,577 | 9,628,872 | 9,882,423 | 10,130,972 |
| Total Dietary Expenses | 16,037,873 | 16,495,621 | 16,548,481 | 16,869,277 | 17,313,463 | 17,764,923 | 18,207,227 |
| Total Building & Equipment | 4,006,790 | 4,231,168 | 4,410,927 | 4,479,848 | 4,567,631 | 4,655,414 | 4,743,197 |
| Total Operation & Maintenance | 12,764,880 | 13,346,158 | 12,409,304 | 13,427,480 | 13,773,647 | 14,123,653 | 14,466,463 |
| Total Administrative | 40,547,535 | 42,824,957 | 37,225,204 | 39,075,987 | 39,940,844 | 40,806,876 | 41,661,234 |
| Total Workers Comp & Employee Benefits | 1,254,696 | 962,082 | 640,264 | 751,087 | 768,730 | 786,641 | 804,307 |
| **Total Operating Expense** | **241,648,477** | **232,535,977** | **218,543,326** | **229,810,598** | **235,565,268** | **241,367,221** | **247,041,117** |
| **EBITDAR** | **52,603,206** | **53,365,610** | **49,472,741** | **50,841,006** | **51,597,030** | **52,889,063** | **54,035,332** |
| *EBITDAR %* | *17.9%* | *18.7%* | *18.5%* | *18.1%* | *18.0%* | *18.0%* | *17.9%* |
| **Rent** | **36,848,800** | **37,575,513** | **38,139,967** | **39,044,859** | **39,894,781** | **40,744,703** | **41,594,624** |
| *Rent Coverage Ratio* | *1.43x* | *1.42x* | *1.30x* | *1.30x* | *1.29x* | *1.30x* | *1.30x* |
| **EBITDA** | **15,754,406** | **15,790,097** | **11,332,774** | **11,796,147** | **11,702,249** | **12,144,361** | **12,440,708** |
| *EBITDA %* | *5.4%* | *5.5%* | *4.2%* | *4.2%* | *4.1%* | *4.1%* | *4.1%* |
| **CapEx** | - | - | **3,006,350** | **2,892,890** | **2,727,582** | **2,562,274** | **2,396,966** |
| **Adjusted EBITDA** | | | **8,326,424** | **8,903,257** | **8,974,667** | **9,582,087** | **10,043,742** |
| *Revenue PPD* | *266.43* | *263.33* | *246.54* | *251.03* | *255.11* | *259.64* | *264.07* |
| *Operating Expense PPD* | *218.80* | *214.18* | *201.03* | *205.55* | *209.27* | *212.98* | *216.68* |

| Facility # | Debtor Name | DBA name | Case No. | Landlord |
|---|---|---|---|---|
| 115 | Park Bend SCC LLC | Park Bend SN Health Center | 18-34071 | Granite |
| 119 | Sagebrook SCC LLC | Sagebrook SN Health Center | 18-34013 | Granite |
| 128 | Stallings Court SCC LLC | Senior Care of Stallings Court | 18-33977 | LTC |
| 129 | Mission SCC LLC | Mission Nursing and Rehabilitation Center | 18-33975 | LTC |
| 130 | Community SCC LLC | Senior Care at Stephenville | 18-33969 | LTC |
| 132 | Hewitt SCC LLC | Senior Care of Hewitt | 18-33973 | LTC |
| 135 | Green Oaks SCC LLC | Senior Care of Green Oaks | 18-33971 | LTC |
| 136 | Crowley SCC LLC | Senior Care of Crowley | 18-33970 | LTC |
| 137 | Harbor Lakes SCC LLC | Senior Care of Harbor Lakes | 18-33972 | LTC |
| 138 | Brownwood SCC LLC | Senior Care of Brownwood | 18-33968 | LTC |
| 139 | SCC Edinburg LLC | Senior Care of Edinburg | 18-34019 | Larry Parker |
| 141 | Marlandwood East SCC LLC | Senior Care of Marlandwood East | 18-34054 | Granite |
| 142 | Marlandwood West SCC LLC | Senior Care of Marlandwood West | 18-34058 | Granite |
| 143 | Meadow Creek SCC LLC | Senior Care of Meadow Creek | 18-34064 | Granite |
| 146 | Summer Regency SCC LLC | Regency House | 18-34047 | Granite |
| 147 | Western Hills SCC LLC | Senior Care of Western Hills | 18-34056 | Granite |
| 148 | Weston Inn SCC LLC | Senior Care of Weston Inn | 18-34057 | Granite |
| 149 | Windcrest SCC LLC | Senior Care of Windcrest | 18-34061 | Granite |
| 150 | Wurzbach SCC LLC | Senior Care of Wurzbach | 18-34063 | Granite |
| 165 | PM Management - Allen NC LLC | Victoria Gardens of Allen | 18-34076 | Annaly |
| 173 | PM Management - Denison NC LLC | The Homestead of Denison | 18-34084 | Annaly |
| 175 | PM Management - Fredericksburg NC LLC | Windcrest Nursing and Rehabilitation Center | 18-34086 | Fredericksburg |
| 176 | PM Management - Frisco NC LLC | Victoria Gardens of Frisco | 18-34087 | Annaly |
| 177 | PM Management - Garland NC LLC | Winters Park Nursing and Rehabilitation Center | 18-33979 | Annaly |
| 183/305 | PM Management - Killeen I NC LLC | The Rosewood Retirement Community | 18-33984 | House Cross |
| 184 | PM Management - Killeen II NC LLC | Indian Oaks Living Center | 18-33985 | House Cross |
| 185 | PM Management - Killeen III NC LLC | Hill Country Rehab and Nursing Center | 18-33986 | House Cross |
| 186 | PM Management - Lewisville NC LLC | Vista Ridge Nursing and Rehabilitation Center | 18-33988 | Annaly |
| 202 | Redoak SCC LLC | Red Oak Health and Rehabilitation Center | 18-33976 | LTC |
| 216 | Stonegate SCC LLC | Senior Care of Stonegate | 18-33978 | LTC |
| 217 | Holland SCC LLC | Senior Care at Holland Lake | 18-33974 | LTC |

## **Exhibit  E**

Liquidation  Analysis

**Senior Care Centers**
*DRAFT Liquidation Analysis (SUBJECT TO FURTHER CHANGE)*

| | SCC Consolidated Balance Sheet April 30, 2019 $ | HIGH Liquidated Value $ | LOW Liquidated Value $ |
|---|---|---|---|
| **Assets:** | | | |
| Cash | 8,000,000 | 8,000,000 | 8,000,000 |
| Patient Accounts Receivable | 225,933,357 | 46,000,000 | 41,000,000 |
| Rehab Accounts Receivable | 8,996,254 | 1,799,251 | 1,079,550 |
| Building Lease Deposits | 15,172,782 | - | - |
| Vendor Deposits | 1,989,580 | 1,989,580 | 1,989,580 |
| Restricted Cash - Certificate of Deposits | 2,095,127 | - | - |
| Restricted Cash - CapEx Reserve | 15,631,636 | - | - |
| Restricted Cash - Property Taxes | 7,811,814 | - | - |
| Restricted Cash - Insurance | 4,719,367 | - | - |
| Restricted Cash - Liabilitiy Insurance | 861,667 | - | - |
| Restricted Cash - MBS Escrow | 6,900,000 | 6,900,000 | 6,900,000 |
| Building Cost | 12,779,767 | - | - |
| Department Equipment | 3,286,672 | - | - |
| Building Fixed Equipment | 4,496,067 | - | - |
| Computer System/Software | 3,501,331 | - | - |
| Transportation Equipment | 694,653 | 400,000 | 300,000 |
| Furniture & Fixtures | 1,029,151 | 102,915 | - |
| Leasehold Improv Cost | 9,173,977 | - | - |
| Debt Issuance Costs | 912,298 | - | - |
| Goodwill | 22,071,515 | - | - |
| Intangible Assets, net | 11,755,815 | - | - |
| Investment Interest (Partner's & Hospice) | 15,577,491 | 1,557,749 | 600,000 |
| **Net Proceeds to Creditors** | $   383,390,321 | $   66,749,495 | $   59,869,130 |
| **Allocation of Proceeds** | | | |
| **Secured Claims:** | | | |
| CIBC Line of Credit | 22,000,000 | 22,000,000 | 22,000,000 |
| Short-Term Debt - Sabra | 3,100,000 | 3,100,000 | 3,100,000 |
| Capital Lease - Bus | 249,042 | 249,042 | 249,042 |
| Capital Lease - Beds | 27,814 | 27,814 | 27,814 |
| Capital Lease - Equipment | 1,149,984 | 1,149,984 | 1,149,984 |
| Insurance | 5,500,000 | 5,500,000 | 5,500,000 |
| **Total Secured Claims** | $   32,026,840 | $   32,026,840 | $   32,026,840 |
| **Net Proceeds Available for Non-Trade and Trade Claims** | | $   34,722,655 | $   27,842,290 |
| **Non-Trade Claims** | | | |
| Salaries & Payroll Taxes | 18,000,000 | 18,000,000 | 18,000,000 |
| Property Taxes | 14,559,828 | - | - |
| Franchise/Bed Taxes | 2,900,000 | 2,900,000 | 2,900,000 |
| Other Taxes Payable | 7,242 | 7,242 | 7,242 |
| Forecasted Medicaid Recoupment | - | - | - |
| **Total Non-Trade Claims** | $   35,467,070 | $   20,907,242 | $   20,907,242 |
| **Net Proceeds Available for Trade Claims and Bank Interest** | | $   13,815,413 | $   6,935,048 |
| **Trade Claims:** | | | |
| Accounts Payable | 6,500,000 | 6,500,000 | 6,500,000 |
| Accrued Interest | 150,000 | 150,000 | 150,000 |
| **Total Unsecured Claims** | $   6,650,000 | $   6,650,000 | $   6,650,000 |
| **Net Proceeds Available for Prepetition Employee Insurance Claims** | | $   7,165,413 | $   285,048 |
| IBNR Employee Claims | 1,600,000 | 1,600,000 | 1,600,000 |
| Net Proceeds Available for Prepetition Creditors Distribution | | 5,565,413 | -1,314,952 |
| **Estimated Recovery from Litigation*** | | TBD | TBD |

*Recovery from Litigation is contingent, unliquidated, and the process of evaluating potential recovery from litigation is ongoing

## **Exhibit  F**

Historical  Financial  Statements

[To  be  filed]

## **Exhibit  G**

Valuation  Analysis

[To  be  filed]

## **Exhibit  H**

Sources and Uses

[To be filed]