

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 27, 2019**

_____
United States Bankruptcy Judge

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Senior Care Centers, LLC, *et al.*,[1] | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors. | § | (Jointly Administered) |

### AGREED FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF RELATING TO USE OF LOVE FUNDING CORPORATION'S CASH COLLATERAL

Upon the motion of the Debtors and Love Funding Corporation ("**Love Funding**" or "**Lender**") for entry of an order (the "**Final Order**") and findings of fact and conclusions of law (the "**Findings of Fact and Conclusions of Law**") approving the agreement of the Debtors and Love Funding) (i) authorizing the Debtors to use the cash collateral of Love Funding, (ii) granting Love Funding adequate protection upon the terms set forth in the Final Order, (iii)

---

[1] The Debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 569] and may also be found on the Debtors' claims agent's website at https://omnimgt.com/SeniorCareCenters. The location of the Debtors' service address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

66918642.26

modifying the automatic stay, (iv) scheduling a final hearing, and (v) granting such other and further relief as the Court deems just and appropriate; the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b); and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court having found that venue of this proceeding and the Final Order in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief set forth in the Final Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Final Order has been given, under the circumstances, and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND THAT:**[2]

A. On December 4, 2018 (the "**Petition Date**"), the Debtors filed petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**").

B. Since the Petition Date, the Debtors have continued in the management and operation of their businesses and property as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee has been appointed in the Chapter 11 Cases.

C. On December 14, 2018, the Office of the United States Trustee for the Northern District of Texas appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "**Committee**").

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

66918642.26

D. Debtors PM Management-New Braunfels NC, LLC ("**New Braunfels**") and PM Management-Park Valley NC, LLC ("**Park Valley**") are each the operator of a senior care facility (collectively, the "**Love Funding Facilities"**). New Braunfels and Park Valley sublease their respective Love Funding Facility from PM Management – Portfolio IX NC, LLC (the "**Master Tenan**t"), who filed a petition for relief under Chapter 11 of the Bankruptcy Code on January 28, 2019, and who in turn has leased the Love Funding Facilities from their owners, Saddleback Park Valley, LLC ("**Saddleback Park Valley**") and Saddleback Sundance, LLC ("**Saddleback Sundance**" and collectively, the "**Love Funding Borrowers**"), entities that are not affiliated with the Debtors. The Master Tenant, New Braunfels and Park Valley are hereinafter collectively referred to as the "**Love Funding Debtors**".

E. The Love Funding Debtors stipulate and agree as follows:

(1) Through two separate Deed of Trust Notes (the "**Notes**") executed by the Love Funding Borrowers, Lender extended financing for the development and operations of the Love Funding Facilities. The Notes are in the original principal amounts of $9,352,400.00 and $9,958,300.00, the Love Funding Borrowers' obligations to Lender owed under the Notes are secured by, among other things, Deeds of Trust in favor of Lender with respect to each of the Love Funding Facilities.

(2) To further secure the obligations to Lender under the Notes, Debtors New Braunfels and Park Valley each also executed a Security Agreement For Operator and debtor Master Tenant executed a Security Agreement For Master Tenant (collectively, the "**Security Agreements**"), each made as of August 1, 2013, in favor of Lender granting Lender a lien on all of the assets of New Braunfels, Park Valley and Master Tenant, including, among other things, (i) all rents, leases, income, revenues, issues, profits, royalties and other benefits arising or derived or to be derived from, or related to, directly or indirectly, the applicable Love Funding Facility, and (ii) all account receivables, including all healthcare insurance receivables, both governmental and non-governmental (collectively, the "**Love Funding Cash Collateral**").

(3) Lender's security interest in the Love Funding Cash Collateral, except for cash owned by New Braunfels and Park Valley on the petition date and cash received by New Braunfels and Park Valley between the petition date and January 22, 2019, was perfected through the filing of UCC Financing

3

(4)     New Braunfels and Park Valley are operators of skilled nursing facilities located on real property owned by Saddleback Park Valley and Saddleback Sundance, which were financed by the Lender in conjunction with programs run by the U.S. Department of Housing and Urban Development ("**HUD**") and insured by HUD. New Braunfels, Park Valley, and the Master Tenant, Saddleback Park Valley and Saddleback Sundance are each parties to regulatory agreements with HUD (collectively the "**Regulatory Agreements**," each a "**Regulatory Agreement**"). New Braunfels and Park Valley are parties to operator Regulatory Agreements, and the Master Tenant is a party to a master tenant Regulatory Agreement, and Saddleback Park Valley and Saddleback Sundance are parties to Borrower Regulatory Agreements. The Love Funding Debtors stipulate and agree that they are obligated under the Regulatory Agreements and are subject to applicable HUD statutes, regulations, rules, policies, and procedures.

Statements with the Secretary of State and the Counties in which the Love Funding Facilities are located, and constitutes a valid and perfected first priority lien on the Love Funding Cash Collateral.

(5)     As of the Petition Date, the Security Agreements are each valid and enforceable against each of the Love Funding Debtors that is a party thereto, that none of the Love Funding Debtors possesses any claim (as such term is defined in Bankruptcy Code section 101(5)), counterclaim, setoff, or defense of any kind, nature or description which would in any way affect the validity or enforceability of the Security Agreements, and that the Love Funding Debtors agree not to assert any such claim, setoff or defense to the validity or enforceability of the Security Agreements.

(6)     The Lender's liens and security interests with respect to the Love Funding Cash Collateral, except for cash owned by New Braunfels and Park Valley on the petition date and cash received by New Braunfels and Park Valley between the petition date and January 22, 2019, are valid, enforceable and perfected (by the filing of financing statements with State of Texas and the applicable county agencies), and are not subject to recharacterization, disallowance, reduction, or subordination pursuant to the Bankruptcy Code or non-bankruptcy law.

(7)     All of such financing statements and relevant instruments were validly authorized by the Love Funding Debtors and validly executed by authorized representatives of the Love Funding Debtors.

(8)     Prior to January 23, 2019, monies received by New Braunfels and Park Valley were swept into a "Master Account" under the Debtor's cash management system, and such monies were used to pay necessary operating expenses of New Braunfels and Park Valley. Since January 23, 2019, monies received by New Braunfels and Park Valley have not been, and shall no longer be swept into a "Master Account" under the Debtor's

4

66918642.26

cash management program, and all such monies will be kept in the segregated accounts belonging to New Braunfels and Park Valley (except for transfers permitted under paragraphs 5(b), 24, and 25 of the Final Order), where they will be subject to the lien of Lender.

F. The acknowledgements and stipulations in Paragraph E of these Findings of Fact and Conclusions of Law shall be binding on the Love Funding Debtors and all other parties in interest in these cases, except as provided in Paragraph 7 of the Final Order.

G. Love Funding Debtors have requested that the Lender consent to the Love Funding Debtors' use of the Love Funding Cash Collateral and the Lender is willing to consent to the Love Funding Debtors' use of the Love Funding Cash Collateral on the terms and conditions set forth in this Final Order, including the limitation of such use for the purposes and in the amounts provided for in an agreed upon budget, and conditioned on the Love Funding Debtors providing Lender with adequate protection in the form of replacement liens on postpetition accounts receivable. The Lender is relying such terms, conditions, and protections in so consenting.

H. The agreements and arrangements described and authorized in the Final Order have been negotiated at arm's-length with all parties represented by counsel, are fair and reasonable under the circumstances, and are enforceable in accordance with their terms. The Love Funding Debtors and the Lender are acting in good faith with respect to the use of the Love Funding Cash Collateral as provided in the Final Order. The superpriority claims, security interests and liens and other protections granted to the Lender pursuant to the Final Order (1) are fair and reasonable and satisfy the requirements of the Bankruptcy Code, and (2) will not be affected by any subsequent reversal, modification, vacatur or amendment of the Final Order or any other order, as provided in Bankruptcy Code section 364(e).

I. The liens and security interests granted to the Lender in the Final Order shall not prime or impair any validly perfected lien or security interest senior to the liens and security interests of the Lender with respect to the Love Funding Cash Collateral as of the Petition Date, if any (the "**Prior Senior Liens**"). The granting of the replacement liens, superpriority administrative claims and other agreements of the Love Funding Debtors hereunder constitute adequate protection to the Lender for the Love Funding Debtors' use of the Love Funding Cash Collateral for purposes of the Final Order.

J. Good cause has been shown for entry of the Final Order. Without use of the Love Funding Cash Collateral, the Love Funding Debtors will not be able to fund their day-to-day operations, including payroll for their employees and ongoing services to their residents. Unless the Court authorizes the use of the Love Funding Cash Collateral, the Love Funding Debtors will be unable to pay for the goods and services necessary to preserve and maximize the value of the Love Funding Debtors' assets. Accordingly, the Final Order is required to avoid immediate and irreparable harm to the Love Funding Debtors' estates. Entry of the Final Order is in the best interests of the Love Funding Debtors, their creditors, and the estates.

**IT IS AGREED, ORDERED, ADJUDGED, AND DECREED THAT:**

1. <u>Use of Cash Collateral</u>. Subject to the terms and conditions set forth in this Final Order, the Love Funding Debtors are, through termination of this Final Order following issuance of a Termination Notice as set forth in Paragraph 9 below, authorized pursuant to Bankruptcy Code sections 105, 361, 362, and 363, and Bankruptcy Rules 2002, 4001, 6003, and 9014 to use the Love Funding Cash Collateral on a final basis. The Love Funding Cash Collateral may only be used to fund expenditures incurred in the operation of the Love Funding Facilities, of the types and corresponding amounts of itemized expenditures contained in the budget attached

hereto as Exhibit 1 (the "**Budget**"); provided, however, that the Debtors may use Love Funding Cash Collateral in excess of the amount designated for a particular line-item so long as the percentage of deviation of each line item during any rolling 4-week period does not exceed ten percent (10%) (the "**Variance**"); and provided further that the Debtors may not amend or modify the terms and conditions of their use of the Love Funding Cash Collateral, or amend, modify, roll-forward or replace the Budget itself, without the prior written consent of the Lender, which may be granted or withheld in the Lender's reasonable discretion, and notice to the Committee. All parties' arguments with respect to whether costs and expenses are properly allocated to any Debtor are preserved.

2. Reporting. As protection for the Love Funding Debtors' use of the Love Funding Cash Collateral, the Love Funding Debtors shall allow the Lender, HUD, the Committee, and their respective professionals and designees reasonable access, during normal business hours, to the premises of the Love Funding Debtors in order to conduct appraisals, analyses, and/or audits of the Love Funding Cash Collateral, including collateral subject to replacement liens granted herein. In addition to the reporting described above, the Love Funding Debtors shall provide HUD, the Lender, and the Committee with (a) monthly financial statements during the pendency of the Love Funding Debtors' Chapter 11 Cases showing whether the Love Funding Debtors have complied with the restrictions on the use of the Love Funding Cash Collateral, and (b) such additional information as HUD, the Lender, and the Committee shall request from the Debtors. HUD, the Lender, and the Committee shall have reasonable access to each of the Love Funding Debtors' business premises upon appointment and during normal business hours in order to review and evaluate the physical condition of the premises and/or to inspect the financial records and other records of the Love Funding Debtor's concerning the operation of the Love Funding

Facilities and shall otherwise reasonably cooperate in providing any other financial information requested by HUD for this purpose.

3.  Adequate Protection; Replacement Liens. As security for and solely to the extent of any diminution in the value of Love Funding Cash Collateral from and after the Petition Date, calculated in accordance with Bankruptcy Code section 506(a) (a "**Diminution in Value**"), the Lender is hereby granted replacement liens of the same extent, validity, and priority as Lender's prepetition liens upon accounts receivable generated by the Love Funding Debtors after the Petition Date and all monies received by the Love Funding Debtors from and after January 23, 2019 ("**Replacement Liens**"), but excluding all claims and causes of action, and the products and proceeds thereof, arising under or permitted by Bankruptcy Code sections 502(d), 506(c), 544, 545, 547, 548, 549, and 550 and any other avoidance claims and causes of action arising under state or federal law (collectively, the "**Excluded Assets**"). The Replacement Liens so granted are in addition to all security interests, liens, and rights of setoff existing in favor of the Lender on the Petition Date (and as may be continuing postpetition in accordance with Bankruptcy Code section 552(b)), and are and shall be valid, perfected, enforceable, without any further action of the Love Funding Debtors or the Lender and without the necessity of the execution, filing or recording of any financing statements, security agreements, or other documents, or of obtaining control agreements over any bank accounts. Notwithstanding the foregoing, the Lender is hereby authorized, but not required, to file or record any financing statements, security agreements, deeds of trust, or other documents in any jurisdiction or take any other action in order to validate and perfect the Replacement Liens granted hereunder. For avoidance of doubt, the Replacement Liens so granted do not extend to any monies received by

8

the Love Funding Debtors between the Petition Date and January 22, 2019 that were swept into a "Master Account" under the Debtor's cash management system.

4.     <u>Adequate Protection; 507(b) Priority Claim</u>. The Lender, as to the Love Funding Debtors, is hereby granted an administrative claim against the Love Funding Debtors with a priority equivalent to a claim under Bankruptcy Code sections 364(c)(1), 503(b), and 507(b), on a dollar-for-dollar basis for and solely to the extent of any Diminution in Value, which administrative claim shall, among other things, have priority over all other costs and expenses of the kind specified in, or ordered pursuant to, Bankruptcy Code sections 105, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 1113, and 1114 (the "**Superpriority Administrative Claim**"), but shall not be payable from the Excluded Assets.

5.     <u>Adequate Protection; Cash Management Modification</u>. The entry of this Final Order modifies the *Final Order (I) Authorizing Continued Use of Existing Cash Management System, Including Maintenance of Existing Bank Accounts, Checks, and Business Forms, and (II) Authorizing Continuation of Existing Deposit Practices* [Docket No. 606] (the "**Final Cash Management Order**"), as well as any previous orders entered regarding same, with regard to the Love Funding Cash Collateral. Except for the payment of expenses as expressly permitted by this order, all Love Funding Cash Collateral received by the Debtor on or after January 23, 2019 has been maintained in segregated bank accounts of the Love Funding Debtors, and all Love Funding Cash Collateral, now existing or hereinafter received, shall be maintained in segregated bank accounts of the Love Funding Debtors subject to the lien of Lender, such that any automatic sweep from any bank accounts of the Love Funding Debtors to any other account of any debtor other than a Love Funding Debtor that would operate in the normal course of the Debtors' operations and cash management system is, and has been since January 23, 2019,

9

"turned off" and (a) all payments authorized by this order shall be paid by a Love Funding Debtor from an applicable Love Funding Debtor Account; and (b) any transfers to any non-Love Funding Debtor Account shall be made manually, within seventy-two (72) business hours, to pay for that Love Funding Debtor's proportionate share of obligations that are otherwise administered through other accounts in the Debtors' cash management system or are otherwise centralized system-wide costs for Debtor's operations and are not paid at the Love Funding Debtor level; provided, however, that transfers to any non-Love Funding Debtor Account to pay for a Love Funding Debtor's proportionate share of expenses shall be limited to expenses and in amounts that are authorized under the Budget. In addition, the Love Funding Debtors shall, within five days of entry of this Order, provide an accounting to Lender and the Committee for all revenues received by the Love Funding Debtors since the Petition Date that were swept into a master account pursuant to the *Interim Order (I) Authorizing Continued Use of Existing Cash Management System, Including Maintenance of Existing Bank Accounts, Checks, and Business Forms, and (II) Authorizing Continuation of Existing Deposit Practice*s [Docket No. 72] (the "**Interim Cash Management Order**") and the expenses paid with such money since the Petition Dates to operate and maintain the Love Funding Facilities, sufficient to determine whether, and if so by how much, the revenues received by the Love Funding Debtors since the Petition Date and swept into a master account have exceeded the expenses paid that were necessary to operate and maintain the Love Funding Facilities.

6. The Love Funding Debtors will provide to CIBC, the Committee and the Lender an accounting on a bi-weekly basis of the monies to be expended in the following fourteen day period that will be administered through accounts other than the Love Funding Debtors' accounts. Subject to such expenditures being approved in the attached Budget, the Love Funding

66918642.26

Debtors will manually transfer those amounts necessary to fund those advances between 24 hours and 72 hours prior to those expenditures being made. CIBC will have no obligation to fund expenditures on behalf of the Love Funding Debtors should it not receive in advance the monies necessary to fund such expenditures. For the avoidance of doubt, such expenditures are not included in the CIBC Debtors' cash collateral orders and CIBC has no authority to make such advances pursuant to those orders.

7. <u>Parties in Interest Bound</u>.

   a. The admissions and stipulations contained in the Findings of Fact and Conclusion of Law shall be binding on the Love Funding Debtors under all circumstances and shall be binding upon all other parties-in-interest, including, without limitation, any Committee and any Chapter 7 or Chapter 11 trustee that may be appointed or elected on behalf of the Love Funding Debtors' estates, except to the extent that (i) a party-in-interest (including, without limitation, the Committee) has filed a motion, adversary proceeding or contested matter challenging the validity, enforceability or priority of the liens granted by the Security Agreements, or otherwise asserting any claims or causes of action against the Lender on behalf of the Love Funding Debtors' estates, no later than July 31, 2019 (the "**Challenge Deadline**"), and (ii) the Court rules in favor of the plaintiff in any such timely filed motion, adversary proceeding or contested matter. If any such motion, adversary proceeding or contested matter is timely commenced as of the Challenge Deadline, the admissions contained in this Final Order shall nonetheless remain binding and preclusive (as provided in this paragraph) except to the extent that such acknowledgments and agreements are expressly challenged in such motion, adversary proceeding or contested matter.

   b. If no such motion, adversary proceeding or contested matter is commenced as of the Challenge Deadline, then (i) the liens granted by the Security Agreements shall not be subject to subordination, or avoidance, for all purposes in these Chapter 11 cases and any subsequent Chapter 7 case, (ii) the liens granted by the Security Agreements and the Replacement Liens granted herein as adequate protection shall be deemed legal, valid, binding, duly authorized," perfected, not subject to defense, counterclaim, recharacterization, offset of any kind, or subordination, other than as set forth herein, and otherwise unavoidable, (iii) the liens granted by the Security Agreements and the Replacement Liens shall not be subject to any other or further challenge by any party-in-interest seeking to exercise the rights of the Love Funding Debtors' estates, including, without limitation, any successor thereto, and (iv) the Lender

11

66918642.26

        shall be deemed released from any and all rights, claims, causes of action and liabilities arising from or in connection with the Security Agreements.

    c.    The Committee and the Lender may stipulate in writing to extend the Challenge Deadline for the Committee without further order of the Court. Should the Committee and the Lender stipulate to extend the Challenge Deadline, notice shall be filed with the Court to inform parties in interest.

8.    <u>Events of Default</u>. Each of the following shall constitute an event of default ("**Event of Default**") with respect to the Love Funding Debtors' authorization to use the Love Funding Cash Collateral, unless otherwise waived in writing by the Lender:

    a.    entry of an order converting any of the Love Funding Debtors' Chapter 11 cases to a case under Chapter 7 of the Bankruptcy Code;

    b.    entry of an order dismissing any of the Love Funding Debtors' Chapter 11 cases;

    c.    entry of an order appointing or directing the election of a trustee or an examiner with expanded powers for any of the Love Funding Debtors under Bankruptcy Code sections 1104 or 1106(b);

    d.    without the prior written consent of the Lender, the entry of any order (or other judicial action which has the effect of) amending, reversing, supplementing, staying the effectiveness of, vacating, or otherwise modifying this Final Order;

    e.    any of the Love Funding Debtors uses Love Funding Cash Collateral for any purpose or in a manner other than as permitted in this Final Order;

    f.    entry of an order by the Bankruptcy Court authorizing relief from stay by any person (other than the Lender) on or with respect to all or any portion of the collateral subject to the Security Agreement with a value in excess of $50,000;

    g.    the filing by the Love Funding Debtors of any pleading objecting to or seeking to challenge the Lender's liens under the Security Agreement, including the Lender's lien upon the Love Funding Cash Collateral or asserting rights, claims or causes of action against the Lender;

    h.    the entry of an order approving any bid procedure and/or sale documents relating to the sale of any collateral pledged to Lender that is not acceptable to and supported by Lender; or

12

      i.     any of the Love Funding Debtors voluntarily or involuntarily dissolves or is dissolved, liquidates or is liquidated or ceases the operation of any material portion of its business.

9.     <u>Termination Notice</u>. Immediately upon the occurrence or existence of an Event of Default, the Lender shall be authorized to issue a notice (a "**Termination Notice**") thereof which will be filed with the Court with copies to the Love Funding Debtors, their counsel, counsel to the Committee, and the U.S. Trustee, which Termination Notice may be delivered by electronic mail. The Court will consider such Termination Notice on an expedited basis; <u>provided</u>, <u>however</u>, that the Love Funding Debtors will continue to be authorized to use the Love Funding Cash Collateral in accordance with this Final Order until the Court's consideration of such Termination Notice.

10.     <u>Failure of Adequate Protection</u>. Nothing herein shall constitute a waiver, release or modification of the rights of the Lender or HUD to assert a claim under Bankruptcy Code section 507(b), subject to the terms of this Final Order.

11.     <u>Automatic Stay</u>. The automatic stay under Bankruptcy Code section 362(a) shall be, and it hereby is, vacated and modified to the extent necessary to permit (i) the Lender to send the Termination Notice (as defined herein), or (ii) HUD to send any required notices pursuant to HUD programs, statutes, regulations, policies, procedures, rules or any Regulatory Agreements. For the avoidance of doubt, the automatic stay would not apply to any governmental unit's use or implementation of regulatory or police powers.

12.     <u>Deemed Request for Stay Relief</u>. This Final Order shall be deemed to constitute a request by the Lender for relief from the automatic stay with respect to Love Funding Cash Collateral (but solely to the extent provided by this Final Order), for adequate protection for the use of Lender's interest in the Love Funding Cash Collateral as of the Petition Date, and shall suffice for all purposes of Bankruptcy Code section 507(b).

66918642.26

13. <u>CMS Reservation of Rights</u>. Notwithstanding anything in the Findings of Fact and Conclusions of Law or this Final Order, nothing shall (1) restrain, limit or impact any action by the U.S. Department of Health & Human Services, the Centers for Medicare and Medicaid Services or Medicare Administrative Contractors to implement the Medicare program; (2) affect, modify or impair any governmental unit's recoupment or setoff rights, claims, or defenses; and (3) be construed to affect the exclusive jurisdiction of the U.S. Department of Health & Human Services to adjudicate and pay Medicare claims in the ordinary course.

14. <u>SSA reservation of Rights</u>. Notwithstanding anything in this Final Order or the Findings of Fact and Conclusions of Law, nothing shall (1) restrain, limit, or impact any action by the Social Security Administration ("**SSA**") to implement SSA programs, including, but not limited to, implementing representative payee statutes, rules, policies and procedures; (2) in the postpetition period, create a lien or encumbrance of any type on Social Security benefits held by the Debtors on behalf of beneficiaries; and (3) be construed to affect the exclusive jurisdiction of SSA with respect to enforcement actions.

15. <u>HUD Reservation of Rights</u>. Notwithstanding anything in the Findings of Fact and Conclusions of Law or this Final Order, nothing shall (1) restrain, limit or impact any action by HUD to implement HUD programs; (2) affect, modify or impair HUD's rights, claims or defenses with respect to any of the following: (a) any Regulatory Agreement executed between HUD and the Love Funding Debtors, and (b) any Regulatory Agreement executed between HUD and the Love Funding Borrowers or any other party relating to the Love Funding Facilities; and (3) be construed to affect the exclusive jurisdiction of HUD with respect to enforcement actions. Without limiting the foregoing, for the avoidance of doubt, HUD's rights, claims and defenses

are preserved with respect to filing any claim or administrative expense, and bringing any action or proceeding pursuant to applicable nonbankruptcy law.

16. <u>Assignment to HUD</u>. Upon any default by the Love Funding Debtors under any Regulatory Agreement, any applicable security instruments or agreements, or applicable law, such that results in an assignment of either of the Notes to HUD, HUD shall be subrogated to all claims, rights, remedies and defenses of the Lender, pursuant to the terms of this Final Order and all applicable security instruments and agreements and applicable statutes and regulations.

17. <u>Rent</u>. No payments of rent or for use and occupancy of real estate shall be made by Love Funding Debtors with the Love Funding Cash Collateral except to the extent such payments are hereafter approved by Lender in writing and approved by the Court on notice to all parties in interest; provided, however, that the Love Funding Debtors shall not, by virtue of this provision, be required to make any payments for use and occupancy of real estate unless required to do so by another order of this Court.

18. <u>No Duty to Monitor Compliance</u>. The Lender and HUD may assume that the Love Funding Debtors will comply with all terms and conditions of this Final Order and shall not (a) be obligated to ensure or monitor the Love Funding Debtors' compliance with the terms and conditions of this Final Order or the Lease and Security Documents, (b) be obligated to pay (directly or indirectly from Lender's Cash Collateral or otherwise) any expenses incurred or authorized to be incurred pursuant to this Final Order or in connection with the operation of the Love Funding Debtors' businesses, or (c) be obligated to ensure or monitor that Lender's Cash Collateral exists to pay such expenses.

66918642.26

19. <u>No Waiver</u>. The failure of the Lender to seek relief or otherwise exercise its rights and remedies under this Final Order shall not constitute a waiver of any of Lender's rights hereunder.

20. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holders or any direct, indirect or incidental beneficiary.

21. <u>Effect of Order</u>. This Final Order shall be immediately effective and not subject to any stay (notwithstanding anything to the contrary contained in the Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3)). The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered (a) confirming any plan of reorganization; (b) dismissing any one of these Chapter 11 cases; (c) converting any one of these Chapter 11 cases to any other chapter under the Bankruptcy Code; (d) withdrawing of the reference of any one of these Chapter 11 cases from the Court; or (e) providing for abstention from handling or retaining of jurisdiction of any one of these Chapter 11 cases in the Court.

22. <u>Amendments and Waivers</u>. Any amendment, modification, supplement or waiver of any provision in this Final Order shall be in writing, signed by the Love Funding Debtors and the Lender, and approved by the Court on appropriate notice by the Love Funding Debtors to all parties in interest.

23. <u>The Lender Not in Control of Love Funding Debtors' Operations</u>. With respect to the Love Funding Debtors' use of Cash Collateral pursuant to this Final Order, or any actions reasonably related to this Final Order, neither the Lender, nor its respective agents, employees, attorneys or representatives, shall have any liability to any third party (including creditors of the Love Funding Debtors) and shall not be deemed to be in control of the Love Funding Debtors'

operations or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Love Funding Debtors.

24. <u>Dental Providers Reservation of Rights</u>. Notwithstanding anything in this Order, the Debtors shall: (i) segregate all postpetition funds attributable to the services provided by Atlas Dental Management, LLC, Texas Nursing Home Management Solutions, LLC, dba Nursing Home Dental Care, and OnSite Dentists of Texas (the "**Dental Providers**"); (ii) the Debtors shall provide Dental Providers with monthly bank records evidencing the segregation of funds no later than the twentieth (20th) day of the month evidencing the segregation and deposit of funds for the previous month; and (iii) the Debtors shall remit to the respective Dental Providers such monies attributable to the respective Dental Provider for services performed within thirty (30) days of the proper submission of all invoices and other documents by the Dental Providers. In the event there is a dispute between the Debtors and a Dental Provider as to the amounts received by the Debtors attributable to its services, the Debtors and the Dental Provider shall make a good faith effort to resolve the dispute within thirty (30) days of notice of such dispute which shall include the parties' exchange of information and documents substantiating the parties' accounting. In the event no resolution is attained, either party may seek further relief from the Court to enforce the provisions hereinabove. The Dental Providers, the Lender, the Committee, and the Debtors reserve all rights related to lien priority, segregation, accounting, ownership, and distribution of monies received for dental services provided both prepetition and postpetition.

25. <u>Order Governs</u>. In the event of any inconsistency between the provisions of this Final Order and the Security Documents, the provisions of this Final Order shall govern.

###End of Order###

66918642.26

Ordered submitted by:

| **POLSINELLI PC** | **MCGUIRE, CRADDOCK & STROTHER, P.C.** |
|---|---|
| */s/ Trey A. Monsour* | */s/ J. Mark Chevallier* |
| Trey A. Monsour | J. Mark Chevallier |
| State Bar No. 14277200 | Texas State Bar 04189170 |
| Polsinelli PC | Steven H. Thomas |
| 2950 N. Harwood, Suite 2100 | Texas State Bar 19868890 |
| Dallas, Texas 75201 | 2501 North Harwood Street, Suite 1800 |
| Telephone: (214) 397-0030 | Dallas, Texas 75201 |
| Facsimile: (214) 397-0033 | Telephone: (214) 954-6800 |
| tmonsour@polsinelli.com | Facsimile: (214) 954-6850 |
| | mchevallier@mcslaw.com |
| -and- | sthomas@mcslaw.com |
| | |
| Jeremy R. Johnson (Admitted *Pro Hac Vice*) | -and- |
| 600 3rd Avenue, 42nd Floor | |
| New York, New York 10016 | **BOGORAD & RICHARDS PLLC** |
| Telephone: (212) 684-0199 | Stephen A. Bogorad (Admitted *Pro Hac Vice*) |
| Facsimile: (212) 684-0197 | 209 Madison Street, Suite 501 |
| jeremy.johnson@polsinelli.com | Alexandria, Virginia 22314 |
| | Telephone: (703) 457-7820 |
| | Facsimile: (703) 457-7824 |
| | sab@bogoradrichards.com |
| | |
| *Counsel to the Debtors and Debtors in Possession* | *Counsel to Love Funding Corporation* |

66918642.26

# **Exhibit 1**

Budget

66918642.26

*13 week cash flow - LOVE FUNDING (Facility 187 and 188)*

| | | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| | Week Ending Friday | 28-Jun | 5-Jul | 12-Jul | 19-Jul | 26-Jul | 2-Aug | 9-Aug | 16-Aug | 23-Aug | 30-Aug | 6-Sep | 13-Sep | 20-Sep |
| | *Pre Petition Outstanding Checks/Payments* | | | | | | | | | | | | | |
| x | **Beginning Book Balance** | 2,304,349 | 1,455,899 | 1,502,366 | 1,407,276 | 1,569,832 | 1,389,275 | 1,042,061 | 977,101 | 1,092,882 | 945,786 | 1,036,690 | 718,348 | 830,901 |
| x | **Operating Cash Receipts** | | | | | | | | | | | | | |
| | Medicare | 45,608 | 12,562 | 39,862 | 95,668 | 15,945 | 36,673 | 95,668 | 15,945 | 7,972 | 12,543 | 31,358 | 54,876 | 117,592 |
| | Medicaid | 233,040 | 86,233 | 57,489 | 53,382 | 53,382 | 53,382 | 53,382 | 53,382 | 64,162 | 64,162 | 64,162 | 64,162 | 61,595 |
| | Private & Insurance | 67,041 | 67,672 | 109,560 | 70,505 | 52,117 | 69,731 | 87,990 | 116,454 | 82,771 | 71,199 | 57,138 | 100,550 | 104,860 |
| | Asset Disposition | | | | | | | | | | | | | |
| | **Total Operating Cash Receipts** | 345,690 | 166,467 | 206,910 | 219,555 | 121,444 | 159,786 | 237,040 | 185,781 | 154,904 | 147,904 | 152,658 | 219,588 | 284,047 |
| x | **Operating Cash Disbursements** | | | | | | | | | | | | | |
| | Facility Rent | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Payroll & Taxes | 245,000 | - | 245,000 | - | 245,000 | - | 245,000 | - | 245,000 | - | - | - | - |
| | HBT Insurance Trust Funding | | | | | | | | | | | | 6,035 | |
| | HBT Insurance Trust Funding (Employee Funded) * | | | | | | | | | | | | | |
| | 401K Funding (Employee Funded) * | | | | | | | | | | | | | |
| | Colonial Insurance (Employee Funded) * | | | | | | | | | | | | | |
| | MEC Insurance (Employee Funded) * | | | | | | | | | | | | | |
| | ADP Insurance Remittance (Employee Funded) * | | | | | | | | | | | | | |
| | Travel Related Expenses | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| | Pharmacy (Omnicare) | | | | | | | | | | | | | |
| | HSG | *35,000* | *35,000* | *35,000* | *35,000* | *35,000* | *35,000* | *35,000* | *35,000* | *35,000* | *35,000* | *35,000* | *35,000* | *35,000* |
| | Patient Refunds (incl. Dental/PASRR) | 50,000 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| | A/P - COD or COA Payments | | | | | | | | | | | | | |
| | Accounts Payable | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 60,000 | 60,000 | 60,000 |
| | Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Corporate Office Lease | | | | | | | | | | | | | |
| | Repairs and Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | - | - | - |
| | **Total Disbursements** | 349,500 | 57,000 | 302,000 | 57,000 | 302,000 | 57,000 | 302,000 | 57,000 | 302,000 | 57,000 | 101,000 | 107,035 | 101,000 |
| x | **Net Operating Cash Flow** | (3,810) | 109,467 | (95,090) | 162,555 | (180,556) | 102,786 | (64,960) | 128,781 | (147,096) | 90,904 | 51,658 | 112,553 | 183,047 |
| x | **Total Non-Operating Cash Disbursements** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | **Bankruptcy Disbursements** | | | | | | | | | | | | | |
| | US Trustee/Filing Fees | | 13,000 | | | | | | 13,000 | | | | | |
| x | Ordinary Course Professionals | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Board Counsel | | | | | | | | | | | | | |
| | Other | | | | | | | | | | | | | |
| | Investment Banker | | | | | | | | | | | | | |
| x | Utility Deposit | | | | | | | | | | | | | |
| | Insurance | | 50,000 | | | | 50,000 | | | | | | | |
| | **Total Bankruptcy Disbursements** | - | 63,000 | - | - | - | 50,000 | - | 13,000 | - | - | - | - | - |
| | **Total Professional Fees** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | **Net Cash Flow** | (3,810) | 46,467 | (95,090) | 162,555 | (180,556) | 52,786 | (64,960) | 115,781 | (147,096) | 90,904 | 51,658 | 112,553 | 183,047 |
| | Reimbursement to SCC Corp. (Net) - Post Filing | (844,640) | - | - | - | (400,000) | | | | | | (370,000) | - | |
| | **Ending Book Balance** | 1,455,899 | 1,502,366 | 1,407,276 | 1,569,832 | 1,389,275 | 1,042,061 | 977,101 | 1,092,882 | 945,786 | 1,036,690 | 718,348 | 830,901 | 1,013,948 |
| | *Add Back Outstanding Checks* | | | | | | | | | | | | | |
| | **Ending Bank Ledger Balance** | | | | | | | | | | | | | |
| | Due to Parent - Reimbursement (Estimated) | 160,000 | 240,000 | 320,000 | 400,000 | 480,000 | 160,000 | 230,000 | 300,000 | 370,000 | 440,000 | 140,000 | 210,000 | 280,000 |
| | Outstanding Post-Petition AP | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 80,000 |
| | **Net Unencumbered Cash** | 1,145,899 | 1,112,366 | 937,276 | 1,019,832 | 759,275 | 732,061 | 597,101 | 642,882 | 425,786 | 446,690 | 428,348 | 470,901 | 653,948 |

* Included in "Due to Parent- Reimbursement" at approximately $25-$30k per month