Susan C. Mathews
State Bar No. 05060650
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
1300 McKinney, Suite 3700
Houston, Texas 77010
Telephone: (713) 650-9700
Facsimile: (713) 650-9701
Email:  smathews@bakerdonelson.com

**COUNSEL FOR ORIX REAL ESTATE CAPITAL, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re:** § | | **Chapter 11** |
| § | | |
| **Senior Care Centers, LLC, *et al.*,** § | | **Case No. 18-33967 (BJH)** |
| § | | |
| **Debtors.** § | | **Jointly Administered** |

**ORIX REAL ESTATE CAPITAL, LLC'S RESPONSE TO
DEBTORS' OMNIBUS MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE DEBTORS TO ASSUME UNEXPIRED REAL
PROPERTY LEASES, (II) ESTABLISHING AND AUTHORIZING THE
DEBTORS TO PAY ANY ATTENDANT CURE AMOUNTS, OR SUCH**

ORIX REAL ESTATE CAPITAL, LLC, successor by merger to LANCASTER POLLARD MORTGAGE COMPANY LLC AND RED MORTGAGE CAPITAL, LLC ("ORIX"), a secured creditor and party-in-interest, files its Response to Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Unexpired Real Property Leases, (II) Establishing and Authorizing the Debtors to Pay Any Attendant Cure Amounts, or Such (the "Objection"), and respectfully states as follows:

## I. FACTUAL BACKGROUND

### A. ORIX's Prepetition HUD Loans to the Granite Entities and J-S and the Debtors' AR Financing

1. In 2014 and 2017, ORIX's predecessor in interest, Lancaster Pollard Mortgage Company LLC, provided HUD financing for twenty-one (21) of the Debtors' assisted living and/or skilled nursing facilities ("Facilities"). ORIX made loans in the aggregate original principal amount of $171,256,800 ("Granite Loans") to certain non-Debtor entities (the "Granite Borrowers"). The Granite Borrowers, in turn, leased the Facilities to the Debtors listed on Exhibit "A" ("G-Debtors") through either master leases with the Debtors' parent, Senior Care Centers LLC ("SCC") or direct leases with the G-Debtors ("Granite Leases").

2. The Granite Loans are secured by, among other things (i) first priority liens on the real property and improvements, including the Facilities; (ii) assignments of leases ("Granite Assignment of Leases") between the Granite Borrowers and the G-Debtors covering the Facilities, (iii) first priority security interests in the specified G-Debtors' licenses, provider agreements, owner-operator agreement, furniture, fixture, equipment, software and inventory, other personal property, and proceeds thereof, as well as (iv) accounts and accounts receivables, under security agreements executed by those G-Debtors.

3. Another loan ("J-S Loan") was made by ORIX's predecessor in interest, Red Capital Mortgage LLC, to J-S Fredericksburg Realty, LP ("J-S") on August 1, 2017 in connection with the Windcrest facility located in Fredericksburg, Texas ("Windcrest Facility"). The Debtor, PM Management Fredericksburg NC, LLC ("PMM"), leases the Windcrest Facility from J-S pursuant to a lease agreement dated February 1, 2009 ("J-S Lease"). The J-S Loan is secured by

the real property and improvements owned by J-S, an Assignment of the J-S Lease, and the accounts and accounts receivable pledged by PMM.

4. HUD insured the Granite Loans and the J-S Loan, and the G-Debtors and PMM also have obligations under certain HUD Healthcare Regulatory Agreements and amendments to the lease agreements.

### B. Debtors' Chapter 11 Filings

5. On December 4, 2018 ("Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Bankruptcy Code.

6. The Debtors are operating and managing their business as debtors-in-possession pursuant to 11 U.S.C. §§1107 and 1108, and no trustee has been appointed.

7. On December 7, 2018, the Court ordered joint administration of the Debtors' bankruptcy cases [Docket No. 65].

8. An Official Committee of Unsecured Creditors ("Committee") was appointed on December 14, 2019.

9. The G-Debtors rejected 16 of the Granite leases ("the G-16 Leases"), which included 13 leases subject to ORIX's liens, pursuant to a Compromise and Settlement Agreement ("CSA I") approved by the Court by Order entered on May 7, 2019 [Docket No. 1053]. The G-Debtors rejected five additional Granite leases (two of which leases are pledged to ORIX) by Order entered on June 24, 2019 [Docket No. 1422].

10. On July 2, 2019, the Debtors filed their Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Unexpired Real Property Leases, (II) Establishing and Authorizing the Debtors to Pay Any Attendant Cure Amounts, or Such [Doc. No. 1479] ("Omnibus Motion to Assume Leases"). The Debtors currently propose to assume the 10

remaining Granite leases (which includes six leases pledged to ORIX) and the J-S Lease pursuant to the Omnibus Motion to Assume Leases, with a reservation of the right to modify their election to assume these leases.

11. It is undisputed that the Debtors failed to pay rent due under any of the Granite Leases prior to May 2019. Pursuant to the terms of the CSA I, the Debtors made their initial payment of fair use and occupancy charges ("FUO") for the 16 rejected leases (which included the 13 leases pledged to ORIX) in May 2019. The first payment covered January through March 2019 FUO due for these facilities. The CSA I provided that subsequent monthly FUO payments would be made in arrears with the final June 2019 FUO charges for the G-16 Leases due on July 31, 2019.

12. It is also undisputed that the Debtors did not pay any rent on the remaining Granite Leases (which the Debtors proposed to assume) until July 16, 2019, at which time the Debtors made a payment to Granite of one month of contractual rent due under these leases.

13. The Granite Borrowers defaulted under the Granite Loans beginning in April 2019. As of July 19, 2019, a total of $161,974,048 was due and owing under the Granite Loans, which includes $1,647,216 in past due monthly mortgage payments for June and July 2019.

14. The Debtors have made post-petition rental payments to J-S. As of July 22, 2019, a total of $4,233,677.20 was due and owing under the J-S Loan, which is current as of this date.

## II. RESPONSE TO OMNIBUS MOTION TO ASSUME

### A. Debtors Must Assume Leases and All Related Agreements

15. ORIX does not object to the Debtors' proposed assumption of the remaining Granite Leases and the J-S Lease which are pledged to ORIX provided the Debtors comply with Section 365 of the Bankruptcy Code and applicable federal law. Importantly, these leases were

executed by the Granite Borrowers and J-S in connection with the HUD loans made by ORIX to the respective borrowers. As such, the Debtors were required to execute certain HUD regulatory and operating agreements for which they remain liable. Consequently, the Debtors may not assume the Granite Leases and the J-S Lease without assuming all HUD regulatory agreements, security agreements, and any other documents relating to these leases and loans under applicable law.

<u>Granite Leases</u>

16. The Debtors propose to assume two direct leases, the lease for the Park Bend Skilled Nursing Health Center and the lease for the Sagebrook Skilled Nursing Health Center. Both leases are pledged to ORIX to secure the HUD loans made by ORIX to the designated Granite Borrowers. As a result, the parties executed a HUD Addendum to each of the leases at the time of the closing on the HUD Loans. The HUD Addendum to Lease Agreement-Sagebrook specifically provides as follows:

> <u>Precedence of Addendum</u>. For so long as HUD is the holder or insurer of any indebtedness secured by the Property, the provisions of this Addendum shall apply to this Lease. . . .
>
> 2. <u>Compliance with HUD Program Requirements and Terms of Mortgage Loan Documents</u>.
>
> (a) Tenant agrees to comply with all applicable HUD Program Requirements and the Mortgage Loan Documents. Tenant further agrees that this Lease will be part of the collateral pledged by Owner/Landlord to Lender and HUD. Tenant agrees that it will not take any action which would violate any applicable HUD Program Requirements or any of the Mortgage Loan Documents.

The HUD Addendum to Lease Agreement - Park Bend contains similar provisions with respect to the tenant's obligations under the loan documents and other HUD agreements.

17. The Debtors also proposed to assume four Granite subleases which are covered by the Amended and Restated Master Lease Agreement ("<u>Trisun IV SCC Master Lease</u>") dated as of October 1, 2017, executed by the Granite Master Landlords[1] and SCC, as the Master Tenant. The Trisun IV SCC Master Lease specifically states that the Granite Master Landlords are refinancing the facilities with a new loan from ORIX which is insured by HUD. The Master Lease is subject to certain HUD Lender requirements including, but not limited to, capital improvements reserves and insurance coverage to be provided by the Master Tenant. Section 53.2 of the Trisun IV SCC Master Lease also specifically requires that SCC, as master tenant, "execute the Operator's Regulatory Agreement and the Operator's Security Agreement, and all other documents required by HUD Lender or HUD to evidence HUD Lender's security interest in the collateral of Master Tenant. Master Tenant shall comply with all obligations under the Operator's Regulatory Agreement and the Operator's Security Agreement."

18. In addition, SCC as master tenant executed a HUD Addendum to Master Lease ("<u>SCC HUD Addendum</u>"). The SCC HUD Addendum states: "The parties to this Addendum intend that the Master Lease comply with all applicable Program Obligations and the Loan Documents. The Master Tenant agrees to comply, and to cause each Operator to comply, with all applicable Program Obligations and the Loan Documents." The term "Loan Documents" is defined in the SCC HUD Addendum to mean "each Landlord Regulatory Agreement, Security Instrument, Note, Master Tenant Regulatory Agreement, Operator Regulatory Agreement, Operator Security Agreement, Master Tenant Security Agreement . . . whether executed by or on behalf of any Landlord, Master Tenant or Operator. . . ." The Master Lease and Addendum

---

[1] The Master Landlords are Granite Regency LLC, Granite Marlandwood West LLC, Granite Windcrest LLC and Granite Wurzbach LLC.

make clear that the lease obligations include obligations under the HUD loan documents and related agreements.

### J-S Lease

19. The J-S Lease was amended by an Addendum to Operating Lease (<u>J-S HUD Addendum</u>") dated as of August 1, 2017, executed by J-S as landlord, and PMM as the tenant/operator. The J-S HUD Addendum states that "[f[or so long as HUD is the holder or insurer of nay indebtedness secured by the Healthcare Facility (as defined below), the provisions of this Addendum shall apply to the Operator Lease. Section 6 of the J-S HUD Addendum further states:

> 6. OPERATOR'S REGULATORY AGREEMENT AND OPERATOR'S SECURITY AGREEMENT. Prior to HUD's endorsement of the Note, Lessee shall execute the Operator's Regulatory Agreement and the Operator's Security Agreement, and all other documents required by Lender or HUD to evidence Lender's security interest in the collateral of Lessee. Lessee shall comply with all obligations under the Operator's Regulatory Agreement and the Operator's Security Agreement. Any default by Lessee under the Operator's Regulatory Agreement or Operator's Security agreement shall be deemed to be a default under the Operator Lease and this Addendum.

20. As the Fifth Circuit stated in *Stewart Title Guaranty Co. v. Old Republic Title National Title Insurance Co.*, 83 F.3 735 (Fifth Cir. 1996), "'It is well established that as a general proposition an executory contract must be assumed or rejected in its entirety.' [citation deleted]. Where an executory contract contains several agreements, the debtor may not choose to reject some agreements within the contract and not others." *Id.* at 741. *See also In re Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th Cir. 1985); *In re Mirant Corp.*, 318 B.R. 100 (Bankr. N.D. Tex. 2004). Whether a contract is severable is determined by applicable state law. *See in re Mirant*, 318 B.R. at 104.

ORIX REAL ESTATE CAPITAL LLC'S RESPONSE TO DEBTORS'
MOTION TO ASSUME UNEXPIRED REAL PROPERTY LEASES  PAGE 7

4811-4915-5741v1
2016604-000408 07/23/2019

21. The language in the HUD Addenda to the Granite Leases, the SCC HUD Addendum, and the J-S HUD Addendum make clear that the leases are directly related to the Debtors' obligations under operating agreements and regulatory agreements. As such, the Debtors cannot assume the Granite direct leases, the Granite subleases, and the J-S lease unless they assume these related agreements.

22. In addition, ORIX submits that the Debtors cannot assume the Granite subleases without assuming the Trisun IV SCC Master Lease. The SCC HUD Addendum to the Master Lease provides as follows:

> 4. **Single, Indivisible Lease**. The Master Lease constitutes one indivisible lease of the Healthcare Facilities and not separate leases governed by similar terms. The Healthcare Facilities constitute one economic unit, and the Rent and all other provisions have been negotiated and agreed to based on a demise of all of the Healthcare Facilities to Master Tenant as a single, composite, inseparable transaction, and the Rent and all other provisions would have been substantially different had separate leases or a divisible lease been intended. . . . The parties intend that the provisions of this Master Lease shall at all times be construed, interpreted and applied so as to carry out their mutual objective to create an indivisible lease of all of the Healthcare Facilities, **and in particular but without limitation, that for purposes of any assumption, rejection or assignment of this Master Lease under 11 U.S.C. §365, this is one indivisible and non-severable lease and executory contract dealing with one legal and economic unit, and this Master Lease must be assumed, rejected or assigned as a whole with respect to all (and only as to all) of the Healthcare Facilities.** No Healthcare Facility may be released from the Master Lease except with the prior written approval of HUD. (emphasis added).

23. *In the case of In re Cafeteria Operator L.P.*, 299 B.R. 384 (N.D. Tex. 2003), the Bankruptcy Court considered whether a master sublease agreement that covered 43 restaurants could be rejected as to some restaurants, but not all. *See id*. at 388-90. The determination of whether the contract was severable was based upon state law and required the Court examine

"the intent of the parties, the subject matter of the agreement, and the conduct of the parties." Id. at 389-90. In the instant case, the intent is clear from the Addendum -- the lease is to be considered one indivisible lease and specifically recognizes the possibility of a lease assumption or rejection under Section 365 of the Bankruptcy Code. From an economic standpoint, the lease should be considered indivisible as SCC has the ability to re-allocate rent among the facilities. See Section 7 of SCC HUD Addendum. The Debtors should not be allowed to disavow terms it agreed to under the SCC HUD Lease Addendum.

B.  **Debtors Must Pay all Rent and Other Charges due under Leases and Provide Adequate Assurance of Future Performance**

24. In the case of *In re Cafeteria Operators, L.P.*, 299 B.R. 384 (N.D. Tex. 2003), the Bankruptcy Court considered whether a master sublease agreement that covered 43 restaurants could be rejected as to some restaurants, but not all. *See id.* at 388-90. The determination of whether the contract was severable was based upon state law and required the Court examine "the intent of the parties, the subject matter of the agreement, and the conduct of the parties." Id. at 389-90. In the instant case, the intent is clear from the Addendum -- the lease is to be considered one indivisible lease and specifically recognizes the possibility of a lease assumption or rejection under Section 365 of the Bankruptcy Code. From an economic standpoint, the lease should be considered indivisible as SCC has the ability to re-allocate rent among the facilities. See Section 7 of SCC HUD Addendum. The Debtors should not be allowed to disavow terms it agreed to under the SCC HUD Lease Addendum.

25. Finally, the Debtors must acknowledge that the cure payments due under the Remaining Granite Leases will be at the contractual rental rate under the leases and will include all

arrearages, including payments which were due for ad valorem property taxes and other impounds. Given the Debtors' track record in the months before the filing of the Debtors' bankruptcy case as well as the Debtors' performance (or lack thereof) following the Petition Date, ORIX requests that the Debtors provide adequate assurance of future performance under the leases they seek to assume.

26. ORIX reserves the right to amend or supplement this Response prior to the hearing on the Debtors' Omnibus Motion to Assume.

WHEREFORE, ORIX Real Estate Capital, LLC respectfully requests that the Court grant the Debtors' Motion subject to the requirements stated herein and grant it such other and further relief to which it may be entitled.

Dated: July 25, 2019.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ**
A Professional Corporation

By: */s/ Susan C. Mathews*
Susan C. Mathews
Texas Bar No. 05060650
smathews@bakerdonelson.com
1301 McKinney St., Suite 3700
Houston, Texas 77010
Telephone: (713) 650-9700
Facsimile: (713) 650-9701

- and -

John H. Rowland
*(Admitted Pro Hac Vice)*
TN Bar No. 013944
jrowland@bakerdonelson.com

211 Commerce Street, Suite 811<br>
Nashville, Tennessee<br>
Telephone:  615/726-5544<br>
Facsimile: 615/744-5544

**ATTORNEYS FOR LANCASTER POLLARD MORTGAGE COMPANY LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 25, 2019, a true and correct copy of the foregoing Objection was served via the Court's ECF system on those parties listed below and those parties registered to receive ECF notices by the Court.

| **Debtor's Attorney** | **Debtor's Special Counsel** |
|---|---|
| Trey A. Monsour | E.P. Keiffer |
| Polsinelli PC | Rochelle McCullough LLP |
| 2950 N. Harwood, Suite 2100 | 325 North Saint Paul Street, Suite 4500 |
| Dallas, Texas 75201 | Dallas, Texas 75201 |

Jeremy R. Johnson
Polsinelli PC
600 3rd Avenue, 42nd Floor
New York, New York 10016

**United States Trustee**

Ms. Meredith A. Kippes
Stephen McKitt
Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242-1699

**Counsel for CIBC**

Stephen M. Pezanosky
Matthew T. Ferris
Haynes and Boone
2323 Victory Avenue, Suite 700
Dallas, Texas 75219

John Robert Weiss
Rosanne Ciambrone
Duane Morris LLP

ORIX REAL ESTATE CAPITAL LLC'S RESPONSE TO DEBTORS'
MOTION TO ASSUME UNEXPIRED REAL PROPERTY LEASES                                                                PAGE 11

4811-4915-5741v1
2016604-000408 07/23/2019

190 South LaSalle Street, Suite 3700
Chicago, IL  60603-3433

**Counsel for the Official
Committee of Unsecured Creditors**

Shari Heyen
Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002

Nancy A. Peterman
Greenberg Traurig, LLP
77 West Wacker Dr., Suite 3100
Chicago, Illinois  60601

*/s/ Susan C. Mathews*
Susan C. Mathews