**BRYAN CAVE LEIGHTON PAISNER LLP**
Trinitee G. Green
(TX State Bar No. 24081320)
2200 Ross Avenue, Suite 3300
Dallas, TX  75201
Telephone:  214-721-8041
Facsimile:  214-721-8100
trinitee.green@bclplaw.com

Brian A. Sher
Illinois State Bar No. 6196964
(*Pro Hac Vice* Application Pending)
161 N. Clark Street, Suite 4300
Chicago, Illinois  60601
Telephone:  312-602-5070
Facsimile:  312-698-7470
bryan.sher@bclplaw.com

Kyle S. Hirsch
Arizona State Bar No. 024155
(*Pro Hac Vice* Application Pending)
2 North Central Ave., Suite 2100
Phoenix, Arizona  85004
Telephone:  602-364-7170
Facsimile:  602-760-8170
kyle.hirsch@bclplaw.com

*Counsel for Plaintiff OLP Wyoming Springs, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **Senior Care Centers, LLC, et al.** | § | **Case No. 18-33967-bjh-11** |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |
| | § | |
| _____ | § | |
| | § | |
| **OLP Wyoming Springs, LLC** | § | **Adversary No. _____** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Senior Care Centers, LLC and** | § | |
| **PM Management - Round Rock AL, LLC** | § | |
| | § | |
| **Defendants.** | | |

---

**ADVERSARY COMPLAINT**                                                                 **PAGE 1**
537786260.7

## COMPLAINT

OLP Wyoming Springs, LLC ("**OLP**"), through its undersigned counsel, files this Complaint against Senior Care Centers, LLC ("**SCC**") and PM Management - Round Rock AL, LLC ("**PM**" and collectively with SCC, "**Defendants**"), and alleges as follows:

## I.   PARTIES

1.      OLP is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Great Neck, New York.  OLP may be served through its undersigned counsel.

2.      SCC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 600 N. Pearl Street, Suite 1100, Dallas, Texas 75201.  SCC may be served with process through its registered agent CT Corporation System at CT Corporation System at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

3.      PM is a limited liability company organized and existing under the laws of the Sate of Texas with its principal place of business at 7230 Wyoming Springs Drive, Round Rock, Texas, 78681.  PM conducts business in the State of Texas and is registered with the Texas Secretary of State.  PM may be served with process c/o CT Corporation System, 350 N. St. Paul Street, Ste 2900, Dallas, Texas 75201.

## II.   JURISDICTION AND VENUE

4.      Jurisdiction is proper under 28 U.S.C. §§ 1334, 2201.  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).

5.      Venue is proper in this district under 28 U.S.C. § 1409(a).

6.      This adversary proceeding is brought pursuant to Rules 7001(1) and (7) of the Federal Rules of Bankruptcy Procedure.

### III.   FACTUAL ALLEGATIONS

7.    OLP owns the real property and improvements thereon at 7230 Wyoming Springs Road, Round Rock, Texas (the "**Premises**").

8.    On or about November 10, 2010, PM entered into a Lease Agreement of the Premises (as amended from time to time, the "**Lease**") as tenant.  On or about August 6, 2013, OLP acquired the Premises and received assignment of the landlord's rights under the Lease.

9.    The Lease expressly states, at Section 6.6(c), that:  "When the Lease is terminated for whatever reason, then Tenant will cooperate with Landlord in the termination and transition process to facilitate the change of licensure to Landlord or a new Tenant."

10.    PM occupies the Premises and, pursuant to a management agreement between PM and SCC, SCC operates the Premises as an Assisted Living and Memory Care facility and licensed healthcare residence at the Premises.

11.    On November 20, 2018, as a result of PM's defaults of its obligations under the Lease, OLP commenced an action in the District Court of Williamson County, 368th Judicial District (the "**State Court Action**"), against SCC and another entity who guaranteed PM's obligations under the Lease, Harden Healthcare, LLC ("**Guarantor**").

12.    On December 4, 2018 (the "**Petition Date**"), SCC and numerous affiliates of SCC, including PM, each filed separate Chapter 11 voluntary petitions in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division ("**Bankruptcy Court**"). On December 7, 2018, the Bankruptcy Court entered an order of joint administration, identifying SCC as the lead case (the "**Case**").

13.    Pursuant to the Bankruptcy Court's order entered in the Case at Docket Entry No. 589, PM rejected the Lease effective February 28, 2019.

14.     Notwithstanding PM's rejection of the Lease, PM remains in possession of the Premises and SCC continues to operate the facility.

15.     Notwithstanding PM's rejection of the Lease, PM has refused to pay OLP any rent post-rejection.

16.     Despite PM's continued occupancy of the Premises and SCC's continued operation of the facility, Defendants have failed to adequately maintain the property, which places the patients, employees, and visitors at risk of injury and, in turn, imposes future risks on OLP.  Among other things, the roof is leaking and in need of replacement, and the carpets have tears that present trip hazards.

17.     In addition to the risk of injury, Defendants' failure to properly maintain the Premises diminishes the value of the Premises and impairs its marketability.

18.     Patient resident volume at the Premises is declining as patient residents and their families seek alternative placement as a result of Defendants' poor operation of the facility.  As patient resident volume declines, the value of the Premises and the Lease decreases. Accordingly, Defendants' refusal to negotiate an orderly transfer of operations diminishes the potential sale price of the Premises by OLP.

19.     Defendants' ongoing operation of the Premises imposes a financial burden on the Debtors' bankruptcy estates.

20.     After PM rejected the Lease, OLP entered into negotiations to sell the Premises.

21.     OLP has accepted a letter of intent to sell the Premises, and was actively engaged in selling the Premises to a proposed purchaser until SCC stopped negotiating in good faith and thwarted OLP's efforts.

22.     The proposed sale price contemplates patient resident volume, such that as patient resident volume declines there is significant risk that the proposed purchaser will either refuse to move forward with the purchase or decrease the purchase price.

23.     A condition of the proposed purchaser's closing of the sale is an orderly transfer of operations to a new operator other than Defendants. An orderly transfer of operations is appropriate to ensure residents do not suffer a lapse in care in connection with the proposed sale transaction, and to provide patient residents and their families with assurance of continued care. The proposed purchaser is unable to purchase the Premises absent an agreement to transfer the operations to a new operator.

24.     OLP has requested that Defendants negotiate an agreement to transfer operations of the Premises to a new operator in an orderly fashion.

25.     Defendants refuse to negotiate an agreement for the orderly transfer of operations in good faith.

26.     Specifically, Defendants have demanded that OLP agree to release and waive any and all claims against Defendants and the _non-debtor_ Guarantor of the rejected Lease before Defendants will engage in operations transfer agreement negotiations. Defendants' demands are not supported by the law but rather, Defendants admittedly are using their "leverage" to force OLP to release its claims against the _non-debtor_ Guarantor and Defendants knowing that time is of the essence with respect to: 1) deteriorating care for the residents; and 2) sale of the Premises.

27.     Defendants know that an orderly transfer of operations is a condition precedent to the proposed sale of the Premises.

28.     Defendants know that their refusal to negotiate an operations transfer agreement in good faith interferes with OLP's ability to close the proposed sale of the Premises.

29.     Defendants' interference with OLP's proposed sale of the Premises threatens the physical well-being of the facility's patients; in essence, Defendants are using the patients and their need for continuity of care as pawns in an effort to extract concessions from OLP to which they are not entitled.

30.     Defendants' interference with OLP's proposed sale of the Premises increases the administrative burdens of Defendants' bankruptcy estates.

31.     Defendants owe fiduciary duties to their respective bankruptcy estates.

32.     Defendants' continued occupation and operation of the Premises, and Defendants' unreasonable refusal to negotiate an orderly operations transfer in good faith, constitute a breach of their fiduciary duty to their respective bankruptcy estates.

33.     Accordingly, OLP brings this Complaint seeking (i) damages against Defendants for tortious interference of a prospective contract and business relationship as a result of Defendants' conduct, which constitutes trespass and breaches their fiduciary duties to their respective estates; (ii) injunctive relief to compel Defendants to engage in good faith negotiations to transfer operations at the Premises, free of unreasonable and improper conditions such as releases of liability of Defendants, which could undercut OLP's mitigation efforts in connection with the Lease, and the non-debtor Guarantor, which is wholly inappropriate under the law; and (iii) declaratory relief establishing the parties' respective rights and responsibilities as they relate to the Premises.

## IV.    CAUSES OF ACTION

### COUNT I:  TRESPASS
### (PM ONLY)

34.     OLP incorporates the allegations set forth in each of the preceding paragraphs by this express reference.

35.     PM has rejected the Lease effective February 28, 2019.

36.     As a result of PM's rejection of the Lease, PM has no lawful right to continue to occupy the Premises.

37.     OLP owns the Premises and as a result of PM's rejection of the Lease, OLP has the legal right to exclusive possession of the Premises.

38.     Despite rejection of the Lease, PM remains in possession of the Premises.

39.     Despite rejection of the Lease, PM refuses to pay for continued occupation of the Premises.

40.     Through the proposed sale, OLP has arranged for a new operator to take over operations in an orderly fashion from SCC in order to avoid discontinuation or disruption of services to patients of the facility.

41.     PM's continued occupancy of the Premises after the effective date of Lease rejection constitutes unlawful trespass. PM, however, cannot vacate the premises without ensuring the orderly transfer of the facility's residents to another operator. Consequently, PM is obligated to take steps necessary to cease its unlawful trespass, including negotiating in good faith an operations transfer agreement which will allow it to expeditiously cease its trespass of the Premises.

42.     OLP is therefore entitled to damages in an amount to be determined at trial as a result of PM's unlawful trespass, including but not limited to attorneys' fees incurred.

43.     OLP is therefore entitled to injunctive relief compelling PM to immediately negotiate in good faith an operations transfer agreement and vacate the Premises as a result of PM's unlawful trespass.

## COUNT II: TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACT AND BUSINESS RELATIONS

44. OLP incorporates the allegations set forth in each of the preceding paragraphs by this express reference.

45. OLP has accepted a letter of intent to sell the Premises to a proposed purchaser and had been making significant progress towards a contract of sale.

46. The successful closing of the proposed sale requires a transfer of operations from SCC to a replacement operator.

47. Defendants know of OLP's proposed sale of the Premises and the proposed purchaser's requirement that operations transfer in an orderly fashion from Defendants.

48. Defendants refuse to negotiate unless OLP agrees to certain conditions including, without limitation, OLP releasing Defendants and the *non-debtor* Guarantor from liability under the Lease and related guaranties.

49. Defendants' refusal to negotiate absent OLP granting the demanded releases lacks good faith.

50. Defendants' refusal to negotiate in good faith is unreasonable and improper.

51. Defendants' refusal to negotiate in good faith and continued possession of the Premises compromises the well-being of patients, employees, and visitors of the Premises. Such conduct constitutes a breach of Defendants' duty to patients, employees, and visitors of the Premises and is therefore negligent.

52. Defendants' refusal to negotiate in good faith and continued possession of the Premises increases OLP's administrative claim against the estates and diminishes the potential amount of recovery for general unsecured creditors, thus constituting a breach of Defendants' fiduciary duties as debtors-in-possession.

53. Defendants' refusal to negotiate in good faith and continued possession of the Premises results in decreased patient resident volume, thereby diminishing the revenue generated by the Defendants' bankruptcy estates in breach of their fiduciary duties as debtors-in-possession.

54. Defendants' refusal to negotiate in good faith and continued possession of the Premises furthers PM's unlawful trespass.

55. Defendants' refusal to negotiate in good faith and continued possession of the Premises interferes with OLP's business relations as it relates to its proposed sale of the Premises.

56. Defendants' refusal to negotiate in good faith and continued possession of the Premises interferes with OLP's business relations as it results in declining resident volume and, thus, either a decreased sale price or a termination of the proposed transaction.

57. Defendants knowing their actions are interfering with OLP's business relations and ability to close on a contract for the sale of the Premises.

58. Defendants intend that their actions interfere with OLP's business relations and ability to close on a contract for the sale of the Premises.

59. OLP has been injured by Defendants' tortious interference with the business relations and contract in an amount to be proven, including but not limited to attorneys' fees incurred.

60. OLP is entitled to punitive damages as a result of Defendants' knowing and intentional interference.

61. OLP is entitled to injunctive relief compelling Defendants to negotiate in good faith an orderly transfer of operations.

## COUNT III: BREACH OF CONTRACT - SPECIFIC PERFORMANCE
### (PM ONLY)

62.     OLP incorporates the allegations set forth in each of the preceding paragraphs by this express reference.

63.     The Lease requires PM to perform certain duties and tasks including after Lease termination.

64.     Section 6.6(c) of the Lease requires PM to cooperate in the termination and transition process of operations when the Lease is terminated for whatever reason.

65.     Based on PM's rejection of the Lease, the Lease has been terminated.

66.     Despite the clear language of the Lease, PM refuses to cooperate in transitioning operations to a new operator as required under Section 6.6(c) of the Lease.

67.     OLP is therefore entitled to specific performance in the form a Court order compelling PM to perform its post-termination obligations under the Lease including, without limitation, the obligation to cooperate in good faith in the termination and transition process of operations from SCC to a new operator.

## COUNT IV: DECLARATORY JUDGMENT

68.     OLP incorporates the allegations set forth in each of the preceding paragraphs by this express reference.

69.     OLP requests that the Court enter declaratory judgment as to Defendants' responsibility to negotiate an operations transfer agreement in good faith.

70.     An actual controversy exists because, contrary to OLP's expectations and demands, Defendants refuse to negotiate an operations transfer agreement in good faith.

71.     Unless the Court makes a determination as to Defendants' responsibility to negotiate an operations transfer agreement in good faith, OLP will be deprived of its ability to

maximize the value of its property which is no longer property of Defendants' bankruptcy estates.

## RELIEF REQUESTED

OLP respectfully requests that this Court: (i) enter judgment for OLP and against Defendants for trespass damages sustained; (ii) enjoin Defendants from refusing to negotiate an orderly transfer of operations, and compel Defendants to negotiate such transfer in good faith which means, among other things, Defendants may not require releases of claims against Defendants and a non-debtor Guarantor as a condition of negotiating an operations transfer agreement; (iii) ordering PM to specifically perform its post-termination obligations under the Lease including, without limitation, cooperating with the transition of operations to a new operator pursuant to Section 6.6(c); (iv) declare that Defendants have an affirmative obligation to negotiate an orderly transfer of operations in good faith; and (v) grant such further relief as the Court deems appropriate.

Dated: August 2, 2019

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Trinitee G. Green*
      Trinitee G. Green
      Texas State Bar No. 24081320
      2200 Ross Avenue, Suite 3300
      Dallas, TX 75201
      Telephone: 214-721-8041
      Facsimile: 214-721-8100
      Email: trinitee.green@bclplaw.com

      Brian A. Sher
      Illinois State Bar No. 6196964
      (*Pro Hac Vice* Application Pending)
      161 N. Clark Street, Suite 4300
      Chicago, Illinois 60601

Telephone:  312-602-5070
Facsimile:  312-698-7470
bryan.sher@bclplaw.com

Kyle S. Hirsch
Arizona State Bar No. 024155
(*Pro Hac Vice* Application Pending)
2 North Central Ave., Suite 2100
Phoenix, Arizona  85004
T:  602-364-7170
F:  602-760-8170
kyle.hirsch@bclplaw.com

*Attorneys For Plaintiff*
*OLP Wyoming Springs, LLC*