Trey A. Monsour
State Bar No. 14277200
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
Polsinelli PC
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| Senior Care Centers, LLC, *et al.*,[1] | § § | Case No. 18-33967 (BJH) |
| Debtors. | § § § | (Jointly Administered) |

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF DEBTORS'
COMPLIANCE WITH BANKRUPTCY CODE SECTION 365(d)(4)**

The above-captioned debtors and debtors in possession (the "**Debtors**"), by and through their undersigned counsel, hereby file this memorandum of law (this "**Memorandum of Law**") pertaining to their compliance with Bankruptcy Code section 365(d)(4) and sufficient assumption of the real property leases that are the subject of their plan (the "**Plan Leases**"). In support of this Memorandum of Law, the Debtors respectfully state as follows:

---

[1] The Debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 569] and may also be found on the Debtors' claims agent's website at https://omnimgt.com/SeniorCareCenters. The location of the Debtors' service address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

69865009.4

**BACKGROUND**

1.      On December 4, 2018 (the "**Petition Date**"), the Debtors filed voluntary petitions commencing cases for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").[2]

2.      The factual background regarding the Debtors, including their business operations, capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Kevin O'Halloran, Chief Restructuring Officer of Senior Care Centers, LLC, in Support of Chapter 11 Petitions and First Day Pleadings*, filed concurrently herewith [Docket No. 25] (the "**First Day Declaration**") and fully incorporated herein by reference.

3.      The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

4.      No trustee or examiner has been requested in the Chapter 11 Cases.

5.      On December 14, 2018, the Office of the United States Trustee for the Northern District of Texas appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "**Committee**").

6.      On April 1, 2019, the Court entered the *Order Extending the Deadline to Assume or Reject Unexpired Leases of Nonresidential Real Property* [Docket No. 820] and the *Order Extending the Deadline to Assume or Reject Unexpired Leases of Nonresidential Real Property (Specific to G-Debtors)* [Docket No. 1052] (the "**Deadline Extension Orders**"). Pursuant to the Deadline Extension Orders, the Debtors' time to assume or reject unexpired real property leases

---

[2] Certain additional Debtors filed voluntary petitions for relief on January 21, 2019 and May 20, 2019.

69865009.4

was extended generally[3] through and including July 2, 2019 (the "**Assumption Deadline**"), without prejudice to the rights of the Debtors to request further extensions.

7. Accordingly, on June 24, 2019, the *Debtors' Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 1426] (the "**Plan**") was filed, wherein the Debtors requested that this Court permit the Debtors to assume the Assumed Leases, pursuant to Bankruptcy Code section 1123(b)(2), prior to the Assumption Deadline. However, in an abundance of caution, on July 2, 2019, the Debtors also filed the *Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Unexpired Real Property Leases, (II) Establishing and Authorizing the Debtors to Pay any Attendant Cure Amounts, or Such Other Amounts as Agreed, and (III) Granting Certain Related Relief* [Docket No. 1479] (the "**Assumption Motion**").[4]

8. On July 23, 2019, HC Hill Country Associates, Ltd., H-C Associates, Ltd., and HC-RW Associates, Ltd. (collectively, "**House Cross**") filed the *Objection of HC Hill Country Associates, Ltd., H-C Associates, Ltd., and HC-RW Associates, Ltd. to Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Unexpired Real Property Leases, (II) Establishing and Authorizing the Debtors to Pay any Attendant Cure Amounts, or Such Other Amounts as Agreed, and (III) Granting Certain Related Relief* [Docket No. 1606] (the "**House Cross Objection**").

9. On July 23, 2019, J-S Fredericksburg Realty, LP ("**Fredericksburg**") filed *J-S Fredericksburg Realty, LP's Objection to Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Unexpired Real Property Leases, (II) Establishing and*

---

[3] The referenced Granite orders already have revised deadlines and conditions.
[4] Furthermore, contemporaneously with the filing of the Assumption Motion, the Debtors also filed their *Plaintiff's Original Complaint for Declaratory Judgment* (the "**Complaint**"), which seeks a declaratory judgment that the deadlines provided in Bankruptcy Code section 365(d)(4) are inapplicable to the Debtors' skilled nursing, assisted living, and hospice leases based on the residential nature of such leases.

69865009.4

*Authorizing the Debtors to Pay any Attendant Cure Amounts, or Such Other Amounts as Agreed, and (III) Granting Certain Related Relief* [Docket No. 1607] (the "**Fredericksburg Objection**").

10. On July 23, 2019, Hidalgo Healthcare Realty, LLC ("**Larry Parker**") filed *Hidalgo Healthcare Realty, LLC's Objection to Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Unexpired Real Property Leases, (II) Establishing and Authorizing the Debtors to Pay any Attendant Cure Amounts, or Such Other Amounts as Agreed, and (III) Granting Certain Related Relief* [Docket No. 1608] (the "**Larry Parker Objection**").

11. On July 23, 2019, CHI Javelin LLC, CHI Javelin Winters Park LLC, CHI Javelin Denison LLC, CHI Javelin Frisco LLC, CHI Javelin Allen LLC, and CHI Javelin Vista Ridge LLC ("**Annaly**") filed *Annaly/CHI Javelin Landlords' Objection to Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Unexpired Real Property Leases, (II) Establishing and Authorizing the Debtors to Pay any Attendant Cure Amounts, or Such Other Amounts as Agreed, and (III) Granting Certain Related Relief* [Docket No. 1609] (the "**Annaly Objection**").

12. On July 23, 2019, TXMS Real Estate Investments, Inc. ("**LTC**") filed *TXMS Real Estate Investments, Inc.'s Objection to the Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Unexpired Real Property Leases, (II) Establishing and Authorizing the Debtors to Pay any Attendant Cure Amounts, or Such Other Amounts as Agreed, and (III) Granting Certain Related Relief* [Docket No. 1610] (the "**LTC Objection**").

13. House Cross, Fredericksburg, Larry Parker, Annaly, and LTC shall hereinafter be referred to as the "**Plan Landlords**."

14. On July 25, 2019, two days after the objection deadline, Orix Real Estate Capital, LLC ("**Orix**") filed *Orix Real Estate Capital, LLC's Response to Debtors' Omnibus Motion for*

*Entry of an Order (I) Authorizing the Debtors to Assume Unexpired Real Property Leases, (II) Establishing and Authorizing the Debtors to Pay any Attendant Cure Amounts, or Such Other Amounts as Agreed, and (III) Granting Certain Related Relief* [Docket No. 1627] (the "**Orix Objection**").

15. On July 26, 2019, three days after the objection deadline, Granite filed the *Granite Landlords Reservation of Rights and Objection to the Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Unexpired Real Property Leases, (II) Establishing and Authorizing the Debtors to Pay any Attendant Cure Amounts, or Such Other Amounts as Agreed, and (III) Granting Certain Related Relief* [Docket No. 1636] (the "**Granite Objection**").

16. On July 29, 2019, the Debtors filed the *Notice of G-Debtors-10 Rejection of Remaining Granite Leases* [Docket No. 1641] (the "**Remaining Granite Rejection**").

17. On August 2, 2019, the Debtors filed their *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 1684] (the "**Amended Plan**"). Pursuant to the Amended Plan, the Debtors have reduced the total number of facilities from thirty-two (32) to twenty-two (22) and contemplate assumption of the applicable leases (the "**Plan Leases**"). The only change in the underlying leases was the elimination of the leases with Granite, no new leases were added.

## MEMORANDUM OF LAW

**A. The Debtors' Leases are Residential Leases and the Assumption Deadline Provided in Bankruptcy Code Section 365(d)(4) Does Not Apply**

18. Pursuant to Bankruptcy Code section 365(d)(4)(A), "an unexpired lease of **nonresidential** real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the

trustee does not assume or reject the unexpired lease by the earlier of (i) the date that is 120 days after the date of the order for relief; or (ii) the date of the entry of an order confirming the plan." (emphasis added).

19. "The court may extend the period determined under subpart (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause." 11 U.S.C.A. § 365(d)(4)(B)(i). "If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance." 11 U.S.C.A. § 365(d)(4)(B)(ii).

20. However, these deadlines only apply to ***nonresidential*** real property leases. "[N]owhere in the legislative history … did Congress state any intent for § 365(d)(4) to be applied to residential structures. No legislative intent can be inferred from the legislative history which contradicts the plain language of the statute restricting § 365(d)(4) to nonresidential real property." *In re Care Givers, Inc.*, 113 B.R. 263, 267 (Bankr. N.D. Tex. 1989) (holding that six nursing home leases are not leases of nonresidential real property within the meaning of section 365(d)(4), and therefore, the deadline to assume real property leases did not apply).

21. In *Care Givers*, the debtors were lessees of six real property leases relating to nursing home operations. The landlords asked the court to deem these leases rejected as a matter of law because the debtors filed their motion to assume the leases two days after the deadline provided in Bankruptcy Code section 365(d)(4). *Id*. at 265.

22. The landlords argued that the court should focus on the nature of the lease, not on the use of the real property. *Id*. at 266. If the lease can be characterized as a commercial lease, then, the landlords argued, the lease is nonresidential and falls under Bankruptcy Code section 365(d)(4). *Id*. The landlords further argued that section 365(d)(4) applies even to a commercial

lease for residential real property, and that the statute covers any commercial lease of real property. *Id*.

23. In starting its analysis, the court rejected the landlord's argument and noted that "[t]he plain meaning of the phrase used in the statute, 'lease of nonresidential real property,' is not synonymous with the phrase 'commercial lease of real property.'" *Id*. The court continued, "[i]n the statute the adjective 'nonresidential' modifies 'real property' thereby focusing on the character of the real property, not the character of the lease." *Id*.

24. The six nursing homes which the *Care Giver* debtors sought to continue to operate were designed to provide residences and nursing care for people who lived in them, and the residents lived in the nursing homes for years or, sometimes, for the rest of their lives. *Id*. at 267. In addition, the debtors held licenses to operate the homes, but their landlords did not. *Id*. The court thus noted that if Bankruptcy Code section 365(d)(4) applied, absent timely assumption of the leases, that section would have required that the debtors immediately surrender the real property to landlords on the 1st day after the deadline ran, and then no licensed entity would have been in a position to operate the nursing homes. *Id*.

25. Accordingly, the court noted that "[t]he plain language of the statute would have produced an unsensible and unintended circumstance by requiring immediate surrender of real property where people live and depend upon a licensed operator. The residents and the governmental agencies would have been forced to confront an unintended predicament. Congress never contemplated that result. Rather that result seems contrary to the congressional concern with filling vacant space in nonresidential [shopping centers]." *Id*.

26. The landlords also argued that because the nursing homes had nonresidential as well as residential aspects, they should be characterized as nonresidential. *Id*. However, the court

7

rejected that argument also, and held that section 365(d)(4) applies "only to property which is wholly nonresidential. Real property which has both residential and nonresidential aspects is not 'nonresidential' within the meaning of § 365(d)(4)." *Id*.

27. The *Care Givers* court also cited *In re Independence Village, Inc.*, 52 B.R. 715 (Bankr. E.D. Mich. 1985) in support of the *Care Givers* decision. There, the debtor operated a 252 unit life care facility for the elderly and the court found that since "the lease in question deals with residential real property, that is, property in which human beings reside, § 365(d)(4) does not apply." *Id.* at 722.

28. Consistent with the holding of *Care Givers*, the court in *In re Texas Health Enterprises, Inc.*, 255 B.R. 181 (Bankr. E.D. Tex. 2000) also held that a debtors' nursing home lease was not a lease of "nonresidential real property" within the meaning of Bankruptcy Code section 365(d)(4).

29. There, the debtors were the second largest operator of nursing home facilities in the State of Texas. *Id.* at 183. One landlord argued that its lease should be declared rejected as a matter of law pursuant to 11 U.S.C. § 365(d)(4) because it is a lease of nonresidential real property that was not assumed within the deadline. *Id*. However, the court agreed with *Care Givers* and *Independence Village* and held that the nursing home lease was not a nonresidential lease, and thus, Bankruptcy Code section 365(d)(4) did not apply. *Id.* at 184.

30. Here, just as in *Care Givers* and *Independence Village*, the Debtors skilled nursing leases should be deemed residential, and thus, this Court should find that the deadlines for assumption provided in Bankruptcy Code section 365(d)(4) do not apply.

### B. Assuming *Arguendo* that the Assumption Deadline Does Apply, the Leases Were Assumed Prior to the Deadline

31. The Debtors filed both the Plan and the Assumption Motion prior to the expiration of the section 365(d)(4) deadline. Each of those pleadings gave clear notice to each of the Plan Landlords of the Debtors' intention to assume the Plan Leases and were sufficient actions to satisfy the deadline. The law is clear that Bankruptcy Code section 365(d)(4) does not require that an order approving the assumption to the leases be entered prior to the expiration of the deadline to satisfy section 365(d)(4).

32. In this jurisdiction, the principal case reinforcing this well-established principle is *In re Simbaki, Ltd.*, 520 B.R. 241 (Bankr. S.D. Tex. 2014). There, the court held that a debtor need only file a motion to assume, and not obtain a favorable ruling from the court on the motion, to satisfy the deadline provided in Bankruptcy Code section 365(d)(4). In *Simbaki*, the court had already granted the debtor the 90 day initial extension under Bankruptcy Code section 365(d)(4)(B)(i). *Id*. at 242. Five days prior to the extended assumption deadline, the debtor filed a motion to assume the real property lease. *Id*. The landlord objected to the assumption motion, arguing that because the debtor failed to obtain an order on the assumption motion prior to the deadline, the lease should be deemed rejected as a matter of law. *Id*. The debtor argued that once the assumption motion is filed, the statutory requirements are met, regardless of when the court issues an order. *Id*.

33. In reviewing the intent of Congress, the court noted that it is apparent that filing a motion to assume satisfies the statutory deadline. *Id*. at 244. Prior to BAPCPA, Bankruptcy Code section 365(d)(4) allowed the trustee only 60 days to assume or reject the lease, but allowed unlimited extensions of the deadline for cause. BAPCPA eliminated the potentially indefinite assumption period and set forth "a maximum possible period of 210 days from the time of entry

9

of the order of relief." H.R.Rep. No. 109–34 at 86. Congress' stated purpose in amending the statute is to "establish a firm, bright line deadline by which an unexpired lease of nonresidential real property must be assumed or rejected." *Id.*

34. The *Simbaki* court held that "[r]equiring the trustee to obtain a court order approving the motion to assume the lease would destroy the purpose of a bright-line rule. Instead of having 210 days to file a motion, the trustee would have 210 days less the time it takes the judge to rule on the motion." *Id*. at 244. Furthermore, the court held that a "review of both pre- and post-BAPCPA cases shows that ***an overwhelming majority of courts hold that a trustee need only file a motion to assume before the deadline***." *Id*. at 245 (emphasis added) (citing *Turgeon v. Victoria Station Inc. (In re Victoria Station Inc.),* 840 F.2d 682 (9th Cir.1988); *Filene's Basement,* 2014 WL 1713416, at *9; *In re Citrus Tower Boulevard Imaging Ctr., LLC,* Case No. 11–70284, 2012 WL 1820814 (Bankr.N.D.Ga. Apr. 2, 2012); *Cousins Prop., Inc. v. Treasure Isles HC, Inc. (In re Treasure Isles HC, Inc.),* 462 B.R. 645, 651 (6th Cir. BAP 2011); *In re Akron Thermal Ltd. P'ship,* 414 B.R. 193 (N.D.Ohio 2009); *In re Kroh Bros. Development Co.,* 100 B.R. 480 (W.D.Mo.1989); *In re Delta Paper Co.,* 74 B.R. 58 (Bankr.E.D.Ten.1987)).

35. Here, the Debtors were transparent throughout the course of these Chapter 11 Cases. From the Petition Date onward, the Debtors have advised this Court that they intended to reorganize around their profitable operations and transfer or close those operations that lose money. The Debtors' real property leases are their most significant asset and the Debtors have made clear to all landlords (which have been very active throughout these Chapter 11 Cases) since the Petition Date that the Debtors intended to reorganize or conduct a sale as a going concern around the profitable leases of the Debtors. In December, 2018, the Debtors sought to

reject the least profitable leases and continued to review the leases throughout this process. The Debtors' proposed assumption of certain leases should take no landlord by surprise.

36. Although the Debtors initially sought to assume thirty-two (32) real property leases pursuant to the Plan and Assumption Motion, these leases can essentially be divided into five (5) landlord constituencies, represented by three (3) law firms, which have been heavily involved in the Chapter 11 Cases and which clearly had unequivocal notice and actual knowledge that the Debtors intended to assume their leases prior to the Assumption Deadline.

37. The fact the Debtors reserved (and still reserve) the right to change their position with respect to certain of the Assumed Leases after this Court's determination of issues related thereto (including cure amounts) does not mean the Debtors' initial determinations were illusory. Indeed, it is typical in bankruptcy cases that the Debtors' initial decision to assume is just that – initial – and is subject to the Court's determination regarding various assumption issues, including cure amounts and adequate assurance determinations.

38. In fact, this prophecy has, to some extent, been fulfilled. The Debtors intended to assume thirty-two (32) leases as part of the Assumption Motion and Plan. After failure to negotiate satisfactory reductions in the cure with certain landlords, the Debtors have determined that reorganization around twenty-two (22) leases would maximize the value to creditors and other parties in interest. Accordingly, the Debtors have rejected the remaining Granite leases and have filed their Amended Plan.

39. The Debtors can represent that they have no intention to assume any additional leases on short notice that were not contemplated by the Assumption Motion, Plan or Amended Plan, but rather only reserve the right to remove leases in the event of further negotiation impasses or determinations by the Court of cure amounts that cannot be justified by the

economics. This is far from what would constitute a conditional or equivocal assumption. In fact, no formal motion is even required to effectuate an assumption under Bankruptcy Code section 365. *In re Casual Male Corp.*, 120 B.R. 256 (Bankr. D. Mass. 1990) (Debtor seeking to assume lease is required only to timely and unequivocally make statement to lessor of intention to assume, within initial or extended time period for assuming lease, and there is no requirement that motion be filed within initial or extended period).

40. Thus, publicly filing the Assumption Motion explicitly listing which leases the Debtors are assuming (as well as the applicable facility number, debtor legal name, bankruptcy case number, debtor doing business name, landlord name, HUD v. Non-HUD, and good-faith estimated cure amount) clearly satisfies the burden of unequivocal assumption under Bankruptcy Code section 365.

C. **Cure Amount Discrepancies and Adequate Assurance of Future Performance**

41. The Debtors understand that the issues of adequate assurance of future performance and cure amounts are not before the Court at the hearing on August 27. The Debtors have been working amicably and diligently with the Plan Landlords to come to an agreement on cure amounts and adequate assurance on future performance, and significant progress has been made. The following constitutes a general overview of some of the issues facing the Debtors, and the Debtors reserve the right to provide more substantive briefing at the appropriate time on these issues.

42. The first issue relates to the materiality of the default. As an initial threshold matter, almost every landlord is claiming the nonpayment of December rent as an event of default. This is wholly improper, as that issue was thoroughly addressed and ruled upon by this Court. The Debtors were not obligated to pay December stub rent until a later time and only

upon further order of this Court. The Debtors understand that they must pay December rent as a prerequisite to assuming the Plan Leases, however, it would be inequitable to allow the Plan Landlords to classify the non-payment of December rent as an event of default. The Debtors have remained substantially current on their leasehold obligations to the Plan Landlords during the postpetition period. Because the Plan Landlords have not shown any material defaults, they may not have satisfied the threshold bar that might otherwise entitle them to the award of certain attorney fees.

43. The second issue relates to what attorneys' fees are allowable in conjunction with default cures. Each of the Plan Landlords included attorney fees as a component of their cure amounts, and certain of the amounts are disproportionately large when compared to the scope of the dispute. Even if this Court finds that a material event of default has occurred, any attorney fees that may be allowed in conjunction with curing that default nevertheless must be both reasonable and related to the landlords' efforts to cure the default. The Plan Landlords' attorney fees should be subject to the same level of disclosure and scrutiny as every other professional's fees in these Chapter 11 Cases. With the Plan Landlords collectively attempting to charge the Debtors' estates with nearly $750,000 in attorneys fees, the Debtors suspect that the substantial majority of these fees will be wholly unrelated to curing defaults, if any, and as such, would not be allowable as a component of a cure amount under Bankruptcy Code section 365(b).

44. As an additional hurdle, many of the Plan Landlords have a "prevailing party" limitation in the language of the applicable lease, which only allows attorneys fees to the prevailing party. With these "prevailing party" limitations, the Court cannot award any attorneys fees to the Plan Landlords if the Debtors ultimately prevail in assuming the Plan Leases. Furthermore, the Debtors have already engaged in substantial litigation with one of the Plan

Landlords during the pendency of these Chapter 11 Cases and were the prevailing party in all of that litigation.

45. Lastly, the requirement of a debtor to establish adequate assurance of future performance for lease assumption is not as demanding as the plan confirmation requirement that a plan of reorganization be feasible. Here, the Debtors will establish that their Amended Plan is feasible, which necessarily satisfies the less exacting requirement that they will provide adequate assurance of future performance. The Debtors have remained current on their leasehold obligations to the Plan Landlords and have cautiously calculated the financial obligations required to continue performing on the Plan Leases after they emerge from their reorganization. The operations at these assumed facilities are sufficiently profitable to generate an income stream to adequately ensure future performance. The Debtors' payment history for the Plan Leases has been substantially on time and current to ensure future performance. Lastly, the Debtors' Amended Plan ensures an earmark of funds for these Plan Landlords. *In toto*, the Debtors submit that these factors strongly weigh in favor of this Court finding adequate assurance of future performance.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Debtors respectfully request that this Court rule in favor of the Debtors and find that the Debtors have sufficiently assumed the Plan Leases, grant the relief requested in the Assumption Motion, and grant such further relief as may be appropriate under the circumstances.

Dated: August 26, 2019
       Dallas, Texas

Respectfully submitted,

**POLSINELLI PC**

/s/    *Trey A. Monsour*
Trey A. Monsour
State Bar No. 14277200
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

-and-

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

*Counsel to the Debtors and Debtors in Possession*