Trey A. Monsour  
State Bar No. 14277200  
Polsinelli PC  
2950 N. Harwood, Suite 2100  
Dallas, Texas 75201  
Telephone: (214) 397-0030  
Facsimile: (214) 397-0033  
tmonsour@polsinelli.com  

Jeremy R. Johnson (Admitted *Pro Hac Vice*)  
Polsinelli PC  
600 3rd Avenue, 42nd Floor  
New York, New York 10016  
Telephone: (212) 684-0199  
Facsimile: (212) 684-0197  
jeremy.johnson@polsinelli.com  

COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Senior Care Centers, LLC, *et al.*,[1] | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**EXPEDITED MOTION OF DEBTORS FOR ENTRY OF AN ORDER
(I) APPROVING SETTLEMENT AGREEMENT, AND
(II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby move (the "**Motion**") for entry of an order, substantially in the form attached hereto as Exhibit B (the "**Proposed Order**"), pursuant to section 105 of title 11 of the United States Code (the "**Bankruptcy Code**") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) approving the compromise and release agreement (the "**Settlement Agreement**")[2] by and among PM Management-Round Rock AL, LLC ("**Lessee**"), and OLP

---

[1] The Debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 569] and may also be found on the Debtors' claims agent's website at https://omnimgt.com/SeniorCareCenters. The location of the Debtors' service address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

[2] Capitalized terms used but not defined herein have the meanings assigned to them in the Settlement Agreement.

1

69964067.1

Wyoming Springs, LLC ("**Lessor**") attached hereto as <u>Exhibit A</u>, and (ii) granting related relief. In support of the Motion, the Debtors rely upon the *Declaration of Kevin O'Halloran, Chief Restructuring Officer of Senior Care Centers, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 25] (the "**First Day Declaration**"). In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The Debtors consent to entry of a final order under Article III of the United States Constitution.

2. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Bankruptcy Code section 105 and Bankruptcy Rule 9019.

## BACKGROUND

**A.    General Background**

4. On December 4, 2018 (the "**Petition Date**"), the Debtors filed voluntary petitions commencing cases for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").[3]

5. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration and fully incorporated herein by reference.

---

[3] Certain additional Debtors filed voluntary petitions for relief on January 21, 2019 and May 20, 2019.

6.  The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

7.  No trustee or examiner has been requested in the Chapter 11 Cases.

8.  On December 14, 2018, the Office of the United States Trustee for the Northern District of Texas appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "**Committee**").

9.  Lessee is the operator of the assisted living facility known as the "Wyoming Springs Assisted Living & Memory Care" located at 7230 Wyoming Springs Drive, Round Rock, Texas 78681 (the "**Facility**"), pursuant to a Lease Agreement, dated November 10, 2010 (as amended from time to time thereafter, the "*Lease*"), between Lessee, as tenant, and Lessor, as landlord by virtue of a subsequent assignment of the Lease dated August 6, 2013.

10.  On February 28, 2019, the Bankruptcy Court approved the rejection of the Lease.

**B.    The Proposed Settlement Agreement**

11.  The Debtors and Lessor have negotiated a comprehensive agreement that resolves various disputed issues and obviates the need to engage in costly and protracted litigation, creates a pathway for the Debtors to resolve certain of their financial difficulties, preserves the jobs of a substantial portion of the Debtors' employees by keeping all of the Debtors' operating facilities operational, and, most importantly, allows for the continued care of the Debtors' patients.

12.  Certain material terms of the Settlement Agreement are as follows:

   a.  *Effective Date*. The Effective Date of the Settlement Agreement shall be the date of entry of a final, nonappealable order approving the Settlement Agreement.

69964067.1

b. *Administrative Rent.* Lessor shall be granted an allowed administrative expense under 11 U.S.C. § 503(b) in the amount of $1,400,000.00, which shall be deemed satisfied in full on the Effective Date from the proceeds of the Security Deposit.

c. *Security Deposit.* Lessor shall retain all rights, title, and interests in, to, and under any impounds, deposits, escrows, or reserves (the "***Security Deposit***") held by Lessor under the terms of the Lease in the amount of $584,402.00. The automatic stay shall be deemed vacated to the extent necessary to permit Lessor to indefeasibly apply the Security Deposit to its allowed administrative expense.

d. *General Unsecured Claim.* Lessor shall have an allowed general unsecured claim in the amount of $2,295,767.19, which shall be deemed withdrawn on a dollar-for-dollar basis to the extent that any portion of that claim is collected under the Harden Guaranty.

e. *Dismissals.* All pending adversary proceedings and contested matters between the Debtors and Lessor shall be dismissed or withdrawn.

f. *Plan Support.* Provided the Plan is not inconsistent with the Settlement Agreement, Lessor shall vote its allowed unsecured claim to accept the Plan and shall object neither to confirmation of the Plan nor the adequacy of the disclosure statement filed in support of the Plan.

g. *OTA Cooperation.* Lessee and the other Debtors shall cooperate with OLP and any proposed New Operator, promptly respond to reasonable due diligence requests made by OLP or such New Operator, and work expeditiously to finalize and execute an OTA with such New Operator. The parties further acknowledge that time is of the essence in the finalization of an OTA for the transfer of the facility. Once the OTA is finalized, the parties agree to request expedited consideration of any necessary motion for approval of such OTA.

h. *HIPAA Investigation.* Lessor will reasonably cooperate in the Debtors' ongoing investigation of certain privacy violations alleged to have occurred at the Facility in or about July 2019 (such violations, the "***Document Breach***").

i. *Post-Effective Date Operation.* Debtors shall not close the Wyoming Springs facility before December 31, 2019. During such period, and prior to a transfer of the facility to a new operator, the Debtors shall operate the business in accordance with ordinary and prudent business practices, including the acceptance of new

4

        residents, and shall exercise all commercially reasonable efforts to ensure that the facility occupancy does not drop below 60%. The Debtors shall provide weekly reporting to Lessor on the then-current occupancy level at the facility.

    j.    *Mutual Releases*. The Debtors and Lessor execute broad mutual releases of claims against one another, including a release of all claims arising from or relating to the Document Breach, but excluding any claims arising from or relating to the Harden Guaranty.

13.    Separately, the Debtors intend to shortly file a motion requesting authority to transfer the Facility to a New Operator under the terms of a negotiated OTA.

## RELIEF REQUESTED

14.    By this Motion, the Debtors request approval of the Settlement Agreement under Bankruptcy Rule 9019 and authorization to consummate the transactions and agreements contemplated therein.

## BASIS FOR RELIEF

**A.    The Settlement Agreement Should be Approved**

15.    Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The United States Supreme Court has recognized that compromises and settlements are "a normal part of the process of reorganization." *Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Accordingly, a Bankruptcy Court may, in its discretion, approve settlements in accordance with Bankruptcy Rule 9019(a). *CFB-5, Inc. v. Cunningham*, 371 B.R. 175, 181 (N.D. Tex. 2007). "Approval should only be given if the settlement is fair and equitable and in the best interest of the estate." *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997) (internal quotations omitted); *In re Heritage Org., L.L.C.*, 375 B.R. 230, 259 (Bankr. N.D. Tex. 2007) (internal quotations omitted).

16. In deciding whether the settlement of a controversy is "fair and equitable," the Court must make a well-informed decision, comparing the terms of the compromise with the likely rewards of litigation. *In re Cajun Elec.*, 119 F.3d at 355; *In re Heritage Org.*, 375 B.R. at 259. The factors to be reviewed by the Court in determining whether or not to approve a compromise are:

    a. the probability of success in the litigation, with due consideration for the uncertainty in fact and law;

    b. the complexity and likely duration of the litigation and any attendant expenses, inconvenience and delay; and

    c. all other factors bearing on the wisdom of the compromise

*In re Cajun Elec.*, 119 F.3d at 356; *In re Heritage Org.*, 375 B.R. at 259. The Court should also consider the best interest of the creditors, with proper deference to their reasonable views, and the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion. *In re Cajun Elec.*, 119 F.3d at 356; *In re Heritage Org.*, 375 B.R. at 260.

17. It is unnecessary for the Court to conduct a mini-trial before approving a settlement. *In re Cajun Elec.*, 119 F.3d at 356; *In re Heritage Org.*, 375 B.R. at 260. The Court need only make itself aware of relevant facts and law so that it may make an informed and intelligent decision. *In re Cajun Elec.*, 119 F.3d at 356; *In re Heritage Org.*, 375 B.R. at 260. "The settlement need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness." *In re Idearc Inc.*, 423 B.R. 138, 182 (Bankr. N.D. Tex. 2009), *aff'd sub nom. In re Idearc, Inc.*, 662 F.3d 315 (5th Cir. 2011).

18. Approval of the Settlement Agreement, which is a product of extensive, arms-length bargaining between the Debtors and Lessor, is fair and equitable and in the best interest of

the Debtors' estates and the relevant factors weigh in favor of approving the Settlement Agreement.

19. In particular, the Settlement Agreement is beneficial to the Debtors' estates because it provides some certainty to the Debtors and their constituencies, including their elderly patients, as the Debtors draw closer to the conclusion of their reorganization in chapter 11. Approval of the Settlement Agreement will pave the way for the smooth transition of the Facility to a new operator without interruption of ongoing services to existing residents and patients, and cabins the Debtors' potential administrative expense liability associated with any postpetition rent that may have accrued under the Lease. Additionally, the Settlement Agreement will avoid the distraction of litigation over the relevant questions of law and fact. Given the limited resources of the Debtors' estates, litigation over these issues will not benefit the Debtors' estates or their creditors. Thus, the Settlement Agreement provides a fair resolution in light of the legal and economic risks to the Debtors. Based on the foregoing, the Debtors submit that the Settlement Agreement is in the best interests of the Debtors' estates, and should be approved.

**B.     Cause Exists To Eliminate Any Stay Imposed By the Bankruptcy Rules**

20. The Debtors request that any order approving this Motion be effective immediately, thereby waiving any applicable stays imposed by the Bankruptcy Rules. These waivers or eliminations of any applicable stays are necessary for the transactions contemplated by the Settlement Agreement to close as expeditiously as possible. The Debtors respectfully submit that it is in the best interest of their estates to consummate the Settlement Agreement with Lessor (including the closing of the transactions contemplated by the Settlement Agreement) as soon as possible after all closing conditions have been met or waived. Accordingly, the Debtors request that the Court eliminate any applicable stays imposed by the Bankruptcy Rules.

69964067.1

**CONSENT TO JURISDICTION**

21.     The Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

**NOTICE**

22.     Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the Northern District of Texas; (b) the Office of the Attorney General of the states in which the Debtors operate; (c) the Debtors' forty (40) largest unsecured creditors on a consolidated basis; (d) counsel to CIBC Bank USA; (e) counsel to Lessor and the New Operator; (f) the Internal Revenue Service; (g) the Department of Medicaid, Department of Health, and Division of Health Services Regulation in each state in which the Debtors operate; (h) counsel for the Unsecured Creditors Committee and (h) those parties who have requested notice pursuant to Bankruptcy Rule 2002.

23.     The Debtors respectfully submit that such notice is sufficient and that no further notice of this Motion is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order: (i) granting the relief sought herein, and (ii) granting the Debtors such other and further relief as the Court may deem proper.

Dated: October 8, 2019

Respectfully submitted,
Dallas, Texas

**POLSINELLI PC**

*/s/ Trey A. Monsour*
Trey A. Monsour (State Bar No. 14277200)
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

-and-

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

*Counsel to the Debtors and
Debtors in Possession*