Trey A. Monsour
State Bar No. 14277200
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
Polsinelli PC
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| Senior Care Centers, LLC, *et al.*,[1] | § § | Case No. 18-33967 (BJH) |
| Debtors. | § § § | (Jointly Administered) |

**EXPEDITED MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING FORM OF OPERATIONS TRANSFER AGREEMENT, (II) AUTHORIZING TRANSFER OF THE OPERATIONS AND RELATED ASSETS OF A CERTAIN FACILITY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby move (the "**Motion**") for entry of an order, substantially in the form attached hereto as Exhibit B (the "**Proposed Order**"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) approving an operations transfer and surrender

---

[1] The Debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 569] and may also be found on the Debtors' claims agent's website at https://omnimgt.com/SeniorCareCenters. The location of the Debtors' service address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

1

agreement (the "**OTA**") by and between Westover Hills SCC LLC, Pecan Valley SCC LLC, and Hunters Pond SCC LLC (collectively, the "**Transferors**") and Canary Bend Healthcare, Inc., Calavara Creek Healthcare, Inc., and Sage Terrace Healthcare, Inc. (collectively, the "**New Operators**") the form of which is attached hereto as Exhibit A; (ii) authorizing the transfer of the certain assets and operations of the skilled nursing facilities known as (a) "SCC at Westover Hills Rehabilitation and Healthcare" located at 922 State Hwy. 151, San Antonio, Texas 78251, (b) "SCC at Pecan Valley Rehabilitation and Healthcare" located at 3838 E. Southcross Blvd., San Antonio, Texas 78222, and (c) "SCC at Hunters Pond Rehabilitation and Healthcare" located at 9903 Hunters Pond, San Antonio, Texas 78224 (collectively, the "**Assets**") from the Transferor to the New Operator pursuant to the OTA, free and clear of all claims and encumbrances except as specified in the OTA; and (iii) granting related relief. In support of the Motion, the Debtors rely upon the *Declaration of Kevin O'Halloran, Chief Restructuring Officer of Senior Care Centers, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 25] (the "**First Day Declaration**"). In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The Debtors consent to entry of a final order under Article III of the United States Constitution.

2. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 363, and 365, and Bankruptcy Rules 6004 and 6006.

## BACKGROUND

70672298.3

**A.     General Background**

4. On December 4, 2018 (the "**Petition Date**"), the Debtors filed voluntary petitions commencing cases for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").[2]

5. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration and fully incorporated herein by reference.

6. The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

7. No trustee or examiner has been requested in the Chapter 11 Cases.

8. On December 14, 2018, the Office of the United States Trustee for the Northern District of Texas appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "**Committee**").

9. Transferors are the operators of the skilled nursing facilities known as (a) "SCC at Westover Hills Rehabilitation and Healthcare" located at 922 State Hwy. 151, San Antonio, Texas 78251, (b) "SCC at Pecan Valley Rehabilitation and Healthcare" located at 3838 E. Southcross Blvd., San Antonio, Texas 78222, and (c) "SCC at Hunters Pond Rehabilitation and Healthcare" located at 9903 Hunters Pond, San Antonio, Texas 78224 (collectively, the "**Facilities**"), pursuant to that certain Master Lease and Security Agreement Lease Agreement, dated June 30, 2015, between Granite Bonita Glen LLC, Georgetown Park Place LLC, Granite Momentum LLC (collectively, the "**TIC Owners**"), and Granite Master Partners, L.P. (the "**Master Lease**"), as well as that certain Master Sublease and Security Agreement, dated June

---

[2] Certain additional Debtors filed voluntary petitions for relief on January 21, 2019 and May 20, 2019.

70672298.3

30, 2015, between the TIC Owners, Granite Master Partners, L.P. ("**Landlord**"), and Senior Care Centers, LLC (the "**Master Sublease**").

10. The Bankruptcy Court has previously approved the rejection of the Master Sublease.

**B.     Proposed Transfer of Assets**

11. The Transferors are the operators of the Facilities. The Transferors own certain assets in connection with the operation of the Facilities, and such assets are more particularly defined in the OTA as the "**Assets**". The New Operators desire to purchase from the Transferors the Assets related to the Facilities. The New Operators, as of the date hereof, have executed the OTA with respect to the Facilities they are purchasing, subject to Bankruptcy Court approval. The New Operators and the Transferors intend to transfer the Facilities on the date which the New Operators receive their new operating licenses (the "**Closing**"). The OTA has an anticipated closing date of November 1, 2019, and an outside date of December 1, 2019.

12. As to the Facilities, the Assets to be transferred under the OTA[3] specifically exclude (a) the accounts receivable, which are critical to the Debtors' current operations and are needed to fund other creditor distributions under a proposed plan, and (b) any and all causes of action, claims, or rights of avoidance or recovery of any transfers or liens under chapter 5 of the Bankruptcy Code or applicable state law. Generally, the Assets include:

   a.   All inventory, supplies, computers, software (to the extent permitted by applicable licensing agreements), and vehicles;

   b.   At the New Operators' option, and subject to subsequent Court approval, any service contracts, licenses, and equipment leases for

---

[3] The description of the transferred Assets in the Motion is for summary purposes only and the terms of the OTA shall govern. To the extent there is any inconsistency between the description of Assets in the Motion and the OTA, the terms of the OTA shall govern.

        which Landlord or the New Operators will pay any cure amounts related to prepetition defaults;[4]

c. Subject to applicable regulatory and Court approval, any Medicare/Medicaid provider number and any associated numbers and any and all rights in any other third party payor programs;

d. All charts, personnel records, property manuals, resident/patient charts and records, lists, and similar documents including employee manuals, training materials, policies, procedures and materials related thereto;

e. Subject to subsequent Court approval, all existing agreements with residents, including agreements to hold residents' funds in trust;

f. Subject to applicable regulatory and Court approval, all federal, state, or municipal licenses, certifications, certificates, approvals, permits, variances, waivers, provider agreements, and other authorizations certificates, to the extent assignable;

g. All Debtor trade names associated including the name of the facility as then known to the general public, and all goodwill associated therewith;

h. All telephone numbers used in connection with the operation of the facility, and all goodwill of the Debtor associated with the facilities; and,

i. All furnishings, fixtures, equipment, and every other item of personal property in place or in use at the Facility provided that such assets are owned and excepting Excluded Assets.

13. On the terms and subject to the conditions contained in the OTA, at the Closing, the New Operators shall assume or otherwise be responsible for all liabilities and obligations under the Assets accruing or arising solely after the Closing (collectively, the "**Assumed Liabilities**"), and the Debtors shall have no liability for any such liabilities or obligations. Except for the Assumed Liabilities and cure amounts in association with any transferred contracts, the

---

[4] If any contracts are to be assigned to the New Operators, the Debtors will file a separate motion and provide notice and an opportunity to object as to any contract counterparties. A review of such contracts is currently ongoing.

New Operators shall not assume or be liable for any liability, obligation, debt, claim against, or contract of the Facilities or the Debtors.

14. The New Operators will execute new leases with the applicable landlord. The Transferors propose to transfer the Assets to the New Operators and believe such transfer is in the best interests of the Debtors, their creditors, and the estates.

## RELIEF REQUESTED

15. Through this Motion, the Debtors seek (a) approval of the OTA, which will be substantially in the form attached hereto as Exhibit A, (b) authorization to transfer the Assets from the Transferors to the New Operators, pursuant to the OTA, and (c) related relief.

## BASIS FOR RELIEF

**A. The OTA Represents the Exercise of Sound Business Judgment by the Debtors and Should Be Approved**

16. The transfer of the Assets constitutes a "sale" within the meaning of Bankruptcy Code section 363 (including sections 363(b) and 363(f)) and Bankruptcy Rule 6007. Accordingly, the Transferors' conveyance of their Assets to the New Operators, in exchange for the Transfer Consideration[5] and the New Operators' assumption of the Assumed Liabilities, should be deemed "free and clear" of all liens, claims, and other interests in such property as authorized under section 363(b) of the Bankruptcy Code. 11 U.S.C. § 363(f).

17. Bankruptcy Code section 363 authorizes a debtor to sell assets of the estate other than in the ordinary course of business and provides, in relevant part: "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate ...." 11 U.S.C. § 363(b)(1).

---

[5] As defined in the OTA.

18. Courts approve proposed sales of property pursuant to Bankruptcy Code section 363 if the transaction represents the reasonable business judgment of the debtor.[6] If a valid business justification exists for the sale, as it does in these Chapter 11 Cases, a debtor's decision to sell property out of the ordinary course of business enjoys a strong presumption "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company."[7] Therefore, any party objecting to this Motion must make a showing of "bad faith, self-interest or gross negligence."[8]

19. In determining whether a proposed section 363(b)(1) sale satisfies the "business judgment standard," courts consider the following: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested

---

[6] See *Inst. Creditors of Cont'l. Air Lines, Inc. v. Cont'l. Air Lines, Inc. (In re Cont'l. Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty … there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010) ("A sale of assets under § 363 … is subject to court approval and must be supported by an articulated business justification, good business judgment, or sound business reasons."); *In re Delaware & Hudson Rv. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (holding that a court must be satisfied that there is a "sound business reason" justifying the preconfirmation sale of assets); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a Chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith"); see also *Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983); *Stephens Indus. Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986).

[7] *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); see also *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) ("The business judgment standard in section 363 is flexible and encourages discretion."); *GBL Holding Co.v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005) ("Great judicial deference is given to the [t]rustee's exercise of business judgment" [in approving a proposed sale under section 363].).

[8] *In re Integrated Res., Inc.*, 147 B.R. at 656 (citing *Smith v. Van Gorkom*, 488 A.2d 858, 872-73 (Del. 1985)); see also *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D. N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

7

parties; (c) whether the price is fair and reasonable; and (d) whether the parties have acted in good faith.[9] The Debtors will show the Court:

a. First, the Debtors have approved the OTA after thorough consideration of all viable alternatives and have concluded that the OTA is supported by a number of sound business reasons. The Debtors submit that the facts described above support an expeditious transfer of the Transferors' Assets to preserve value for the estates and provide a strong business justification for the transfer of such Assets. The Debtors believe that it is in the best interests of their estates to enter into and consummate the transactions provided for in the OTA.

b. Second, the Debtors have provided notice of the Motion as required by the Court, which notice constitutes adequate and reasonable notice to interested parties. Additionally, the Debtors have been in contact with parties who have expressed an interest in the Assets and have informed these parties of the proposed transaction. The Debtors believe that a more extended process would yield no higher or better offers for the operations and the Assets.

c. Third, the Debtors will have provided notice of the proposed cure amounts for any contracts to be assumed and assigned to the parties to those contracts (the "**Cure Parties**") and an opportunity to object to same.

d. Fourth, the consideration to be received by the Debtors for the Assets as a going concern provides the highest possible value and provides significant benefit to the Debtors' estates.

e. Fifth, the Debtors believe that the consideration to be obtained for the Assets is fair and reasonable. Further, the proposed transfers to the New Operators was negotiated in good faith.

20. For the foregoing reasons, the Debtors submit that the approval of the proposed OTA and the transactions contemplated thereby is appropriate and warranted under Bankruptcy Code section 363.

---

[9] See, e.g., *In re N. Am. Techs. Group, Inc.*, 2010 Bankr. LEXIS 5834, *7 (Bankr. E.D. Tex. Aug. 16, 2010) (citing *In re Condere*, 228 B.R. 615, 626 (Bankr. S.D. Miss. 1998)); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987). The Debtors will show that the proposed Transfer satisfies all these factors.

**B.     The Transfer of the Assets Will Be Free and Clear of Liens, Claims, Encumbrances, and Interests**

21.     Bankruptcy Code section 363(f) authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances in property of an entity other than the estate if:

a.  applicable nonbankruptcy law permits a sale of such property free and clear of such interest;

b.  such entity consents;

c.  such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

d.  such interest is in bona fide dispute; or

e.  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because Bankruptcy Code section 363(f) is drafted "in the disjunctive," satisfaction of any one of its five (5) requirements will suffice to permit the sale of the Assets "free and clear" of liens and interests.[10] The Court also may authorize the sale of a debtor's assets free and clear of any liens, claims, or encumbrances pursuant to Bankruptcy Code section 105, even if section 363(f) did not apply.[11]

22.     The Debtors believe that at least one of the tests in Bankruptcy Code section 363(f) will be satisfied with respect to any secured liens asserted against the Transferor's Assets

---

[10] *In re Nature Leisure Times, LLC*, 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007); see also *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met); *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *4 (Bankr. S.D. N.Y. Mar. 6, 1992) ("[S]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D. N.Y. 1986).

[11] See *Matter of Selby Farms*, 15 B.R. 372, 375 (Bankr. S.D. Miss. 1981) ("The power of the Bankruptcy Court to sell property free and clear of liens has long been recognized." (citing *Van Huffel v. Harkelrode*, 284 U.S. 225, 227-28 (1931))); *In re Trans World Airlines. Inc.*, No. 01-0056, 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001) ("Bankruptcy courts have long had the authority to authorize the sale of estate assets free and clear even in the absence of § 363(f)."); see also *Volvo White Truck Corp. v. Chambersberg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

70672298.3

and other interests that may be alleged by other parties. The Debtors anticipate that any secured creditors will consent to the sale of the Assets pursuant to the OTA. In addition, absent any objection to this Motion, all such secured creditors will be deemed to have consented to the relief requested herein.

23.     Accordingly, the Debtors request that the Assets be transferred free and clear of any liens, claims, encumbrances or other interests, including, without limitation, any claims arising under doctrines of successor liability.

**C.     The New Operators are Entitled to Protection as a Good-Faith Purchaser**

24.     This Court has upheld section 363 purchase agreements "negotiated, proposed, and entered into … in good faith, without collusion … [resulting from] arm's-length bargaining with … parties represented by independent counsel."[12] A sale to a good-faith purchaser cannot be avoided under § 363(m), unless the sale authorization was stayed pending appeal.[13] However, "[t]he trustee may avoid a sale … if the sale price was controlled by an agreement among potential bidders…."[14] Additionally, for the sale to be considered in good-faith, consideration must: (i) be fair and reasonable, (ii) be the highest and best offer for the property, and (iii) constitute reasonably equivalent value, fair value, and fair consideration.[15]

25.     The Debtors negotiated the OTA at arm's length and in good faith to achieve the best results for their estates. The New Operators were represented by counsel and are not affiliates or insiders of the Debtors or otherwise related to the Debtors. Moreover, no equity

---

[12] *In re TriDimension Energy, L.P.*, 2010 Bankr. LEXIS 4838, *13 (Bankr. N.D. Tex. Nov. 19, 2010).

[13] See 11 U.S.C. § 363(m) ("The reversal or modification of an authorization under subsection (b) of this section of a sale … does not affect the validity of [the] sale … to an entity that purchased … the property in good faith….").

[14] *Id.* § 363(n).

[15] *In re TriDimension Energy, L.P.*, 2010 Bankr. LEXIS 4838, at *13.

70672298.3

ownership or future compensation has been offered to the Debtors or any insider of the Debtors. The New Operators are entitled to the protections of a good-faith purchaser under Bankruptcy Code section 363(m), and the OTA does not constitute an avoidable transaction pursuant to Bankruptcy Code section 363(n).

26. The Debtors submit that the OTA will provide substantial value to the bankruptcy estates because they will facilitate an efficient and orderly transfer of operations, avoid any cessation of operations and displacement of residents, and avoid substantial potential claims of residents and lessors.[16]

**D. The Debtors May Enter Into the OTA and Other Agreements Related to or Associated With the Transfers**

27. In connection with a sale of substantially all of a debtor's assets, courts routinely approve entry into asset purchase or similar agreements.[17] Such agreements are approved if they are an exercise of the debtor's sound business judgment.[18] The Debtors will show that the OTA has been negotiated at arm's length and that the Debtors utilized their business judgment in an attempt to maximize the recovery and/or minimize claims against their estates. The Court should

---

[16] See *In re TriDimension Energy, L.P.*, 2010 Bankr. LEXIS 4838, at *9 (finding that reasonably equivalent value existed under the Bankruptcy Code); *Mellon Bank, NA. v. Metro Communications, Inc.*, 945 F.2d 635 (3d Cir. 1991) (same), cert. denied, 503 U.S. 937 (1992); see also *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors (In re R.M.I., Inc.)*, 92 F.3d 139 (3d Cir. 1996); *Salisbury v. Texas Commerce BankHouston, N.A. (In re WCC Holding Corp.)*, 171 B.R. 972, 984 (Bankr. N.D. Tex. 1994) (reasonably equivalent value under Texas law) (citing *Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488, 1495 (5th Cir.), cert. denied. 510 U.S. 821 (1993) and *Southmark Corp. v. Riddle (In re Southmark Corp.)*, 138 B.R. 820, 829 (Bankr. N.D. Tex. 1992)); *In re China Resource Prod. Ltd. v. Favda Intern., Inc.*, 856 F. Supp. 856, 866 (D. Del. 1994) (citing *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 792 (Del. Ch. 1992)).

[17] See, e.g., *In re Tridimension Energy, L.P.*, 2010 WL 5209233, at *2 (Bankr. N.D. Tex. Oct. 29, 2010) (approving the debtor's proposed asset purchase agreement); *In re Enron Corp.*, No. 01-16034, 2002 WL 32154269, at *4 (Bankr. S.D. N.Y. Apr. 24, 2002).

[18] See, e.g., Tridimension Energy, 2010 WL 5209233, at *2 (finding that "the Debtors have demonstrated a compelling and sound business justification" for approval of the proposed asset purchase agreement); In re Decora Indus., Inc., No. 00-4459, 2002 WL 32332377, at *5 (Bankr. D. Del. May 17, 2002); In re Arlco, Inc., 239 B.R. 261, 265 (Bankr. S.D. N.Y, 1999).

11

approve the OTA and related agreements and all transactions contemplated therein in order to allow the proposed transfer of the Assets to the New Operators to be consummated.

**E.      Cause Exists To Eliminate Any Stay Imposed By the Bankruptcy Rules**

28.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property ... is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Bankruptcy Rule 6006 provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

29.     The Debtors request that any order approving this Motion be effective immediately, thereby waiving the 14-day stays imposed by Bankruptcy Rules 6004 and 6006. These waivers or eliminations of the 14-day stays are necessary for the transactions to close as expeditiously as possible. The Debtors respectfully submits that it is in the best interest of their estates to close the transactions as soon as possible after all closing conditions have been met or waived. Accordingly, the Debtors requests that the Court eliminate the 14-day stays imposed by Bankruptcy Rules 6004 and 6006.

## CONSENT TO JURISDICTION

30.     The Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## NOTICE

31.     Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the Northern District of Texas; (b) the Office of the Attorney General of the states in

which the Debtors operate; (c) the Debtors' forty (40) largest unsecured creditors on a consolidated basis; (d) counsel to CIBC Bank USA; (e) counsel to Landlord and the New Operators; (f) the Internal Revenue Service; (g) the Department of Medicaid, Department of Health, and Division of Health Services Regulation in each state in which the Debtors operate; counsel to the Official Unsecured Creditors' Committee and (h) those parties who have requested notice pursuant to Bankruptcy Rule 2002.

32. The Debtors respectfully submit that such notice is sufficient and that no further notice of this Motion is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order: (i) granting the relief sought herein, and (ii) granting the Debtors such other and further relief as the Court may deem proper.

Dated: October 11, 2019
      Dallas, Texas

Respectfully submitted,

**POLSINELLI PC**

*/s/ Trey A. Monsour*
Trey A. Monsour (State Bar No. 14277200)
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

-and-

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

*Counsel to the Debtors and Debtors in Possession*

13