

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 14, 2019**

United States Bankruptcy Judge

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Senior Care Centers, LLC, *et al.*,[1] | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

### ORDER (I) APPROVING ENTRY INTO FINANCING
### TERM SHEET, (II) AUTHORIZING PAYMENT OF RELATED
### FEES, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (i) approving the

Debtors entry into the Term Sheet, (ii) authorizing payment of the OldCo Facility Fees, and (iii)

granting related relief; and the Court having jurisdiction over this matter pursuant to 28 U.S.C.

157 and §§ 1334(b); and the Court having found that this matter is a core proceeding pursuant to

28 U.S.C. § 157(b)(2), and that the Debtors consent to entry of a final order under Article III of

---

[1] The Debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 569] and may also be found on the Debtors' claims agent's website at https://omnimgt.com/SeniorCareCenters. The location of the Debtors' service address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

[2] Capitalized Terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given, under the circumstances, and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

**IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion is GRANTED as set forth herein.

2.    The Debtors are authorized to enter into and perform under the Term Sheet.

3.    The Debtors are authorized to negotiate, prepare, execute, and deliver all documents and take such other action as may be necessary or appropriate to implement, effectuate, and fully perform their obligations as and when they are incurred and come due under the Term Sheet, including the payment of the OldCo Facility Fees including the reimbursement of MidCap for its reasonable and documented out-of-pocket fees and expenses.

4.    The fees, expenses, and indemnities associated with the Term Sheet, including the OldCo Facility Fees, are actual, necessary costs and expenses of preserving the Debtors' estates and shall be treated as allowed administrative expenses of the Debtors under Bankruptcy Code section 503(b)(1) and 507(a)(2), whether or not the OldCo Facility is entered into or funded, subject in all respects to paragraph 7 herein.

5.    The automatic stay of section 362 of the Bankruptcy Code is hereby modified to the extent necessary to enable MidCap to perform under the Term Sheet.

71162971.1

6. The Debtors and all applicable parties shall abide by all U.S. Department of Housing and Urban Development ("**HUD**") statutes, regulations, rules, policies, procedures, handbooks, and HUD regulatory agreements in effectuating, implementing, and performing obligations under the Term Sheet and the OldCo Facility, including, without limitation, the negotiation and entry into intercreditor agreements among MidCap, the Debtors, and various HUD insured lenders.

7. Notwithstanding anything to the contrary contained herein, any payment authorized to be made under this Order shall only be made to the extent provided for and subject to the budget (the "**Budget**") attached to the *Order Approving Stipulation Authorizing and Consenting to Use of Cash Collateral Pursuant to a Revised Budget* [Docket No. 1947] and any subsequent orders or budgets relating thereto.

8. The terms and provisions of this Order shall be binding in all respects upon all parties in these Chapter 11 Cases, the Debtors, their estates, and all successors and assigns thereof, including any chapter 7 trustee or chapter 11 trustee appointed in any of the Chapter 11 Cases after conversion of any of these cases to cases under chapter 7 of the Bankruptcy Code.

9. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h) or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in Accordance with the Motion.

11. This Court shall retain jurisdiction over any and all matters arising from the interpretation, implementation, or enforcement of this Order.

# # # End of Order # # #

71162971.1

Order submitted by:

**POLSINELLI PC**

*/s/      Trey A. Monsour*

Trey A. Monsour
State Bar No. 14277200
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

-and-

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
Stephen J. Astringer (Admitted *Pro Hac Vice*)
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com
sastringer@polsinelli.com

*Counsel to the Debtors and Debtors in
Possession*

71162971.1

## Exhibit B

OldCo Facility Term Sheet



**CAPITAL PARTNERS LENDING, LLC**

**William Rubenstein**
**Managing Director**

**MidCap Financial Services, LLC**
**100 South Wacker Drive, Suite 220**
**Chicago, IL 60606**
**312.234.0298**
**brubenstein@midcapfinancial.com**

**1999 Avenue of the Stars, Suite 2040**
**Los Angeles, CA 90067**
**310.286.2929**

October 4, 2019

Brady Stern
Hammond Hanlon Camp LLC

Re: Credit Facility for certain / remaining Senior Care Centers assets

Dear Mr. Stern,

We are pleased to advise you that MidCap Financial Services, LLC ("MidCap Financial Services"), as servicer for MidCap Financial Trust or a to-be-determined affiliate ("MidCap Financial Funding"), will evaluate a $12.0 million master senior credit facility (the "Revolver" or "Facility") under the terms and conditions set forth below with Senior Care Centers ("Borrower"). The Facility shall be used to refinance Borrower's existing indebtedness and to provide for Borrower's ongoing working capital requirements.

Please note that the terms and conditions set forth below are for discussion purposes only and do not imply in any way a commitment by any entity to approve or enter into a funding arrangement. This is a non-binding term sheet; provided, however, that Borrower agrees to be bound by the provisions of this term sheet relating to confidentiality, exclusivity and expense reimbursement. Funding under this proposal will only be made by MidCap Financial Funding and JMB Capital Partners Lending, LLC upon legal documentation and credit approval by MidCap Financial Funding and JMB Capital Partners Lending, LLC and its designated advisors, and all terms set forth herein are subject to such approvals and due diligence review.

| General | |
|---|---|
| Borrower: | Senior Care Centers, its wholly-owned subsidiaries, its affiliates and Senior Care Centers Management teams to be formed New Co. acquirer of certain Senior Care Centers assets. |
| Administrative Agent: | MidCap Financial Funding |
| Servicer: | MidCap Financial Services |

| **Terms and Conditions – Revolving Line of Credit** | |
|---|---|
| Lenders: | MidCap Financial Funding, JMB Capital Partners Lending, LLC and such other banks and financial institutions as may be arranged by MidCap Financial Funding. Lenders shall have the right to bifurcate the Facility into a non-pari passu structure. |
| Commitment Amount: | The maximum loan amount under the Revolver (the "Commitment Amount") shall be $12.0 million. The amount available to Borrower under the Revolver at any one time shall be based upon the Availability (as described below). The Commitment Amount shall amortize monthly according to a schedule to be discussed and mutually agreed upon. |
| Availability: | Availability under the Revolver shall be an amount equal to 80% of the Net Collectable Value (defined below) of Borrower's accounts receivable due from eligible third-party payors (Medicare, Medicaid, commercial insurance and other payors) up to 180 days from date of service.<br><br>The Net Collectable Value of Borrower's accounts receivable is the amount Borrower bills such payors less bad debt, contractual allowances and other standard ineligibles, net of customary reserves, which shall be determined by Administrative Agent based on its due diligence. Accounts Receivable related to the formerly operated assets (e.g. Sabra-owned) Change of Ownership ("CHOW") process in the State of Texas will be specifically discussed, evaluated and mutually agreed as to how they will be accounted for in the determination of Net Collectable Value. |
| Minimum Balance: | Borrower shall maintain a minimum drawn balance under the Revolver of no less than $1.0 million for the first 12 months. |
| Term: | 12-18 months, to be discussed and mutually agreed upon. |
| Interest and Fees: | Interest on the outstanding balance of the Revolver shall be payable monthly in arrears at an annual rate of reserve-adjusted, 30-day LIBOR (subject to a 1.00% floor) plus 1275 basis points, reset monthly. Interest shall be calculated on the basis of the actual number of days elapsed in a 360-day year. Collections of cash by Lenders under the Revolver shall be credited to Borrower's obligations thereunder on a daily basis, subject to seven business clearance days.<br><br>Borrower shall pay Administrative Agent a collateral management fee of 0.10% per month on the outstanding balance of the Revolver. The collateral management fee shall be payable monthly in arrears.<br><br>Borrower shall pay Lenders an unused line fee equal to 0.50% per annum of the average unused portion of the Revolver. The unused line fee shall be payable monthly in arrears.<br><br>Borrower shall pay Lenders a fully earned, non-refundable origination fee of 3.0% of the Commitment Amount, due and payable in full upon the funding of the initial loans under the Facility.<br><br>Borrower shall pay Lenders a fully earned, non-refundable exit fee of 3.0% of the Commitment Amount, due and payable in full upon the payoff or completion of the Term of the Facility, and upon any amounts paid prior to maturity at the time of repayment. |

| General Terms and Conditions | |
|---|---|
| Security: | The Facility shall be secured by a perfected first priority security interest in all of Borrower's existing and future accounts receivable and accounts receivable-related items, all securities evidencing ownership interest in Borrower and its subsidiaries and joint ventures, all other assets of Borrower and a second lien on all assets of Senior Care Centers Management teams to be formed New Co. which is acquiring certain Senior Care Centers existing assets. |
| Financial Covenants: | Borrower shall maintain a minimum fixed charge coverage ratio of 1.1 to 1.0. Fixed charge coverage ratio shall be calculated as follows: $$\frac{(EBITDA\text{- unfinanced capital expenditures})}{(\text{principal payments} + \text{cash interest} + \text{cash taxes})}$$ |
| Other Terms: | Borrower shall maintain and pay for a depository account (the "Lock Box Account") subject to a control agreement satisfactory to Administrative Agent, into which Borrower's cash collections shall be remitted and swept to Administrative Agent on a daily basis for application to the Revolver loan balance. Administrative Agent shall perform periodic field audits on Borrower's books and records and collateral-related information. |
| Loan Documents: | Borrower shall execute and deliver to Administrative Agent such loan and security agreements, instruments, documents, certificates, and assurances as are reasonable and customary for similar loans, and as Administrative Agent may reasonably require in connection with the closing of the Facility. Such loan document shall provide, among other things, that Lender shall have the right to assign the Facility in whole or in part, at its discretion. Administrative Agent shall receive an opinion from Borrower's counsel satisfactory to Administrative Agent. |
| Other Conditions: | Customary for loans of this type and those additional deemed appropriate by Administrative Agent for this transaction, including the following: a. Completion of Administrative Agent's business, legal, and collateral due diligence, including but not limited to, a collateral audit and review of Borrower's books and records, the results of which are satisfactory to Administrative Agent; b. Administrative Agent's review of Borrower's material agreements; c. UCC, tax lien, and litigation searches, the results of which are satisfactory to Administrative Agent; |

|  |  |
|---|---|
|  | d. customary individual background checks, the results of which are satisfactory to Administrative Agent;<br><br>e. review of Borrower's business plan, including review of existing leases with landlords**,** the results of which are satisfactory to Administrative Agent;<br><br>f. minimum availability under the Revolver plus unrestricted cash and cash equivalents of Borrower at closing, after giving effect to the initial use of proceeds, at a level satisfactory to Administrative Agent based upon Borrower's business plan; and<br><br>g. **Credit balances, cost report liabilities and all other liabilities to government agencies shall be no greater than \$TBD.** |
| <u>Right of First Refusal for future Revolvers:</u> | Administrative Agent shall have the exclusive right but not the requirement to provide Revolver financing for future Borrowers of these skilled nursing home assets. |
| <u>Facility Costs:</u> | All reasonable costs associated with the Facility, including, but not limited to Administrative Agent's out-of-pocket expenses associated with the transaction, professional fees, recording fees, search fees, and filing fees will be paid by Borrower regardless of whether the transaction closes. |
| <u>Governing Law/Waiver of Jury Trial:</u> | This term sheet and the loan documents shall be governed by and construed in accordance with the laws of the State of Maryland. Each of the parties hereto waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the Loan or the other transactions contemplated hereby, or the performance by us or any of our affiliates of the services contemplated hereby. |
| <u>Exclusivity:</u> | Borrower understands that MidCap Financial Services will invest significant resources into making financial, legal and collateral investigations and determinations, and will incur opportunity costs in pursuing such investigations and determinations for this Facility. Accordingly, Borrower agrees that, during the "Feasibility Period" defined below, Borrower and its principals and affiliates will (a) not close any loan or extend or refinance any existing financing for any entity listed herein as Borrower, or sign a term sheet with or otherwise engage another lender for such purpose, (b) negotiate exclusively with MidCap Financial Services regarding any financing, the purpose of which is substantially the same as that of the proposed Facility, to allow MidCap Financial Services to prepare a submission of such financing through MidCap Financial Funding's credit process, and (c) act in good faith and with reasonable diligence and dispatch |

|  | to provide all requested access, information, and documentation to allow MidCap Financial Services to complete diligence of the proposed Facility and recommend submission of the Facility through MidCap Financial Funding's credit process. If Borrower fails to comply with the requirements of the preceding sentence, then Borrower shall pay to MidCap Financing Funding, on demand, liquidated damages equal to 1.0% of the Commitment Amount, such payment to be in addition to any deposit(s) paid to MidCap Financial Services or MidCap Financial Funding and any other reimbursement obligations of the Borrower hereunder. The "Feasibility Period" means the period commencing as of the date hereof and continuing until the earlier of (a) the closing of the Facility, (b) Borrower's receipt of notice from MidCap Financial Services that it has discontinued review of the transaction, or (c) 45 days from the date hereof (which 45-day period will automatically be extended for another 45 days if Agent obtains, within 45 days of the date hereof, credit committee approval for the credit facility substantially in accordance with the terms described herein). Borrower agrees that such liquidated damages are a reasonable approximation of the damages that will be sustained by reason of Borrower's breach of its agreements in this paragraph. |
|---|---|

MidCap Financial Funding may terminate its review of the Facility at any time in its sole discretion. Closing of the loan is subject to further due diligence and underwriting, continuing satisfaction with the financial and business conditions of the Borrower and its principals, and receipt of documentation and assurances satisfactory to MidCap Financial Funding and its legal counsel. This term sheet does not purport to specify all of the terms, conditions, representations and warranties, covenants and other provisions that will be contained in the final Financing Documents for the Facility between Borrower and MidCap Financial Funding. The Facility shall be subject to such other terms, covenants and conditions as may be deemed appropriate.

This term sheet is being delivered in reliance that all information provided to Administrative Agent is and will be accurate and complete. The contents of this term sheet may not be shared with any third party without prior written consent, except for management and regulatory bodies on a need-to-know basis. All persons who are informed of the contents of this term sheet also need to be informed that such contents are confidential and cannot be disclosed without Administrative Agent's prior written consent.

This term sheet supersedes all previous discussions, communications and proposals relating in any way to the Facility and shall expire if not executed by Borrower and returned to MidCap Financial Services by 5:00pm EST on October 8, 2019.

MidCap Financial Services, on behalf of MidCap Financial Funding, hereby notifies Borrower that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56, signed into law October 26, 2001) (the "Act") and normal policies and practices, MidCap Financial Services is required, on behalf of MidCap Financial Funding, to obtain, verify and record certain information and documentation that identifies each Borrower, which information includes the name and address of each Borrower and such other information that will allow MidCap Financial Funding to identify each Borrower in accordance with the Act.

October 4, 2019
Page **6** of **7**

If you would like MidCap Financial Services to continue reviewing your loan request, please evidence your agreement with the forgoing by accepting this proposal on the space set forth below, and returning it to my attention. Please also wire the good faith deposit to the following:

| | |
|---|---|
| <u>Bank Name and Address:</u> | SunTrust Bank |
| | 25 Park Place |
| | Atlanta, GA 30303 |
| <u>ABA/Routing Number:</u> | 061000104 |
| <u>Swift Code:</u> | SNTRUS3A |
| <u>Account Name and Address:</u> | MIDCAP FINANCIAL TRUST |
| | 7255 Woodmont Avenue |
| | Suite 200 |
| | Bethesda, MD 20814 |
| <u>ACCT:</u> | 1000248054172 |
| <u>ATTN:</u> | Senior Care Centers Remaining Assets |

Upon receipt, we will immediately begin due diligence, MidCap Financial Funding's credit process and legal documentation. We appreciate the opportunity to furnish this proposal to you. If you have any questions, please do not hesitate to call.

Sincerely,


**MidCap Financial Services, LLC**
William Rubenstein
Managing Director



**JMB Capital Partners Lending, LLC**
Vikas Tandon
Chief Investment Officer

Agreed and accepted this ____ day of _____, 2019.


_____

**SENIOR CARE CENTERS**

By:

Name:

Title: