| | |
|---|---|
| Trey A. Monsour | Jeremy R. Johnson (Admitted *Pro Hac Vice*) |
| State Bar No. 14277200 | Stephen J. Astringer (Admitted *Pro Hac Vice*) |
| Polsinelli PC | Polsinelli PC |
| 2950 N. Harwood, Suite 2100 | 600 3rd Avenue, 42nd Floor |
| Dallas, Texas 75201 | New York, New York 10016 |
| Telephone: (214) 397-0030 | Telephone: (212) 684-0199 |
| Facsimile: (214) 397-0033 | Facsimile: (212) 684-0197 |
| tmonsour@polsinelli.com | jeremy.johnson@polsinelli.com |
| | sastringer@polsinelli.com |

COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Senior Care Centers, LLC, *et al.*,[1] | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING
SETTLEMENT AGREEMENT WITH PHARMERICA LONG-TERM
CARE, LLC, AND (II) GRANTING RELATED RELIEF**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON JANUARY 14, 2020 AT 1:30 P.M.. (PREVAILING CENTRAL TIME) AT THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, 1100 COMMERCE ST., 14TH FLOOR, COURTROOM NO. 2, DALLAS, TEXAS 75242.**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE SERVED WITH THIS**

---

[1] The Debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 569] and may also be found on the Debtors' claims agent's website at https://omnimgt.com/SeniorCareCenters. The location of the Debtors' service address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

71506100.1

**PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Senior Care Centers, LLC and its affiliated debtors and debtors in possession (the "**Debtors**") hereby move (this "**Motion**"), for entry of an order, substantially in the form of Exhibit A attached hereto (the "**Proposed Order**"), pursuant to section 105 of title 11 of the United States Code (the "**Bankruptcy Code**") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) approving a compromise and release agreement (the "**Settlement Agreement**") by and among Senior Care Centers, LLC ("**SCC**") and PharMerica Long-Term Care, LLC d/b/a/ PharMerica ("**PharMerica**"), which is attached to the Proposed Order as Exhibit 1, and (ii) granting related relief. In support of the Motion, the Debtors rely upon the *Declaration of Kevin O'Halloran, Chief Restructuring Officer of Senior Care Centers, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 25] (the "**First Day Declaration**"). In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). This is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors consent to entry of a final order under Article III of the United States Constitution.

2. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief required herein are: Bankruptcy Code section 105 and Bankruptcy Rule 9019.

71506100.1

**BACKGROUND**

4. On December 4, 2018 (the "**Petition Date**"), the Debtors filed voluntary petitions commencing cases for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").[2]

5. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration and fully incorporated herein by reference.

6. The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has been requested in the Chapter 11 Cases.

7. On December 14, 2018, the Office of the United States Trustee for the Northern District of Texas appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "**Committee**").

8. On the Petition Date, the Debtors filed, among other things, the Motion of Debtors for Interim and Final Orders *(I) Authorizing Continued Use of Existing Cash Management System, Including Maintenance of Exiting Bank Accounts, Checks, and Business Forms, and (II) Authorizing Continuation of Existing Deposit Practices* [Docket No. 9] (the "**Cash Management Motion**") and the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 24] (the "**Cash Collateral Motion**").

---

[2] Certain additional Debtors filed voluntary petitions for relief on January 21, 2019 and May 20, 2019.

71506100.1

9. The Cash Collateral Motion sought the approval to use the cash collateral of CIBC Bank USA, is the Administrative Agent ("**CIBC**") for itself and for CIT Finance LLC; Fifth Third Bank, successor in interest to MB Financial Bank, N.A.; Bankers Trust Company; Wells Fargo Bank, N.A.; and Compass Bank, on its own behalf and as Administrative Agent for other lenders, (collectively, the "**Lenders**") under the Credit Facility Documents (as defined in the *Final Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 1475] (the "**Final Cash Collateral Order**").

10. As described more fully in the Cash Management Motion and *(I) Authorizing Continued Use of Existing Cash Management System, Including Maintenance of Exiting Bank Accounts, Checks, and Business Forms, and (II) Authorizing Continuation of Existing Deposit Practices* [Docket No. 606] (the "**Final Cash Management Order**"), the Debtors maintain bank accounts with CIBC.

**RELEVANT FACTUAL BACKGROUND**

11. On September 28, 2018, PharMerica obtained a Final Default Judgment against Senior Care Centers, LLC, as well as its affiliated entities PM Management – El Paso I, NC and SCC Socorro, LLC (collectively the "**Judgment Debtors**"), in the amount of $314,738.98 in the 101st District Court, Dallas County, Texas (the "**Judgment**").

12. On November 15, 2019, PharMerica filed its Original Application for Writ of Garnishment in the state court. The court issued the Writ of Garnishment on November 19, 2018 (the "**Writ**"), and such Writ was then served on CIBC on or about November 26, 2018, thus allegedly creating Pharmerica's alleged garnishment lien (the "**Garnishment Lien**"). The deadline for CIBC to respond to the Writ allegedly was December 17, 2018.

13. After the Petition Date, the Debtors informed PharMerica that CIBC had segregated $314,738.98 (the "**Segregated Funds**") due to the alleged Garnishment Lien. PharMerica does not concede that CIBC has fulfilled its garnishment obligations by merely freezing the Segregated Funds.

14. The Debtors have demanded PharMerica dismiss the garnishment proceeding and release the alleged Garnishment Lien on the Segregated Funds because, among other arguments, the garnishment proceedings violate the automatic stay and the Garnishment Lien constitutes an avoidable preference. PharMerica disputes these arguments and contends that freezing the Segregated Funds does not violate the automatic stay and that the Garnishment Lien could not be avoided as a preference because the Segregated Funds would be the collateral of the Lenders, not unsecured creditors.

15. PharMerica also asserts that it is a secured creditor, and as such, it is entitled to postpetition fees and interest. PharMerica also asserts that any plan of reorganization in the Chapter 11 Cases must allow PharMerica to retain the Garnishment Lien post-confirmation. The Debtors dispute these arguments.

16. Subject to the approval of the Bankruptcy Court, PharMerica and the Debtors (the "**Parties**") desire to resolve the alleged Garnishment Lien and Segregated Funds in accordance with the terms and conditions of this Agreement to avoid any future uncertainty, inconvenience, and expense of litigation.

## THE PROPOSED SETTLEMENT

17. The Debtors and PharMerica have negotiated a comprehensive agreement which resolves the various disputed issues and obviates the need to engage in any further costly and protracted litigation, and provides the Debtors with additional liquidity.

18. The material terms of the Settlement Agreement are as follows:

a. On the date that entry of the Proposed Order is final and non-appealable (the "**Effective Date**") of this Settlement Agreement shall be the date that the order entered by the Bankruptcy Court approving this Settlement Agreement is final and non-appealable.

b. On the Effective Date, the Debtors shall pay or cause to be paid $30,000.00 to PharMerica (the "**Payment**") from the Segregated Funds. Upon receipt of the Payment, PharMerica's alleged Garnishment Lien on the Debtor's funds, including the Segregated Funds, shall be considered released and extinguished.

c. PharMerica will waived any right to a secured claim in these Chapter 11 Cases. PharMerica will be allowed to maintain the allowance of the full amount of its claims against the Debtors, but only as a general unsecured claim. The amount of PharMerica's general unsecured claim will not be reduced by the Payment.

d. On the Effective Date, the Debtors, on their own behalf and on behalf of their estates in the Chapter 11 Cases, release all claims against PharMerica related to the Garnishment Lien and Segregated Funds, including but not limited to, any claims for violation of the automatic stay or for lien avoidance.

## RELIEF REQUESTED

19. Through this Motion, the Debtors seek (a) approval of the Settlement Agreement by and among SCC and PharMerica, and (b) related relief.

## BASIS FOR RELIEF

### I. The Settlement Agreement Should be Approved

20. Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The United States Supreme Court has recognized that compromises and settlements are "a normal part of the process of reorganization." *Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Accordingly, a Bankruptcy Court may, in its discretion, approve settlements in accordance with Bankruptcy Rule 9019(a). *CFB-5, Inc. v. Cunningham*, 371 B.R. 175, 181 (N.D. Tex. 2007). "Approval should only be

given if the settlement is fair and equitable and in the best interest of the estate." *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997) (internal quotations omitted); *In re Heritage Org., L.L.C.*, 375 B.R. 230, 259 (Bankr. N.D. Tex. 2007) (internal quotations omitted).

21.  In deciding whether the settlement of a controversy is "fair and equitable," the Court must make a well-informed decision, comparing the terms of the compromise with the likely rewards of litigation. *In re Cajun Elec.*, 119 F.3d at 355; *In re Heritage Org.*, 375 B.R. at 259. The factors to be reviewed by the Court in determining whether or not to approve a compromise are:

    a.    the probability of success in the litigation, with due consideration for the uncertainty in fact and law;

    b.    the complexity and likely duration of the litigation and any attendant expenses, inconvenience and delay; and

    c.    all other factors bearing on the wisdom of the compromise

*In re Cajun Elec.*, 119 F.3d at 356; *In re Heritage Org.*, 375 B.R. at 259. The Court should also consider the best interest of the creditors, with proper deference to their reasonable views, and the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion. *In re Cajun Elec.*, 119 F.3d at 356; *In re Heritage Org.*, 375 B.R. at 260.

22.  It is unnecessary for the Court to conduct a mini-trial before approving a settlement. *In re Cajun Elec.*, 119 F.3d at 356; *In re Heritage Org.*, 375 B.R. at 260. The Court need only make itself aware of relevant facts and law so that it may make an informed and intelligent decision. *In re Cajun Elec.*, 119 F.3d at 356; *In re Heritage Org.*, 375 B.R. at 260. "The settlement need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness." *In re Idearc Inc.*, 423 B.R. 138, 182 (Bankr. N.D. Tex. 2009), *aff'd sub nom. In re Idearc, Inc.*, 662 F.3d 315 (5th Cir. 2011).

23. Approval of the Settlement Agreement, which is a product of extensive, arms-length bargaining between the Debtors and PharMerica, is fair and equitable and in the best interest of the Debtors' estates and the relevant factors weigh in favor of approving the Settlement Agreement.

24. The Settlement Agreement will avoid the distraction of litigation over the relevant questions of law and fact. Given the limited resources of the Debtors' estates, litigation over these issues will not benefit the Debtors' estates or their creditors. Specifically, the Settlement Agreement will allow the Debtors to access approximately $284,738.98 in funds which were previously segregated.

25. Thus, the Settlement Agreement provides a fair resolution in light of the legal and economic risks to the Debtors. Based on the foregoing, the Debtors submit that the Settlement Agreement is in the best interests of the Debtors' estates, and should be approved.

## II. Cause Exists To Eliminate Any Stay Imposed By the Bankruptcy Rules

26. The Debtors request that any order approving this Motion be effective immediately, thereby waiving any applicable stays imposed by the Bankruptcy Rules. These waivers or eliminations of any applicable stays are necessary for the transactions contemplated by the Settlement Agreement to close as expeditiously as possible. The Debtors respectfully submit that it is in the best interest of their estates to consummate the Settlement Agreement with PharMerica as soon as possible after all closing conditions have been met or waived. Accordingly, the Debtors request that the Court eliminate any applicable stays imposed by the Bankruptcy Rules.

## NO PRIOR REQUEST

27. No prior request for the relief sought herein has been made by the Debtors to this or any other Court.

9

## NOTICE

28. Notice of this Motion shall be provided to: (a) the U.S. Trustee the Office of the United States Trustee for the Northern District of Texas; (b) the Office of the Attorney General of the states in which the Debtors operate; (c) counsel to CIBC Bank USA; (d) counsel to the Official Committee of Unsecured Creditors; (e) the Internal Revenue Service; (f) the Department of Medicaid, Department of Health, and Division of Health Services Regulation in each state in which the Debtors operate; and (g) those parties who have requested notice pursuant to Bankruptcy Rule 2002.

## **CONCLUSION**

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form of the proposed order attached hereto as Exhibit A, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:  December 3, 2019           Respectfully submitted,
         Dallas, Texas

                                   **POLSINELLI PC**

                                   */s/     Trey A. Monsour*
                                   Trey A. Monsour
                                   State Bar No. 14277200
                                   2950 N. Harwood, Suite 2100
                                   Dallas, Texas 75201
                                   Telephone: (214) 397-0030
                                   Facsimile: (214) 397-0033
                                   tmonsour@polsinelli.com

                                   -and-

                                   Jeremy R. Johnson (Admitted *Pro Hac Vice*)
                                   Stephen J. Astringer (Admitted *Pro Hac Vice*)
                                   600 3rd Avenue, 42nd Floor
                                   New York, New York 10016
                                   Telephone: (212) 684-0199
                                   Facsimile: (212) 684-0197
                                   jeremy.johnson@polsinelli.com
                                   sastringer@polsinelli.com

                                   *Counsel to the Debtors and Debtors in Possession*

## **Exhibit A**

Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| Senior Care Centers, LLC, *et al.*,[1] | § § | Case No. 18-33967 (BJH) |
| Debtors. | § § § | (Jointly Administered) |

**ORDER (I) APPROVING SETTLEMENT AGREEMENT
WITH PHARMERICA LONG-TERM CARE, LLC,
AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (i) approving the Debtors entry into the Settlement Agreement with PharMerica Long Term-Care, LLC d/b/a PharMerica ("**PharMerica**"), and (ii) granting related relief; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. 157 and §§ 1334(b); and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Debtors consent to

---

[1] The Debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 569] and may also be found on the Debtors' claims agent's website at https://omnimgt.com/SeniorCareCenters. The location of the Debtors' service address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

[2] Capitalized Terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

71506100.1

2

entry of a final order under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given, under the circumstances, and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore,

**IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is GRANTED as set forth herein.

2. All objections to the relief requested in the Motion are overruled, were withdrawn, or were resolved by the express modifications agreed to herein.

3. The Settlement Agreement (a true and correct copy of which is attached hereto as Exhibit 1) is hereby approved, and all terms of the Settlement Agreement are hereby incorporated in this Order, as if set forth herein verbatim, and are hereby approved.

4. No release or indemnification shall be granted in contravention of *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009) or Bankruptcy Code section 524(e).

5. The Debtors are authorized to and shall execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers, including the Settlement Agreement, and to take any and all actions reasonably necessary or appropriate to consummate the settlement approved herein and to perform any and all obligations contemplated hereunder.

6. PharMerica is authorized to and shall execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers, including the Settlement

3

Agreement, and to take any and all actions reasonably necessary or appropriate to consummate the settlement approved herein and to perform any and all obligations contemplated hereunder.

7. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h) or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in Accordance with the Motion.

9. This Court shall retain jurisdiction over any and all matters arising from the interpretation, implementation, or enforcement of this Order.

**# # # End of Order # # #**

Order submitted by:

**POLSINELLI PC**

*/s/     Trey A. Monsour*
Trey A. Monsour
State Bar No. 14277200
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

-and-

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
Stephen J. Astringer (Admitted *Pro Hac Vice*)
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com
sastringer@polsinelli.com

*Counsel to the Debtors and Debtors in Possession*

4

# **Exhibit 1**

Settlement Agreement

71506100.1

## COMPROMISE AND RELEASE AGREEMENT

This Compromise and Release Agreement (the "Agreement") is entered into as of ●, 2019 (the "Execution Date"), by and among Senior Care Centers, LLC, on its own behalf and on behalf of the Debtors (as defined herein) ("SCC") and PharMerica Long Term-Care, LLC d/b/a PharMerica ("PharMerica").

### **RECITALS:**

A. On December 4, 2018 (the "Petition Date"), SCC along with certain of its affiliates (collectively, the "Debtors"), filed voluntary petitions for relief under Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"), and are operating as debtors-in-possession under Bankruptcy Code sections 1107 and 1108. The chapter 11 cases are being jointly administered under Case No. 18-33967 (BJH) (collectively, the "Chapter 11 Cases").

B. CIBC Bank USA, is the Administrative Agent ("CIBC") for itself and for CIT Finance LLC; Fifth Third Bank, successor in interest to MB Financial Bank, N.A.; Bankers Trust Company; Wells Fargo Bank, N.A.; and Compass Bank, on its own behalf and as Administrative Agent for other lenders, (collectively, the "Lenders") under the Credit Facility Documents (as defined in the *Final Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 1475] (the "Final Cash Collateral Order")).

C. As described in the *Final Order (I) Authorizing Continued Use of Existing Cash Management System, Including Maintenance of Exiting Bank Accounts, Checks, and Business Forms, and (II) Authorizing Continuation of Existing Deposit Practices* [Docket No. 606] (the "Final Cash Management Order"), the Debtors' bank accounts are at CIBC.

D. On September 28, 2018, PharMerica obtained a Final Default Judgment against Senior Care Centers, LLC, as well as its affiliated entities PM Management – El Paso I, NC and SCC Socorro, LLC (collectively the "Judgment Debtors"), in the amount of $314,738.98 in the 101st District Court, Dallas County, Texas (the "Judgment").

E. On November 15, 2019, PharMerica filed its Original Application for Writ of Garnishment in the state court. The court issued the Writ of Garnishment on November 19, 2018 (the "Writ"), and such Writ was then served on CIBC on or about November 26, 2018, thus allegedly creating Pharmerica's alleged garnishment lien (the "Garnishment Lien"). The deadline for CIBC to respond to the Writ allegedly was December 17, 2018.

F. After the Petition Date, the Debtors informed PharMerica that CIBC had segregated $314,738.98 (the "Segregated Funds") due to the alleged Garnishment Lien. PharMerica does not concede that CIBC has fulfilled its garnishment obligations by merely freezing the Segregated Funds.

G. The Debtors have demanded PharMerica dismiss the garnishment proceeding and release the alleged Garnishment Lien on the Segregated Funds because, among other arguments,

the garnishment proceedings violate the automatic stay and the Garnishment Lien constitutes an avoidable preference. PharMerica disputes these arguments and contends that freezing the Segregated Funds does not violate the automatic stay and that the Garnishment Lien could not be avoided as a preference because the Segregated Funds would be the collateral of the Lenders, not unsecured creditors.

      H.     PharMerica also asserts that it is a secured creditor, and as such, it is entitled to postpetition fees and interest. PharMerica also asserts that any plan of reorganization in the Chapter 11 Cases must allow PharMerica to retain the Garnishment Lien post-confirmation. The Debtors dispute these arguments.

      I.     Subject to the approval of the Bankruptcy Court, PharMerica and the Debtors (the "Parties") desire to resolve the alleged Garnishment Lien and Segregated Funds in accordance with the terms and conditions of this Agreement to avoid any future uncertainty, inconvenience, and expense of litigation.

**NOW, THEREFORE**, for and in consideration of the mutual promises and undertakings contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed by each of the Parties hereto, the Parties hereby agree as follows:

      1.     The Parties acknowledge and agree that the recitals set forth above are incorporated herein and are true and correct.

      2.     The effective date ("Effective Date") of this Agreement shall be the date that the order entered by the Bankruptcy Court approving this Agreement is final and non-appealable.

      3.     On the Effective Date, the Debtors shall pay or cause to be paid $30,000.00 to PharMerica (the "Payment") from the Segregated Funds.

      4.     Upon receipt of the Payment, PharMerica's alleged Garnishment Lien on the Debtor's funds, including the Segregated Funds, shall be considered released and extinguished. Accordingly, PharMerica waives any right to a secured claim in these Chapter 11 Cases. PharMerica shall be allowed to maintain the allowance of the full amount of its claims against the Debtors, but only as a general unsecured claim. The amount of PharMerica's general unsecured claim will not be reduced by the Payment.

      5.     On the Effective Date, the Debtors, on their own behalf and on behalf of their estates in the Chapter 11 Cases, release all claims against PharMerica related to the Garnishment Lien and Segregated Funds, including but not limited to, any claims for violation of the automatic stay or for lien avoidance.

      6.     The Parties acknowledge that the terms and conditions of this Agreement are expressly conditioned upon the occurrence of the Effective Date. For the avoidance of any doubt, this Agreement is void in the event that the Court does not enter an order approving this Agreement.

7. The Parties further agree and acknowledge that the terms of this Agreement are contractual, and are not merely a recital. This Agreement shall be binding upon, and inure to the benefit of, each party and their heirs, successors, affiliates, subsidiaries, parents, officers, shareholders, directors, managers, members, partners, assigns, agents, servants, employees, trustees, and attorneys.

8. This Agreement, and the written agreements referenced herein, contains the full and complete agreement of the Parties hereto, and all prior negotiations and agreements pertaining to the subject matter hereof are merged into this Agreement. Each party hereto expressly disclaims reliance upon any facts, promises, undertakings or representations made by any other party, or its/his agents or attorneys, prior to the execution of this Agreement. The Parties further acknowledge that they may hereafter discover facts different from or in addition to those which they now know or believe to be true with respect to the claims released herein, and each agrees that in such event, this Agreement shall nevertheless be and remain effective in all respects, notwithstanding such different or additional facts, or the discovery thereof.

9. The terms and conditions of this Agreement, constitute a contemporaneous, single, integrated transaction and are not several, such that a determination that one or more of such provisions is not enforceable shall render this Agreement null and void, thereby returning the Parties to the status quo in effect immediately prior to this Agreement.

10. This Agreement may not be modified, amended or waived except in a writing signed by all Parties hereto. The waiver by one party of any breach of this Agreement by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

11. The Parties to this Agreement have had the benefit of counsel of their choice and have been afforded an opportunity to review this Agreement with their chosen counsel. To that end, the Parties hereto have been represented by attorneys in negotiating and drafting this Agreement and the Parties hereto have influenced the language of this Agreement. Therefore, this Agreement shall not be construed against any party to this Agreement by reason of drafting or authorship.

12. This Agreement, and the rights and obligations of the Parties hereto, shall be governed, construed, interpreted and enforced in accordance with the domestic substantive laws of the State of Texas, without giving effect to any choice or conflicts of law provision or rule that would cause the application of the domestic substantive laws of any other jurisdiction.

13. During the Chapter 11 Cases, the Parties absolutely and irrevocably consent and submit to the exclusive jurisdiction of the Bankruptcy Court, in connection with any action(s) or proceeding(s) arising out of or relating in any way to this Agreement. In such action or proceeding, the Parties hereby absolutely and irrevocably waive any objection to venue, it being agreed by the Parties hereto that performance, in whole or in part, under the terms and conditions of this Agreement shall take place or occur in Texas. This Agreement is admissible in court in connection with any enforcement motion or otherwise subject to disclosure.

3

71282519.4

14. The Parties shall bear their own costs, out-of-pocket expenses, and attorneys' fees incurred in the negotiations and execution of this Agreement.

15. In the event of any litigation to enforce this Agreement, the substantially prevailing party in such litigation shall be awarded its legal fees and expenses incurred in such action from the substantially non-prevailing party.

16. The signatory for each party to this Agreement signing on behalf of each such party acknowledges and warrants that he/she is fully authorized and legally competent to execute this Agreement as the legal, valid and binding act and deed of such party, and is a duly authorized representative of such party.

17. This Agreement may be executed in one or more counterparts, any one of which shall be considered an original of this Agreement, but all of which shall be considered one and the same instrument.

18. All Parties agree to cooperate fully, execute any and all supplementary documents and take all additional actions which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

19. All Parties intend for this agreement to be binding upon the Debtors' successors, such as any bankruptcy trustee or other agent appointed to administer the financial affairs of the Debtors, and the Parties will include such a finding by the Court in the Order approving this settlement.

20. In the event the motion to approve this Agreement is denied by the Bankruptcy Court, the Debtors agree to reinstate the hold on the Segregated Funds pending further court order.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed as of the Execution Date.

Dated:   ●, 2019

| SENIOR CARE CENTERS, LLC | PHARMERICA LONG TERM-CARE, LLC D/B/A PHARMERICA |
|---|---|
| */s/   Draft* | */s/   Draft* |
| Kevin O'Halloran | |
| Chief Restructuring Officer | |