

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 13, 2019**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Senior Care Centers, LLC, *et al.*,[1] | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW,
### AND ORDER CONFIRMING THIRD AMENDED
### JOINT PLAN OF REORGANIZATION UNDER
### CHAPTER 11 OF THE BANKRUPTCY CODE

Senior Care Centers, LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") having:

    a.    commenced the Chapter 11 Cases on December 4, 2018 (the "**Petition Date**", including those related cases commenced from time to time thereafter), each by filing a voluntary petition in the United States Bankruptcy Court for the Northern District of Texas (the "**Court**" or the

---

[1] The Debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 569] and may also be found on the Debtors' claims agent's website at https://omnimgt.com/SeniorCareCenters. The location of the Debtors' service address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

71480264.11

"**Bankruptcy Court**") for relief under chapter 11 of title 11 of the United States Code, U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**");

b.      continued to operate their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108;

c.      filed jointly with the Official of Committee of Unsecured Creditors in these Chapter 11 Cases (the "**Committee**" or the "**Creditors' Committee**"), initial versions and, ultimately, the *Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 2053] and the *Disclosure Statement for the Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 2054];

d.      filed jointly with the Committee the *Notice of Filing of Solicitation Version of Disclosure Statement for the Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 2094] (the "**Solicitation Notice**"). Attached to the Solicitation Notice as Exhibit A, was the solicitation version of the *Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (as may be amended and/or supplemented, the "**Plan**")[2] and attached to the Solicitation Notice as Exhibit C was the solicitation version of the *Disclosure Statement for the Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Disclosure Statement**");

e.      obtained, on October 24, 2019, entry of the *Order Approving Motion of Debtors for Entry of an Order (I) Approving the Disclosure Statement; (II) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Plan; (III) Scheduling a Confirmation Hearing; (IV) Approving Related Notice Procedures; and (V) Granting Related Relief* [Docket No. 2091] (the "**Disclosure Statement Order**");

f.      commenced solicitation of the Plan on October 25, 2019;

g.      filed jointly with the Committee the *Notice of Filing of Plan Supplement* [Docket No. 2219] and the *Notice of Filing of Plan Supplement Exhibit* [Docket No. 2271] (together, the "**Plan Supplement**");

h.      filed, on December 2, 2019, the *Declaration of Catherine Nownes-Whitaker Regarding Analysis of Ballots for Accepting or Rejecting the Debtor's Amended Chapter 11 Plan Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2301] (the "**Voting Declaration**");

i.      filed, on December 2, 2019, the *Debtors' Memorandum of Law in Support of Confirmation of the Debtors Third Amended Joint Plan of*

---

[2] Capitalized terms used but not otherwise defined shall have the meanings provided in the Plan.

*Reorganization Under Chapter 11 of the Bankruptcy Code and Omnibus Reply to Objections* [Docket No. 2306] (the "**Confirmation Brief**"); and

j. filed, on December 2, 2019, the *Declaration of Kevin O'Halloran in Support of Confirmation of the Debtors Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 2305] (the "**O'Halloran Declaration**").

And this Court having:

a. set December 4, 2019 at 9:30 (prevailing Central Time) as the date and time for the commencement of the Confirmation Hearing;

b. reviewed the Plan, Disclosure Statement, Confirmation Brief, O'Halloran Declaration, Voting Declaration, and all pleadings, and exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements and reservation of rights filed by parties in interest on the docket in these Chapter 11 Cases;

c. considered all oral representations, testimony, documents, filings, and other evidence regarding confirmation of the Plan; and

d. overruled any and all objections to the Plan and to confirmation and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated.

**NOW, THEREFORE**, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the record of these Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing including, but not limited to, statements of counsel, the O'Halloran Declaration, and all other testimony and other evidence proffered, adduced, admitted into evidence and presented at the Confirmation Hearing, establish just cause for the relief granted in this Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law and order:

<u>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**</u>

**I.** <u>**Background**</u>

A. <u>Findings and Conclusions</u>. The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Bankruptcy Rules. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. <u>Jurisdiction</u>. The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto. The Bankruptcy Court finds and concludes that the Bankruptcy Court's retention of jurisdiction as set forth in Article X of the Plan is consistent with 28 U.S.C. §§ 157 and 1334.

C. <u>Venue</u>. Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors are eligible debtors under Bankruptcy Code section 109.

D. <u>Judicial Notice</u>. The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

E. <u>Burden of Proof</u>. The Debtors have the burden of proving the elements of Bankruptcy Code section 1129(a) and (b) by a preponderance of the evidence. The Debtors have met their burden with respect to each applicable element of Bankruptcy Code section 1129.

4

F.     Chapter 11 Petitions. On the Petition Date, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court. By prior order of the Bankruptcy Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. The Debtors continued as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in the Chapter 11 Cases.

G.     Statutory Committee of Unsecured Creditors. On December 14, 2018 the Office of the United States Trustee for the Northern District of Texas (the "**United States Trustee**") appointed the Committee pursuant to Bankruptcy Code section 1102(a)(1).

H.     Causes of Action. Articles VI(b)(7) and VI(E) of the Plan appropriately provide for the preservation by the Debtors of certain Causes of Action in accordance with Bankruptcy Section 1123(b). Causes of Action not released by the Debtors or exculpated under the Plan will be retained by the Reorganized Debtors or the Unsecured Creditor Trust, as provided by the Plan. The Plan is specific and unequivocal with respect to the Causes of Action to be retained by the Debtors and the Unsecured Creditor Trust. The Plan, Disclosure Statement, and Plan Supplement provide meaningful disclosure with respect to the potential Causes of Action that the Debtors and the Unsecured Creditor Trust may retain, and all parties in interest received adequate notice with respect to such retained Causes of Action. The provisions regarding Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and holders of Claims or Interests. For the avoidance of any doubt, Causes of Action released or exculpated under the Plan will not be retained by the Reorganized Debtors or the Unsecured Creditor Trust pursuant to the Plan.

## II. Notice and Solicitation Process

I.     _Disclosure Statement Order_. On October 24, 2019, the Bankruptcy Court entered the Disclosure Statement Order, approving the adequacy of the Disclosure Statement. The Disclosure Statement Order also approved the procedures for solicitation of the Plan.

J.     _Solicitation_. On or about October 25, 2019, and in in accordance with the Disclosure Statement Order, the Solicitation Procedures, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable laws in connection therewith, the Debtors caused Omni to transmit and serve the Solicitation Packages (as defined in the Disclosure Statement Order)[3] on the Holders of Claims in the following Classes (collectively, the "**Voting Classes**"): Class 5 – General Unsecured Claims; and Class 6 – Convenience Class Claims.

K.     On or around October 25, 2019, and in in accordance with the Disclosure Statement Order, the Solicitation Procedures, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable laws in connection therewith, the Debtors caused Omni to transmit and serve the Confirmation Hearing Notice and the Notice of Nonvoting Status – Deemed to Accept (as defined in the Disclosure Statement Order) on the following Classes (collectively, the "**Deemed Accepting Classes**"): Class 1 – ABL Credit Facility Claims; Class 2 – Other Secured Claims; and Class 3 – HUD Lender Claims. Pursuant to Bankruptcy Code section 1126(f), the Debtors were not required to solicit votes from the Holders of Claims in the Deemed Accepting Classes as each such Class is Unimpaired under the Plan, and thus, the Holders of such Claims are deemed to have accepted the Plan.

L.     On or around October 25, 2019, and in in accordance with the Disclosure Statement Order, the Solicitation Procedures, the Bankruptcy Code, the Bankruptcy Rules, the

---

[3]   Each Solicitation Package consisted of (1) the Disclosure Statement, including the Plan and all other Exhibits annexed thereto, (2) the Disclosure Statement Order, (3) the Confirmation Hearing Notice, (4) a pre-addressed return envelope, and (5) a Ballot.

71480264.11

Local Rules, and all other applicable laws in connection therewith, the Debtors caused Omni to transmit and serve the Confirmation Hearing Notice and the Notice of Nonvoting Status – Deemed to Reject (as defined in the Disclosure Statement Order) on the following Classes (collectively, the "**Deemed Rejecting Classes**"): Class 7 – Subordinated Debt Claims; Class 8 – Intercompany Claims; Class 9 – Interests in Subsidiary Debtors; and Class 10 – Interests in SCC. Pursuant to Bankruptcy Code section 1126(g), the Debtors were not required to solicit votes from the Holders of Claims in the Deemed Rejecting Classes as each such Holder will not receive or retain any property under the Plan, and thus, the Holders of such Claims or Interests are deemed to have rejected the Plan.

M. <u>Notice</u>. As evidenced by the *Certificate of Service* [Docket No. 2146] (the "**Confirmation Hearing Notice Certificate**") and/or Voting Declaration, and in compliance with the Disclosure Statement Order, all notice and service of the Plan, the Disclosure Statement and the Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Order, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had sufficient opportunity to appear and be heard with respect thereto. The solicitation of votes on the Plan complied with the Solicitation Procedures and Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law. No other or further notice or re-solicitation is required.

N.      Good Faith Solicitation. Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with Bankruptcy Code sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, the Disclosure Statement Order, all applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations.

O.      Voting Declaration. All procedures used to tabulate the Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations. As evidenced by the Voting Declaration, Creditors in Classes 5 and 6 voted to accept the Plan.

P.      Plan Supplement. All documents contained in the Plan Supplement comply with the terms of the Plan, and the filing, notice, and service of such documents were done in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, and no other or further notice is or shall be required.

### III.      Compliance with the Requirements of Bankruptcy Code Section 1129

Q.      Burden of Proof. The Debtors have met their burden of proving the elements of Bankruptcy Code section 1129(a) and (b) by a preponderance of the evidence.

R.      Plan Compliance with the Bankruptcy Code section 1129(a). The evidentiary record at the Confirmation Hearing, the Declarations, the contents of the Plan and the Disclosure Statement, the Confirmation Hearing Notice Affidavits, the Confirmation Brief, and the Court's judicial notice of the complete record of these Chapter 11 Cases support the findings of fact and conclusions of law set forth herein.

S.      Compliance with Bankruptcy Code Section 1129(a)(1). The Plan complies with Bankruptcy Code section 1129(a)(1) as the Plan complies with each applicable provision of the Bankruptcy Code.

71480264.11

(1)     Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). With the exception of Administrative Claims, Professional Fee Claims, Priority Tax Claims, and U.S. Trustee Fees (which need not be classified), Article III of the Plan classifies the Classes of Claims against and Interests in each of the Debtors. The Claims and Interests placed in each Class are substantially similar to the other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and the Plan does not unfairly discriminate between Holders of Claims and Interests in each Class or between Classes. Accordingly, the Plan satisfies Bankruptcy Code sections 1122 and 1123(a)(1).

(2)     Identification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Section IV.A of the Plan specifies which Classes of Claims and Interests are Unimpaired under the Plan within the meaning of Bankruptcy Code section 1124, thereby satisfying Bankruptcy Code section 1123(a)(2).

(3)     Identification of Impaired Classes (11 U.S.C. § 1123(a)(3)). Section IV.B of the Plan specifies which Classes of Claims and Interests are Impaired under the Plan within the meaning of Bankruptcy Code section 1124 and clearly specify the treatment of the Claims and Interests in those Classes, thereby satisfying Bankruptcy Code section 1123(a)(3).

(4)     No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment for each class of Claims or Interests unless the holder of such Claim or Interest has agreed to less favorable treatment for such Claim or Interest, thereby satisfying Bankruptcy Code section 1123(a)(4).

(5)     Means for Implementation (11 U.S.C. § 1123(a)(5). Article VI of the Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for implementation of the Plan, thereby satisfying Bankruptcy Code section 1123(a)(5).

(6)     Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). This provision of the Bankruptcy Code is not applicable to the Debtors because they are limited liability companies or partnerships.

(7)     Selection of Directors and Officers (11 U.S.C. § 1123(a)(7)). The Plan and Plan Supplement disclosed the identity of New Management, the New Board, the Unsecured Creditor Trustee, and the Unsecured Creditor Trust Advisory Board. The documents contained in the Plan and Plan Supplement are consistent with the interests of creditors and equity security holders and with public policy in accordance with Bankruptcy Code section 1123(a)(7).

(8)     Earnings from Personal Services (11 U.S.C. § 1123(a)(8)). Bankruptcy Code section 1123(a)(8) applies only to individual debtors and is not applicable to these Chapter 11 Cases.

(9)     Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan and Plan Supplement contain provisions which may be construed as permissive, but are not required for confirmation under the Bankruptcy Code.

(10)    Impairment/Unimpairment of Classes of Claims or Interests (11 U.S.C. § 1123(b)(1)). As contemplated by Bankruptcy Code section 1123(b)(1) and pursuant to Bankruptcy Code section 1124, Articles III and IV of the Plan classify and describe the treatment for Unimpaired Classes and Impaired Classes.

(11)    Assumption and Rejection (11 U.S.C. § 1123(b)(2). Article V of the Plan governs the assumption or rejection of executory contracts and unexpired leases and satisfies the requirements of Bankruptcy Code sections 365(b) and 1123(b)(2). In addition to several motions filed by the Debtors throughout the Chapter 11 Cases, the Plan Supplement identified executory contracts and unexpired leases the Debtors intend to assume. Notices describing the Debtors' intention to assume those executory contracts and unexpired leases, including proposed cure amounts, if any, (the "**Cure Notices**") were properly served on the relevant contract counterparties as required by the Disclosure Statement Order.

(12)    Retention of Causes of Action (11 U.S.C. § 1123(b)(3)). The Plan reserves and preserves the Debtors' rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately before the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law. The Unsecured Creditor Trust Causes of Action are reserved and preserved pursuant to the Plan, the Disclosure Statement, and the Plan Supplement.

(13)    Other Permissible Provisions (11 U.S.C. § 1123(b)(6). The Plan also includes discretionary provisions which comply with Bankruptcy Code section 1123(b)(6).

(14)    The Debtors are Not Individuals (11 U.S.C. § 1123(c)). The Debtors are not individuals. Accordingly, Bankruptcy Code section 1123(c) is inapplicable in these Chapter 11 Cases.

(15)    Cure of Defaults (11 U.S.C. § 1123(d)). Article V.B provides for the satisfaction of Cure Claims in connection with the assumption of executory contracts and unexpired leases pursuant to Bankruptcy Code sections 365 and 1123(d).

(16) <u>Bankruptcy Rule 3016</u>. The Plan is dated and identifies the Debtors and the Committee as plan proponents, satisfying Bankruptcy Rule 3016(a).

(17) <u>Compliance with Bankruptcy Code section 1129(a)(2)</u>. The Debtors and the Committee, as plan proponents, have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and other applicable law in transmitting the Plan, the Disclosure Statement, the Plan Supplement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(2).

T.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors and the Committee have proposed the Plan, including the Plan Supplement and all documents necessary to effectuate the Plan, and the transactions contemplated by the Plan in good faith and not by any means forbidden by law, thereby satisfying the requirements of Bankruptcy Code section 1129(a)(3). The Debtors' and the Committee's good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' assets and distributions to Creditors. Further, the Plan's classification, exculpation, release, and injunction provisions are consistent with Bankruptcy Code sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 and applicable case law in the Fifth Circuit, have been negotiated in good faith and at arms' length, are integral to the Plan, and supported by valuable consideration.

U.    <u>Payment for Costs and Services (11 U.S.C. § 1129(a)(4))</u>. Any payments made or promised by the Debtors for services or for costs and expenses incurred in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(4).

V.    Identification of Directors, Officers, and Trustees (11 U.S.C. § 1129(a)(5)). The Bankruptcy Court finds and concludes that the Debtors and the Committee have complied with Bankruptcy Code section 1129(a)(5). The identity and affiliations of the Persons proposed to serve as New Management, the Unsecured Creditor Trustee and to serve on the New Board and Unsecured Creditor Trust Advisory Board after confirmation have been fully disclosed to the extent such information is available. The appointment of such persons is consistent with the interests of Holders of Claims against the Debtors and with public policy. The Plan Supplement also provides the principal terms of the Management Incentive Plan.

W.    No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction. Accordingly, Bankruptcy Code section 1129(a)(6) is not applicable to these Chapter 11 Cases.

X.    Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). Each Holder of an Impaired Claim or Interest (i) has accepted the Plan, (ii) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date, or (iii) has agreed to receive less favorable treatment. Therefore, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(7).

Y.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). The Bankruptcy Court finds and concludes that:

> (1)    Class 1 (ABL Credit Facility Claims), Class 2 (Other Secured Claims), Class 3 (HUD Lender Claims), Class 4 (Priority Unsecured Claims), and certain claims in Class 8 (Intercompany Claims) and Class 9 (Intercompany Interests) are Unimpaired under the Plan and pursuant to Bankruptcy Code section 1126(f), are conclusively presumed to have accepted the Plan.

> (2)    As evidenced by the Voting Declaration, Classes 5 (General Unsecured Claims) and 6 (Convenience Class Claims) (together, the "**Accepting**

12

**Classes**") voted to accept the Plan in accordance with Bankruptcy Code sections 1126(b) and (c), and such Accepting Classes do not include insiders of the Debtors (as that term is defined in Bankruptcy Code section 101(31)). The Accepting Classes are Impaired under the Plan and have voted to accept the Plan in accordance with Bankruptcy Code section 1126(c).

(3)     Class 7 (Subordinated Debt Claims), Class 10 (Interests in SCC), and certain claims in Class 8 (Intercompany Claims) and Class 9 (Intercompany Interests) are Impaired under the Plan and are deemed to have rejected the Plan (the "**Rejecting Classes**").

Although Bankruptcy Code section 1129(a)(8) has not been satisfied with respect to Classes 7, 8, 9, and 10, pursuant to Bankruptcy Code section 1129(b)(1), the Plan may still be confirmed.

Z.     Treatment of Administrative Expense Claims and Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Claims under the Plan of the type specified in Bankruptcy Code section 507(a)(1) through 507(a)(8), if any, complies with the provisions of Bankruptcy Code section 1129(a)(9).

AA.     Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). As evidenced by the Voting Declaration, Bankruptcy Code section 1129(a)(10) is satisfied because the Accepting Classes have accepted the Plan, determined without including any acceptances of the Plan by any insider.

BB.     Feasibility (11 U.S.C. § 1129(a)(11)). The information in the Disclosure Statement, the Plan Supplement, the O'Halloran Declaration, and the evidence proffered or adduced at or prior to the Confirmation Hearing (a) is reasonable, persuasive and credible, (b) has not been controverted by other evidence, and (c) establishes that the Plan is feasible and that there is a reasonable prospect that the Debtors being able to meet their financial obligations under the Plan and that confirmation of the Plan is not likely to be followed by the liquidation or

71480264.11

need for further financial reorganization of the Debtors, thereby satisfying the requirements of Bankruptcy Code section 1129(a)(11).

CC. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. As provided in Section II.D of the Plan, all fees payable under section 1930 of Title 28 of the United States Code have either been paid or will be paid under the Plan by the Effective Date, thereby satisfying the requirements of Bankruptcy Code section 1129(a)(12).

DD. <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. The Debtors do not owe retiree benefits, therefore, Bankruptcy Code section 1129(a)(13) is not applicable.

EE. <u>Non-Applicable Provisions (11 U.S.C. §§ 1129(a)(14)-(16)</u>. Bankruptcy Code sections 1129(a)(14) through (a)(16) are not applicable in these Chapter 11 Cases as the Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations.

FF. <u>No Unfair Discrimination (11 U.S.C. § 1129(b))</u>. Based upon the evidence proffered, adduced, and presented by the Debtors at the Confirmation Hearing, in the Disclosure Statement, and in the O'Halloran Declaration, the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes as required by Bankruptcy Code sections 1129(b)(1) and (b)(2) , because no Holder of any Claim or Interest that is junior to such Classes will receive or retain any property under the Plan on account of such junior Claim or Interest, and no Holder of a Claim in a Class senior to such Classes is receiving more than 100% recovery on account of its Claim. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by these Classes.

GG.     Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan being confirmed in these Chapter 11 Cases. Thus, the Plan satisfies the requirements of Bankruptcy Code section 1129(c).

HH.     Principal Purpose of the Plan (11 U.S.C. § 1129(d). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(d).

II.     Small Business Case (11 U.S.C. § 1129(e). None of these Chapter 11 Cases are "small business cases", as that term is defined in the Bankruptcy Code, and, accordingly, Bankruptcy Code section 1129(e) is not applicable.

JJ.     Good Faith Solicitation (11 U.S.C. § 1125(e)).  The evidence proffered or adduced at the Confirmation Hearing (i) is reasonable, persuasive and credible, (ii) utilizes reasonable and appropriate methodologies and assumptions, (iii) has not been controverted by other evidence, (iv) establishes that the Debtors and the Committee, and each of their respective Related Persons have solicited acceptances or rejections of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, Bankruptcy Code sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation and (v) establishes that the Debtors, the Reorganized Debtors, the Unsecured Creditor Trust, the Committee, and each of their respective Related Persons will, as applicable, continue to act in good faith if they consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby, and take all other actions authorized by this Confirmation Order. Accordingly, each of the foregoing Persons is entitled to and, pursuant to

this Confirmation Order, granted the full protections afforded by Bankruptcy Code section 1125(e).

KK.     Limited Substantive Consolidation. The Plan serves as, and is deemed to be, a motion for entry of an order substantively consolidating the Chapter 11 Cases as set forth in the Plan, effective *nunc pro tunc* as of the Petition Date. The Debtors have demonstrated that prepetition, the Debtors operated their businesses as an integrated legal enterprise to such an extent that many of their major creditors treated them as one legal entity and that separating each of the Debtors' assets and liabilities would be cost prohibitive and would be harmful to all of the respective creditors. Based upon the evidence adduced and admitted and arguments made in the Confirmation Brief, the O'Halloran Declaration, and the statements made at the Confirmation Hearing, and the record of these Chapter 11 Cases, limited substantive consolidation of the Debtors' Estates as provided for in the Plan under Article IV.A is appropriate.

LL.     Implementation. All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length and are in the best interests of the Debtors, and shall, upon completion of documentation and execution, and subject to the occurrence of the Effective Date, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.

MM.     Executory Contracts and Unexpired Leases. The Debtors have exercised their reasonable business judgment in determining whether to assume or reject executory contracts and unexpired leases. Each assumption of an executory contract or unexpired lease pursuant to Article V of the Plan shall be legal, valid, and binding, all to the same extent as if such assumption had been effectuated pursuant to an order of the Bankruptcy Court under Bankruptcy

16

Code section 365 entered before entry of this Confirmation Order. Moreover, the Debtors have cured, or provided adequate assurance that the Debtors or Reorganized Debtors or their successors and assigns, as applicable, will cure, defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed or assumed and assigned by the Debtors pursuant to the Plan. In addition, the Debtors or Reorganized Debtors or their successors and assigns, as applicable, are financially sound, and have provided adequate assurance of future performance under such executory contracts and unexpired leases being assumed or assumed and assigned, as applicable

NN.     <u>Injunction, Exculpation, and Release Provisions</u>. The releases, exculpations, and injunctions provided for in the Plan (i) are within the proper jurisdiction and purview of this Court under 28 U.S.C. § 1334; (ii) are integral elements of the transactions incorporated into the Plan; (iii) confer material benefit on, and are in the best interests of the Debtors, their Estates, and their creditors; (iv) are made in exchange for consideration; (v) are essential to the overall objectives of the Plan and resolve the Claims that are subject of the releases, exculpations, and injunctions; and (vi) are consistent with the Bankruptcy Code.

OO.     <u>Objections</u>. To the extent that any objections, reservations of rights, statements, or joinders to Confirmation have not been resolved, withdrawn, waived, adjourned, or settled prior to the entry of this Confirmation Order or otherwise resolved herein or as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits based on the record before the Bankruptcy Court.

PP.     <u>Modifications of the Plan</u>. Any modifications made to the Plan since the solicitation thereof, including the Modifications described herein, do not constitute changes that materially and adversely change the treatment of any Claims or Interests. Accordingly, these

modifications comply in all respects with Bankruptcy Code section 1127 and Bankruptcy Rule 3019, and none of the modifications requires additional disclosure or resolicitation of votes on the Plan. Under Bankruptcy Rule 3019(a), all Creditors that previously accepted the Plan are deemed to have accepted the Plan as modified. The Plan as modified shall constitute the Plan submitted for confirmation.

QQ.   <u>Satisfaction of Confirmation Requirements</u>. Based on the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with Confirmation of the Plan and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129.

RR.   <u>Retention of Jurisdiction</u>. The Bankruptcy Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article X of the Plan and Bankruptcy Code section 1142.

SS.   The Bankruptcy Court finds that Confirmation of the Plan is in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and all other parties in interest.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

2.   <u>Findings of Fact and Conclusions of Law</u>. The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though more fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

3. <u>Notice of the Confirmation Hearing</u>. Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

4. <u>Solicitation</u>. The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

5. <u>Plan Modifications</u>. The modifications and amendments to the Plan through the date hereof, including the Modifications described herein, meet the requirements of Bankruptcy Code section 1127(a) and (c), such modifications do not materially and adversely affect the treatment of the Claim of any Creditor of Interest Holder within the meaning of Bankruptcy Rule 3019(a), and no further solicitation or voting is required. The Plan is hereby amended to include the Modifications described herein.

6. <u>Omission of Reference to Particular Plan Provisions</u>. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

7. <u>Confirmation of the Plan</u>. The Plan and each of its provisions shall be, and hereby are, CONFIRMED under Bankruptcy Code section 1129. The documents contained in or contemplated by the Plan, including without limitation, the Plan Supplement, are hereby

authorized and approved. The terms of the Plan are incorporated by reference into and are an integral part of this Order.

8.      Objections. All Objections, responses to, and statements and comments, if any, in opposition to or inconsistent with the Plan, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, overruled and denied in their entirety. All withdrawn objections are deemed withdrawn with prejudice.

9.      Provisions of Plan Nonseverable and Mutually Dependent. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are: (i) non-severable and mutually dependent; (ii) valid and enforceable pursuant to their terms; and (iii) integral to the plan and this Confirmation Order and may not be deleted or modified except in accordance with Article XI.A of the Plan.

10.      Settlement of Claims and Controversies. Pursuant to Bankruptcy Code section 1123(b)(3)(A) and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided in the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the rights that a Holder of a Claim or Interest may have with respect to such Claim or Interest or any Distribution on account thereof.

11.      The entry of this Confirmation Order shall constitute approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. After the Effective Date, the Reorganized Debtors or Unsecured Creditor Trustee, as applicable, may, and shall have the right to, compromise and settle any Claims against the Debtors or Unsecured

Creditor Trust, as the case may be, and Causes of Action against any other Person or Entity subject to the provisions of the Plan.

12.     Binding Effect. Except as otherwise provided in Bankruptcy Code section 1141(d)(3), and subject to the occurrence of the Effective Date, on and after the entry of this Order, the provisions of the Plan shall bind every Holder of a Claim against or Interest in any Debtor and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is impaired under the Plan and whether such Holder has accepted the Plan.

13.     Classification and Treatment. The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Equity Interests under the Plan for distribution purposes, (c) may not be relied upon by any creditor or interest holder as representing the actual classification of such Claims or Equity Interests under the Plan for distribution or any other purpose (other than for evidencing the vote of such party on the Plan), and (d) shall not be binding on the Debtors, the Unsecured Creditor Trust, the Reorganized Debtors or holders of Claims or Equity Interests for purposes other than voting on the Plan.

14.     Vesting of Assets. Except as otherwise expressly provided in the Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), 1141(b) and

(c), and any other applicable provisions of the Bankruptcy Code, on and after the Effective Date, all property and assets of the Estates of the Debtors, including all claims, rights, and Causes of Action of the Debtors, and any other assets or property acquired by the Debtors or the Reorganized Debtors during the Chapter 11 Cases or under or in connection with the Plan, other than the Unsecured Creditor Trust Assets, shall automatically, without the notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, rule or any requirement of further action, vote or other approval or authorization of the security holders, equity owners, members, managers, officers or directors of the Debtors, the Reorganized Debtors or the other applicable Entity or by any other person (except for those expressly required pursuant hereto or by the Plan Documents), vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, and other encumbrances, subject to the Restructuring Transactions and Liens, if any, which survive the occurrence of the Effective Date as described in this Plan. On and after the Effective Date, the Reorganized Debtors may operate their respective businesses and use, acquire, and dispose of their respective property, without notice to, supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

15.     Continued Corporate Existence. Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Reorganized Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of Entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of Entity, as the case may be, pursuant to the applicable law in the jurisdiction in which

71480264.11

each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended or amended and restated by the Plan, the New Corporate Governance Documents, or otherwise, and to the extent such documents are amended or amended and restated, such documents are deemed to be amended or amended and restated pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

16.    <u>Corporate Action</u>. Pursuant to Bankruptcy Code section 1142(b), on the Effective Date, or as soon thereafter as reasonably practicable, the Debtors or Reorganized Debtors, as applicable, shall take all actions as may be necessary or appropriate to effectuate the Restructuring Transactions, including: (a) the execution, delivery, and filing, as applicable, of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation, each containing terms that are consistent in all material respects with the terms of the Plan, and that satisfy the requirements of applicable law; (b) the execution, delivery, and filing, as applicable, of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation, each on terms consistent in all material respects with the terms of the Plan; (c) the execution, delivery, and filing, as applicable, of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Restructuring Transactions in the most tax efficient manner, as determined by the Debtors; and (e) the

23

execution, delivery, and filing, if applicable, of the New Corporate Governance Documents, and any documentation related to the New Common Stock or the Restructuring Transactions.

17. <u>Implementation</u>. Pursuant to Bankruptcy Code section 1123(a)(5)(D), on or prior to the Effective Date, or as soon as reasonably practicable, the Debtors or the Reorganized Debtors, as applicable, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan including: (a) the adoption, execution, delivery and/or filing of the New Corporate Governance Documents; (b) the selection of the directors, managers, and officers of the Reorganized Debtors; (c) the authorization, issuance, delivery, and distribution of the New Common Stock; (d) rejection, assumption, or assumption and assignment, as applicable, of the Executory Contracts and Unexpired Leases; (e) the entry into the Exit Facility Documents; (f) the adoption of the Management Incentive Plan; (g) the entry into the Unsecured Creditor Trust Agreement, Unsecured Creditor Trust Note, and related documents; and (h) all other actions that may be required under applicable law. All such actions taken or caused to be taken consistent with the terms of the Confirmation Order and the Plan, including any such actions taken with respect to the Restructuring Transactions prior to the entry of the Confirmation Order, shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation.

18. <u>Exit Facility</u>. On the Effective Date, the Exit Facility Documents and OldCo Facility Documents shall be executed and delivered, and the Reorganized Debtors shall be authorized to execute, deliver, and enter into the Exit Facility Documents and OldCo Facility Documents without the need for any further corporate action. The Debtors are authorized to perform their obligations under the Exit Facility Documents and OldCo Facility Documents,

24


including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages, or indemnities. Subject to the occurrence of the Effective Date the Exit Facility Documents shall constitute the legal, valid, and binding obligations of the Reorganized Debtors and be enforceable in accordance with their respective terms.

19. <u>Issuance of New Common Stock</u>. Abri Health Services LLC, a newly formed Delaware limited liability company, was formed on November 1, 2019 and as of the Effective Date, will be the parent company of the Reorganized Debtors,[4] owning 100% of the equity interests in the Reorganized Debtors. On the Effective Date, the Reorganized Debtors shall be authorized to and shall issue the New Common Stock in accordance with the terms of the Plan without the need for any further corporate action. Each share of New Common Stock issued and distributed pursuant to the Plan shall be duly authorized, and validly issued. Each distribution and issuance shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Person receiving such distribution or issuance.

20. <u>Exemption from Registration Requirements</u>. The offering, issuance, and distribution of all shares of New Common Stock under the Plan shall be exempt from, among other things, the registration and prospectus delivery requirements under the Securities Act or any similar federal, state, or local laws in reliance upon Bankruptcy Code section 1145 to the maximum extent permitted and applicable and, to the extent that reliance on such section is either not permitted or not applicable, the exemption set forth in section 4(a)(2) of the Securities Act.

---

[4] The term "Reorganized Debtors" shall include the entity Abri Health Services LLC.

25

21. <u>Exemption from Transfer Taxes</u>. Pursuant to Bankruptcy Code section 1146(a), any transfers (whether from a Debtor to a Reorganized Debtor, the Unsecured Creditor Trust, or to any other Person) of property under the Plan including: (a) the issuance, distribution, transfer, or exchange of any debt, Security, or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; (d) the grant of collateral as security for any or all of the Exit Facility; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of Bankruptcy Code section 1146(c), shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

26

22.     New Corporate Governance Documents. On the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors' respective certificates of incorporation and bylaws (and other formation and constituent documents relating to limited liability companies) shall be amended or amended and restated as may be required to be consistent with the provisions of the Plan, the New Corporate Governance Documents, and the Exit Facility Documents. After the Effective Date, each Reorganized Debtor may amend and restate its certificate of incorporation and other formation and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of such documents.

23.     Compliance with Bankruptcy Code section 1123(a)(6). This provision is not applicable to the Reorganized Debtors because they are limited liability companies or partnerships. Therefore, the adoption and filing by the Debtors or Reorganized Debtors, as applicable, of the New Corporate Governance Documents is hereby authorized, ratified, and approved.

24.     Cancellation of Notes, Instruments, Certificates, and Other Documents. On the Effective Date, except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, or in any Plan Document, all agreements, instruments, and other documents evidencing any prepetition Claim or Interest and any rights of any Holder in respect thereof shall be cancelled and of no force or effect. The holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan.

25.     Management Incentive Plan. The New Board is authorized, but not directed, to adopt the Management Incentive Plan on, or as soon as reasonably practicable after, the Effective

Date, provided, however, that nothing in this Order or the Plan shall constitute allowance or approval of any payment or award under the Management Incentive Plan, with such approval being vested solely in the discretion of the New Board.

26. <u>Substantive Consolidation</u>. Except as otherwise expressly provided in the Plan, each Debtor shall continue to maintain its separate corporate existence for all purposes other than the treatment of Claims under the Plan and distributions in accordance with the Plan. On the Effective Date, (a) all assets and all liabilities of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other solely for purposes of voting and distribution, (b) subject to Article III.A(7) of the Plan, all Intercompany Claims among the Debtors shall be eliminated and there shall be no distributions on account of such Intercompany Claims, (c) any obligation of a Debtor and any guarantee thereof by any other Debtor shall be deemed to be one obligation, and any such guarantee shall be eliminated, (d) each Claim filed or to be filed against more than one Debtor shall be deemed filed only against one consolidated Debtor and shall be deemed a single Claim against and a single obligation of the Debtors, and (e) any joint or several liability of the Debtors shall be deemed one obligation of the Debtors. On the Effective Date, and in accordance with the terms of the Plan, all Claims based upon guarantees of collection, payment or performance made by one Debtor as to the obligations of another Debtor shall be released and of no further force and effect. Such substantive consolidation shall not (other than for purposes relating to the Plan) affect the legal and corporate structures of the Reorganized Debtors. The Debtors will not substantively consolidate Accounts Receivable between non-HUD and HUD Facilities.

27. <u>Unsecured Creditor Trust</u>. On the Effective Date, the Reorganized Debtors (solely in their capacity as successors to Debtors) and the Unsecured Creditor Trustee shall execute the

Unsecured Creditor Trust Agreement, and shall take all steps necessary to establish the Unsecured Creditor Trust in accordance with the Plan, which shall be for the benefit of the Holders of Claims that receive beneficial interests in the Unsecured Creditor Trust. Additionally, on the Effective Date the Debtors shall transfer and/or assign and shall be deemed to transfer and/or assign to the Unsecured Creditor Trust all of their rights, title and interest in and to all of the Unsecured Creditor Trust Assets, and in accordance with Bankruptcy Code section 1141, the Unsecured Creditor Trust Assets shall automatically vest in the Unsecured Creditor Trust free and clear of all Claims and Liens, subject only to (a) the beneficial interests in the Unsecured Creditor Trust, and (b) the expenses of the Unsecured Creditor Trust as provided for in the Unsecured Creditor Trust Agreement.

28.     The Unsecured Creditor Trust shall be governed by the Unsecured Creditor Trust Agreement and administered by the Unsecured Creditor Trustee and the Unsecured Creditor Trust Advisory Board. The powers, rights, responsibilities and compensation of Unsecured Creditor Trustee and Unsecured Creditor Trust Advisory Board shall be specified in the Unsecured Creditor Trust Agreement. The Unsecured Creditor Trustee shall hold and distribute the Unsecured Creditor Trust Assets in accordance with the Plan and the Unsecured Creditor Trust Agreement. Other rights and duties of the Unsecured Creditor Trustee, the Unsecured Creditor Trust Advisory Board and the Holders of Claims that receive beneficial interests in Unsecured Creditor Trust shall be as set forth in the Unsecured Creditor Trust Agreement.

29.     After the Effective Date, the Debtors and the Reorganized Debtors shall have no interest in the Unsecured Creditor Trust Assets. To the extent that any Unsecured Creditor Trust Assets cannot be transferred to the Unsecured Creditor Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by

29

Bankruptcy Code section 1123 or any other provision of the Bankruptcy Code, such Unsecured Creditor Trust Assets shall be deemed to have been retained by the Reorganized Debtors and the Unsecured Creditor Trust shall be deemed to have been designated as a representative of the Reorganized Debtors pursuant to Bankruptcy Code section 1123(b)(3)(B) to enforce and pursue such Unsecured Creditor Trust Assets on behalf of the Reorganized Debtors for the benefit of the Holders of Claims that receive beneficial interests in Unsecured Creditor Trust. Notwithstanding the foregoing, all net proceeds of such Unsecured Creditor Trust Assets shall be transferred to the Unsecured Creditor Trust to be distributed in accordance with the Plan.

30. <u>Vesting of Unsecured Creditor Trust Assets</u>. On the Effective Date, except as otherwise provided herein and in the Plan, the Unsecured Creditor Trust Assets shall automatically vest in the Unsecured Creditor Trust, free and clear of all Claims, Liens, and other encumbrances. Confirmation of this Plan effects no settlement, compromise, waiver, or release of any Unsecured Creditor Trust Assets, including, without limitation, the Unsecured Creditor Trust Causes of Action. The non-disclosure or non-discussion of any particular Unsecured Creditor Trust Cause of Action is not and shall not be construed as a settlement, compromise, waiver, or release of any such Unsecured Creditor Trust Cause of Action. The Unsecured Creditor Trust and the Unsecured Creditor Trustee reserve and preserve any and all Unsecured Creditor Trust Causes of Action, whether such Unsecured Creditor Trust Causes of Action arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Record Date and/or any Distribution Date, including, without limitation, the Unsecured Creditor Trust Causes of Action described in the Plan, Disclosure Statement, and Plan Supplement.

31. The entry of this Confirmation Order shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Debtors, the Unsecured Creditor Trust or the Unsecured

Creditor Trustee relating to any Unsecured Creditor Trust Causes of Action referred to in Article VI.E of the Plan, the Plan Supplement, the Disclosure Statement or otherwise. Except as specifically set forth in the Plan, the Unsecured Creditor Trustee shall constitute the representative of the Estates for purposes of retaining, asserting and/or enforcing the Unsecured Creditor Trust Causes of Action under Bankruptcy Code section 1123(b)(3)(B).

32. On the Effective Date, the Unsecured Creditor Trustee shall be substituted as a party of record in all pending litigation brought by, on behalf of, or against the Debtors without need for further order of the Bankruptcy Court to the extent such litigation constitutes an Unsecured Creditor Trust Cause of Action. For the avoidance of doubt, the Unsecured Creditor Trustee shall be substituted for the Committee with respect to all pending litigation and/or discovery to which the Committee is a party.

33. <u>Waived Avoidance Actions</u>. Notwithstanding anything in the Plan to the contrary, on the Effective Date, all Waived Avoidance Actions shall be waived and released by the Debtors and the Reorganized Debtors and their Estates.

34. <u>Assumption of Executory Contracts and Unexpired Leases</u>. Pursuant to Article V of the Plan, and subject to the occurrence of the Effective Date, this Order shall constitute approval of assumption and assignment of the Executory Contracts and Unexpired Leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases (the "**Assumed Contracts**") pursuant to Bankruptcy Code sections 365 and 1123. Except as otherwise provided in the Plan, as of the Effective Date, all Executory Contracts and Unexpired Leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases will be deemed: (a) assumed by the applicable Debtor in accordance with, and subject to the provisions and requirements of Bankruptcy Code sections 365 and 1123; and (b) if so indicated on the Schedule of Assumed

31

Executory Contracts and Unexpired Leases, assigned to the other party identified as the assignee for each assumed Executory Contract and Unexpired Lease.

35. The Assumed Contracts shall remain in full force and effect in accordance with their respective terms and conditions, notwithstanding any provision in such Assumed Contract (including, without limitation, those described in Bankruptcy Code sections 365(b), (c), (e) and (f)) or under applicable non-bankruptcy law that purports to (a) terminate, modify, or restrict, or permit the applicable non-Debtor party to terminate, modify or restrict, such contract or lease or the Debtors' rights, benefits and privileges thereunder; or (b) create or impose, or permit the applicable non-Debtor party to create or impose, any additional duties, obligations, penalties, default rates of interest or payments (monetary and non-monetary) upon any Debtor or Reorganized Debtor, in each case as a result of or in connection with (i) the filing of a petition for relief under Chapter 11 of the Bankruptcy Code by the Debtors; (ii) the Debtors' insolvency or financial condition at any time before the Chapter 11 Cases are closed; or (iii) the confirmation or consummation of the Plan.

36. Notwithstanding anything to the contrary in the Plan or this Order, all guaranties of a Debtor or non-Debtor (including, without limitation, Senior Care Centers, LLC and Harden Healthcare, LLC) guarantying obligations and liabilities of a Debtor or a Reorganized Debtor under any of the Plan Facilities Leases shall remain and continue after the Effective Date and shall in no way be impacted or diminished by any provision of the Plan.

37. <u>Cure of Defaults</u>. Any monetary amounts by which each executory contract and unexpired lease to be assumed is in default shall be satisfied, pursuant to Bankruptcy Code section 365(b)(1), by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to each such Assumed Contract may otherwise agree.

71480264.11

38.     In the event of a dispute regarding (a) the amount of any cure payments, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of Bankruptcy Code section 365) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by Bankruptcy Code section 365(b)(1) shall be made following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such motion, the executory contract or unexpired lease at issue shall be deemed assumed by the Debtors unless otherwise ordered by the Bankruptcy Court.

39.     The Debtors reserve the right to reject any executory contract or unexpired lease not later than thirty (30) days after the entry of a Final Order resolving any such dispute. The Debtors further reserve the right to reject and/or assume & assign executory contracts or unexpired leases related to the Rejected Facilities to facilitate transition to new operators not later than ninety (90) days after the Effective Date. The Debtors shall not be permitted to reject the Plan Facilities Leases upon entry of this Order.

40.     Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have consented to such assumption or proposed cure amount.

41.     If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Reorganized Debtors, as applicable, may add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

42.     Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

43.     <u>Rejection of Executory Contracts and Unexpired Leases</u>. Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture or other agreement, or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have rejected each Executory Contract and Unexpired Lease to which it is a party, unless such Executory Contract or Unexpired Lease: (a) was previously assumed or rejected; (b) was previously expired or terminated pursuant to its own terms; (c) is the subject of a motion or notice to assume filed on or before the Confirmation Date; (d) is designated specifically or by category as an Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases; or (e) is an Executory Contract or Unexpired Lease related to a Rejected Facility which is subject to the Debtors' or Reorganized Debtors' reservation of right to reject at a post Effective Date time.

44.     This Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b) approving the rejections described above as of the Effective Date. Unless otherwise indicated, all assumptions or rejections of Executory Contracts and Unexpired Leases in the Plan will be effective as of the Effective Date.

45. Any counterparty to a contract or lease that is not identified on the Schedule of Assumed Executory Contracts and Unexpired Leases or is otherwise rejected by the Debtors must file and serve a proof of Claim on the applicable Debtor that is party to the contract or lease to be rejected no later than thirty (30) days after the later of (a) the Confirmation Date, or (b) the effective date of rejection of such executory contract or unexpired lease. Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Unsecured Creditor Trust, the Debtors, the Reorganized Debtors, or the Estates, and the Unsecured Creditor Trust, the Debtors, the Reorganized Debtors, and their Estates and their respective assets and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.

46. <u>Administrative Claims</u>. No later than five (5) days after the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall post on the Case Website the Scheduled Administrative Claims that are based on unpaid liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date.

47. Except for Administrative Claims which are Professional Fee Claims, Priority Tax Claims, or Scheduled Administrative Claims, requests for payment of Administrative Claims must be filed with the Court and served on the Debtors or Reorganized Debtors, as applicable, no later than thirty (30) days after the Effective Date, or thirty (30) days after the date of rejection, if applicable (the "**Administrative Claims Bar Date**"). Such notice must be served on the Reorganized Debtors, their counsel, counsel to the Committee or Unsecured Creditor Trust, as applicable, and other parties-in-interest. Additionally, such notice must include, at a

minimum: (a) the name of the Holder of the Administrative Claim, (b) the amount of the Administrative Claim, and (c) the basis of the Administrative Claim (including any documentation or evidence supporting such claim).

48. Failure to properly file such a notice prior to the Administrative Claims Bar Date and as required hereunder and pursuant to the Plan shall result in the Administrative Claim being deemed discharged as of the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim that was previously Allowed. Objections to Administrative Claims, if any, must be filed and served by the Debtors or Reorganized Debtors, as applicable, on the requesting party no later than sixty (60) days after the Effective Date.

49. <u>Professional Fee Claims</u>. Professionals asserting a Professional Fee Claim for services rendered before the Effective Date must file and serve on the Notice Parties (as defined below), an application for final allowances of compensation for services rendered and reimbursement for expenses incurred (a "**Final Fee Application**") no later than thirty (30) days after the Effective Date (the "**Professional Fee Claims Bar Date**"). Failure to timely and properly file a Final Fee Application as required hereunder and pursuant to the Plan shall result in the Professional Fee Claim being forever barred and discharged.

50. Final Fee Applications must be filed with this Court and served on the following parties (collectively, the "**Notice Parties**"):

      a.    counsel to the Debtors, Polsinelli PC, Polsinelli PC, 600 3rd Avenue, 42nd Floor, New York, New York 10016 (Attention: Jeremy R. Johnson) and 2950 N. Harwood, Suite 2100, Dallas, Texas 75201 (Attention: Trey A. Monsour);

      b.    counsel to the Committee, Greenberg Traurig, LLP, 77 West Wacker Drive, Suite 3100, Chicago, Illinois 60601 (Attention: Nancy A. Peterman) and 1000 Louisiana Street, Suite 1700, Houston, Texas 77002 (Attention: Shari L. Heyen); and

c.      the Office of the United States Trustee, 1100 Commerce Street, Room 976, Dallas, Texas 75242 (Attention: Meredyth A. Kippes).

51.     Objections to any Professional Fee Claim must be filed and served on the Notice Parties and the requesting party no later than 4:00 p.m. (prevailing Central Time) on the date that is twenty-one (21) days after the filing of the applicable Final Fee Application (the "**Professional Fees Objection Deadline**").

52.     The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Interim Compensation Order and the Bankruptcy Code. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court Allows following entry of an order by the Bankruptcy Court Allowing such Professional Fee Claims, including from the funds in the Professional Fee Escrow Account.

53.     On the Effective Date, the Reorganized Debtors shall establish the Professional Fee Escrow Account in trust for the Professionals and fund it with Cash equal to the Professional Fee Escrow Amount. Professionals shall estimate in good faith their unpaid Professional Fee Claims through the Effective Date and shall deliver such good faith estimates to the Debtors and the Committee no later than five (5) Business Days prior to the anticipated Effective Date. For the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims Filed with the Bankruptcy Court. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. No funds in the Professional Fee Escrow Account shall be property of the Estates. Any funds remaining in the Professional Fee Escrow Account after all Allowed Professional Fee Claims have been paid will be turned over to the Reorganized Debtors.

71480264.11

54. From and after the Effective Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors and the Unsecured Creditor Trustee may employ and pay any professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

55. Provisions for Resolving Disputed Claims. The procedures for resolving claims outlined in Article VII.G of the Plan are hereby approved.

56. Discharge of Claims and Equity Interests in the Debtors. Upon the Effective Date, and pursuant to Bankruptcy Code section 1141(d), and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release of Claims (including any Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1)

a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section Bankruptcy Code 501; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (3) the Holder of such a Claim or Interest has accepted the Plan.

57.  Successors and Assigns. The Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, all present and former Holders of Claims and Equity Interests, other parties-in-interest, and their respective heirs, executors, administrators, successors, and assigns.

58.  Terms of Injunction and Automatic Stay. Unless otherwise provided in the Plan, all injunctions and stays arising under or entered during the Chapter 11 Cases, whether under Bankruptcy Code section 105 or 362 or otherwise, and in existence as on the date of this Order shall remain in full force and effect until the Effective Date.

59.  Releases and Exculpation. The release and exculpation provisions contained in the Plan, including, but not limited to, those provided in Article VIII of the Plan, are hereby authorized, approved, and binding on all Persons and Entities described therein.

60.  Injunctions. The injunctions contained in the Plan, including, but not limited to those provided in Article VIII of the Plan, are hereby authorized, approved, and binding on all Persons and Entities described therein.

61.  Conditions Precedent to Effective Date. The Plan shall not become consummated and the Effective Date shall not occur, unless and until the conditions set forth in Article IX.B of the Plan have been satisfied or waived pursuant to Article IX.D of the Plan.

62.  Revocation or Withdrawal of Plan. The Debtors and the Committee are granted the authority to jointly revoke and withdraw the Plan prior to the entry of the Confirmation

Order. If the Debtors and the Committee jointly revoke or withdraw the Plan, the Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtors. If the Effective Date does not occur with respect to a Debtor, then (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors, the Committee, or any other Person or Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Committee, or any other Person or Entity.

63. Notice of Entry of Confirmation Order and Effective Date. In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable on or after the Effective Date, the Debtors shall provide notice of the entry of this Confirmation Order and of the occurrence of the Effective Date by serving a Notice of Effective Date, on all known creditors, equity security holders, the U.S. Trustee and other parties-in-interest in these Chapter 11 Cases; provided, however, that such notice need not be given or served under or pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or this Confirmation Order to any Person or Entity to whom the Debtors mailed a notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved-left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in

writing by such Person or Entity of that Person's or Entity's new mailing address. The notice described herein is adequate and appropriate under the particular circumstances and no other or further notice is necessary or required. The Notice of Effective Date shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

64.     <u>Dissolution of the Committee</u>. On the Effective Date, the Committee shall dissolve automatically and all members thereof (solely in their capacities as such) shall be released and discharged from all rights, duties and responsibilities arising from, or related to, the Chapter 11 Cases; provided, however, that the Committee shall continue to exist and its Professionals shall continue to be retained and entitled to reasonable and documented compensation, without further order of the Bankruptcy Court, with respect to: (a) the preparation and prosecution of any final fee applications of the Committee's Professionals and requests for reimbursement of the Committee members, and (b) prosecuting or participating in any appeal of the Confirmation Order or any request for consideration thereof. Upon the resolution of (a) and (b), the Committee shall be immediately dissolved, released and discharged.

65.     <u>Termination and Discharge of Patient Care Ombudsman</u>. On the Effective Date, the Patient Care Ombudsman appointed in the Chapter 11 Cases shall be discharged and relieved from his duties and responsibilities as Patient Care Ombudsman in the Chapter 11 Cases. The Patient Care Ombudsman and the Patient Care Ombudsman's Professionals are authorized to dispose of or destroy any documents provided by the Debtors or any third parties to the Patient Care Ombudsman, if any, in the course of their evaluation, in accordance with their respective document retention policies or applicable law.

66. <u>Headings</u>. The headings contained within this Confirmation Order are used for the convenience of the parties and shall not alter or affect the meaning of the text of this Confirmation Order.

67. <u>References to Plan Provisions</u>. The failure specifically to include or reference any particular article, section or provision of the Plan (and the Plan Supplement) or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of this Court that the Plan (and the exhibits and schedules thereto), inclusive of any express modifications set forth in this Confirmation Order, be confirmed in its entirety and any related documents be approved in their entirety and incorporated herein by reference.

68. <u>No Admission or Waiver</u>. None of the filing of the Plan, any statement or provision contained within the Plan or the taking of any action by any Debtor with respect to the Plan (and Plan Supplement), the Disclosure Statement or Confirmation Order shall be deemed to be an admission or wavier of any rights of any Debtor.

69. <u>Applicable Non-Bankruptcy Law</u>. Subject to paragraph 75 and pursuant to Bankruptcy Code sections 1123(a) and 1142(a), the provisions of this Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

70. <u>Reversal, Stay, or Modification of Confirmation Order</u>. If any or all of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Bankruptcy Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or the Unsecured Creditor Trustee, as applicable, pursuant

42

to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

71. <u>Substantial Consummation</u>. On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

72. <u>Final Order</u>. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

73. <u>Inconsistency</u>. To the extent of any inconsistency between this Order and the Plan or any related agreements, documents, or other instruments, the terms of this Order shall govern.

74. <u>Order Effective Immediately</u>. The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived. This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062.

75. <u>Reservation of Rights in Favor of Governmental Units</u>. Notwithstanding anything in the Disclosure Statement, Plan, Plan Supplement, this Confirmation Order, or any other Plan document,

   a. nothing shall discharge, waive, release, preclude, or enjoin (a) any liability of the Debtors to any Governmental Unit that is not a Claim; (b) any Claim of a Governmental Unit arising on or after the Effective Date; (c) any police or regulatory liability of any entity to a Governmental Unit , including, without limitation, any police or regulatory liability that such entity would be subject to as the post-Effective Date owner or operator of property; (d) any Claim of or liability to a Governmental Unit on the part of any Person or Entity other than the Debtors; or (e) any obligations

preserved or established in any order entered by the Bankruptcy Court in any Debtor's case;

b.    nothing shall enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Bankruptcy Court, any liability described in the preceding clause; and

c.    nothing shall authorize the transfer of any representative payee applications, representative payee status, Social Security beneficiary trust accounts, NPIs, provider agreements, participation agreements, licenses, permits, registrations, or other governmental authorizations or approvals without compliance with all applicable legal requirements under non-bankruptcy law governing such transfers; and

d.    nothing shall authorize the Debtors', Reorganized Debtors' or other parties' entry into financing transactions, including, without limitation, loan documents, intercreditor agreements, subordination agreements, security instruments, and related documents, without HUD approval.

Notwithstanding anything in the Disclosure Statement, the Plan, the Plan Supplement, this Confirmation Order, or any other Plan document, for the avoidance of doubt, the United States of America and HHSC shall not be subject to any exculpation in Article VIII.D, and the United States of America's and HHSC's rights, claims, and defenses of setoff or recoupment, if any, are expressly preserved, as are the Debtors' defenses and rights thereto.

Notwithstanding anything in the Disclosure Statement, Plan, Plan Supplement, this Confirmation Order, or any other Plan document, the Debtors and Reorganized Debtors shall abide by and comply with all: (a) U.S. Department of Health and Human Services' and the Centers for Medicare & Medicaid Services' statutes, regulations, rules, procedures, and policies, including, without limitation, the Debtors' Medicare provider agreements; (b) U.S. Social Security Administration's statutes, regulations, rules, procedures, and policies, including, without limitation, the Debtors' representative payee applications; (c) U.S. Department of Housing and Urban Development's statutes, regulations, rules, procedures, and policies, including, without limitation, all HUD handbooks, the Debtors' HUD Regulatory Agreements,

71480264.11

the HUD addenda to all leases executed by the Debtors, and the intercreditor agreements executed by the Debtors, certain HUD Lenders and the ABL Lenders; (d) all other applicable Federal statutes, regulations, rules, procedures, and policies; and (e) HHSC's statutes, regulations, rules, procedures, and policies, including, without limitation, the Debtors' Medicaid provider agreements.

Notwithstanding anything in the Disclosure Statement, Plan, Plan Supplement, this Confirmation Order, or any other Plan document, nothing shall set any cure amount with respect to any assumption of any Medicare or Medicaid provider agreements, Tricare participation agreements, Uniformed Services Family Health Plan agreements, or any other Tricare agreements, and the Debtors and Reorganized Debtors shall pay any overpayments, civil money penalties or other liabilities owed to the United States of America on account of the Plan Facilities in the ordinary course in accordance with applicable non-bankruptcy law.

Notwithstanding anything in the Disclosure Statement, Plan, Plan Supplement, this Confirmation Order, or any other Plan document, to the extent any Medicare or Medicaid provider agreement, Tricare participation agreement, Uniformed Services Family Health Plan agreement, any other Tricare Agreement, or any other agreement or contract with the United States of America is neither assumed nor rejected as of the Effective Date, nothing shall discharge, waive, release, preclude, or enjoin any claim, debt, or liability owed to the United States of America under such agreements or contracts. For the avoidance of doubt, Medicare or Medicaid provider agreements and Tricare agreements related to the Rejected Facilities that the Debtors or Reorganized Debtors continue to operate after the Effective Date, whether by interim management or otherwise, if any, shall not be deemed rejected as of the Effective Date. If any Medicare or Medicaid provider agreement or any Tricare agreement is rejected, the Debtors and

Reorganized Debtors shall file all cost year reports required under Medicare or Medicaid law and Tricare law for such rejected agreements.

Notwithstanding anything in the Disclosure Statement, Plan, Plan Supplement, this Confirmation Order, or any other Plan document, with respect to the Plan Facilities, nothing shall modify, affect, or impair any HUD Regulatory Agreement, HUD addenda to any lease, intercreditor agreements among the Debtors, certain HUD Lenders and the ABL Lenders, and any loan documents, security instruments, deeds of trust, DACAs, or other documents evidencing the HUD Lenders' loans, and all such agreements and documents shall remain in full force and effect.

76. <u>Modifications Addressing Confirmation Objections</u>. Notwithstanding anything in the Plan, Plan Supplement or this Confirmation Order to the contrary, the Plan and Plan Supplement shall be deemed modified and/or clarified as follows:

    a. <u>Dental Providers' Reservation of Rights</u>: The Plan shall not (i) discharge, release, impair, modify or alter the Debtors' duties, obligations and liabilities set forth in that certain Mutual Settlement & Release Agreement as modified and approved by the Court through its *Amended Agreed Order (I) Approving Settlement Agreement and (II) Granting Related Relief* [Docket No. 2290] (the "**Dental Settlement**"), nor (ii) preclude, release, impair or enjoin the matters captioned *OnSite Dentists of Texas, PLLC et al. v. Senior Care Centers, LLC et al. (In re Senior Care Centers, LLC)*, Adv. Case No. 19-03016-bjh and *Atlas Dental Management LLC d/b/a Atlas Dental Group v. Senior Care Centers, LLC et al. (In re Senior Care Centers, LLC)*, Adv. Case No. 19-03017-bjh (the "**Dental Adversaries**"), the resolution of which shall remain subject to the terms and conditions of the Dental Settlement, or the parties' rights to enforce the duties and obligations and terms set forth in the Dental Settlement. The Court retains jurisdiction to adjudicate any claim, liability, or defense in regard to the Dental Settlement or the Dental Adversaries; the Court continues its jurisdiction over the Dental Settlement and Dental Adversaries.

    b. <u>Taxing Authorities Provisions</u>: Notwithstanding any provisions of any final orders pertaining to postpetition financing, use of cash collateral, the sale of the debtors' assets, exit financing, or plan confirmation, or any agreements validated by any such orders, the liens currently held by the Local Texas Tax Authorities (Allen, Allen ISD, Bexar County, Bell

County, Cameron County, Clear Brook City MUD,, Dallas County, City of El Paso, Ellis County, Fannin CAD, Gainesville ISD, Grayson County, Harris County, Hidalgo County, Hood CAD, Jefferson County, Lewisville ISD, McLennan County, Nueces County, Orange County, Parker CAD, Rockwall CAD, San Patricio County, Stephenville, Stephenville ISD, Tarrant County, Tom Green CAD, Van Zandt CAD, Brown County Appraisal District, Cherokee County, Cherokee CAD, Comal County, Coryell County, Denton County, Erath County, Hays County, City of Waco, et al., Midland Central Appraisal District, and Williamson County) or which shall arise during the course of these cases pursuant to applicable non-bankruptcy law, shall neither be primed by nor subordinated to any liens granted thereby or pursuant to this order unless permitted under applicable law. With respect to the Local Texas Tax Authorities' pre-petition secured claims for ad valorem property taxes for the 2018 and prior tax years: To the extent such claims are allowed, the Debtors shall pay the Local Texas Tax Authorities' pre-petition claims in full with all applicable and accrued interest. In the event of a disputed claim, the Debtors shall pay the undisputed portion of the claim. The Local Texas Tax Authorities' claims shall be paid with interest from the petition date through the Effective Date and from the Effective Date through the date of payment in full if permitted under applicable law. The Local Texas Tax Authorities shall receive payment of their administrative expense claims for year 2019 ad valorem property taxes in the ordinary course of business prior to the state law delinquency date without being required to file and serve an administrative expense claim and request for payment as a condition of allowance as set forth in 11 U.S.C. Section 503(b)(1)(D). The Local Texas Tax Authorities shall retain their liens until all taxes and related interest, penalties, and fees (if any) have been paid in full.

c.      Texas Comptroller of Public Accounts and Texas Workforce Commission: Notwithstanding any term in the Plan or this Confirmation Order to the contrary, but subject to the claims reconciliation process: (a) the Texas Comptroller of Public Accounts' (the "**Comptroller**") and the Texas Workforce Commission's (the "**TWC**") setoff rights are preserved under section 553 of the Bankruptcy Code; (b) any and all post-petition tax, penalty, and interest due the Comptroller or the TWC as of the Effective Date of the Plan shall be paid in full on the Effective Date; (c) post-petition tax liabilities coming due to the Comptroller or the TWC after the Effective Date shall be paid when due under and in accordance with the laws of the state of Texas; (d) to the extent the Comptroller's Allowed Priority Tax Claims are not paid in full in cash on the Effective Date, they shall be paid in full, with interest at the rate of 6.5%, via monthly installments beginning on the 1st day of the month following the Effective Date and continuing on the 1st day of each month thereafter over a period not to exceed five years from the petition as required § 1129(a)(9)(C) of the Bankruptcy Code; (e) the bankruptcy shall have no

47

effect on the Comptroller's rights as to non-debtor third parties; and (f) the Comptroller and the TWC may amend any proof of claim against any Debtor after the Effective Date without leave.

d.  POTA Clarifications: Notwithstanding the rejection of that certain Office Lease dated as of July 24, 2014 by and between Debtor Senior Care Centers LLC, as Tenant, and POTA JV, LLC ("**POTA**"), as Landlord, as amended from time to time (the "**Corporate Lease**"), to the extent a separate agreement between the parties as to the treatment of the Corporate Lease is not reached and Senior Care Centers LLC remains in possession of the leased premises beyond the Effective Date of the Plan, Senior Care Centers LLC shall continue to pay use and occupancy as required under the Corporate Lease and applicable law until Senior Care Centers LLC surrenders the premises back to Landlord. Such obligations shall be post-Effective Date obligations of the Reorganized Debtors that are not discharged by the Plan. POTA JV, LLC retains all rights under bankruptcy and non-bankruptcy law to seek to enforce the post-Effective Date obligations of the Debtors.

e.  Gamble Reservation of Rights: With respect to (i) the sum of $500,000 (the "**Indemnity Escrow Amount**") held in escrow by First American Trust, FSB in Santa Ana, CA; (ii) the sum of $2,500,000 (the "**Hospice Escrow Amount**") held in escrow by First American Title Insurance Company; (iii) that certain Master Purchase Agreement by and between Guest Care Management LLC and related or affiliated persons or entities ("**Gamble**") and certain of the Debtors, as amended; and (iv) that certain Escrow Agreement between Gamble and certain of the Debtors, as amended (the aforementioned four documents are referred to herein as the "**Gamble Agreements**"), each of Gamble and the Debtors, and/or the Liquidating Trust, as applicable, reserve all rights with respect to the Gamble Agreements and nothing in the Plan, Plan Supplement, this Order, or any related document shall prejudice, waive, release, discharge, disturb, impair, or otherwise impact the Gamble Agreements.

f.  Orix Real Estate Capital Reservation of Rights:  Section (A)(3) of Article III of the Plan is amended by adding subsection (g) as follows:

(g)   The Debtors shall assume the obligations under (i) the Operator Security Agreement, dated August 1, 2017, by and between the Debtor, PM Management Fredericksburg NC, LLC, and ORIX Real Estate Capital, LLC, as successor-in-interest to Red Mortgage Capital, LLC, with respect to the Windcrest Nursing and Rehabilitation facility located in Fredericksburg, Texas which is leased from J-S Fredericksburg Realty, LP, and (ii) the Healthcare Regulatory Agreement between PM Management Fredericksburg NC, LLC and HUD. A new intercreditor agreement shall be executed by ORIX Real Estate Capital, LLC and the

Exit Facility Lender with respect to the accounts receivable for the Windcrest facility.

g. <u>Louisiana Department of Health's Clarification</u>: The Plan shall not (i) discharge, release, impair, modify or alter the Debtors' duties, obligations and liabilities set forth in that certain *Order (I) Approving Form of Operations Transfer Agreement, (II) Authorizing Transfer of the Operations and Related Assets of the Transfer Portfolio Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief* [Docket No. 778] (the "**Operation Transfers Order**") (ii) nor shall it discharge, release, impair, modify or alter the Louisiana New Operators' (as defined in the Operation Transfers Order) duties, obligations, and liabilities set forth in that the Operation Transfers Order. It is stipulated and agreed by the Debtors that the amounts set forth in the Louisiana Department of Health's Proof of Claim (Claim No. 148-1) are amounts owed to the Louisiana Department of Health as provided by the Operation Transfers Order pursuant to the LA Medicaid Provider Agreements (as defined in the Operation Transfer Order) for which the Louisiana New Operators are liable (as well as the Debtors to the extent LDH's proof of claim is allowed), and nothing herein or in the Plan shall relieve or be construed to relieve the Debtors or any Louisiana New Operator from complying with all Medicaid statutes, regulations, rules, policies, and procedures.

h. <u>Round Rock Business Park LP Administrative Claim</u>: Notwithstanding anything to the contrary in the Plan or in this Order, Round Rock Business Park LP d/b/a Park West Corporate Centers shall have an Allowed Administrative Claim for postpetition rent for the period from December 4-31, 2018, in the amount of $15,474.35, and shall not be required to file a request for payment of such Administrative Claim.

i. <u>PharMerica</u>: The Debtors have previously segregated $314,738.98 (the "**Segregated Funds**") due to the alleged garnishment lien in favor of PharMerica Long Term-Care, LLC d/b/a PharMerica ("**PharMerica**"). The Debtors and PharMerica have filed a motion to approve a settlement agreement by the Bankruptcy Court. If approved, the settlement agreement resolves PharMerica's alleged secured claims and the hold on the Segregated Funds. The Debtors may use the Segregated Funds pending Court approval of the settlement agreement (or any form substantially similar thereto agreed to by the parties). The Debtors shall reinstate the administrative freeze on the Segregated Funds in the event the Effective Date (as that term is defined in the settlement agreement) does not occur within 60 days of the filing of the motion to approve, unless such time period is extended by PharMerica in writing in its sole and absolute discretion. The parties reserve all rights pending approval of the settlement agreement.

49

j. TXMS Real Estate Investments, Inc. (LTC): Abri Health Services, LLC shall be a full co-obligor and co-lessee, on a joint and several basis, under that certain Second Amended and Restated Master Lease Agreement between TXMS Real Estate Investments, Inc. ("**TXMS**") and Senior Care Centers, LLC, dated August 27, 2013 (the "**TXMS Master Lease**"), in all respects subject to all lessee restrictions and will execute the TXMS Master Lease or an amendment thereto on the Effective Date at TXMS' election. The Reorganized Debtors agree to exclude all affiliated ancillary companies' revenues and income from financial covenant calculations under the TXMS Master Lease and all contracts with affiliates must be at prevailing third-party market rates and terms. For the provision of therapy services and financial covenant calculations under the TXMS Master Lease, if therapists are employed by the facility and the associated salaries and benefits are recorded on the facility P&L, such salaries and benefits shall be at market rates and Senior Rehab Solutions LLC ("**SRS**") shall charge each facility a management fee of five percent (5%) of therapists' salaries and benefits. On or before December 16, 2019, the Debtors and/or Reorganized Debtors, as applicable, shall provide TXMS an additional letter of credit for at least $50,830.03 from a financial institution meeting the requirements of an Issuer as set for the in the TXMS Master Lease other than CIBC Bank USA, such that TXMS will hold valid letters of credit totaling at least $2,084,031.15 as of December 16, 2019. All cure payments ordered pursuant to this Court's Memorandum Opinion and Order Granting Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Unexpired Real Property Leases, and (II) Establishing and Authorizing the Debtors to Pay Attendant Cure Amounts [Docket No.1981] (the "**Assumption Order**") shall be received by TXMS no later than December 16, 2019. The Debtors shall not seek an extension of the December 16, 2019 payment deadline provided for in the Assumption Order. Nothing in the Plan, Disclosure Statement, Plan Supplement, Confirmation Order, or other Plan Documents adversely modifies, impairs, impedes, or otherwise impacts TXMS's rights and remedies or the Debtors' and/or Reorganized Debtors' obligations under the assumed TXMS Master Lease and the Assumption Order. The Debtors shall pay TXMS $127,718.84 for its attorneys' fees for the months of September 2019 through December 2019; provided, however, this cap on fees and expenses shall not apply in the event: (i) the Effective Date does not occur by January 31, 2020; or (ii) the Debtors default on the Assumption Order, the TXMS Master Lease, or the Plan. The Debtors shall pay the foregoing amount in the following installments: (i) $31,929.71 no later than the Effective Date, which shall occur no later than January 31, 2019, and (ii) six (6) equal monthly installments of $15,964.85 commencing on February 1, 2020 through July 1, 2020, on the first day of each month subject to the provisos above. The aforementioned attorney's fee and expenses payment installments shall be considered Rent (as defined in the TXMS Master Lease) included in the TXMS Master

Lease, and failure to timely pay shall constitute an Event of Default (as defined in the TXMS Master Lease), provided, however, that timely payments of such amounts shall not accrue, or constitute, interest pursuant to the TXMS Master Lease. In the event of such Event of Default, TXMS shall be entitled to exercise its remedies under the TXMS Master Lease, including drawing upon the letter of credit without further notice or opportunity to cure.

k. <u>CHI Javelin (Annaly)</u>: Abri Health Services LLC and Senior Rehab Solutions LLC ("**SRS**") shall be full co-obligors and co-lessees, on a joint and several basis, under that certain Master Lease Agreement between Annaly[5] and PM Management – Portfolio VI NC, LLC, dated May 11, 2016 (the "**Annaly Master Lease**") in all respects subject to all lessee restrictions, and will execute the Annaly Master Lease on the Effective Date; provided, however, that the Reorganized Debtors shall have the ability to dissolve SRS into another lessee under the Annaly Master Lease as long as Annaly retains the applicable enterprise value, tangible net worth, and cash flow of SRS with respect to the facilities included in the Annaly Master Lease. If the Reorganized Debtors form any new entities providing ancillary services to the facilities included in the Annaly Master Lease, such costs charged to the facilities must be at prevailing third-party market rates and terms. All cure payments ordered pursuant to the Assumption Order shall be received by Annaly no later than December 16, 2019. The Debtors shall not seek an extension of the December 16, 2019 payment deadline provided for in the Assumption Order. Nothing in the Plan, Disclosure Statement, Plan Supplement, Confirmation Order, or other Plan Documents in any way adversely modifies, impairs, impedes, or otherwise impacts Annaly's rights and remedies or the Debtors' and/or Reorganized Debtors' obligations under the assumed Annaly Master Lease and the Assumption Order. The Debtors shall pay Annaly no more than $168,000 for Winstead's attorneys' fees and expenses for the months of September 2019 through December 2019; provided, however, this cap on fees and expenses shall not apply in the event: (i) the Effective Date does not occur by January 31, 2020; or (ii) the Debtors default under the Assumption Order, the Annaly Master Lease, the Plan, or the Stipulation and Agreed Order Regarding Dkt. No. 2248 between Annaly and the Debtors (the "**Annaly Stipulation**"). The Debtors shall pay the foregoing amount in the following installments: (i) $42,000 on the Effective Date, which shall occur no later than January 31, 2020, (ii) and $21,000 in six (6) equal monthly installments commencing on February 1, 2020 through July 1, 2020, on the first day of each month, subject to the provisos above. Failure to timely pay such attorneys' fees and expenses shall constitute an Event of Default (as defined in the Annaly Master Lease), provided, however, that timely payments of such amounts shall not accrue, or

---

[5] CHI Javelin LLC, CHI Javelin Winters Park LLC, CHI Javelin Denison LLC, CHI Javelin Frisco LLC, CHI Javelin Allen LLC, and CHI Javelin Vista Ridge LLC.

constitute, interest pursuant to the Annaly Master Lease, and Annaly may exercise its remedies under the Annaly Master Lease as a result thereof. The Annaly Stipulation is fully incorporated into this Confirmation Order for all purposes.

l.     <u>Century Healthcare, LLC and Colonial Life & Accident Insurance Company Reservation of Rights</u>: Notwithstanding any provisions in the Plan, Plan Supplement, or this Order to the contrary, but subject to the claims reconciliation process approved by the Court, nothing contained in the Plan or this Order impairs the rights of Century Healthcare, LLC ("**Century**") or Colonial Life & Accident Insurance Company ("**Colonial**") to further argue for allowance and payment of their respective claims, including without limitation, claims entitled to priority as Class 4 Claims under the Plan, administrative claims, if any, that may be filed prior to the Administrative Claims Bar Date, unsecured claims under Class 5 of the Plan or any claim that funds withheld by the Debtors from their employees do not constitute property of the estate and therefore are not addressed in the Plan, and including any claims by Colonial and Century against any non-Debtor third parties (collectively, the "**Claims**"). Century and Colonial reserve all rights with respect to the Claims and allowance and payment thereof to which they would otherwise be entitled and the Debtors acknowledge such reservation of rights herein.

**# # # End of Order # # #**

Order submitted by:

**POLSINELLI PC**

*/s/ Trey A. Monsour*

Trey A. Monsour
State Bar No. 14277200
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

-and-

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
Stephen J. Astringer (Admitted *Pro Hac Vice*)
Nicholas A. Griebel (Admitted *Pro Hac Vice*)
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com
sastringer@polsinelli.com
ngriebel@polsinelli.com

*Counsel to the Debtors and Debtors in Possession*

**GREENBERG TRAURIG, LLP**

*/s/ Shari L. Heyen*

Shari L. Heyen
State Bar No. 09564750
1000 Louisiana St., Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505
heyens@gtlaw.com

-and-

Nancy A. Peterman (Admitted *Pro Hac Vice*)
77 West Wacker Dr., Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-8400
Facsimile: (312) 456-8435
petermann@gtlaw.com

*Counsel to the Official Committee of Unsecured Creditors*