Trey A. Monsour
State Bar No. 14277200
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
Polsinelli PC
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Senior Care Centers, LLC, *et al.*,[1] | Case No. 18-33967 (BJH) |
| Debtors. | (Jointly Administered) |
| Senior Care Centers, LLC, a Delaware limited liability company, and PM Management - Frisco NC, LLC dba Victoria Gardens of Frisco, a Texas limited liability company, | Adv. No. |
| Debtors/Plaintiffs, | |
| v. | |
| Alex M. Azar II, in his official capacity as Secretary, United States Department of Health and Human Services; and Seema Verma, in her official capacity as Administrator, Centers for Medicare and Medicaid Services, | |
| Defendants. | |

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 569] and may also be found on the Debtors' claims agent's website at https://omnimgt.com/SeniorCareCenters. The location of the Debtors' service address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

**VERIFIED COMPLAINT**

Debtors Senior Care Centers, LLC and PM Management - Frisco NC, LLC dba Victoria Gardens of Frisco (the "**Plaintiffs**" and "**Debtors**") are debtors and debtors-in-possession in the above-captioned cases (collectively, the "**Chapter 11 Cases**"). The Debtors, along with certain affiliated entities, filed voluntary petitions for Chapter 11 bankruptcy under title 11 of the United States Code (the "**Bankruptcy Code**") on December 4, 2019 (the "**Petition Date**"). The Debtors, by and through counsel, hereby file this verified complaint against Defendant Alex M. Azar II, in his official capacity as Secretary of the United States Department of Health and Human Services ("**HHS**") and Defendant Seema Verma, in her official capacity as Administrator of the Centers for Medicare and Medicaid Services ("**CMS**," and together with HHS, the "**Defendants**") pursuant to 11 U.S.C. §§ 105(a) and 362(a), and in support thereof, alleges as follows:

### I.    PRELIMINARY STATEMENT

1. The success of the Debtors' restructuring efforts is contingent upon the Court enforcing the most foundational of all protections provided under the Bankruptcy Code—the automatic stay—against the Defendants to prevent the postpetition termination of the Provider Agreement for the next 14 days while Debtors complete the mandatory repairs and inspections.

2. This adversary complaint seeks limited relief pursuant to Bankruptcy Code sections 105(a) and 362(a) to enforce the automatic stay and prohibit the Defendants from suspending, terminating, or otherwise modifying the Provider Agreement between Defendants and Plaintiff PM Management - Frisco NC, LLC dba Victoria Gardens of Frisco ("**Victoria Gardens**"). This adversary complaint does not challenge the merits of the Defendants' actions under Federal law. Rather, this action solely relates to the Debtors' guaranteed protections under the automatic stay and preserving the value of their bankruptcy estate for a limited time so that the Debtors can

continue to maintain their operations, pay their employees, and reorganize pursuant to the plan of reorganization attached as <u>Exhibit A</u> to the *Notice of Filing of Solicitation Version of Disclosure Statement for the Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 2094] (as may be amended and/or supplemented, the "**Plan**").

3. As of the Petition Date, Debtor Senior Care Centers, LLC ("**SCC**") was the largest operator of skilled nursing facilities and assisted living facilities in the state of Texas. As of the Petition Date, the Debtors operated over one-hundred facilities in Texas and Louisiana, with four primary operating divisions: post-acute care, long-term skilled nursing care, assisted living, and Alzheimer's & Memory (Dementia) Care.

4. One of the facilities operated by the Debtors is located at 10070 Rolater Drive, Frisco, Texas 75035 (the "**Frisco Facility**"). The Frisco Facility is operated by Victoria Gardens. Victoria Gardens and CMS are parties to the Provider Agreement, pursuant to which Victoria Gardens is able to serve and care for patients that are covered by Medicare, Medicaid, and Medicare Advantage.

5. On or about June 9, 2019, the Frisco Facility was severely damaged in a storm and was forced to shut down and cease operations. With permission of CMS, Victoria Gardens safely moved all patients at the facility to other locations so that repairs could be made.

6. On or about June 21, 2019 he Texas Health and Human Services Commission ("**HHSC**") conducted a survey of the Frisco Facility. On July 9, 2019, the Debtors received a letter from HHSC which asserted that two categories of deficiencies present at the Frisco Facility. First, certain health code violations, which were no longer relevant due to a follow-up survey conducted on December 9, 2019. Second, certain "life safety" deficiencies which were related to the storm damage (collectively, the "**Life Safety Deficiencies**"). Victoria Gardens was required to submit a

Plan of Correction ("**POC**") by July 19, 2019. HHSC threatened that the Provider Agreement would be terminated "effective December 21, 2019 if substantial compliance is not achieved by that time." Victoria Gardens submitted the POC on July 19, 2019. HHSC informed Victoria Gardens that the POC would not be reviewed because the Frisco Facility did not currently have patients.

7. Separate from these processes, on or about July 15, 2019, Victoria Gardens requested CMS approval of a temporary closure of the Frisco Facility. On July 22, 2019, CMS sent a letter to Victoria Gardens approving a temporary closure of the Frisco Facility for the dates of June 21, 2019 through December 31, 2019.

8. From the date of the storm through the date hereof, the Debtors have diligently worked to repair the Frisco Facility. However, due to the amount of damage and the enormity of the repairs, the date of completion, and passing the necessary inspections to re-open, may exceed the amount of time provided by CMS.

9. To the best of the Debtors' knowledge, all construction and repairs on the Frisco Facility are complete and it will be ready to serve patients as soon as all required inspections are passed. These inspections relate only to the storm-related Life Safety Deficiencies. The Frisco Facility may re-open in the next few days, however, it may take until the beginning of 2020 due to the limited availability of inspectors during the holiday season.

10. In early December 2019, the Plaintiffs requested a short 30-day extension of the six-month deadline to complete the repairs and move patients back into the Frisco Facility and pass the required inspections. Instead of granting this extension, on December 10, 2019, Victoria Gardens received a letter from CMS granting a 5-day extension and stating that the provider agreement between Victoria Gardens and CMS would be terminated on December 26, 2019 if the

71669964.10

facility was not re-opened and re-certified (the "**Termination Notice**"). This may not be enough time for the Frisco Facility to pass the numerous required inspections. If Defendants terminate the Provider Agreement with Victoria Gardens, it will cause the Plaintiffs irreparable harm and will potentially jeopardize implementation of the confirmed Plan.

11. The operation of the Frisco Facility is imperative to the Debtors' implementation of the Debtors' plan of reorganization. *See* Exhibit A to the *Notice of Filing of Solicitation Version of Disclosure Statement for the Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 2094] (as may be amended and/or supplemented, the "**Plan**") and *Findings of Fact, Conclusions of Law, and Order Confirming Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 2376] (the "**Confirmation Order**").

## II. JURISDICTION AND VENUE

12. This adversary proceeding is initiated pursuant to Rules 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure in the Chapter 11 Cases now pending before the United States Bankruptcy Court for the Northern District of Texas.

13. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) because this is a civil action that arises under and arises in title 11.

14. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G) because the Debtors seek to enforce the automatic stay to ensure that the Defendants do not suspend or terminate the Provider Agreement with Victoria Gardens.

15. Jurisdiction is also proper pursuant to 28 U.S.C. §§ 2201-2202 in that there exists an actual justiciable controversy as to which the Debtors require a declaration of their rights by this Court and injunctive relief to prohibit the Defendants from violating 11 U.S.C. § 362(a).

16. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because this proceeding arises under title 11 and arises in and is related to a case under title 11 pending within this judicial district.

### III. PARTIES

17. SCC is a Delaware limited liability company.

18. SCC, along with certain of its affiliates including, Victoria Gardens, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on the Petition Date, commencing these jointly administered Chapter 11 Cases.

19. The Debtors continue to manage and operate their business as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee or examiner has been appointed in the Chapter 11 Cases.

20. Defendant Alex M. Azar II is the Secretary of HHS and is responsible for the conduct and policies of HHS, including those relating to CMS, an agency within HHS, and CMS's role in making Medicare payments. The Secretary maintains an office at 200 Independence Avenue, S.W., Washington, D.C. 20201, and is sued in his official capacity only.

21. Defendant Seema Verma is the Administrator of CMS and is responsible for the conduct and policies of CMS and its role in making Medicare payments. The Administrator maintains an office at 200 Independence Avenue, S.W., Washington, D.C. 20201, and is sued in her official capacity only.

### IV. BACKGROUND

**A. Debtors' Business and Medicare**

22. Many of the services the Debtors provide are for patients who are Medicare beneficiaries for which Debtors are reimbursed through the Medicare program established by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll.

23. Medicare is a federally-administered and funded program that provides payment for the provision of healthcare services to millions of aged or disabled individuals, including the patient care services that Debtors provide. *See* 42 U.S.C. §§ 1395k; 1395x(s)(3).

24. Victoria Gardens executed the Provider Agreement with CMS, which allowed Victoria Gardens to provide services to patients at the Frisco Facility and be reimbursed for those services from Medicare, Medicaid, and Medicare Advantage. A true and correct copy of the Provider Agreement is attached as <u>Exhibit A.</u>

25. To receive payments under Medicare, providers of healthcare services such as Debtors must meet certain specified requirements. *See* 42 U.S.C. §§ 1395cc(a). A provider that meets these requirements is entitled to participate in Medicare. *See* 42 U.S.C. § 1395cc(a); 42 C.F.R. §§ 410.32, 489.1.

26. Federal regulations permit CMS to suspend, offset, and recoup Medicare payments to providers for a number of reasons, including the failure to comply with requirements addressing the facility where the services are to be provided.

27. The Provider Agreement, and all of the Debtors' rights thereunder, is property of the Debtors' estate. *See* 11 U.S.C. § 541(a).

B. **CMS's Threat To Withhold Medicare Payments to Debtors**

28. On or about June 9, 2019, the Frisco Facility was damaged in a severe storm. The structural damage to the roof forced the Frisco Facility to suspend operations and move patients to other facilities.

29. The Debtors requested and received permission from CMS to close the Frisco Facility while the repairs are being made.

30. On December 10, 2019, the Debtors received the Termination Notice. The Termination Notice threatens to terminate the Provider Agreement between Victoria Gardens and

7

CMS pursuant to Social Security Act, Subsections 1819(h), 1919(h) and Section 1128A(d) and the regulations in 42 CFR Part 488, Subpart F, *Enforcement of Compliance for Long-Term Care Facilities with Deficiencies*. The effective date of the termination of Victoria Gardens' Provider Agreement was originally December 21, 2019. A true and correct copy of the Termination Notice is attached as Exhibit B.

31. From the date of the storm through the date hereof, the Debtors have diligently worked to repair the Frisco Facility. However, due to the amount of damage and the enormity of the repairs, the date of completion, and passing the necessary inspections to re-open, will exceed the amount of time provided by CMS.

### C. CMS's Threatened Suspension Will Create a Financial Crisis for the Debtors

32. The termination of the Provider Agreement would create a financial crisis for the re-opened Frisco Facility, Victoria Gardens, and the Debtors as a whole.

33. If CMS terminates the Provider Agreement, it will take at least six-months after construction is completed for the Frisco Facility to be recertified to serve Medicare patients. Moreover, the expense of recertification is costly.

34. During this time, Victoria Gardens will not be able to bill Medicare for treating Medicare patients until after a provider agreement is reacquired. This delay could last longer than six months. If Victoria Gardens has to wait six months or more before it can bill for its services, it will suffer a tremendous financial hardship. Thus, even when the Frisco Facility is recertified, the wait will cause Victoria Gardens and the Debtors irreparable harm.

35. The Debtors are required to comply with the NFPA Life Safety Code, 2012 edition. Victoria Gardens' life-code certification is currently classified under Chapter 19 for existing health care occupancies. If Victoria Gardens loses its certification, it will be forced to re-apply under Chapter 18 for "new" health care occupancies. Chapter 18 contains more stringent building code

standards. Upon information and belief, upgrading the Frisco Facility to meet current day CMS building code standards will cost the Debtors millions of dollars, thus adversely effecting Debtors' ability to reorganize under the Plan.

36. Additionally, if Victoria Gardens is forced to re-apply as a new applicant, it may take 6-9 months before it is allowed to treat patients covered by Medicare and will cost hundreds of thousands of dollars in additional compliance costs.

37. Certain Debtors including SCC and Victoria Gardens are parties to that certain Amended and Restated Credit and Security Agreement dated June 21, 2017 (as amended, restated, modified, or supplemented from time to time, the "**HUD Credit Agreement**") with CIBC Bank USA as Lead Arranger, Administrative Agent, and Lender (the "**Administrative Agent**"),[2] and CIT Finance LLC, Wells Fargo Bank, N.A., MB Financial Bank, N.A., Bankers Trust Company, and Compass Bank as lenders (together with Administrative Agent, the "**Lenders**"). The HUD Credit Agreement provided the applicable borrowers with a revolving credit loan (the "**HUD Revolver**"). The HUD Revolver is the primary source of funds used by the Debtors to finance the construction and operation of the Frisco Facility.

38. The HUD Credit Agreement states that it shall be an event of default if "any Governmental Authority shall have revoked any license, permit, certificate or Medicaid or Medicare qualification pertaining to any Project, regardless of whether such license, permit, certificate or qualification was held by or originally issued for the benefit of any Borrower, a lessor or any other Person, the revocation of which could reasonably be expected to have a Material Adverse Effect."

---

[2] The HUD Credit Agreement was originally executed by The PrivateBank and Trust Company, predecessor in interest to CIBC Bank USA.

39. If the Provider Agreement is terminated, the Debtors may be in default under the HUD Credit Agreement. If the Administrative Agent declares a default under the HUD Credit Agreement, it may be able exercise certain rights and remedies against any of the collateral of the Debtors who are parties to the HUD Credit Agreement. Such remedies include the potential to foreclose on Victoria Gardens and cause the Debtors irreparable harm.

40. Moreover, Debtors entered into that Master Lease Agreement dated May 11, 2016 ("**Lease**") with Annaly[3] ("**Landlord**") whereby Debtors lease the property where Victoria Gardens is located from Landlord.

41. The Lease states that it shall be an Event of Default (defined in the Lease) "if Lessee ceases to maintain in effect any license, permit, certificate or approval necessary or otherwise required to operate any Facility in accordance with its Primary Intended Use, or if there is a voluntary or permanent and unappealable termination of Medicaid or Medicare provider agreements."

42. If the Provider Agreement is terminated, the Debtors may be in default under the Lease. If the Landlord declares a default under the Lease, the Landlord may be able to foreclose on Victoria Gardens and cause the Debtors irreparable harm.

**D.    The Debtors' Request For An Extension Is Reasonable**

43. On December 13, 2019, the Debtors requested a 30-day extension from CMS to re-open the Frisco Facility.

44. Without explanation, CMS refused to grant the extension.

45. An additional extension will not prejudice or negatively affect the care of any patient at the Frisco Facility because it is currently closed.

---

[3] CHI Javelin LLC, CHI Javelin Winters Park LLC, CHI Javelin Denison LLC, CHI Javelin Frisco LLC, CHI Javelin Allen LLC, and CHI Javelin Vista Ridge LLC (collectively, "**Annaly**").

71669964.10

46. Without the extension, the Debtors will be negatively impacted in their ability to re-open the Frisco Facility and continue to operate, which will negatively impact the value for all stakeholders.

## V. CAUSES OF ACTION

### Count I - Declaratory Relief

47. The Debtors hereby restate and incorporate all of the allegations of paragraphs 1-46 and further allege as follows:

48. This is a claim for declaratory relief. There exists a substantial, actual controversy between the Debtors and the Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

49. Bankruptcy Code section 105(a) authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

50. Bankruptcy Code section 362(a) operates as an automatic stay that protects Debtor and its estate. *See* 11 U.S.C. § 362(a).

51. Relief under Bankruptcy Code sections 105(a) and 362(a) is particularly appropriate in this case to avoid imminent damage and preserve the value of Debtors' estate for all stakeholders.

52. Debtors' right to receive Medicare payments from CMS for services it performs for Medicare beneficiaries is property of the estate under Bankruptcy Code section 541(a). *See* 11 U.S.C. § 541(a).

53. On information and belief, Defendants intend to suspend and withhold all Medicare payments to Victoria Gardens after the Petition Date.

54. Bankruptcy Code section 362(a)(1) provides:

71669964.10

> [A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the Debtors that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the Debtors that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1).

55. Bankruptcy Code section 362(a)(3) provides:

> [A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a)(3).

56. Defendant CMS's threatened termination of the Provider Agreement and/or withholding of Medicare payments due to Debtors after the Petition Date is a violation of the automatic stay under 11 U.S.C. §§ 362(a)(1) and (3), in that it is an act to obtain possession or exercise control over property of the estate.

57. CMS's threatened termination of the Provider Agreement is not the "commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power" under 11 U.S.C. § 362(b)(4).

58. CMS's actions in terminating the Provider Agreement will cause real and significant harm to the Debtors' estates.

59. If CMS is allowed to terminate the Provider Agreement, the Debtors' estates will suffer the loss of significant estate assets and the Debtors' ability to consummate the Plan and operate as a going concern will be jeopardized.

60. Accordingly, the Debtors respectfully request that the Court enter a declaratory judgment that (i) the Provider Agreement is property of the estate under 11 U.S.C. § 541(a); (ii) the Defendants' suspension or termination of the Provider Agreement is an act to obtain possession or control over property of the estate prohibited by 11 U.S.C. § 362(a)(3); (iii) the Defendants' suspension or termination of the Provider Agreement is not an action or proceeding by a governmental unit to enforce a police or regulatory power that is excepted from the automatic stay under 11 U.S.C. § 362(b)(4); (iv) the Defendants' suspension and/or withholding of any Medicare payments to the Debtors is an act to obtain possession or control over property of the estate prohibited by 11 U.S.C. § 362(a)(3); (v) the Defendants' termination or withholding of any Medicare payments to the Debtors is not an action or proceeding by a governmental unit to enforce a police or regulatory power that is excepted from the automatic stay under 11 U.S.C. § 362(b)(4); (vii) the Defendants may not terminate the Provider Agreement or withhold any Medicare payments to the Debtors after the Petition Date.

### Count II - Violation of the Automatic Stay Pursuant to 11 U.S.C. § 362(a)(3)

61. Debtors hereby restate and incorporate all of the allegations of paragraphs 1-60 and further allege as follows:

62. Bankruptcy Code section 362(a) operates as an automatic stay that protects Debtors and Debtors' estate. *See* 11 U.S.C. § 362(a).

63. Bankruptcy Code section 362(a)(3) provides:

> [A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a)(3).

71669964.10

64. On information and belief, the Defendants intend to terminate the Provider Agreement and withhold all Medicare payments to Victoria Gardens.

65. Debtor Victoria Gardens' right to receive Medicare payments from CMS for the services it performs for Medicare beneficiaries is property of the estate under Bankruptcy Code section 541(a). *See* 11 U.S.C. § 541(a).

66. The Defendants' suspension and/or termination of the Provider Agreement and suspension and/or withholding of any Medicare payments to the Debtors after the Petition Date is an act to obtain possession or control over property of the estate that violates the automatic stay under 11 U.S.C. § 362(a)(3).

67. Bankruptcy Code section 362(k) provides that a party "injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k).

68. The Debtors have been damaged by the Defendants' willful violations of the automatic stay under Bankruptcy Code section 362(a)(3).

69. The Debtors request that the Court enter a judgment in favor of the Plaintiffs against the Defendants awarding actual damages, including costs and attorneys' fees in accordance with Bankruptcy Code section 362(k), in an amount to be proven at trial.

70. Bankruptcy Code section 362(k) provides that a party "injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k).

WHEREFORE, THESE PREMISES CONSIDERED, DEBTORS PRAY:

71.     That the Court enter a declaratory judgment that (i) the Provider Agreement is property of the estate under 11 U.S.C. § 541(a); (ii) the Defendants' suspension or termination of the Provider Agreement is an act to obtain possession or control over property of the estate prohibited by 11 U.S.C. § 362(a)(3); (iii) the Defendants' suspension or termination of the Provider Agreement is not an action or proceeding by a governmental unit to enforce a police or regulatory power that is excepted from the automatic stay under 11 U.S.C. § 362(b)(4); (iv) the Defendants' suspension and/or withholding of any Medicare payments to the Debtors is an act to obtain possession or control over property of the estate prohibited by 11 U.S.C. § 362(a)(3); (v) the Defendants' termination or withholding of any Medicare payments to the Debtors is not an action or proceeding by a governmental unit to enforce a police or regulatory power that is excepted from the automatic stay under 11 U.S.C. § 362(b)(4);  (vii) the Defendants may not terminate the Provider Agreement or withhold any Medicare payments to the Debtors after the Petition Date.

72.     That this Court grant a preliminary injunction enjoining the Defendants from and against any and all further or continued violations of the automatic stay under Bankruptcy Code section 362(a) including but not limited to: (i) suspending or termination the Provider Agreement, and (ii) suspending or withholding any Medicare payments to Victoria Gardens.

73.     That this Court award the Debtors damages in an amount to be proven at trial for the Defendants' willful violation of the automatic stay under 11 U.S.C. § 362(a).

74.     That this Court award the Debtors their costs incurred pursuant to 28 U.S.C. § 2412.

75.     That this Court award the Debtors their costs, expenses and attorneys' fees incurred pursuant to 11 U.S.C. § 362(k)(1) for the Defendants' willful violation of the automatic stay.

76. For such other, further, and additional relief as this Court may deem reasonable and just.

| | |
|---|---|
| Dated: December 19, 2019<br>Dallas, Texas | Respectfully submitted,<br><br>**POLSINELLI PC**<br><br>*/s/ Trey A. Monsour*<br>Trey A. Monsour<br>State Bar No. 14277200<br>2950 N. Harwood, Suite 2100<br>Dallas, Texas 75201<br>Telephone: (214) 397-0030<br>Facsimile: (214) 397-0033<br>tmonsour@polsinelli.com<br><br>-and-<br><br>Jeremy R. Johnson (Admitted *Pro Hac Vice*)<br>600 3rd Avenue, 42nd Floor<br>New York, New York 10016<br>Telephone: (212) 684-0199<br>Facsimile: (212) 684-0197<br>jeremy.johnson@polsinelli.com<br><br>*Counsel to the Debtors and Debtors in Possession* |