**GREENBERG TRAURIG, LLP**

| | |
|---|---|
| Shari L. Heyen | John D. Elrod |
| Texas Bar No. 09564750 | *ElrodJ@gtlaw.com* |
| *HeyenS@gtlaw.com* | 3333 Piedmont Road, Suite 2500 |
| 1000 Louisiana St., Suite 1700 | Atlanta, Georgia 30305 |
| Houston, Texas 77002 | Telephone:  (678) 553-2259 |
| Telephone:  (713) 374-3564 | Facsimile:  (678) 553-2269 |
| Facsimile:  (713) 374-3505 | |

**COUNSEL FOR PLAINTIFF ALAN D. HALPERIN, SOLELY IN HIS CAPACITY AS UNSECURED CREDITOR TRUSTEE**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>**SENIOR CARE CENTERS, LLC**, *et al.*[1],<br><br>Debtors. | Chapter 11<br><br>Case No. 18-33967-sgj<br><br>(Jointly Administered) |
| **ALAN D. HALPERIN, as Unsecured Creditor Trustee,**<br><br>Plaintiff,<br>v.<br><br>**B&C INVESTMENTS LLC,**<br><br>Defendant. | Adv. Proc. No. _____ |

**COMPLAINT TO AVOID AND RECOVER TRANSFER**

COMES NOW, Alan D. Halperin, solely in his capacity as the Unsecured Creditor Trustee for Senior Care Centers, LLC, *et al.* (the "Plaintiff" or "Trustee")*,* and files this Complaint against Defendant B&C Investments LLC (the "Defendant") as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief [Docket No. 569].

## INTRODUCTION

1. The Defendant benefitted from unscrupulous conduct by Granite Investment Group ("Granite"), which dominated the affairs of Debtors Senior Care Centers, LLC, *et al.* (the "Debtors"). In February 2018, Granite, which controlled the Debtors' board of directors, caused Debtor Senior Care Centers, LLC ("SCC") to pay $1,090,136.99 (the "Transfer") in satisfaction of Granite's debt to the Defendant. Accordingly, the Trustee files this litigation to avoid and recover the Transfer, which was made at the expense of the Debtors' legitimate, arm's length creditors.

## PARTIES

2. The Debtors, including SCC, filed chapter 11 bankruptcy cases in the U.S. Bankruptcy Court for the Northern District of Texas on December 4, 2018 (collectively, the "Petition Date").[2]

3. The Trustee was appointed pursuant to the *Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Plan") confirmed in the Debtors' chapter 11 cases. Pursuant to the Plan and related Unsecured Creditor Trust Agreement, the Trustee holds causes of action against the Defendant.

4. The Defendant is a California limited liability corporation. It can be served by U.S. Mail pursuant to FED. R. BANK. P. 7004 via its registered agent, Bruce Ayres, at 355 Bristol Street, Suite A, Costa Mesa, California 92626.

5. The Defendant is an insider of the Debtor as evidenced by, without limitation:

   a) The Defendant, or its affiliates Providenza Investments LLC or A&S Trust, were direct or indirect equity holders in the Debtor Senior Care Centers, LLC;

---

[2] Eight additional Debtors filed chapter 11 cases on January 28, 2019 and May 20, 2019.

    b)    The Defendant, or its affiliates, invested in other deals with Granite, and due to this relationship Granite insured that the Debtors paid the Defendant; and

    c)    The Defendant was a person in control of the Debtors as, without limitation, the Defendant's principal Allen Boerner was the founder of the Debtors and Granite and held a seat on the Debtors' board of directors.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2)(B) and the Court may enter final orders for matters contained herein.

## FACTUAL BACKGROUND

### I. Overview of the Debtors and Granite

9. The Debtors were one of the largest providers of skilled nursing services in the country, providing care on a daily basis to approximately 9,000 patients. The Debtors were licensed operators of ninety-seven (97) skilled nursing facilities, nine (9) assisted living facilities, and six (6) hospice facilities (collectively, the "Facilities" and each, a "Facility") located throughout Texas and Louisiana. In addition, the Debtors provided rehabilitation, therapy, and other services.

10. Granite owned approximately 73.5% of Silver Star Investments, LLC ("Silver Star"), the entity that formed and remained the majority owner of Debtor Senior Care Centers, LLC ("SCC") until the Plan became effective. SCC owned, directly or indirectly, 100% of each

of the other Debtors. Granite, in its capacity as the ultimate beneficial owner of SCC, directed the appointment of a controlling percentage of SCC's board of directors (the "Board"). By virtue of these appointments, Granite dominated the decisions of the Board until the Petition Date.

11. Prior to the Petition Date, Granite also formed a series of holding companies (the "Granite Landlords") and caused the Granite Landlords to acquire and/or develop 33 skilled nursing facilities (the "Granite Facilities") and enter into various master leases with certain Debtors. As the controlling party of both SCC and the Granite Landlords, Granite negotiated both "sides" of the Granite leases, i.e., on behalf of the Debtor-tenants and the landlords. Under these leases, Granite was owed approximately $46.6 million per year in lease obligations and held millions of dollars in security deposits. Moreover, Granite was further able to maximize its parasitic relationship with the Debtors by extracting disguised, illegal dividends from the leasing of the Granite Facilities to the Debtors at above-market rates.

12. The Debtors' management was aware that they were paying above-market rents to Granite. In a letter dated May 9, 2018, the Debtors' Chief Executive Officer and Chief Financial Officer, Andrew Kerr, acknowledged that the Debtors "have been paying above market rents under the [Granite leases] for in excess of twelve months."

13. Indeed, even Granite admitted that the rents paid under the leases were above-market. In an email dated May 26, 2018, John Heller (Granite's former President and then Senior Advisor and a member of the Board) noted that:

> Lastly, we also recently engaged Alvarez & Marsal to assist us in our current discussions with our major landlords (primarily Sabra and LTC) as well as our AR lender (CIBC, after its acquisition of The Private Bank). [SCC's] third major landlord is Granite, and given the deal [sic] role of 2/5 of the SCC Board as both Directors of SCC and officers of Granite, and me as a SCC Director and advisor to Granite, are facilitating those discussions regarding the restructuring of rents on the Granite portfolios, *the largest of*

*which is significantly over-market on an under-performing portfolio*. [emphasis added].

14. In June 2018, Granite directed SCC to terminate Alvarez & Marsal because it recommended that the rent under the Granite leases be significantly reduced and pointed out that the Granite facilities were a drag on the Debtors' overall financial performance.

15. Immediately prior to commencement of the Debtors' chapter 11 cases, each of the Granite directors resigned from the Board due to their patent conflicts of interest.

16. Granite and its employees and affiliates played multiple roles with the Debtors—serving as equity owners, directors and the largest landlords to the Debtors under the Granite Leases. In these conflicting roles, Granite and the Debtors engaged in numerous transactions and transfers that provided extraordinary benefits to the Granite Parties at the expense of the Debtors' legitimate, arm's length creditors.

## II. The Debtors' Financial Difficulties and Insolvency

17. The Debtors were never adequately capitalized and had been insolvent since at least 2014. In 2016, the Debtors began experiencing more acute financial distress. In June 2016, the Debtors defaulted under their then-existing credit agreement with their asset-based lender, CIBC Bank USA ("CIBC")[3], due to the Debtors' failure to maintain an EBITDA-related financial covenant.

18. The Debtors' financial statements contained material misrepresentations. For example, upon information and belief, the value of the Debtors' accounts receivable was overstated by tens of millions of dollars, and an accurate allowance (or reduction) for the value of these overstated accounts receivable was never made by the Debtors in their financial statements.

---

[3] CIBC is the successor by merger to The PrivateBank and Trust Company.

19. Accordingly, the Debtors, including SCC in particular, were insolvent from at least January 2014 forward, as the value of their assets was exceeded by the value of their liabilities.

20. Moreover, the Debtors had difficulty paying their debts as they came due from at least 2016 forward as, among other things, the Debtors were unable to meet their payroll obligations on several occasions.

21. The Debtors entered into a Credit and Security Agreement dated June 21, 2017 with CIBC (the "Credit Agreement").

22. Because of the Debtors' precarious financial condition, the Credit Agreement prohibited the Debtors from incurring unrestricted additional indebtedness. In particular, the credit agreement provided as follows:

> No Borrower will, or will permit any Subsidiary to, directly or indirectly, create, incur, assume, guarantee or otherwise become or remain directly or indirectly liable with respect to, any Debt, except for Permitted Debt. No Borrower will, or will permit any Subsidiary to, directly or indirectly, create, assume, incur or suffer to exist any Contingent Obligations, except for Permitted Contingent Obligations.[4]

23. The Transfer was also prohibited by the terms of the Credit Agreement.

**III.    The Bridge Loans**

24. In 2017, Granite began borrowing money from various third parties, including the Defendant.

25. On or about October 5, 2017, Granite borrowed $1,000,000.00 from the Defendant pursuant to a certain Secured Promissory Note (the "Note"). The Note was secured by certain of Granite's equity interests in Silver Star.

---

[4] The Note was not a Permitted Debt or Permitted Contingent Obligation, as such terms are defined under the CIBC credit agreement.

**IV. The Harden Pharmacy Sale and the Transfer**

26. Faced with the Debtors' increasing insolvency, Granite determined that a sale of the Debtors' Harden Pharmacy, LLC subsidiary would help Granite satisfy the Note and enable Granite to pay itself an additional $10 million in sale proceeds.

27. In order to obtain its approval of the sale, SCC represented to its senior secured lender, CIBC, that the proceeds of the pharmacy sale would be used to shore up its deteriorating finances.

28. Granite caused the Debtors to use the pharmacy sale proceeds to, without limitation, pay its debt to the Defendant and a $10 million lease modification fee, which proved to be valueless.

29. Following the sale closing in February 2018, Granite directed that SCC pay the amounts owing under the Note to the Defendant.

30. Although the Debtors, including SCC, were not legally obligated on the Note, SCC paid Granite's debt by making payment to the Defendant in satisfaction of Granite's obligations under the Note.

31. Despite its insolvency, SCC acceded to the commands of Granite, and made the Transfer to the Defendant.[5]

32. SCC did not receive any value in exchange for the Transfer, much less reasonably equivalent value.

33. The Defendant had knowledge that the Debtors were not liable for the amounts owing under the Note yet retained the Transfer.

34. Alternatively, SCC was liable on the Note or on other debt owing to the

---

[5] The Debtors' Statement of Financial Affairs incorrectly indicates that Debtor SCC Management, LLC made the transfer. A review of the Debtors' books and records indicates that SCC was the transferor.

Defendant.

35. Prior to filing this litigation, the Trustee requested that the Defendant return the Transfer. The Defendant has failed to do so as of the date of this Complaint.

36. At all times material hereto, the Debtors had at least one general unsecured creditor holding an allowable claim who, but for the Debtors' bankruptcy filings, would have standing to bring claims to avoid and recover the Transfer (collectively, the "Predicate Creditors").

37. The Predicate Creditors of Debtor SCC that could have avoided the Transfers as of the Transfer date and the Petition Date include, without limitation: CIT Finance, LLC and the Estate of Sandra S Hogue.

**COUNT I – FRAUDULENT TRANSFER (11 U.S.C. §§ 544(B) AND 550 AND TUFTA § 24.001 *et seq.*)**

**(Constructive Fraud)**

38. The Trustee realleges the allegations contained in paragraphs 1-37, which are incorporated by reference as if set forth fully herein.

39. Pursuant to 11 U.S.C. § 544, the Trustee brings this claim on behalf of the Debtors' estates and their creditors under the Texas Uniform Fraudulent Transfer Act, §§ 24.001 *et seq.* ("TUFTA").

40. SCC has one of more creditors for whom the Trustee can act whose claim arose before or within a reasonable time after the obligation was incurred. TUFTA § 24.006(a).

41. SCC made the Transfer to the Defendant within four (4) years of the Petition Date, i.e., on February 5, 2018.

42. SCC (and the Debtors generally) did not receive reasonably equivalent value in exchange for the Transfer because the consideration purportedly provided in exchange was either non-existent or not reasonably equivalent.

43. At the time the Transfer was made, the Debtors (and SCC in particular) (a) were engaged in a business or a transaction, or were about to engage in a business or transaction, for which the assets remaining with the Debtors were unreasonably small in relation to the business or transaction and/or (b) intended to incur, or believed that they would incur, debts that would be beyond their ability to pay as such debts matured and/or (c) were insolvent or became insolvent as a result of the Transfer.

44. Pursuant to 11 U.S.C. § 550(a), the Transfer is recoverable against the Defendant as well as any mediate and immediate transferees.

**COUNT II – FRAUDULENT TRANSFERS (11 U.S.C. §§ 544(B), 550 AND 551 AND TUFTA § 24.001 *et seq*.)**

**(Actual Fraud)**

45. The Trustee realleges the allegations contained in paragraphs 1-37, which are incorporated by reference as if set forth fully herein.

46. As stated above, SCC made the Transfer to the Defendant within four (4) years of the Petition Date.

47. SCC made the Transfer with actual intent to hinder, delay, or defraud creditors.

48. SCC's actual intent is evidenced by, without limitation, the following badges of fraud:

a) the Debtors, including SCC, were insolvent at the time of the Transfer;

b) the Transfer was paid to an insider of the Debtors which was aware of the financial peril the Debtors were facing;

c) the Defendant was aware of the Debtors' insolvency, debt structure, and inability to recover;

d) the Defendant was aware that the Debtors were not liable under the Note;

e) the Transfer was paid occurred shortly before or shortly after a substantial debt was incurred;

f) the Transfer was unreasonably high in light of the consideration rendered by the Defendant; and

g) the Debtors' management was in disarray at the time of the Transfer.

49. Pursuant to 11 U.S.C. § 550(a), the Transfer is recoverable against the Defendant as well as any mediate and immediate transferees.

## COUNT III - FRAUDULENT TRANSFER (11 U.S.C. §§ 548(a)(1)(A) AND 550)

### (Actual Fraud)

50. The Trustee realleges the allegations contained in paragraphs 1-37, which are incorporated by reference as if set forth fully herein.

51. SCC made the Transfer on or within two (2) years of the Petition Date.

52. This transfer was made by SCC with the actual intent to hinder, delay, and/or defraud some or all of SCC's then existing or future creditors, as evidenced by the badges of fraud referenced above.

53. This transfer constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and are recoverable from the Defendant pursuant to section 550(a).

54. As a result of the foregoing, the Trustee is entitled to a judgment pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code (a) avoiding and preserving the

Transfer, (b) directing that this transfer be set aside, and (c) recovering this transfer, or the value thereof, from the Defendant, and any mediate and immediate transferees of the Defendant.

### COUNT IV – FRAUDULENT TRANSFER (11 U.S.C. §§ 548(a)(1)(B) AND 550)
### (Constructive Fraud)

55. The Trustee realleges the allegations contained in paragraphs 1-37, which are incorporated by reference as if set forth fully herein.

56. SCC made the Transfer on or within two years of the Petition Date.

57. SCC received less than a reasonably equivalent value in exchange for the Transfer. At the time this transfer was made, SCC was insolvent or became insolvent as a result of the Transfer.

58. At the time the Transfer was made, the Debtors each (a) were engaged in a business or a transaction, or was about to engage in a business or transaction, for which the assets remaining with the Debtors were unreasonably small in relation to the business or transaction and/or (b) intended to incur or believed that they would incur, debts that would be beyond their ability to pay as such debts matured.

59. The Transfer constitutes a fraudulent transfer avoidable by the Trustee pursuant to sections 548(a)(1)(B) of the Bankruptcy Code and are recoverable from the Defendant pursuant to section 550(a).

60. As a result of the foregoing, the Trustee is entitled to a judgment pursuant to sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code (a) avoiding and preserving each transfer to the Defendant on or within two years prior to the Petition Date, (b) directing that those transfers be set aside, and (c) recovering those transfers, or the value thereof, from the Defendant, and any mediate and immediate transferees.

61. Pursuant to 11 U.S.C. § 550(a), the Transfer is recoverable against the initial transferee of the transfer as well as the mediate and immediate transferees of such transfer.

### COUNT V – PREFERENTIAL TRANSFER (11 U.S.C. §§ 544 AND 550 AND TUFTA § 24.006(b))

62. The Trustee realleges the allegations contained in paragraphs 1-37, which are incorporated by reference as if set forth fully herein.

63. The Transfer was to or for the benefit of the Defendant, which was an insider of SCC.

64. The Transfer was made for an antecedent debt or debts owed by SCC to the Defendant.

65. The Transfer was made while SCC was insolvent.

66. The Transfer was made within the one (1) year preceding the Petition Date to an insider, i.e., the Defendant.

67. The Defendant had reasonable cause to believe that the Debtors, including SCC, were insolvent.

68. Based upon the foregoing, the Transfer constitutes an avoidable transfer pursuant to 11 U.S.C. § 544 and TUFTA § 24.006(b), and in accordance with 11 U.S.C. § 550, the Trustee may recover from the Defendant the amount of the Transfer, plus interest.

### COUNT VI – PREFERENTIAL TRANSFER (11 U.S.C. §§ 547 AND 550)

69. The Trustee realleges the allegations contained in paragraphs 1-37, which are incorporated by reference as if set forth fully herein.

70. On reasonable due diligence in the circumstances of the case and taking into account the Defendant's known or reasonably knowable affirmative defenses under 11 U.S.C. § 547(c), the Transfer constitutes an avoidable preferential transfer pursuant to 11 U.S.C. § 547.

71. The Transfer was to or for the benefit of the Defendant.

72. The Transfer was made for or on account of an antecedent debt or debts owed by SCC to the Defendant before the Transfer was made.

73. The Transfer was made while SCC was insolvent.

74. The Transfer was made within the one (1) year preceding the Petition Date to an insider, i.e., the Defendant.

75. The Transfer enabled the Defendant to receive more than it would have received if: (a) this case were a case under chapter 7 of the Bankruptcy Code; (b) if the Transfer had not been made; and (c) if the Defendant received payment on the subject antecedent debt(s) in accordance with applicable provisions of the Bankruptcy Code as, without limitation, SCC's general unsecured creditors would not be paid in full.

76. Based upon the foregoing, the Transfer constitutes an avoidable preferential transfer pursuant to 11 U.S.C. § 547 and, in accordance with 11 U.S.C. § 550, the Trustee may recover from the Defendant the amount of the Transfer, plus interest.

[The remainder of this page has been intentionally left blank.]

**PRAYER FOR RELIEF**

FOR THESE REASONS, the Plaintiff is entitled to a judgment against the Defendant as follows:

A. Avoiding the Transfer;

B. Awarding the Plaintiff a judgment against the Defendant for the value of the Transfer;

C. Awarding attorneys' fees and expenses pursuant to TUFTA § 24.013; and

D. for such other and further relief as the Court deems just and equitable.

Respectfully submitted this 2nd day of December, 2020.

**GREENBERG TRAURIG, LLP**

By: */s/ John D. Elrod*
Shari L. Heyen
Texas Bar No. 09564750
*HeyenS@gtlaw.com*
1000 Louisiana St., Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3564
Facsimile: (713) 374-3505

– and –

John D. Elrod
*ElrodJ@gtlaw.com*
Terminus 200, Suite 2500
3333 Piedmont Road, NE
Atlanta, Georgia 30305
Telephone: (678) 553-2259
Facsimile: (678) 553-2269

**COUNSEL FOR PLAINTIFF ALAN D. HALPERIN, AS UNSECURED CREDITOR TRUSTEE**